Kevin W. Coleman (CA SBN 168538)
Kimberly S. Fineman (CA SBN 184433)
NUTI HART LLP
411 30TH Street, Suite 408
Oakland, CA 94609-3311
Telephone: 510-506-7152
Email: kcoleman@nutihart.com
       kfineman@nutihart.com

Attorneys for Kavita Gupta,
Chapter 11 Trustee for Desert Oasis Apartments, LLC

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>DESERT OASIS APARTMENTS, LLC,<br><br>Debtor. | Case No.: BK-S-18-12456-GS<br><br>Chapter 11<br><br>**DECLARATION OF KAVITA GUPTA IN SUPPORT OF MOTION TO APPROVE DISBURSEMENT OF ADDITIONAL SUMS OWING TO BUYER ED-DEN UNDER SALE ORDER**<br><br>Date:    January 11, 2021<br>Time:    9:30 a.m.<br>Judge:   Hon. Gary Spraker |

I, Kavita Gupta, declare as follows:

1. I am the Chapter 11 trustee ("Trustee") for the estate of Desert Oasis Apartments, LLC ("Estate"). All statements in this declaration are based on my own personal knowledge and observation in that capacity from my review of the court and business records in this case, or upon information and belief as indicated. If called to testify on this matter, I can and would competently testify to the matters set forth in this Declaration.

2. I submit this declaration in support of my motion (the "Motion") for an order of this Court authorizing the disbursement of $12,590.00 to ED-DEN Investment Co LLC as

1

1 additional sums owing to Buyer under the additional sums owing to Buyer under the *Order*
2 *Granting Chapter 11 Trustee Kavita Gupta's Motion to Approve Sale of Debtors' Assets Free*
3 *and Clear of Liens and Grant Related Relief – Lot 5* [Doc No. 1264 in formerly jointly
4 administered lead Case No. 18-12454] (the "Sale Order").

5       3.     Buyer was the successful bidder at the June 5, 2020 auction of the Estate's real
6 property assets commonly known as 5316 Danville Lane/5331 Bethel Lane, Las Vegas, Nevada
7 ("Apartments"), and the Sale Order approved the sale of the Apartments to Buyer. The sale
8 closed on June 30, 2020 ("Closing").

9       4.     Pursuant to the Sale Order, Buyer was to receive credits upon closing for (i) all
10 rents and other sums due and payable or paid under existing month-to-month leases with tenants
11 for the period after the Closing date and (ii) any security deposits held by the Estate or owed to
12 tenants at the Apartments (the "Prepaid Rent and Deposit Credits"). Pursuant to the Sale Order,
13 Buyer is solely responsible for all existing tenant deposits post-Closing.

14       5.     As an accommodation to Buyer and to allow the uninterrupted transition of utility
15 services to the Apartments, I also entered into a Utilities Reserve letter agreement with Buyer on
16 June 29, 2020 (the "Utilities Reserve"), just prior to the Closing. Under the Utilities Reserve,
17 $10,000 otherwise due to Buyer at Closing remained in escrow pending reconciliation of final
18 utility bills to the Estate. The Buyer was given 15 days from Closing to complete the transfer of
19 all utility accounts. Any charges accrued from the Closing forward on the Estate's accounts
20 would be paid by the Estate and deducted from the funds set aside in the Utilities Reserve.

21       6.     After Closing and upon comparison of accountings between the parties, it became
22 apparent that additional sums were owing to Buyer on account of the Prepaid Rent and Deposit
23 Credits. In addition, Buyer asserted it was also due certain additional sums under the Utilities
24 Reserve. While I dispute that any sum is owing under the Utilities Agreement, the accounting
25 was complicated by the way in which Buyer transferred the utility accounts.

26       7.     To resolve all outstanding accounting issues related to the sale of the Apartments,
27 including the Utilities Reserve, I have worked through my counsel to arrive at a mutual Final
28

2

Accounting Agreement and Release with Buyer ("Final Accounting Agreement"). A true and correct copy of the Final Accounting Agreement is attached hereto as **Exhibit A**.

8. Through the Final Accounting Agreement, the parties have agreed the additional sum of $12,590.00 should be paid to Buyer in full satisfaction of all outstanding accounting issues related to the sale. I believe this amount fairly represents the additional sums owing to Buyer, and the payment is warranted under the terms of the Sale Order and the underlying Purchase and Sale Agreement approved thereunder.

9. I believe it is in the best interest of the Estate to enter into the Final Accounting Agreement and finally resolve all accounting disputes with Buyer. For this reason, I ask the Court to enter an order authorizing the Estate to enter into the Final Accounting Agreement and to disburse the sum of $12,590.00 to Buyer thereunder from the net proceeds from the sale of the Apartments I now hold in trust.

I declare under penalty of perjury of the laws of the United States and the State of Nevada that the foregoing is true and correct, and that this Declaration is executed this 25th day of November 2020.

                                            */s/ Kavita Gupta*
                                            Kavita Gupta

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

**EXHIBIT A**

Final Accounting Agreement and Release

## FINAL ACCOUNTING AGREEMENT AND RELEASE

Kavita Gupta ("Trustee"), in her representative capacity as the court-appointed Chapter 11 Trustee of the estate of Desert Oasis Apartments, LLC ("Seller"), and ED-DEN Investment Co., LLC ("Buyer") hereby stipulate and agree as follows ("Agreement"):

### RECITALS

A. Seller is a Chapter 11 bankruptcy debtor in a case currently pending before the United States Bankruptcy Court for the District of Nevada, Las Vegas Division (the "Bankruptcy Court"), administered under case number 18-12456-GS.

B. Seller and Buyer entered into a certain Purchase and Sale Agreement ("Sale Agreement") with an effective date of April 30, 2020 and related to that certain parcel of real property ("Property") commonly known as 5316 Danville Lane/5331 Bethel Lane, Las Vegas, Nevada.

C. The Sale Agreement was approved by an order of the Bankruptcy Court entered on June 15, 2020 ("Sale Order") and the sale of the Property closed on June 30, 2020 ("Closing Date").

D. The Sale Agreement at paragraph 3.d provides: "Buyer shall receive a credit for any Rents received by Seller with respect to the period after the Closing Date." "Rents" are defined as "all rents and all other sums due and payable or paid under any and all leases."

E. The Sale Order provides at paragraph 4: "The Trustee is authorized to credit the [Buyer] against the Purchase Price the actual amount of any security deposits held by Seller or owed to tenants at the Property, and [Buyer] shall be solely responsible for repayment of all such tenant security deposits in accordance with the terms of the applicable rental agreements."

F. At the time of Closing, Buyer was credited $29,115.00 for prepaid rents and deposits on hand.

G. As an accommodation to Buyer to allow for the transition of the utility accounts related to the Property, Seller and Buyer entered into a Utilities Reserve letter agreement on June 29, 2020 (the "Utilities Reserve"). Under the Utilities Reserve, $10,000 otherwise due to Buyer at Closing remained in escrow pending reconciliation of final utility bills to Seller. The Buyer was given 15 days from the Closing Date to complete the transfer of all utility accounts but any charges accrued from the Closing Date forward on the Seller's accounts would be paid by the Trustee and deducted from the funds set aside in the Utilities Reserve.

H. On June 30, 2020, rent payments for periods after the Closing Date ("Prepaid Rents") totaling $17,913.00 were delivered by Seller's agent to Buyer. Buyer asserts it did not know this sum represented an incomplete amount.

I. On August 28, 2020, the Trustee and Buyer were still exchanging emails; providing different numbers back and forth. Both parties' numbers were different. The Trustee provided an accounting to Buyer of the payments made on the utility accounts under the Utilities Reserve (the "Utilities Accounting").

J. On or about September 21, 2020, the funds held in escrow under the Utilities Reserve were distributed to the Parties in accordance with the Utilities Accounting, with $8,163.61 released by the escrow agent to Buyer and the balance remitted to the Trustee. Buyer asserts these funds were sent to the Buyer without approval or consent from Buyer and were sent to the wrong account and the amount of funds was not complete. Seller disputes these assertions and further asserts that Buyer's consent was not required under the terms of the Utilities Reserve.

K. On or about September 28, 2020, the Trustee remitted an additional $214.00 check to Buyer as additional credit owing for the Prepaid Rents and deposits.

L. Buyer has received certain refund checks from utility providers made payable to Seller relating to Seller's closed utilities accounts (each a "Refund Check"). Buyer represents that any and all refunds received by Buyer have already been sent to Seller.

M. Buyer asserts that it is owed an additional $250.00 on account of security deposits by the tenants of the Property and an additional $12,554.00 for the Prepaid Rents. The Trustee's accounting for these credits is slightly different but she agrees that an additional credit is owing to Buyer upon further review of the accounting and additional information provided by Buyer. Buyer also asserts it is entitled to certain additional, minor credits under the Utilities Reserve, which the Trustee disputes. Buyer is willing to forfeit the difference to settle this Agreement and finalize this transaction.

## AGREEMENT

1. Final Payment. Within two days of the entry of an order of the Bankruptcy Court approving this Agreement, Trustee shall remit to Buyer the total of $12,590.00 for payment in full of all outstanding credits owing to Buyer under the Sale Agreement and Utility Reserve ("Final Payment").

2. Turnover of Property of the Estate. To the extent that Buyer has not already delivered any Refund Check to the Trustee, Buyer shall remit any such Refund Check or similar property of Seller within two days of the execution of this Agreement (the "Turnover Obligation").

3. General Mutual Releases

   a. By Buyer. Effective as of its receipt, in full, of the Final Payment, Buyer hereby grants a full, final, and complete release, waiver, and discharge of all claims arising out of, relating to or based upon the Sale Agreement and the Utilities Reserve that Buyer may now or hereafter have against Seller and/or its agents, past and present, whether known or unknown.

   b. By Seller. Effective upon the Bankruptcy Court's approval of this Agreement, Seller hereby grants a full, final, and complete release, waiver, and discharge of all claims arising out of, relating to or based upon the Sale Agreement and the Utilities Reserve, excluding Seller's rights to the amounts already paid by Buyer to Seller under the Sale Agreement and Buyer's Turnover Obligation, that Seller may now or hereafter have against Buyer and/or its agents, past and present, whether known or unknown.

4. This Agreement shall be construed in accordance with and governed by the laws of the State of Nevada. The Parties expressly agree that any dispute under this Agreement shall be determined solely by the Bankruptcy Court located in the District of Nevada.

BY THEIR SIGNATURES, THE PARTIES ACKNOWLEDGE THAT THEY HAVE READ AND UNDERSTAND THE FOREGOING PROVISIONS AND THAT SUCH PROVISIONS ARE REASONABLE AND ENFORCEABLE.

FOR SELLER:

THE BANKRUPTCY ESTATE OF DESERT OASIS APARTMENTS, LLC

By: *Kavita Gupta*
Kavita Gupta, solely in her capacity as the Chapter 11 trustee for Desert Oasis Apartments, LLC and not individually

Dated: November 20, 2020

FOR BUYER:

ED-DEN INVESTMENT CO., LLC

By: [signature]
EDWARD KIM
Its MEMBER/MGR.

Dated: November 19, 2020

Page 2 of 2