1  Kevin W. Coleman (CA SBN 168538)
   Admitted *pro hac vice*
2  Christopher H. Hart (CA SBN 184117)
   Admitted *pro hac vice*
3  NUTI HART LLP
   411 30TH Street, Suite 408
4  Oakland, CA 94609-3311
   Telephone: 510-506-7152
5  Email: kcoleman@nutihart.com
          chart@nutihart.com
6
7  Talitha Gray Kozlowski (NV SBN 9040)
   GARMAN TURNER GORDON LLP
8  7251 Amigo Street, Suite 210
   Las Vegas, NV 89119
9  Telephone: 725-777-3000
   Email: tgray@gtg.legal
10
11 Counsel for Kavita Gupta,
   Chapter 11 Trustee

12              **UNITED STATES BANKRUPTCY COURT**

13                    **DISTRICT OF NEVADA**

14 | In re:                          | Case No.: BK-S-18-12456 GS
15 | DESERT OASIS APARTMENTS, LLC,   | Chapter 11
16 |                      Debtor.    | **CHAPTER 11 TRUSTEE KAVITA**
17 |                                 | **GUPTA'S JOINT PLAN OF**
                                       **LIQUIDATION**
18                                     **Dated: January 25, 2021**

19
20      **THE DISCLOSURE STATEMENT ACCOMPANYING THIS PLAN HAS
        BEEN SUBMITTED TO THE BANKRUPTCY COURT FOR CONDITIONAL
21      APPROVAL. CONSEQUENTLY, IF YOU ARE RECEIVING THIS PLAN
        AND THE DISCLOSURE STATEMENT, IT SHOULD NOT BE
22      CONSIDERED A SOLICITATION OF ACCEPTANCE OR REJECTION OF
        THE PLAN. ACCEPTANCE OR REJECTION MAY NOT BE SOLICITED
23      UNTIL AFTER THE BANKRUPTCY COURT CONDITIONALLY
        APPROVES THE DISCLOSURE STATEMENT AS CONTAINING
24      "ADEQUATE INFORMATION" TO ASSIST CREDITORS IN
        UNDERSTANDING WHAT IMPACT THE PLAN WOULD HAVE ON THEIR
25      CLAIMS AND TO MAKE AN INFORMED CHOICE ABOUT WHETHER OR
        NOT TO ACCEPT IT.**
26
27
28

*NUTI HART LLP*
*411 30TH STREET, SUITE 408*
*OAKLAND, CA 94609-3311*
*TELEPHONE: 510.506.7152*

- 1 -
Plan of Liquidation

# Table of Contents

**I.**      **ARTICLE 1 - DEFINITIONS**.............................................................1

**II.**     **ARTICLE 2 - DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS** ...............................................................6

**III.**    **ARTICLE 3 - TREATMENT OF UNCLASSIFIED CLAIMS**.......................7

**IV.**     **ARTICLE 4 - TREATMENT OF CLASSES OF CLAIMS AND INTERESTS** ..........................................................8

**V.**      **ARTICLE 5 – DISTRIBUTIONS TO CREDITORS** ......................................13

**VI.**     **ARTICLE 6 – MEANS FOR IMPLEMENTATION OF THE PLAN** ...........14

**VII.**    **ARTICLE 7 – PROCEDURES GOVERNING OBJECTIONS TO CLAIMS** ....................................................................20

**VIII.**   **ARTICLE 8 – EFFECT OF CONFIRMATION** ..............................................20

**IX.**     **ARTICLE 9 – RETENTION OF JURISDICTION**..........................................21

**X.**      **ARTICLE 10 – ACCEPTANCE OR REJECTION OF THIS PLAN** ...........22

**XI.**     **ARTICLE 11 – CONDITIONS TO EFECTIVENESS OF THE PLAN** ........23

**XII.**    **ARTICLE 12 – MISCELLANEOUS PROVISIONS** ......................................23

**NUTI HART LLP**
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510.506.7152

Kavita Gupta ("Trustee"), solely in her capacity as the Chapter 11 trustee and not individually for the estate of Desert Oasis Apartments, LLC ("DOA") and Desert Oasis Investments, LLC ("DOI" and together with DOA, the "Estates") proposes this Joint Chapter 11 Plan of Liquidation Dated January 25, 2021 ("Plan") pursuant to the provisions of Chapter 11 of the U.S. Bankruptcy Code.  The Disclosure Statement that accompanies this Plan contains a discussion of the Estates' financial condition and the manner in which DOA and DOI's assets will be distributed to creditors.  Confirmation of the Plan is the culmination of the Chapter 11 process. Creditors should thoroughly review both the Plan and the accompanying Disclosure Statement before deciding whether to accept or reject the Plan.

# I.    ARTICLE 1 - DEFINITIONS

1.1    **"2011 Plan"** means Desert Oasis Apartments LLC's Amended Plan of Reorganization filed in Case No. 11-17208-BAM [Dkt. 89, Case No. 11-17208] [1] confirmed by the Bankruptcy Court on December 30, 2011 [Dkt. 203, Case No. 11-17208].

1.2    **"Administrative Claim"** means a claim for any cost or expense of administration  of a kind specified in Section 503(b) of the Bankruptcy Code[2] that is entitled to priority over general unsecured claims under Section 507(a), including, without limitation, (i) any actual or necessary costs and expenses of preserving the bankruptcy estate incurred on or after the Petition Date and through and including the Effective Date of the Plan, (ii) fees payable to the court system or the U.S. Trustee under Section 1930 of Title 28, United States Code, and (iii) allowed compensation for fees and reimbursable expenses for legal and other services under Sections 330 and 331, or otherwise allowed by the Bankruptcy Court under Section 503.

1.3    **"Administrative Claim Bar Date"** means the date designated by the Bankruptcy Court not later than forty-five (45) days after entry of the Confirmation Order for filing applications for allowance of an Administrative Claim.

---

[1] Except as otherwise indicated, docket references are to the Desert Land case no. 18-12454-GS ("DL Dkt."), and the Desert Oasis Apartments case no. 18-12456-GS ("DOA Dkt.").

[2] All references to Chapter, Section or Rule are to Title 11 of the United States Code and the Federal Rules of Bankruptcy Procedure.

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510.506.7152

1.4    **"Allowed Administrative Claim"** means all or any portion of an Administrative Claim that has either been (i) allowed by a Final Order or (ii) has not been objected to within the time period established by the Plan or by an order of the Bankruptcy Court.

1.5    **"Allowed Claim"** means a claim against the Debtors in these Chapter 11 Cases, other than an Administrative Claim, as to which:

1.5.1    A proof of claim was (i) timely filed not later than the Claims Bar Date or any other applicable claim filing deadline, or (ii) deemed filed under Section 1111(a), or (iii) filed late pursuant to an Order of the Bankruptcy Court after notice and an opportunity for hearing appropriate in the circumstances; and

1.5.2    Such claim is not a Disputed Claim, or, if a Disputed Claim, such claim has been allowed in whole or in part by a Final Order, provided that any such claim shall be an Allowed Claim only to the extent stated in any such Final Order.

1.5.3    No disputed portion of any claim shall be considered as an Allowed Claim if an objection to the allowance of such claim is made by the Chapter 11 Trustee, Disbursing Agent, or another party in interest within the time set by the Plan or the Bankruptcy Court, and such objection to claim has not been denied by a Final Order of the Bankruptcy Court.

1.6    **"Allowed Secured Claim"** means that amount of an Allowed Claim which is secured by a lien or subject to offset within the provisions of Bankruptcy Code Section 506(a).

1.7    **"Allowed Unsecured Claim"** means any Allowed Claim that is a general unsecured claim, but does not include Allowed Secured Claims, Allowed Administrative Claims, Allowed Priority Claims, or Disputed Claims.

1.8    **"Assigned Refund Rights"** means any and all rights and any and all other legal or equitable remedies that DOA and/or the DOA Estate has, may have, or may in the future be deemed to have, to recover amounts paid by them to Northern Trust or any other creditor of DOA (other than a creditor described in Article 3) in the event that the Reversal Event occurs. (For the avoidance of doubt, the definition of Assigned Refund Rights preserves any rights that DOA and/or the DOA Estate may have under applicable law to recover funds paid to Northern

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510.506.7152

Trust or other creditors in the event that a Reversal Event occurs, if such rights exist. This provision does not to create a right of refund or recovery that does not or would not otherwise exist under applicable law or establish the extent of the right to any refund.)

1.9    **"Bankruptcy Code"** or **"Code"** means Title 11 of the United States Code, as it was in effect on the date of filing of the Plan, as amended by any amendments applicable to this Chapter 11 Case, and also includes section 157, 158, 1334, 1408-1412, and 1452 of Title 28 of the United States Code.

1.10    **"Bankruptcy Court"** or **"Court"** means the United State Bankruptcy Court for the District of Nevada having jurisdiction over the Chapter 11 Cases, and any other courts or panels of courts having competent jurisdiction over the Chapter 11 Cases or appeals from orders entered in the Chapter 11 Cases.

1.11    **"Bankruptcy Rules"** means the rules of practice and procedure in cases under Title 11 of the United State Code, as promulgated under 28 U.S.C. §2075.

1.12    **"Chapter 11 Cases"** means the case pending in the Bankruptcy Court as Case No. 18-12456-GS commenced against Desert Oasis Apartments LLC and as Case No. 18-12457-GS commenced against Desert Oasis Investments LLC by the filing of an involuntary petitions under Chapter 7 on April 30, 2018 and converted to proceedings under Chapter 11 on June 29, 2018.

1.13    **"Chapter 11 Trustee"** means Kavita Gupta, solely in her capacity as the duly appointed and acting Chapter 11 trustee for the Chapter 11 estates of Desert Oasis Apartments LLC and Desert Oasis Investments LLC, and not individually.

1.14    **"Claim"** means a claim against the Debtors as defined in Section 101(5).

1.15    **"Claimholder"** means the holder of a Claim.

1.16    **"Claims Bar Date"** means November 20, 2018 the deadline for filing proofs of claims or interests, other than Administrative Claims, by non-government creditors and interest holders against the Debtors.

1.17    **"Confirmation Order"** means the Bankruptcy Court's order confirming this Plan.

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510.506.7152

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510.506.7152

1.18    **"Debtors"** means Desert Oasis Apartments, LLC and Desert Oasis Investments, LLC.

1.19    **"DL"** means Desert Land, LLC.

1.20    **"Disbursing Agent"** means Kavita Gupta, or any individual subsequently appointed to serve as the Disbursing Agent.

1.21    **"Disputed Claim"** means any Claim, proof of which has been filed or deemed filed against the Debtors, as to which an objection or adversary proceeding has been timely filed and has not been withdrawn or disposed of by a Final Order of the Bankruptcy Court, or any claim which is designated as a Disputed Claim in this Plan or the Debtors' Schedules filed in the Bankruptcy Cases.

1.22    **"DOA"** means Desert Oasis Apartments, LLC.

1.23    **"DOI"** means Desert Oasis Investments, LLC.

1.24    **"Effective Date"** means the business day designated as such by the Disbursing Agent after which all conditions to the effectiveness of the Plan specified in Article 11 have been satisfied or waived.

1.25    **"Estates"** means the estates of Desert Oasis Apartments, LLC and Desert Oasis Investments, LLC created under Section 541 by the commencement of the Chapter 11 Cases.

1.26    **"Final Order"** means an order of the Bankruptcy Court as to which the appeal period has expired without an appeal having been timely taken or, if an appeal is timely taken, such order has been affirmed on appeal and any time for further appeal or petition has expired without any such further appeal or petition having been filed.

1.27    **"Gonzales Trust"** means the Gonzales Charitable Reminder Unitrust One.

1.28    **"Gonzales Trust Judgment"** means that certain judgment entered on April 25, 2018 by the United States District Court for the District of Nevada in *Gonzales v. Desert Land, LLC et al,* Case No. 2:15-cv-00915-RJC-VPC.

1.29    **"Gonzales Trust Judgment Lien"** means that certain Abstract of Judgment recorded by Tom Gonzales in the Clark County, Nevada Recorders Office on April 26, 2018,

Book 20180426, Instrument No. 0001026, of Official Records, and subsequently assigned to the Gonzales Trust.

1.30    **"Juniper"** means Juniper Loan Servicing, Inc.

1.31    **"Juniper Carveout Agreement"** means that certain Carveout Agreement between the Chapter 11 Trustee for DOI and Juniper Loan Servicing, Inc. approved by the Bankruptcy Court on June 22, 2020.

1.32    **"Juniper Carveout"** means the $508,500.00 paid to the DOI Estate pursuant to the Juniper Carveout Agreement.

1.33    **"Northern Trust"** means The Northern Trust Company.

1.34    **"Northern Trust Loan Documents"** means all documents evidencing DOA's obligations to Northern Trust, including but not limited to: (i) a Promissory Note in the initial principal amount of $3,400,000 dated July 18, 2014, as amended and extended, (ii) a Deed of Trust to secure an original indebtedness of $3,400,000.00 recorded July 18, 2014 in Book 20140718 as Instrument No. 01817 of Official Records, (iii) a document entitled "Assignment of Rents" recorded July 18, 2014 in Book 20140718 as Instrument No. 01818 of Official Records, as additional security for the payment of the indebtedness secured by the deed of trust recorded July 18, 2014 in Book 20140718 as Instrument No. 01817 of Official Records, (iv) a document entitled "Hazardous Substances Certificate and Indemnity Agreement" recorded July 18, 2014 in Book 20140718 as Instrument No. 01819 of Official Records, (v) a Subordination Non-Disturbance and Attornment Agreement and Estoppel Certificate recorded January 30, 2015 in Book 20150130 as Instrument No. 02082, (vi) a document entitled "Modification of Deed of Trust" recorded August 29, 2016 in Book 20160829 as Instrument No. 00004 of Official Records, (vii) a Promissory Note in the principal amount of $1,650,000 dated June 13, 2017, (viii) a Deed of Trust to secure an original indebtedness of $1,650,000.00 recorded June 15, 2017 in Book 20170615 as Instrument No. 03425 of Official Records, (ix) a document entitled "Assignment of Rents" recorded June 15, 2017 in Book 20170615 as Instrument No. 03426 of Official Records, and (x) a document entitled "Hazardous Substances Certificate and Indemnity

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510.506.7152

Agreement" recorded June 15, 2017 in Book 20170615 as Instrument No. 03427 of Official Records.

1.35    **"Litigation Claims"** means all legal claims for relief of every nature held by the Estates against another person or entity, and all other legal rights or causes of action of DOA and/or DOI.

1.36    **"Petition Date"** means April 30, 2018, the date on which the involuntary petitions were filed against DOA and DOI.

1.37    **"Plan"** means Chapter 11 Trustee Kavita Gupta's Joint Plan of Liquidation Dated January 25, 2021, including any modification(s) or amendment(s) thereto.

1.38    **"Priority Claim"** means any Allowed Claim entitled to priority pursuant to Code Section 507(a), but not including Administrative Claims.

1.39    **"Property Tax Refund Claims"** means any claims, refunds, or payment due to DOA, DOI or the Estate on account of overpayment to any taxing authority that collects real property taxes.

1.40    **"Reversal Event"** means a circumstance where both of the following have occurred: (a) entry of a judgment by the Bankruptcy Court or other court of competent jurisdiction reversing the Bankruptcy Court's April 22, 2020 judgment in favor of Northern Trust in Adv. Proc. No. 19-01108 [Adv. Proc. Dkt. 39], and (b) entry of judgment determining that the claim held by Brad Busbin, Trustee of the Gonzales Trust has priority over the claim held by Northern Trust.

1.41    **"U.S. Trustee"** means the Office of the United States Trustee.

**II.    ARTICLE 2 - DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS**

The claims against the Debtors and the equity interests in the Debtors are designated and classified as follows:

2.1    Class 1 (Unimpaired):  Class 1 consists of the Northern Trust secured claim against DOA.

2.2    Class 2 (Impaired):  Class 2 consists of the Gonzales Trust claim against DOA.

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510.506.7152

2.3     Class 3 (Impaired):  Class 3 consists of the Disputed Claim filed by the Gonzales against DOI.

2.4     Class 4 (Impaired):  Class 4 consists of the unsecured deficiency claim of Juniper Loan Servicing, Inc. against DOI.

2.5     Class 5 (Impaired):  Class 5 consists of the Disputed Claim filed September 23, 2020 by DL against DOA, which claim was amended on December 15, 2020 as an unsecured non-priority claim in the amount of $4.5 million.

2.6     Class 6 (Impaired):  Class 6 consists of the member interests in DOA and DOI.

## III.    ARTICLE 3 - TREATMENT OF UNCLASSIFIED CLAIMS

3.1     Allowed Administrative Claims: Except to the extent that the holder of an Allowed Administrative Claim has agreed in writing to different treatment of such claim or the Bankruptcy Court orders disbursement at another time, the holder of an Allowed Administrative Claim will receive cash in the allowed amount of such claim on the Effective Date, or, if such Administrative Claim is allowed after the Effective Date, then not later than ten days after the date an order allowing such Administrative Claim becomes a Final Order.  Allowed Administrative Claims against DOA shall be paid solely from assets of the DOA Estate and Allowed Administrative Claims against DOI shall be paid solely from assets of the DOI Estate.

3.2     Post-Confirmation Expenses:  The Disbursing Agent shall pay all fees and expenses of the Disbursing Agent, any professionals retained by the Disbursing Agent, and any other costs incurred after entry of the Confirmation Order in the normal course, subject to Article 6.12.

3.3     U.S. Trustee Fees: The Disbursing Agent shall pay in cash in full on the Effective Date any statutory fees under 28 U.S.C. §1930(a)(6) then owing and unpaid to the U.S. Trustee. After the Effective Date, the Disbursing Agent shall pay a quarterly fee to the U.S. Trustee, for deposit into the U.S. Treasury, for each quarter (including any fraction thereof) until the Chapter 11 Cases are  converted, dismissed, or closed by entry of a final decree, pursuant to 28 U.S.C. §1930(a)(6).  The U.S. Trustee Fees incurred by the DOA Estate

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510.506.7152

shall be paid solely from assets of the DOA Estate, and U.S. Trustee Fees incurred by the DOI Estate shall be paid solely from assets of the DOI Estate.

    3.4   <u>Priority Claims</u>: The bar date for a government entity to file a proof of claim expired on December 26, 2018. All claims for real property taxes have been paid in full through sale of DOA and DOI's real property assets, and no other creditor has asserted a Priority Claim against either DOA or DOI. However, if any Priority Claims are filed and Allowed, such claims will be paid in cash in full on the Effective Date, or such later date as the claim is Allowed. Allowed Priority Claims against DOA shall be paid solely from assets of the DOA Estate and Allowed Priority Claims against DOI shall be paid solely from assets of the DOI Estate.

## IV.   ARTICLE 4 - TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

    The classified claims and interests designated in Article 2 of the Plan will receive the following treatment:

    4.1   <u>Class 1 Claim (Northern Trust Claim Against DOA)</u>:

    4.1.1   Northern Trust shall retain all of the legal and equitable rights existing under the Northern Trust Loan Documents and applicable law, and no provision of this Plan shall alter or affect said rights.

    4.1.2   Unless the Bankruptcy Court orders otherwise, the Disbursing Agent shall reserve the sum of $75,000.00 from the assets of the DOA Estate for the additional attorney's fees, costs, and other expenses to which Northern Trust may be entitled under the Northern Trust Loan Documents and applicable law. If the Bankruptcy Court has established a reserve prior to confirmation of this Plan, the amount of the reserve shall be the amount ordered by the Bankruptcy Court, less payments made to Northern Trust out of the reserved funds.

    4.1.3   So long as no Reversal Event has occurred, the Disbursing Agent shall pay out of the assets of the DOA Estate to Northern Trust such amounts for its attorney's fees and costs as may be agreed between the Disbursing Agent, the Gonzales Trust, and Northern Trust, or that may be ordered by the Bankruptcy Court. Northern Trust shall provide the Disbursing Agent and the Gonzales Trust with

NUTI HART LLP
411 30ᵀᴴ STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510.506.7152

un-redacted monthly billing statements for any counsel that are seeking reimbursement of fees and expenses from the DOA Estate within 14 days after the end of each month.   The Disbursing Agent and the Gonzales Trust shall have 14 days after receipt to object to the monthly invoices, which objection shall articulate the specific grounds upon which their objections to each time entry are based.   If a timely objection is made, the parties shall meet and confer within 7 calendar days thereafter to resolve any disputes over the amounts payable to Northern Trust.  The Disbursing Agent shall disburse to Northern Trust any amounts the parties agree are properly reimbursable.  In the event the parties are unable to resolve the disputes over any fees and costs, Northern Trust may file an application requesting payment of the disputed fees and costs along with un-redacted invoices to the Bankruptcy Court.  The Gonzales Trust and/or the Disbursing Agent shall file any objections to the disputed fees/costs within 3 business days thereafter, and Northern Trust shall file any reply in support of its request for payment within 3 business days after the filing of the objections. Disputes concerning the amount of the reimbursable fees/costs shall be deemed submitted and Bankruptcy Court may determine the amount of disputed fees/costs without a further hearing or briefing, unless otherwise ordered by the Court.  All payments made to Northern Trust pursuant to this Article 4.1.3 remain subject to Article 4.2.3, Article 4.2.4, and Article 4.2.5.

4.1.4    If a Reversal Event occurs, the amount and priority of the Class 1 Claim shall be determined by the judgment causing the Reversal Event to come into effect, or any subsequent judgment or Final Order entered by a court of competent jurisdiction establishing the amount and/or priority of such claim.  In such event, Northern Trust shall comply with any court order requiring it to disgorge or return any funds received from DOA and/or the DOA Estate, including any funds paid on account of the Class 1 Claim pursuant to this Plan.

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510.506.7152

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510.506.7152

4.2    Class 2 Claim (Gonzales Trust Claim Against DOA):

4.2.1    So long as no Reversal Event has occurred, the Class 2 Claim shall be deemed an Allowed Unsecured Claim in the amount of $13,177,708.33.

4.2.2    So long as no Reversal Event has occurred and subject to Article 5.3, the Class 2 Claim shall be entitled to receive a pro-rata distribution equal to all funds in the DOA Estate remaining after payment in full of: (a) all costs and expenses of the Disbursing Agent, any professionals retained by the Disbursing Agent, and other costs of administering the DOA Estate after entry of the Confirmation Order, (b) all Allowed Administrative Claims against the DOA Estate, (c) all Allowed Priority Claims against the DOA Estate, and (d) the Class 1 Claim, divided by the total amount of the Allowed Class 2 Claim, plus any non-subordinated component of the Class 5 Claim.

4.2.3    The Assigned Refund Rights shall be assigned to the Gonzales Trust on the Effective Date.  (For the avoidance of doubt, this Article 4.2.3 preserves and assigns to the Gonzales Trust any rights that DOA or the DOA Estate may have under applicable law to recover funds paid to Northern Trust or other creditors in the event that a Reversal Event occurs, if such rights exist.  No provision of this Article 4.2.3 creates a right of refund that does not or would not otherwise exist under applicable law or establish the extent of the right to any refund, subject to the rights that may arise under Section 4.2.4.)

4.2.4    If a Reversal Event occurs, the amount and priority of the Class 2 Claim shall be as determined in the judgment causing the Reversal Event to come into effect, and the amount of the Class 2 Claim shall be as determined by such judgment or final order or judgment of a court of competent jurisdiction establishing the amount of such claim.

4.2.5    If a Reversal Event occurs, the Class 2 Claim shall hold and may exercise all of the Assigned Refund Rights (to the extent such rights exist).

4.2.6   If a Reversal Event occurs, the Disbursing Agent shall distribute to the Class 2 Claimholder all remaining funds in the DOA Estate after payment in full of: (a) all costs and expenses of the Disbursing Agent, any professionals retained by the Disbursing Agent, and other costs of administering the DOA Estate after entry of the Confirmation Order, (b) all Allowed Administrative Claims against the DOA Estate, and (c) all Allowed Priority Claims against the DOA Estate.

4.3     Class 3 Claim (Disputed Gonzales Trust Claim Against DOI):  To the extent Allowed by a Final Order, the Class 3 Claim in the DOI Estate shall be paid:

4.3.1   the Allowed amount of the Class 3 Claim up to $141,500.00 out of the Juniper Carveout; and

4.3.2   in the event that the DOI Estate recovers funds in addition to the Juniper Carveout and the Class 3 Claim is Allowed by a Final Order in an amount greater than the Juniper Carveout, the Class 3 Claim shall receive a pro-rata distribution along with the Class 4 Claim of such additional funds remaining in the DOI Estate after payment in full of: (a) all costs and expenses of the Disbursing Agent, any professionals retained by the Disbursing Agent, and all other costs of administering the DOI Estate after entry of the Confirmation Order, (b) Allowed Administrative Claims against the DOI Estate, and (c) Allowed Priority Claims against the DOI Estate.

4.3.3   The Disbursing Agent shall have ninety (90) days after the Effective Date to file a motion in the United States District Court for the District of Nevada seeking to amend the Gonzales Trust Judgment to remove DOI as a judgment debtor, and/or to file an objection to the Gonzales Trust's claim against DOI.

4.4     Class 4 (Juniper's Claim Against DOI):  Pursuant to the Juniper Carveout Agreement, the Class 4 Claim shall not be entitled to any distribution out of the Juniper Carveout.  In the event that the DOI Estate recovers funds in addition to the Juniper Carveout, the Class 4 Claim shall receive a pro-rata distribution along with the Class 3 Claim of such additional funds remaining in the DOI Estate after payment in full of: (a) all costs and expenses

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510.506.7152

of the Disbursing Agent, any professionals retained by the Disbursing Agent, and all other costs of administering the DOI Estate after entry of the Confirmation Order, (b) Allowed Administrative Claims against the DOI Estate, and (c) Allowed Priority Claims against the DOI Estate.

    4.5    <u>Class 5 (DL's Disputed Claim Against DOA)</u>:

    4.5.1    The Disbursing Agent shall have ninety (90) days after the order dismissing the DL case becomes a Final Order to file an objection to the Class 5 Claim and to take any other appropriate and necessary action to seek disallowance of such claim.

    4.5.2    To the extent provided in Article 4 of the 2011 Plan, the Allowed Amount of the Class 5 Claim shall be subordinated in right of payment to the Class 2 Claim until the Class 2 Claim is paid in full.

    4.5.3    Provided no Reversal Event has occurred, to the extent not waived, released, disallowed or subordinated, the Class 5 Claimholder shall receive a pro-rata distribution of the Allowed Amount of its claim equal to all funds remaining in the DOA Estate after payment in full of: (a) all expenses of the Disbursing Agent, any professionals retained by the Disbursing Agent, and other costs of administering the DOA Estate incurred after entry of the Confirmation Order, (b) all Allowed Administrative Claims, (c) all Allowed Priority Claims, and (d) the Class 1 Claim, divided by the total amount of the Allowed Class 2 Claim, plus any non-subordinated component of the Class 5 Claim.

    4.5.4    No payment(s) to the Class 5 Claimholder on account of its Allowed Claim shall be made until after the litigation between the Gonzales Trust and Northern Trust concerning priority of their respective rights is resolved by a Final Order.

    4.6    <u>Class 6 (Member Interests)</u>: All member interests or other equity interests held by equity holders of DOA and DOI shall be cancelled.

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510.506.7152

# V.    ARTICLE 5 – DISTRIBUTIONS TO CREDITORS

5.1     As a condition to receiving distributions under this Plan, all Allowed Claim holders in Classes 1, 2, 3, 4 and 5 (to the extent applicable) shall provide the Disbursing Agent with a completed and signed Internal Revenue Service Form W-9 disclosing their federal tax identification number.

5.2     The Disbursing Agent shall make distributions solely from the assets of the DOA Estate to Northern Trust on account of the Class 1 Claim in accordance with the provisions of Articles 4.1.2 and 4.1.3.

5.3     Within 15 days after the Effective Date, the Disbursing Agent shall make an initial distribution of $5,000,000.00 solely from the assets of the DOA Estate to the Gonzales Trust on account of the Class 2 Claim.  The Disbursing Agent may make subsequent distributions to the Gonzales Trust solely from the assets of the DOA Estate, provided that the Disbursing Agent maintains sufficient reserves to pay all other Claims against the DOA Estate that have been or may be Allowed.  As soon as practicable after the litigation between the Gonzales Trust and Northern Trust concerning priority of their respective rights is resolved by a Final Order, the Disbursing Agent shall make a final distribution to the Gonzales Trust solely from the assets of the DOA Estate on account of the Class 2 Claim.

5.4     In the event that the motion and/or objection referenced in Article 4.3.3 is not timely filed, or the Class 3 Claim is subsequently Allowed by a Final Order, the Disbursing Agent shall make a distribution out of the Juniper Carveout to the Gonzales Trust on account of the Class 3 Claim, up to a maximum of $141,500.00.  Any additional distributions to the Gonzales Trust on account of the Class 3 Claim shall be made solely out of the assets of the DOI Estate.

5.5     Any distribution to Juniper on account of the Class 4 Claim shall be made solely out of the assets of the DOI Estate.

5.6     The Disbursing Agent shall make no distributions on account of the Class 5 Claim unless and until: (a) such claim becomes an Allowed Claim, and in that event, only to the extent that the Bankruptcy Court has determined by a Final Order that the Class 5 Claim is not

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510.506.7152

subordinated to the Class 2 Claim; (b) the litigation between the Gonzales Trust and Northern Trust concerning priority of their respective rights has been resolved by a Final Order; and (c) no Reversal Event has occurred.  If the foregoing conditions are satisfied, the Disbursing Agent shall make an initial distribution on account of the Class 5 Claim.  The amount of said initial distribution shall be calculated by dividing the amount paid as of that date on account of the Class 2 Claim by the total amount of the Class 2 Claim ($13,177,708.33) and multiplying that figure by the amount of the Class 5 Claim that has been Allowed and determined not to be subordinated to the Class 2 Claim.  (For purposes of illustration, if the Class 5 Claim becomes an Allowed Claim in the amount of $4,500,000.00 and that claim is determined by a Final Order not to be subordinated to the Class 2 Claim, and the Class 2 Claim has been paid $5,000,000.00, the Disbursing Agent shall distribute $1,707,426.00 to the Class 5 Claim holder.

$5,000,000.00/$13,177,708.33 = 0.379428 x $4,500,000.00 = $1,707,426.00.)  The Disbursing Agent shall make subsequent pro rata distributions on account of the Class 5 Claim (again, only to the extent that the Class 5 Claim is both allowed and not subordinated to the Class 2 Claim) at the same time as subsequent distributions are made to the Class 2 Claim, with each Allowed Claim paid based upon its pro rata proportion of the remaining distributable funds.  If a Reversal Event occurs, no distribution shall be made to the Class 5 Claimholder.

     5.7    The Disbursing Agent shall make no distributions on account of Class 6 interests.

## VI.    ARTICLE 6 – MEANS FOR IMPLEMENTATION OF THE PLAN

    The Plan shall be implemented as follows:

     6.1    <u>Vesting of Property/Continuation of Estates</u>.  Notwithstanding Section 1141(b), no property of DOA or DOI and/or the Estates shall re-vest in DOA or DOI as of the Effective Date.  The estates created by operation of Section 541(a) shall continue, and all assets of DOA and DOI and/or their respective Estates shall be deemed to be property of their respective bankruptcy estates until distributed in accordance with this Plan.  The provisions of Section 362(a) shall continue in full force and effect following entry of the Confirmation Order, and stay any person from taking any act, commencing any suit, or enforcing any right, which has the effect of asserting, liquidating, or enforcing any claim against any property of the Estates that

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510.506.7152

arose prior to entry of the Confirmation Order.  The sole recourse of a creditor holding a claim that arose prior to entry of the Confirmation Order shall be an action in the Bankruptcy Court seeking to enforce its rights under this Plan.

6.2     Source of Plan Distributions.  The Disbursing Agent shall make distributions required under this Plan to holders of claims against DOA solely out of assets of the DOA Estate. The Disbursing Agent shall make distributions required under this Plan to holders of claims against DOI solely out of assets of the DOI Estate.  No provision of this Plan shall be deemed to substantively consolidate the DOA Estate and the DOI Estate.

6.3     Gonzales Trust Judgment Lien.  On the Effective Date, the Gonzales Trust Judgment Lien shall be deemed avoided and thereafter be of no force or affect with respect to property of the Estates without the necessity of filing any further action or Court order. However, if a Reversal Event occurs, the resulting priority and effect of the Gonzales Trust Judgment Lien in relation to any claim (other than a claim referenced in Article 3) shall be as determined in the orders or judgments causing the Reversal Event to come into effect.

6.4     Property Free and Clear of Liens and Claims.  Except for claims explicitly preserved in Articles 3 and 4 of this Plan, on the Effective Date, all property of DOA, DOI and/or their respective Estates shall be held by the Disbursing Agent free and clear of all claims and interests of creditors, equity security holders of DOA and DOI.

6.5     Administrative Reserve.  On the Effective Date, the Disbursing Agent shall establish separate reserves for the payment of the projected costs and expenses of the Disbursing Agent, any professionals retained by the Disbursing Agent, and all other costs of administering the DOA Estate and DOI Estate after entry of the Confirmation Order.  The Disbursing Agent reserves the right to increase the amount of the reserves, as necessary, with written notification to the Gonzales Trust and any other unsecured creditor holding an Allowed Claim.

6.6     Payment of Administrative and Priority Claims.  On the Effective Date or such later date that an Administrative Claim or Priority Claim is Allowed, the Disbursing Agent shall pay the following:

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510.506.7152

6.6.1    Any fees payable to the U.S. Trustee under 28 U.S.C. §1930(a)(6) that are then due and unpaid; and

6.6.2    Any Allowed Administrative Claims and Allowed Priority Claims, unless the holder of any such claim agrees in writing to a later payment date. The Disbursing Agent shall pay any subsequently Allowed Administrative Claims and Allowed Priority Claims in full promptly after a Final Order allowing such claim, unless otherwise agreed in writing by the holder of any such claim.

6.7    Estimation of Claims.  In order to effectuate distributions pursuant to this Plan and avoid undue delay in the administration of the Estate, the Disbursing Agent after notice and a hearing may seek an order of the Bankruptcy Court estimating the amount of a Disputed Claim or limiting the amount of property that must be withheld from distribution on account of a Disputed Claim.

6.8    Preservation of Rights/Causes of Action. Nothing in the Plan is intended to, nor shall it in any way limit, the ability of the Chapter 11 Trustee or the Disbursing Agent, or any successor thereto or representative designated for specific purposes pursuant to the Plan, to:

6.8.1    Exercise the rights and powers conferred by applicable bankruptcy law, including but not limited to, the pursuit of actions described in Chapter 5 of the Bankruptcy Code;

6.8.2    Pursue collection of any Property Tax Refund Claims;

6.8.3    Prosecute objections to claims other than against the Class 2 Claim (whether or not their holders have accepted the Plan);

6.8.4    Assert any rights of contribution or indemnity against DL or any other party, and/or to offset any such claims for contribution against claims asserted by a creditor against the Estates;

6.8.5    Pursue any Litigation Claims and all other causes of action against creditors or any other party that are held by DOA, DOI and/or the Estates under applicable non-bankruptcy laws at the time the Confirmation Order is entered, or that arise after entry of the Confirmation Order;

NUTI HART LLP
411 30ᵀᴴ STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510.506.7152

6.8.6  Pursue sanctions or other remedies against any person or entity based on their assertion of claims against DOA, DOI and/or the Estates; or

6.8.7  Exercise the rights and powers of corporate governance and take other corporate actions through DOA and DOI's officers, directors, managers and member interest holders; provided that all such powers and actions are exercised in all respects in compliance with the provisions of the Plan and the Confirmation Order.

6.9    <u>Subordination of Class 3 Claim</u>.  No provision of this Plan shall be deemed to alter or otherwise affect the provisions subordinating the claims of Desert Land LLC and other insider entities contained in the 2011 Plan.

6.10    <u>Post-Confirmation Management</u>.  Upon entry of the Confirmation Order, the Chapter 11 Trustee shall be discharged from her statutory duties and her bond will be exonerated.  After entry of the Confirmation Order, the Estates shall be managed by the Disbursing Agent.  The Disbursing Agent shall be compensated at the rate of $550.00 per hour for her services and be reimbursed for any reasonable and necessary costs incurred in connection with carrying out her duties under the Plan.

6.11    <u>Disbursing Agent's Powers</u>.  The Disbursing Agent shall be deemed the successor to the Chapter 11 Trustee for all purposes and shall be deemed substituted into any pending adversary proceeding or contested matter to which the Chapter 11 Trustee was a party as of entry of the Confirmation Order.  Subject to Article 6.12, the Disbursing Agent shall be vested with all of the rights and powers of a trustee appointed under  Section 1106 and may, without the necessity of obtaining the Bankruptcy Court's, approval:

6.11.1  open, maintain and administer bank accounts at authorized depositories approved by the U.S. Trustee;

6.11.2  pay all expenses of administering the Estates after entry of the Confirmation Order, including compensation and expense reimbursement due to the Disbursing Agent and any professionals retained by the Disbursing Agent on a monthly basis;

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510.506.7152

6.11.3   use, sell, or abandon property of DOA, DOI and/or the Estates;

6.11.4   investigate, analyze, commence, sell, prosecute, compromise, or abandon any Litigation Claim or other cause of action held by DOA, DOI and/or the Estates against any third party;

6.11.5   review and object to claims, enter into compromises to allow and satisfy Disputed Claims;

6.11.6   retain professionals to assist the Disbursing Agent with carrying out her duties under the Plan;

6.11.7   obtain all reasonable insurance coverage for the Disbursing Agent and the Estate, its agents, representatives, employees or independent contractors, including, without limitation, coverage with respect to the liabilities, duties and obligations of the Disbursing Agent and her agents, representatives, employees or independent contractors under the Plan;

6.11.8   file all reports as may be required by and pay all fees due under 28 U.S.C. §1930(a)(6);

6.11.9   file an application for entry of a final decree in the Chapter 11 Cases at such time as the cases are substantially consummated, whether or not all of the payments required under the Plan have been completed;

6.11.10 do and/or cause to be done all things necessary and appropriate to administer and execute the Plan and the Estates that are consistent with the terms of the Plan, the Confirmation Order, and the Bankruptcy Code, the Bankruptcy Rules and applicable law; and

6.11.11 execute and deliver any and all documents necessary or appropriate to carry out the Plan.

6.12   <u>Consultation With Gonzales Trust</u>.  The Disbursing Agent shall consult with the Gonzales Trust prior to:

6.12.1  commencing any Litigation Claims;

6.12.2  compromising any Disputed Claim; and

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510.506.7152

18

6.12.3  paying compensation and expense reimbursement to the Disbursing Agent and any professionals retained by the Disbursing Agent.

6.12.4  If the Gonzales Trust objects to any of the actions referenced in Articles 6.11.1 through 6.11.3, the Disbursing Agent may file an application or motion with the Bankruptcy Court seeking approval of same.

6.13    <u>No Effect on Rights of the Gonzales Trust</u>.  The provisions of Article 4 and Article 6 of this Plan affecting the rights of the Class 2 Claimholder are for the benefit solely of the DOA Estate and the Gonzales Trust, and no provision of the Plan or Confirmation Order shall be deemed to alter, impair or effect any rights, claims, or defenses of the Gonzales Trust in *Busbin v. Shotgun Creek Investments LLC, et al*, Adv. Proc. No. 19-01108, any appeal thereof, or any proceeding relating thereto.  Without limiting the generality of the foregoing, the avoidance of the Gonzales Trust Judgment Lien and treatment of the Class 2 Claim as provided in Article 4.2 for purposes of the Plan shall not impair or otherwise affect the Assigned Refund Rights, and any other rights that the Gonzales Trust has or may have to seek disgorgement or otherwise recover sums that the Chapter 11 Trustee paid to Northern Trust pursuant to the Bankruptcy Court's August 28, 2020 Order Directing Disbursement to Northern Trust [Dkt. 128], or to seek disgorgement or otherwise recover sums paid by the Chapter 11 Trustee and/or the Disbursing Agent to any creditor (other than a creditor described in Article 3).

6.14    <u>Exculpation</u>.  From March 28, 2019 through the Effective Date, the Chapter 11 Trustee and her attorneys, agents and employees shall not have any liability to DOA, DOI, or any other claimants or creditors, or other parties in interest in the Chapter 11 Cases for any act or omission in connection with or arising out of the Chapter 11 Cases, any contract, instrument, release or other agreement or document entered into during the Chapter 11 Cases or otherwise created in connection with this Plan, including, without limitation, prosecuting confirmation of the Plan, confirmation of the Plan, and the administration of the Estates, the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct, and in all respects, such persons will be entitled to rely on the advice of counsel with respect to their duties and responsibilities with respect to the Chapter 11 Cases and the Plan.

Plan of Liquidation

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510.506.7152

## VII.    ARTICLE 7 – PROCEDURES GOVERNING OBJECTIONS TO CLAIMS

7.1    Except as otherwise provided in paragraphs 7.1.1 and 7.1.2 immediately below, any objection to claims (other than the Class 2 and Class 5 Claims) shall be filed no later than ninety (90) days after the Effective Date. As to the Class 5 Claim, any objection must be filed within ninety (90) days after the order dismissing the DL case is a Final Order. The deadline for objecting to any claim may be extended by:

7.1.1    Written agreement of the Claimholder; or

7.1.2    Order of the Bankruptcy Court, made on a showing of good cause after motion served before the expiration of the deadline (including any previously extended deadline) on the Claimholder; provided, that in the event the Bankruptcy Court denies any timely brought motion to extend the deadline, the deadline shall nevertheless be extended until fifteen (15) days after the date of entry of the order denying the requested extension.

7.2    All provisions of Section 502 and Rules 3001, 3003, and 3007 and the Bankruptcy Court's local rules apply to and shall govern any objections to claims.

7.3    The Disbursing Agent may, but will not be required to, set off against or recoup from the payments to be made pursuant to the Plan in respect of any claim (other than the Class 2 Claim), any claim of any nature whatsoever that DOA or DOI may have against the holder, but neither the failure to do so nor the allowance of any claim will constitute a waiver or release by the DOA estate or the Disbursing Agent of any such claim.

## VIII.    ARTICLE 8 – EFFECT OF CONFIRMATION

8.1    Upon Entry of the Confirmation Order, all debts of DOA and DOI will be deemed fixed and adjusted pursuant to the Plan and DOA and DOI will have no further liability on account of claims or interests except as set forth in the Plan. All payments and all distributions made by the Disbursing Agent under the Plan will be in full and final satisfaction, settlement and release of all Claims; provided, however, that nothing contained in the Plan will be deemed to constitute or result in a discharge of the Debtors under Section 1141(d)(3).

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510.506.7152

8.2     Upon entry of the Confirmation Order, the provisions of the Plan shall be binding upon DOA and DOI, any person or entity acquiring property under the Plan, and any creditor or interest holder, whether or not the claim or interest of such creditor or interest holder is impaired under the Plan and whether or not such creditor or interest holder has accepted the Plan.

## IX.    ARTICLE 9 – RETENTION OF JURISDICTION

After entry of the Confirmation Order, the Bankruptcy Court shall retain all authority and jurisdiction as provided under the Bankruptcy Code and other applicable law and this Plan to enforce the provisions, purposes, and intent of this Plan, or any modification hereof, including without limitation, matters or proceedings relating to:

9.1     The rights, title, or interest of DOA, DOI and/or the Estates in any property;

9.2     Allowance, disallowance, reconsideration, estimation, compromise, settlement, adjustment, treatment, or liquidation of claims and objections thereto;

9.3     Requests for allowance and payment of Administrative Claims and Priority Claims against the Estates, including claims of professionals retained by the Chapter 11 Trustee;

9.4     Requests for allowance and payment of any fees or costs incurred by the Disbursing Agent and any professionals retained by the Disbursing Agent;

9.5     Requests for allowance and payment of any fees and costs by Northern Trust on account of its Class 1 Claim;

9.6     Resolution of controversies and disputes, including disputes regarding interpretation of the Plan and the Confirmation Order, and the correction of any mistake, defect, or omission regarding interpretation or enforcement of the Plan and the Confirmation Order;

9.7     Modification(s) of the Plan pursuant to Section 1127;

9.8     Adjudication of any actions brought by the Chapter 11 Trustee or the Disbursing Agent on behalf of the Estates to enforce any right or recover any claim created, granted, or preserved under the Plan;

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510.506.7152

NUTI HART LLP
411 30ᵀᴴ STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510.506.7152

9.9     Adjudication of *Busbin v. Shotgun Creek Investments LLC, et al*, Adv. Proc. No. 19-01108-GS and enforcement of any judgments or orders issued in connection with said adversary proceeding, including but not limited to entry of a judgment causing a Reversal Event to come into effect entered by the Bankruptcy Court, the United States District Court for the District of Nevada, the United States Court of Appeals for the Ninth Circuit, or any other court of competent jurisdiction, and granting any remedies to which the Gonzales Trust may be entitled as holder of the Assigned Refund Rights;

9.10    Extension of deadlines, including the deadline to object to claims or commence actions seeking the recovery of money or property or granting other relief;

9.11    Entry of orders in aid of implementation of this Plan;

9.12    Orders on motions by parties in interest to convert the cases to a proceeding under Chapter 7 or to dismiss the case;

9.13    Such other matters for which jurisdiction is provided under the Bankruptcy Code, the Plan the Confirmation Order, or other applicable law; and,

9.14    Entry of a final decree closing the Chapter 11 Cases.

## X.     ARTICLE 10 – ACCEPTANCE OR REJECTION OF THIS PLAN

10.1    <u>Voting Classes</u>.  Class 2, Class 3, Class 4, and Class 5 are impaired and shall be entitled to vote to accept or reject this Plan.

10.2    <u>Presumed Acceptance of this Plan</u>. Class 1 is unimpaired and is conclusively presumed to have accepted this Plan.

10.3    <u>Presumed Rejection of the Plan</u>. Class 6 is impaired and is conclusively presumed to have rejected this Plan.

10.4    <u>Non-Consensual Confirmation</u>.  The Chapter 11 Trustee requests that, if a class of impaired claims or interests does not accept this Plan by the requisite majorities, confirmation nevertheless proceed under Section 1129(b).

//

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510.506.7152

**XI.    ARTICLE 11 – CONDITIONS TO EFECTIVENESS OF THE PLAN**

The following are conditions precedent to the occurrence of the Effective Date:

11.1    The Bankruptcy Court shall have conducted the hearing on Confirmation of this Plan; and

11.2    The Confirmation Order shall be a Final Order.

**XII.    ARTICLE 12 – MISCELLANEOUS PROVISIONS**

12.1    <u>Severability</u>.  If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

12.2    <u>Captions</u>.  The headings contained in the Plan are for reference and convenience only and do not affect the meaning or interpretation of the Plan.

12.3    <u>Controlling Effect</u>.   Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Nevada govern the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as otherwise provided in the Plan.

12.4    <u>Withholding and Reporting Requirements</u>.  In connection with the Plan and distributions thereon, the Disbursing Agent will comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions pursuant to the Plan will be subject to any such withholding and reporting requirements.

12.5    <u>Notices</u>.  Any notice to the Chapter 11 Trustee or the Disbursing Agent shall be in writing and mailed, and will be deemed to have been given on the day of transmission if sent by email, and three days after the date sent if sent by first class mail, postage prepaid and addressed as follows:

Kavita Gupta
Gupta Ferrer LLP
1300 Bristol Street North, Suite 100
Newport Beach, CA  92660
(Tel.) 949-387-4470
Email: kgupta@guptaferrer.com

and

23

Kevin W. Coleman/Kimberly Fineman
Nuti Hart LLP
411 30th Street, Suite 408
Oakland, CA 94609
(Tel.) 510 506-7152
Email: kcoleman@nutihart.com
kfineman@nutihart.com

12.6    <u>Rights in the Event of Default</u>.  In the event the Disbursing Agent materially

defaults in the performance of the obligations under this Plan, any creditor shall be entitled to

enforce the Plan exclusively in the Bankruptcy Court.   In addition, any creditor and the U.S.

Trustee may seek conversion of this case to a proceeding under Chapter 7.

12.7    <u>Modification of this Plan</u>.  To the fullest extent permitted under Section 1127, this

Plan may be altered, amended or modified at any time prior to confirmation.  At any time after

confirmation, the Disbursing Agent may amend or modify the terms of the Plan if: (a) such

amendment or modification is approved by any creditor adversely impacted by the amendment,

and the modification does not adversely impact any other creditor or Class of creditors, or (b) as

permitted by the Bankruptcy Court.

Dated:  January 25, 2021            KAVITA GUPTA, CHAPTER 11 TRUSTEE FOR
                                    THE ESTATES OF DESERT OASIS
                                    APARTMENTS, LLC AND DESERT OASIS
                                    INVESTMENTS, LLC


                                    By: */s/ Kavita Gupta*
                                        Kavita Gupta, solely in her capacity as
                                    Chapter 11 Trustee and not individually


Dated:  January 25, 2021            NUTI HART LLP


                                    By: */s/ Kevin W. Coleman*
                                        Kevin W. Coleman
                                        Attorneys for Kavita Gupta, Chapter 11 Trustee

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510.506.7152

Plan of Liquidation