STEVEN T. GUBNER – Nevada Bar No. 4624
JERROLD L. BREGMAN – *Pro Hac Vice* application pending,
and granted in the related case of Desert Land, LLC
SUSAN K. SEFLIN – *Pro Hac Vice* granted in related case
BRUTZKUS GUBNER
300 S. 4th Street, Suite 1550
Las Vegas, NV 89101
Telephone: (702) 835-0800
Facsimile:   (866) 995-0215
Email:   sgubner@bg.law
            jbregman@bg.law
            sseflin@bg.law

Attorneys for Jeffrey I. Golden,
Chapter 11 Trustee of creditor Desert Land, LLC

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>DESERT OASIS APARTMENTS, LLC,<br><br>Debtor. | Case No.  BK-S-18-12456 GS<br>Chapter 11<br><br>**DESERT LAND, LLC'S NOTICE OF MOTION AND MOTION FOR AN ORDER ALLOWING ITS CLAIM AT $4.5 MILLION FOR PURPOSES OF PLAN CONFIRMATION, VOTING, AND ANY DISTRIBUTION RESERVE, PURSUANT TO RULE 3018(a); RESERVATION OF RIGHT TO CONDUCT DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[*Filed concurrently with Declaration of Jerrold L. Bregman and Request For Judicial Notice*]<br><br>Hearing Date:  March 11, 2021<br>Hearing Time:  1:30 p.m. |

Jeffrey I. Golden ("Trustee Golden"), solely in his capacity as the duly appointed and serving

chapter 11 trustee for the bankruptcy estate of Desert Land, LLC ("Desert Land"), whose case is pending

in the above-captioned Court as Case No. BK-S-18-12454 GS (the "Desert Land Case"), hereby moves

(the "Motion") this Honorable Court for entry of an order allowing Desert Lands' claim (the "DL Claim")

against Desert Land's related debtor entity Desert Oasis Apartments, LLC (the "Debtor" or "Apartments")

2581213

for purposes of plan confirmation, voting, and any distribution reserve established in this case, as a general unsecured claim, not subject to subordination, setoff or recoupment, in the amount of $4.5 million. Kavita Gupta ("Trustee Gupta"), the chapter 11 trustee for Apartments, filed her Joint Plan of Liquidation [Doc. #239] (the "Plan") and accompanying disclosure statement [Doc. #240] (the "Disclosure Statement") in Apartments' bankruptcy case on behalf of Apartments and another related debtor entity, Desert Oasis Investments, LLC ("Investments") on January 26, 2021.

While the Plan treats the DL Claim as a "disputed claim," and provides that the DL Claim shall receive no distribution under the Plan, there has been no objection filed to the DL Claim as of the date hereof.  Thus, this Motion is meant to eliminate any confusion about the allowance of the DL Claim, whether or not an objection to the DL Claim is filed before the Plan confirmation hearing, in order to confirm Trustee Golden's standing to vote on and respond to the Plan.[1]

The Motion is brought pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure ("Rule 3018(a)") and is made based upon the following Points and Authorities, the concurrently filed Declaration of Jerrold L. Bregman (the "Bregman Decl."), the documents annexed to the request that the Court take judicial notice of certain documents pursuant to Rule 201 of the Federal Rules of Evidence (the "RJN") filed concurrently herewith, the papers, pleadings and other documents on file in the Debtor's Case and in the Desert Land Case, and any oral argument at the hearing on the Motion.

This Motion is premised on the fact that the DL Claim is a material asset of Desert Land's bankruptcy estate.  Trustee Golden brings this Motion in furtherance of his fiduciary duty to protect and preserve the DL Claim for the benefit of Desert Land's bankruptcy estate and its creditors.[2]

---

[1] The Plan impermissibly separately classifies the DL Claim from other general unsecured claims and unreasonably discriminates in its treatment of the DL Claim.

[2] Although the above-captioned Court indicated on the record of a hearing in the Desert Land Case, held December 10, 2020, that the Court intends to dismiss that case, the Court has not issued any order dismissing that case as of the date this Motion was filed.  At a further status conference in the Desert Land Case on the motion to dismiss, currently scheduled for March 11, 2021, Trustee Golden will advocate for reconsideration of the Court's tentative ruling, including on the grounds that unsecured creditors holding material claims did not indicate support for dismissal and that it is in the best interests of creditors that the Desert Land Case be converted to chapter 7 rather than dismissed.

2581213

    <u>Reservation of Right to Conduct Discovery</u>:  Notice is hereby given that Trustee Golden reserves the right to seek to take appropriate discovery of any factual matter(s) pertinent to the Motion that any party in interest may credibly and timely contend is subject to dispute.

    Respectfully submitted.

DATED: February 11, 2021

                         **BRUTZKUS GUBNER**

                         By: _____
Jerrold L. Bregman (*pro hac vice* application
pending, and granted in the related case of
Desert Land, LLC)
Attorneys for Jeffrey I. Golden, Chapter 11
Trustee for creditor Desert Land, LLC

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................ 1

II.     FACTS .......................................................................................................... 4

        A.      The DL Claim Was Scheduled, Filed, And Not Disputed .................... 4

        B.      The DL Claim Was Allowed In Apartments' 2011 Case And Paid Pursuant To Apartments' 2011 Plan .................................................... 6

        C.      The Removal Of The DL Claim Occurred At A Time When Trustee Gupta Was Administering Both Estates ................................................ 7

        D.      The Gonzales Claim Received No Priority Under Apartments' 2011 Plan Relative to the CL Claim ............................................................ 11

III.    ARGUMENT ................................................................................................ 12

        A.      The DL Claim Should Be Deemed Allowed Pursuant to Rule 3018(a) ............................ 12

        B.      The DL Claim Is An "Account Stated" Claim ................................... 13

        C.      *Res Judicata* Bars Disputing The Previously Allowed DL Claim ....................................... 14

        D.      The DL Claim Is Not Subject To Subordination, Setoff Or Recoupment ........................... 15

        E.      A Fiduciary For Multiple Estates May Not Take A Position Detrimental To One Estate For The Benefit Of The Other Estate .......................................................... 16

IV.     CONCLUSION ............................................................................................. 17

i

2581213

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Assurance Co. of America v. Campbell Concrete of Nevada, Inc.,*
    835 F.Supp.2d 995 (D. Nev. 2011)...................................................................13

*Bell Road Inv. Co. v. M. Long Arabians (In re M. Long Arabians),*
    103 B.R. 211 (9th Cir. BAP 1989) ....................................................................13

*In re AFI Holding, Inc.,*
    355 B.R. 139 (B.A.P. 9th Cir. 2006) .................................................................16

*In re Bame,*
    251 B.R. 367 (Bankr. D. Minn. 2000) ...............................................................17

*In re Bellucci,*
    119 B.R. 763 (Bankr. E.D. Cal. 1990)...............................................................12

*In re BH&P, Inc.,*
    103 B.R. 556 (D. N.J. 1989)
    *aff'd,* 949 F.2d 1300 (3rd Cir. 1991) ................................................................16

*In re Diruzzo,*
    527 B.R. 800 (1st Cir. BAP 2015).....................................................................14

*In re Heritage Hotel Partnership I (Heritage Hotel Ltd. Partnership I v. Valley Bank of Nevada),*
    160 B.R. 374 (9th Cir. BAP 1993) ..............................................................14, 15

*In re Jonathan R. Sorell, M.D., PLLC,*
    Case No. BK-S-19-17872-MKN,
    2020 WL 6600019 (Bankr. D. Nev. Aug. 2020) .................................................1

*In re Kelly,*
    199 B.R. 698 (9th Cir. BAP 1996) ....................................................................14

*In re Mortgage & Realty Trust v. Zim Co.,*
    195 B.R. 740 (Bankr. C.D. Cal. 1996)...............................................................16

*In re Orosco,*
    77 B.R. 246 (Bankr. N.D. Cal. 1987) ................................................................13

*In re: Systems Impact Inc.,*
    229 B.R. 363 (Bankr. E.D. Va. 1998) ...............................................................15

*Matter of Howe,*
    913 F.2d 1138 (5th Cir. 1990) ..........................................................................15

*Old West Enters., Inc. v. Reno Escrow Co.,*
    86 Nev. 727 (1970) ...........................................................................................13

*Ordinario v. LVNV Funding, LLC,*
    721 Fed.Appx. 602 (9th Cir. 2017) ...................................................................13

2581213

*Ritchie Special Credit Investments, Ltd. v. U.S. Trustee,*
   620 F.3d 847 (8th Cir. 2010) ..................................................................................... 16

*Trulis v. Barton,*
   107 F.3d 685 (9th Cir. 1995) ..................................................................................... 14

*William H Raley Co. v. Superior Court,*
   149 Cal.App.3d 1042 (Cal. App. 1983) ..................................................................... 16

**Statutes**

11 U.S.C.,
   Section 501 .............................................................................................................. 12

11 U.S.C.,
   Section 502(a) ....................................................................................................... 1, 12

11 U.S.C.,
   Section 510 .............................................................................................................. 16

11 U.S.C.,
   Section 547 ................................................................................................................ 4

**Rules**

California Rules of Professional Conduct,
   Rule 1.7 .................................................................................................................... 17

California Rules of Professional Conduct,
   Rule 1.9 .................................................................................................................... 17

Nevada Rules of Professional Conduct,
   Rule 1.7 .................................................................................................................... 17

Nevada Rules of Professional Conduct,
   Rule 1.9 .................................................................................................................... 17

**Treatises**

8 L. King, Collier on Bankruptcy,
   Section 3018.03[2] (15th ed. 1990) .......................................................................... 13

2581213

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. <u>INTRODUCTION</u>

This Motion, brought in light of the fact that the Plan refers to the DL Claim as "DL's Disputed Claim Against DOA," seeks entry of an order allowing the DL Claim as a general unsecured claim, not subject to subordination, setoff or recoupment, in the amount of $4.5 million for purposes of plan confirmation, voting, and any distribution reserve established in this case.[3] The DL Claim should be allowed for purposes of the Plan because it is an "account stated" claim, established as a matter of *res judicata*, that is not subject to collateral attack. In the event any party in interest credibly and timely disputes any fact that is material to the Motion, Trustee Golden requests that the Court permit appropriate discovery and further briefing as may be useful to the Court in connection with the Motion

The DL Claim was originally included in Apartments' schedules as liquidated, undisputed, and non-contingent in the amount of $4.5 million. Subsequently, after Apartments' schedules were amended to remove the DL Claim (as discussed below), which occurred after the claims bar date, Trustee Golden, who had obtained a tolling agreement in this case, timely filed a proof of claim which stated the DL Claim, after amendment, in the amount of $4.5 million.

No objection to the DL Claim has been filed. Accordingly, the DL Claim is presumptively allowed pursuant to 11 U.S.C. § 502(a).

The DL Claim was allowed in Apartments' prior 2011 chapter 11 bankruptcy case, known as Case No. BK-S-11-17208-BAM (the "2011 Case"), which claim allowance was, and is, *res judicata* and not subject to collateral attack. In the 2011 Case, the DL Claim was scheduled as liquidated, undisputed, and non-contingent in the amount of $5,468,103.96. Apartments' chapter 11 plan of reorganization from the 2011 Case (the "2011 Plan"), was confirmed by order of the United States Bankruptcy Court for the

---

[3] This Motion does not seek the estimation of the DL Claim pursuant to 11 U.S.C. § 502(c) because the DL Claim is neither contingent, nor unliquidated, nor based on a right to payment arising from an equitable remedy. *See e.g., In re Jonathan R. Sorell, M.D., PLLC*, Case No. BK-S-19-17872-MKN, 2020 WL 6600019, *3 (Bankr. D. Nev. Aug. 2020) (explaining that estimation under Section 502(c) requires that a claim be either unliquidated, contingent or based on a right to payment from an equitable remedy). As discussed herein, the DL Claim is neither unliquidated nor disputed.

1

District of Nevada (the "2011 Confirmation Order"). The 2011 Plan acknowledged the DL Claim was allowed and not disputed and provided for its payment. There is no provision of the 2011 Plan that reserves to any party any right to contest the 2011 Confirmation Order or the *bona fides* of the DL Claim. Apartments subsequently paid Desert Land almost $1 million on that claim pursuant to the 2011 Plan before this instant case was filed, which is why the current net amount of the DL Claim is $4.5 million.

In addition to the collateral estoppel effect of the 2011 Confirmation Order, Trustee Gupta acknowledged and admitted the existence of the DL Claim in at least two Federal Tax Returns, the second of which (for tax year 2019) was filed after Apartments' schedules had been amended to remove the DL Claim (discussed below).

Initially there was no conflict of interest because the DL Claim was scheduled as undisputed, liquidated and not contingent, it was allowed as a matter of *res judicata*, and it was not being contested by any party in interest. After being appointed as Trustee for both the Desert Land Case and the Apartments Case, Trustee Gupta and her counsel took action to evaluate the DL Claim with what appears to be the objective of finding a basis to cause the claim to be eliminated or contested.[4]

Trustee Gupta's conclusion in the Plan and Disclosure Statement, that the DL Claim was based on a "mistake" at its inception more than two decades ago, is unavailing. In 2011, Desert Land borrowed funds a portion of which was used to pay one of Apartments' creditors. It is undisputed that the DL Claim was scheduled and allowed in the 2011 Case as an "account stated" claim that has been reflected in Apartments' books and records for over a decade. Moreover, once allowed pursuant to the 2011 Plan and 2011 Confirmation Order, the origins of the claim were rendered irrelevant as a matter of law.

While Trustee Gupta was serving as chapter 11 in the Apartments Case (and Desert Land Case), the Debtors' former manager, David Gaffin – who had been displaced by Trustee Gupta's appointment – amended Apartments' bankruptcy schedules to remove the debt scheduled as owing to Desert Land.

---

[4] Trustee Gupta may have explanations in response to various points made herein; however, to date Trustee Gupta has not provided substantive responses to Trustee Golden's presentation of these issues communicated by private letter. *See* Bregman Decl. ¶ 24.

2

That "mistake" theory appears to be premised on the asserted fact that Apartments had also been an obligor on the underlying loan made to Desert Land decades ago, a portion of which proceeds were used to pay off Apartments' mortgage.  Even if Apartments was a co-obligor on that loan to Desert Land, that does not necessarily negate Apartments' debt to Desert Land in respect of the DL Claim because the underlying loan was actually made to Desert Land.

To support the "mistake" theory, Trustee's Gupta's counsel obtained the declaration of Apartments' (and Desert Land's) former accountant, Gina Shelton, who agreed to sign the declaration Trustee Gupta's counsel prepared, dated March 27, 2020 (the "Shelton Decl.") in lieu of being deposed pursuant to Rule 2004.  Ms. Shelton had declined to affirm in correspondence Trustee Gupta's counsel's preferred conclusion that Apartments did not in fact owe the DL Claim to Desert Land.  Ms. Shelton also provided the Shelton Declaration based on her statement in writing that she was doing so in reliance on representations of fact of which she had no personal knowledge but for which she was relying on Trustee Gupta's counsel's representations.  Trustee Golden's Counsel can find no evidence that Trustee Gupta's counsel disclosed to Ms. Shelton:  (i) that Apartments scheduled the DL Claim in its 2011 Case as undisputed, liquidated and non-contingent; (ii) that the DL Claim had been allowed and provided for under the  2011 Plan; (iii) that Apartments had paid hundreds of thousands of dollars to Desert Land on the DL Claim pursuant to the 2011 Plan post-confirmation; or (iv) that Trustee Gupta herself had signed and filed as of then at least one Federal Tax Return which stated and acknowledged the DL Claim.

Thereafter, Mr. Gaffin, filed an amendment to the schedules to remove the DL Claim.  Trustee Gupta's counsel represented in writing to Mr. Gaffin's counsel that the DL Claim had been carried on Apartments' books by mistake, and Trustee Gupta's counsel provided Mr. Gaffin's counsel with a copy of the Shelton Decl.  In response to this request, Mr. Gaffin's counsel wrote to Trustee Gupta's counsel that Mr. Gaffin had "no objection" to amending the schedules.  This was done after Mr. Gaffin had been displaced by the chapter 11 trustee for "cause," while Mr. Gaffin had no right to take any action on behalf of Apartments, and after Trustee Gupta's appointment.

For the same reason the DL Claim is not subject to collateral attack, there is no merit to the contention that the DL Claim is subject to subordination to the claim (the "Gonzales Claim") held by the

3

Gonzales Charitable Remainder Unitrust One (the "Gonzales Trust"), which was previously held by the Gonzales Trust's predecessor in interest, Tom Gonzales, under the 2011 Plan. The 2011 Plan explicitly did not "impact" the Gonzales Claim. Thus, the Gonzales Claim was not enhanced by receiving under the 2011 Plan any right to priority treatment. The Gonzales Claim was not due in 2011 and instead was a disputed claim that would come due only upon the occurrence of a triggering event that had not occurred (*i.e.*, the sale of certain property). Additionally, the Gonzales Claim is not entitled to priority in the Apartment's case due to the abstract of judgment the Gonzales Trust filed a mere four days before the instant bankruptcy case was filed. This is because the lien arising from the recording of such abstract is an avoidable preference under 11 U.S.C. § 547 to the extent it would enable the Gonzales Trust to receive a larger proportionate share of Apartments' cash than other general unsecured claims would receive.

For these reasons, the Court should issue an order allowing the DL Claim as a general unsecured claim, not subject to subordination, setoff or recoupment, in the amount of $4.5 million for purposes of plan confirmation, voting, and any distribution reserve established in Apartments' case.

## II.    FACTS

### A.    The DL Claim Was Scheduled, Filed, And Not Disputed

On April 30, 2018 (the "Petition Date"), the Gonzales Trust filed involuntary chapter 7 petitions against Apartments and certain of its affiliates, including Desert Land (collectively, the "Debtors").

On June 28, 2018, the Bankruptcy Court entered orders converting the Debtors' cases to cases under chapter 11 of the Bankruptcy Code.

The DL Claim was originally included in Apartments' schedules as liquidated, undisputed, and non-contingent in the amount of $4.5 million. *See* Apartments' Schedule F, filed August 28, 2018, at p. 4 of 10, a true and correct copy of which is attached to the RJN as **Exhibit A**. Apartments' schedules do not include any claims whatsoever that Apartments purports to have or to hold against Desert Land.

On July 23, 2018, the Gonzales Trust filed a motion to appoint a chapter 11 trustee in the Debtors' bankruptcy cases [Doc. # 121 in the Desert Land Case] (the "Motion to Appoint a Chapter 11 Trustee"). After extensive hearings, the Bankruptcy Court granted the Motion to Appoint a Chapter 11 Trustee on

March 21, 2019 [Doc. # 519] and Trustee Gupta was appointed in the Apartments, Desert Land and Investments bankruptcy cases [Doc. # 528 in the Desert Land Case].

In connection with the Motion to Appoint a Chapter 11 Trustee, the Debtors' managers, including Mr. Gaffin, were displaced for "cause" by the Bankruptcy Court.  *See* RJN at **Exhibit B** (Transcript of Oral Ruling from March 11, 2019), at p. 53:8-10 ("The Court finds that Bulloch and Gaffin are elevating their own self-interest above the interest of the creditors and parties in this [sic] interest …. Indeed, allowing Bulloch and Gaffin additional time to control this process will only hurt creditors …").

On June 12, 2020, Trustee Gupta resigned as chapter 11 trustee of Desert Land citing a conflict of interest arising from the DL Claim; however, Trustee Gupta remained chapter 11 trustee of Apartments and Investments.  On the date of such resignation, Desert Land had virtually no cash while Apartments had approximately $10 million in cash.

Trustee Golden was appointed as chapter 11 trustee of Desert Land pursuant to Court order entered on June 18, 2020 [Doc. # 1281 in the Desert land Case].

On June 25, 2020, Trustee Golden entered into a tolling agreement with Trustee Gupta, effective as of June 22, 2020.  *See* Bregman Decl., at ¶ 5 (the "Tolling Agreement").  Pursuant to that Tolling Agreement, all periods of limitation, statutes of repose, and other time-based limitations were tolled for the benefit of Desert Land from the effective date thereof to and including September 23, 2020.  *Id*.

By the time Trustee Golden was appointed in the Desert Land Case, the claims bar date had run in Apartments' case on November 20, 2018 (*see* Disclosure Statement at § 1.16), and Mr. Gaffin had filed the amended Schedule F removing the DL Claim from Apartments' schedules on April 23, 2020 (*see* Disclosure Statement at p. 17:21-23).  Trustee Golden filed the DL Claim in Apartments' case on September 23, 2020 (before the end of the tolling period under the Tolling Agreement) and then amended the claim to reduce it to $4.5 million on December 15, 2020.  *See*, Disclosure Statement at § 2.5.

The DL Claim arises from an allowed claim in the 2011 Case, which arose from a loan made by Desert Land to Apartments in or about 2000, which loan was funded from proceeds of a loan made to Desert Land.  The DL Claim was an "account stated" claim which has been reflected in Apartments'

2581213

books and records for many years prior to the 2011 Case.  *See* Bregman Decl., at **Exhibit 1** (the DL Claim).

No objection to the DL Claim has been filed.

**B.    The DL Claim Was Allowed In Apartments' 2011 Case And Paid Pursuant To Apartments' 2011 Plan**

In its 2011 Case, Apartments scheduled the DL Claim as liquidated, undisputed, and non-contingent in the amount of $5,468,103.96.  *See* RJN at **Exhibit C** (Schedule F from the 2011 Case).

The 2011 Plan classified the DL Claim in "Class 4" and provided therein for its payment.  *See* RJN at **Exhibit D** (the 2011 Plan), at p. 4:13-19.

The 2011 Plan prohibited the payment of claims that were disputed.  *See, id.*, at ¶ 5.02.

There is no provision of the 2011 Plan that reserves to any party any right to dispute or object to the 2011 Confirmation Order or the treatment of the DL Claim provided pursuant to the 2011 Plan.  At no point in time was any objection to the DL Claim ever filed in the 2011 Case.  *See* Bregman Decl. at ¶ 8.

The 2011 Plan was confirmed pursuant to the 2011 Confirmation Order.  *See* RJN at **Exhibit E** (the 2011 Confirmation Order).

Following confirmation of the 2011 Plan, Apartments proceeded to pay down the DL Claim leaving the $4.5 million balance owing as of the Petition Date as reflected in Apartments' original schedules.  *See* Apartments' Schedule F [Doc. # 104] at p. 2 of 4.

Trustee Gupta signed under penalty of perjury Federal Tax Returns for Desert Land for 2018 and for 2019, each of which reflects Desert Land's "end of year" receivable from Apartments in the amount of $4,467,329.  *See* Bregman Decl. at **Exhibits 2 and 3** (the relevant portions of Desert Land's 2018 and 2019 Federal Tax Returns) (taxpayer identification number(s) redacted) (highlighting added).  Trustee Gupta's hand-written signature is on page 1 of each return.  Trustee Gupta signed the 2019 Federal Tax Return on May 29, 2020 – 36 days *after* Apartments' amended schedules were filed on April 23, 2020, and 70 days *after* CPA Gina Shelton signed the Shelton Decl. on March 20, 2020.

6

2581213

Apartments' indebtedness to Desert Land is also reflected in tax returns at least as far back as 2005, for which Desert Land's 2005 Federal Tax Return reflects Apartments' indebtedness to Desert Land in the amount of $5.627 million.  *See* Bregman Decl. at ¶ 7.

**C.    The Removal Of The DL Claim Occurred At A Time When Trustee Gupta Was Administering Both Estates**

The documentary record suggests that while Trustee Gupta served as chapter 11 trustee of both the Desert Land Case and the Apartments Case, challenges were made to the *bona fides* of the DL Claim. These challenges resulted in, and included, procuring the Shelton Decl. and Mr. Gaffin's amendments to Apartments' schedules to remove the DL Claim:[5]

1.    Trustee Gupta and her professionals possessed documents showing the DL Claim was not only scheduled as allowed in the 2011 Case, but also that the 2011 Plan provided for the payment of that claim.  *See* Bregman Decl. at **Exhibit 4** (the "Inter-Company Debt Investigation," dated June 12, 2020, provided by Trustee Gupta's professionals) ("Fact …. Desert Land scheduled as holding an undisputed, non-contingent and liquidated unsecured non-priority claim in the amount of $5,468,103.96. ….Cash flow projections attached as Exh. F to the 2011 disclosure statement indicates that DOA would make 'debt-service payments' of $219,000 per year, and $36,000 per year in payments to class 4 unsecured creditors.").

2.    Trustee Gupta and her professionals were aware that Apartments had made payments to Desert Land on account of the DL Claim from 2012 through 2017.  *See* Bregman Decl. at **Exhibit 4** ("DOA made payments to DL from 2012 to 2017. 'These amounts were made in monthly payments from the cash flow from the Desert Oasis Apartments to Desert Land, LLC'").

---

[5] Substantially all of the documents referenced in this section were voluntarily produced by Trustee Gupta's counsel who chose, after inquiry was made, to not assert any privilege with respect to any of them.  *See* Bregman Decl. at ¶ 4.

3.      As late as June 9, 2020, Trustee Gupta observed the DL Claim in the amount of $4.5 may be *either* a "'valid debt, … or (b) as something other than 'true indebtedness ….'"  *See* Bregman Decl. ¶ 9 (quoting Trustee Gupta's letter of resignation, dated June 9, 2020, addressed to Edward M. McDonald of the Office of the United States Trustee (the "Resignation Letter"), at p. 23).[6]

4.      The Disclosure Statement states that Trustee Gupta "immediately" after her appointment as trustee began to focus on the $4.5 million indebtedness embodied in the DL Claim.  *See* Disclosure Statement at p. 16:18-20 ("Immediately following her appointment, the Trustee … began investigating the $4.5 million claim scheduled by DOA in favor of DL.").

5.      As such, before accepting her appointment as Chapter 11 Trustee to both estates (and thereafter), Trustee Gupta was on notice of the issue of a potential conflict of interest invoked by the DL Claim.  *See* Bregman Decl. at **Exhibit 5** (Trustee Gupta's email to her counsel of March 28, 2019) ("Potential Conflict of Interest. … please research … whether this debt would constitute a conflict requiring my resignation."); *see also*:

a.      Bregman Decl. at **Exhibit 6** (email of June 14, 2020) ("If there is actually an inter-estate claim, Kavita may need to resign …. None of us (and it would be all of us) want [sic] to find ourselves in the ***horrible position of being disqualified and denied compensation*** ….") (emphasis added);

b.      Bregman Decl. at **Exhibit 7** (email of June 18, 2019) ("This inter-company obligation is potentially ***problematic for us*** and the one we need to dig into.") (emphasis added);

---

[6] The Resignation Letter is quoted but not attached to the Bregman Decl. notwithstanding that Trustee Gupta has not asserted any privilege in connection with this letter; however, the right to submit into evidence a true and correct copy of the Resignation Letter is reserved for response to any evidentiary objection to the foregoing quotation.

2581213

c.    Bregman Decl. at **Exhibit 8** (email of June 11, 2019) (counsel questions "the basis" for the $4.5 Million Claim); *and* **Exhibit 9** (email of June 27, 2019) (noting "[t]he ***Debtors … have treated the liability as legitimate, and do not dispute it",*** but then nevertheless noting ***"[t]here are grounds upon which a creditor might challenge*** the validity and enforceability of the debt," then listing various possible grounds, such as "statute of limitations" and "re-characterization as an equity contribution", and then observing it may "be necessary to … possibly object" to Desert Land's claim) (emphasis added);

d.    Bregman Decl. at **Exhibit 9** (June 27, 2019 email from counsel to Trustee Gupta, with text of case language highlighted in attachment from *In re BH&P, Inc*., 949 F.2d 1300, 1332 (3rd Cir. 1991) ("In the final analysis … it is the bankruptcy court … which must determine the propriety of permitting a [single trustee to serve in jointly administered cases where there are intercreditor claims.] …. It is *for the court to decide* whether the [arrangement] carries with it a sufficient threat of material adversity ….") (emphasis added));

e.    Bregman Decl. at **Exhibit 10** (Trustee Gupta's email of July 10, 2019) ("Why wouldn't a single person have the same conflict of interest if she is representing both estates in a dispute?"); *and* counsel's response, *id*. ("I was suggesting that two different parties be designated, one to act for Desert Land, and the other for Desert Apartments.  An examiner might be another option …."); *and* counsel's email response (affirming implementation of Trustee Gupta's change to the draft motion seeking court's guidance regarding the conflict, from Debtors "do not dispute" the $4.5 Million Claim, to Debtors "have apparently not disputed or investigated" the claim,

2581213

with counsel then adding, "[s]eems to me that if you stay completely out of the litigation it would be better."));

f.    Bregman Decl. at **Exhibit 11** (August 9, 2019 email) ("We need to [] withdrawal [sic] the conflicts and 2014 disclosures today.  The last thing we need is an early opp filed, which means we can't withdraw.");

g.    Bregman Decl. at **Exhibit 12** (March 13-25, 2020, e-trail between Trustee Gupta's attorney and Ms. Shelton, in which Ms. Shelton declines to respond "yes" to counsel's question, "do you agree that this item should not have been entered on the general ledger as an amount 'due to' Desert Land" and instead confirms only "that the loan payable was to Tom Gonzales");

h.    Bregman Decl. at **Exhibit 13** (March 27, 2020 email from Ms. Shelton, in which she confirms Trustee Gupta's counsel's explanation is not based on her own recollection ("Larry and I have reviewed the declaration and we think it is a fair statement ***based on our conversations*** [with Trustee Gupta's counsel], backup documentation, etc.") (emphasis added);[7] and

i.    Bregman Decl. at **Exhibit 14** (March 23, 2020 email in which Trustee Gupta's counsel suggests Ms. Shelton change her assumptions based on ***facts counsel is asking Ms. Shelton to assume*** ("Thank you Gina. Yes, I understand that you input the information on the general ledger based on the documents that were provided to you and that at the time it appeared entirely proper to do so.  ***But knowing now that Desert Oasis Apartments borrowed the $5M*** from Tom Gonzales and ***not*** ***Desert Land***, do you agree that this item should not have been entered on the general ledger as an amount 'due to' Desert Land?") (emphasis added)).

---

[7] Thus, Ms. Shelton's declaration relies on hearsay and lacks foundation.

2581213

1    There is no evidence that Mr. Gaffin himself, of his own initiative, ever indicated any desire or

2    intention to amend Apartments' schedules to remove the DL Claim. *See* Bregman Decl. at **Exhibit 15**

3    (March 30, 2020 email from Trustee Gupta's counsel to Mr. Gaffin's counsel) ("Our assumption is [the

4    claim is based on a mistake]….), *and* **Exhibit 16** (email of April 1, 2021 from Mr. Gaffin's counsel)

5    ("Generally, my client doesn't have any objection [to amending the schedules]….").

6    **D.    The Gonzales Claim Received No Priority Under Apartments' 2011**

7    **Plan Relative to the CL Claim**

8    The Gonzales Claim is not entitled to priority over the DL Claim under the 2011 Plan. The 2011

9    Plan explicitly did not "impact" the Gonzales Claim. Thus, the Gonzales Claim was not, and could not

10    have been, enhanced by any provisions of the 2011 Plan.

11    Under the 2011 Plan, the DL Claim was by Desert Land's consent subordinated for timing of

12    payment purposes to other Class 4 non-insider general unsecured claims. The Gonzales Claim was

13    classified in Class 3, not Class 4. The 2011 Plan's treatment of Class 3, containing the Gonzales Claim,

14    has no provision entitling such claim to any priority treatment. *See* Chapter 11 Plan at p. 4:9-12.

15    Moreover, the Gonzales Claim is the subject of a separate stipulation from the 2011 Case

16    providing for the treatment of the Gonzales Claim, entitled "Stipulation as to Treatment of Tom Gonzales

17    in Debtor's Plan of Reorganization," which stipulation (the "Gonzales Stipulation") was attached as

18    "Exhibit C" to the 2011 Confirmation Order. The 2011 Confirmation Order incorporates by reference and

19    reaffirms its approval of "the Order Granting [the Gonzales] Stipulation as to Treatment of Tom Gonzales

20    in Debtor's Plan of Reorganization [Docket # 188], entered on December 5, 2011 … [which] is

21    reaffirmed." *See* RJN at **Exhibit E** (the 2011 Confirmation Order). The Gonzales Stipulation provides

22    that the Gonzales Claim rides through the 2011 Case and is "unmodified." *Id*. at Exhibit C, at ¶ 10. In

23    addition, the Gonzales Stipulation provides that for purposes of the feasibility showing required for

24    confirmation of 2011 Plan, the Gonzales Claim "is not, at this time, due to be paid." *Id*. at ¶ 14.

25    The Gonzales Claim was also a disputed claim under the 2011 Plan. *See* 2011 Plan at p. 4:12-13

26    (the Gonzales Claim "is subject to setoffs and counterclaims by the Debtor.") *and* at p. 5:3-4 ("No

27    distribution will be made on account of a disputed claim unless such claim is allowed by a final non-

28

11

2581213

1    appealable order.")  Thus, the 2011 Plan provided that the Gonzales Claim, which was not yet due and

2    which was disputed, would not be impacted (whether enhanced or diminished), and would not be paid

3    from Apartments' post-confirmation cash flow (whereas, as noted above, Apartments' post-confirmation

4    cash flow was the source of payments to Class 4 general unsecured creditors, including Desert Land in

5    respect of its claim which is now embodied in the DL Claim).

6         Nor is the Gonzales Claim entitled to priority in Apartments' case due to the abstract of judgment

7    the Gonzales Trust filed in respect of the Gonzales Claim a mere four days before the  Petition Date.

8    Trustee Gupta has confirmed to Trustee Golden that the Gonzales Trust's abstract of judgment is subject

9    to avoidance and removal.  *See* Bregman Decl. at **Exhibit 4** ("Avoidance of Gonzales Trust Judgment

10   Lien …. The judgment lien appears to be avoidable as a preference under 11 U.S.C. § 547(b).").  Indeed,

11   Trustee Gupta has secured a tolling agreement with the Gonzales Trust preserving Trustee Gupta's right to

12   "commence an action seeking to avoid the Gonzales judgment lien" which tolling period extends to no

13   earlier than April 10, 2021.  *See* Bregman Decl. at ¶ 5.

14   **III.    ARGUMENT**

15        **A.    The DL Claim Should Be Deemed Allowed Pursuant to Rule 3018(a)**

16        In light of the fact that the DL Claim was allowed in the 2011 Case and payment thereon was

17   provided under the 2011 Plan, and given there has been no objection filed to the DL Claim, the DL Claim

18   should be deemed allowed.  Section 502(a) of the Bankruptcy Code provides in this regard, in relevant

19   part, as follows:  "(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed

20   allowed, unless a party in interest … objects."  As noted above, Trustee Golden timely filed the DL Claim

21   within the period covered by the Tolling Agreement, and no objection to the DL Claim has been filed.

22   Thus, the DL Claim should be deemed allowed in this case.

23        The Plan treats the DL Claim as though it is disallowed or subordinated.  Out of an abundance of

24   caution in the event there is any doubt about the allowance of the DL Claim, or in the event an objection

25   to DL Claim is filed in connection with the Plan at the last minute, the DL Claim should be allowed

26   pursuant to Bankruptcy Rule 3018(a) in the amount of $4.5 million for purposes of plan confirmation,

27   voting, and any distribution reserve established in Apartments' case.

28

2581213

As explained in *In re Bellucci*, 119 B.R. 763, 778 (Bankr. E.D. Cal. 1990), "'Temporary allowance' of [a]claim under Bankruptcy Rule 3018(a) is a measure short of 'estimation' that would adequately enable [the creditor's liquidated and non-contingent claim] to be taken into account for purposes of moving forward with a plan of reorganization." Rule 3018(a) provides in relevant part as follows:

> Notwithstanding objection to a claim or interest, the court after notice and a hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan.

Fed. R. Bankr. P. 3018(a).

This Motion is properly brought by Trustee Golden because the claimant may bring a motion to allow a claim pursuant to Rule 3018(a). *See In re Bellucci*, 119 B.R. at 778 ("A motion is required to obtain temporary allowance of a claim, and may be made by either the claimant or another party in interest."), citing *Bell Road Inv. Co. v. M. Long Arabians (In re M. Long Arabians)*, 103 B.R. 211, 215 (9th Cir. BAP 1989); *In re Orosco*, 77 B.R. 246, 249 (Bankr. N.D. Cal. 1987); 8 L. King, COLLIER ON BANKRUPTCY ¶ 3018.03[2] (15th ed. 1990). Thus, Trustee Golden has properly brought this Motion which should be granted in light of the facts and circumstances here presented.

**B.     The DL Claim Is An "Account Stated" Claim**

The elements of an "account stated" claim are an underlying relationship between the parties, an agreement between the parties express or implied, and a promise of payment, express or implied. *See Ordinario v. LVNV Funding, LLC*, 721 Fed.Appx. 602, 603 (9th Cir. 2017). *See also Assurance Co. of America v. Campbell Concrete of Nevada, Inc.*, 835 F.Supp.2d 995 (D. Nev. 2011) (an account stated is "an agreement based upon prior transactions between the parties with respect to the items composing the account and the balance due …."), quoting *Old West Enters., Inc. v. Reno Escrow Co.*, 86 Nev. 727, 476 P.2d 1, 2 (1970).

That the DL Claim is an "account stated" claim within the foregoing meaning is demonstrated by numerous facts, including, without limitation, the underlying relationship between Desert Land and Apartments, and that the DL Claim was:  (1) scheduled as undisputed, liquidated and non-contingent in Apartments' 2011 Case; (2) originally scheduled as undisputed, liquidated and non-contingent in this case

13

1   (prior to Trustee Gupta's actions); (3) provided for and received payment thereon pursuant to the 2011

2   Plan; (4) and affirmed in the Debtor's books and records for many years, including, without limitation,

3   Desert Land's 2018 and 2019 federal tax returns signed by Trustee Gupta.

4           This constitutes substantial *prima facie* evidence of the amount and existence of the DL Claim as

5   well as admissions by Apartments, and by Trustee Gupta herself, of the nature, existence and amount of

6   the DL Claim.  Thus, the DL Claim is an account stated claim that should be allowed in this case.

7           **C.    *Res Judicata* Bars Disputing The Previously Allowed DL Claim**

8           The DL Claim is entitled to be allowed in this case pursuant to *res judicata* by virtue of the fact

9   that the claim was allowed and received payment pursuant to the 2011 Plan which was confirmed pursuant

10  to the 2011 Confirmation Order.  This is because the *bona fides* of the DL Claim could have been (but

11  were not) raised in connection with the 2011 Plan.  "[A]ll questions that could have been raised pertaining

12  to the plan are entitled to *res judicata* effect. . . . Since the plaintiffs never appealed the bankruptcy court's

13  confirmation order, the order is a final judgment…."  *Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995).

14          Even if the DL Claim were based on a mistake, that would not matter because any such mistake

15  would have occurred **before** the 2011 Plan and the 2011 Confirmation Order.  A mistake would no longer

16  provide a basis to dispute the claim that was allowed pursuant to the 2011 Plan and the 2011 Confirmation

17  Order.  This is explained in *In re Diruzzo*, 527 B.R. 800 (1st  Cir. BAP 2015), where a chapter 13 trustee

18  attempted to set aside a claim that had been allowed as part of a confirmed plan on the basis that the claim

19  had been allowed by mistake.  Finding that a confirmed plan is *res judicata* and its terms are not subject to

20  collateral attack, *Diruzzo* rejected the challenge though the claim would have been disallowed had there

21  been an objection timely made.  *In re Diruzzo*, 527 B.R. at 804, 809; *see also In re Kelly*, 199 B.R. 698,

22  702-03 (9th Cir. BAP 1996) ("A confirmed chapter 11 plan 'operates to preclude the assertion of actions

23  which arose out of the prepetition relationship of the parties, the facts of which were fully known by the

24  debtor.'  For that reason, a confirmed chapter 11 plan is a 'final judgment' for purposes of *res judicata*.")

25  (citations omitted); *see also In re Heritage Hotel Partnership I (Heritage Hotel Ltd. Partnership I v.*

26  *Valley Bank of Nevada)*, 160 B.R. 374, 378 (9th Cir. BAP 1993) (confirmed plan was *res judicata* on

27  debtor's prepetition lender liability claims and debtor was equitably estopped from asserting claims not

28

                                                    14

mentioned in confirmed plan or disclosure statement:  "The Ninth Circuit has ruled that a party is equitably estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statement") (citations omitted).  Trustee Gupta is barred from collaterally attacking the DL Claim based on alleged facts and circumstances arising prior to the 2011 Case.  *In re Heritage Hotel*, 160 B.R. at 377 ("'[W]hen a confirmed plan discloses and specifically treats the creditor's claim, and the debtor has had a full and fair opportunity to contest the creditor's claim … the debtor cannot collaterally attack the bankruptcy court's decision five years later in an action based on the same transaction.'") quoting *Matter of Howe*, 913 F.2d 1138, 1147 (5th Cir. 1990).

Thus, parties in interest are collaterally estopped from pursuing an objection to the DL Claim based on facts and circumstances that pre-existed the 2011 Case.  This includes, without limitation, the "mistake" theory, which indisputably relies on facts that predate the confirmed 2011 Plan.

### D.    The DL Claim Is Not Subject To Subordination, Setoff Or Recoupment

The DL Claim is not subject to subordination, whether to the Gonzales Claim or any other claim, nor is the DL Claim subject to setoff or recoupment by Apartments or any disbursing agent under the Plan.

As demonstrated above, the DL Claim is not subject to subordination in favor of the Gonzales Claim under the 2011 Plan because the Gonzales Claim was "unmodified" by the 2011 Plan.  S*ee* Gonzales Stipulation at ¶ 10.  Moreover, given the fact that the 2011 Plan explicitly left the Gonzales Claim "unmodified," the Gonzales Trust may not rely on the 2011 Plan to claim that such plan resulted in enhancing the Gonzales Claim such that the Gonzales Trust is entitled to any priority over the DL Claim. Simply put, the Gonzales Claim could not have (and did not) obtain any benefit of any consent to subordination by Desert Land because the Gonzales Claim did not acquire any rights under the 2011 Plan, which left the Gonzales Claim without change or modification.  *See In re: Systems Impact Inc*., 229 B.R. 363, 369 (Bankr. E.D. Va. 1998) (a subordination requires the subordinated claim to have acquired priority over another claim).

Trustee Golden is aware of no general unsecured claims to which the DL Claim is subject to subordination pursuant to the 2011 Plan.  Rather, it appears that the fact that Apartments made hundreds of thousands of dollars of payments to Desert Land pursuant to the 2011 Plan conclusively demonstrates

15

1    that Apartments had already paid off and satisfied all of the general unsecured claims in Class 4 by the

2    time of such payments to Desert Land.

3         The fact that the DL Claim is held by an insider of Apartments similarly does render the claim

4    subject to subordination under 11 U.S.C. § 510 or any other statute, where the claim arises from an

5    account stated debt.  The DL Claim is not based on its equity holdings.  Trustee Gupta has not established

6    that Apartments holds any rights or claims against Desert Land that would diminish or subordinate any

7    distribution in respect of the DL Claim, including based on any right of setoff or recoupment.

8         **E.    A Fiduciary For Multiple Estates May Not Take A Position Detrimental To One**

9              **Estate For The Benefit Of The Other Estate**

10        It is clear under every reported decision many of which are cited here that fiduciaries are precluded

11   from taking action detrimental to a current client or former client involving the same matter.  *See In re*

12   *AFI Holding, Inc.*, 355 B.R. 139, 148 (B.A.P. 9th Cir. 2006) ("a bankruptcy trustee must have no interest

13   adverse to the estate"); *and Ritchie Special Credit Investments, Ltd. v. U.S. Trustee*, 620 F.3d 847, 854-

14   855 (8th Cir. 2010) (actual conflict of interest arises upon prejudice to one estate for the benefit of another

15   estate, "'[T]he predicate for application of Rule 2009(d) is not that a common trustee is "disinterested" but

16   that prejudice will occur as a result of the trustee's dual representation.'"); *and In re BH&P, Inc.*, 103 B.R.

17   556, 569 (D. N.J. 1989) *aff'd*, 949 F.2d 1300 (3rd Cir. 1991) ("The court has no doubt that if any party in

18   interest were prejudiced by a breach of the duty to disclose facts relating to possible conflicts on an

19   application for joint administration, the responsible individuals could be denied compensation and held

20   personally liable to the extent of such prejudice.").

21        A fiduciary does not shed its fiduciary duty to an estate merely by resigning.  A former fiduciary

22   normally may not be adverse to a client on the same matters giving rise to the actual conflict of interest.

23   *See In re Mortgage & Realty Trust v. Zim Co.*, 195 B.R. 740, 750-51 (Bankr. C.D. Cal. 1996) (attorney

24   who served in non-attorney capacity, as director on company's board, retained fiduciary duties after

25   resignation.  "The duty to protect and preserve confidential information received during service as a

26   director continues after a director leaves the board.  Similarly, this duty continues for a trustee of a REIT

27   after the trustee ceases to serve. … Bucher continued to be bound by his duty of loyalty not to disclose

28

16

confidential information after he left the MRT board of trustees.") citing *William H Raley Co. v. Superior Court*, 149 Cal.App.3d 1042, 1046 (Cal. App. 1983) ("Professional responsibilities do not turn on whether a member of the State Bar acts as a lawyer."); *see also* Nevada Rules of Professional Conduct, Rule 1.7 ("a lawyer shall not represent a client if the representation involves a concurrent conflict of interest."), and Rule 1.9 ("(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."); *and* California Rules of Professional Conduct, Rule 1.7 ("(a) A lawyer shall not … represent a client if the representation is directly adverse to another client in the same or separate matter."), and Rule 1.9 (same as Nevada's for former clients).

Similarly, the duty of confidentiality continues and a fiduciary may not properly use any confidential information, work product, or privileged information adverse to former client. *See Weintraub*, 471 U.S. at 358 ("Upon appointment, the Trustee succeeds to the attorney-client privilege …."" quoting *In re Bame*, 251 B.R. 367, 375 (Bankr. D. Minn. 2000)).

## IV.    CONCLUSION

For the foregoing reasons, Trustee Golden respectfully requests that the Court issue an order temporarily allowing the DL Claim as a general unsecured claim, not subject to subordination, setoff or recoupment, in the amount of $4.5 million for purposes of plan confirmation, voting, and any distribution reserve established in this case.  In the event any party in interest credibly and timely disputes any fact that is material to this Motion, the Court should permit appropriate discovery and further briefing as may be useful to the Court in connection with the Motion.

Respectfully submitted.

DATED: February 11, 2021

**BRUTZKUS GUBNER**

By: _____
Jerrold L. Bregman (*pro hac vice* application pending, and granted in the related case of Desert Land, LLC)
Attorneys for Jeffrey I. Golden, Chapter 11 Trustee for creditor Desert Land, LLC

17

2581213