STEVEN T. GUBNER – Nevada Bar No. 4624
JERROLD L. BREGMAN – *Pro Hac Vice* application pending,
and granted in the related case of Desert Land, LLC
SUSAN K. SEFLIN – *Pro Hac Vice* granted in related case
BRUTZKUS GUBNER
300 S. 4th Street, Suite 1550
Las Vegas, NV 89101
Telephone: (702) 835-0800
Facsimile:   (866) 995-0215
Email:   sgubner@bg.law
           jbregman@bg.law
           sseflin@bg.law

Attorneys for Jeffrey I. Golden,
Chapter 11 Trustee of creditor Desert Land, LLC

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>DESERT OASIS APARTMENTS, LLC,<br><br>           Debtor. | Case No.  BK-S-18-12456-GS<br>Chapter 11<br><br>**OBJECTION OF DESERT LAND, LLC TO TRUSTEE KAVITA GUPTA'S JOINT PLAN OF LIQUIDATION DATED JANUARY 25, 2021**<br><br>Hearing Date:  March 11, 2021<br>Hearing Time:  1:30 p.m. |

Jeffrey I. Golden ("Trustee Golden"), solely in his capacity as the duly appointed and serving chapter 11 trustee for the bankruptcy estate of Desert Land, LLC ("Desert Land"), whose case is pending in the above-captioned court ("Court") as Case No. BK-S-18-12454-GS (the "Desert Land Case"), submits this objection (the "Objection") to confirmation of the *Chapter 11 Trustee Kavita Gupta's Joint Plan of Liquidation Dated January 25, 2021* (the "Proposed Plan") filed in the above-captioned chapter 11 case of Desert Oasis Apartments, LLC (the "Debtor" or "Apartments") and in the non-jointly administered chapter 11 case of Desert Oasis Investments, LLC ("Investments") pending before this Court as Case No. BK-S-18-12457-GS.[1]  This Objection is premised upon Desert Land's general unsecured claim against the Debtor's estate in the amount of $4.5 million (the "DL Claim") which is deemed and should be allowed in

---

[1] All references to "DL ECF No." are to the pleadings in the Desert Land Case [Case No. 18-12454].

the Debtor's case (the "Debtor's Case") pursuant to Section 502 of the Bankruptcy Code.[2]  The merits of

the DL Claim are described in *Desert Land's Motion For An Order Allowing Its Claim At $4.5 Million*

*For Purposes of Proposed Plan Confirmation, Voting, And Any Distribution Reserve, Pursuant To Rule*

*3018(a)*, filed in the Debtor's Case on February 11, 2021 [ECF No. 250] (the "Motion to Allow DL

Claim"), the *Declaration of Jerrold L. Bregman* in support thereof filed February 11, 2021 [ECF No. 251]

(the "Bregman Decl. ISO Motion"), the *Request for Judicial Notice* in support thereof filed February 11,

2021 [ECF No. 252] (the "RJN ISO Motion"), any supplemental briefing that Trustee Golden may file in

support thereof (the "Supplemental Motion Briefing"), and any arguments on the record at any hearing on

the Motion to Allow DL Claim (the "Arguments ISO Motion," and, collectively, with the Motion to

Allow DL Claim, the Bregman Decl. ISO Motion, the RJN ISO Motion, and the Supplemental Motion

Briefing, the "DL Claim Motion P&As").  The DL Claim Motion P&As are incorporated herein by this

reference as though set forth in full.

Trustee Golden files this Objection in furtherance of his fiduciary duty to protect and preserve the

DL Claim, which is a material asset for the benefit of Desert Land's bankruptcy estate and its creditors.[3]

Confirmation should be denied for the reasons set forth in the accompanying memorandum.

Respectfully submitted.

DATED: February 25, 2021

**BRUTZKUS GUBNER**

By: _____
Jerrold L. Bregman (*pro hac vice* application
pending, and granted in the related case of
Desert Land, LLC)
Attorneys for Jeffrey I. Golden, Chapter 11
Trustee for creditor Desert Land, LLC

---

[2] Unless otherwise stated, all statutory references are to 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

[3] Although the above-captioned Court indicated on the record of a hearing in the Desert Land Case, held December 10, 2020, that the Court intends to dismiss that case, the Court has not issued any order dismissing that case as of the date this Motion was filed.  At a further status conference in the Desert Land Case on the motion to dismiss, currently scheduled for March 11, 2021, Trustee Golden will advocate for reconsideration of the Court's tentative ruling, including on the grounds that that dismissal violates *Czyzewski v. Jevic Holding Corp.*, 137 S.Ct. 973 (2017), and that conversion, rather than dismissal, is in the best interests of creditors who have not affirmatively consented to dismissal.

2585700

# **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

I.      INTRODUCTION .................................................................................................... 1

II.     FACTS ..................................................................................................................... 2

III.    ARGUMENT ........................................................................................................... 4

      A.    The Proposed Plan Improperly Conflates The Chapter 11 Plans Of Disparate Debtors, Whose Cases Are Not Jointly Administered Or Substantively Consolidated, To Further The Improper Purpose of Gerrymandering Acceptance To Unfairly Discriminates Against the DL Claim ................................................................................................................. 5

      B.    The Proposed Plan Unfairly Discriminates Against the DL Claim In Favor of the Gonzales Claim In Violation of Section 1129(b)(2) ................................... 6

      C.    The Proposed Plan Separately Classifies the DL Claim and the Gonzales Claim to Gerrymander Acceptance To Cramdown the DL Claim ................................ 12

      D.    The Proposed Plan Violates the Best Interest Test By Providing the DL Claim With Less Than It Would Receive In Chapter 7, In Violation of Section 1129(a)(7)(A)(ii) ....... 14

      E.    The Proposed Plan Prematurely Installs Disbursing Agent Before The Proposed Plan Becomes Effective Which Shields Administrative Fees And Expenses From Judicial Review In Violation of Section 330 ................................... 15

      F.    The Exculpation Clause Impermissibly Inoculates the Trustee And Professionals From Claims Arising From the Desert Land Case For No Consideration to the Desert Land Estate ................................................. 16

      G.    Reservation of Right to Respond to Confirmation Memorandum ....................... 17

      H.    Reservation of Right to Incorporate Other Objections ....................................... 17

IV.     CONCLUSION ........................................................................................................ 17

# TABLE OF AUTHORITIES

**Cases**

Pages

*Boston Post Road Ltd. Partnership v. Federal Deposit Insurance Corp. (In re Boston Post Road Ltd.),*
   21 F.3d 477 (2d Cir. 1994) *cert. den'd,*
   513 U.S. 1109, 115 S.Ct. 897 (1995) .................................................................................. 12

*Federal Savings & Loan Ins. Corp. v. D & F Cont., Inc. (In re D & F Constr., Inc.),*
   865 F.2d 673 (5th Cir. 1989) ................................................................................................ 8

*In Blixseth v. Credit Suisse,*
   961 F.3d 1074 (9th Cir. 2020) ............................................................................................ 16

*In Meritage Homes of Nev., Inc. v. JPMorgan Chase Bank, N.A. (In re S. Edge LLC),*
   478 B.R. 403 (D. Dev. 2012) .............................................................................................. 16

*In re 8315 Fourth Ave. Corp.,*
   172 B.R. 725 (Bankr. E.D.N.Y. 1994) ................................................................................ 4

*In re Barakat,*
   99 F3d 1520 (9th Cir. 1996) ............................................................................................... 12

*In re Barney & Carey Co.,*
   170 B.R. 17 (Bankr. D. Mass. 1994) .................................................................................... 7

*In re* Caldwell,
   76 B.R. 643 (Bankr E.D. Tenn. 1987) .................................................................................. 7

*In re Cellular Info. Systems, Inc.,*
   171 B.R. 926 (Bankr. S.D.N.Y. 1994) ................................................................................. 8

*In re Featherworks Corp.,*
   25 B.R. 634 (Bankr. E.D.N.Y. 1982),
   *aff'd,* 26 B.R. 460 (E.D.N.Y. 1984) .................................................................................... 14

*In re Grantham Bros. (Valley National Bank of Arizona v. Needler),*
   922 F.2d 1438 (9th Cir. 1991) .............................................................................................. 5

*In re Hoosier Hi-Reach, Inc.,*
   64 B.R. 34 (Bankr. S.D. Ind. 1986) .................................................................................... 14

*In re Kennedy,*
   158 B.R. 589 (Bankr. D.N.J. 1993) ...................................................................................... 8

*In re Porcelli,*
   2004 WL 2931374 (Bankr. M.D. Fla. Aug. 5, 2004) ......................................................... 13

*In re Silver Falls Petroleum,*
   55 B.R. 495 (Bankr. S.D. Ohio 1985) .................................................................................. 4

*In re Snyders Drug Stores, Inc.,*
   307 B.R. 889 (Bankr. N.D. Ohio 2004) ................................................................................ 7

2585700

## TABLE OF AUTHORITIES (cont'd)

**Cases**

Pages

*In re the Leslie Fay Companies, Inc.*,
207 B.R. 764 (Bankr. S.D.N.Y. 1997) ............................................................. 7

*In re Transwest Resort Properties, Inc.*,
881 F.3d 724 (9th Cir. 2018) ........................................................................ 5

*In re Tucson Self-Storage, Inc.*,
166 B.R. 892 (Bankr. 9th Cir. 1994) ............................................................. 7

*In re: Sylmar Plaza, L.P.*,
314 F.3d 1070 (9th Cir. 2002) ...................................................................... 6

*Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture)*,
995 F.2d 1274 (5th Cir. 1991), *cert. den'd,* 506 U.S. 821 (1992),
*and cert. den'd,* 506 U.S. 822 (1992) ........................................................... 12

*Principal Mutual Life Insurance Co. v. Lakeside Assoc., L.P. (In re Deluca)*,
194 B.R. 797 (Bankr. E.D. Va. 1996) ........................................................... 13

*Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc v. Anderson*,
390 U.S. 414 (1968) ..................................................................................... 5

*See One Time Square Assocs. Ltd. P'sp.*,
159 B.R. 695, 705 (Bankr. S.D.N.Y. 1993), *aff'd,* 165 B.R. 773 (S.D.N.Y. 1994)
*aff'd,* 41 F.3d 1502 (2d Cir. 1994), *cert. denied*, 513 U.S. 1153 (1995) ............... 13

*Williams v. Hibernia Nat'l Bank*,
850 F.2d 250 (5th Cir. 1988) ....................................................................... 4

**Statutes**

11 U.S.C.,
    Section 1129(a)(1) ................................................................................. 4
    Section 1129(a)(3) ........................................................................... 1, 5, 6
    Section 1129(a)(7)(A)(ii) ............................................................... 2, 14, 15
    Section 1129(a)(10) ........................................................................ 13, 14
    Section 1129(b) ..................................................................................... 7
    Section 1129(b)(2) ............................................................................. 1, 8

11 U.S.C.,
    Section 330 ..................................................................................... 2, 15
    Section 330(a)(1) ................................................................................. 15

11 U.S.C.,
    Section 502 .......................................................................................... 8
    Section 502(a) ...................................................................................... 8

11 U.S.C.,
    Section 1141(d) ............................................................................... 2, 17

2585700

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES (cont'd)</u>

**Rules**

Pages

Federal Rule of Bankruptcy Procedure,
  Rule 3007....................................................................................................................... 8
  Rule 3007(a) ............................................................................................................... 8, 9

iv

2585700

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

The Proposed Plan,[4] proposed by Kavita Gupta, not individually but solely in her capacity as the chapter 11 trustee in the Debtor's Case ("Trustee Gupta"), is ineligible for confirmation, and therefore should not be confirmed by this Court. The Proposed Plan violates the Bankruptcy Code in important and material ways.

First, the Proposed Plan improperly combines a liquidating plan for the Debtor and for the Investments debtor. There is no basis for these distinct entities to be jointly proposing a chapter 11 plan. This Court has specifically ruled that the cases of the Debtor and Investments should not be, and are not, jointly administered. The proposal of the distinct debtors' putative joint plan is to further the improper purpose of gerrymandering acceptance in order to cramdown the Proposed Plan upon the holder of the DL Claim. Under the totality of these circumstances, the Proposed Plan was not proposed in "good faith," in violation of Section 1129(a)(3).

Second, the Proposed Plan unfairly discriminates against the DL Claim – which is not subject to subordination or disallowance – in violation of Section 1129(b)(2) and in favor of the claim held by the creditor known in the Debtor's Case as the Gonzales Trust (the "Gonzales Claim"). The Proposed Plan does so by providing that the DL Claim is subordinated to the Gonzales Claim, and all of the cash for holders of general unsecured claims will go towards payment of the Gonzales Claim. *See* Proposed Plan at §§ 4.5.2, and 5.6. The Proposed Plan also discriminates in favor of the Gonzales Claim by providing special review and approval rights of post-confirmation fees and expenses which notice and review rights are denied to the holder of the DL Claim. This discriminatory treatment implements the apparently not previously disclosed to the Court side agreement between Trustee Gupta and the Gonzales Trust (the "Gonzales Plan Support Agreement").

Third, because Class 2 containing the Gonzales Claim is the only consenting impaired class for the Debtor's Case, the Proposed Plan could not be confirmed without the separate classification of the DL

---

[4] Unless otherwise stated, all terms used but not defined herein shall have the meanings ascribed to them in the foregoing Objection.

Claim and the Gonzales Claim.  If classified together with the DL Claim, the Gonzales Trust alone would not constitute the "more than one-half in number" required for an impaired class to accept a plan.  *See* Section 1126.  Thus, the Plan improperly gerrymanders the classification of functionally identical general unsecured claims into two separate classes in order to obtain a consenting impaired class through the Gonzales Trust's acceptance alone.

Fourth, the Proposed Plan violates the "best interests" test under Section 1129(a)(7)(A)(ii) by providing that the DL Claim would receive less under the Proposed Plan than it would be entitled to receive under a liquidation under chapter 7.  In a chapter 7 case, the value in the Debtor's estate would be distributed to holders of general unsecured claims equally on a *pro rata* basis and the DL Claim would receive in excess of $2 million in respect of such claim (assuming at least $8 million of distributable cash for the benefit of holders of general unsecured claims), rather than zero as under the Proposed Plan.

Fifth, in violation of Section 330, the Proposed Plan prematurely installs Trustee Gupta as the "Disbursing Agent," and provides for the payment of such agent's fees and expenses, as well as other expenses incurred after the Proposed Plan is confirmed but before it becomes effective.  This compensation is subject only to the review of the Gonzales Trust so long as the Gonzales Trust signs off; thus, there is no notice of such compensation to creditors such as the holder of the DL Claim, or approval by the Court in the event the Gonzales Trust does not object.  *See* Proposed Plan at § 3.2.

Finally, the Proposed Plan's exculpation provision impermissibly insulates Trustee Gupta and her professionals from claims arising from the Desert Land Case.  *See* Proposed Plan at Article 6.14.  This discharge of liability is to be effected under the Proposed Plan despite that Desert Land is not a plan proponent, and despite that the Proposed Plan is a plan of liquidation rather than a plan of reorganization, thus, a discharge is not available.  *See* Section 1141(d).

For the foregoing reasons, and as further explained herein, the Proposed Plan violates the Bankruptcy Code and should not be confirmed.

## II.    FACTS

On April 30, 2018 (the "Petition Date"), the Gonzales Trust filed involuntary chapter 7 petitions against Apartments and certain of its affiliates, including Investments and Desert Land (collectively, the "Debtors").

2585700

On June 28, 2018, the Court entered orders converting the Debtors' cases to cases under chapter 11 of the Bankruptcy Code.

Initially the Debtors' cases were jointly administered (though they were never substantively consolidated) pursuant to this Court's order entered on July 6, 2018 [DL ECF No. 90].

The DL Claim was scheduled and filed, and no objection to the DL Claim has been filed.  Thus, the DL Claim is deemed an allowed general unsecured claim in the amount of $4.5 million.  The merits of the DL Claim, and the reasons the DL Claim is not subordinated to the Gonzales Claim, are set forth in the DL Claim Motion P&As.

On July 23, 2018, the Gonzales Trust filed a motion to appoint a chapter 11 trustee in the Debtors' bankruptcy cases [DL ECF No. 121] (the "Motion to Appoint a Chapter 11 Trustee").  After extensive hearings, the Bankruptcy Court found that "cause" existed granted the Motion to Appoint a Chapter 11 Trustee on March 21, 2019 [DL ECF No. 519].  Trustee Gupta was appointed as chapter 11 trustee in each of the Apartments, Desert Land and Investments bankruptcy cases [DL ECF No. 528].

On June 12, 2020, Trustee Gupta resigned as chapter 11 trustee of Desert Land citing a conflict of interest arising from the DL Claim; however, Trustee Gupta remained chapter 11 trustee of Apartments and Investments.  On the date of such resignation, Desert Land had virtually no cash while Apartments held approximately $10 million in cash.

Trustee Golden was appointed as chapter 11 trustee of Desert Land pursuant to Court order entered on June 18, 2020 [DL ECF No. 1281].

On July 20, 2020, this Court issued its *Order to Show Cause Why Joint Administration of The Above-Captioned Cases Should Not Be Terminated* [DL ECF No. 1366] (the "OSC to End Joint Administration").  The Court noted therein, among other things, that "Each of these three estates [Apartments, Investments, and Desert Land] have their own individual circumstances that, although potentially overlapping at times, do not appear to require the joint administration of estate assets…."  *Id.* at p. 2:8-10.

There was no opposition to the OSC to End Joint Administration, and on August 17, 2020, this Court entered its Order Terminating Joint Administration [DL ECF No. 1439], which terminated the joint administration of the Debtors' cases (the "Order Terminating Joint Administration").

2585700

The Order Terminating Joint Administration was not appealed, there has been no request filed to revisit or reconsider that order, and that order is now a final order.

It is undisputed that the Apartments case and the Investments case are not being jointly administered.

It is undisputed that the Gonzales Claim has already been determined to be a general unsecured claim in the Debtor's Case.  *See* the Gonzales No-Priority Order (as defined below).

It is undisputed that the DL Claim is deemed to be an allowed general unsecured claim in the Debtor's Case (in that no objection to the claim has been filed).

It is undisputed that no court has made any determination that the Gonzales Claim is entitled to priority in payment relative to the DL Claim.

It is undisputed that there are only two general unsecured claims in the Debtor's Case, namely, the Gonzales Claim and the DL Claim.

It is undisputed that the Gonzales Trust itself, as one of two holders of general unsecured claims in the Debtor's Case, could not cause a class to accept a chapter 11 plan in the Debtor's Case without also the acceptance of the holder of the DL Claim; thus, the separate classification of the Gonzales Claim and the DL Claim is a necessary requirement for confirmation of any plan in the Debtor's Case.

## III.   **ARGUMENT**

The standards for confirmation of a plan of reorganization are governed by section 1129 of the Bankruptcy Code.  "The [d]ebtor bears the burden of proving confirmation by a preponderance of the evidence."  *In re 8315 Fourth Ave. Corp.*, 172 B.R. 725, 735 (Bankr. E.D.N.Y. 1994).  Moreover, the court has a mandatory duty to determine whether a plan has met all of the requirements for confirmation, whether specifically raised by dissenting creditors or not.  *Williams v. Hibernia Nat'l Bank*, 850 F.2d 250, 253 (5th Cir. 1988); 7 COLLIER ON BANKRUPTCY (15th ed. rev. 2004) ¶ 1129.02[5].  Thus, where a plan violates provisions required by title 11, courts will deny confirmation.  7 COLLIER ON BANKRUPTCY (15th ed. rev. 2004) ¶ 1129.03[1]; *see In re Silver Falls Petroleum*, 55 B.R. 495, 498 (Bankr. S.D. Ohio 1985).  Section 1129(a)(1) permits confirmation only if "[t]he plan complies with the applicable provisions of this title."  The Proposed Plan does not satisfy the requirements of section 1129 and therefore should not be confirmed.

4

As stated in *Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc v. Anderson*, 390 U.S. 414, 424 (1968), the bankruptcy court bears the responsibility of making an "informed and independent judgment as to whether a proposed compromise is fair and equitable."

A.    **The Proposed Plan Improperly Conflates The Chapter 11 Plans Of Disparate Debtors, Whose Cases Are Not Jointly Administered Or Substantively Consolidated, To Further The Improper Purpose of Gerrymandering Acceptance To Unfairly Discriminates Against the DL Claim**

The Proposed Plan improperly combines a chapter 11 plan in the Debtor's Case with a chapter 11 plan for the Investments' case into a single "joint" plan to further the improper purpose of gerrymandering acceptance in order to cramdown the Proposed Plan upon the holder of the DL Claim.  Apartments and Investments have not been substantively consolidated, and Trustee Gupta specifically states in the Plan that the Plan is not seeking substantive consolidation.  Plan VI.6.2 ("No provision of this Plan shall be deemed to substantively consolidate the DOA Estate and the DOI Estate").  This impermissible collateral attack also subverts this Court's finding that each of the Debtors has "their own individual circumstances …."  OSC to End Joint Administration at p. 2:8-9.  Under the totality of these circumstances, the Proposed Plan was not filed in "good faith" in violation of Section 1129(a)(3).

Trustee Gupta received notice of the OSC to End Joint Administration and did not respond thereto, and Trustee Gupta received notice of entry of the Order Terminating Joint Administration and did not file any appeal thereof.  The submission of the Proposed Plan, which is premised on joint administration which was previously terminated by court order, constitutes a collateral attack on the Order Terminating Joint Administration.  *See In re Grantham Bros. (Valley National Bank of Arizona v. Needler*), 922 F.2d 1438 (9th Cir. 1991) (an action inconsistent with prior order, in this case filing an adversary complaint seeking stay of a sale where court had issued an order permitting the sale, constitutes an improper collateral attack).

It is therefore apparent that the purpose of the purported joint filing was to effect the cramdown of a chapter 11 plan that is favorable to the Gonzales Trust and detrimental to the DL Claim.  Trustee Gupta apparently seeks to invoke the Ninth Circuit's permission for determination of impaired class acceptance on a plan basis, rather than on a debtor-by-debtor basis, under *In re Transwest Resort Properties, Inc.*,

5

2585700

881 F.3d 724 (9th Cir. 2018) (impaired accepting class determined on a plan basis, not on a debtor-by-debtor basis); however, that case is inapplicable because unlike in that case where the debtors' cases were jointly administered (*id*. at 731 ("Here, the cases of the five Debtors were jointly administered …..")), in the instant cases, the cases of Apartments and Investments are not jointly administered.

It is perhaps evident that the joining of the disparate debtors was determined to be useful to advance the purpose of discriminating against the DL Claim because the Gonzales Trust by itself could not carry the class and there is no legal basis to separately classify the DL Claim and the Gonzales Claim. The separate classification in a plan by the Debtor alone was subject to challenge for gerrymandering (as discussed below). The joining of the disparate debtors then is a "belt and suspenders" means of attempting to obtain an impaired consenting class of claims in derogation of the rights of the holder of the DL Claims. The Proposed Plan is therefore not filed in good faith under all of the relevant circumstances, in violation of Section 1129(a)(3). *See In re: Sylmar Plaza, L.P.*, 314 F.3d 1070 (9th Cir. 2002) (whether a plan is "consistent with the objectives and purposes of the Code" is to be determined "based on the totality of the circumstances") (citations omitted).

**B.      The Proposed Plan Unfairly Discriminates Against the DL Claim In Favor of the Gonzales Claim In Violation of Section 1129(b)(2)**

The Proposed Plan unfairly discriminates against the DL Claim despite the fact that the DL Claim is a general unsecured claim that is deemed allowed and that the DL Claim is not subject to subordination for the reasons specified in the DL Claim Motion P&As. For this reason, the Proposed Plan's provision purporting to implement subordination of the DL Claim based explicitly on the 2011 Proposed Plan (Proposed Plan at § 6.9) is improper and should be stricken for its erroneous premise that the DL Claim is subordinated to any claims at issue in the Debtor's Case.[5]

---

[5] All of the claims to which the DL Claim was subordinated for payment under the 2011 Plan have been paid as evidenced by the fact that Apartments substantially paid down the DL Claim before the Petition Date and in accordance with the 2011 Plan. *See* Motion to Allow DL Claim, at pp. 2:4-5, 6:16-18. Moreover, the Gonzales Claim did not exist in 2011. The claim in favor of Tom Gonzales in 2011 was a right to the "Parcel A Transfer Fee"; that right of payment (a claim is merely a right to payment, per Section 101(5)), subsequently became worthless. The Gonzales Trust now holds a new claim arising from a 2018 judgment for breach of contract.

Pursuant to Section 1129(b), if – and only if – all of the requirements of Title 11 are satisfied other than the requirement that all impaired classes have accepted the plan, the proponent may seek to "cramdown" the plan on the non-accepting class(es) so long as at least one impaired class has accepted the plan. "[S]ection 1129(b) allows a plan proponent to cram down a plan over the dissenting class so long as the plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests that is impaired under and has not accepted the plan." *In re the Leslie Fay Companies, Inc.*, 207 B.R. 764, 788 (Bankr. S.D.N.Y. 1997). This "test boils down to whether the proposed discrimination between classes has a reasonable basis and is necessary for the reorganization." *Id.* at 791 (citation omitted).

In determining whether discrimination under a chapter 11 plan is unfair, courts have applied the following four-part test: "(1) whether the discrimination is supported by a reasonable basis; (2) whether the debtor can confirm and consummate a plan without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) how the class that is being discriminated against is treated." *In re Snyders Drug Stores, Inc.*, 307 B.R. 889, 894-5 (Bankr. N.D. Ohio 2004) (citations omitted). This first factor is not satisfied because there is no reasonable basis to separately classify the general unsecured Gonzales Claim and the general unsecured DL Claim. Neither is it reasonable or necessary to allocate all of the value available for holders of general unsecured claims to the Gonzales Claim to the exclusion of the DL Claim. Second, the Proposed Plan could be confirmed without the discrimination; Desert Land would absolutely vote to accept the Proposed Plan if it were to share with the Gonzales Claim on an equal *pro rata* basis. Third, the discrimination is not proposed in good faith but instead is proposed pursuant to the non-disclosed Gonzales Plan Support Agreement and the improper attempt to propose a joint plan with Investments for the purpose of attempting to subordinate the DL Claim and to benefit the Gonzales Trust (by allocating to it all of the cash available for distribution to holders of general unsecured claims). Finally, class 5 is treated unfairly by receiving no distribution under the Proposed Plan.

Courts have rejected confirmation on the basis of disparate treatment of similarly situated creditors. *In re Tucson Self-Storage, Inc.*, 166 B.R. 892 (Bankr. 9th Cir. 1994); *In re Barney & Carey Co.*, 170 B.R. 17 (Bankr. D. Mass. 1994); *In re* Caldwell, 76 B.R. 643, 646 (Bankr E.D. Tenn. 1987). Here, no reasonable basis to discriminate in favor of the Gonzales Claim has been provided; there is no

justifiable reason for the Gonzales Trust general unsecured claim to receive a disproportionate recovery while the DL Claim is left unpaid.

Furthermore, even if the Proposed Plan proponent could show technical compliance with the unfair discrimination test, the Proposed Plan is not "fair and equitable." Section 1129(b)(2) requires compliance with the fair and equitable test, including, for example, that voting power is fairly allocated among creditors under the circumstances. *See Federal Savings & Loan Ins. Corp. v. D & F Cont., Inc. (In re D & F Constr., Inc.)*, 865 F.2d 673, 675 (5th Cir. 1989). The separate classification for the purpose of nullifying the vote of the DL Claim and enabling the Gonzales Trust's acceptance to constitute the accepting impaired class, is not a fair allocation of voting power. Indeed, "a court must consider the entire plan in the context of the rights of the creditors under state law and the particular facts and circumstances when determining whether a plan is 'fair and equitable.'" *Id.* at 675. *See also In re Cellular Info. Systems, Inc.*, 171 B.R. 926, 937 (Bankr. S.D.N.Y. 1994) (Lifland, J.) ("technical compliance with all the requirements in § 1129(b)(2) does not assure that a plan is 'fair and equitable.'") (quoting 5 COLLIER ON BANKRUPTCY P. 1129.03 at 1129-52 (15h Ed. 1988)); *and In re* Kennedy, 158 B.R. 589, 599 (Bankr. D.N.J. 1993). In this case, the Proposed Plan does not satisfy the "fair and equitable" requirement because it revolves around allocating all of the Debtor's cash available to holders of general unsecured claims to the Gonzales Trust to the detriment of the holder of the DL Claim.

More generally, the Proposed Plan unfairly discriminates against the DL Claim by providing that it is automatically subordinated to the Gonzales Claim unless and until the holder of the DL Claim obtains a final order determining there is no such subordination (*see* Proposed Plan at § 5.6). Even if such an order is obtained, however, the Proposed Plan provides the DL Claim distribution is nevertheless to go to the Gonzales Trust. *See* Proposed Plan at § 5.6. The Proposed Plan further provides that the DL Claim "shall be subordinated in right of payment" to the Gonzales Claim in reliance on Apartments' 2011 Proposed Plan (as defined in the Motion to Allow DL Claim). *See* Proposed Plan at § 4.5.2.[6] The Proposed Plan

---

[6] The Proposed Plan improperly treats the DL Claim as "Disputed," without the requirement of a claims objection thereto, in violation of section 502 of the Bankruptcy Code and Bankruptcy Rule 3007. Section 502(a) of the Bankruptcy Code specifies that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). In addition, Bankruptcy Rule 3007(a) requires that an objection to the allowance of a claim "shall be in

elevates and gives priority to the Gonzales Claim to the detriment of the DL Claim in violation of the facts and the law, including, without limitation, for the reasons set forth in the DL Claim Motion P&As.  The Proposed Plan thereby usurps the distribution to which the DL Claim is entitled (estimated to be in excess of $2 million) and allocates that cash to the Gonzales Trust.

The Proposed Plan further discriminates against the DL Claim by providing that under all circumstances, no distribution shall be made on the DL Claim for an indeterminate amount of time until the Gonzales-Northern Litigation (as defined below) is resolved, whenever that may be.  Even though the outcome of the Gonzales-Northern Litigation will determine the priority of the Gonzales Claim, Trustee Gupta is apparently abdicating any role in litigating that action.  There is no provision for Trustee Gupta or her successor to participate in any way in the Gonzales-Northern Litigation.  The Proposed Plan thus treats the Gonzales Claim as though it is senior in priority even though the judgment lien the Gonzales Trust recorded four days before the Petition Date is deemed removed (*see* Proposed Plan at § 6.3 ("On the Effective Date, the Gonzales Trust Judgment Lien shall be deemed avoided and therefore be of no force or affect [sic] with respect to Property of the Estate[s] ….")).  The Gonzales Trust is also to receive all of any refund to the Estate in the event Northern Trust is determined to have received any distribution from the Estate to which it was not entitled (*see* Proposed Plan at p. 19:11-18 ("the avoidance of the Gonzales Trust Judgment Lien shall not … affect … rights that the Gonzales Trust has … to … recover funds paid by the Chapter 11 Trustee ….").  Thus, the Proposed Plan improperly gives effect to the Gonzales Trust Judgment Lien notwithstanding that the lien is avoided under the Proposed Plan.

The Proposed Plan also provides that the Disbursing Agent may set off against any distribution on the DL Claim while prohibiting the Disbursing Agent from setting off any claims against the Gonzales Claim.[7]  Neither the Plan nor the Disclosure Statement (as defined below) show any cause for this disparate treatment.

---

writing and filed" and that "a copy of the objection . . . shall be mailed or otherwise delivered to the claimant . . . at least 30 days prior to the hearing."  Fed. R. Bank. P. 3007(a).

[7] *Compare* the Plan at § 6.8.4 (allowing set off against the DL Claim) *with* § 7.3 (providing, *inter alia*, that the Disbursing Agent may not set off against Class 2, which contains only the Gonzales Claim).

9

1    The Proposed Plan further harms the DL Claim by delay which may be many years; it stays any

2    distribution to the DL Claim while the Gonzales-Norther Litigation remains pending which could be years

3    if not decades.  This delay in distribution is unreasonable in that this Court has already determined by

4    summary judgment by the Gonzales No-Priority Order that Gonzales is not entitled to any priority relative

5    to Northern Trust.  Nor is there any indication that the District Court (or the Ninth Circuit Court of

6    Appeals for that matter) will determine the merits of Gonzales' claim to priority presented in the

7    Gonzales-Northern Litigation; the appellate court could potentially remand the Gonzales No-Priority

8    Order for further determination before this Court which could lead to a new decision and new round of

9    appeals *ad nauseum*.

10    The Proposed Plan further prejudices the DL Claim by dissipating the Estate's resources for the

11    benefit of the Gonzales Claim by funding its relentless pursuit of its contention that it is entitled to priority

12    treatment relative to Northern Trust.  The Proposed Plan reserves $75,000 to pay Northern Trust's

13    litigation costs which is for the benefit of the Gonzales Trust because it funds the Gonzales Trust's

14    Quixotesque quest for priority despite that its contentions have been rejected by every court that has

15    considered the matter, including the Gonzales No-Priority Order and the Ninth Circuit (in a slightly

16    different context).

17    Even though the Proposed Plan reserves the right for the Disbursing Agent to bring a motion to

18    estimate "Disputed Claims" to "avoid undue delay in the administration of the Estate …." (Proposed Plan

19    at § 6.7), the Gonzales Plan Support Agreement waives that right with respect to the Gonzales Claim,

20    which is treated as "allowed" (Gonzales Plan Support Agreement at § 2.a.).  Accordingly, the Gonzales

21    Claim is explicitly NOT a "Disputed Claim" under the Proposed Plan, and the Proposed Plan thereby

22    waives the ability to estimate the Gonzales Claim to permit the distribution to be made to the DL Claim

23    and the administration of the Debtor's estate to be completed.  By waiving the right to seek estimation for

24    distribution purposes, for the benefit of the Gonzales Trust, the Proposed Plan dooms the administration of

25    the Estate to be prolonged for years to come as the Gonzales Trust continues in its appeal of this Court's

26    Gonzales No-Priority Order.

27    This Court's Memorandum Decision [Adv. Proc. No. 19-01108 (the "Gonzales-Northern

28    Litigation"), ECF No. 38] (the "Memorandum Decision"), adopted and confirmed by this Court's *Order*

10

*Regarding Motion to Dismiss And/Or Motion For Partial Summary Judgment* [Gonzales-Northern Litigation ECF No. 38] (the "Gonzales No-Priority Order"), recites the long history of various courts rejecting the contention of Tom Gonzales (predecessor in interest to the Gonzales Trust) that the Gonzales Claim is entitled to priority relative to Northern Trust's lien (this issue of priority is the central question at issue in the litigation at the core of the "Reversal Event" under the Proposed Plan), including: "the 2011 Lawsuit .... [and also] the Ninth Circuit affirmed the grant of summary judgment against [Tom Gonzales's] claims for priority and judicial foreclosure." Memorandum Decision at p. 17:12-17. The Court went on to make the point distinctly: "As explained above, the 2011 Lawsuit conclusively determined that [Tom Gonzales] held only a contingent, unsecured claim for which there is no cognizable basis for priority over recorded liens. [The Gonzales Trust's] new claim that the Settlement Agreement and Confirmation Order gave [it] a priority covenant is contrary to the prior determination of [its] interest in the 3011 Lawsuit, and, therefore, is barred under the doctrine of issue preclusion." Memorandum Decision at p. 21:15-19.

There is no estimate provided for how long the Gonzales-Northern Litigation may continue to be pending. Given the long history of the Gonzales Trust and its predecessor's losing and appealing decisions, it could be many years of litigation before the DL Claim holder ever receives any distribution assuming any distribution were possible despite the Proposed Plan's contrary indications cited above. In contrast, the Proposed Plan provides for the Gonzales Trust to receive $5 million three weeks after the Proposed Plan becomes effective. *See* Disclosure Statement at p. 24:9-10.

In addition to providing for an unreasonable delay in the payment of the DL Claim, the Proposed Plan provides no compensation whatsoever for the harm to the holder of the DL Claim for the delay while the Gonzales-Northern Litigation remains pending.

Independently, there is no basis for the Gonzales Claim to receive the distribution to which the DL Claim is entitled in the event of the occurrence of the "Reversal Event" because that Gonzales-Northern Litigation does not enhance or create any rights in the Gonzales Trust relative to the Debtor. *See* Proposed Plan at § 8.1 (confirming the outcome of the Gonzales-Northern Litigation is to effect only Gonzales and Norther Trust, and that all claims against the Debtor's estate are determined and fixed by the Proposed Plan, by providing: "Upon Entry of the Confirmation Order, all debts of DOA will be deemed

11

2585700

fixed and adjusted pursuant to the Proposed Plan ….").  Nevertheless, the Proposed Plan provides that the outcome of the Gonzales-Norther Litigation may result in the Gonzales Trust obtaining a priority over Desert Land resulting in all distributions in respect of the DL Claim going to the Gonzales Trust rather than the holder of the DL Claim.  *See* Disclosure Statement at p. 3:14-21 (if a Reversal Even occurs, then "because … the Gonzales Trust (based on the priority determination if a Reversal Event occurs) … would be senior to DL's general unsecured claim, no distribution will be made on account of the DL Claim.").

The Proposed Plan also singles out the Gonzales Claim for special priority treatment to the detriment of the DL Claim, which reflects the non-disclosed coordination with the Gonzales Trust embodied in the Gonzales Plan Support Agreement.  The Proposed Plan allocates to the Gonzales Trust, but not to the holder of the DL Claim, the right to review and approve (or disapprove) of post-confirmation fees and expenses of the Disbursing Agent as well as Northern Trust's legal fees and costs. *See* Disclosure Statement at pp. 23:21-26 (fees and costs of the Disbursing Agent), 24:14-17 (fee and costs of Northern Trust).

###    C.    The Proposed Plan Separately Classifies the DL Claim and the Gonzales Claim to Gerrymander Acceptance To Cramdown the DL Claim

The Proposed Plan's separate classification of the DL Claim and the Gonzales Claim constitutes improper gerrymandering.  This provides an independent basis to deny confirmation of the Proposed Plan. "Generally, courts have rejected classifications based on apparent attempts to 'gerrymander' claims so as to create an impaired class that will vote in favor of a plan of reorganization." 7 COLLIER ON BANKRUPTCY § 1122.03[6][a] (15th ed. rev. 2004) (citations omitted).  "All the circuit courts that have heretofore visited the question of when similar claims may be classified separately have held that similar claims may not be separately classified solely to engineer an assenting impaired class." *Boston Post Road Ltd. Partnership v. Federal Deposit Insurance Corp. (In re Boston Post Road Ltd.)*, 21 F.3d 477, 482 (2d Cir. 1994), *cert. den'd,* 513 U.S. 1109, 115 S.Ct. 897 (1995); *see also In re Barakat*, 99 F3d 1520, 1526 (9th Cir. 1996) (separate classification of similar claims, a deficiency claim and general unsecured claims, "to obtain acceptance of the Plan" is "not permitted.").  In other words, "thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan." *Phoenix Mut.*

12

*Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture)*, 995 F.2d 1274, 1279 (5th Cir. 1991), *cert. den'd,* 506 U.S. 821 (1992), *and cert. den'd,* 506 U.S. 822 (1992).

The Proposed Plan may not be confirmed if no impaired class accepts it. *See* 11 U.S.C. § 1129(a)(10). The prospect that no impaired class will accept the Proposed Plan is significant in light of the fact that the DL Claim and the Gonzales Claim are the only general unsecured claims in the Debtor's Case that are impaired by the Proposed Plan; yet they are separately classified in Class 2 (the Gonzales Claim) and Class 5 (the DL Claim). In determining whether the votes accepting the Proposed Plan are sufficient to carry the class under Section 1126(c), a creditor class accepts a plan only if the votes in favor of the plan constitute more than two-thirds in amount of the voted claims and more than half the number of voting creditors. In this regard, Section 1129(a)(10) provides as follows:

> If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.

11 U.S.C. § 1129(a)(10). The votes of an insider rejecting a plan are not excluded. *Id.*

Desert Land's vote to reject the Plan is entitled to equal weight notwithstanding that the DL Claim is held by Desert Land who is an insider under the Bankruptcy Code. *Principal Mutual Life Insurance Co. v. Lakeside Assoc., L.P. (In re Deluca)*, 194 B.R. 797, 803 (Bankr. E.D. Va. 1996) (the Bankruptcy Code does not require that the rejecting votes of an insider be disregarded).

Here, the Proposed Plan improperly separates the DL Claim and the Gonzales Claim apparently so the Gonzales Trust's acceptance of the Proposed Plan will constitute a consenting impaired class in order to "cramdown" the DL Claim. *See One Time Square Assocs. Ltd. P'sp.*, 159 B.R. 695, 705 (Bankr. S.D.N.Y. 1993), *aff'd,* 165 B.R. 773 (S.D.N.Y. 1994) *aff'd,* 41 F.3d 1502 (2d Cir. 1994), *cert. denied*, 513 U.S. 1153 (1995) , (rejecting plan where accepting class consisted of lease damage claims that had been separately classified: "lease rejection claimants and all other unsecured claimants have the same legal relationship with the Debtor, that of general unsecured creditors. The legal nature of the rejection claims are not unique and separate classification is not justified by any sound business reason."); *see also In re Porcelli*, 2004 WL 2931374, *11 (Bankr. M.D. Fla. Aug. 5, 2004) (it is the "legal status of the claim and not its disputed status that is the appropriate focus of classification").

13

Without the gerrymandering, were the Gonzales Claim and the DL Claim classified together, the Proposed Plan which pays the Gonzales Claim while denying payment to the DL Claim, would not be approved by this class of general unsecured claims against the Debtor over the rejection by the holder of the DL Claim.  By itself the Gonzales Claim holder would not constitute more than one-half in number of the holders of claims in a class that includes the general unsecured claims against the Debtor.

By positioning the Proposed Plan to rely on the Gonzales Trust's acceptance in order to satisfy Section 1129(a)(10), the Proposed Plan proponent is setting the stage for a *pro forma* cramdown scenario that would impermissibly disenfranchise the DL Claim.  Given the absence of a reasonable and justified basis for separately classifying the DL Claim and the Gonzales Claim, the Proposed Plan should be denied confirmation on this basis alone.

### D.    The Proposed Plan Violates the Best Interest Test By Providing the DL Claim With Less Than It Would Receive In Chapter 7, In Violation of Section 1129(a)(7)(A)(ii)

The best interest of creditors test requires that a plan provide dissenting creditors with "property of a value, as of the effective date of the plan, that is not less than the amount such holder would" receive in a liquidation under Chapter 7 of the Bankruptcy Code.  11 U.S.C. § 1129(a)(7)(A)(ii).  Debtors have the burden of satisfying the best interest of creditors test.  *See In re Featherworks Corp*., 25 B.R. 634, 642 (Bankr. E.D.N.Y. 1982), *aff'd*, 26 B.R. 460 (E.D.N.Y. 1984); *and In re Hoosier Hi-Reach, Inc.,* 64 B.R. 34, 38 (Bankr. S.D. Ind. 1986) ("the burden imposed by 1129(a)(7) must be met with evidence, not assumptions").  The Proposed Plan does not contemplate that any payment will be made on the DL Claim.  Accordingly, it is incumbent upon the proponent to demonstrate that the DL Claim will receive at least as much under the Proposed Plan as they would under Chapter 7 liquidation.  The Proposed Plan's assumption, that the DL Claim is subordinated, fails to carry the proponent's burden where, as here, the DL Claim is not subject to subordination to the Gonzales Claim.

Specifically, in a chapter 7 case, the DL Claim would receive more than $2 million rather than zero, assuming the chapter 7 estate has at least $8 million in cash that is available for distribution to general unsecured claims holders in the Debtor's Case.  Assuming, as the Proposed Plan assumes, that there is at least $8 million of distributable cash (*see* the Debtor's Disclosure Statement accompanying its Proposed Plan (the "Disclosure Statement") at p. 25:16-17), and the Gonzales Claim were stated in the

14

amount of $13.17 million as the Disclosure Statement contemplates (*see* Disclosure Statement at n.5), the DL Claim would receive more than $2 million (*i.e.*, $8 million of distributable cash divided among claim pool of $17.67 million ($13.17 million plus $4.5 million), = 45.3% distribution x $4.5 million = $2.037 million to the DL Claim).  Under the Proposed Plan, however, the DL Claim is to receive no distribution.  *See* Disclosure Statement at p. 6:21 ("Class 5 [DL Claim] …. No distribution.").  Accordingly, the Proposed Plan violates the "best interest" test because Desert land will not "receive or retain under the plan … value … that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title…."  11 U.S.C. § 1129(a)(7)(A)(ii).

E.    **The Proposed Plan Prematurely Installs Disbursing Agent Before The Proposed Plan Becomes Effective Which Shields Administrative Fees And Expenses From Judicial Review In Violation of Section 330**

In violation of Section 330, the Proposed Plan prematurely installs Trustee Gupta as the Disbursing Agent and provides for the payment of such agent's fees, as well as other expenses incurred after the Proposed Plan is confirmed, but before the Proposed Plan becomes effective.  *See* Proposed Plan at § 3.2.  The Proposed Plan fails to provide for the possibility that the Proposed Plan may be confirmed yet never become effective.  The Proposed Plan evidences the drafter's awareness of the difference between mere confirmation and the Proposed Plan becoming effective.  *See* Proposed Plan at § 5.3 (providing that $5 million initial distribution to Gonzales Trust is to be made "15 days after the Effective Date ….").  The most immediate consequence of this apparent oversight is that, under the Proposed Plan, such fees and costs would no longer be subject to this Court's review and approval (unless the Gonzales Trust were to object thereto) while the Debtor's estate remains in existence and before the Proposed Plan is effective, in violation of Section 330.

Section 330 makes no provision for allocating compensation review to a creditor who may approve compensation without court approval and without notice to other parties in interest.  *See* 11 U.S.C. § 330(a)(1) ("After notice to the parties in interest … the court may award to a trustee … or a professional person" compensation).  The Proposed Plan's proponent provides no authority for depriving parties in interest of notice, and this Court of the sole power to review and approve compensation before the Proposed Plan becomes effective.

15

2585700

**F.** **The Exculpation Clause Impermissibly Inoculates the Trustee And Professionals From Claims Arising From the Desert Land Case For No Consideration to the Desert Land Estate**

The Proposed Plan's exculpation provision impermissibly insulates Trustee Gupta and her professionals from claims arising from the Desert Land Case for no consideration to the Desert Land Estate. *See* Proposed Plan at Article 6.14. The Proposed Plan's exculpation extends beyond actions associated with preparing and presenting the Proposed Plan and the Disclosure Statement. This exculpation provision extends to "any act or omission in connection with or arising out of the Chapter 11 Cases …." Disclosure Statement at p. 30:19-20. Neither the Proposed Plan nor the Disclosure Statement provide any basis or rationale for granting Trustee Gupta and her professionals exculpation for actions and omissions taken and not taken in Desert Land Case.

The authority upon which the Debtor relies in seeking an expansive exculpation beyond the instant case for Trustee Gupta and her professionals (two cases cited in Disclosure Statement on pp. 30-31) do not support the expansive exculpation the Proposed Plan proposes. In the first case, *In Blixseth v. Credit Suisse*, 961 F.3d 1074 (9th Cir. 2020), the court upheld the "narrow" exculpation that was limited in scope to actions and omissions in connection with the plan process itself. "We conclude, however, that § 524(e) does not bar a narrow exculpation clause of the kind here at issue—that is, one focused on actions of various participants in the Proposed Plan approval process and relating only to that process." *Id*. at 1082. The Court went on to note that the purpose of exculpation provisions is to insulate the parties to a proceeding from claims arising from the resolutions of issues, which reasoning does not extend to a release of claims from a different bankruptcy case. *See Id*. at 1084 ("the [exculpation provision] does nothing more than allow the settling parties – including Credit Suisse, the Debtor's largest creditor – to engage in give-and-take of the bankruptcy proceeding without fear of subsequent litigation over any potentially negligent actions in those proceedings." (Footnote omitted). Similarly, the other case on which the Debtor relies, *In Meritage Homes of Nev., Inc. v. JPMorgan Chase Bank, N.A. (In re S. Edge LLC)*, 478 B.R. 403, 408 (D. Dev. 2012), did not exculpate the beneficiaries from claims for any case other than the Debtor's own case; it did not extend to claims arising from another case that is not a plan proponent.

16

This effective discharge of claims is to be effected under the Proposed Plan despite that the Proposed Plan is a plan of liquidation rather than a plan of reorganization, thus, a discharge is not available as specified in Section 1141(d).

**G.    Reservation of Right to Respond to Confirmation Memorandum**

As of the date this Objection was prepared for filing, the Debtor has not filed its memorandum in support of confirmation of the Proposed Plan.  To the extent any such memorandum is filed before the confirmation hearing on the Proposed Plan, Desert Land reserves the right to respond to any such memorandum at or prior to the hearing thereon.

**H.    Reservation of Right to Incorporate Other Objections**

Desert Land reserves the right to join in any other objection to confirmation of the Proposed Plan that has been, or may be, filed by any party in interest, to the same extent as if any such objection had been set forth herein in full.

**IV.    CONCLUSION**

For the foregoing reasons, the Debtor's Proposed Plan violates the Bankruptcy Code and should not be confirmed.

Respectfully submitted.

DATED: February 25, 2021                    **BRUTZKUS GUBNER**


By: _____
Jerrold L. Bregman (*pro hac vice* application
pending, and granted in the related case of
Desert Land, LLC)
Attorneys for Jeffrey I. Golden, Chapter 11
Trustee for creditor Desert Land, LLC

17

2585700