STEVEN T. GUBNER – Nevada Bar No. 4624
JERROLD L. BREGMAN – *Pro Hac Vice* application pending, and granted in the related case of Desert Land, LLC
SUSAN K. SEFLIN – *Pro Hac Vice* granted in related case
BRUTZKUS GUBNER
300 S. 4th Street, Suite 1550
Las Vegas, NV 89101
Telephone: (702) 835-0800
Facsimile:   (866) 995-0215
Email:   sgubner@bg.law
           jbregman@bg.law
           sseflin@bg.law

Attorneys for Jeffrey I. Golden,
Chapter 11 Trustee of creditor Desert Land, LLC

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>DESERT OASIS APARTMENTS, LLC,<br><br>                    Debtor. | Case No. BK-S-18-12456-GS<br>Chapter 11<br><br>**OBJECTION OF DESERT LAND, LLC TO DISCLOSURE STATEMENT FOR TRUSTEE KAVITA GUPTA'S JOINT PLAN OF LIQUIDATION DATED JANUARY 25, 2021**<br><br>Hearing Date:  March 11, 2021<br>Hearing Time:  1:30 p.m. |

Jeffrey I. Golden ("Trustee Golden"), solely in his capacity as the duly appointed and serving chapter 11 trustee for the bankruptcy estate of Desert Land, LLC ("Desert Land"), whose case is pending in the above-captioned Court as Case No. BK-S-18-12454-GS (the "Desert Land Case"), hereby (the "Objection") objects to the *Disclosure Statement for Chapter 11 Trustee Kavita Gupta's Joint Plan of Liquidation Dated January 25, 2021* (the "Disclosure Statement") filed in the above-captioned chapter 11 case of Desert Oasis Apartments, LLC (the "Debtor").  This Objection is premised upon Desert Land's general unsecured claim against the Debtor's estate in the amount of $4.5 million (the "DL Claim") which is deemed and should be allowed in the Debtor's case (the "Debtor's Case") pursuant to Section 502 of the Bankruptcy Code.[1]  This Objection is related and further to the *Objection of Desert Land, LLC to Trustee*

---

[1] Unless otherwise stated, all statutory references are to 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

1

*Kavita Gupta's Joint Plan of Liquidation Dated January 25, 2021* (the "Objection to Proposed Plan"), filed substantially contemporaneously herewith, which Objection to Proposed Plan is incorporated herein by this reference as though set forth in full.

Trustee Golden files this Objection in furtherance of his fiduciary duty to protect and preserve the DL Claim, which is a material asset for the benefit of Desert Land's bankruptcy estate and its creditors.[2]

Final approval of the Disclosure Statement should be denied because the Disclosure Statement fails to provide creditors with sufficient information with which to vote on the Proposed Plan for the reasons set forth in the accompanying memorandum.

Respectfully submitted.

DATED: February 25, 2021

**BRUTZKUS GUBNER**

By: _____
Jerrold L. Bregman (*pro hac vice* application pending, and granted in the related case of Desert Land, LLC)
Attorneys for Jeffrey I. Golden, Chapter 11 Trustee for creditor Desert Land, LLC

---

[2] Although the above-captioned Court indicated on the record of a hearing in the Desert Land Case, held December 10, 2020, that the Court intends to dismiss that case, the Court has not issued any order dismissing that case as of the date this Motion was filed. At a further status conference in the Desert Land Case on the motion to dismiss, currently scheduled for March 11, 2021, Trustee Golden will advocate for reconsideration of the Court's tentative ruling, including on the grounds that that dismissal violates *Czyzewski v. Jevic Holding Corp.*, 137 S.Ct. 973 (2017), and that conversion, rather than dismissal, is in the best interests of creditors who have not affirmatively consented to dismissal.

2587924

# MEMORANDUM OF POINTS AND AUTHORITIES

I. **ARGUMENT**[3]

Notwithstanding that Trustee Golden is able to ascertain that the Proposed Plan discriminates unfairly against the DL Claim[4] and in favor of the Gonzales Claim, to the detriment of Desert Land's estate and its creditors, the Disclosure Statement fails to contain adequate information as required by Section 1125 of the Bankruptcy Code, and thus should not be approved by this Court.

Section 1125 prohibits the solicitation of acceptances or rejections of a plan from the holder of a claim or interest unless the Court first determines that a written disclosure statement contains "adequate information," defined as follows:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1) (emphasis added). Under this standard, "adequate information" is determined on a case-by-case basis, but a disclosure statement should not be approved in any event if it describes a patently unconfirmable plan. *See In re Arnold*, 471 B.R. 578, 586 (Bankr. C.D. Cal. 2012). Thus, even at the disclosure statement-level, the plan proponent must show that the plan complies with all provisions of Sections 1123 and 1129, otherwise the disclosure statement should not be approved.

A. **The Disclosure Statement Fails to Adequately Disclose the Treatment of the Gonzales Claim Under the Debtor's 2011 Plan Upon Which the Plan is Premised**

The Disclosure Statement does not explain how the Gonzales Claim was treated under the Debtor's 2011 Plan, including how or why the Gonzales Claim obtained any priority rights thereunder relative to the DL Claim.[5] The Proposed Plan itself begs the question of the 2011 Plan's workings by

---

[3] Reference is made to the "Introduction" and "Facts" sections of the Objection to Proposed Plan, which are not repeated herein to avoid duplication.

[4] Unless otherwise stated, all terms used herein but not defined herein shall have the meanings ascribed to them in the Objection to Proposed Plan.

[5] This Objection assumes, *arguendo*, that the current Gonzales Claim existed in 2011; however, the claim that existed in 2011 no longer exists. That 2011 claim (a "right to payment," as "claim" is defined in

2587924

providing that the DL Claim shall be subordinated to the Gonzales Claim "to the extent provided in Article 4 of the 2011 Plan …." *See* Plan at § 4.5.2.  Thus, the Proposed Plan provokes the question of, "to what extent is that?" to which the Disclosure Statement provides no answer.  *See* Disclosure Statement at p. 27:4 ("The Plan preserves all subordination provisions of the 2011 Plan.").  Without any analysis, the Disclosure Statement merely repeats its conclusion without analysis by reciting that Trustee Gupta "believes that the [DL Claim] will be subject to subordination under the terms of the 2011 Plan." Disclosure Statement at p. 25:13-15.

The Disclosure Statement should state any analysis that Trustee Gupta believes supports this term of the Proposed Plan.  This disclosure is especially important in light of the fact the Proposed Plan provides for the entirety of the cash that otherwise would be distributed in respect of the DL Claim instead to go to the Gonzales Trust.  Without disclosure, this essential feature of the Proposed Plan is left unexplained in violation of Section 1125.

**B.    The Disclosure Statement Fails to Discuss Any Risks Whatsoever, Including Those Relating to the Gonzales-Northern Litigation**

The Disclosure Statement contains no discussion of any of any risks whatsoever that are inherent in the Proposed Plan, including, without limitation, those certain risks that are identified below.

<u>Duration of the Gonzales-Northern Litigation</u>:  The Disclosure Statement contains no discussion of how long the Gonzales-Norther Litigation may remain pending.  Nor does it provide any indication of what would happen in the event the District Court (or the Ninth Circuit Court of Appeals for that matter) declines to determine the merits of Gonzales' claim to priority presented in the Gonzales-Northern Litigation.  The Disclosure Statement does not address the possibility that the appellate court could potentially remand the Gonzales No-Priority Order for further determination before this Court which could lead to a new decision and new round of appeals *ad nauseum* and what that would mean in terms of duration and costs to the Debtor's estate and the ultimate distribution to creditors.

---

Section 101(5)), for payment of the "Parcel A Transfer Fee," subsequently became worthless.  The Gonzales Trust now holds a new claim arising from a 2018 judgment for breach of contract.

2587924

<u>Potential Costs of the Gonzales-Northern Litigation</u>: the Plan allocates $75,000 to pay Northern Trust's legal fees for responding to the Gonzales Trust's continued prosecution of the Gonzales-Northern Litigation. *See* Plan § 4.1.2. The Disclosure Statement does not provide any indication of what would happen in the event that amount proves insufficient to fund Northern Trust's reasonable fees and costs for continuing to respond to this litigation. It is also conceivable, in the event this litigation were to continue for multiple years to the Ninth Circuit and back potentially on multiple occasions, that all of the cash of the Debtor's estate would be depleted after distribution of the $5 million to the Gonzales Trustee 15 days after the Proposed Plan becomes effective and after the corresponding amount that is reserved to nominally provide for a *pro rata* distribution in respect of the DL Claim. The Disclosure Statement should disclose these important economic terms and projections, to the extent any exist, and if no analysis or projections exist, then that should be stated.

<u>Potential For Northern Trust to be Impaired</u>. In the event of a cash shortfall whereby the Disbursing Agent (as defined in the Proposed Plan) would have insufficient funds with which to pay Northern Trust's reasonable fees and costs responding to the Gonzales-Northern Litigation, there is no indication in the Disclosure Statement whether or how the Distribution Agent would be able to fund such legal fees and costs. While it may be possible that funds previously distributed to the Gonzales Trust may be recovered somehow, the Disclosure Statement is silent as to any such means. There is no apparent mechanism in the Proposed Plan to obtain any return of funds from the Gonzales Trust.

Nor does the Disclosure Statement recognize the resulting prospect that Northern Trust's claim may be impaired by the lack of available funds with which to pay its reasonable fees and costs arising from its secured claim and in accordance with its loan documents. In light of this project that the Northern Trust claim may ultimately be impaired, the Disclosure Statement does not address how or why Northern Trust is not treated as impaired under the Proposed Plan and entitled to vote thereon.

**C.    The Disclosure Statement Fails to Adequately Disclose Any Tax Refunds**

While the Plan preserves any Property Tax Refund Claims (as defined in the Proposed Plan) that may be anticipated to be received (*see* Proposed Plan § 6.8.2), the Disclosure Statement provides no information about whether the Debtor's estate is entitled to any such tax refund and, if so, the anticipated

3

2587924

amount of any such property tax refund to which the Debtor's estate may be entitled. The Disclosure Statement should include a description of any tax refund to which the Debtor's estate may be entitled, and if there are none, or if the proponent of the Proposed Plan has not conducted any analysis or has no such information, then that should be stated.

### D. The Disclosure Statement Fails to Disclose Any Rights/Causes of Action

While section 6.8 of the Proposed Plan preserves a litany of rights and causes of action, including, without limitation, to pursue claims against creditors such as Desert Land, the Disclosure Statement provides no information about any such rights or causes of action. If these are material assets of the Debtor's estate, they should be described, quantified, and their value provided for under the Proposed Plan. Instead, the Proposed Plan and the Disclosure Statement are silent in this regard.

The Disclosure Statement does not describe any amounts of money that is or may be at issue, it does not describe the legal fees and other costs that the proponent anticipates would be expended in pursuit of any such rights or causes of action, nor does it describe the likelihood of success, or the timing or the likelihood of collectability, of any such rights or causes of action. The Disclosure Statement should include a description of this information to the extent known, and if for any of such rights and/or causes of action such information is not known then that should be stated. *See Javid v. Allied-Barton Sec. Services*, No. CIV S-07-0386 FCD GGH PS, 2008 WL 1925233, *6 (E.D.C.A. Apr. 30, 2008) ("While 'all facts were not known to [plaintiff] at the time … enough was known to require notification of the existence of the asset to the bankruptcy court.' … The requirement of full disclosure was more than a general obligation … because the plan proposed … settlement of defendant bank's secured claim against plaintiffs.") quoting and discussing *Hay v. First Interstate Bank of Kalispell*, 978 F.2d 555, 557 (9th Cir. 1992), and (in n. 12) citing, *inter alia*, 11 U.S.C. § 1125.

### E. The Disclosure Statement Fails to Adequately Disclose Claims to be Barred by Exculpation

Without any explanation in the Disclosure Statement for its breadth, the exculpation provision of the Proposed Plan insulates Trustee Gupta and her professionals from claims arising from the Desert Land Case for no consideration to the Desert Land Estate. *See* Proposed Plan at Article 6.14.

4

2587924

The Disclosure Statement also does not describe any other claims that may exist but which the Proposed Plan is intended to enjoin. To the extent that Trustee Gupta has identified any such potential claims against Trustee Gupta and/or her professionals in the Debtor's case, or her professionals in the Desert Land Case, the Disclosure Statement should include disclosure so that parties in interest, including, without limitation, Desert Land, and the Court, may evaluate such claims. It is therefore no answer to simply say "any and all" claims. If any particular claims have been identified by Trustee Gupta which are intended to be the subject of this exculpation, the absence of such disclosure would violate section 1125.

F. **Reservation of Right to Incorporate Other Objections**

Desert Land reserves the right to join in any other objection to the Disclosure Statement that has been, or may be, filed by any party in interest, to the same extent as if any such objection had been set forth herein in full.

**IV. CONCLUSION**

For the foregoing reasons, the Disclosure Statement fails to provide creditors with sufficient information with which to vote on the Proposed Plan. Based on the foregoing, Trustee Golden respectfully requests that the Court enter an order denying approval of the Disclosure Statement.

Respectfully submitted.

DATED: February 25, 2021

**BRUTZKUS GUBNER**

By: _____
Jerrold L. Bregman (*pro hac vice* application pending, and granted in the related case of Desert Land, LLC)
Attorneys for Jeffrey I. Golden, Chapter 11 Trustee for creditor Desert Land, LLC

5

2587924