FENNEMORE CRAIG, P.C.
Cathy L. Reece *(AZ Bar No. 005932)*
Anthony W. Austin (NV Bar No. 010850)
2394 E. Camelback Rd., Ste. 600
Phoenix, AZ 85016-3429
Telephone:  (602) 916-5343
Facsimile:  (602) 916-5543
Email: creece@fclaw.com
       aaustin@fclaw.com

*Attorneys for The Northern Trust Company*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>DESERT OASIS APARTMENTS, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No.:  BK-S-18-12456-GS<br><br>Hearing Date:    March 11, 2021<br>Hearing Time:    1:30 p.m. |

**THE NORTHERN TRUST COMPANY'S OBJECTION TO DISCLOSURE STATEMENT FOR CHAPTER 11 TRUSTEE KAVITA GUPTA'S JOINT PLAN OF LIQUIDATION AND CONFIRMATION OF THE JOINT PLAN OF LIQUIDATION**

The Northern Trust Company ("Northern Trust"), the secured lender of Desert Oasis Apartments LLC, hereby submits its objection to the Disclosure Statement for Chapter 11 Trustee Kavita Gupta's Joint Plan of Liquidation [DE 243] (the "Disclosure Statement") and objection to confirmation of the Joint Plan of Liquidation [DE 239] (the "Plan"). As detailed herein, the Disclosure Statement is deficient and the Plan violates the provisions of Section 1129 and is not confirmable in its present state.

While the Plan is effectively a liquidation plan that provides for the distribution of the sale proceeds it must still comply with the provisions of the Bankruptcy Code – notably Section 1129. Accordingly, the Plan may not discriminate unfairly and must still be fair and equitable as to each class and claim. See 11 U.S.C. § 1129(b).

17880236.3

### I. Impairment Issues of NT claims

Curiously, the Trustee asserts in the Disclosure Statement and Plan that Northern Trust is not impaired and, therefore, deemed to have accept the Plan. However, the Trustee in the same breadth acknowledges that Northern Trust's claim is not treated pursuant to the terms of its agreement. Accordingly, Northern Trust's claims are impaired.

Impairment is defined, in relevant part, in Section 1124(1), which provides that "a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan ... leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest." In the Ninth Circuit impairment is defined very broadly and includes "any alteration of the rights ... even if the value of the rights is enhanced." *In re L & J Anaheim Assocs.*, 995 F.2d 940, 942 (9th Cir.1993); *In re Val-Mid Associates, L.L.C.*, 2013 WL 139278, at *2 (Bankr. D. Ariz. 2013). In cases like this one, "claims are presumed to be impaired (and thus generally entitled to vote on the plan) unless one of the conditions in 11 U.S.C. § 1124 are met." *In re Seasons Apartments, Ltd. P'ship*, 215 B.R. 953, 958 (Bankr. W.D. La. 1997).

To escape the obvious alteration of Northern Trust's rights, the Trustee essentially asserts that Section 1124(1) is applicable and blames the Bankruptcy Code and the Court as opposed to the Plan for the impairment. But the Trustee's reliance on *In re PG&E Corporation* misses the mark. 610 B.R. 308, 315 (Banrk. N.D. Cal. 2019). In *PG&E*, the court agreed that the imposition of the Federal Rate of Interest by Section 726(a)(5) for unsecured creditors in a solvent case was not something dictated by the plan. *Id*. However, here, the Plan itself impairs Northern Trust's claims and, therefore, *PG&E* is inapplicable.

The Plan interjects itself into Northern Trust's rights in several ways. First, the Plan requires the approval of an opposing party before repayment of Northern Trust's fees and costs. See Article 4.1.3. No such requirement is found in the loan documents of Northern Trust or the Bankruptcy Code. Second, the Plan caps Northern Trust's fee and

cost recovery. See Article 4.1.2. No such limitation is placed on Northern Trust in the loan documents. Third, the Plan effectively strips Northern Trust's liens off the sales proceeds and limits it to the amount of the fee claim reserve. The Plan then provides to make substantial payments to administrative claims and others diminishing the amounts due to creditors. Accordingly, the Plan limits the recovery of Northern Trust on its claims if a "Reversal Event" occurs through payment to the Disbursement Agent of $132,000.00 and payment of fees and costs for Trustee and her counsel from the collateral of Northern Trust. See Articles 3.1-4.

In addition to the limitations on recovery noted above, the Plan provides for nearly all of the cash on hand to be paid to other creditors or claimants leaving little in the estate to satisfy Northern Trust's claims. The Plan does provide for a reserve of $75,000 to fund on going attorneys' fees and costs incurred by Northern Trust in the Adversary. However, the number is insufficient and appears arbitrary given the history of the Adversary and the Trustee fails to provide any calculus for how it is calculated.

Northern Trust asserts that any such reserve should be at least $500,000 given the previous fees and costs incurred. Currently, Northern Trust's unpaid fees July 2020 and August 2020 (which is before the closing of the sale of the property owned by Apartments) total approximately $100,000. Northern Trust has shared with the Trustee redacted invoices of Fennemore Craig, P.C. for these months and has provided the amount of fees incurred by Gerrard Cox Larson for the same period. Based on these invoices alone, the $75,000 will effectively be exhausted without any payment for fees and costs after August 2020. Yet all parties acknowledge that the litigation has continued since September 2020 and will continue for the foreseeable future and fees and costs will continue to accrue. Based upon the history of the Adversary and likelihood of protracted appeals and litigation a substantial reserve must be set to ensure payment of all fees and costs incurred by Northern Trust.

Impairment is broad and despite the Trustee's attempts to avoid the issue, the Plan impairs Northern Trust's rights. Accordingly, Northern Trust is entitled to vote on the

FENNEMORE CRAIG

- 3 -

17880236.3

Plan and the Trustee's attempts to disenfranchise Northern Trust to prevent a potentially negative vote renders the Plan unconfirmable.

## II. Inclusion of Reversal Event and no treatment of Northern Trust's resulting claim is prejudicial and not fair and equitable.

The Plan interjects itself into the middle of the issues between Northern Trust and the Gonzales Trust. Such an interjection is not required and inappropriate. Further, the process by which the Trustee intends to address these issues is flawed and inappropriate and there is no treatment proposed for Northern Trust's resulting claim if there is a Reversal Event.

### a. Reversal Event is Improperly Defined

The Trustee goes on at length about how the potential finding that the Gonzales Trust holds a priming interest over Northern Trust's recorded deeds of trust should be handled. However, the triggering event deemed a "Reversal Event" is improperly defined.

Article 1.40 of the Plan defines a "Reversal Event" as "a circumstance where both of the following have occurred: (a) entry of a judgment by the Bankruptcy Court or other court of competent jurisdiction reversing the Bankruptcy Court's April 22, 2020 judgment in favor of Northern Trust in Adv. Proc. No. 19-01108 [Adv. Proc. Dkt. 39], and (b) entry of judgment determining that the claim held by Brad Busbin, Trustee of the Gonzales Trust has priority over the claim held by Northern Trust." Notably, the Trustee does not require that any of these judgment be a "Final Order" which is defined as "an order of the Bankruptcy Court as to which the appeal period has expired without an appeal having been timely taken or, if an appeal is timely taken, such order has been affirmed on appeal and any time for further appeal or petition has expired without any such further appeal or petition having been filed." Article 1.26.

The Trustee already provides in many locations that certain rulings be a "Final Order" before the Plan requires action. Curiously, it does not impose such a requirement on the Gonzales Trust before requiring Northern Trust disgorge funds paid on its first

FENNEMORE CRAIG

- 4 -

17880236.3

position interests. As currently drafted a Reversal Event could occur which is not a Final Order, Northern Trust would then be compelled by the terms of the Plan to disgorge funds even if Northern Trust intends to appeal the non-Final Order Reversal Event. See Article 4.1.4. Further, the Plan empowers the Gonzales Trust with "Assigned Refund Rights" and directs the Disbursement Agent to distribute all remaining funds held by the Estate to the Gonzales Trust regardless of whether the Reversal Event is a Final Order. See Article 4.2.6.

This process improperly favors the Trustee and the Gonzales Trust to the detriment of Northern Trust. Such treatment is not fair and equitable and therefore the Plan cannot be confirmed.

### b. Why is the Trustee in middle of this?

Aside from the process the Trustee imposes on Northern Trust, the deeper question is why does the Trustee even impose such a process regarding the Adversary issues. There is no requirement that the Trustee, who is not a party to the Adversary, become entangled in the adjudication of payments received by Northern Trust. Further, the funds that may be disgorged are not property of the Estate and the Trustee has no interest in or claim over those funds. The Trustee simply lacks any basis to dictate what Northern Trust and the Gonzales Trust do in the Adversary.

If a Reversal Event, as the Trustee defines it, occurs, there is no reason or justification for the Trustee to become involved. At such a time, the Gonzales Trust can exercise its rights and seek disgorgement from Northern Trust of the appropriate amount of funds to satisfy whatever claim is deemed a priority right. The Trustee is not implicated and there is no basis for the Trustee to insert herself into that process. Accordingly, there is no basis for the Plan to impose any process on Northern Trust. All the Trustee need provide for in the Plan is mechanism to provide for payment to Class 5 if its an allowed unsubordinated claim and a Reversal Event occurs. Anything beyond that is simply overreaching by the Trustee.

### c. The Plan ignores Gonzales Trust's other collateral

The Trustee in formulating the Plan ignores the fact that Gonzales Trust holds a secured interest in other real property from which it may obtain a substantial recovery. This additional property exceeds the amount of Gonzales Trust's total claim by an order of magnitude. This source of recovery was negotiated for and obtained as part of the credit bid by Shotgun to acquire the property.

By ignoring this interest, the Trustee improperly shifts the burden to pay Gonzales Trust's claim to Northern Trust. Instead of balancing the recoveries for the Gonzales Trust, the Trustee through the Plan places Northern Trust as the sole party responsible for paying the Gonzales Trust claim if a Reversal Event occurs. By forcing such a burden on Northern Trust the Plan cannot be deemed fair and equitable and cannot be confirmed.

As this Court is aware, one of the concepts central to appellate law is whether the trial court can fashion an "equitable remedy" should the an order or judgment be reversed. See *Motor Vehicle Cas. Co. v. Thorpe Insulation Ins. Co. (In re Thorpe Insulation Co.)*, Inc., 677 F.3d 869, 883 (9th Cir. 2012) ("most importantly, we look to whether the bankruptcy court on remand may be able to devise an equitable remedy."). In examining whether an equitable remedy is available, the courts examine whether it is "practical and equitable" to "unscramble the eggs" after a reversal. *Baker & Drake, Inc. v. Pub. Serv. Comm'n (In re Baker & Drake, Inc.)*, 35 F.3d 1348, 1352 (9th Cir.1994).

Unscrambling the eggs in the Adversary impacts not only Northern Trust but the Shotgun entities and places Gonzales in a priority position over both entities. Accordingly, a practical and equitable result requires that any equitable relief fashioned bear the burden of that priority claim uniformly and equitably. Here, the Plan places the entirety of the Gonzales Trust squarely on Northern Trust. As a fiduciary for the estate and its creditors one would expect the Trustee to seek to ensure creditors of her estate are treated fairly and equally but insisting that the Shotgun entities bear their share of the damage done by a Reversal Event. The Trustee's inexplicable failure to consider

Shotgun's share of payments favors the Gonzales Trust at the expense of Northern Trust and therefore the plan is not fair and equitable.

    d. <u>The Plan improperly imposes disgorgement on only Northern Trust</u>

The Trustee does not dispute that the sale proceeds constitute the collateral of Northern Trust. This reality is true whether the Gonzales Trust is deemed to hold a priority right to payment or Northern Trust's claims are confirmed as being in first position. In other words, after payment to the Gonzales Trust the entirety of the remaining funds would be subject to Northern Trust's security interests. In spite of Northern Trust's security interest in the sale proceeds, the Trustee has paid and intends to pay various administrative and other creditors thereby depleting the amount of funds available if a Reversal Event occurs.

If a Reversal Even occurs, the Plan requires Northern Trust to disgorge to the Gonzales Trust the entirety of funds it received from the estate to satisfy the Gonzales Trust's claim. Notably, the Plan does not address whether the Gonzales Trust is entitled to a priority payment the full $13 million amount claimed or only the $10 million transfer fee and simply presumes the entirety is paid. The Plan then pays over all remaining funds the Estate holds to the Gonzales Trust after payment **in full** of the Disbursing Agent's fees, any fees of professionals hired by the Disbursing Agent, and Administration Claims and leaves Northern Trust with little to no recovery. See Article 4.2.6

Notably, administrative creditors and the Disbursing Agent are not required to disgorge or return any funds to the Estate. Accordingly, these administrative creditors retain Northern Trust's collateral while Northern Trust takes little or nothing on its undisputed secured claim. Such a result is inequitable and represents an unpermitted surcharge of Northern Trust's collateral. The payment of all other creditors in full except Northern Trust is yet another example of the disparate treatment the Plan forces on Northern Trust.

    e. <u>What claims are assigned to the Gonzales Trust?</u>

Further entangling itself into the Northern Trust and Gonzales Trust relationship the Trustee assigns her "Assigned Refund Rights" to the Gonzales Trust. These rights apparently include "any rights DOA and/or the DOA Estate may have under applicable law to recover funds paid to Northern Trust…in the event a Reversal Event occurs, if such rights exist." See Article 1.8. Why such a provision is necessary is unclear as the Trustee is apparently unsure such rights even exist as the very next sentence states "This provision does not [sic] create a right of refund or recovery that does not or would not otherwise exist under applicable law or establish the extent of the right to any refund." *Id.* The Plan assigns these "rights" to the Gonzales Trust on the Effective Date and authorizes Gonzales to pursue these claims after a Reversal Event.

From a threshold perspective, it is unclear what if anything is actually assigned as the Trustee has no basis to request a refund. The Order requiring the Trustee disburse the sale proceeds to Northern Trust is final and is not on appeal. Accordingly, the Trustee is estopped (judicially and collaterally) from claiming any right to the disbursed funds. Further, any order from this Court or other court with respect to disgorgement of the sale proceeds by Northern Trust would be entered with respect to the Adversary and would direct payment to the Gonzales Trust – not the Trustee. Accordingly, these "rights" are fictional and their inclusion only creates confusion and interjects the Trustee where she has no right to be involved.

### III.   Deferral to Gonzales Trust Inappropriate

Inexplicably, the Plan creates a Disbursing Agent but also defers in large part to the wishes of Gonzales Trust. In fact, the Gonzales Trust controls many of the Plan's provisions and holds an effective veto. A few of the instances of the Trustee's deferral to the Gonzales Trust are discussed below.

#### a.   Review of Invoices

Article 4.1.3 provides the Trustee's vision of how to review and approve Northern Trust's continuing legal expenses for which it is entitled to payment. Notably, and inappropriately, the Plan requires Northern Trust to disclose unredacted invoices to its

1  opposing party – the Gonzales Trust.  There is no basis to require Northern Trust disclose
2  confidential and privileged information to the party in which it is engaged in litigation.

3  The Plan goes further and requires the Gonzales Trust approve repayment to
4  Northern Trust before a payment will be made.  If Gonzales Trust does not approve a
5  payment then Northern Trust is forced to incur time and expense of seeking this Court's
6  approval.

7  While Northern Trust does not dispute that an oversecured lender is limited to
8  "reasonable" fees pursuant to Section 506(b) the Trustee's proposal is not appropriate.  To
9  review reasonableness it is axiomatic that some review must be done and Northern Trust
10 does not oppose a reasonable process the preserves confidentiality and limits exposure of
11 potentially privileged information.  However, Section 506(b) does not mandate that an
12 oversecured creditor share unredacted invoices related to litigation with the opposing
13 party to that very same litigation.

14                    b.  Litigation Issues

15 The Plan in Article 6.8 retains all "Litigation Claims" and Article 6.11 authorizes
16 the Disbursing Agent or Trustee to pursue those claims which constitute "all legal claims
17 for relief of every nature held by the Estates against another person or entity, and all other
18 legal rights or causes of action of DOA and/or DOI."  See Article 1.35.  However, the
19 Disbursing Agent is required to consult with the Gonzales Trust before taking action on
20 the Litigation Claims, compromising Disputed Claims, and payment of compensation.
21 See Article 6.12.  For some actions, the Gonzales Trust even holds an effective veto.  See
22 Article 6.12.4.

23                    c.  Settlement of Claims

24 Interestingly, the Disclosure Statement states that the "Plan settles the avoidance
25 claim against the Gonzales Trust."  DE 243 pg 35, line 6.  However, the Plan and
26 Disclosure Statement are silent on what was actually settled and what each party receives
27 as part of that settlement.  Did the Gonzales Trust receive preferential treatment to resolve
28

FENNEMORE CRAIG

- 9 -

17880236.3

the avoidance action issues? The Disclosure Statement fails to provide adequate information on these issues.

As noted above, the Gonzales Trust is assigned various rights from the Trustee, is entitled to consultation rights, and veto rights. Similar rights are not granted to Northern Trust despite it remaining a secured creditor of the Estate. One such reason for denying Northern Trust equal treatment might be the Trustee has conceded to such rights in exchange for the Gonzales Trust acquiescing to the Plan provisions and perhaps even voting in favor of the Plan.

### IV. Conclusion

For the reasons set forth herein, the Plan cannot be confirmed as it improperly shoulders Northern Trust with the burden of paying the creditors and administrative expenses. Accordingly, Northern Trust requests the Court deny confirmation of the Plan.

Dated:   February 25 2021          **FENNEMORE CRAIG, P.C.**

By: */s/ Anthony W Austin*
    Cathy L. Reece (AZ Bar No. 005932)
    Anthony W. Austin  (010850)
    *Counsel for The Northern Trust Company*

COPY of the foregoing served by
E-mail/ECF Notice this 25th day of
February, 2021 upon:

Lenard E. Schwartzer
Schwartzer & McPherson Law Firm
bkfilings@s-mlaw.com
*Attorneys for Debtor*

Edmund M. McDonald
Edmund Gee
U.S Trustee's Office-LV-11,11
Edward.m.mcdonald@usdoj.gov
Edmund.gee@usdoj.gov

Jamie P. Dreher

FENNEMORE CRAIG

- 10 -

17880236.3

| | |
|---|---|
| 1 | Downey Brand LLP |
| 2 | jdreher@downeybrand.com |
| | reno@downeybrand.com |
| 3 | *Attorneys for the Gonzales Trust* |
| 4 | |
| | Mark Wray |
| 5 | Law Office of Mark Wray |
| | mwray@markwraylaw.com |
| 6 | tmoore@markwraylaw.com |
| 7 | Fischerlawcal@aol.com |
| | *Attorneys for the Gonzales Trust* |
| 8 | |
| 9 | Kevin W. Coleman |
| | Kimberly S. Fineman |
| 10 | Christopher Hart |
| | Nuti Hart, LLP |
| 11 | kcoleman@nutihart.com |
| 12 | kfineman@nutihart.com |
| | chart@nutihart.com |
| 13 | *Attorneys for Kavita Gupta, Trustee* |
| 14 | |
| | Talitha B. Gray Kozlowski |
| 15 | GTG, LLP |
| | tgray@gtg.legal |
| 16 | *Attorneys for Kavita Gupta, Trustee* |
| 17 | |
| | Jerrold L. Bregman |
| 18 | jbregman@bg.law |
| | ecf@bg.law |
| 19 | *Attorneys for Trustee Jeffrey I. Golden* |
| 20 | |
| 21 | */s/ Gidget Kelsey* |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |