MARK WRAY, #4425
mwray@markwraylaw.com
LAW OFFICES OF MARK WRAY
608 Lander Street
Reno, Nevada 89509
(775) 348-8877
(775) 348-8351 – Fax

JOHN DAVID FISCHER (CA Bar No. 76401 - *admitted pro hac vice*)
OF COUNSEL

Attorneys for Creditor BRADLEY J. BUSBIN, TRUSTEE

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No. BK-S-18-12456-GS |
| DESERT OASIS APARTMENTS, LLC, | Chapter 11 |
| Debtor. | |
| | Hearing Date: March 11, 2021<br>Hearing Time: 1:30 p.m. |

_____/

**BUSBIN'S *AMENDED* RESPONSE TO MOTION FOR AN ORDER ALLOWING CLAIM AT $4.5 MILLION FOR PURPOSES OF PLAN CONFIRMATION, VOTING, AND ANY DISTRIBUTION RESERVE, PURSUANT TO RULE 3018(a)**

Creditor Brad Busbin, Trustee of the Gonzales Charitable Remainder Unitrust One ("Busbin") opposes *Desert Land, LLC's Notice of Motion and Motion for An Order Allowing Claim at $4.5 Million for Purposes of Plan Confirmation, Voting, and Any Distribution Reserve, Pursuant to Rule 3018(a)* [ECF No. 250] filed February 11, 2021

1

by Jeffrey Golden, Trustee of the Desert Land, LLC bankruptcy estate ("Trustee

Golden"), for each of the following reasons:

1.      Mr. Busbin joins in the response to the instant motion filed by Chapter 11

Trustee Kavita Gupta.

2.      This Court has orally ruled that the Desert Land, LLC ("DL") bankruptcy

case is to be dismissed, thereby terminating Trustee Golden's standing to file claims,

maintain any claims, or take any other actions in this bankruptcy case on behalf of DL.

3.      While the asserted purpose of the motion is to confirm that Trustee Golden

can vote on the plan, the plan explicitly grants this impaired claim the right to vote, so the

motion should be denied as moot.

4.      There is no $4.5 million debt owed by Desert Oasis Apartments, LLC

("DOA") to DL and the claim should be disallowed.

5.      The DL claim is not *res judicata* and has no impact on Mr. Busbin's claim.

6.      If the $4.5 million claim were to be allowed, it would be subordinate to the

claims of Mr. Busbin and other unsecured creditors.

**A.      Trustee Golden's Motion Should Be Denied as Moot Because this**

**Court Has Orally Announced Its Intent to Dismiss the DL Bankruptcy Case, and a**

**Dismissal Terminates Mr. Golden's Standing, As Bankruptcy Trustee, to File or**

**Maintain Claims for DL**

On December 10, 2020, this Court orally granted, on the record, Desert Land Loan

Acquisition, LLC's ("DLLA's") motion to dismiss the DL bankruptcy case [ECF No.

1449].  An order of dismissal was not formally entered, however, in order to iron out

2

administrative expenses and matters excepted from dismissal that will be included in the ultimate dismissal order.  As this Court stated:

> The Court will dismiss the case, conditioned upon the provision that dismissal will not affect any of the activity that heretofore has gone specifically to sales of the property and the collection of the monies. *See Dec. 10, 2020 Hearing Transcript ("HT") 55:7-11.*
>
> . . .
>
> the case will not be dismissed until the Court has a complete understanding of administrative expenses and an order allowing that as part of the dismissal.  So while this is the Court's oral ruling and intent to dismiss, the actual dismissal must await [de]termination of the administrative expenses and the allocation to be made." *HT 56:24-57:5.*

Thus, the DL bankruptcy case is in the process of being dismissed, awaiting only (1) the allowance of administrative expenses, and (2) the exceptions to dismissal to be set forth in the dismissal order pursuant to 11 U.S.C. §349.  Consistent with the Court's December 10, 2020 oral ruling, in the second week of January, 2021, Trustee Golden and the two law firms representing him filed their first and final fee applications [ECF No. 1585, 1589, 1590], which are scheduled for hearing March 11, 2021 at 1:30 p.m.  The motion to approve these fee applications is being heard together with the hearing of the status conference of DLLA's motion to dismiss as to the form and content of the dismissal order (which proposed dismissal order is being circulated amongst the parties) and Trustee Golden's instant motion.

The dismissal of a bankruptcy case effectively terminates a trustee's control over the case. *Witt v. Snider*, 2017 U.S. Dist. LEXIS 76944 (D. Colo. May 19, 2017).

Even though the Court's ruling on December 10, 2020 was only oral, the DL case is being dismissed, and with it, Trustee Golden's standing to act on behalf of DL is being terminated.

Trustee Golden asserts that at the March 11th hearing he will "advocate for reconsideration of the Court's tentative ruling" on DLLA's motion to dismiss[1], but respectfully, the oral argument on the motion to dismiss already took place on December 10, 2020. Following extensive argument in which Trustee Golden and his counsel fully participated, the Court did not merely render a tentative ruling; the Court granted the motion, subject only to the determination of the allowed amount of administrative claims and the exceptions under §349.

Because Trustee Golden was disappointed with the Court's oral ruling, Trustee Golden filed the instant motion to (1) reargue the motion to dismiss; and (2) augment the record for his intended appeal of the order granting the motion to dismiss. The filing of the motion has now augmented the record. Trustee Golden is not entitled, however, to use the instant motion and the March 11th hearing as a platform to reargue the motion to dismiss. Based on lack of standing and/or mootness, Trustee Golden's motion should be summarily denied.

**B.    There Is No Merit to the Argument that this Motion Was Needed to Establish a Right of DL to Vote on the DOA Chapter 11 Plan, As the Plan Provides for DL's Right to Vote**

---

[1] Motion, p. 2, fn. 2.

4

As the justification for filing the instant motion, Trustee Golden's moving papers claim that the purpose is to establish Trustee Golden's right to vote on the DOA Chapter 11 plan. The moving papers state:

> While the Plan treats the DL Claim as a "disputed claim," and provides that the DL Claim shall receive no distribution under the Plan, there has been no objection filed to the DL Claim as of the date hereof. Thus, this Motion is meant to eliminate any confusion about the allowance of the DL Claim, whether or not an objection to the DL Claim is filed before the Plan confirmation hearing, in order to confirm Trustee Golden's standing to vote on and respond to the Plan. *Motion, p. 2:7-11.*

It is curious that the motion was filed "to confirm Trustee Golden's standing to vote on and respond to the Plan," because the plan explicitly states that the Class 5 claim (the claim of Mr. Golden) has the right to vote on the plan. *See Chapter 11 Trustee Kavita Gupta's Joint Plan of Liquidation* [ECF No. 239], §2.5, §10.1. Assuming, as the motion contends, that the purpose of the motion was to confirm Trustee Golden's standing to vote on the plan, that purpose is satisfied by the plan itself. The motion should therefore be denied as moot.

C.    **There is No Debt Owed by DOA to DL and the Claim Should Be Disallowed**

The person who created the alleged debt on which Trustee Golden's motion is based is Gina Shelton. *See Ex. 1, Declaration of Gina Shelton, attached.* Ms. Shelton is a certified public accountant with a Las Vegas accounting firm who personally provided bookkeeping and tax preparation services to DOA and DL for approximately 15 years ending in 2011. *See Ex. 1, ¶¶1, 2.*

As part of her regular accounting duties, Ms. Shelton received from David Gaffin a settlement statement for the transaction that closed on December 6, 2000, in which DL and DOA, as joint obligors, borrowed $41.5 million from Tom Gonzales. *See Ex. 1, ¶¶9, 10 & Ex. B to Ex. 1.* Both DOA and DL executed the deed of trust to secure the loan from Mr. Gonzales. *Ex. 2, attached.* In its bankruptcy schedules in the 2002 bankruptcy case, DOA listed the $41.5 million debt to Mr. Gonzales as a secured claim. *Ex. C to Ex. 1.*

The estimated settlement statement for the $41.5 million loan shows that $5,028,400.56 of the borrower's proceeds of the loan were disbursed by escrow to the account of Heller Financial for the benefit of DOA. *Ex. B to Ex. 1.* However, the settlement statement shows only DL as the borrower. *Ex. 1, ¶11. Ex. B to Ex. 1.* Acting in the erroneous belief that DL alone borrowed the money from Mr. Gonzales, and that DL then used a portion of the proceeds to satisfy DOA's debt to Heller Financial, Ms. Shelton made a journal entry showing that DL had loaned $5,028,400.56 to DOA. *Ex. 1, ¶12.* Had she known that DL and DOA were jointly obligated to Mr. Gonzales, Ms. Shelton never would have made that journal entry. *Ex. 1, ¶¶13, 14.* Ms. Shelton recognizes the entry as an error and that there was no actual debt. *Ex. 1, ¶15.*

Even if Ms. Shelton had not acknowledged the mistake, DOA was jointly obligated with DL to pay the loan to Mr. Gonzales, and therefore, the use of a portion of the loan proceeds to pay DOA's obligation to Heller Financial did not create any debt between DOA and DL, as a matter of law.

6

1

2    As trustee of the DL estate, Trustee Golden nonetheless asserts a claim for the

3    alleged "debt" on the basis that there is an "account stated" for $4.5 million.  However,

4    when Ms. Shelton records an erroneous journal entry in the general ledgers of DOA and

5    DL, and her entry is carried forward on the books from that date onward, that is *not* an

6    "account stated."

7

8       An account stated may be broadly defined as an agreement based upon
        prior transactions between the parties with respect to the items composing
9       the account and the balance due, if any, in favor of one of the parties. To
        effect an account stated, the outcome of the negotiations must be the
10      recognition of a sum due from one of the parties to the other with a
        promise, express or implied, to pay that balance. The amount or balance so
11      agreed upon constitutes a new and independent cause of action. The genesis
12      of an account stated is the agreement of the parties, express or implied.

13

14   *Old W. Enters. v. Reno Escrow Co.*, 86 Nev. 727, 729, 476 P.2d 1, 2 (1970).  Firstly, Ms.

15   Shelton's bookkeeping entry does not arise from an "account," so it is incorrect to assert

16   that the claim was born from an "*account* stated."  Additionally, there was no "account

17   stated" because in order to have an "account stated," the evidence must show that DOA

18   and DL negotiated an agreement, based on prior transactions, as to the sum to be paid on

19

20   an "account".  *See Saye v. Paradise Mem'l Gardens*, 92 Nev. 526, 528, 554 P.2d 274,

21   275 (1976) (the genesis of an account stated is the express or implied agreement of the

22   parties concerning the amount of the account; where there is no agreement, express or

23   implied, regarding the obligation, nor the amount thereof, apparent from the record, there

24   is no account stated).  The necessary elements of an "account stated" do not exist in this

25   case.  Instead, the evidence shows that Ms. Shelton did not know that both entities were

26

27

28

7

jointly liable for the same $41.5 million loan from Tom Gonzales, and being unaware of that fact, she made an erroneous entry on the books for a debt that did not exist.

Even if Trustee Golden's mischaracterization of the claim as an "account stated" were to be accepted, his claim would still be invalid, because an account stated which is based on fraud or mistake in the stating of the account cannot be enforced as a matter of law. *Coker Equip. v. Great W. Capital Corp.*, 110 Nev. 1266, 1268, 885 P.2d 1321, 1323 (1994). The evidence shows this purported "account stated" is unquestionably the result of an accounting mistake, which renders the alleged "account stated" unenforceable as a matter of law.

**D.    Trustee Golden's Claim Is Not Protected by *Res Judicata***

The moving papers assert that the $4.5 million claim cannot be disputed due to the doctrine of *res judicata,* or claim preclusion. "Claim preclusion applies when there is (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between the parties." *Garity v. APWU Nat'l Labor Org.,* 828 F.3d 848, 855 (9th Cir. 2016). "The party asserting a claim preclusion argument must carry the burden of establishing all necessary elements." *Id.*

Trustee Golden's moving papers argue that even if the claim he is pursuing was only the result of a mistaken bookkeeping entry, the claim was listed, allowed, and received payment under the Chapter 11 plan in DOA's 2011 bankruptcy case, and thus the claim is entitled to *res judicata* effect. *Motion, p. 14.*

Of course, DOA is an insider of DL, and vice versa, so DOA's listing of an alleged debt to DL in the 2011 bankruptcy case is not an arms-length matter. Be that as it

may, it is not necessary today to explore whether Trustee Golden can succeed on the inequitable position that a non-existent debt should be allowed for millions of dollars, because under the terms of the 2011 Chapter 11 plan that Trustee Golden relies upon, *res judicata,* or claim preclusion, does not apply.

After Mr. Gonzales objected to DOA's Chapter 11 plan in the 2011 DOA bankruptcy case, Mr. Gonzales and DOA entered into a stipulation that is an exhibit to, and was incorporated into, DOA's Chapter 11 plan of reorganization, by the order of that court in its confirmation order. *See Order Confirming Debtor's Amended Plan of Reorganization As Amended [ECF No. 203 in BK-S-11-17208-BAM], Ex. 3, attached, at Ex. C, ¶¶5, 9.* Among the terms of that incorporated stipulation is the following, at Paragraph 16:

> Any findings or holdings by the U.S. Bankruptcy Court in this case as it pertains to Mr. Gonzales' rights are not final judgments and are not entitled to be used in the U.S. District Court or any other subsequent court should the parties seek later judicial determination after the determination of the U.S. District Court under the doctrines of issue preclusion, including the doctrines of direct estoppel and collateral estoppel, or the doctrine of claim preclusion, also known as res judicata. *Ex. C to Ex. 3, ¶16.*

Trustee Golden's *res judicata*/claim preclusion argument thus is contradicted by the same confirmation order upon which Trustee Golden relies for his argument. *See Ex. 3, attached.* In other words, applying principles of *res judicata* to the 2011 confirmation order, there is no *res judicata* as to the rights of Mr. Busbin. Therefore, in addition to other grounds that may apply to invalidate Trustee Golden's *res judicata* argument, the argument with respect to Mr. Busbin – who stands in the shoes of Mr. Gonzales – has no merit.

9

1

2

3    **E.    If the $4.5 Million Claim Were to Be Allowed, It Would Be**

4    **Subordinate to the Claims of Mr. Busbin and Other Unsecured Creditors**

     Trustee Golden's moving papers contend that his "account stated" claim is not

5    subject to subordination to Mr. Busbin's claim in the current DOA bankruptcy case

6    because in the stipulation entered into between Mr. Gonzales and DOA in the 2011

7    bankruptcy case, Mr. Gonzales's claim was unmodified by the Chapter 11 plan and "the

8    Gonzales claim did not acquire any rights under the 2011 plan." *Motion, 15:21.*

9

10   Whether Mr. Gonzales acquired rights under the 2011 plan, for example, in the

11   stipulation with DOA that is incorporated in the plan, is not the point.  Mr. Gonzales's

12   right to payment was set forth in the 2003 DOA Chapter 11 plan and recognized in

13   DOA's 2011 plan.  The latter plan further recognizes that the alleged claim of DL is

14   subordinate to all other unsecured debt.  *See Ex. 3, p. 4.*  Specifically, "Class 4 – General

15   Unsecured Creditors" provides for *non-insider* general unsecured debt to be paid first,

16   and for DL and other *insider* unsecured claims to be paid "only after all other unsecured

17   creditors are paid in full and reasonable reserves for maintenance and repair of the

18   Property have been funded." *Id.*

19

20   At the time of the DOA Chapter 11 plan in 2011, Parcel A had not yet been sold,

21   so DOA's 2011 Chapter 11 plan lists the claim of Mr. Gonzales as a $10 million

22

23   unsecured claim in Class 3 "due when, and only when, there is a Parcel A Transfer . . .".

24   *Id.*  In June of 2020, this Court authorized the sale of Parcel A.  There has now been a

25

26   "Parcel A Transfer," as contemplated by DOA's 2003 and 2011 Chapter 11 plans, which

27

28   triggers the obligation to pay the claim of Mr. Gonzales/Mr. Busbin.

                                          10

Under the DOA Chapter 11 plan of 2011 upon which Trustee Golden relies, all general unsecured creditors who are not insiders are to be paid first, ahead of any purported "debt" to DL.  This provision was included in the 2011 Chapter 11 plan to ensure that insider claims were subordinate to other general unsecured debts. Accordingly, even if Trustee Golden's claim were to be allowed as a claim in the current DOA case, it would be an insider claim that was expressly subordinated by the terms of the 2011 Chapter 11 plan – again, the document on which Trustee Golden relies -- to the claims of all other general unsecured creditors.

Moreover, the money in the DOA estate is from the sale of Parcel A.  Under the 2003 DOA Chapter 11 plan, Mr. Busbin's claim should be entitled to priority as to the proceeds of the sale of Parcel A, in that the plan requires the claim of Mr. Gonzales/Mr. Busbin to be paid upon the sale of Parcel A.

**F.    Conclusion**

For each of the above-stated reasons, it is respectfully requested that the motion be denied.

DATED: February 25, 2021        LAW OFFICES OF MARK WRAY


By _____/s/ Mark Wray_____
      MARK WRAY
      Attorney for Creditor
      BRADLEY J. BUSBIN, AS TRUSTEE
      OF THE GONZALES CHARITABLE
      REMAINDER UNITRUST ONE

11

## DECLARATION OF MARK WRAY IN SUPPORT OF RESPONSE TO MOTION FOR ORDER ALLOWING CLAIM AT $4.5 MILLION

I, Mark Wray, declare:

1.    I am the attorney for Creditor Bradley J. Busbin, Trustee of the Gonzales Charitable Remainder Unitrust One.

2.    I request that the Court take judicial notice pursuant to Fed. R. Evid. 201 of public records, Exhibit 2, filed herewith, consisting collectively of a deed of trust recorded December 15, 2000 and the Amendment to Deed of Trust recorded December 20, 2000, in the Office of the County Recorder for Clark County, Nevada.

3.    I further request that the Court take judicial notice pursuant to Fed. R. Evid. 201 of a court record, Exhibit 3, filed herewith, an *Order Confirming Debtor's Amended Plan of Reorganization as Amended*, entered December 30, 2011 as ECF No. 203 in U.S. Bankruptcy Court for the District of Nevada, Case No. BK-S-11-17208-BAM.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on February 25, 2021 at Reno, Nevada.


_/s/ Mark Wray_____
MARK WRAY

12

**CERTIFICATE OF SERVICE**

1.  I caused to be served the following document(s):

BUSBIN'S *AMENDED* RESPONSE TO MOTION FOR AN ORDER ALLOWING CLAIM AT $4.5 FOR PURPOSES OF PLAN CONFIRMATION, VOTING, AND ANY DISTRIBUTION RESERVE, PURSUANT TO RULE 3018(a)

2.  I served the above-named document(s) by the following means to the persons as listed below:

■   a.       **By ECF System (On February 25, 2021):**

ANTHONY W. AUSTIN on behalf of Creditor THE NORTHERN TRUST COMPANY
aaustin@fclaw.com, gkbacon@fclaw.com

CANDACE C CARLYON on behalf of Interested Party CRISTI BULLOCH, SOLELY IN HER CAPACITY AS TRUSTEE OF THE CRISTI BULLOCH SEPARATE PROPERTY TRUST DATED 03/28/2003; on behalf of Interested Party DESERT LAND LOAN ACQUISITION, LLC; on behalf of Interested Party THE BULLOCH HERITAGE TRUST; on behalf of Interested Party THE GULF STREAM IRREVOCABLE TRUST DATED 06/30/2000; on behalf of Interested Party THE HOWARD AND CRISTI BULLOCH FAMILY TRUST DATED 9/14/1995; on behalf of Interested Party THE HOWARD BULLOCH SEPARATE PROPERTY TRUST DATED 03/28/2003; on behalf of Interested Party DAVID GAFFIN; on behalf of Interested Party HOWARD BULLOCH
ccarlyon@carlyoncica.com,
CRobertson@carlyoncica.com;nrodriguez@carlyoncica.com;Dcica@carlyoncica.com

DAWN M. CICA on behalf of Interested Party DESERT LAND LOAN ACQUISITION, LLC
dcica@carlyoncica.com,
nrodriguez@carlyoncica.com;crobertson@carlyoncica.com;dmcica@gmail.com;dcica@carlyoncica.com;tosteen@carlyoncica.com

KEVIN W COLEMAN on behalf of Trustee KAVITA GUPTA
kcoleman@nutihart.com, nwhite@nutihart.com

DAVID M. CROSBY on behalf of Creditor CANAM PRODUCTIONS, INC.
info@crosby.lvcoxmail.com, r48506@notify.bestcase.com
JAMIE P. DREHER on behalf of Petitioning Creditor BRADLEY J. BUSBIN, AS

TRUSTEE OF THE GONZALES CHARITABLE REMAINDER UNITRUST
ONE
jdreher@downeybrand.com, mfrazier@downeybrand.com

KIMBERLY S. FINEMAN on behalf of Trustee KAVITA GUPTA
kfineman@nutihart.com

TROY S. FOX on behalf of Creditor CANAM PRODUCTIONS, INC.
policyking99@gmail.com, tfox@crosby-fox.com

EDMUND GEE on behalf of U.S. Trustee U.S. TRUSTEE - LV - 11, 11
edmund.gee@usdoj.gov

TALITHA B. GRAY KOZLOWSKI on behalf of Trustee KAVITA GUPTA
tgray@gtg.legal, bknotices@gtg.legal

CHRISTOPHER H. HART on behalf of Trustee KAVITA GUPTA
chart@nutihart.com, nwhite@nutihart.com

RICHARD F. HOLLEY on behalf of Creditor ARTHUR J. AND MARGARET L.
GILBERT FAMILY TRUST
rholley@nevadafirm.com, apestonit@nevadafirm.com;
oswibies@nevadafirm.com; agandara@nevadafirm.com;
mlangsner@nevadafirm.com

BART K. LARSEN on behalf of Creditors CITATION FINANCIAL, LLC and
COMPASS INVESTMENT, LLC
blarsen@klnevada.com,
bankruptcy@klnevada.com;mbarnes@klnevada.com;blarsen@ecf.inforuptcy.com

CHARLES H. MCCREA on behalf of Creditor THE PRINCE FAMILY TRUST
DATED 10/06/1997
chm@hmlawlv.com, tlc@hmlawlv.com

EDWARD M. MCDONALD on behalf of U.S. Trustee U.S. TRUSTEE - LV - 11,
11 edward.m.mcdonald@usdoj.gov

ALAN I. NAHMIAS on behalf of Creditor CANAM PRODUCTIONS, INC.
ANAHMIAS@MBNLAWYERS.COM

GREGORY C. NUTI on behalf of Trustee KAVITA GUPTA
gnuti@nutihart.com

14

TRACY M. O'STEEN on behalf of Interested Party CRISTI BULLOCH, SOLELY IN HER CAPACITY AS TRUSTEE OF THE CRISTI BULLOCH SEPARATE PROPERTY TRUST DATED 03/28/2003; on behalf of Interested Party DESERT LAND LOAN ACQUISITION, LLC; on behalf of Interested Party THE BULLOCH HERITAGE TRUST; on behalf of Interested Party THE GULF STREAM IRREVOCABLE TRUST DATED 06/30/2000; on behalf of Interested Party THE HOWARD AND CRISTI BULLOCH FAMILY TRUST DATED 9/14/1995; on behalf of Interested Party THE HOWARD BULLOCH SEPARATE PROPERTY TRUST DATED 03/28/2003; on behalf of Interested Party DAVID GAFFIN; on behalf of Interested Party HOWARD BULLOCH
tosteen@carlyoncica.com,
crobertson@carlyoncica.com;nrodriguez@carlyoncica.com;ccarlyon@carlyoncica.com

ERIC R OLSEN on behalf of Interested Party WASH MULTIFAMILY LAUNDRY SYSTEMS, LLC
eolsen@gtg.legal

LENARD E. SCHWARTZER on behalf of Creditor DESERT OASIS APARTMENTS, LLC
bkfilings@s-mlaw.com

LENARD E. SCHWARTZER on behalf of Debtors DESERT LAND, LLC, DESERT OASIS APARTMENTS, LLC, DESERT OASIS INVESTMENTS, LLC and SKYVUE LAS VEGAS, LLC
bkfilings@s-mlaw.com

U.S. TRUSTEE - LV - 7
USTPRegion17.LV.ECF@usdoj.gov

MARK M. WEISENMILLER on behalf of Interested Party WASH MULTIFAMILY LAUNDRY SYSTEMS, LLC
mweisenmiller@gtg.legal, bknotices@gtg.legal

☐    b.    **By United States mail, postage fully prepaid:**

☐    c.    **By Personal Service**

☐    I personally delivered the document(s) to the persons at these addresses:

☐    For a party represented by an attorney, delivery was made by handing the document(s) to the attorney or by leaving the document(s) at the attorney's office with a

15

1  clerk or other person in charge, or if no one is in charge by leaving the document(s) in a

2  conspicuous place in the office.

3  ☐    For a party, delivery was made by handing the document(s) to the party or

4  by leaving the document(s) at the person's dwelling house or usual place of abode with

5  someone of suitable age and discretion residing there.

6  ☐    d.    **By direct email (as opposed to through the ECF System)**

7  Based upon the written agreement to accept service by email or a court

8  order, I caused the document(s) to be sent to the persons at the email addresses listed

9  below.  I did not receive, within a reasonable time after the transmission, any electronic

10  message or other indication that the transmission was unsuccessful.

11  ☐    e.    **By fax transmission**

12  Based upon the written agreement of the parties to accept service by fax

13  transmission or a court order, I faxed the document(s) to the persons at the fax numbers

14  listed below.  No error was reported by the fax machine that I used.  A copy of the record

15  of the fax transmission is attached.

16  ☐    f.    **By messenger**

17  I served the document(s) by placing them in an envelope or package

18  addressed to the persons at the addresses listed below and providing them to a messenger

19  for service.

20  **I declare under penalty of perjury that the foregoing is true and correct.**

21  Signed on: February 26, 2021

22

23  Karla Mena          /s/ Karla Mena

24  (Name of Declarant)      (Signature of Declarant)

25

26

27

28