1  Kevin W. Coleman (CA SBN 168538)
   Admitted *pro hac vice*
2  Christopher H. Hart (CA SBN 184117)
   Admitted *pro hac vice*
3  NUTI HART LLP
   411 30TH Street, Suite 408
4  Oakland, CA 94609-3311
   Telephone: 510-506-7152
5  Email: kcoleman@nutihart.com
   chart@nutihart.com
6
   Talitha Gray Kozlowski (NV SBN 9040)
7  GARMAN TURNER GORDON LLP
   7251 Amigo Street, Suite 210
8  Las Vegas, NV 89119
   Telephone: 725-777-3000
9  Email: tgray@gtg.legal
   Counsel for Kavita Gupta,
10 Chapter 11 Trustee

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.:  BK-S-18-12456 GS |
| DESERT OASIS APARTMENTS, LLC, | Chapter 11 |
| Debtor. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CONFIRMATION CHAPTER 11 TRUSTEE KAVITA GUPTA'S JOINT PLAN OF LIQUIDATION, AND OMNIBUS RESPONSE TO OBJECTIONS TO PLAN CONFIRMATION** |
| | **Dated: January 25, 2021** |
| | <u>Confirmation Hearing:</u><br>Date:  March 11, 2021<br>Time:  1:30 p.m. |

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................... 1

II. THE PLAN COMPLIES WITH ALL THE APPLICABLE PROVISIONS OF 11 U.S.C. § 1129. ......................................................................................... 2

A. The Plan Complies with 11 U.S.C. § 1129(a)(1). ...................................... 2

  1. The Plan Properly Classifies Claims and Interests Pursuant to 11 U.S.C. § 1122. ....................................................................................... 2

  2. Trustee Golden's Objection To Claim Classification Is Without Merit ................................................................................................. 3

  3. The Plan Satisfies 11 U.S.C. § 1123(a). ........................................ 5

    (a) *Designation of Classes:* ...................................................... 5

    (b) *Unimpaired Classes Specified:* ......................................... 5

    (c) *Treatment of Classes:* ....................................................... 8

    (d) *Same Treatment Within Classes:* ..................................... 9

    (e) *Adequate Means of Implementation:* ................................ 9

    (f) *Prohibition Against Issuance of Nonvoting Securities:* ..... 9

    (g) *Individual Debtor Cases:* .................................................. 9

  4. Other Plan Provisions Are Permitted Under 11 U.S.C. § 1123(b). ........... 9

B. The Plan Complies With 11 U.S.C. § 1129(a)(2). ................................... 10

C. The Plan is Proposed in Good Faith As Required by 11 U.S.C. § 1129(a)(3). ............................................................................................. 11

D. Articles 6.1, 8.1 and 9 of the Plan are Reasonable and Necessary for the Effective Implementation of the Plan. ............................................. 12

E. The Exculpation Provision Is Permissible. ............................................ 13

F. All Professional Compensation Will Be Subject To Court Approval As Required by 11 U.S.C. § 1129(a)(4). ...................................................... 14

G. The Plan Discloses that the Trustee will be the Disbursing Agent Following Confirmation of the Plan pursuant to 11 U.S.C. §§ 1129(a)(5) and 1123(a)(7). ........................................................... 15

H. The Plan Does Not Require Approval of Any Regulatory Commission Under 11 U.S.C. § 1129(a)(6). ............................................................. 16

I. The Plan Meets the Best Interests of Creditors Test Set Forth in 11 U.S.C. § 1129(a)(7). ............................................................................. 16

J. 11 U.S.C. § 1129(a)(8) is Not Satisfied, But § 1129(a)(10) is Satisfied. .......... 17

L. The Plan Is Feasible as Required by 11 U.S.C. § 1129(a)(11). ................ 18

M. All Bankruptcy Fees Will Have Been Paid by Confirmation Pursuant to 11 U.S.C. § 1129(a)(12). ..................................................................... 18

N. 11 U.S.C. §§ 1129(a)(13), (14), (15), and (16) are Inapplicable. .............. 19

O. The Court May Confirm the Plan Over the Objection by Classes 4, 5 and 6. .................................................................................................... 19

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**1.   The Plan is Fair and Equitable.** ................................................. 19

**2.   The Plan Does Not Unfairly Discriminate.** ................................... 20

**P.      The Plan Can Be Confirmed Over Northern Trust's Objection.** ................... 21

**1.   The Plan is Fair and Equitable to Northern Trust.** ...................... 22

*2.*   **The Plan Does Not Unfairly Discriminate Against Northern Trust.** ........ 23

**Q.      The Principal Purpose of the Plan is Not Avoidance of Tax or Securities Act Obligations Under 11 U.S.C. § 1129(d).** ................................. 24

**III.      CONCLUSION** ....................................................................... 25

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**CASES**

5
Hillis Motors v. Hawaii Auto. Dealers' Ass'n (In re Hillis Motors),
   997 F.2d 581, 588-90 (9th Cir. 1993) ......................................................................12

6

7
Idaho Dep't of Lands v. Arnold (In re Arnold),
   806 F.2d 937, 940 (9th Cir. 1986) ..........................................................................17

8
In re Acequia, Inc.,
   787 F.2d. 1352, 1364 (9th Cir. 1986) ....................................................................23

9

10
In re Barakat,
   99 F.3d 1520, 1525 (9th Cir. 1996) ..........................................................................2

11
In re Cajun Elec. Power Coop., Inc.,
   150 F.3d 503, 513, n.3 (5th Cir. 1998), *cert. denied*, 526 U.S. 1144 (1999) ...........10

12

13
In re Johnston,
   21 F.3d 323, 327-28 (9th Cir. 1994) ..........................................................................2

14

15
In re Sierra-Cal,
   210 B.R. 168, 171-172 (Bankr. E.D. Cal. 1997) ....................................................16

16
In re South Edge LLC,
   478 B.R. 403, 417-18 (D. Nev. 2012) ....................................................................12

17

18
In re Sylmar Plaza, L.P.,
   314 F.3d 1070, 1074 (9th Cir. 2002) ......................................................................11

19

20
Jeff D. v. Kempthorne,
   365 F.3d 844, 852 (9th Cir. 2004) ..........................................................................13

21
Stolrow v. Stolrow's, Inc. (In re Stolrow's, Inc.),
   84 B.R. 167, 172 (B.A.P. 9th Cir. 1988)................................................................11

22

23
**STATUTES**

24
11 U.S.C. § 101 ...............................................................................................................1

25
11 U.S.C. § 362 ...............................................................................................................6

26
11 U.S.C. § 507 ..................................................................................................2, 10, 11

27
11 U.S.C. § 511 .............................................................................................................11

28
11 U.S.C. § 541 ...............................................................................................................6

iii

11 U.S.C. § 1122 ...........................................................................................1, 2, 4

11 U.S.C. § 1123 ....................................................................................1, 2, 3, 4, 8

11 U.S.C. § 1124 ...................................................................................................3

11 U.S.C. §1125 ............................................................................................4, 5, 7

11 U.S.C. § 1129 ...................................................1, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13

11 U.S.C. § 1141 ...................................................................................................6

**RULES**

Fed. R. Bankr. P. 3020(b)(2) ................................................................................5

**OTHER AUTHORITIES**

7 Alan N. Resnick, et al, COLLIER ON BANKRUPTCY, ¶ 1129.03 (16th ed. 2014) ......................1, 12

H.R. Rep. No. 595, 95th Cong., 1st Sess. 412 (1977) ....................................................1, 4

S. Rep. No. 95-989, 9th Cong., 2d Sess. 126 (1978) ...................................................1, 4

1    Kavita Gupta ("Trustee"), solely in her capacity as the Chapter 11 trustee and not

2    individually for the estate of Desert Oasis Apartments, LLC ("DOA") and Desert Oasis

3    Investments, LLC ("DOI" and together with DOA, the "Estates") submits this memorandum of

4    points and authorities ("Memorandum") in support of confirmation of the Joint Chapter 11 Plan

5    of Liquidation Dated January 25, 2021 ("Plan") pursuant to the provisions of Chapter 11 of the

6    U.S. Bankruptcy Code.[1]

## I.    INTRODUCTION

8    The Plan, Disclosure Statement, and Notice of Hearing on confirmation of the Plan were

9    served on all creditors and interest holders on January 28, 2021 in accordance with the terms of

10   this Court's order conditionally approving the disclosure statement and establishing deadlines

11   related to the solicitation of ballots and scheduling of the Plan confirmation hearing.

12   The Trustee received objections from (1) Jeffrey Golden, Chapter 7 Trustee of Desert

13   Lands, LLC ("Trustee Golden"); (2) The Northern Trust Company ("Northern Trust"), and (3)

14   the United States Trustee.  Each of these objections will be addressed below.

15   Plan has been accepted by impaired Class 2 and impaired Class 3; the Gonzales Trust

16   holding a claim in each class.  Northern Trust, holding an unimpaired claim in Class 1, has filed

17   motion for leave to cast a ballot, which motion is to be heard concurrently with the confirmation

18   hearing.  Juniper holds the Class 4 claim but did not vote; Class 4 is therefore assumed to have

19   rejected the plan.  DL holds the Class 5 claims and rejected the Plan.  Class 6 claims are Member

20   Interests and are deemed to have rejected the Plan.[2]

21   As discussed below, the Plan complies with the applicable provisions of chapter 11 of

22   title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code") and the

---

25   [1]    All capitalized terms not otherwise defined herein have the meaning ascribed to them in
         the Plan.

27   [2]    The Trustee has entered into a stipulation that will amend the treatment of Class 6
         interests.  In lieu of cancellation, member interests will be retained, but not be entitled to
         any distributions until after all creditors are paid in full.

MPA ISO CONFIRMATION OF AMENDED CHAPTER 11 PLAN OF LIQUIDATION

applicable Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and should be confirmed.

**II.    THE PLAN COMPLIES WITH ALL THE APPLICABLE PROVISIONS OF 11 U.S.C. § 1129.**

**A.    <u>The Plan Complies with 11 U.S.C. § 1129(a)(1).</u>**

Section 1129(a) provides that a court may confirm a plan only if all requirements of Section 1129 are met, including that "[t]he plan complies with the applicable provisions of this title." 11 U.S.C. § 1129(a)(1). The legislative history of Section 1129(a)(1) explains that this provision incorporates the requirements of Sections 1122 and 1123, which govern classifications of claims and interests and the contents of a plan of reorganization. H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 412 (1977); S. Rep. No. 95-989, 9th Cong., 2d Sess. 126 (1978); 7 COLLIER ON BANKRUPTCY, ¶ 1129.03[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014). The Plan satisfies these requirements.

   **1.    *The Plan Properly Classifies Claims and Interests Pursuant to 11 U.S.C. § 1122.***

Section 1122(a) requires that a plan "place a claim or an interest in a particular class only if such claim or interest is substantially similar to other claims or interests of such class." The Plan contains five (5) classes of Claims and one (1) class of Member Interests. Claims may be separately classified where a claim has distinct legal characteristics or good business reasons exist for the separate classification. <u>In re Johnston</u>, 21 F.3d 323, 327-28 (9th Cir. 1994). The one limitation on a Plan proponent's flexibility in classifying claims is that classes may not be gerrymandered in order to obtain an impaired accepting class. <u>In re Barakat</u>, 99 F.3d 1520, 1525 (9th Cir. 1996). In this case, the Plan's classification of claims is appropriate.

(a)    **Class 1 (Unimpaired).**  Class 1 consists of the Northern Trust secured claim against DOA.

(b)    **Class 2 (Impaired).**  Class 2 consists of the Gonzales Trust claim against DOA.

(c)    **Class 3 (Impaired).**  Class 3 consists of the Disputed Claim filed by the Gonzales Trust against DOI.

(d)    **Class 4 (Impaired).**  Class 3 consists of the unsecured deficiency claim of Juniper against DOI.

2

(e)    **Class 5 (Impaired).**  Class 5 consists of the Disputed Claim filed September 23, 2020 by DL against DOA, which claim was amended on December 15, 2020 as an unsecured non-priority claim in the amount of $4.5 million

(f)    **Class 6 (Impaired).**  Class 6 consists of the member interests in DOA and DOI.

## 2.    Trustee Golden's Objection To Claim Classification Is Without Merit

Trustee Golden objects to the classification of its claim separate from that of the Gonzales Trust arguing there is no reasonable basis to separately classify the *general unsecured claim* of the Gonzales Trust (Class 2) from the *general unsecured claim* of DL (Class 5).  Trustee Golden's argument is factually and legally misplaced.

Class 2 and Class 5 are treated as separate classes for several reasons.  First, unlike the Class 5 claim, the Class 2 claim is presently *secured*, although the Trustee believes that the lien held by the Gonzales Trust is subject to avoidance.  It is not at this time an unsecured claim, and the Gonzales Trust contends that its lien cannot be avoided as a preference due to priority rights it holds under the plan confirmed by DOA and DL in 2003.  Although disputed by the Trustee, if the Gonzales Trust is correct that the 2003 plan grants it an equitable priority, the Trustee may not be able to satisfy the "more than" test under Section  547(b)(5) and therefore obtain avoidance of the judgment lien on the basis that it is preferential.  The Plan's treatment of the Class 2 claim avoids litigation, and absent the treatment provided to Class 2, the Gonzales Trust has indicated that it would seek to establish that its lien is not subject to avoidance, or that it would seek to have its entire claim be treated as a priority claim.  None of these legal rights are applicable to DL's claim.

Second, it is proper to separately classify claims where the separately classed claim has recourse against third parties and the other claims do not.  Wells Fargo Bank, N.A. v. Loop 76, LLC (In re Loop 76, LLC), 465 B.R. 525, 540 (9th Cir. BAP 2012) (holding that a plan properly classified a bank deficiency claim separate from trade claims because the bank held a third-party guarantee).  Here, although Northern Trust and the Shotgun Entities would disagree, the Gonzales Trust has asserted that it is entitled to enforce its claims against Northern Trust and

Shotgun.  The Gonzales Trust also asserts that its claim is enforceable against DOI's assets.  The Class 5 claim does not share any of these rights of recourse against entities other than DOA.

In addition, Ninth Circuit law is clear that it is appropriate to separately classify unsecured claims where a claim is the subject of litigation and potentially subject to offset. Johnson, 21 F.3d at 328.  Those exact circumstances are presented here.

The Gonzales Trust has obtained a judgment against both DOA and DL.  That judgment is based on a breach of the 2003 plan and DOA/DL's obligation to pay the so-called "Parcel A Transfer Fee" – a contract to which DOA and DL were both parties.  DOA and DL clearly are both jointly and severally liable on the $13.1 million judgment in favor of the Gonzales Trust. DL has paid nothing to the Gonzales Trust, but the Trustee is poised to make a distribution of as much as $8 million to the Gonzales Trust based on a debt where both DOA and DL are jointly liable.  Consequently, the DOA estate has a right of contribution and/or equitable indemnity against DL.  *See* Rodriguez v. Primadonna Co., 216 P.3d 793 (Nev. 2009) ("A claimant seeking equitable indemnity must plead and prove that: (1) it has discharged a legal obligation owed to a third party; (2) the party from whom it seeks liability also was liable to the third party; and (3) as between the claimant and the party from whom it seeks indemnity, the obligation ought to be discharged by the latter." *citing* 41 Am.Jur.2d Indemnity § 20 (2005).   Assuming the DL claim is allowed in any amount – DOA's right of contribution/indemnity make the DL claim potentially subject to offset in its entirety.    The Gonzales Trust's claim is not burdened by any similar right of contribution/indemnity.

The Class 5 claim is also disputed.  The Trustee believes that the Class 5 claim is subordinated to the Class 2 claim under the terms of the 2011 Plan, although the Trustee understands that Trustee Golden does not agree that the Class 5 claim is subordinated to the Class 2 claim under the 2011 Plan.  Other disputes impacting the allowance of the Class 5 claim are that any claim by DL is subject to disallowance under Section 502(d) based on DL's receipt of avoidable transfers from DOA that remain unpaid.

Finally, the Class 5 claim has been asserted on behalf of an entity – DL – that would be considered an insider under Section 101(31).

Based on all of the foregoing, the Class 2 and Class 5 claims are not legally or factually similar, and therefore, it is appropriate to separately classify them.  *See* Johnston, 21 F.3d at 327-28 (bankruptcy court properly approved separate classification of creditor's claim where the claim, unlike all other claims, was partially secured by collateral of primary obligor on note that Chapter 11 debtor personally guaranteed, creditor was embroiled in litigation with debtor and its claim could be off set or exceeded by debtor's own claim against creditor, and creditor would be paid in full before all other unsecured creditors if it were successful in litigation); In re PG&E Corp., 617 B.R. 671, 685 (Bankr. N.D. Cal. 2020) (claims may be separately classified if the debtor articulates a business or economic justification for doing so); In re Red Mountain Mach. Co., 448 B.R. 1, 7 (Bankr. D. Ariz. 2011) (deficiency claim may be separately classified from other unsecured claims where claimant holds guarantees).

Because the Plan properly classifies the Class 2 claim separately from the Class 5 claim, there is no merit to Trustee Golden's various other arguments based on asserted impermissible gerrymandering.

**3.      The Plan Satisfies 11 U.S.C. § 1123(a).**

(a)      *Designation of Classes*:

Paragraph (1) of Section 1123(a)  requires that a plan designate classes of claims other than claims specified in Sections  507(a)(2), 507(a)(3), or 507(a)(8).  Article 2 of the Plan satisfies this requirement by designating all classes of Claim other than the specified claims, which are identified in the Plan as Allowed Administrative Claims, Priority Claims, and U.S. Trustee Fees in Article 3.

(b)      *Unimpaired Classes Specified*:

Section  1123(a)(2) requires that a plan specify those classes of claims or interests that are not impaired.  Article 2 of the Plan provides that Northern Trust's Class 1 is unimpaired.  Article 4.1.1 of the Plan provides: "Northern Trust shall retain all of the legal and equitable rights existing under the Northern Trust Loan Documents and applicable law, and no provision of this Plan shall alter or affect said rights."

Class 1's status as unimpaired is entirely correct. A class of claims or interests is not impaired under a plan if the plan "leaves unaltered the legal, equitable and contractual rights to which the claim or interest holder is entitled." 11 U.S.C. § 1124(1). The quoted language from Article 4.1.1 establishes that Northern Trust is unimpaired.

Nevertheless, Northern Trust argues that it is impaired. But impairment depends on whether an asserted alteration of rights results from a provision of the plan itself versus an effect imposed by applicable law. In re PG&E Corp., 610 B.R. 308, 315 (Bankr. N.D. Cal. 2019) ("a claim is impaired only if the plan itself does the altering, not [by] what the Bankruptcy Code does"); In re Tree of Life Church, 522 B.R. 849 (Bankr. S.C. 2015) ("the Court must determine whether the plan itself, rather than the operation of a provision of the Bankruptcy Code, impairs a creditor's legal, equitable, or contractual rights.").

Here, none of the potential impacts cited by Northern Trust result from the Plan, but rather, follow from applicable law and/or subsequent orders and judgment that may be entered:

- The reserve for payment of Northern Trust's remaining attorney's fees claim is a reserve to facilitate administration of the DOA estate post-confirmation. It is not a "cap" on Northern Trust's claim because to the extent allowable the attorney's fees will be paid out of any assets of the DOA estate. *See* Plan, Art. 4.1.3 ("So long as no Reversal Event has occurred, the Disbursing Agent *shall pay out of the assets of the DOA Estate* to Northern Trust such amounts for its attorney's fees and costs as may be agreed between the Disbursing Agent, the Gonzales Trust, and Northern Trust, or that may be ordered by the Bankruptcy Court.").

- The procedure for review of Northern Trust's attorney's fees claims follows applicable law, which requires Northern Trust to prove its entitlement to fees by filing applications similar to a professional fee application. In re Coates, 292 B.R. 894, 900-901 (Bankr. C.D. Ill. 2003) ("When an oversecured creditor seeks to charge the bankruptcy estate with its attorney fees, costs and expenses, the creditor bears the burden to prove the reasonableness thereof. [citations omitted] As in most jurisdictions, Illinois courts rely upon the lodestar method to

6

determine the reasonableness of attorney fees. *The party claiming fees must present the court with detailed records specifying the services performed, by whom they were performed, the time expended and the hourly rate charged.*") [emphasis added]. In other words, Northern Trust simply does not have a right under its loan documents or applicable law to receive payment for its attorney's fees after only sharing its bills with the Disbursing Agent. The Plan, therefore, is not altering any of its rights with respect to its claim for attorney's fees. Its real complaint is that applicable law requires Northern Trust to prove its attorney's fees claim, but that is not a basis to find that *the Plan* impairs its rights.

- The provision allowing the Gonzales Trust to review Northern Trust's invoices before payment follows this Court's own ruling on Northern Trust's motion for disbursement (which required Northern Trust over its objection to provide the bills to the Gonzales Trust). Again, Northern Trust's complaint is with the Court's prior order that given its status as a creditor of DOA, the Gonzales Trust has a right to review and object to Northern Trust's attorney's fees claim.

- The Plan does not "strip off" Northern Trust's lien from the sale proceeds. Again, Northern Trust's attorney's fees claim is not being capped for the reason noted above. Its lien remains in place via Article 4.1.1. Northern Trust, however, has no entitlement under applicable law to "fence off" the entirety of the $9.2 million in sale proceeds to pay its remaining attorney's fees claim. In re James Wilson Assocs., 965 F.2d 160, 171 (7th Cir.1992) ("A security interest is--a security interest. It is not a fee simple. [citation omitted]. [Secured Lender] does not own a $6 million building or the rents that that building throws off month after month, year after year. It is just a creditor with a claim currently worth about $3.2 million that it has secured with liens against the building, and against the rents, to assure repayment. *It has no right to fence off the entire collateral in which it has an interest so that no other creditor can get at it. Its only entitlement is to the*

*adequate protection of its interest*. 11 U.S.C. §§ 362(d), 363(e).") [emphasis added].

- The Plan does not impose upon Northern Trust an obligation to disgorge funds it has received to the Gonzales Trust.  Any such obligation will be determined in whatever orders or judgments cause a Reversal Event to come into effect, and in that event, any disgorgement obligation will arise only to the extent that relief is ordered by a court in the future.  *See* Plan, Art. 4.1.4 ("In such event, Northern Trust shall comply with any *court order requiring it to disgorge or return any funds received from DOA* and/or the DOA Estate, including any funds paid on account of the Class 1 Claim pursuant to this Plan.")

- For the same reason, the Plan does not specify whether or to what extent Northern Trust may ever be called upon to disgorge.  *See* Art. 1.8 ("For the avoidance of doubt, the definition of Assigned Refund Rights preserves any rights that DOA and/or the DOA Estate may have under applicable law to recover funds paid to Northern Trust or other creditors in the event that a Reversal Event occurs, if such rights exist.  *This provision does not to create a right of refund or recovery that does not or would not otherwise exist under applicable law or establish the extent of the right to any refund.*").  Any determination on that issue will arise solely from subsequent orders or judgments in the litigation between Northern Trust and the Gonzales Trust – not the Plan.

In sum, all of the arguments Northern Trust makes to establish that it is impaired are complaints about the effect of applicable law and possible future court rulings on its rights. Since those effects are not caused by the Plan, it is unimpaired.

(c)    *Treatment of Classes*:

Section 1123(a)(3) requires that a plan specify the treatment of any class of claims or interests that is impaired under the plan.  Articles 4.2, 4.3, 4.4, 4.5 and 4.6 of the Plan specifies the treatment of Classes 2 through 6, which are impaired under the Plan.

8

1

   (d) *Same Treatment Within Classes*:

2    Section 1123(a)(4) requires that a plan provide the same treatment for each claim or

3 interest of a particular class, unless the holder agrees to a less favorable treatment of such

4 particular claim or interest.  As shown in Article 4, the Plan provides for the same treatment of

5 interests within Class 6. Classes 1 through 5 have only one claim within each class, therefore

6 Section 1123(a)(4) can be found to be either satisfied or not applicable.

7

   (e) *Adequate Means of Implementation*:

8    Section 1123(a)(5) requires that a plan provide adequate means of implementation.

9 Articles 5 and 6 of the Plan describes the means for the Plan's implementation.  The Plan

10 provides that the Disbursing Agent will administer the remaining assets and distribute cash to

11 creditors.  The Plan further provides for the establishment of required reserves to fund

12 administrative expenses and other claims not paid in full on the Effective Date.  Mechanisms are

13 also provided to resolve disputed claims and make distributions to creditors.

14

   (f) *Prohibition Against Issuance of Nonvoting Securities*:

15    Section 1123(a)(6) requires that a plan provide for the inclusion in the charter of a

16 corporate debtor a provision prohibiting the issuance of nonvoting equity securities, and

17 providing, as to the several classes of securities possessing voting power, an appropriate

18 distribution of such power among such classes.  No securities are being issued, and hence, this

19 provision is inapplicable to the proposed Plan.

20

   (g) *Individual Debtor Cases*:

21    Section 1123(a)(8) requires that an individual debtor devote post-petition earnings to

22 fund plan payments, but in the case, DOA and DOI are not natural persons.  Therefore, this

23 provision is inapplicable to the proposed Plan.

24  **4.**  **Other Plan Provisions Are Permitted Under 11 U.S.C. § 1123(b).**

25    Section 1123(b) provides that certain provisions *may* appear in the Plan, the following of

26 which are applicable here:

27    &bull; Articles 2 and 4.1 of the Plan specify the classes of claims that are unimpaired.

28      11 U.S.C. § 1123(b)(1).

- Article 6.8 preserves claims and authorizes the Disbursing Agent to prosecute any remaining rights of action held by the Debtors' estates. 11 U.S.C. § 1123(b)(3)(B).

Based upon the foregoing, the Trustee respectfully submits that the Plan complies with the provisions of Sections 1122 and 1123 and, therefore, complies with Section 1129(a)(1).

**B.    The Plan Complies With 11 U.S.C. § 1129(a)(2).**

Section 1129(a)(2) provides that a court may confirm a plan only if "[t]he proponent of the plan complies with the applicable provisions of this title." The principal purpose of this subsection is to assure that the plan proponent has complied with the requirements of Section 1125 in the solicitation of acceptances to the plan. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 412 (1977), S. Rep. No. 989, 9th Cong., 2d Sess. 126 (1978); In re Cajun Elec. Power Coop., Inc., 150 F.3d 503, 513, n.3 (5th Cir. 1998), *cert. denied*, 526 U.S. 1144 (1999).

In pertinent part, Bankruptcy Code § 1125(b) provides:

> An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at that time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and hearing, by the court as containing adequate information.

11 U.S.C. § 1125(b).

On January 28, 2021, the Court entered the *Order Conditionally Approving Disclosure Statement for Joint Plan of Liquidation (January 25, 2021)* (the "Disclosure Statement Order"), pursuant to which the Court, among other things: (a) conditionally approved the Disclosure Statement; (b) approved certain deadlines and procedures relating to Plan solicitation, tabulation of ballots and Plan confirmation; (c) scheduled a hearing on Plan confirmation; and (d) approved the form and scope of notice thereof.

Pursuant to the Disclosure Statement Order, the Court required the Trustee to serve a Solicitation Package (as defined in the Disclosure Statement Order), together with an appropriate ballot (but only if the intended recipient is the holder of a class of claims whose holders are entitled to vote on the Plan), upon the parties set forth in the Disclosure Statement Order. On

1  January 28, 2021, the Trustee (through counsel) served the Solicitation Package, including

2  appropriate ballot, if applicable, and the confirmation hearing notice upon the parties set forth in

3  the Disclosure Statement Order.  No solicitation of acceptances of the Plan occurred before the

4  Trustee mailed the Disclosure Statement.  (Declaration of Kavita Gupta  In Support of

5  Confirmation) ("Gupta Decl."), ¶¶13-14.)  Thus, all solicitations of acceptances of the Plan were

6  in accordance with the provisions of Bankruptcy Code § 1125.

7  **C.     The Plan is Proposed in Good Faith As Required by 11 U.S.C. § 1129(a)(3).**

8         Section 1129(a)(3) mandates that a plan be proposed "in good faith and not by any means

9  forbidden by law."  Bankruptcy Rule 3020(b)(2) provides that the Court need not require

10  evidence that a plan has been proposed in good faith if no objection has been filed challenging

11  the proponent's good faith.  Trustee Golden contends the Plan is not proposed in good faith

12  based on the gerrymandering argument addressed above and asserted unfair treatment of its

13  claim addressed in Part II.O(2) below.  Since Trustee Golden's arguments are entirely without

14  merit, his objection based on ostensible lack of good-faith should be overruled.

15        The good faith standard requires that there be a reasonable likelihood that a plan will

16  achieve a result consistent with the objectives and purposes of the Bankruptcy Code.  In re

17  Sylmar Plaza, L.P., 314 F.3d 1070, 1074 (9th Cir. 2002).  A chapter 11 plan is filed in good faith

18  if the plan proponent has exhibited "a fundamental fairness in dealing with one's creditors."

19  Stolrow v. Stolrow's, Inc. (In re Stolrow's, Inc.), 84 B.R. 167, 172 (9th Cir. BAP 1988).  Good

20  faith is viewed under the totality of the circumstances.  Sylmar Plaza, 314 F.3d at 1074.

21        In this case, the circumstances show that the Trustee has proposed the Plan in good faith.

22  As earlier discussed, the Plan provides for distributions to creditors in accordance with the

23  Bankruptcy Code's priority scheme.  The Plan's classification structure does not unfairly

24  discriminate within classes or between classes.  Accordingly, the Trustee submits that the terms

25  and conditions of the Plan are fundamentally fair and reasonable under the circumstances of this

26  case, and as such, it complies with Bankruptcy Code § 1129(a)(3).

27

28

**D.    Articles 6.1, 8.1 and 9 of the Plan are Reasonable and Necessary for the Effective Implementation of the Plan**.

Among other things, Article 6.1 of the Plan provides that the estates created by Section 541(a) shall continue, that all assets shall be deemed property of the Debtors' bankruptcy estates until distributed in accordance with the Plan, and that the automatic stay provision of Section 362(a) shall continue in full force and effect following Confirmation of the Plan.  Additionally, since this is a liquidating plan, Article 8.1 provides that nothing in the Plan will be deemed to constitute or result in a discharge of the Debtors under Section  1141(d)(3) or be deemed to constitute a release of any person or entity who is not a debtor in the Bankruptcy Case.

Provisions for the continuation of the automatic stay are permitted in a liquidating plan. *See, e.g.*, In re South Edge LLC, 478 B.R. 403, 417-18 (D. Nev. 2012) (plan provision extending the stay for a liquidating debtor was not a *de facto* discharge because creditors were not entirely barred from asserting their rights, but instead were merely required to do so in the bankruptcy court, and such a provision is appropriate where necessary to protect estate assets post-confirmation until completion of liquidation, *citing* Hillis Motors v. Hawaii Auto. Dealers' Ass'n (In re Hillis Motors), 997 F.2d 581, 588-90 (9th Cir. 1993)).

The Plan does not bar creditors from asserting their rights, but rather, simply requires them to assert those rights in this Court.  The Court will continue to have jurisdiction over the Debtors' remaining assets post-confirmation under Article 9, and so creditors will have a meaningful forum in which to voice any complaints that may arise.  Moreover, chapter 11 plans are considered to be the functional equivalent of a consent decree, Hillis Motors, 997 F.2d at 588, and as such, this Court is an appropriate forum in which any disputes over the Plan should be resolved.  *See, generally,* Jeff D. v. Kempthorne, 365 F.3d 844, 852 (9th Cir. 2004) (discussing district court's subject matter jurisdiction over controversies arising from implementation of consent decrees).  In short, the provisions of the Plan extending the stay are warranted because they do not impact creditors' substantive rights, and they promote creditors' interests by protecting the estate' assets against further depletion that would likely occur if the

1  Disbursing Agent was forced to defend disputes over a creditor's rights in other jurisdictions

2  unfamiliar with the Plan.

3  **E.      The Exculpation Provision Is Permissible.**

4         Courts recognize that exculpation clauses are appropriate to establish a standard of care

5  and protect estate professionals who are integral to the plan confirmation process.  In re Stearns

6  Holdings, LLC, 607 B.R. 781, 790-91 (Bankr. S.D.N.Y. 2019).  Exculpation provisions are

7  considered appropriate if:

8              • They are limited to estate fiduciaries and estate professionals. In re Washington

9                Mutual, 442 B.R. 314, 350–51 (Bankr.D.Del.2011).

10             • The covered persons made a significant contribution toward the plan and the

11               Chapter 11 case.  Blixseth v. Credit Suisse, 961 F.3d 1074, 1082 (9th Cir. 2020);

12             • They do not extend to claims based on fraud, willful misconduct, or gross

13               negligence.  In re Health Diagnostic Lab., Inc., 551 B.R. 218, 234 (Bankr. E.D.

14               Va. 2016) (overruling objection to exculpation clause in liquidating plan).

15             • They will help facilitate a complete resolution of the bankruptcy proceedings,

16               particularly when the Chapter 11 case was contentious.  Blixeth, 961 F.3d at

17               1081-82;  In re Fraser's Boiler Serv., Inc., 593 B.R. 636, 638-41 (Bankr. W.D.

18               Wash. 2018);  See also Meritage Homes of Nev., Inc. v. JPMorgan Chase Bank,

19               N.A. (In re S. Edge LLC), 478 B.R. 403, 416-17 (D. Nev. 2012) (affirming

20               approval of plan exculpation clause covering "any [liability] for any act or

21               omission in connection with, relating to, or arising out of the Chapter 11 Case, the

22               Disclosure Statement, or any contract, instrument, release, or other agreement or

23               document entered into during the Chapter 11 Case or otherwise created in

24               connection with this Plan.").

25         Exculpation clauses "give[] a certain measure of finality to the interested parties and their

26  professionals, and assures them they will not be second-guessed and hounded by meritless claims

27  following the conclusion of the bankruptcy case.  In re Alpha Natural Res., Inc., 556 B.R. 249,

28  260-61 (Bankr. E.D. Va. 2016) citing In re Chemtura Corp., 439 B.R. 561, 610

13

(Bankr.S.D.N.Y.2010) ("exculpation provisions are included so frequently in chapter 11 plans because stakeholders all too often blame others for failures to get the recoveries they desire; seek vengeance against other parties; or simply wish to second guess the decision makers in the chapter 11 case.").

The exculpation provision in Article 6.14 of the Plan is warranted and should be approved. It states that the Trustee and her attorneys, agents and employees shall not have any liability to DOA, DOI, or any other claimants or creditors, or other parties in interest in the Chapter 11 Cases for any act or omission in connection with or arising out of the Chapter 11 Cases, any contract, instrument, release or other agreement or document entered into during the Chapter 11 Cases or otherwise created in connection with this Plan.

These cases have had a long and contentious history, and the Trustee and her professionals have had to undertake significant efforts to bring the cases to a resolution via the Plan. Limiting the scope of complaints that can be made about the conduct of the Trustee and her professionals will facilitate the efficient administration of the DOA and DOI estates post-confirmation, and thereby, increase creditor distributions. Since the terms of the exculpation clause conform to well-recognized limitations, the exculpation provisions should be approved.

**F.     All Professional Compensation Will Be Subject To Court Approval As Required by 11 U.S.C. § 1129(a)(4).**

Section 1129(a)(4) provides that the Court shall confirm a plan only if:

> Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable. 11 U.S.C. § 1129(a)(4).

Pursuant to Section 6.6.2, the Disbursing Agent is authorized to pay Administrative Claims (which includes professional fees) only after a Final Order allowing such claims. Thus, the Plan contemplates that all pre-confirmation professional fees will be subject to final approval by the Court. The Plan accordingly complies with the requirements of Section 1129(a)(4).

Trustee Golden contends that the discharge of the Trustee upon confirmation of the Plan means that the Disbursing Agent will serve for a brief interval between confirmation and the Effective Date, and the Court will have no ability to review the administrative claim arising from her services.  But courts have the power to establish processes for the review and approval of fee requests.  *See* In re Knudsen Corp., 84 B.R. 668 (9th Cir. BAP 1988).  The Plan has a mechanism for approval of the Disbursing Agent's compensation, which triggers court review only if there is an objection by the Gonzales Trust.  *See* Plan, Art. 6.12.4.  If the Gonzales Trust does not object, the Court can presume that the requested compensation is reasonable.  Therefore, confirmation of the Plan will sufficiently allow the Court to determine the reasonableness of reasonableness of the Disbursing Agent's compensation in the brief interval between confirmation and the Effective Date.

## G.    The Plan Discloses that the Trustee will be the Disbursing Agent Following Confirmation of the Plan pursuant to 11 U.S.C. §§ 1129(a)(5) and 1123(a)(7).

Under Section 1129(a)(5)(i) , a court may confirm a plan only if the plan proponent discloses "the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan."  The appointment to or continuance in such office of such party must be "consistent with the interests of creditors and equity security holders and with public policy.  11 U.S.C. § 1129(a)(5)(A): Further, Section 1123(a)(7) requires that a plan contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor thereto.

Article 1.20 provides that the Trustee shall be responsible for and act as the Disbursing Agent for all creditors receiving distributions under the Plan.  The identities and affiliations of the Trustee and her professionals have all been previously disclosed.  Creditors are best served by the Trustee assuming the role of Disbursing Agent because of the administrative efficiency achieved.  Based upon the foregoing, the Plan complies with the requirements set forth in Section 1129(a)(5).

**H.    The Plan Does Not Require Approval of Any Regulatory Commission Under 11 U.S.C. § 1129(a)(6)**.

Section 1129(a)(6) requires that, after confirmation of a plan, any governmental regulatory commission with jurisdiction "over the rates of the debtor has approved any rate change provided for in the plan." This section is inapplicable because no regulatory commission consents are necessary.

**I.    The Plan Meets the Best Interests of Creditors Test Set Forth in 11 U.S.C. § 1129(a)(7).**

Section 1129(a)(7) requires that each holder of a claim or interest in an impaired class must either accept the plan or receive or retain property of a value, as of the effective date of the plan, that is not less than the amount such holder would receive if the debtor were liquidated under Chapter 7 of the Bankruptcy Code. 11 U.S.C. § 1129(a)(7). This so-called "best interests" test contrasts the plan distributions with distributions in a hypothetical chapter 7 liquidation. In re Sierra-Cal, 210 B.R. 168, 171-172 (Bankr. E.D. Cal. 1997).

Article IV of the Disclosure Statement and the accompanying Gupta Decl. sets forth the economic effect of a hypothetical liquidation of the Debtors in a chapter 7 case, and explains why creditors will recover more through the Plan. First, the Plan settles the avoidance claim against the Gonzales Trust. 11 U.S.C. §1123(b)(3). The Trustee estimates conservatively that it would cost $50,000 to $75,000 to litigate the avoidance claim, assuming that the judgment the Trustee anticipates would be rendered in the Estates' favor is not appealed. Second, conversion would likely cause a substantial increase in the amount of trustee compensation. The compensation paid to a Chapter 11 and Chapter 7 trustee in a converted case are considered separate, and the cap under Section 326(a) is calculated separately under Section 326(c). Conversion to Chapter 7 would increase the cost of trustee compensation in DOA's case by approximately $302,250 and by approximately $20,000 in DOI's case. Third, if the case converts to Chapter 7, professionals retained by a Chapter 7 trustee will have to file employment applications and fee applications. Confirming the Plan would avoid these expenses insofar as no new employment applications would be necessary. Moreover, the Plan contemplates that the

1   Disbursing Agent and any of her professionals will not need to file applications for post-

2   confirmation fees absent an objection by the Gonzales Trust. Therefore, it is more likely than not

3   that costs associated with preparing fee applications will be eliminated.  Finally, if the United

4   States Trustee appoints someone besides the Trustee to serve as Chapter 7 trustee, the new

5   trustee and his or her attorneys and accountants would most likely incur time getting up to speed

6   on the history of the case, litigation issues, and the potential objection to DL's claim

7         The Trustee submits that creditors will receive more on account of their claims than they

8   would if the case converted to chapter 7.  The Plan complies with Section 1129(a)(7).

9   **J.      11 U.S.C. § 1129(a)(8) is Not Satisfied, But § 1129(a)(10) is Satisfied.**

10        Section 1129(a)(8) provides that a Court may confirm a plan only if, with respect to each

11  class of claims and interests, such class has accepted the plan or such class is not impaired under

12  the plan.  *See* <u>Idaho Dep't of Lands v. Arnold (In re Arnold)</u>, 806 F.2d 937, 940 (9th Cir. 1986).

13  As discussed above, there are five (5) impaired Classes 2, 3 ,4, 5 and 6.  Classes 2 and 3

14  Claimants have both voted in favor of the Plan: 11.  Juniper, Class 4, failed to cast a ballot,

15  therefore rejection by Class 4 is assumed.  DL, Class 5, voted to reject the Plan.  Class 6 interests

16  are not receiving anything under the Plan and are deemed to have rejected the Plan.

17        Nevertheless, the Plan does satisfy Section 1129(a)(10), which provides that a plan may

18  be confirmed if "at least one class of claims that is impaired under the plan has accepted the plan,

19  determined without including any acceptance of the plan by any insider." 11 U.S.C. §

20  1129(a)(10); *see* <u>Arnold</u>, 806 F.2d at 940, n.2 (at least one class of impaired claimants must

21  accept plan).  Again, Classes 2 and 3 both voted to accept the Plan.  The Gonzales Trust is not an

22  insider.

23        While the Plan does not satisfy the requirements of Section  1129(a)(8), the Plan does

24  comply with Ssection 1129(a)(10).

25  **K.      Administrative Expenses and Priority Claimants are Treated Appropriately Under
            the Plan Pursuant to 11 U.S.C. § 1129(a)(9).**
26

27        Section 1129(a)(9) requires that unless otherwise agreed a plan pay all allowed

28  administrative claims in full on the effect date.  11 U.S.C. § 1129(a)(9)(A).  It further requires

1  that allowed claims entitled to priority under Section 507(a)(1) (domestic support obligations),

2  sections 507(a)(4) &(5) (employee wage/benefit claims), section 507(a)(6) (gain seller claims),

3  and section 507(a)(7) (individual deposit claims) must either accept the plan or be paid in full on

4  the effective date.  11 U.S.C. § 1129(a)(9)(B).  Here, only administrative claims are relevant to

5  the Debtors' cases, and pursuant to the Plan, all such claims will be paid as agreed, or in full on

6  the Effective Date, or within ten days after the date such claim becomes allowed by a Final

7  Order.

8        In addition, Section 1129(a)(9)(C) requires that all priority tax claims shall be paid within

9  five years after the entry of the order for relief.  11 U.S.C. § 1129(a)(9)(C).  All claims for real

10 property taxes have been paid in full through sale of DOA and DOI's real property assets, and no

11 other creditor has asserted a Priority Claim against either DOA or DOI.  On March 3, 2021,

12 Clark County Treasurer Office withdrew the proof of claim it previously filed in the DOI case.

13 However, under Article 3.4 of the Plan, if any priority claims materialize, they will be paid in

14 full when the claim is allowed by a Final Order.

15       Accordingly, the Plan satisfies the requirement of Section 1129(a)(9) .

16 **L.    The Plan Is Feasible as Required by 11 U.S.C. § 1129(a)(11).**

17       A Court may confirm a plan only if "[c]onfirmation of the plan is not likely to be

18 followed by the liquidation, or the need for further financial reorganization, of the debtor or any

19 successor to the debtor under the plan, unless such liquidation or reorganization is proposed in

20 the plan. 11 U.S.C. § 1129(a)(11).  In this case, liquidation is proposed under the Plan and no

21 further reorganization of the Debtors is contemplated.  Consequently, the Plan meets the

22 requirements of Section  1129(a)(11).

23 **M.    All Bankruptcy Fees Will Have Been Paid by Confirmation Pursuant to 11 U.S.C.**
24 **§ 1129(a)(12).**

25       Section 1129(a)(12) provides that a Court may confirm a plan only if "[a]ll fees payable

26 under section 1930 of title 28, as determined by the court at the confirmation hearing, have been

27 paid or the plan provides for the payment of all such fees on the effective date of the plan."

28 Article 3.3 of the Plan provides that the Debtor shall pay in cash in full on the Effective Date any

1  statutory fees then owing and unpaid to the U.S. Trustee and will pay future quarterly fees until

2  the Chapter 11 Cases are  converted, dismissed, or closed by entry of a final decree, pursuant to

3  28 U.S.C. §1930(a)(6).

4  **N.      11 U.S.C. §§ 1129(a)(13), (14), (15), and (16) are Inapplicable.**

5        Section  1129(a)(13) requires a plan to provide for the continuation after its effective date

6  of payment of all retiree benefits.  Debtors do not have any "retirees" entitled to benefits.

7  Accordingly, this requirement is inapplicable.

8        Furthermore, Section  1129(a)(14) e requiring payment of domestic support obligation is

9  inapplicable.

10        Section 1129(a)(15) is also inapplicable here because Debtors are not individuals.

11        Lastly, Debtors are not "corporation or trust that is not moneyed, business, or commercial

12  corporation or trust."  Thus, Section 1129(a)(16)  does not apply to these cases.

13  **O.      The Court May Confirm the Plan Over the Objection by Classes 4, 5 and 6.**

14        Section 1129(b)(1) provides that a plan may be confirmed over the objection of a non-

15  consenting class of claims if the plan does not discriminate unfairly and is "fair and equitable."

16  11 U.S.C. § 1129(b)(1).

17        **1.      *The Plan is Fair and Equitable.***

18        For dissenting unsecured claim classes, a Plan is fair and equitable if the plan provides

19  that (1) each holder of a claim of such class receive or retain on account of such claim property

20  of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (2)

21  the holder of any claim that is junior to the claims of such class will not receive or retain under

22  the plan on account of such junior claim any property.  11 U.S.C § 1129(b)(2)(B).  Here, the Plan

23  provides that Class 4 (Juniper) and Class 5 (DL) will receive pro rata distributions of available

24  funds until the allowed amount of their claims is paid in full.  *See* Plan, Art. 4.4; Art. 4.5.3.  The

25  only class lower in priority to Class 4 and Class 5 is Class 6 member interests.  As noted, Class 6

26  will not receive any distributions unless and until Classes 4 and 5 are paid in full.  Hence, the

27  Plan is fair and equitable in its treatment of Class 4 and Class 5.

28

For interest holders, a Plan is fair and equitable if the plan provides that (1) each holder of an interest receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest;  or (2) the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.  11 U.S.C. § 1129(b)(2)(C).  With respect to Class 6 (interests), the Plan is fair and equitable because no class junior in priority to Class 6 will receive or retain any property under the Plan.

**2.    *The Plan Does Not Unfairly Discriminate.***

While the Plan provides for pro rata distributions of available funds to the Gonzales Trust and the DL claim (assuming it is allowed and not subordinated), the timing of distributions is not the same.  Trustee Golden contends that this constitutes unfair discrimination.  But this argument has no merit.

A plan may provide for differing treatment between classes if: (1) the discrimination is supported by a reasonable basis; (2) the debtor could not confirm or consummate the Plan without the discrimination; (3) the discrimination is proposed in good faith; and (4) the degree of the discrimination is directly related to the basis or rationale for the discrimination.  In re Ambanc La Mesa L.P., 115 F.3d 650, 656 (9th Cir. 1997); In re Wolff, 22 B.R. 510, 511-12 (9th Cir. BAP 1982).

Here, the Class 5 claim is being treated differently from the Class 2 Gonzales Trust claim in terms of the timing of distributions because it may later be determined that Class 2 is entitled to an equitable priority.  Hence, it will not be known until the outcome of that litigation if the Gonzales Trust has that status.  Until then, distributions to Class 5 are deferred because a possible outcome is that the Gonzales Trust becomes entitled to all remaining funds in the DOA estate after payment of administrative claims, expenses of the Disbursing Agent, and UST fees. If distributions are made before hand, litigation would have to be pursued to recover the improperly made distributions.  Since any such distribution will be made to a bankruptcy estate,

MPA ISO CONFIRMATION OF AMENDED CHAPTER 11 PLAN OF LIQUIDATION

1  it is not known whether the DL estate would be in a position to refund any improperly paid

2  amounts.

3         With respect to treating the Class 5 claim as disputed and extending the deadline for

4  filing an objection to that claim, this Court has ordered that the Desert Land case will be

5  dismissed.  Dismissal will have the effect of eliminating the claim because DL and DOA's

6  managers have previously acknowledged that no claim exists.

7         For these reasons, there is a reasonable basis for differing payment terms between the DL

8  claim and the Gonzales Trust claim.  The proposed treatment goes only as far as necessary to

9  satisfy the reasons underlying the discrimination.  *See* Plan, Art. 5.6 (provided that the claim is

10 allowed and not subordinated, entitling the claim to be paid a pro rata share of assets available

11 for distribution to unsecured creditors after the priority litigation is resolved).  Absent this

12 provision, the Gonzales Trust would likely object based on the potential for an improper

13 distribution of funds to the DL estate (again, assuming that its claim was ever allowed and

14 determined not to be subordinated).  Hence, all of the *Ambanc* factors justify disparate treatment

15 of the two classes of claims.

16        With respect to Class 4 (Juniper), its treatment is dictated by the terms of the Juniper

17 Carveout Agreement approved by this Court.  *See* Plan, Art. 4.4.

18        Accordingly, the Plan does not unfairly discriminate and is fair and equitable to Classes

19 4, 5, and 6 and can be confirmed over their objection.

20 **P.     The Plan Can Be Confirmed Over Northern Trust's Objection**.

21        Because Northern Trust is unimpaired for the reasons discussed supra in Part II.3(b), the

22 Plan is automatically confirmable notwithstanding any objection Northern Trust may make.

23 Sylmar Plaza, 314 F.3d at 1075.  The cramdown requirements do not apply to unimpaired

24 classes.  11 U.S.C. §1129(b)(1) (referring to classes of claims that are impaired under a plan).

25 Nevertheless, if the Court determines that the Plan somehow impairs Northern Trust and allows

26 Northern Trust to cast a rejecting ballot, the Plan may still be confirmed over its objection.

27 *//*

28

1.    ***The Plan is Fair and Equitable to Northern Trust.***

Section 1129(b)(2)(A) provides that a plan is fair and equitable to a dissenting class of secured claims if: (a) holders of claims in that class retain their liens, and (b) the claimants will receive the present value of their secured claims. 11 U.S.C. §1129(b)(2)(A). Northern Trust will retain its lien. *See* Plan, Art. 4.1.1 (preserving all of its legal or equitable rights under the Northern Trust loan documents). As noted above, the attorney's fees reserve is for administrative convenience. It is not a cap because the Plan provides that Northern Trust is entitled to be paid out of *all* assets of the DOA estate, not just the reserved funds. *See* Plan, Art. 4.1.3; Art. 5.2. With more than $9.2 million in cash on hand, there is more than sufficient cash to pay Northern Trust's residual attorney's fees claim in full.[3]

If a Reversal Event occurs (that is, the Court decides that the Gonzales Trust has priority over Northern Trust), the amount of Northern Trust's secured claim will be determined by the orders or judgments that cause the Reversal Event to come into effect. *See* Plan, Art. 4.1.4. But if that happens, Northern Trust could be deemed an undersecured creditor, and therefore, not entitled to the millions of dollars in post-petition interest and attorney's fees it has already been paid. 11 U.S.C. § 506(b) (allowing post-petition interest and attorney's fees only to oversecured creditors). Since Northern Trust will have already been paid *more* than what the Bankruptcy Code provides, the only question will be how much, if anything, it has to pay back to the

---

[3]    Article 4.1.1 of the Plan provides: "Unless the Bankruptcy Court orders otherwise, the Disbursing Agent shall reserve the sum of $75,000.00 from the assets of the DOA Estate for the additional attorney's fees, costs, and other expenses to which Northern Trust may be entitled under the Northern Trust Loan Documents and applicable law." The Plan, therefore, lets the Court determine whatever amount it thinks should be reserved.

Northern Trust argues that the reserve should be $500,000.00 based on the fees it incurred over the entire history of the case. However, this number seems unnecessarily high. The Court is well aware of the numerous proceedings in these cases over the last three years, during which time Northern Trust incurred approximately $600,000 in fees, including in the litigation with the Gonzales Trust in Adv. Proc. No. 19-01108. After confirmation of the Plan, there will be no significant administrative activity in the DOA case requiring Northern Trust's involvement. It will only be required to defend the appeal of the judgment rendered in its favor.

1  Gonzales Trust.  Northern Trust's secured claim will have been satisfied in full out of the more

2  than $5.6 million it has already received.

3      Accordingly, under either scenario, Northern Trust's allowed secured claim will be paid

4  in full, and so the Plan is fair and equitable.[4]

5      **2.**    ***The Plan Does Not Unfairly Discriminate Against Northern Trust.***

6      Section 1129(b)(1)'s prohibition against unfair discrimination seeks to ensure that a plan

7  "allocate[ ] value to the class in a manner consistent with the treatment afforded to other classes

8  with *similar legal claims against the debtor*. [emphasis added]"  In re Acequia, Inc., 787 F.2d

9  1352, 1364 (9th Cir. 1986).  Here, the Plan has no other classes of secured claims – Class 1

10  stands alone – and so there is no basis to argue that Northern Trust's treatment is discriminatory

11  vis-à-vis any similar class.  *See* In re Elmwood, Inc., 182 B.R. 845, 850 (D. Nev. 1995); In re

12  Tucson Self-Storage, Inc., 166 B.R. 892, 898 (9th Cir. BAP 1994) (analyzing discrimination in

13  treatment by reference to how classes of claims with the same status are treated).  On this basis

14  alone the Court should find that the Plan does not "unfairly discriminate" against Northern Trust.

15      But even if the Court were to apply an overly expansive interpretation of unfair

16  discrimination, there is an entirely reasonable basis for the treatment of Northern Trust's claim.

17  Northern Trust first complains that the Plan does not afford Northern Trust consultation rights

18  that are being accorded to the Gonzales Trust.  The Gonzales Trust is given consultation rights

19  ─────────────────────────

20  [4]    With respect to Northern Trust's contention that the Trustee is trying to inject herself into the dispute, nothing could be further from the truth.  The Plan leaves it entirely to Northern Trust and the Gonzales Trust to litigate the issues between them, and the Plan is structured to accommodate whatever outcome happens.

22      The Plan does not include a provision requiring that any order/judgment requiring Northern Trust to disgorge be a Final Order because that would have the effect of granting Northern Trust an automatic stay of that ruling without requiring Northern Trust to post a bond or otherwise seek a stay of enforcement.

25      The Plan does not "ignore" the Gonzales Trust's other collateral.  That "collateral" is not property of the DOA or DOI estates that can be dealt with in the Plan.  To the extent Northern Trust suffers a Reversal Event and it wants to argue that the Gonzales Trust has an obligation to marshal assets, all of those issues can be litigated at the appropriate time and in the appropriate forum.  What Northern Trust really appears to be doing in its objection is seeking to use the plan confirmation process to tip the scales in its favor in the ongoing litigation.

because it has the most direct stake in how the DOA estate's assets are spent post-confirmation. The Gonzales Trust has an incentive (actually shared by the Trustee) to keep those expenses at a minimum in order to maximize creditor recoveries- which will inure largely if not exclusively to its benefit.  This arrangement also benefits Northern Trust.  If a Reversal Event occurs, maximizing the cash distributed to the Gonzales Trust presumably would reduce any amount Northern Trust could be required to disgorge (assuming that it is required to do so).  This arrangement is not inherently unfair to Northern Trust.  In re Aztec Co., 107 B.R. 585, 588-89 (Bankr. M.D. Tenn. 1989) ("Section 1129(b)(1) prohibits only unfair discrimination, not all discrimination.").

Northern Trust also complains that no other creditor is required to disgorge if a Reversal Event occurs.  Again, the Plan does not require Northern Trust to disgorge – only a subsequent court order directing it to disgorge would cause that to happen.  See Plan, Art. 4.1.4.  But no other creditor is required to disgorge if a Reversal Event occurs because: (a) the Gonzales Trust will have a priority claim against the remaining cash in the DOA estate, (b) the Gonzales Trust is consenting to the payments of professional fees (or those allowed Court order), and (c) under these circumstances there is no legal basis to compel disgorgement.  See In re ACI Concrete Placement of Kan., LLC, 604 B.R. 400, 405-06 (Bankr. Kan. 2019) (payments made under carveout agreement protected from disgorgement).

For the foregoing reasons, the Plan does not unfairly discriminate against Northern Trust. Because the Plan is also "fair and equitable" to Northern Trust within the meaning of Bankruptcy Code section 1129(b)(2)(A), the Plan can be confirmed over its objection.

**Q.    The Principal Purpose of the Plan is Not Avoidance of Tax or Securities Act Obligations Under 11 U.S.C. § 1129(d).**

Section 1129(d) provides that, "on request of a party in interest that is a governmental unit, the court may not confirm a plan if the principal purpose of the plan is avoidance of taxes or the avoidance of section 5 of the Securities Act of 1933 . . . ."

No governmental party in interest has requested the denial of confirmation of the Plan on any of the foregoing grounds, and they are not applicable here.

24

1

## III.    CONCLUSION

2      Based on the foregoing, the Plan meets each and every requirement for confirmation

3   pursuant to Section  1129.  Accordingly, the Trustee requests that the Court enter an order

4   confirming the Plan and granting such other and further relief as is just and proper under the

5   circumstances.

6

7   Dated:  March 4, 2021                                    NUTI HART LLP

8                                                           /s/ Kevin W. Coleman
9                                                           Kevin W. Coleman
                                                            Attorneys for the Kavita Gupta, Chapter 11 Trustee

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MPA ISO CONFIRMATION OF AMENDED CHAPTER 11 PLAN OF LIQUIDATION