Kevin W. Coleman (CA SBN 168538)
Admitted *pro hac vice*
Christopher H. Hart (CA SBN 184117)
Admitted *pro hac vice*
NUTI HART LLP
411 30TH Street, Suite 408
Oakland, CA 94609-3311
Telephone: 510-506-7152
Email: kcoleman@nutihart.com
chart@nutihart.com

Talitha Gray Kozlowski (NV SBN 9040)
GARMAN TURNER GORDON LLP
7251 Amigo Street, Suite 210
Las Vegas, NV 89119
Telephone: 725-777-3000
Email: tgray@gtg.legal
Counsel for Kavita Gupta,
Chapter 11 Trustee

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| In re: | Case No.: BK-S-18-12456 GS |
|---|---|
| DESERT OASIS APARTMENTS, LLC, | Chapter 11 |
| Debtor. | **DECLARATION OF KAVITA GUPTA IN SUPPORT OF CONFIRMATION JOINT PLAN OF LIQUIDATION** |
| | **Dated: January 25, 2021** |
| | <u>Confirmation Hearing:</u><br>Date: March 11, 2021<br>Time: 1:30 p.m. |

I, Kavita Gupta, declare:

1. I am the duly appointed and acting Chapter 11 trustee ("Trustee") for the estates of Desert Oasis Apartments, LLC ("DOA" or "Debtor") and Desert Oasis Investments, LLC ("DOI") (collectively, "Debtors"). I am an attorney licensed to practice in the State of California and have experience acting as Chapter 11 and Chapter 7 trustees in numerous cases in California and Nevada. All statements in this declaration are based on my own personal knowledge and information obtained in my capacity as Chapter 11 trustee in this case, or upon information and belief as indicated. If called to testify on this matter, I can and would competently testify to the

1

matters set forth in this Declaration. I make this Declaration in support of confirmation of the Joint Plan of Liquidation (January 25, 2021*)* (the "Plan").[1]

2. I am readily familiar with the Debtor's books and records. I actively assisted counsel in the preparation of the Plan and Disclosure Statement. I read and approved the Plan and Disclosure Statement and all exhibits prior to filing.

3. In assisting with the preparation of the proposed Plan and Disclosure Statement, I undertook an analysis of all claims filed against the DOA and DOI. My analysis resulted in informal reconciliations and settlements of potential objections to claims, taxing authorities and others asserting administrative, priority, and general unsecured claims. As of February 28, 2021, I hold cash in the approximate amount of $9,278,770 for the DOA estate and cash in the approximate amount of $387,683 for the DOI estate.

4. I have reviewed professional fees incurred and have estimated the fees to be incurred through confirmation and distribution as compared to a conversation of this case to a Chapter 7.

5. Based upon my prior experience, an analysis of the Debtor's estate, and with the assistance of counsel, I prepared the Liquidation Analysis set forth in the Disclosure Statement. First, the Plan settles the avoidance claim against the Gonzales Trust. I estimate conservatively that it would cost $50,000 to $75,000 to litigate the avoidance claim, assuming that a judgment rendered in the Debtors' favor is not appealed. I also considered costs to be avoided in a Chapter 7 scenario, including, among others, the Debtors' operational costs and fees of its counsel. I also took into consideration the administrative costs to be incurred during a Chapter 7 as compared to that of a Chapter 11 liquidating plan, including the different compensation structures for Chapter 7 and Chapter 11 trustees. Conversion to Chapter 7 would increase the cost of trustee compensation in DOA's case by approximately $302,250 and by approximately $20,000 in DOI's case. If the case converts to Chapter 7, professionals retained by a Chapter 7 trustee will have to file employment applications and fee applications. Confirming the Plan avoids these

---

[1] All capitalized terms not otherwise defined herein have the meaning ascribed to them in the Plan.

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND,CA 94609-3311
TELEPHONE: 510.506.7152

2

expenses insofar as no new employment applications would be necessary. Moreover, the Plan contemplates that I and my professionals will not need to file applications for post-confirmation fees absent an objection by the Gonzales Trust. Therefore, it is more likely than not that costs associated with preparing fee applications will be eliminated. Finally, if the United States Trustee appoints someone besides me to serve as Chapter 7 trustee, the new trustee and his or her attorneys and accountants would most likely incur time getting up to speed on the history of the case, litigation issues, and the potential objection to DL's claim. In considering these costs and estimates, I relied upon my personal experience and upon that of my counsel and their considerable experience in representing Chapter 11 and Chapter 7 trustees. I believe the Liquidation Analysis is accurate as possible given the information currently available and reflects the relative administrative costs between a conversion to Chapter 7 and confirming and administering a liquidating Chapter 11 plan. Thus, I believe creditors will receive a higher distribution under the Plan than if this case were converted to Chapter 7.

6. The Plan contains five (5) classes of Claims and one (1) class of interests, as follows:

**Class 1 (Unimpaired).** Class 1 consists of the Northern Trust secured claim against DOA.

**Class 2 (Impaired).** Class 2 consists of the Gonzales Trust claim against DOA.

**Class 3 (Impaired).** Class 3 consists of the Disputed Claim filed by the Gonzales Trust against DOI.

**Class 4 (Impaired).** Class 3 consists of the unsecured deficiency claim of Juniper against DOI.

**Class 5 (Impaired).** Class 5 consists of the Disputed Claim filed September 23, 2020 by DL against DOA, which claim was amended on December 15, 2020 as an unsecured non-priority claim in the amount of $4.5 million

**Class 6 (Impaired).** Class 6 consists of the member interests in DOA and DOI.

7. The Plan is a liquidating plan. The assets to be distributed include cash and administration of disputed claims and rights. The Plan provides a comprehensive mechanism to liquidate the remaining assets and distribute cash to creditors. Among other things, the Plan

3

provides that the Disbursing Agent will administer the remaining assets and distribute cash to creditors. The Plan further provides for the establishment of required reserves to fund administrative expenses and other claims not paid in full on the Effective Date. Mechanisms are also provided to resolve disputed claims, anticipate and plan for the outcome of ongoing litigation and disputes, and make distributions to creditors. The Plan further provides for payment of : (i) U.S. Trustee fees then due and unpaid, all Allowed Administrative Claims (unless the holder of any such claim agrees in writing to a later payment date), and all Allowed Priority Claims; (ii) payment of Allowed Tax Claims in full on the later of the Effective Date or the date the Tax Claim is allowed by a Final Order; (iii) procedure for estimation of Contested Claims; (iv) interim distribution prior to resolution of all disputed Claims asserted against the Debtor's estate, and (v) preservation of claims of the Debtor and authority to prosecute any claims, causes or rights to assert any legal claim for relief that the Debtor may have against any person or entity.

8. I have proposed the Plan in good faith. The Plan provides for distributions to creditors in accordance with the Bankruptcy Code's priority scheme, and there are no classes of equal priority that will be receiving differential treatment. The Plan's classification structure does not unfairly discriminate within classes or between classes.

9. I believe that the best interest of creditors test is met. In a chapter 7 liquidation, holders of Allowed Claims would receive distributions based on the liquidation or collection of the Debtors' assets and in the priority set forth in the Bankruptcy Code. Such assets would include the same assets that are available to creditors under this Plan and the Plan provides for payment priority as set forth in 11 U.S.C. § 507. As discussed above and more fully in the Disclosure Statement, conversion to chapter 7 at this juncture would only add additional unnecessary administrative costs, especially with a potential new chapter 7 trustee and professionals. The proposed Plan with me assuming the role as Disbursing Agent avoids these extra administrative costs

10. I submit that the Plan is feasible because a form of liquidation is proposed under the Plan and no further reorganization of the Debtors is contemplated.

4

11. The Plan contemplates that pre-confirmation professional fees will be subject to final approval by the Court pursuant to Section 6.6.2 which authorizes payment of professionals only *to the extent allowed by the Bankruptcy Court*.

12. Section 3.3 of the Plan provides that the Debtor shall pay in cash in full on the Effective Date any statutory fees then owing and unpaid to the U.S. Trustee and will pay future quarterly fees until the Chapter 11 Cases are converted, dismissed, or closed by entry of a final decree consistent with 28 U.S.C. §1930(a)(6).

13. On January 28, 2021, the Court entered its *Order Conditionally Approving Disclosure Statement for Chapter 11 Trustee Kavita Gupta's Joint Plan of Liquidation, etc. (January 25, 2021)* (the "Disclosure Statement Order") [DOA Docket No. 244; and DOI Docket No. 121], pursuant to which the Court, among other things: (a) conditionally approved the Disclosure Statement; (b) approved certain deadlines and procedures relating to Plan solicitation, tabulation of ballots and Plan confirmation; (c) scheduled a hearing on Plan confirmation; and (d) approved the form and scope of notice thereof.

14. Pursuant to the Disclosure Statement Order, the Court required me to serve Solicitation Packages (as defined in the Disclosure Statement Order), together with an appropriate ballot (but only if the intended recipient is the holder of a class of claims whose holders are entitled to vote on the Plan), upon the parties set forth in the Disclosure Statement Order. On January 28, 2021, I, through counsel served the Solicitation Package, in accordance with the terms of the Disclosure Statement Order. No solicitation of acceptances of the Plan occurred before I mailed the Disclosure Statement. Thus, all solicitations of acceptances of the Plan were in accordance with the provisions of 11 U.S.C § 1125.

15. As discussed above, there are five impaired Classes, Classes 2, 3, 4, 5 and 6. The Plan has been accepted by impaired Class 2 and impaired Class 3; the Gonzales Trust holding a claim in each class. Northern Trust, holding unimpaired claims in Class 1, has filed a motion for leave to cast a ballot, which motion is to be heard concurrently with the confirmation hearing. Juniper holds the Class 4 claims but did not vote; Class 4 is therefore assumed to have rejected

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510.506.7152

the Plan.  DL holds the Class 5 claim and rejected the Plan.  Class 6 claims are impaired member interests and are deemed to have rejected the Plan.

    I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct and that this declaration was executed on March 4, 2021.

                                        */s/ Kavita Gupta*
                                          Kavita Gupta

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510.506.7152