Kevin W. Coleman (CA SBN 168538)
Admitted *pro hac vice*
Christopher H. Hart (CA SBN 184117)
Admitted *pro hac vice*
NUTI HART LLP
411 30TH Street, Suite 408
Oakland, CA 94609-3311
Telephone: 510-506-7152
Email: kcoleman@nutihart.com
       chart@nutihart.com

Talitha Gray Kozlowski (NV SBN 9040)
GARMAN TURNER GORDON LLP
7251 Amigo Street, Suite 210
Las Vegas, NV 89119
Telephone: 725-777-3000
Email: tgray@gtg.legal

Counsel for Kavita Gupta,
Chapter 11 Trustee

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>DESERT OASIS APARTMENTS, LLC,<br><br>Debtor. | Case No.: BK-S-18-12456 GS<br><br>Chapter 11<br><br>**OBJECTION TO THE NORTHERN TRUST COMPANY'S MOTION TO ALLOW VOTE ON CHAPTER 11 TRUSTEE KAVITA GUPTA'S JOINT PLAN OF LIQUIDATION**<br><br>Confirmation Hearing:<br>Date: March 11, 2021<br>Time: 1:30 p.m. |

Chapter 11 trustee Kavita Gupta ("Trustee"), by and through her counsel of record, hereby objects to The Northern Trust Company's motion ("Motion") to allow vote on Chapter 11 trustee Kavita Gupta's Joint Plan of Liquidation ("Plan").

## I.    FACTS

Northern Trust had a lien on a parcel of real property ("Apartments") formerly owned by Desert Oasis Apartments, LLC ("DOA") when this case commenced. The lien secured an obligation of less than $5 million as of the petition date. During the course of this case, DOA

1

and after her appointment the Trustee, made monthly adequate protection payments to Northern Trust. The Trustee sold the Apartments in June 2020, and Northern Trust's lien re-attached to the sale proceeds. Pursuant to this Court's August 28, 2020 order [ECF No. 128], the Trustee disbursed approximately $5.6 million to Northern Trust to satisfy its claims for principal, regular interest, default interest, loan charges and other costs, through the date of payment, plus attorney's fees that had accrued through June 30, 2020. Hence, Northern Trust's only remaining claim in this case is for residual attorney's fees that accrue on an after July 1, 2020. It has otherwise been paid in full. After the payment to Northern Trust, the Trustee continues to hold in excess of $9.2 million in the DOA estate.

In November 2019, Brad Busbin, as Trustee of the Gonzales Charitable Reminder Unitrust One ("Gonzales Trust"), commenced Adversary Proceeding No. 19-01108 ("Adversary Proceeding"). As relevant here, the first claim for relief in the Adversary Proceeding alleged that the Gonzales Trust was entitled to an equitable priority over Northern Trust. In April 2020, this Court granted summary judgment in Northern Trust's favor on the first claim for relief, determining that the Gonzales Trust did not have priority.

The Gonzales Trust has appealed the Court's April 2020 ruling, which appeal remains pending. The Court's judgments on the priority question, however, have not been stayed.

The Trustee filed the Plan on January 25, 2021. Because the Gonzales Trust's appeal remains pending, the Plan had to be structured to accommodate both the possibility that the Court's judgment in Northern Trust's favor is affirmed, and the possibility that the Court's judgment is reversed and it is determined that the Gonzales Trust has priority over Northern Trust. To do this, the Plan defines a "Reversal Event" as a circumstance where "both of the following have occurred: (a) entry of a judgment by the Bankruptcy Court or other court of competent jurisdiction reversing the Bankruptcy Court's April 22, 2020 judgment in favor of Northern Trust in Adv. Proc. No. 19-01108 [Adv. Proc. Dkt. 39], and (b) entry of judgment determining that the claim held by Brad Busbin, Trustee of the Gonzales Trust has priority over the claim held by Northern Trust." *See* Plan, Art. 1.40.

Under Article 4.1 of the Plan, if no Reversal Event occurs (i.e., Northern Trust retains its priority over the Gonzales Trust), Northern Trust's remaining attorney's fees claim will be paid in full. Contrary to Northern Trust's argument, the Plan does not "cap" the amount payable to Northern Trust on account of its remaining attorney's fees claim. Article 4.1.3 provides that to the extent allowable, Northern Trust's attorney's fees will be paid out of *any* assets of the DOA estate. *See* Plan, Art. 4.1.3 ("So long as no Reversal Event has occurred, the Disbursing Agent *shall pay out of the assets of the DOA Estate* to Northern Trust such amounts for its attorney's fees and costs as may be agreed between the Disbursing Agent, the Gonzales Trust, and Northern Trust, or that may be ordered by the Bankruptcy Court."). Nothing in the Plan restricts Northern Trust's entitlement to payment to the reserved funds.

However, if a Reversal Event occurs, the priority of the Gonzales Trust's claim against DOA and Northern Trust's rights will be determined in the judgments and/or orders causing the Reversal Event to come into effect. *See* Plan, Art. 4.1.4 ("If a Reversal Event occurs, the amount and priority of the Class 1 Claim shall be determined by the judgment causing the Reversal Event to come into effect, or any subsequent judgment or Final Order entered by a court of competent jurisdiction establishing the amount and/or priority of such claim. In such event, Northern Trust shall comply with any *court order requiring it to disgorge or return any funds received from DOA* and/or the DOA Estate, including any funds paid on account of the Class 1 Claim pursuant to this Plan."). Article 4.1.4, therefore, depends entirely on the existence and effect of a subsequent court order. The Plan does not in any way purport to pre-determine what the Gonzales Trust and Northern Trust's respective rights will be. *See* Art. 4.2.3 ("No provision of this Article 4.2.3 creates a right of refund that does not or would not otherwise exist under applicable law or establish the extent of the right to any refund, subject to the rights that may arise under Section 4.2.4.) All of those issues will be resolved in the on-going litigation between the Gonzales Trust and Northern Trust.

If a Reversal Event does occur, that necessarily means that the Gonzales Trust has priority over Northern Trust. Therefore, the remaining cash in the DOA will be paid to the Gonzales Trust. *See* Plan, Art. 4.2.6. Assuming *arguendo* that after a Reversal Event occurs, the

Court also determines that Northern Trust has to disgorge monies to the Gonzales Trust, Northern Trust will be able to assert in that litigation any and all grounds upon which its obligation to disgorge should be reduced, including but not limited to amounts paid to the Gonzales Trust, and recourse that the Gonzales Trust may have to other assets. Again, the Plan in no way seeks to pre-determine or affect the rights of either Northern Trust or the Gonzales Trust in that dispute. *See* Plan, Art. 1.8 (qualifying the definition of "Assigned Refund Rights" by providing "For the avoidance of doubt, the definition of Assigned Refund Rights preserves any rights that DOA and/or the DOA Estate may have under applicable law to recover funds paid to Northern Trust or other creditors in the event that a Reversal Event occurs, if such rights exist. This provision does not to create a right of refund or recovery that does not or would not otherwise exist under applicable law or establish the extent of the right to any refund.")

For these reasons, the Plan does not impact Northern Trust's rights one way or the other if a Reversal Event occurs. Those effects are going to dictated – if they happen at all – by future court orders and judgments. The Plan otherwise makes clear in Article 4.1.1 that: "Northern Trust shall retain all of the legal and equitable rights existing under the Northern Trust Loan Documents and applicable law, and no provision of this Plan shall alter or affect said rights." *See* Plan, Art. 4.1.1.

**II.   ARGUMENT**

As explained below, Northern Trust's arguments for why it is ostensibly impaired are based on either misinterpretations of the Plan's actual provisions, or supposed legal rights that it just does not have.

*A. Northern Trust is Unimpaired*

A class of claims or interests is not impaired under a plan if the plan "leaves unaltered the legal, equitable and contractual rights to which the claim or interest holder is entitled." 11 U.S.C. § 1124(1). Despite the express terms of Article 4.1.1 and other Plan provisions, Northern Trust argues that it is impaired. But impairment depends on whether an asserted alteration of rights results from a provision of the plan itself versus an effect imposed by applicable law. In re PG&E Corp., 610 B.R. 308, 315 (Bankr. N.D. Cal. 2019) ("a claim is impaired only if the plan

itself does the altering, not [by] what the Bankruptcy Code does"); In re Tree of Life Church, 522 B.R. 849 (Bankr. S.C. 2015) ("the Court must determine whether the plan itself, rather than the operation of a provision of the Bankruptcy Code, impairs a creditor's legal, equitable, or contractual rights.").

Here, none of the potential impacts cited by Northern Trust result from the Plan, but rather, follow from applicable law and/or subsequent orders and judgments that may be entered:

- The reserve for payment of Northern Trust's remaining attorney's fees claim is a reserve to facilitate administration of the DOA estate post-confirmation. It is not a "cap" on Northern Trust's claim because the Plan allows that claim to be paid from all assets of the DOA estate.

- The procedure for review of Northern Trust's attorney's fees claims follows applicable law, which requires Northern Trust to prove its entitlement to fees by filing applications similar to a professional fee application. In re Coates, 292 B.R. 894, 900-901 (Bankr. C.D. Ill. 2003) ("When an oversecured creditor seeks to charge the bankruptcy estate with its attorney fees, costs and expenses, the creditor bears the burden to prove the reasonableness thereof. [citations omitted] As in most jurisdictions, Illinois courts rely upon the lodestar method to determine the reasonableness of attorney fees. *The party claiming fees must present the court with detailed records specifying the services performed, by whom they were performed, the time expended and the hourly rate charged.*") [emphasis added]. In other words, Northern Trust simply does not have a right under its loan documents or applicable law to receive payment for its attorney's fees after only sharing its bills with the Disbursing Agent. The Plan, therefore, is not altering any of its rights with respect to its claim for attorney's fees. Its real complaint is that applicable law requires Northern Trust to prove its attorney's fees claim, but that is not a basis find that *the Plan* impairs its rights.

- The provision allowing the Gonzales Trust to review Northern Trust's invoices before payment follows this Court's own ruling on Northern Trust's motion for

disbursement (which required Northern Trust over its objection to provide the bills to the Gonzales Trust). Again, Northern Trust's complaint is with the Court's prior order that given its status as a creditor of DOA, the Gonzales Trust has a right to review and object to Northern Trust's attorney's fees claim.

- The Plan does not "strip off" Northern Trust's lien from the sale proceeds. Again, Northern Trust's attorney's fees claim is not being capped for the reason noted above. Its lien remains in place via Article 4.1.1. Northern Trust, however, has no entitlement under applicable law to "fence off" the entirety of the $9.2 million in sale proceeds to pay its remaining attorney's fees claim. In re James Wilson Assocs., 965 F.2d 160, 171 (7th Cir.1992) ("A security interest is-- a security interest. It is not a fee simple. [citation omitted]. [Secured Lender] does not own a $6 million building or the rents that that building throws off month after month, year after year. It is just a creditor with a claim currently worth about $3.2 million that it has secured with liens against the building, and against the rents, to assure repayment. *It has no right to fence off the entire collateral in which it has an interest so that no other creditor can get at it. Its only entitlement is to the adequate protection of its interest*. 11 U.S.C. §§ 362(d), 363(e).") [emphasis added].

- The Plan does not impose upon Northern Trust an obligation to disgorge funds it has received to the Gonzales Trust. Any such obligation will be determined in whatever orders or judgments cause a Reversal Event to come into effect, and in that event, any disgorgement obligation will arise only to the extent that such relief is ordered by a court in the future. *See* Plan, Art. 4.1.4 ("In such event, Northern Trust shall comply with any *court order requiring it to disgorge or return any funds received from DOA* and/or the DOA Estate, including any funds paid on account of the Class 1 Claim pursuant to this Plan.")

- For the same reason, the Plan does not specify whether or to what extent Northern Trust may ever be called upon to disgorge. *See* Art. 1.8 ("For the

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510.506.7152

6

avoidance of doubt, the definition of Assigned Refund Rights preserves any rights that DOA and/or the DOA Estate may have under applicable law to recover funds paid to Northern Trust or other creditors in the event that a Reversal Event occurs, if such rights exist. *This provision does not to create a right of refund or recovery that does not or would not otherwise exist under applicable law or establish the extent of the right to any refund.*"). Any determination on that issue will arise solely from subsequent orders or judgments in the litigation between Northern Trust and the Gonzales Trust – not the Plan.

In sum, all of the arguments Northern Trust makes to establish that it is impaired are complaints about the effect of applicable law and possible future court rulings on its rights. Since those effects are not caused by the Plan, it is unimpaired.

    *B.  Nothing Prevents the Trustee From Proposing a Joint Plan*

Joint plans are permitted. In re Transwest Resort Properties, Inc., 881 F.3d 724 (9th Cir. 2018). There is no requirement in the Bankruptcy Code that cases be administratively or substantively consolidated in order for a joint plan to be proposed. For the reasons set forth in the Trustee's Memorandum in Support of Plan Confirmation, the classification of claims is entirely proper under Ninth Circuit law. And in any event, at least one impaired class in both DOA and Desert Oasis Investments, LLC have consented.

**III.    CONCLUSION**

For the foregoing reasons, the Trustee respectfully requests that the Court deny the Motion.

Dated:  March 4, 2021                        NUTI HART LLP

By: */s/ Kevin W. Coleman*
    Kevin W. Coleman
    Attorneys for Kavita Gupta, Chapter 11 Trustee