STEVEN T. GUBNER – Nevada Bar No. 4624
JERROLD L. BREGMAN – *Pro Hac Vice* application pending, and granted in the related case of Desert Land, LLC
SUSAN K. SEFLIN – *Pro Hac Vice* granted in related case
BRUTZKUS GUBNER
300 S. 4th Street, Suite 1550
Las Vegas, NV 89101
Telephone: (702) 835-0800
Facsimile:   (866) 995-0215
Email:   sgubner@bg.law
         jbregman@bg.law
         sseflin@bg.law

Attorneys for Jeffrey I. Golden,
Chapter 11 Trustee of creditor Desert Land, LLC

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>DESERT OASIS APARTMENTS, LLC,<br><br>Debtor. | Case No.  BK-S-18-12456 GS<br>Chapter 11<br><br>**DESERT LAND, LLC'S OMNIBUS REPLY IN SUPPORT OF MOTION FOR AN ORDER ALLOWING ITS CLAIM AT $4.5 MILLION FOR PURPOSES OF PLAN CONFIRMATION, VOTING, AND ANY DISTRIBUTION RESERVE, PURSUANT TO RULE 3018(a)**<br><br>Hearing Date:  March 11, 2021<br>Hearing Time:  1:30 p.m. |

Jeffrey I. Golden ("Trustee Golden"), solely in his capacity as the duly appointed and serving chapter 11 trustee for the bankruptcy estate of Desert Land, LLC ("Desert Land"), whose case is pending in the above-captioned Court as Case No. BK-S-18-12454 GS (the "Desert Land Case"), hereby replies to responses received and further in support of his (the "Motion") for entry of an order allowing Desert Land's claim (the "DL Claim") against Desert Land's related debtor entity Desert Oasis Apartments, LLC (the "Debtor" or "Apartments") for purposes of plan confirmation, voting, and any distribution reserve established in this case, as a general unsecured claim, not subject to subordination, setoff or recoupment, in the amount of $4.5 million.[1]

---

[1] Except as otherwise stated, all defined terms herein have the meanings ascribed to them in the Motion.

1

Two responses to the Motion were filed, namely, <u>first</u>, the *Trustee's Response to Desert Land, LLC's Motion For An Order Allowing Its Claim For Purposes of Plan Confirmation ETC. Pursuant to Rule 3018(a)*, filed by Trustee Gupta on February 25, 2021 [ECF No. 264] (the "Gupta Response"), and <u>second</u>, the *Busbin Response to Motion For An Order Allowing Claim At $4.5 Million For Purposes of Plan Confirmation, Voting, And Any Distribution Reserve, Pursuant To Rule 3018(a)*, filed on behalf of the Gonzales Trust on February 25, 2021 [ECF No. 267] (the "Gonzales Trust Response" and, together with the Gupta Reponses, the "Responses").

**INTRODUCTION**

The Motion was brought for the purpose of avoiding any doubt but that the DL Claim should be allowed for all purposes of voting **on equal footing in every respect** with other presumptively allowed general unsecured claims in the Debtor's case. This Motion was brought to establish this premise to support Desert Land's argument that there is no basis for the DL Claim to be separately classified from other general unsecured claims, which has the effect of depriving Desert Land of the impact of its vote.

    A.    **Gupta Response Does Not Controvert Merits of the Motion**

The Gupta Response should be overruled because it fails to controvert the merits of the Motion; the Gupta Response argues the merits of the Motion are so self-evident as to obviate the need for the Motion in the first place. *See* Gupta Response at p. 2:4-9 ("The 3810 Motion is utterly unnecessary …. There is no dispute that Desert Land's chapter 11 trustee … is entitled to vote on the Plan.") Furthermore, even while the Gupta Response purports to nominally oppose the Motion (arguing that it "should be denied"), the sole bases therefor is the argument that the relief sought by the Motion is not required and that "there is no dispute before the Court." *Id*. at p. 2:12-15. The Gupta Response does not even attempt to controvert the Motion's argument that the DL Claim is not subject to subordination, setoff or recoupment for purposes of voting on Apartments' plan.

    B.    **Gonzales Trust's Response Fails To Support Its Conclusions And Implicitly Admits Its Lack of Entitlement to Priority**

Perhaps the most striking unsupported assertion in the Gonzales Trust Response is its contention in support of Trustee Gupta's "mistake" theory (*i.e.*, that the origin of the DL Claim indicates a mistake was made), namely, the bald contention that proceeds of a loan made to Desert Land, used to pay Apartments'

2

1  creditor, would not be a debt to Desert Land "as a matter of law." Gonzales Trust Reply at p .6:28. This
2  baseless conclusion should be rejected for its failure to provide any authority whatsoever in support
3  thereof, and also because the conclusion defies common sense: If "D" obtains a loan and uses a portion of
4  the loan proceeds to pay "A's" debt, it is axiomatic that "A" is indebted to "D." Nevertheless, even if the
5  contention had merit (which it does not), it does not overcome the fact that the DL Claim was allowed and
6  paid under Apartments' 2011 Plan which was confirmed by the 2011 Confirmation Order and therefore is
7  not subject to collateral attack (discussed below).

8       Notwithstanding its assertion that the DL Claim should be disregarded because it arises from a
9  "fraud or mistake," the Gonzales Trust Response fails to provide any evidence of fraud, nor does it
10 provide any evidence of mistake (as discussed above). The one case on which the Gonzales Trust
11 Response relies in this regard, *Coker Equip. v. Great W. Capital Corp.*, 110 Nev. 1266 (1994) (*see*
12 Gonzales Trust Response at p. 8:8-9) is inapposite. That case simply acknowledges that sometimes
13 mistakes do occur (reversing the grant of summary judgment brought to enforce an amount owing under a
14 lease modification). That case did not address the finality of an account stated claim that is paid under a
15 bankruptcy plan rejecting a collateral attack based on facts that existed before the plan was confirmed.
16 *See* Motion at pp. 14-15, citing, among other authority, *In re Kelly*, 199 B.R. 698, 702-03 (9th Cir. BAP
17 1996) ("A confirmed chapter 11 plan 'operates to preclude the assertion of actions which arose out of the
18 prepetition relationship of the parties, the facts of which were fully known by the debtor.' For that reason,
19 a confirmed chapter 11 plan is a 'final judgment' for purposes of *res judicata*.") (citations omitted).

20      The Gonzales Trust's argument as to why *res judicata* does not apply to bar parties from
21 contesting the DL Claim. The Gonzales Trust Response cites to no reservation of right under Apartments'
22 2011 Plan for Tom Gonzales to have the right to contest claims that are allowed and paid under the 2011
23 Plan. The Gonzales Trust Response makes no serious attempt to distinguish or otherwise explain why any
24 of necessary elements of *res judicata* do not apply. The Gonzales Trust Response does not even address
25 the pertinent question had hand, namely, the fact Trustee Gupta on behalf of Apartments is barred from
26 contesting the *bona fides* of the DL Claim. *See* Motion at pp. 14-15.

27      The specific authority the Gonzales Trust Response does recite undermines the argument it makes,
28 because that authority establishes that the reservation for Tom Gonzales under the 2011 Plan relates only

2601014

to the claim then held by Tom Gonzales.  See Gonzales Trust Response at p. 9, quoting stipulation incorporated into the 2011 Confirmation Order ("Any findings or holdings … in this Case **as it pertains to Mr. Gonzales' rights** are not final judgments ….") (emphasis added).

More substantively, the Gonzales Trust Response does not deny that the Gonzales Trust Claim did not obtain any priority over the DL Claim as a result of the 2011 Plan.  Indeed, the Gonzales Trust Response makes the point that the claim held in 2011 by Tom Gonzales was not impacted whatsoever by the 2011 Plan.  Thus, the Gonzales Trust Response supports, rather than controverts, a main point of the Motion which is that the 2011 Plan did not impact, enhance or otherwise change the claim that was then held by Tom Gonzales.  Consequently, even if that claim continued to exist (which it does not), it did not obtain any priority rights as a consequence of the 2011 Plan.  See Motion at p. 15:13-24.

Nor does the Gonzales Trust Response dispute that the Gonzales Trust Claim did not exist in 2011.  The claim in favor of Tom Gonzales in 2011 was a right to the "Parcel A Transfer Fee."  That claim (a claim is merely a right to payment, per Section 101(5)), subsequently became worthless, which prompted the litigation that ended with the judgment in 2018.  The Gonzales Trust now holds a new claim arising from the 2018 judgment for breach of contrac.  The Gonzales Trust not only admitted this critical fact but relied upon it in filing the involuntary petition that led to the commencement of the Chapter 11 cases of the Debtor and certain of its affiliates.  [ECF No. 1, the "Involuntary Petition".]  In the Involuntary Petition, the Gonzales Trust recites that its "claim" is based on a "Judgment" (*id*. at p. 3 of ), it recites that "the Claim" was transferred to the Gonzales Trust (*id*. at p. 5 of 6), and then includes a copy of the assignment of the "Judgment" to the Gonzales Trust (*id*. at p. 6 of 6), all of which is signed and certified by Bradley Busbin as Trustee of the Gonzales Trust to be "true and correct" (*id*. at p. 3 of 6).

The Gonzales Trust Response thus implicitly admits that the claim that existed in 2011 was superseded and is different from the Gonzales Trust Claim, which admission is evident from the Gonzales Trust Response's admission that the claim held by Mr. Gonzales in 2011 had only in 2020 ripened into an entitlement to payment– more than two years after the Gonzales Trust filed the Involuntary Petition.  See Gonzales Trust Response at p. 10:22-26 (the claim in 2011 was a right to be paid upon the sale of "Parcel A [which] had not been sold" as of 2011, and instead, "[i]n June of 2020, this Court authorized the sale of Parcel A.")  Moreover, the claim from 2011 was a right to be paid $10 million, whereas the Gonzales

4

Claim arising from the 2018 judgment is stated in the amount of $13,177,708.33. That is the claim the Gonzales Trust here asserts and which it relied upon in filing the Involuntary Petition. *See* 11 U.S.C. § 303(b)(1) (specifying that a petitioning creditor must be relying on a "claim … [in the amount of] at least $10,000 more than the value of any lien on property of the debtor securing such claim[] …."). [2]

These facts proven by the Gonzales Trust itself demonstrate that the Gonzales Claim did not exist in 2011. This dispositively proves that the Gonzales Claim could not have, and did not, obtain under the 2011 Plan any right to priority relative to the DL Claim.

**CONCLUSION**

For the foregoing reasons, Trustee Golden respectfully requests that the Responses be overruled on the merits, the Motion be granted, and that the Court grant Desert Land any other and further relief that the Court deems is proper.

Respectfully submitted.

DATED: March 4, 2021

**BRUTZKUS GUBNER**

By: _____
Jerrold L. Bregman (*pro hac vice* application pending, and granted in the related case of Desert Land, LLC)
Attorneys for Jeffrey I. Golden, Chapter 11 Trustee for creditor Desert Land, LLC

---

[2] By the Involuntary Petition, the Gonzales Trust also thereby asserted as a matter of fact and law (Section 303 of the Bankruptcy Code) that its claim is undersecured if not entirely unsecured.

5

2601014