FENNEMORE CRAIG, P.C.
Cathy L. Reece *(*AZ Bar No. 005932*)*
Anthony W. Austin (NV Bar No. 010850)
2394 E. Camelback Rd., Ste. 600
Phoenix, AZ 85016-3429
Telephone: (602) 916-5343
Facsimile: (602) 916-5543
Email: creece@fclaw.com
aaustin@fclaw.com

*Attorneys for The Northern Trust Company*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| In re<br><br>DESERT OASIS APARTMENTS, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No.: BK-S-18-12456-GS<br><br>Hearing Date: March 11, 2021<br>Hearing Time: 1:30 p.m. |
|---|---|

**THE NORTHERN TRUST COMPANY'S REPLY IN SUPPORT OF MOTION TO ALLOW VOTE ON CHAPTER 11 TRUSTEE KAVITA GUPTA'S JOINT PLAN OF LIQUIDATION**

The Northern Trust Company ("Northern Trust"), the secured lender of Desert Oasis Apartments LLC, hereby submits this Reply in support of its *Motion to Allow Vote on Chapter 11 Trustee Kavita Gupta's Joint Plan of Liquidation* [DE 271] (the "Motion") and responds to those limited objections raised in the Trustee's objection to the Motion (the "Objection"). For the reasons set forth in the Motion and herein, Northern Trust's claim is impaired and therefore is entitled to vote to on the Plan.

The Objection does nothing to address the myriad of issues raised in the Motion that establish the Plan impairs Northern Trust's claim. Rather, the Objection merely parrots the Trustee's positions in the Plan. The Trustee cannot simply state that Northern Trust is unimpaired and expect this Court to ignore the multitude of ways the Plan actively impairs Northern Trust's legal, equitable, and contractual rights.

The Trustee does not dispute that impairment is a broad term and that any impairment of legal, equitable, and contractual rights constitutes an impairment of a

claim. As noted in the Motion, the Ninth Circuit defines impairment very broadly and includes "any alteration of the rights ... even if the value of the rights is enhanced." *In re L & J Anaheim Assocs.*, 995 F.2d 940, 942 (9th Cir.1993); *In re Val-Mid Associates, L.L.C.*, 2013 WL 139278, at *2 (Bankr. D. Ariz. 2013). Further, the Trustee does not dispute that "claims are presumed to be impaired (and thus generally entitled to vote on the plan) unless one of the conditions in 11 U.S.C. § 1124 are met." *In re Seasons Apartments, Ltd. P'ship*, 215 B.R. 953, 958 (Bankr. W.D. La. 1997).

The Trustee's only reference to Section 1124 in the Objection is to double down on her claims that the Plan itself does not impact Northern Trust's claims but rather any alterations of Northern Trust's rights are done by provisions of the Bankruptcy Code. However, as noted in the Motion and again herein, the Plan unquestionably alters Northern Trust's legal, equitable, and contractual rights and, therefore, impairs Northern Trust's claim.

A. Northern Trust's Collateral is Substantially Reduced by the Terms of the Plan.

The Trustee does not dispute that Northern Trust holds the only security interest in the cash proceeds held by the Trustee. Further, no party disputes that Northern Trust holds an allowed secured claim in this bankruptcy and the sales proceeds constitute its collateral until its claim is paid in full. Also, it is undisputed that Northern Trust did not consent or agree to any surcharge of its collateral. However, the Plan proposes to use Northern Trust's collateral, without consent, to pay administrative expenses, the Disbursing Agent, and other claims while creating a small reserve for the payment of attorneys' fees.

Within a relatively short time and well before the Adversary and the appeal is resolved, the Plan will effectively pay every dollar (which at this point is $9.2 million) out of the estate to either the Gonzales Trust, administrative claimants, or other creditors. Accordingly, the Trustee's statements that Northern Trust's claims will be paid in full "from all assets of the DOA estate" are hollow and inaccurate.

Per the Plan's terms, the only remaining cash in the estate after the adjudication of the DL Class 5 claim and payment of the administrative claims and the Gonzales Trust will be the Disbursing Agent reserve of approximately $130,000 and the proposed $75,000 reserve for Northern Trust's attorneys' fees. If, after such Plan payments or disbursements, Northern Trust is entitled to receive more than $75,000 then there will be no more sale proceeds or any assets. Northern Trust's right to attorneys' fees will have been impaired and its claim will have been capped by the available remaining sale proceeds.

The Plan itself strips off and limits Northern Trust's security interest in the sale proceeds to the inadequate $75,000. Where would Northern Trust (which is currently a fully secured creditor) go in that instance to get the secured claim paid? Would it be able to seek disgorgement from administrative claimants or creditors? The Plan is silent on this issue. Accordingly, Northern Trust is impaired.

B. The Plan Imposes a Procedure for Review of Attorneys' Fees.

Northern Trust does not dispute that its entitlement to attorneys' fees and costs in this matter as an oversecured creditor must be reviewed by the Court and may be limited by the terms of Section 506(b) which includes a reasonableness requirement. Clearly Northern Trust does not have to comply with the same fee application process and US Trustee guidelines as the estate's professionals. However, the Plan imposes terms that are not provided for under Section 506(b).

At the hearing on Northern Trust's initial *Motion for Order Directing Trustee to Disburse Proceeds to Northern Trust* [DE 1368] (the "Disbursement Motion"), the Court approved a process for review of Northern Trust's fees and costs that was logical, reasonable and limited the disclosure of attorney client information to the Gonzales Trust with whom Northern Trust was in active litigation. The Disbursement Motion was filed stating the amounts requested (but no invoices were attached) and Northern Trust sent redacted invoices by email to the Trustee counsel and Gonzales Trust counsel for the fees requested. The invoices were not filed and were not attached to any pleadings. The Court

instructed the parties not to file such invoices. Then Northern Trust sent unredacted invoices to the Judge by email. Again no invoices were filed. The parties then agreed upon a number and the Court approved the payment of the agreed upon attorneys' fees. If parties had not so agreed then the parties could have objected and let the Court decide but the invoices still were not to be attached to a pleading or filed. The Court indicated that he could make the decision without having the invoices filed and without Gonzales Trust seeing unredacted invoices.

Northern Trust has proposed the same process to the Trustee and to Gonzales Trust but they did not agree to it. Instead the Trustee in the Plan's provisions requires Northern Trust to disclose unredacted invoices in its request for payment and to serve them on an active adverse party. It requires the Disbursing Agent and the Gonzales Trust to approve payment. If they do not both agree, Northern Trust is required to file a motion seeking payment. This procedure is not required in the loan documents. Section 506(b) does not create such a requirement and the Trustee fails to cite to any provision or case that imposes such a dramatic disclosure of confidential information. Further, there is no Order from this Court or history in this case requiring that the Gonzales Trust be given unredacted invoices as part of the review process. Accordingly, the Plan impairs Northern Trust's claims in this matter.

C. The Plan Improperly Attempts to Create an Equitable Remedy and Impose a Limitation of Northern Trust's Rights.

The Trustee walks a fine line between stating the Plan does not provide for any relief to the Gonzales Trust if a Reversal Event occurs but in the same breath then states that the Plan must provide for treatment of claims if a Reversal Event occurs. Unfortunately, the Plan cannot maintain the balancing act and impairs Northern Trust's claims. By attempting to plan for a "what if" scenario if this Court's judgment is reversed on appeal, the Plan improperly tries to create an equitable remedy to the Gonzales Trust after the reversal. If a Reversal Event occurs, it is up to this Court and/or the appellate court to fashion what relief the Gonzales Trust is ultimately entitled to receive.

Requiring that Northern Trust will comply with any such order and disgorge any funds is an attempt to impair its rights and claims, is totally inappropriate, and denies the appeal rights and remedies that Northern Trust would have in that situation. The Plan also goes the next step and attempts to assign claims/rights to the Gonzales Trust, requires disgorgement of "*any funds*" received on Northern Trust's claim (not just sale proceeds), and fails to require recipients of Northern Trust's collateral to return those sale proceeds after a Reversal Event.

If Northern Trust is required to disgorge all funds received, the Trustee fails to provide for any actual ability for Northern Trust to collect on its claim. It is inconceivable that Northern Trust, with an allowed secured claim and with a sale price of $15.6 million, would receive no proceeds or payment. However, that is the reality of the Trustee's Plan.

Under the Plan, no provision is made to retrieve any administrative expenses or other creditor claims that might have been paid. The Sale Order, which attaches Northern Trust's liens to the sale proceeds, was not appealed. The Order directing the Trustee to pay Northern Trust was also not appealed. Both are final orders which vested legal and equitable rights in Northern Trust. The Trustee's imposition of "what if" terms and requirements on Northern Trust and its failure to provide for any payment of the entirety of Northern Trust's collateral impairs its legal, equitable and contractual rights and claims.

D. Conclusion

The Trustee improperly classifies Northern Trust as an unimpaired creditor. As laid out in the Motion and this Reply, Northern Trust's claims have been impaired by the Plan and it should be allowed to vote on the Plan.

Dated: March 9, 2021

**FENNEMORE CRAIG, P.C.**

By: */s/ Anthony W Austin*
Cathy L. Reece (AZ Bar No. 005932)
Anthony W. Austin (010850)
*Counsel for The Northern Trust Company*

COPY of the foregoing served by

E-mail/ECF Notice this 9th day of March, 2021 upon:

Lenard E. Schwartzer
Schwartzer & McPherson Law Firm
bkfilings@s-mlaw.com
*Attorneys for Debtor*

Edmund M. McDonald
Edmund Gee
U.S Trustee's Office-LV-11,11
Edward.m.mcdonald@usdoj.gov
Edmund.gee@usdoj.gov

Jamie P. Dreher
Downey Brand LLP
jdreher@downeybrand.com
reno@downeybrand.com
*Attorneys for the Gonzales Trust*

Mark Wray
Law Office of Mark Wray
mwray@markwraylaw.com
tmoore@markwraylaw.com
Fischerlawcal@aol.com
*Attorneys for the Gonzales Trust*

Kevin W. Coleman
Kimberly S. Fineman
Christopher Hart
Nuti Hart, LLP
kcoleman@nutihart.com
kfineman@nutihart.com
chart@nutihart.com
*Attorneys for Kavita Gupta, Trustee*

Talitha B. Gray Kozlowski
GTG, LLP
tgray@gtg.legal
*Attorneys for Kavita Gupta, Trustee*

Jerrold L. Bregman
jbregman@bg.law
ecf@bg.law
*Attorneys for Trustee Jeffrey I. Golden*

*/s/ Gidget Kelsey*