1   KEVIN W. COLEMAN (SB 168538)
    CHRISTOPHER H. HART (SB 184117)
2   NUTI HART LLP
    411 30TH Street, Suite 408
3   Oakland, CA 94609-3311
    Telephone: 510-506-7152
4   Email: kcoleman@nutihart.com
            chart@nutihart.com
5
6   TALITHA GRAY KOZLOWSKI (NV SBN 9040)
    MARK M. WEISENMILLER, (NV SBN 12128)
7   GARMAN TURNER GORDON LLP
    7251 Amigo Street, Suite 210
8   Las Vegas, NV 89119
    Telephone: 725-777-3000
9   Email: tgray@gtg.legal
    Email: mweisenmiller@gtg.legal
10
11  Counsel for Kavita Gupta,
    Disbursing Agent, and Formerly Chapter 11 Trustee
12
13              **UNITED STATES BANKRUPTCY COURT**
14                    **DISTRICT OF NEVADA**

15  | In re: | Case No.: BK-S-18-12456 GS |
16  | DESERT OASIS APARTMENTS, LLC, | Chapter 11 |
17  | Debtor. | |

    Date:       September 16, 2021
18  Time:       9:30 a.m.
    Judge:      Hon. Gary Spraker
19

20  **COVER SHEET TO NUTI HART LLP'S SECOND AND FINAL APPLICATION FOR
    COMPENSATION AND EXPENSE REIMBURSEMENT**
21

22  Fee Application                          Second and Final Fee Application
    Applicant                                Nuti Hart LLP
23  Capacity                                 General Counsel to Chapter 11 trustee
                                             Kavita Gupta
24
    Debtor                                   Desert Oasis Apartments, LLC
25

26  Compensation Period                      August 1, 2020 to July 1, 2021
27
    Previous Fees Requested                  $542,656.43
28  Previous Costs Requested                 $  2,006.25
    Total Fees and Costs Previously Requested $544,662.68

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

NUTI HART LLP
411 30ᵀᴴ STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

| | |
|---|---|
| Compensation Period Fees Requested | $227,952.50 |
| Compensation Period Costs Requested | $   2,009.42 |
| Total Fees and Costs Requested | **$229,961.92** |
| Number of Hours | 434.8 |
| | |
| Blended Rate | $524.27 per hour |
| | |
| Summary of Fees by Professional | <u>See</u> **Exhibit 1** hereto |
| Summary of Fees by Task Code | <u>See</u> **Exhibit 2** hereto |
| Summary of Expenses by Type | <u>See</u> **Exhibit 3** hereto |
| | |
| Total Interim Fees and Costs Allowed to Date | $544,662.68 |
| Holdback from First Interim (Pending Allocation) | $201,737.26 |
| Compromised Amount of Allocated Fees | $100,868.63[1] |
| **Total Final Fees and Costs Sought** | **$673,755.97[2]** |
| | |
| Total Interim Fees/Costs Approved for Payment | $342,925.42 |
| | |
| **Total Requested Disbursement** | **$330,830.55[3]** |

---

[1]  NH has agreed with the only economically affected creditor, Brad Busbin, Trustee of the Gonzales Charitable Reminder Unitrust One ("Gonzales Trust"), that one-half of the amount held back from the First Interim Application pending a final determination of how Assemblage sale costs should be allocated between the estates may be charged to and paid by the estate of Desert Oasis Apartments LLC.

[2]  This sum consists of the following:

| | |
|---|---|
| Fees Allowed and Paid on an Interim Basis- | $340,919.17 |
| Costs Allowed and Paid on an Interim Basis- | $   2,006.25 |
| Compromised Amount of Allocated Fees- | $100,868.63 |
| Compensation Period Fees- | $227,952.50 |
| Compensation Period Costs- | $   2,009.42 |
| | -------------------------- |
| | **$673,755.97** |

[3]  This sum consists of the following:

| | |
|---|---|
| Compromised Amount of Allocated Fees- | $100,868.63 |
| Compensation Period Fees- | $227,952.50 |
| Compensation Period Costs- | $   2,009.42 |
| | -------------------------- |
| | **$330,830.55** |

1    KEVIN W. COLEMAN (SB 168538)
CHRISTOPHER H. HART (SB 184117)
2    NUTI HART LLP
411 30TH Street, Suite 408
3    Oakland, CA 94609-3311
Telephone: 510-506-7152
4    Email: kcoleman@nutihart.com
          chart@nutihart.com
5

6    TALITHA GRAY KOZLOWSKI (NV SBN 9040)
MARK M. WEISENMILLER, (NV SBN 12128)
7    GARMAN TURNER GORDON LLP
7251 Amigo Street, Suite 210
8    Las Vegas, NV 89119
Telephone: 725-777-3000
9    Email: tgray@gtg.legal

10    Counsel for Kavita Gupta,
Chapter 11 Trustee
11

12              **UNITED STATES BANKRUPTCY COURT**

13                   **DISTRICT OF NEVADA**

| | | |
|---|---|---|
| 14 In re: | | Case No.: BK-S-18-12456-GS |
| 15 DESERT OASIS APARTMENTS, LLC, | | Chapter 11 |
| 16         Debtor. | | |
| 17 | | Date:      September 16, 2021<br>Time:     9:30 a.m.<br>Judge:    Hon. Gary Spraker |

18

19        **NUTI HART LLP'S SECOND AND FINAL APPLICATION FOR**
         **COMPENSATION AND EXPENSE REIMBURSEMENT**

20         Nuti Hart LLP ("NH" or "Firm"), attorneys for Kavita Gupta ("Disbursing Agent"), post-

21 confirmation disbursing agent for the bankruptcy for the estate of Desert Oasis Apartments LLC

22 ("DOA" or "Debtor"), hereby seeks final allowance of $227,952.50 in fees and reimbursement of

23 $2,009.42 in expenses ("Application") incurred rendering services to Chapter 11 trustee Kavita

24 Gupta ("Trustee") during the period from August 1, 2020 through July 1, 2021 ("Compensation

25 Period"). NH also seeks an order: (1) making final the interim compensation and expense

26 reimbursement allowed to NH pursuant to this Court's October 27, 2020 order ("Interim Fee

27 Order") [ECF No. 184], and (2) approving an agreement between NH and Brad Busbin, Trustee

28

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

of the Gonzales Charitable Reminder Unitrust One ("Gonzales Trust"), authorizing the Disbursing Agent to distribute one-half of amounts held back in the Interim Fee Order.  If approved, NH will be allowed a total of $669,739.92 in fees and $4,015.67 in costs rendering services to the Trustee during the period March 28, 2019 through July 1, 2021.  Approval of this Application will also authorize and direct the Disbursing Agent to distribute an additional $330,830.55 to NH on account of fees and costs incurred during the period March 28, 2019 to July 1, 2021.  In support hereof, NH states as follows:

## I.    INTRODUCTION

During the Compensation Period, NH's efforts have been focused primarily on confirming the Joint Plan of Liquidation ("Plan"), resolving potential causes of action against insiders and the Debtor's counsel, objecting to claims, implementing certain terms of the purchase agreement for sale of the Debtor's apartment building and order approving the sale, and responding to a demand for documents and accusation of a conflict of interest asserted by Jeffrey I. Golden ("Trustee Golden"), former Chapter 11 trustee and currently interim Chapter 7 trustee for Desert Land, LLC ("DL").  At this juncture, the Debtor's property has been sold, The Northern Trust Company's ("Northern Trust") secured claim has been paid in full except for its residual claim for attorney's fees, the Plan has been confirmed, and Trustee Golden has agreed (subject to Court approval) to withdraw DL's $4.5 million claim in exchange for a payment from the Gonzales Trust.  The Gonzales Trust has received its initial $5 million distribution pursuant to the Plan, and is the estate's only unsecured non-priority creditor.

This Application has been prepared in accordance with the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330* adopted by the Executive Office for United States Trustees, as referenced by the *Region 17 United States Trustee Guidelines*, as well as in accordance with Bankruptcy Rule 2016 and Local Rule 2016.  The fees charged by NH in the Chapter 11 Case are billed in accordance with its existing procedures in effect during the Compensation Period.  NH has not charged a "premium" in excess of its normal hourly rates to provide services to the Trustee in the Chapter 11 Case. The hourly rates charged for the services rendered by NH are set forth in Exhibits A and B to the

NUTHART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

Coleman Decl., and summarized on **Exhibit 1**. There is no agreement or understanding between NH and any other person, other than members of the firm, for the sharing of compensation to be received for services rendered in this Chapter 11 Case. The DOA estate is current on all monthly operating reports due as of the filing of this Application. All fees under 28 U.S.C. §1930(a)(6) due as of the filing of this Application have been paid.

The Disbursing Agent is holding approximately $4,267,480.00 in cash as of the filing of this Application. Estimated Chapter 11 administrative claims through July 1, 2021, and an estimated reserve for The Northern Trust Company's remaining secured claim are as follows:

| | **Cash on Hand** |
|---|---|
| | $4,267,480.00 |
| **Admin. Claimant** | **Amount** |
| Kavita Gupta, Chapter 11 trustee | $556,433.34 |
| Nuti Hart LLP | $330,830.55 |
| Garmin Turner Gordon LLP | $10,085.91 |
| Grobstein Teeple LLP | $21,562.63 |
| Pachulski Stang Ziehl & Jones, LLP | (estimated) $205,000.00 |
| Ghandi Deeter Blackham | $17,035.56 |
| Schwartzer & McPherson[4] | $0.00 |
| Quarterly UST Fees | $156,000.00 |
| Trade Debts | 0.00 |
| Reserve for Northern Trust | (estimated) $250,000.00 |
| **Total** | $1,546,947.99 |

## II.    STANDARD FOR ALLOWANCE OF FEES

Section 330(a) of the Bankruptcy Code provides in pertinent part:

---

[4]    Pursuant to a Court-approved settlement, Schwartzer and McPherson has agreed to waive any claim for additional compensation in this case.

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

> (1)    After [notice and a hearing] . . . the court may award to a trustee . . . or professional person employed under section 327 or 1103 –
>
> > (A) reasonable compensation for actual, necessary services rendered by the trustee . . . attorney . . . ; and
> >
> > (B) reimbursement of actual, necessary expenses.

*See* 11 U.S.C. §330(a)(1).

The analysis of a fee request under Bankruptcy Code section 330 uses the 'lodestar' approach, under which the reasonable number of hours expended is multiplied by a reasonable hourly rate.  Unsecured Creditors' Committee v. Puget Sound Plywood, Inc., 924 F.2d 955, 960 (9th Cir. 1991).  The Court must therefore determine if the hours expended were reasonable.  Section 330(a)(3) provides certain guidelines for evaluating the reasonableness of requested compensation.  It provides in pertinent part:

> (3)    In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including:
>
> > (A)    the time spent on such services;
> >
> > (B)    the rates charged for such services;
> >
> > (C)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> >
> > (D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
> >
> > (E)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

*See* 11 U.S.C. §330(a)(3).

The Coleman Decl. establishes that NH actually incurred the fees and expenses set forth in Exhibit A.  The rates charged by NH ($425 to $575 per hour) are comparable to those charged by similar attorneys in Las Vegas.[5]  As discussed below, the amounts charged are reasonable in

---

[5]    For example, Sam A. Schwartz of Schwartz PLLC has been in practice since 1997, and as of 2018 charged $625.00 per hour for services as debtor's counsel in the *In re Lucky Dragon Hotel and Casino, LLC*, Case No. 18-10792-mkn [Dkt. 254-1, p. 2 of 16].  John Patrick Fritz of Levene Neal Bender Yoo & Brill, LLC served as committee counsel in the *Lucky Dragon* case, was admitted to practice in 2006, and charged $565.00 per hour
...Continued

light of the complexity of these cases and the issues they presented, the amount of debt involved, and the experience of the attorneys rendering services in this case.  (A description of these individuals' experience and qualifications are set forth in the accompanying declaration of Mr. Coleman.)

## III.    SUMMARY OF SERVICES RENDERED

### A.  Case Administration

#### 1.  General Administration

NH conferred with the Trustee, creditors of the estate, and other interested parties concerning the status of the case, as well as the timing of various hearings that occurred during the Compensation Period.  NH also provided information to the Trustee to facilitate completion of tax returns.  During the Compensation Period, NH expended 15.5 hours and incurred $8,657.50 in fees on these miscellaneous administrative tasks.

#### 2.  Desert Land Claim

As discussed in NH's First Interim Fee Application, an investigation by the Trustee, her Financial Advisors, and NH into the basis for a purported $4.5 million claim scheduled in favor of DL revealed that the claim was included in the schedules by mistake.  *See* NH First Interim Fee Application [ECF No. 146, at pp. 11-12 of 36].  Specifically, the Financial Advisors traced the origins of the purported claim to what the Debtor's internal accounting records indicated was a $5 million "loan" DL made to DOA in December 2000.  No documentation for this purported "loan" existed, and the Debtors' managers could not recall when or how the purported debt arose.

The Debtors' internal accounting records for the purported loan transaction referenced "DL escrow #684232" as the basis for the purported loan.  However, "DL escrow #684232"

in 2018 [Dkt. 544-1, p. 2 of 53].  Kevin W. Coleman was admitted to practice in 1993, served as law clerk to the Hon. Mitchel Goldberg (Bankr. C.D. Cal.) and R. Lynne Riddle (Bankr. C.D. Cal.), formerly served as Chair of the Creditors Rights, Bankruptcy, and Business Restructuring Practice Group at Schnader Harrison Segal & Lewis LLP, and has represented trustees, debtors-in-possession, financial institutions and parties to significant executory contracts in complex Chapter 11 in cases across the United States for over 25 years.  Mr. Coleman's rate is $575.00 per hour.

NUTH HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

actually was the escrow for a $41.5 million loan made by Tom Gonzales jointly and severally to **both** DL and DOA in December 2000, $5 million of which was used to pay off a then-existing mortgage on real property owned by DOA. Gina Shelton, the Debtors' accountant at the time who made the accounting entries indicating that DL had purportedly loaned $5 million to DOA, executed a declaration testifying that at the time she made the entries, she did not realize that the $41.5 million loan from Tom Gonzales was made to both DL and DOA. She further testified that she mistakenly believed that the loan had been made only to DL (who then used $5 million of the proceeds to pay off DOA' mortgage), and that had she known the actual structure of the Tom Gonzales loan transaction, she would not have recorded entries reflecting a loan from DL to DOA. Hence, the documentary record confirmed that DL never loaned DOA $5 million in December of 2000 – Tom Gonzales made that loan. As a result, the Debtors' intercompany account balance was overstated by $5 million at all times after December 2000, which meant that DOA did not in fact owe anything to DL when these cases commenced.

After sharing the foregoing information with David Gaffin (who had executed the original schedules) and his counsel, Mr. Gaffin agreed that a mistake had been made, and that DOA did not owe anything to DL. Mr. Gaffin, after all, had been DOA and DL's manager at the time Tom Gonzales made his loan, and he clearly knew that the money used to pay off DOA's mortgage came from Mr. Gonzales, not DL. Because he realized that DOA/DL's internal accounting records were in error, Mr. Gaffin voluntarily amended the schedules to eliminate DL's purported $4.5 million claim. At no time did Mr. Gaffin or his counsel articulate any other basis upon which DOA could be indebted to DL.

NH first disclosed the potential conflict related to DOA's purported debt to DL in a case status conference statement filed April 8, 2019 (i.e., within 10 days after being retained) [ECF No. 538, p. 8]. NH also disclosed the potential conflict in its employment application filed on April 15, 2019 [ECF No. 544, p. 5], and in a Supplemental Rule 2014(a) Disclosure filed August 12, 2019 [ECF No. 824].[6] The August 12, 2019 2014(a) disclosure explicitly stated:

---

[6]     On August 7, 2019, the Trustee and NH had a conference call with Edward McDonald, Tim Laffredi, and Nick Stozza with the Office of the United States Trustee ("UST") to

*...Continued*

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

"22.    After further consultation with the Financial Advisors and counsel, the Trustee is continuing to investigate the Inter-Company debt and anticipates that she will likely file applications for examinations under Federal Rule of Bankruptcy Procedure 2004 and/or issue subpoenas in the near future." *Id.*, at p. 7

On December 2, 2019, NH filed a further case status conference statement that *inter alia* addressed the status of the investigation of the potential intercompany claim, the fact that the claim appeared to be unsupported, that the investigation was ongoing, and indicated that further action may need to be taken after the sale process for the debtors' real properties concluded [ECF No. 1448, pp. 9-10].

The Shelton declaration was provided to Trustee Golden's counsel in June 2020.  Despite knowing that DL had not made a $5 million loan to DOA in December 2000 – again, the internal accounting records refer to the escrow for Tom Gonzales's $41.5 million loan to both DL and DOA – Trustee Golden filed a proof of claim on September 23, 2020 asserting *inter alia* that DOA owed DL $4.5 million.  The proof of claim implicitly acknowledged that DL never loaned DOA $5 million or gave any other consideration to DOA because he never asserts that as a basis for the claim.  The only justifications offered by Trustee Golden in the proof of claim were that the Debtor's financial records and tax returns constituted an account stated, and that a claim was created via the *res judicata* effect of an order confirming DOA's Chapter 11 plan in 2011.  The arguments Trustee Golden made in support of his claim, however, were frivolous, and resulted in the Trustee's special counsel serving Trustee Golden with a Rule 9011 "safe harbor" letter.[7]

explain the status of the investigation into the purported intercompany debt and the Trustee's contemplated actions with respect to that matter.

[7] Controlling Nevada Supreme Court authority holds that a claim for account stated cannot be maintained where the accounting resulted from a mistake (as is indisputably the case here).  Coker Equipment, Inc. v. Great Western Capital Corp., 885 P.2d 1321, 1323, 110 Nev. 1266, 1269 (Nev. 1994) ("An account stated is unenforceable if there was fraud or mistake in the stating of the account.").  Controlling Ninth Circuit authority holds that the *res judicata* effect of a Chapter 11 plan confirmation order does not bar a debtor from asserting rights against creditors where, as here, the plan contains a general reservation of rights to do so.  Davis v. Yageo Corp., 481 F.3d 661, 681-82 (9th Cir. 2007); In re Associated Vintage Group, Inc., 283 B.R. 549, 563-64 (9th Cir. BAP 2002).  No provision of the 2011 plan deemed the DL claim to be an allowed claim, or even mentioned the amount of that claim.

But for the Gonzales Trust's decision to settle with Trustee Golden out of a desire to avoid the expense of a claim objection and further delay its second distribution from the

*…Continued*

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

On October 1, 2020, Trustee Golden informed NH for the first time that he believed NH had a conflict of interest and acted improperly in facilitating the "de-scheduling" of the DL claim. Consequently, NH and the Trustee's other professionals filed a supplemental Rule 2014(a) disclosure on October 12, 2020 [ECF No. 175] to inform the Court and other interested parties of the allegation of a conflict of interest and respond to the substance of that allegation.[8]

DOA estate, the Trustee/Disbursing Agent would have objected to Trustee Golden's claim and sought sanctions against him and his counsel for asserting a frivolous claim.

[8] No conflict of interest existed. Inter-debtor claims are the rule, rather than the exception, in complex Chapter 11 cases such as the Desert Land cases, and the mere existence of inter-estate claims does not create a conflict of interest. In re BH&P, Inc., 949 F.2d 1300, 1312-13 (3d Cir.1991); In re Adelphia Communications Corp., 342 B.R. 122, 128 (S.D.N.Y. 2006) ("[T]he presence of intercompany claims between debtors represented by the same counsel does not automatically warrant the disqualification of that counsel."). For there to be a conflict of interest, one estate must: (1) possess or assert an economic interest that would tend to lessen the value of the other bankrupt estate, (2) be a rival claimant in an actual or potential dispute with the other estate; or (3) possess a predisposition under circumstances that render such a bias against the other estate. In re Tevis, 347 B.R. 679, 688 (9th Cir. BAP 2006). None of those circumstances are present here.

The DL estate did not hold a cognizable "interest" that conflicted with any interest of the DOA estate because the purported basis for the claim – a $5 million loan DL made to DOA in December 2000 – *never actually occurred*. We know from the internal accounting records that reference a specific escrow that Tom Gonzales indisputably made the loan Ms. Shelton erroneous booked as a loan from DL. Hence, the Trustee confronted a situation in April 2020 where it was undisputed that the funds used to pay off DOA's mortgage came from Tom Gonzales, not DL. In other words, the facts demonstrated that no claim existed *ab initio,* and that the internal accounting records and scheduled claim based upon those internal accounting records were simply in error. S explained in footnote 7, Trustee Golden's arguments for why a claim exists are frivolous, and frivolous claims cannot be the basis for finding a conflict of interest. Byrd v. Johnson, 467 B.R. 832, 850-51 (D. Md. 2012) (specious claims of little if any value to an estate are not a basis for a conflict of interest); *See also* Maxwell v. KPMG, LLP, 520 F.3d 713, 719 (7th Cir. 2008) (trustee subject to sanctions for filing frivolous claims); In re American Remanufacturers Inc., 453 B.R. 235, 240 (Bankr. D. Del. 2011)(same); Adelphia Communications, 342 B.R. at 129 (debtors do not have fiduciary duties to pursue inter-debtor claims "if it concludes that [such] action will not benefit the estate.")

But even if one assumes DL had some arguable non-frivolous claim against DOA, that claim was only an unsecured non-priority claim against the DOA estate. A claim by one estate against another has to *lessen the value* of the other bankrupt estate in order to create a conflict. Tevis, 347 B.R. at 688. An unsecured non-priority claim does not diminish the value of the DOA estate at all. In re M&P Collections, Inc., 599 B.R. 7, 13 (Bankr. W.D. Ky. 2019) (the analysis of inter-estate conflicts differs between liquidating Chapter 11 cases and reorganization cases because in reorganization cases, one debtor's interests arising from intercompany claims may compete against another as the case

*...Continued*

NUTH HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

In re Pilgrim Med. Ctr., Inc., 574 B.R. 523, 535 (Bankr. N.J. 2017) (counsel entitled to compensation for making the disclosures required by the Bankruptcy Code and Rules).

Trustee Golden also made a demand for all documents relating to the purported $4.5 million claim. NH produced the requested document to Trustee Golden on or about November 3, 2020.

NH expended a total of 31 hours and incurred $16,775.00 in fees addressing matters arising from Trustee Golden's assertion of the purported $4.5 million claim.

    *3. Motion to Dismiss Desert Land Case*

In August 2020, Desert Land Loan Acquisition, LLC ("DLLA") and related parties filed a motion to dismiss the DL case. The DOA estate had filed a proof of claim against DL based on what appeared to be approximately $610,000.00 in avoidable transfers DOA made to DL in the four years prior to bankruptcy. NH reviewed the motion, conferred with the Trustee on whether to take a position on that motion, and appeared at a series of hearings on that motion. NH expended a total of 10.6 hours and incurred $5,900.00 in fees related to the motion to dismiss the Desert Land case.

    *4. Analysis of Post-Sale Disposition of the Estate*

After the apartments were sold, NH assisted the Trustee in assessing whether creditors

---

progresses). So assuming DL had a claim, it did not conflict with any interests of the DOA estate, which is and has always been in liquidation mode.

Similarly, DL and DOA were not rival claimants during the period the Trustee served in both the DOA and DL cases. No one, including the Trustee, her Financial Advisors, the Debtor's managers, the managers' counsel, and the Debtor's former accountant, believed that a claim existed because everyone understood that Tom Gonzales made the loan used to pay off DOA's mortgage in December 2000, and that DL's purported $4.5 million claim was included in the original schedules by mistake. Trustee Golden only articulated his arguments in support of the claim after the Trustee had resigned from DL and NH no longer acted as counsel in the DL case.

In any event, NH repeatedly disclosed the existence of the potential intercompany claim, the potential grounds that may require an objection to the claim later in the case, and the fact that the purported claim was the subject of an on-going investigation. In the face of these disclosures, the Court authorized NH's employment in both DL and DOA. When as here adequate disclosure is made and an estate does not suffer actual harm, professionals who render services in reliance on an employment order are entitled to compensation. In re CIC Inv. Corp., 192 B.R. 549, 553-54 (9th Cir. BAP 1996); In re Guy Apple Masonry Contractor, Inc., 45 B.R. 160, 166-67 (Bankr. Ariz. 1984).

---

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

would be better served by proceeding with a liquidating plan versus converting the case to Chapter 7. The conclusion of the analysis was that conversion would actually cost more money than a consensual plan supported by the Gonzales Trust (due largely to additional trustee compensation and anticipated costs of litigating an avoidance claim against the Gonzales Trust). Hence, NH conferred with the Gonzales Trust and negotiated a plan support agreement that ultimately formed the basis of the Plan. NH expended a total of 26.3 hours and incurred $14,612.50 in fees assisting the Trustee in performing the cost/benefit analysis and negotiating the outlines of the Plan with the Gonzales Trust.

**B.  Asset Analysis and Recovery**

NH had investigated and filed five (5) adversary proceedings seeking recovery of debts owed by insiders to Desert Oasis Apartments. During the Compensation Period, NH negotiated a settlement of these actions, which the Court approved on November 2, 2020 [ECF No. 201]. NH also analyzed and conferred with the Trustee on a potential claim against DOA's former counsel. That potential claim was resolved by a settlement approved by this Court on May 21, 2021 [ECF No. 329]. NH expended 61.9 hours incurring $34,617.50 in fees rendering services relating to the investigation and recovery of other assets for the DOA estate.

**C.  Asset Disposition**

The purchase agreement related to sale of DOA's apartment building required various reconciliations and "true ups" for utility costs, rents, and tenant security deposits. NH assisted the Trustee in performing her obligations under the sale agreement, documenting an agreement with the purchaser, and filing a motion seeking approval for a final disposition of these issues, which the Court granted on March 15, 2021 [ECF No. 298]. NH also: (a) appeared at a hearing on the Trustee's motion seeking authorization to pay the break-up fee to the stalking-horse bidder on DOA's apartment building, and (b) advised the Trustee in connection with Northern Trust's claims for attorney's fees. NH expended a total of 46.0 hours and incurred $20,825.00 in fees for services relating to implementation of the apartments sale agreement, and other related matters arising from sale of the apartments.

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

**D. NH First Interim Fee Application**

NH expended 34.1 hours and incurred $13,345.00 in fees to prepare and appear at the hearing on its first interim fee application. (NH did not charge for any time billed responding to Northern Trust's objection.) As noted above, this Court allowed NH $542,656.43 in fees and $2,006.25 in costs on October 27, 2020 [ECF No. 184].

**E. Executory Contracts**

NH expended 5.6 hours and incurred $2,395.00 in fees in connection with a motion seeking to reject executory contracts not assumed by the purchaser of DOA's real property.

**F. Objections to Claims**

After sale of the apartments closed, it appeared very likely that a material distribution to unsecured creditors would occur. Consequently, NH reviewed several claims filed by trade creditors, which appeared to have been paid in the ordinary course of business. NH prepared objections to the trade claims, which the Court sustained on October 5, 2020 [ECF No. 168]. NH also reviewed and analyzed approximately $1.6 million in scheduled claims asserted by insiders- Citation Financial, LLC, Compass Investments Holdings, LLC, and Tivoli Motel, Inc. NH objected to the $1.6 million in insider claims, which were ultimately withdrawn as part of the settlement with insiders referenced above. NH expended a total of 42.1 hours and incurred $18,072.50 in fees for services concerning claims review and objections in the DOA estate.

**G. Plan and Disclosure Statement**

As noted, the Trustee and the Gonzales Trust entered into a plan support agreement that paved the way for confirmation of the Plan. Hence, NH drafted the plan and disclosure statement, as well as an application for conditional approval of the disclosure statement, which was granted on January 28, 2021 [ECF No. 244]. The Trustee served the Plan, Disclosure Statement, notice of hearing on plan confirmation, and ballots on January 28, 2021.

Although the Plan and Disclosure Statement expressly provided that Trustee Golden would be entitled to cast a ballot as a Class 5 creditor (even though his claim was disputed), Trustee Golden filed a motion seeking temporary allowance of his claim for voting purposes. NH expended a small amount of time reviewing the motion and conferring with the Trustee's

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

special counsel who took the laboring oar on the response.  Ultimately, the Court denied Trustee Golden's motion for temporary allowance as moot.

Trustee Golden, Northern Trust, and the Office of the United States Trustee objected to confirmation of the Plan.  Northern Trust also filed a motion on shortened time seeking leave to cast a ballot, contending that despite the explicit language of the Plan, its claim was impaired.  Brian Shapiro, Chapter 7 trustee for SkyVue Las Vegas LLC and the Debtor's former managers informally requested a minor modification in the treatment of Class 6 interests.

NH negotiated and documented resolutions of the issues raised by the UST, Trustee Shapiro, and the Debtor's managers.  NH filed a response to Trustee Golden and Northern Trust's objections and memorandum in support of confirmation of the Plan (and Northern Trust's motion for leave to cast a ballot) on March 4, 2021.

The Court's initial hearing on confirmation of the Plan was held on March 11, 2021.  At this hearing, the Court requested further briefing on whether the Plan was fair and equitable in its treatment of Northern Trust.  NH reviewed and analyzed Northern Trust's supplemental brief and reply, and prepared and filed a supplemental brief on this issue on April 16, 2021.

Over the course of hearings on March 11 and April 30, 2021, the Court determined to deny Trustee Golden's motion for leave to cast a ballot as moot.  Trustee Golden withdrew all of his objections to the Plan (although the extent to which all objections were withdrawn was not clear).  The Court overruled Northern Trust's motion for leave to cast a ballot and its objections to the Plan.  The Court then asked NH to prepare proposed findings of fact and conclusions of law, which were lodged with the Court along with a proposed confirmation order on May 17, 2021.  Northern Trust and Trustee Golden objected to the proposed findings/conclusions and confirmation order, and so NH prepared and filed a reply to their objections on May 24, 2021.  The Court entered its findings of fact and conclusions of law [ECF No. 336] and order confirming the Plan [ECF No. 338] on June 15, 2021.

NH expended 161.7 hours and incurred $92,752.50 in fees for services concerning confirmation of the Plan.

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

**IV.    AGREEMENT ALLOCATING FEES FOR ASSEMBLAGE SALE SERVICES**

NH incurred $423,225.00 in fees related to sale of the Assemblage, including disputes over how and when to conduct the auction.  In NH's first interim fee application, it sought to allocate approximately 80% of the Assemblage sale costs to the DOA estate because: (a) 95.2% of the economic benefit to unsecured creditors resulting from the sales efforts was realized by DOA's unsecured creditors, (b) all of DOA's creditors (including the Gonzales Trust and Northern Trust) actively supported the Trustee's efforts to sell the apartments as part of the Assemblage, and (c) NH was retained under one retention agreement for all three estates to pursue a common objective (sale of the Assemblage) and under Nevada law, clients would be considered jointly and severally liable for the entirety of the fees related to sale of the Assemblage.  *See* University of Nevada v. Tarkanian, 879 P.2d 1180, 1188, 110 Nev. 581, __ (Nev. 1994); Alutiiq Int'l Solutions, LLC v. OIC Marianas Ins. Corp., 149 F.Supp.3d 1208, 1219 (D. Nev. 2016); Gunderson v. D.R. Horton, Inc., 319 P.3d 606, 617 (Nev. 2014) *citing* Concord Boat Corp. v. Brunswick Corp., 309 F.3d 494, 497 (8th Cir. 2002); Radaker v. Scott, 855 P.2d 1037, 1041, 109 Nev. 653, 660 (Nev. 1993) (participants in joint venture are jointly and severally liable for liabilities incurred in furtherance of the joint enterprise); Molezzo Reporters v. Patt, 579 P.2d 1243, 1244, 94 Nev. 540, 542 (Nev. 1978) (attorney arranging for services of court reporter is jointly and severally liable with his client for the cost of the reporting services).

At the October 15, 2020 hearing on NH's first interim fee application, the Court allowed all requested fees and costs on an interim basis, but reserved the issue of the proper allocation of Assemblage sale costs until final fee applications were heard.  The Court authorized the Trustee to disburse to NH fees based on a one-third allocation of Assemblage sale costs to the DOA estate.  The total amount of Assemblage sale fees held back was $201,737.26.  At the hearing, the Court stated that while it thought an 80% allocation to the DOA estate was "too high" a 33% allocation was "too low."

NH and the Gonzales Trust have subsequently agreed that one-half of the amount held back can be paid to NH out of the assets of the DOA estate (i.e., a sum of $100,868.63).  With the addition of those funds, a total of 57.1% of Assemblage sale costs will be borne by the DOA

NUTI HART LLP
411 30ᵀᴴ STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

estate.  The Gonzales Trust is the only creditor impacted by fees paid to NH, and since it is consenting to the payment, NH would respectfully request that the Court approve that agreement and the additional payment to NH.  (If the Court declines to approve this Agreement, NH reserves the right to further brief the issue of how much of the Assemblage sale costs should be allocated to the DOA estate.)

## V.    EXPENSES INCURRED

NH incurred a total of $2,009.42 in expenses providing services to the Trustee in this case, summarized on Exhibit 3 to this Application.  The items for which expense reimbursement are being sought are not included in NH's overhead, and are not, therefore, a part of the hourly rates charged by NH.  Included in the charges are costs for an outside vendor to bates-stamp and electronically produce documents to Trustee Golden, outside vendor fees to conduct lien searches, PACER charges, postage, and copying.  NH charges $0.15 per page for scanning and photocopying, and all other costs at the actual cost, without any profit on such expenses.

NH submits that the expenses that it has incurred and paid in rendering legal services to the Trustee are reasonable and necessary under the circumstances of the Chapter 11 Case, and that the reimbursement to NH for such expenses is appropriate and should be allowed.  (Because of delays in processing certain CourtCall and other expenses, some expenses incurred prior to July 31, 2021 appear on NH's second fee application.)

## VI.    CONCLUSION

Wherefore, NH respectfully requests that this Court:

1.    Allow the Firm final compensation in the amount of $227,952.50 and reimbursement of $2,009.42 in expenses rendering services to the Trustee in the Desert Oasis Apartments case for the period August 1, 2020 through July 1, 2021;

2.    Allow on a final basis all of the fees and costs previously awarded to the Firm pursuant to this Court's October 27, 2020 order [ECF No. 184];

3.    Approve the agreement between NH and the Gonzales Trust authorizing the Disbursing Agent to distribute an additional $100,868.63 to NH on account of Assemblage sale services;

1        4.       Authorize the Trustee to disburse the total amount of $330,830.55 to NH for its

2 allowed fees and costs in this case; and

3        5.       Grant such other further relief that is just and proper

4 DATED: July 28, 2021              NUTI HART LLP

5

6                    By:   */s/ Kevin W. Coleman*

7                       Kevin W. Coleman
                      Attorneys for Kavita Gupta,

8                       Disbursing Agent, and Formerly Chapter 11
                      Trustee

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

# EXHIBIT 1

## SUMMARY OF FEES BY PROFESSIONAL

Compensation Period:                                  August 1, 2020 – July 1, 2021

Total Hours:                                               434.8

Total Due for Professional Services Rendered:    $227,952.50

Total Due for Costs Advance:                          $   2,009.42

**Total Current Fees and Costs:**                    **$229,961.92**

Blended Rate:                                            $524.27

_____

| DESERT OASIS APARTMENTS | | | | |
|---|---|---|---|---|
| **Professional** | **Grad. Year** | **Rate** | **Hours** | **Fees** |
| Kevin W. Coleman | 1993 | $575.00 | 296.7 | $164,565.00 |
| Christopher H. Hart | 1996 | $575.00 | 9.2 | $5,290.00 |
| Gregory C. Nuti | 1990 | $575.00 | 22.1 | $12,707.50 |
| Kimberly Fineman | 1996 | $425.00 | 106.8 | $45,390.00 |
| **TOTAL-DESERT OASIS APARTMENTS** | | | **434.8** | **$227,952.50** |

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

# EXHIBIT 2

### SUMMARY OF FEES BY TASK CODE

| DESERT OASIS APARTMENTS | | |
|---|---|---|
| CATEGORY | TOTAL HOURS BILLED | TOTAL FEES |
| A. Case Administration | | |
|    *-General Administration* | 15.1 | $8,657.50 |
|    *-Desert Land Claim* | 31.0 | $16,775.00 |
|    *-Motion to Dismiss Desert Land Case* | 10.6 | $5,900.00 |
|    *-Analysis of Post-Sale Administration of Estate* | 26.3 | $14,612.50 |
| | 84.3 | $45,945.00 |
| B. Asset Analysis and Recovery | 61.9 | $34,617.50 |
| C. Asset Disposition | 46.0 | $20,825.00 |
| D. NH First Interim Fee Application | 34.1 | $13,345.00 |
| E. Executory Contracts | 5.6 | $2,395.00 |
| F. Objections to Claims | 42.1 | $18,072.50 |
| G. Plan and Disclosure Statement | 161.7 | $92,752.50 |
| **Total:** | **434.8** | **$227,952.50** |

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

# EXHIBIT 3

## SUMMARY OF EXPENSES BY TYPE

|   | CATEGORY | TOTAL |
|---|---|---|
| A. | PACER | $108.80 |
| B. | Copying | $71.97 |
| C. | Postage | $50.65 |
| D. | Outside Vendor (Bates Stamping) | $1,325.00 |
| E. | Lien Search | 453.00 |
|   | **Total:** | **$2,009.42** |

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152