John D. Fiero (CA Bar No. 136557)
Gail S. Greenwood (CA Bar No. 169939)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA 94111-4500
Telephone: 415/263-7000
E-mail:  jfiero@pszjlaw.com
         ggreenwood@pszjlaw.com

Shara L. Larson (NV Bar No. 7786)
GHANDI DEETER BLACKHAM
725 S. 8th St., Suite 100
Las Vegas, Nevada 89101
Tel:  (702) 878-1115
Email: shara@ghandilaw.com

Special Litigation Counsel to
Kavita Gupta, Chapter 11 Trustee

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>**DESERT OASIS APARTMENTS, LLC,**<br><br>Debtor. | Case No.: bk-s-18-12456-gs<br><br>Chapter 11<br><br>**COVER SHEET FOR FIRST AND FINAL APPLICATION OF PACHULSKI STANG ZIEHL & JONES LLP AS SPECIAL COUNSEL TO KAVITA GUPTA, CHAPTER 11 TRUSTEE FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD OCTOBER 15, 2020 THROUGH JULY 1, 2021** |

| | |
|---|---|
| Applicant: | Pachulski Stang Ziehl & Jones LLP |
| Fee Application: | First and Final |
| Capacity: | Special Litigation Counsel to Kavita Gupta, Disbursing Agent under the Confirmed Plan for the Estate of Desert Oasis Apartments, LLC |
| Debtor: | Desert Oasis Apartments, LLC |
| Compensation Period: | October 15, 2020 – July 1, 2021 |
| Previous Fees Requested: | $0.00 |
| Previous Expenses Requested: | $0.00 |
| Total Fees and Expenses Previously Requested: | $0.00 |

DOCS_SF:105832.3 33085/001

| Applicant: | Pachulski Stang Ziehl & Jones LLP |
|---|---|
| First and Final Fees Requested | $211,680.00 |
| First and Final Expenses Requested: | $443.74 |
| Total Fees and Expenses Requested | • $212,123.74 |
| Number of Hours | 265.30 |
| Blended Rate (All Timekeepers) | $800.00[1] |
| | |
| Summary of Fees by Professional | *See* Exhibit A |
| Summary of Fees by Task Code | *See* Exhibit B |
| Summary of Expenses by Type | *See* Exhibit C |

---

[1] Pursuant to an agreement with the Chapter 11 Trustee, the Firm agreed to cap its hourly rate at $800.00 for attorneys working on the case.

DOCS_SF:105832.3 33085/001

2

John D. Fiero (CA Bar No. 136557)
Gail S. Greenwood (CA Bar No. 169939)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA  94111-4500
Telephone: 415/263-7000
E-mail:   jfiero@pszjlaw.com
              ggreenwood@pszjlaw.com

Shara L. Larson (NV Bar No. 7786)
GHANDI DEETER BLACKHAM
725 S. 8th St., Suite 100
Las Vegas, Nevada 89101
Tel:  (702) 878-1115
Email:  shara@ghandilaw.com

Special Litigation Counsel to
Kavita Gupta, Chapter 11 Trustee

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| In re:<br><br>**DESERT OASIS APARTMENTS, LLC,**<br><br>Debtor. | Case No.: bk-s-18-12456-gs<br><br>Chapter 11<br><br>**FIRST AND FINAL APPLICATION OF PACHULSKI STANG ZIEHL & JONES LLP AS SPECIAL COUNSEL TO KAVITA GUPTA, CHAPTER 11 TRUSTEE FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD OCTOBER 15, 2020 THROUGH JULY 1, 2021** |
|---|---|

Pachulski Stang Ziehl & Jones LLP ("PSZ&J" or the "Firm") hereby submits its *First and Final Application for Allowance and Payment of Compensation and Reimbursement of Expenses for the Period October 15, 2020 through July 1, 2021* (the "Application"), as special litigation counsel to Kavita Gupta, the duly appointed Chapter 11 trustee of Desert Oasis Apartments, LLC, the above-captioned debtor (the "Debtor"). This Application requests entry of an order allowing, on a final basis, compensation to the Firm for services rendered to the Trustee and expenses incurred during the period from October 15, 2020 through July 1, 2021 (the "Fee Period").

The Firm seeks approval of its fees incurred and reimbursement of expenses during the Fee Period totaling **$212,123.74** which sum represents compensation for legal services rendered in the

DOCS_SF:105832.3 33085/001

amount of **$211,680.00** and reimbursement for expenses incurred in the amount of **$443.74**. The Firm spent a total of 265.30 hours during the Fee Period. The Firm also agreed to cap its rates at no more than $800.00 per hour, or the actual fees incurred (whichever was less), which resulted in a *built-in discount amounting to $26,193.50* as the hourly rate charges would have been $237,873.50.

This Application is brought pursuant to 11 U.S.C. Sections 327, 329, 330, 331, and 503, Bankruptcy Rules 2002 and 2016, and the *Guidelines of the U.S. Department of Justice, Office of the United States Trustee, Northern and Eastern Districts of California and Nevada*, (the "Guidelines"), and is based upon the contents hereof, together with the exhibits, the declaration of John Fiero filed concurrently herewith, the pleadings, papers, and records on file in this case, and any evidence or argument that the Court may entertain at the time of the hearing on the Application.

# I.

## JURISDICTION AND VENUE

This Application is a "core proceeding" which the Court has jurisdiction to decide pursuant to 28 U.S.C. § 157(b)(2)(A).

Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

Pursuant to Local Rule 7014.2, PSZ&J consents to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the United States Constitution.

# II.

## BACKGROUND

The Firm was retained as special litigation counsel in October 2020 to investigate and object to a highly questionable proof of claim for $78 million (the "DL Claim") filed by the newly-appointed chapter 11 trustee of the Desert Land bankruptcy estate, Jeffrey Golden (the "Desert Land Trustee"). From the outset, that proof of claim was accompanied by equally dubious accusations of professional misconduct by PSZJ's client, Kavita Gupta, the Chapter 11 trustee for the above-captioned debtor (the "Trustee") based on a purported conflict of interest arising from the Trustee's investigation and discovery of an accounting error that resulted in a voluntary amendment of the schedules of both the Debtor and Desert Land.

As special litigation counsel, the Firm reviewed the estates' complicated history – a history that spanned the better part of two decades, including the details of the Debtor's prior bankruptcy in 2011. PSZJ then served a comprehensive motion based upon Fed. R. Bankr. P. 9011 upon counsel for the Desert Land Trustee, resulting in a substantial reduction of the DL Claim, and was prepared to file a detailed objection to the amended DL Claim absent an immediate settlement. Throughout its representation, PSZJ has consistently refuted the false statements and inapposite law that have been presented by the Desert Land Trustee as alleged bases for the DL Claim and his demands to compromise professional fees.

**A.     The Bankruptcy Proceeding.**

Prior to 2000, Tom Gonzales ("Gonzales")[2] loaned approximately $41.5 million to the Debtor and Desert Land secured by real property on the Las Vegas Strip across from the Mandalay Bay hotel and casino. In 2018, Gonzales obtained a judgment for approximately $13.1 million against the Debtor, Desert Land, and two other debtors (collectively referred to as the "Desert Entities").

On April 30, 2018, Gonzales filed involuntary petitions against each of the Desert Entities based on the recorded judgment. As of the petition date, the Debtor owned approximately six acres of real property with an apartment complex that generated modest income. Gonzales and Northern Trust Company (which was owed approximately $4.9 million) were the only entities holding secured claims against the Debtor. Northern Trust Company's secured first priority claim has been paid. However, the Debtor's estate has insufficient assets to fully satisfy the Gonzales claim.

Desert Land owned approximately 23 acres of real property, 16 of which was vacant land. The remaining property consisted of the Desert Oasis Motel — a three-building complex containing 100 motel apartments and two commercial buildings upon which secured creditors were owed more than $200 million. Gonzales was the only creditor with claims against all of the Desert Entities, and he is the only overlapping creditor between the Debtor and Desert Land.

---

[2] Gonzales assigned the judgment to Bradley J. Busbin, trustee. For simplicity, this Application refers to Mr. Gonzales.

DOCS_SF:105832.3 33085/001                    3

**B.     Substantive Consolidation of the Desert Entities Was Considered and Denied.**

Almost immediately following the petition date and prior to the filing of any schedules, the Desert Entities filed motions for substantive consolidation and for conversion of the cases to chapter 11 (collectively referred to as a single motion).  The substantive consolidation motion recited basic facts regarding the estates' varied creditors and ownership and summarily argued that "as a practical matter, pooling of the sales proceeds of all available parcels . . . will most likely result in full payment of all unsecured creditors as well as maximization of distributions to equity." DL Docket Nos. 27-28.

The substantive consolidation motion was opposed by Gonzales, Juniper Loan Servicing Inc., and the "Shotgun Creek Entities" on grounds, among others, that it was premature and failed to meet the Ninth Circuit standards for substantive consolidation.  Judge Babero heard the matter on June 26, 2018, but made no findings of fact or conclusions on the record.  Following arguments and at the request of the Desert Entities' counsel, the Court denied substantive consolidation without prejudice.  Undoubtedly no evidence supports substantive consolidation and no further efforts were made to substantively consolidate the Desert Entities.

**C.     Trustee Gupta Is Appointed and Discovers the Mistaken Intercompany Claim.**

In July 2018, Gonzales filed a motion to appoint a chapter 11 trustee for the Desert Entities' cases. Months later, on March 11, 2019, after several days of evidentiary hearings during which the Court heard testimony from the LLC managers of the Debtor and Desert Land (David Gaffin and Howard Bulloch), the Court granted the appointment of a chapter 11 trustee.  Ms. Gupta was appointed as chapter 11 trustee of the Debtor, Desert Land, and Desert Investments.

Immediately following her appointment for the three debtors, Ms. Gupta began investigating a scheduled $4.5 million claim in favor of Desert Land.  The investigation was undertaken in order to fulfill her duties as a chapter 11 trustee to (a) investigate claims against the estates and the debtors' financial affairs, (b) disclose as fully as possible the known facts and circumstances surrounding the intercompany claim, and (c) assess whether remedial action was warranted.  Based on analysis by her accountants and their communications with the principals of the Desert Entities, Ms. Gupta learned that the scheduled intercompany obligation was created by a journal entry at or

before the end of 2002 without any documentation. In June 2019, Ms. Gupta's counsel repeatedly sought confirmation from the Desert Entities' counsel that no further documentation existed or, if documentation existed, requested that such documents be provided.

In March 2020, Ms. Gupta and her professionals interviewed Gina Shelton of Swecker, Moloney & Moir CPA, a former accountant for the Desert Entities from 1996 through 2010. Ms. Shelton explained that her original journal entry in 2000 reflecting an amount owing from the Debtor to Desert Land was a mistake. Ms. Shelton then executed a declaration under penalty of perjury stating that she misunderstood the obligors on the Gonzales loan, of which approximately $5 million was used to pay off a mortgage debt owed by the Debtor to Heller Financial. Ms. Shelton further declared that, had she known that the Gonzales loan was an obligation of both the Debtor and Desert Land (and not just Desert Land as she believed at the time), she would not have made general ledger entries reflecting a liability owed by the Debtor to Desert Land based on the portion of loan proceeds used to pay off Heller Financial, and would instead have shown the liability as owing to Gonzales.

Based on the mistaken accounting entry (and the absence of any information supporting a genuine obligation by the Debtor to Desert Land), on April 23, 2020, David Gaffin voluntarily amended the bankruptcy schedules filed on behalf of the Debtor and Desert Land and thereby eliminated any scheduled debt of the Debtor in favor of Desert Land. Based on available documents, there was never any dispute that the Debtor and Desert Land were jointly liable for the Gonzales loan. In fact, in the absence of cash or operating income, Desert Land was never in a position to loan money to the Debtor.

**D.     Golden is Appointed Trustee of Desert Land and Files the DL Claim.**

In June 2020, based on Ms. Gupta's discovery and disclosure of fraudulent transfer claims held by the Debtor against Desert Land, Ms. Gupta resigned as chapter 11 trustee of Desert Land. Contrary to statements made by Desert Land, Ms. Gupta *did not* resign based on any alleged conflict associated with the DL Claim or amendment of the debtors' schedules. The Desert Land Trustee was subsequently appointed as the successor chapter 11 trustee of Desert Land. By the time the Desert Land Trustee was appointed, the property held by the Desert Land estate had been sold. The

remaining assets consisted of approximately $124,000 of unencumbered cash and potential litigation claims, which were subject to approximately $765,000 in administrative claims and over $89 million in general unsecured claims. Desert Land was, and is, administratively insolvent.

In September 2020, the Desert Land Trustee filed the DL Claim for "*at least $78,000,000*," citing "compelling evidence adduced to date" in support of substantive consolidation. In reality, no such evidence existed. Rather, all available evidence (including the testimony cited by Judge Babero) supported a contrary conclusion. In December 2020, following extensive legal and factual research by the Firm and lengthy written communications among counsel, the Desert Land Trustee amended the DL Claim to the new amount of "not less than $4,500,000" based on an alleged account stated.

The amended DL Claim for an "account stated" was equally without merit as a matter of fact and law. The Desert Land Trustee, on behalf of Desert Land, was fully aware of the Shelton Declaration, the amended schedules, and the fact that the original schedules were the product of a mistaken accounting entry. As a matter of law, an account stated cannot be maintained based upon a mistake regarding the balance of the account. *Coker Equip., Inc. v. Great Western Capital Corp.,* 885 P.2d 1321, 1323 (Nev. 1994) ("An account stated is unenforceable if there was fraud or mistake in the stating of the account.").

As an alternative theory, Desert Land argued that the Debtor's prior bankruptcy and reorganization plan operated as *res judicata* to establish a claim in favor of Desert Land. To wit, in an earlier bankruptcy in 2011, prior to discovery of the mistaken accounting entry, the Debtor scheduled a claim in favor of Desert Land for $5,468,103. As a factual matter, under the Debtor's 2011 Plan, insider claims – including those of Desert Land and others -- were subordinated to the claims of all other unsecured creditors, including Gonzales whose claim remains unsatisfied. In addition, the 2011 Plan confirmed the Debtor's reservation of rights to prosecute any claim objections at any time. The 2011 Plan did not "allow" or pay any portion of the mistaken claim scheduled in favor of Desert Land. The intercompany claim simply remained on the Debtor's books at that time and was never investigated. As a legal matter, the 2011 Plan confirmation order was not "controlling" and did not establish the existence of a valid claim. Cases cited by Desert

Land in support of the DL Claim were inapposite to such an extent that the legal contentions were "not warranted by existing law" or by any nonfrivolous argument for its extension or modification. Fed. R. Bankr. R. 9011(b)(2).[3]

### E. Golden Argues Professional Misconduct and Conflicts

By February 2021, creditors of Desert Land favored dismissal of the Desert Land bankruptcy, including withdrawal of the DL claim. Notwithstanding that Desert Land undisputedly was entitled to vote on the Debtor's proposed joint plan of liquidation – and did vote on the plan, Desert Land filed a document captioned, "*Motion for an Order Allowing Its Claim at $4.5 Million for Purposes of Plan Confirmation, Voting, and Any Distribution Reserve, Pursuant to Rule 3018(a); Reservation of Right to Conduct Discovery; Memorandum of Points and Authorities*" ("3018 Motion") [Docket Nos. 250-255].

Apart from arguing the alleged merits of the DL Claim, the 3018 Motion set forth baseless arguments that Ms. Gupta disregarded conflicts between the debtors' estates. *See* 3018 Motion [Docket No. 250] at pp. 8-11. PSZJ reviewed the facts and law to confirm the propriety of Ms. Gupta's actions and to resist efforts by Desert Land to leverage a settlement based on threats that Ms. Gupta allegedly breached her fiduciary duties to Desert Land by merely investigating an intercompany claim and fully disclosing the investigation to the Bankruptcy Court and creditors.

The Desert Land Trustee's position was contrary to Rule 2009, longstanding case law, and common practice that permits a trustee to represent multiple related debtors.[4] Ms. Gupta was statutorily obligated to investigate claims pursuant to Bankruptcy Code section 1106(a)(3)-(4) and upon discovery of the accounting error, the scheduled intercompany claims were voluntarily amended by David Gaffin in his capacity as co-manager of each of the Debtor and Desert Land

---

[3] The DL Claim dispute was recently settled for $425,000. This compromise amount represents approximately one-half of one percent of the originally stated DL Claim amount.

[4] *See, e.g.,* Fed. R. Bankr. P. 2009(c)( appointment of trustees for estates being jointly administered); *In re BH&P Inc.,* 949 F. 2d 1300, 1310-11 (3d Cir. 1991) ("A standard for removal based on section 101(14))(E), that automatically disqualifies a trustee from serving in jointly administered cases where there are interdebtor claims, is overbroad. While we recognize that cases involving multiple debtors served by a single trustee present special concerns requiring the trustee to balance competing interests with vigilance and guard against conflicts, we also recognize the reality that a single trustee is often able to maximize the return to jointly administered estates through increased economy and efficiency. Joint administration by a single trustee is commonplace in the scheme of bankruptcy administration and its positives often outweigh any negatives.").

with advice of his counsel. The conflict of interest argument was, and is, an effort to deflect from the merits of the DL Claim, and inappropriately pressure Ms. Gupta to disgorge fees despite the fact that she was disinterested, disclosed all facts, and her nominal fees (approximately $25,000) were approved by a final order.

### F.     Mediation and Settlement

On April 9, 2021, the Desert Land case was converted to chapter 7, with Mr. Golden appointed as the interim chapter 7 trustee. Ms. Gupta continued to dispute the DL Claim while the parties sought mediation to address a global settlement of numerous issues. On July 21, 2021, the Debtor and Desert Land participated in a mediation before Judge Paul Sala and reached a tentative settlement of, among other matters, the DL Claim. The settlement is still subject to documentation and execution by the parties.

### G.     Employment of PSZJ

On October 28, 2020, Ms. Gupta filed the *Application of the Chapter 11 Trustee for Order Approving Employment of Pachulski Stang Ziehl & Jones LLP as Special Litigation Counsel* [Docket No. 187] (the "Retention Application"). On December 8, 2020, the Trustee filed an amended Retention Application [Docket No. 223] (the "Amended Retention Application"). On December 22, 2020, the Court entered its *Order Granting First Amended Application of the Chapter 11 Trustee for Order Approving Employment of Pachulski Stang Ziehl & Jones LLP as Special Litigation Counsel* [Docket No. 229] (the "Retention Order").

## III.

## SERVICES RENDERED

As described above, the Firm was retained to investigate and prosecute proof of claim number 3-1, the DL Claim, against the Debtor in the original amount of "at least $78,000,000" based on an alleged account stated of approximately $4.5 million and all non-insider claims against Desert Land "based on substantive consolidation and alter ego causes of action." Because the Desert Land Trustee alleged that the Nuti Hart law firm had a conflict of interest due to its prior representation of the Debtor and Desert Land, the Firm also addressed issues regarding (a) dismissal of the Desert Land chapter 11 case and (b) those contested issues relating to plan confirmation (only to the extent

they were raised by the Desert Land Trustee). Finally, the Firm worked extensively with counsel for Gonzales to bring this matter to a negotiated conclusion.

In accordance with the Guidelines, PSZ&J classified all services performed for which compensation is sought into categories. PSZ&J attempted to place the services performed in the category that best relates to the service provided. However, because certain services affected multiple categories, services pertaining to one category may occasionally be included in another category. The fact that similar services appear in several different categories did not result in any duplication of work or billing.

PSZ&J has utilized the following billing categories during the Fee Period:

- Asset Analysis/ Recovery
- Bankruptcy Litigation
- Case Administration
- Claims Administration/ Objections
- Plan and Disclosure Statement
- Retention of Professionals

A summary chart of fees and hours incurred by category during the Fee Period is attached hereto as **Exhibit A**. **Exhibit D** includes the Firm's invoices for the Fee Period, which includes detailed breakdown of the time entries and expenses incurred.

A.  **Asset Analysis/ Recovery**

During the Fee Period, the Firm, among other things: (i) reviewed and analyzed the factual and legal underpinnings of Desert Land's claim and discussed strategies for potential prosecution; (ii) reviewed and analyzed various pleadings regarding purported factual history and timelines; (iii) prepared a chronological analysis; (iv) performed research regarding substantive consolidation and alto ego issues; and (v) prepared memoranda regarding the DL Claim analysis findings.

**Total Hours 84.10/Total Fees $67,280.00**

B.  **Bankruptcy Litigation**

During the Fee Period, the Firm, among other things: (i) reviewed and analyzed various pleadings filed in the case; (ii) performed research and prepared a Rule 11 motion for sanctions; (iii) reviewed and analyzed the response to Rule 11 motion and prepared a response thereto; (iv) prepared motions for 2004 exam at the Trustee's request; (v) prepared a detailed joinder to Desert Land Loan

Acquisition, LLC's motion to dismiss Desert Land's bankruptcy case and attended the hearing thereon; (vi) addressed conflict issues; (vii) communicated with counsel regarding a proposed settlement offer; (viii) reviewed, analyzed and provided comments to the Debtor's disclosure statement; (ix) reviewed and analyzed Desert Land's 3018 Motion, performed research in connection therewith, and prepared a response thereto; (x) reviewed and analyzed an objection to fees regarding alleged conflicts; (xi) engaged in settlement discussions; (xii) prepared for and participated in the case conversion hearing; (xiii) conferred with counsel regarding strategy going forward post-case conversion; (xiv) addressed potential mediation with opposing counsel; (xv) addressed mediation scheduling issues; and (xvi) conferred with counsel regarding mediation strategy and settlement options.

**Total Hours 127.40/Total Fees $101,360.00**

**C.     Case Administration**

This category relates to work regarding administration of these cases. During the Fee Period, the Firm, among other things: (i) prepared notices of appearance; (ii) conferred with the Trustee and estate professionals regarding case issues and status; (iii) addressed case scheduling issues.

**Total Hours 5.40/Total Fees $4,320.00**

**D.     Claims Administration/ Objections**

During the Fee Period, the Firm, among other things, (i) reviewed and analyzed documents in connection with the Desert Land dismissal motion; (ii) conferred with counsel regarding a going forward strategy; (iii) performed research in order to consider the implications of a potential appeal; (iv) communicated with many counsel regarding various proposed settlement offers and terms; and (v) performed research and prepared an objection to the DL Claim.[5]

**Total Hours 27.80/Total Fees $22,240.00**

**E.     Plan and Disclosure Statement**

During the Fee Period, the Firm, among other things: (i) reviewed and analyzed the Debtor's plan and disclosure statement; (ii) reviewed and considered the Desert Land Trustee's motion to

---

[5] Admittedly, some or all of this time could have been included in the Bankruptcy Litigation category, and vice versa. Such is the nature of time billing codes.

1  allow claims for voting purposes; and (iii) prepared for and attended several plan and disclosure statement hearings.

**Total Hours 8.50/Total Fees $6,800.00**

**F.     Retention of Professionals**

Time billed to this category relates to the retention of the Firm. During the Fee Period, the Firm (i) prepared its retention application and supporting declaration; (ii) prepared an amended retention application and supporting declaration; and (iii) prepared for and attended the hearing thereon.

**Total Hours 12.10/Total Fees $9,680.00**

**G.     List of Expenses by Category**

PSZ&J advanced costs, including certain in-house charges in connection with the performance of the services described in this Application. During the Fee Period, PSZ&J incurred a total of $443.74 in expenses. As this modest amount reflects, PSZ&J made every effort to keep the costs in this case to a minimum. A summary chart detailing the type and amount of expenses incurred during the Fee Period is attached hereto as **Exhibit C**.

PSZ&J customarily charges $0.20 per page for photocopying expenses, as well as $0.10 per page for scanning and copying expenses. PSZ&J's photocopying machines automatically record the number of copies made when the person that is doing the copying enters the client's account number into a device attached to the photocopier. PSZ&J summarizes each client's photocopying charges on a daily basis. Whenever feasible, PSZ&J sends large copying projects to an outside copy service that charges a reduced rate for photocopying.

Regarding providers of on-line legal research, PSZ&J charges the standard usage rates these providers charge for computerized legal research. PSZ&J bills its clients the actual amount charged by such services, with no premium. Any volume discount received by PSZ&J is passed on to the client. PSZ&J does not charge for local or long distance calls placed by attorneys from their offices. PSZ&J only bills its clients for the actual costs charged to PSZ&J by teleconferencing services in the event that a multiple party teleconference is initiated through PSZ&J.

**H.   Hourly Rates**

The hourly rates of all professionals and paraprofessionals rendering services in this case are set forth on the Billing Summary Chart on **Exhibit B** annexed hereto. Pursuant to an agreement with the Trustee, PSZ&J agreed to cap its hourly rates for attorneys at $800.00 per hour, resulting in a savings to the estate of $26,193.50.

## IV.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

Section 331 provides that a professional employed under Section 327 may apply to the Court "not more than 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under Section 330 of this title." 11 U.S.C. §331. As sixteen months have passed since PSZ&J was employed by the Trustee, this Application is proper at this time. The Court may allow and direct disbursement of the requested compensation and reimbursements following notice and a hearing.

Section 330 provides that a court may award a professional employed pursuant to Section 327 "reasonable compensation for actual and necessary services rendered . . . and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). Section 330(a)(3) elaborates that "[i]n determining the amount of reasonable compensation to be awarded to [a] . . . professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including" each of the following:

(A)   the time spent on such services;

(B)   the rates charged for such services;

(C)   whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D)   whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E)   with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

|     |     |
| --- | --- |
| (F) | whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title. |

11 U.S.C. § 330(a)(3).

"A customary review of a fee application under § 330 starts with a determination of the 'lodestar,' by multiplying a reasonable number of hours expended by a reasonable hourly rate." *Unsecured Creditors' Committee v. Puget Sound Plywood, Inc.*, 924 F.2d 955, 960 (9th Cir. 1991); *In re Yermakov*, 718 F.2d 1465, 1471 (9th Cir. 1983). In addition, a bankruptcy court examines the circumstances and manner in which services are performed and results achieved to determine a reasonable fee. *See Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co.* (*In re Mednet*), 251 B.R. 103, 108 (B.A.P. 9th Cir. 2000). Such examination includes a review of the following factors:

|     |     |
| --- | --- |
| (a) | Were the services authorized? |
| (b) | Were the services necessary or beneficial to the administration of the estate at the time they were rendered? |
| (c) | Are the services adequately documented? |
| (d) | Are the fees required reasonable, taking into consideration the factors set forth in section 330(a)(3)? |
| (e) | In making the determination, the court must consider whether the professional exercised reasonable billing judgment. |

*Id.; see also Leichty v. Neary* (*In re Strand*), 375 F.3d 854, 860 (9th Cir. 2004).

The fees and expenses requested by this Application are an appropriate award for the Firm's services in acting as Special Counsel for the Trustee. The Firm believes that the services rendered for which compensation is sought in this Application have been beneficial to the estate, that the costs incurred have been necessary and proper, and that the sums requested for the services rendered and the costs incurred are fair and reasonable.

WHEREFORE, PSZ&J respectfully requests that this Court (a) authorize final allowance of fees and costs, (b) award final compensation to the Firm in the amount of **$212,123.74** inclusive of all fees and costs for the period from October 15, 2020 through July 1, 2021, consisting of **$211,680.00** of fees and **$443.74** of expenses, and (c) grant such other and further relief as may be appropriate under the circumstances.

| | |
|---|---|
| Dated: July 30, 2021 | PACHULSKI STANG ZIEHL & JONES LLP |
| | */s/ John D. Fiero* |
| | John D. Fiero |
| | Gail S. Greenwood |
| | 150 California Street, 15th Floor |
| | San Francisco, CA  94111-4500 |
| | |
| | -and- |
| | GHANDI DEETER BLACKHAM |
| | Shara L. Larson |
| | 725 S. 8th St., Suite 100 |
| | Las Vegas, Nevada 89101 |
| | |
| | Special Litigation Counsel to |
| | Kavita Gupta, Chapter 11 Trustee |

DOCS_SF:105832.3 33085/001                    14