# EXHIBIT D

1  Kevin W. Coleman (CA SBN 168538)
   Christopher H. Hart (CA SBN 184117)
2  NUTI HART LLP
   411 30TH Street, Suite 408
3  Oakland, CA 94609-3311
   Telephone: 510-506-7152
4  Email: kcoleman@nutihart.com
          chart@nutihart.com
5
6  Talitha Gray Kozlowski (NV SBN 9040)
   GARMAN TURNER GORDON LLP
7  7251 Amigo Street, Suite 210
   Las Vegas, NV 89119
8  Telephone: 725-777-3000
   Email: tgray@gtg.legal
9
   Counsel for Kavita Gupta,
10 Chapter 11 Trustee

11              **UNITED STATES BANKRUPTCY COURT**

12                    **DISTRICT OF NEVADA**

13 In re:                                Case No.: BK-S-18-12456-GS

14 DESERT OASIS APARTMENTS, LLC,         Chapter 11

15            Debtor.                    **SUPPLEMENTAL RULE 2014(a)**
                                         **DISCLOSURES BY CHAPTER 11**
16                                       **TRUSTEE KAVITA GUPTA, NUTI HART**
                                         **LLP, GARMIN TURNER GORDAN LLP,**
17                                       **AND GROBSTEIN TEEPLE LLP**

18
19                                       Date: **[no hearing required unless requested]**
                                         Time:
20                                       Judge: Hon. Gary Spraker

21 **TO:    THE HONORABLE GARY SPRAKER, ALL CREDITORS AND PARTIES IN**
           **INTEREST AND THE OFFICE OF THE UNITED STATES TRUSTEE**
22
23         **PLEASE TAKE NOTICE THAT** pursuant to Federal Rule of Bankruptcy Procedure

24 2014(a), Kavita Gupta, the duly appointed and acting Chapter 11 trustee in the above captioned

25 cases (the "Trustee"), Nuti Hart LLP, Garman Turner Gordon LLP, and Grobstein Teeple LLP

26 ("Financial Advisors") hereby supplement the disclosures made in their respective applications

27 for employment to state the following:

28

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

1

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

## I.    INTRODUCTION

On October 1, 2020, counsel to Jeffrey I. Golden, Chapter 11 trustee appointed in the case of Desert Land LLC ("Trustee Golden") communicated that Trustee Golden believes that Kavita Gupta, Chapter 11 trustee for the estates of Desert Oasis Apartments, LLC ("Desert Oasis Apartments") and Desert Oasis Investments, LLC, and former Chapter 11 trustee for Desert Land, LLC ("Desert Land"), Nuti Hart, LLP, Garman Turner Gordon, LLP, and Grobstein Teeple, LLP (collectively, the "Professionals") had a conflict of interest, and that during the period of time the conflict existed, the Trustee and the Professionals took actions that purportedly damaged the Desert Land estate.

The specific accusation was relayed in an email to Kevin W. Coleman, and states as follows:

> As you know, Jeff and our firm have a fiduciary duty to the estate and creditors. Given the facts before us, we are required to object to the fee application. Kavita's resignation confirmed an actual conflict existed, ***which conflict appears to have arisen prior to actions which harmed the Desert Land estate (i.e. de-scheduling of $4.5MM A/R, $1MM credit for DLLA, etc).*** [emphasis added]

A copy of the email is attached as **Exhibit 1**.

The accusations of Trustee Golden and his counsel against the Trustee and the Professionals lack any factual or legal basis. Trustee Golden and his counsel first accuse the Trustee and the Professionals of "descheduling" a $4.5 million dollar claim. This is entirely inaccurate. In actuality, David Gaffin, the manager of the Debtors, scheduled a $4.5 million claim for Desert Land in the Desert Oasis Apartments case. *See* Dkt. 96. The Trustee, in compliance with her statutory duty to investigate the assets and liabilities of each of the Debtors under Section 1106(a)(3),[1] conducted an investigation which revealed that Desert Oasis

---

[1] 11 U.S.C. 1106(a) provides:

(**a**) A trustee shall—

(**3**) except to the extent that the court orders otherwise, investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;

Apartments did not owe $4.5 million to Desert Land.  When Mr. Gaffin and his counsel were

advised of the facts of this investigation, including the sworn testimony of the Debtors' former

accountant, Mr. Gaffin, on behalf of Desert Land and Desert Oasis Apartments, **voluntarily**

amended the schedules to remove the claim because it was improperly scheduled.   Therefore,

Mr. Gaffin – not the Trustee – amended the schedules.  More importantly, the Trustee would

have violated her duties had she failed to investigate the claims, ignored the evidence

establishing that Desert Land did not hold a claim against Desert Oasis Apartments and/or

suppressed that evidence.  Therefore, Trustee Golden's claim that the Trustee and the

Professionals damaged the Desert Land estate by "descheduling" the $4.5 million claim is false.[2]

Second, Trustee Golden and his counsel accuse the Trustee and the Professionals of

damaging the Desert Land estate by entering into a court-approved settlement between Desert

Land with Desert Land Loan Acquisition, LLC, other insiders, and the Sher Group of creditors

which gave rise to the $1 million credit.  The settlement was negotiated at a two day court-

supervised mediation conducted under the auspices of the Hon. Christopher Jaime, United States

Bankruptcy Court Judge for the Eastern District of California.  The $1 million credit was one

provision of a complex agreement that resolved litigation that potentially could have saddled

Desert Land with an additional $70 million in debt, and so cannot be disaggregated from the

other terms or viewed in isolation.  This Court entered an order approving the settlement

expressly finding that it was in the best interest of the Debtor, the Desert Land estate and the

creditors.      Therefore, Trustee Golden's allegation that the court-approved settlement damaged

the Desert Land estate lacks merit.

Finally, if Trustee Golden and his counsel believed that the Trustee and the Professionals

had an actual conflict of interest which harmed the Desert Land estate, they could have and

should have filed an objection to the Professionals' fee applications so that the Trustee Golden's

accusations could be openly and properly resolved by the Bankruptcy Court.  **Neither Trustee**

---

[2] The accusation of Trustee Golden and his counsel is a red herring.  The relevant issue is why
Trustee Golden is attempting to revive the $4.5 million scheduled claim when Nuti Hart has
advised Trustee Golden and his counsel in June 2020 that the evidence clearly establishes that
the claim was scheduled in error.

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

**Golden nor his counsel did so**.  Instead, on September 4, 2020, Trustee Golden and his counsel asked the Trustee and Nuti Hart to participate in a "closed door" mediation in early October 2020 to settle an "undisclosed" claim that Desert Land purportedly held against Desert Oasis Apartments.  Trustee Golden's counsel advised Nuti Hart that they would only disclose the claim in the mediation when the mediation privilege applied.  The Trustee declined to participate in a mediation since she could not justify expending Desert Oasis Apartments' resources to mediate an "undisclosed" claim nor could she or Nuti Hart properly defend Desert Oasis Apartments against an "undisclosed" claim.   In other words, instead of raising the the purported conflict of the Trustee and the Professionals to the Bankruptcy Court, Trustee Golden and his counsel tried to orchestrate a quick settlement of an "undisclosed" claim with the very professionals that Trustee Golden and his counsel are making accusations against.

This supplemental Rule 2014 statement responds to Trustee Golden's baseless assertions concerning the alleged conflict of interest, and to the false assertion that any actions taken by the undersigned caused damage to the Desert Land estate.

**II.    SUMMARY**

    **A.    The Trustee, Nuti Hart LLP, Garman Turner Gordon LLP, and Grobstein Teeple LLP Timely Disclosed Potential Conflicts of Interest**

The Trustee fully disclosed the potential conflict arising from the purported $4.5 million claim and potential preference or other avoidance claims *inter alia* to the United States Trustee prior to confirmation of her appointment, to the Court in a case status conference statement filed April 8, 2019 [Dkt. 538], in employment applications [Dkt. 544], and in Supplemental Rule 2014(a) Disclosures filed August 12, 2019 [Dkt. 824].  Neither the Court, the Office of the United States Trustee, nor any interested party objected to the Trustee's continued tenure as trustee in all three cases based upon the potential conflict of interest.

There is no *per se* prohibition on a trustee serving in jointly administered estates where inter-debtor claims exist.  Fed. R. Bankr. Proc. 2009(d);  In re BH & P, Inc., 949 F.2d 1300, 1312-13 (3d Cir. 1991).  The propriety of a trustee's continued service has to be evaluated on a case-by-case basis, and a trustee is required to investigate and disclose the circumstances actual

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

and potential conflicts arising from the inter-debtor claims.  <u>Id.</u>  It was therefore entirely proper for the Trustee to investigate the basis for the purported $4.5 million claim as she had a statutory duty to investigate the claims and assets of each of the Debtors.

**B.    The $4.5 Million Intercompany Claim Never Existed and Therefore, It Did Not and Could Not Create an Actual Conflict**

The Debtors' managers stated to the Trustee that the purported $4.5 million intercompany claim appeared on the schedules because that amount was reflected as owing by Desert Oasis Apartments to Desert Land on the Debtors' general ledger and tax returns, but that they could not recall when or why the purported obligation arose.  The tax returns similarly were based on the general ledger.  Investigation revealed that the Debtors' former accountant made an erroneous $5 million entry on the Debtors' internal accounting records in 2001 based upon her misunderstanding of an escrow statement provide to her by David Gaffin.  That erroneous entry caused the intercompany account balance on the general ledger to overstate the amount owed by Desert Oasis Apartments to Desert Land by $5 million at all times after 2001.

The investigation also revealed that Desert Land never held a right to payment against Desert Oasis Apartments.  Desert Land did not incur debt on behalf of Desert Oasis Apartments, acquire assets for Desert Oasis Apartments, pay expenses of Desert Oasis Apartments, loan money to Desert Oasis Apartments, or give any other form of consideration to Desert Oasis Apartments in exchange for the purported $4.5 million debt.

The erroneous recording of the $5 million intercompany transaction in 2001 on the general ledger cannot and does not create a legally enforceable right to payment.   A general ledger entry serves as an internal record of an underlying transaction, and they are subject to change if there is a discovery of an error.  The entry itself cannot be the source for the obligation. Accounting Standards Codification Topic 250 (ASC 250) governs accounting changes and error corrections.  Discovery of a material error requires the entity to restate and re-issue its previously issued financial statements to reflect the correction of the error in those financial statements.

As more fully discussed below, the Debtors' original accountants agreed and provided a sworn statement that they would not have booked the transaction as originally presented if they

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

had been provided the relevant facts.  *See* **Exhibit 4.**  The amendment of the schedules conforms to ASC 250 and effectively re-issues the financial information, in their corrected form.

For a conflict of interest to exist, Desert Land would have had to hold a right to payment against Desert Oasis Apartments "independent" of what the general ledger entries stated.  But in reality, Desert Land *never had any right to payment* from Desert Oasis Apartments when the erroneous accounting entry was made in 2001, and it did not hold a right to payment when the bankruptcy petitions were filed.

The Trustee brought the facts concerning the erroneous accounting entry to the attention of the Debtors' managers, David Gaffin and Howard Bulloch, and their counsel in April 2020.  After reviewing those facts, including the sworn statement of Debtors' former accountants describing the error, and conferring with their counsel, Mr. Gaffin, voluntarily amended the schedules of Desert Land and Desert Oasis Apartments to eliminate the purported $4.5 million claim.  Notably, the Trustee did not amend the schedules.  Hence, Trustee Golden's assertion that the Trustee was responsible for "de-scheduling" the $4.5 million claim is false.  The decision to amend the schedules was made solely by David Gaffin and his counsel after recognizing that a mistake had been made, and as a result, that the schedules were in error.

No conflict of interest existed and all actions taken by the Trustee and her professionals with respect to the purported $4.5 million obligation scheduled as owing by Desert Oasis Apartments to Desert Land were entirely proper.  Because Desert Oasis Apartments had no legal obligation to pay $4.5 million to Desert Land, there necessarily cannot be a "conflict" of interest between Desert Land and Desert Oasis Apartments.

A trustee has, among other things, a statutory duty to investigate claims (11 U.S.C. § 704(a)(5)) and to investigate the acts, conduct, assets, and liabilities of a debtor (11 U.S.C. § 1106(a)(3).  Even if a debtor has filed schedules, a Chapter 11 trustee may be required to file appropriate amendments after a reasonable investigation and review.   U.S. Department of Justice, Executive Office for United States Trustee, Chapter 11 Trustee Handbook, page 20.  However, a trustee has a duty not to pursue meritless claims or litigation on behalf of an estate.  Maxwell v. KPMG, LLP, 520 F.3d 713, 719 (7th Cir. 2008) (inviting appellee to file motion for

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

sanctions against a trustee and counsel, stating "But frivolous suits are forbidden. So frivolousness must depend not on the net expected value of a suit in relation to the cost of suing, but on the probability of the suit's succeeding. If that probability is very low, the suit is frivolous; really that is all that most courts, including ours, mean by the word."); In re American Remanufacturers Inc., 453 B.R. 235, 240 (Bankr. D. Del. 2011) (sanctioning trustee and counsel under 28 U.S.C. § 1927 for pursuing litigation after it became clear that the claims were not viable). Consequently, the Trustee had a statutory duty to review the assets and liabilities of Desert Land and Desert Oasis Apartments. She would have violated her duties as trustee for both Desert Land and Desert Oasis Apartments had she ignored the incontrovertible evidence establishing that Desert Land did not hold a claim against Desert Oasis Apartments, suppressed that evidence, or continued to insist that Desert Land had a basis to assert the $4.5 million intercompany claim against Desert Land.

### C. The Court Approved DLLA/Sher Group Settlement and $1 Million Credit

The settlement between Desert Land with Desert Land Loan Acquisition, LLC, other insiders, and the Sher Group of creditors which gave rise to the $1 million credit was negotiated at a court-supervised mediation conducted under the auspices of the Hon. Christopher Jaime, United States Bankruptcy Court Judge for the Eastern District of California. The $1 million credit was one provision of a complex agreement that resolved litigation that potentially could have saddled Desert Land with an additional $70 million in debt, and so cannot be disaggregated from the other terms or viewed in isolation.

Counsel for creditors holding over 97% of the claims in the Desert Land case participated in the mediation and were involved in the negotiations leading to the settlement. The participating counsel were Brigid Higgins representing the Shotgun Entities, Mark Wray and John Fischer representing the Gonzales Trust, Michael Feder representing the Sher Group, and Candace Carlyon representing DLLA and the insiders. Consequently, substantially all of Desert Land's creditors – including unsecured creditors – were aware of and consented to all terms of the settlement agreement, including the $1 million credit.

7

The resulting settlement agreement was filed with the Court on February 14, 2020 [Dkts. 1006 & 1007], and the Court issued an order approving the compromise following a hearing on March 19, 2020 [Dkt. 1035] finding that the settlement agreement was, among other things, in the best interest of Desert Land, the Desert Land estate and the creditors of the estate.

### D. The Trustee Timely Resigned After a Potential Conflict Ripened Into an Actual Conflict

In early June 2020, the Financial Advisors completed their analysis of potential avoidance claims.[3]  This analysis confirmed that that Desert Oasis Apartments had transferred in excess of $610,000.00 to Desert Land in the four (4) years prior to bankruptcy.  The transfers did not appear to have been made in exchange for reasonably equivalent value or other consideration.[4]  In early June, the results of the auction of the Debtors' real property assets had also become known.  While the auction on the Apartments was robust, the sale price ultimately was not sufficient to pay all of Desert Oasis Apartments creditors in full, which meant that it would be necessary to pursue avoidance claims, one of which involved Desert Land.  It was at that point that the Trustee properly concluded that she had to resign from Desert Land and she immediately notified the Office of the United States Trustee in writing for the bases for her resignation.

Provided that there was disclosure of a potential conflict (which occurred here), it is appropriate for a single trustee to continue serving in jointly administered cases until the potential conflict ripens into an actual conflict. In re Petters Co., Inc., 401 B.R. 391, 413 (Bankr. D. Minn. 2009) (denying motion to appoint separate trustees in jointly administered cases with potential conflicts and stating "After the recovery and assemblage of the estates' due, the next phase of administration would begin.  At that point, a trustee's pursuit of claims cross-running between the estates, or the potential dilution of a realization via substantive consolidation, could

---

[3]     June 29, 2020 was the deadline for commencing avoidance actions under 11 U.S.C. §546.

[4]     The investigation into potentially avoidable transfers also revealed that Desert Oasis Investments transferred approximately $714,000 to Desert Land for no apparent consideration.

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

raise the prospect of disqualifying prejudice. *However, the issue could arise only then, and only then would it get focused.*" [emphasis added]) *aff'd* <u>Ritchie Special Credit Invs. Ltd. v. United States Tr.</u>, 620 F.3d 847, 856 (8th Cir. 2010) (noting that it may be appropriate to revisit whether to appoint separate trustees at such time as 'a cash bearing estate has been assembled and at a time the investigation' prove[s] that unripened conflicts have materialized).

Consequently, the Trustee was not required to resign until the conflict presented by the avoidance claims of Desert Oasis Apartments and Desert Oasis Investments against Desert Land ripened. That conflict did not ripen until such time as it was confirmed that the Desert Oasis Apartments creditors would not be paid in full, and it became necessary to exercise avoidance powers on behalf of that estate against Desert Land. At that point, the Trustee notified the Office of the United States Trustee and promptly tendered her resignation.

**E.    Reservation of Rights Concerning Trustee Golden's Conduct Waiving any Conflict**

Trustee Golden and his counsel were informed no later than late June 2020 of all of the facts recited above, including: the fact that the scheduled $4.5 million claim had no basis in reality and the reasons the Debtors voluntarily amended their schedules to eliminate that claim; the terms of the settlement with DLLA/Sher Group including the $1 million credit; and the fact that the Trustee resigned from the Desert Land case because she determined in early June 2020 that Desert Oasis Apartments would be required to pursue avoidance claims against Desert Land.

Despite Trustee Golden's knowledge and his assertion that the Trustee and her professionals had a conflict of interest and took inappropriate actions that harmed Desert Land, Trustee Golden asked Grobstein Teeple, LLP, the Trustee's Financial Advisors, to prepare monthly operating reports for Desert Land, LLC for the months of June, July, and August 2020 because Trustee Golden had not retained an accountant. Trustee Golden's request was surprising as his counsel's employment application expressly provides that its services include the preparation of the monthly operating reports *See* Dkt. 1325, at 5:13-16. Notwithstanding, Grobstein Teeple, LLP provided such services to Trustee Golden as a courtesy.

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

9

Neither Trustee Golden nor Grobstein Teeple LLP advised the Trustee that Grobstein Teeple was preparing Desert Land's monthly operating reports until Grobstein Teeple advised her of the same on September 18, 2020.  She was further advised that Grobstein Teeple LLP has not requested or received any payments for the services Trustee Golden requested.   The Trustee immediately notified her counsel Nuti Hart LLP and Grobstein Teeple was asked not to provide any additional services to Trustee Golden and/or the Desert Land estate.

Despite Trustee Golden's knowledge and his assertion of a conflict of interest, Trustee Golden's counsel left a voicemail on September 4, 2020 with the Trustee's counsel asking the Trustee for an extension of time to file claims against the Desert Oasis Apartments estate, and asking the Trustee and her counsel Nuti Hart LLP to participate in a mediation to discuss the merits of the claims the Desert Land estate believed it had against Desert Oasis Apartments.  The September 4, 2020 voicemail also alluded to certain "sensitivities" but did not disclose what those sensitivities were.

The Trustee's counsel responded on September 8, 2020 via email requesting clarification of the request, which stated in its entirety:

> Hi Jerry,
>
> I hope you had a nice Labor Day Weekend.
>
> I got your v/m, and if I understand it correctly, you want the Trustee to extend the period for the Desert Land estate to file a claim in Desert Oasis Apartments, and to pursue a mediation process after you share your analysis with us owing to "sensitivities" surrounding that claim. (In other words, you would prefer not to just file a proof of claim that we could review and decide whether it should be objected to.)
>
> In order to assist us in considering this request, can you tell me when you expect to complete your investigation/analysis?
>
> Can you also please explain what "sensitivities" would be associated with the Desert Land estate asserting a claim against the Desert Oasis Apartments estate?  If there is a legitimate basis for Desert Land to be allowed a claim in Desert Oasis Apartments, the facts and circumstances surrounding that claim are going to have to be disclosed either through the claims allowance process or a 9019 motion, so I don't understand how anything can be done confidentially.
>
> Best regards,
>
> --Kevin

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

10

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

PS: As I have previously stated, I do not see any basis for Desert Land to assert a claim against Desert Oasis Apartments. And even if one does exist, ██████

███████████████████████████████████████████

Trustee's Golden's counsel responded via email on September 9, 2020, which email stated in its entirety:

Hi Kevin,

Thanks for your note. Yes, we are asking for an extension of time from the September 23 current end of the tolling period (30 days to October 23?) for Trustee Golden to file claims in Trustee Gupta's other cases, and the opportunity for our respective clients to meet in the context of a mediation to discuss the claims.

While we anticipate completing our analysis of claims before the end of the tolling period as hopefully will be extended, **our intention is to defer getting into any of the substance of the claims until mediation, at which point the mediation privilege will apply. We think this confidential setting is far more conducive to frank and productive settlement discussions.**

Of course in the event a settlement reached then all required and appropriate disclosure would be made in connection with any approval.

We don't think this is a big ask in the sense that it may save costs and expedite a resolution while not adding any appreciable delay (in terms of timing context, our settlement conference with DLLA that the Court arranged is October 26). We are thinking we would have the mediation in person in California or by Zoom (as you and Trustee Gupta think best) in early or mid-October.

Please let us know if Trustee Gupta is amenable. Thanks for considering.

All the best,

- Jerry [Emphasis added.]

Copies of these emails are attached as **Exhibit 2**.

The Trustee declined Trustee Golden's request to extend the deadline to file claims or enter into a mediation. First, as their email advised, despite having already been provided with a 90-day extension in which to file claims, Trustee Golden and his counsel were not anticipating "completing their claims analysis" for yet another 30 days (i.e., October 23, 2020). Second, Trustee Golden and his professionals wanted a mediation prior to their completion of their claims analysis in early to mid-October. Third and most importantly, they were unwilling to disclose basic information about their alleged claims (i.e., nature, amount and supporting evidence) unless

11

"mediation privilege" applied.  For all of those reasons, there appear to be no justification to extend the deadline or expend Desert Apartments' resources to mediate a claim Trustee Golden and his professionals were not willing to file or openly discuss unless cloaked in mediation privilege.  In addition, it would be impossible for Nuti Hart and the Trustee to prepare for a mediation on a claim that would be disclosed in the mediation.

On September 23, 2020, Trustee Golden filed proofs of claim in the Desert Oasis Apartments and Desert Oasis Investments cases for amounts not less than $78 million based on alter ego, substantive consolidation, and the $4.5 intercompany claim.  Each of the proofs of claim also included the following language: "No Admission.  Nothing contained in this Proof of Claim shall be deemed an admission by the Trustee [Golden].  The Trustee [Golden] expressly reserves the right to withdraw this Proof of Claim in his sole discretion with the effect to be as if this Proof of Claim had never been filed."  Copies of these claims are attached as **Exhibits 3** and **4**.

As relevant here, the proof of claim filed against Desert Oasis Apartments attempts to revive the $4.5 million intercompany claim by arguing that regardless of the fact that no right to payment ever existed as an initial matter, the plan of reorganization confirmed in Desert Oasis Apartments' 2011 bankruptcy case allowed the Desert Land claim.

In order to avoid any controversy concerning whether Nuti Hart would be in violations of duties owed to a former client, Nuti Hart requested a formal waiver from Trustee Golden to allow Nuti Hart to prepare an objection to the $78 million claims.  Trustee Golden declined to grant the waiver.

On October 1, 2020, Trustee Golden filed his *Reservation of Rights with Respect to First Interim Fee Applications of: (1) Nuti Hart LLP; Garmen Turner Gordon LLP; and (3) Grobstein Teeple LLP* in the Desert Oasis Apartments case.  *See* Dkt. 165.  In this pleading, he fails to state any specific objections or concerns.  Rather, Trustee Golden states that he "hopes to work consensually with the Trustee and the Professionals to address and resolve those concerns prior to a final hearing on the Fee Application and therefore is not elaborating on them in this Reservation of Rights."  *See* Dkt. 165.

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

In view of Trustee Golden's position with respect to the asserted conflict of interest, Nuti Hart will not comment on the merits of the $78 million claims. The Trustee is in the process of retaining special counsel who will object to those claims.

Nevertheless, in view of Trustee Golden's conduct *inter alia* requesting Nuti Hart's involvement in a "closed door" mediation over the asserted claims and approval for any resulting settlement, the Trustee and her Professionals reserve all rights with respect to whether Trustee Golden' conduct constitutes a waiver of any conflict with respect to the $78 million claims.

## III.    FACTS

1.    On July 13, 2018, Desert Oasis Apartments, LLC filed its schedules of assets and liabilities [Dkt. 96]. Desert Land was listed in Desert Apartments' Schedule F as holding an unsecured claim in the amount of $4.5 million. *See* Dkt. 96, ECF p. 18 of 53.

2.    Desert Land also filed its schedules of assets and liabilities on July 13, 2018 [Dkt. 102]. No corresponding claim against Desert Apartments was listed as an asset in the Desert Land Schedule B. *See* Dkt. 102, ECF pp. 11-14 of 61.

3.    On August 28, 2018, Desert Land filed amended schedules, which state that there was $4,499,328.50 due from Desert Oasis Apartments, subject to offsets. *See* Dkt. 250, ECF p. 8 of 20.

4.    On April 2, 2019, the Court granted the Application by the United States Trustee to appoint Kavita Gupta (the "Trustee") as the Chapter 11 trustee of for each of Debtors' bankruptcy estates [Dkt. 528]. The Trustee subsequently obtained approval from the Court to retain Nuti Hart LLP as her general counsel, Garmin Turner Gordon LLP as her local counsel and real estate counsel, and Grobstein Teeple LLP as her financial advisors/accountants.

5.    On April 8, 2019, the Trustee filed her first Case Status Conference Statement. On page 8 of that statement, the Trustee disclosed the potential inter-estate claim, and explained:

> [T]he Trustee has sought additional information to determine if an inter-company obligation does exist that might require the Trustee to resign her position from one or more of the three cases in which she was appointed to serve. *See, generally* In re BH & P, Inc., 949 F.2d 1300, 1312-13 (3d Cir. 1991) (although there is no *per se* rule against it, a trustee may be precluded from serving as trustee in two related cases where intercompany claims exist). The Trustee will

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

supplement this disclosure (and if necessary, take remedial action) once the underlying facts are determined.

6.      The Financial Advisors proceeded to analyze the Debtors' tax returns and other financial records, and interviewed the Debtors' management, former accountants and other related parties to determine whether the schedules were in error, or whether there was in fact an inter-company obligation potentially creating an inter-estate conflict of interest.

7.      By mid-June 2019, the Financial Advisors had ascertained:

    a.  The potential intercompany obligation by Desert Apartments to Desert Land appeared to have been created by a journal entry in Quickbooks on December 31, 2002;

    b.  The journal entry was described as a year-end adjustment;

    c.  According to tax returns and Quickbooks records, Desert Apartments owed Desert Land $4,499,329.00 as of December 31, 2017 (the "Inter-Estate Claim");

    d.  Although requested, no contemporaneous supporting documentation was provided by the Debtors to the Financial Advisors to establish the basis for or validity of the purported Inter-Estate Claim;

    e.  Although requested, no accounting records or other documentation for periods prior to 2002 were provided to the Financial Advisors;

    f.  It was unclear whether the purported Inter-Estate Claim arose on December 31, 2002 or at an earlier date;

    g.  The Debtors' management did not recall the underlying reasons for why Desert Apartments is reflected as having a liability to Desert Land;

    h.  No subsequent written agreement between Desert Apartments and Desert Land (or other writing signed by Desert Apartments) can be located that memorializes the reasons the purported Inter-Estate Claim is reflected on the Debtors' books and records and tax returns.

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

14

i. Desert Land's general ledger reflects that the following transfers were made by Desert Apartments to Desert Land in prior years: (a) $87,000.00 in 2017, $177,000 in 2016, $218,000 in 2015, $185,442 in 2014, $210,000 in 2013, and $28,000 in 2012, however, the Financial Advisors were unable to match these apparent transfers on account of the Inter-Estate Claim to Desert Apartments' banking records (the "Potential Avoidance Claims").

8.  On June 18, 2019, the Trustee's counsel emailed counsel for the Debtors seeking management's confirmation that no further documentation or information regarding the origin of the purported Inter-Estate Claim was available, or alternatively, to provide any such information/documentation before June 21, 2019.

9.  The Debtors' counsel did not respond to the June 18 email, and so a follow-up email requesting a response was sent on June 27, 2019. That follow-up email further asked that if the Debtors' management could not confirm anything regarding the Trustee's June 18 inquiry, to advise where the Debtors had banking relationships at the relevant time.

10.  The Debtors' counsel did not respond to the June 18, 2019 email or follow-up inquiry prior to August 12, 2019.

11.  On August 12, 2019, the undersigned filed their first Supplemental Rule 2014(a) Disclosures ("First Supp. 2014 Statement") in order to inform the Court and interested parties concerning the status of what was known concerning the Inter-Estate Claim as of that time, explain the circumstances that could give rise to a conflict of interest, and discuss the relevant legal principles that apply when a trustee serves in jointly administered cases having inter-company claims. *See* Dkt. 824.

12.  The First Supp. 2014 Statement was served via ECF on all registered ECF participants appearing in this case, including the Office of the United States Trustee. *See* Dkt. 825.

13.  The First Supp. 2014 Statement further stated that:

"After further consultation with the Financial Advisors and counsel, the Trustee is continuing to investigate the Inter-Company debt and anticipates that

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

15

1   she will likely file applications for examinations under Federal Rule of

2   Bankruptcy Procedure 2004 and/or issue subpoenas in the near future." *See* Dkt.

3   824, p. 7.

4   14.    After disclosure of the potential conflict and stated intention to continue

5   investigation of the Inter-Company Claim on August 12, 2019, neither the Court, the Office of

6   the United States Trustee, nor any interested party raised concerns about the Trustee continuing

7   to serve in all three cases.

8   15.    After August 12, 2019, the Trustee and her professionals continued to investigate

9   whether Desert Land held an enforceable claim against Desert Oasis Apartments.  That

10   investigation included requesting additional information from the Debtors' managers, reviewing

11   bank records, and conducting an interview on March 13, 2020 with Gina Shelton of Swecker,

12   Moloney & Moir CPA's ("SMM"), the Debtors' former accountant to provided accounting and

13   tax services to the Debtors at the relevant time.

14   16.    From approximately 1996 through 2010, Ms. Shelton was the person at SMM

15   primarily responsible for inputting entries into the general ledgers maintained for Desert Land

16   and Desert Oasis Apartments and producing the other accounting documentation referenced

17   below.

18   17.    A working trial balance prepared for Desert Oasis Apartments by Ms. Shelton

19   reflected that as of December 31, 2000:

20   a.   A $5 million mortgage on the Apartments previously owed to Heller Financial

21   had been paid off during 2000; and

22   b.   The general ledger account tracking the amount of a note payable to Desert

23   Land by Desert Oasis Apartments had increased by $5,008,060.83.

24   18.    At the March 13 interview, Ms. Shelton stated that she believed that she would

25   have recorded the transactions referenced in paragraph 20 after reviewing an escrow statement.

26   That escrow statement was later located and provided to Ms. Shelton on March 20, 2020.

27   19.    On March 27, 2020, Ms. Shelton executed a declaration under penalty of perjury

28   in which she testified in pertinent part that:

NUTI HART LLP
411 30ᵀᴴ STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

16

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

a.  She entered the transactions referenced in paragraph 20 on the Debtors'
general ledger based on the escrow statement related to the loan made by Tom
Gonzales to Desert Land and Desert Oasis Apartments in December 2000;

b.  Because the escrow statement did not list Desert Oasis Apartments as a
borrower, it appeared to her to indicate that Desert Land was the only
borrower on the Gonzales loan;

c.  It further appeared to her that Desert Land had used approximately $5 million
of the Gonzales loan proceeds to pay off the Heller Financial Mortgage;

d.  Because it appeared to her at the time that Desert Land had loaned Desert
Oasis Apartments $5 million to pay off the Heller mortgage, the transaction
was reflected as an amount owed by Desert Oasis Apartments to Desert Land.

20.     Ms. Shelton further testifies in her declaration that:

"14.     Had I known when I made the general ledger entries referenced in
paragraphs 5 through 7[5] above that DOA had borrowed the $5,008,060.83 used to pay off
the Heller Financial mortgage from Tom Gonzales instead of DL, I would have reflected
that liability as owing to Tom Gonzales.  I would not have made a journal entry
indicating that DOA owed that amount to DL.

15.     Accordingly, the amount reflected on DOA and DL's general ledgers and
the December 31, 2000 working trial balance as being owed by DOA to DL on December
31, 2000 was overstated by $5,008,060.83."  A copy of Ms. Shelton's declaration (with
relevant excerpts of the exhibits) is attached as **Exhibit 5**.

21.     In short, Ms. Shelton's declaration established beyond any doubt that the journal
entries reflecting a $5 million liability from Desert Oasis Apartments to Desert Land was the

---

[5]     These transactions are the same as referenced in paragraph 20 of these Supplemental
Rule 2014(a) Disclosures.  DOA refers to Desert Oasis Apartments, and DL refers to
Desert Land.

product of a mistake, and that the entries were not based on any actual right to payment Desert

Land held against Desert Oasis Apartments.[6]

22.    The Shelton declaration and supporting documentation was provided to the

Debtors' former managers and their counsel, Candace Carlyon, and it was discussed in a follow-

up conference call with David Gaffin and Ms. Carlyon.

23.    After reviewing the Shelton declaration, Mr. Gaffin and his counsel agreed that

the $4.5 million Desert Land claim had no legal basis and had been scheduled in error.

Therefore, he filed amended schedules eliminating that purported claim on April 23, 2020.

24.    The Shelton declaration and supporting documentation was transmitted to counsel

for Trustee Golden on June 23, 2020.

## III.    NOTICE

25.    Notice of this supplemental Rule 2014(a) disclosure has been given to the Hon.

Gary Spraker, United States Bankruptcy Court Judge, all creditors and parties in interest, and the

Office of the United States Trustee.  The Trustee submits that no further notice need be given.

Dated: October 12, 2020

KAVITA GUPTA, CHAPTER 11 TRUSTEE FOR
DESERT OASIS APARTMENTS LLC, AND
DESERT OASIS INVESTMENTS LLC, AND
FORMER CHAPTER 11 TRUSTEE FOR THE
ESTATE OF DESERT LAND LLC,


*/s/ Kavita Gupta*_____
Kavita Gupta, Chapter 11 Trustee

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

---

[6]    The Gonzales loan was compromised through a settlement agreement incorporated into
Desert Land and Desert Oasis Apartments' joint plan of reorganization confirmed in
2003.  Desert Oasis Apartments, however remained liable on the full amount of the $10
million transfer fee which forms the basis for the Gonzales Trust's claim in this case.
Desert Land has paid nothing to the Gonzales Trust on account of its claim.  It is
anticipated that the Gonzales Trust will be paid in excess of $8 million in the Desert
Oasis Apartments case, and that as a result, the Desert Oasis Apartments estate will have
a claim for contribution against Desert Land.

1  Dated: October 12, 2020

2                                              NUTI HART LLP

3

4                                              By:  /s/ Kevin W. Coleman
                                                    Kevin W. Coleman
5                                                   Attorneys for Kavita Gupta, Chapter 11
                                                    Trustee
6  Dated: October 12, 2020

7                                              GARMAN TURNER GORDON LLP

8

9                                              By:  /s/ Talitha Gray Kozlowski
                                                    Talitha Gray Kozlowski
10                                                  Attorneys for Kavita Gupta, Chapter 11
                                                    Trustee
11
   Dated: October 12, 2020
12                                             GROBSTEIN TEEPLE LLP

13

14                                             By:  /s/ Howard Grobstein
                                                    Howard Grobstein
15                                                  Financial Advisors/Accountants for Kavita
                                                    Gupta, Chapter 11 Trustee
16

17

18

19

20

21

22

23

24

25

26

27

28

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

19

**EXHIBIT 1**

## Kevin Coleman

| | |
|---|---|
| **From:** | Susan K. Seflin <sseflin@bg.law> |
| **Sent:** | Thursday, October 1, 2020 11:15 AM |
| **To:** | Kevin Coleman |
| **Cc:** | Jerrold Bregman; Jason B. Komorsky |
| **Subject:** | RE: Desert Land - Request to Trustee Gupta's Professionals Re Final Fee Applications |

Hi Kevin – As you know, Jeff and our firm have a fiduciary duty to the estate and creditors. Given the facts before us, we are required to object to the fee application. Kavita's resignation confirmed an actual conflict existed, which conflict appears to have arisen prior to actions which harmed the Desert Land estate (i.e. de-scheduling of $4.5MM A/R, $1MM credit for DLLA, etc.)  Jeff would really like to complete his investigation and have a dialogue to better explain his position and to understand yours.  We are trying to work with you.

Are either of these options acceptable with Kavita:

1. Go forward as scheduled with the hearing but the professionals agree the Desert Land fee applications are interim (not final - like you got for Schwartzer when he filed a final fee app), and we will support interim payment of $140k for surcharge?

2. In the alternative, will you all agree to a 30 day continuance of the hearing and time for Jeff to respond?

If not, then we plan on filing a motion to continue with the Court seeking a continuance.   Given that the professionals are collectively seeking approval of over $1.6 million in fees and expenses, we think a request for a continuance is reasonable.

Best regards, Susie



**Susan K. Seflin**
Of Counsel

21650 Oxnard St., Suite 500
Woodland Hills, CA 91367

(818) 827-9000 Main
(818) 827-9210 Direct
(310) 429-8255 Cell
(818) 827-9053 Fax

www.bg.law

sseflin@bg.law

 Susan K. Seflin

The preceding e-mail message is subject to Brutzkus Gubner Rozansky Seror Weber LLP's
e-mail policies, which can be found at: https://www.bg.law/web-disclaimer

**From:** Kevin Coleman [mailto:kcoleman@nutihart.com]
**Sent:** Wednesday, September 30, 2020 5:11 PM
**To:** Susan K. Seflin <sseflin@bg.law>
**Cc:** Jerrold Bregman <jbregman@bg.law>; Jason B. Komorsky <jkomorsky@bg.law>
**Subject:** Re: Desert Land - Request to Trustee Gupta's Professionals Re Final Fee Applications


CAUTION: This email originated from an external source.

1

OK/I look forward to responding to your objections.

—Kevin

Sent from my iPhone


On Sep 30, 2020, at 4:58 PM, Susan K. Seflin <sseflin@bg.law> wrote:


Kevin –

That's not true – the Judge's request that we keep administrative hourly fees down does justify you agreeing to a continuance.  Often in bankruptcy cases circumstances change and it may not make sense to do an objection that one would otherwise have to do as an estate fiduciary.  For example, if the case converts and there is no money for chapter 11 administrative expenses, then the only funds available for Trustee Gupta's professionals would be the $140,000 and it would not make sense to object to fee applications.  Right now, you have forced us into a position of having to object to three separate fee applications before we even know if there will be funds for any distribution(s) and before we have finished our investigation of post bankruptcy transactions.  We are still investigating certain transactions that appear inappropriate right now but may turn out to have been reasonable courses of action.  Because you chose to file final fee applications and you refused to agree to a continuance or to have them be considered interim at this point in time, we have no choice but to object and to set forth all of the reasons for the objections.

Best regards, Susie





**Susan K. Seflin**
Of Counsel

21650 Oxnard St., Suite 500
Woodland Hills, CA 91367

www.bg.law

(818) 827-9000 Main
(818) 827-9210 Direct
(310) 429-8255 Cell
(818) 827-9053 Fax

sseflin@bg.law

Susan K. Seflin

The preceding e-mail message is subject to Brutzkus Gubner Rozansky Seror Weber LLP's
e-mail policies, which can be found at: https://www.bg.law/web-disclaimer

**From:** Kevin Coleman [mailto:kcoleman@nutihart.com]
**Sent:** Wednesday, September 30, 2020 4:21 PM
**To:** Susan K. Seflin <sseflin@bg.law>
**Cc:** Jerrold Bregman <jbregman@bg.law>; Jason B. Komorsky <jkomorsky@bg.law>
**Subject:** Re: Desert Land - Request to Trustee Gupta's Professionals Re Final Fee Applications


CAUTION: This email originated from an external source.

Susie,

If you are planning on objecting to my firm's fee application, the cost of that objection is not going to be less in the future than now, so your stated concern about minimizing administrative costs makes no sense and does not justify continuing the hearing.

If you want to do this cheaply, why don't you outline in an email what objections you have and/or mark up the bill indicating which services you object to?

I am happy to discuss a voluntary reduction if your objections have merit.

Best regards,

—Kevin


Sent from my iPhone


> On Sep 30, 2020, at 2:12 PM, Susan K. Seflin <sseflin@bg.law> wrote:

> Dear Kevin,

> This email confirms our telephone conversation today in which I asked if your firm and Trustee Gupta's other professionals (whose final fee applications also are pending) would agree to a continuance of the final fee applications filed in the Desert Land, LLC bankruptcy case, and on the spot you said that you would not agree to a continuance.  I also explained to you that due to the Court's repeated statements that we keep administrative hourly fees down, and because this estate currently does not have sufficient funds to pay professional fees at this time, a continuance would also be helpful to address the Court's concerns.  In addition, I told you that Trustee Golden would be willing to stipulate to the interim allowance and payment of the $140,000 currently reserved (from the Shotgun surcharge settlement) for Trustee Gupta's professionals  to be paid on an interim basis.  You again refused to agree to any continuance of the pending final fee applications.  You also refused my request that the applications on file be considered interim instead of final requests for compensation.

> This also confirms that in this same call I requested that you send me your time entries in excel format which would allow us to spend significantly less time preparing our objection, and you immediately refused that request as well.

> Best regards, Susie




21650 Oxnard St., Suite 500
Woodland Hills, CA 91367

www.bg.law

**Susan K. Seflin**
Of Counsel

(818) 827-9000 Main
(818) 827-9210 Direct
(310) 429-8255 Cell
(818) 827-9053 Fax

sseflin@bg.law

Susan K. Seflin

The preceding e-mail message is subject to Brutzkus Gubner Rozansky Seror Weber LLP's
e-mail policies, which can be found at: https://www.bg.law/web-disclaimer

T

**Kevin Coleman**

| | |
|---|---|
| **From:** | Kevin Coleman |
| **Sent:** | Tuesday, September 8, 2020 11:41 AM |
| **To:** | Jerrold Bregman |
| **Cc:** | Kavita Gupta; Kim Fineman |
| **Subject:** | Desert Land Cases *** Your V/M Friday |

Hi Jerry,

I hope you had a nice Labor Day Weekend.

I got your v/m, and if I understand it correctly, you want the Trustee to extend the period for the Desert Land estate to file a claim in Desert Oasis Apartments, and to pursue a mediation process after you share your analysis with us owing to "sensitivities" surrounding that claim. (In other words, you would prefer not to just file a proof of claim that we could review and decide whether it should be objected to.)

In order to assist us in considering this request, can you tell me when you expect to complete your investigation/analysis?

Can you also please explain what "sensitivities" would be associated with the Desert Land estate asserting a claim against the Desert Oasis Apartments estate? If there is a legitimate basis for Desert Land to be allowed a claim in Desert Oasis Apartments, the facts and circumstances surrounding that claim are going to have to be disclosed either through the claims allowance process or a 9019 motion, so I don't understand how anything can be done confidentially.

Best regards,

--Kevin

PS: As I have previously stated, I do not see any basis for Desert Land to assert a claim against Desert Oasis Apartments. And even if one does exist, ███████████████████████████████████████
███████████████████████████████████

Kevin W. Coleman
**Nuti Hart LLP**
411 30th Street, Suite 408
Oakland, CA 94609
Cell: 415 533-2920
Office: 510 506-7155
kcoleman@nutihart.com

1



## Kevin Coleman

| | |
|---|---|
| **From:** | Jerrold Bregman <jbregman@bg.law> |
| **Sent:** | Wednesday, September 9, 2020 8:51 PM |
| **To:** | Kevin Coleman |
| **Cc:** | Kim Fineman; Steven T. Gubner; Susan K. Seflin; Jason B. Komorsky |
| **Subject:** | Desert Land Cases *** Your V/M Friday |

Hi Kevin,

Thanks for your note.  Yes, we are asking for an extension of time from the September 23 current end of the tolling period (30 days to October 23?) for Trustee Golden to file claims in Trustee Gupta's other cases, and the opportunity for our respective clients to meet in the context of a mediation to discuss the claims.

While we anticipate completing our analysis of claims before the end of the tolling period as hopefully will be extended, our intention is to defer getting into any of the substance of the claims until mediation, at which point the mediation privilege will apply.  We think this confidential setting is far more conducive to frank and productive settlement discussions.

Of course in the event a settlement reached then all required and appropriate disclosure would be made in connection with any approval.

We don't think this is a big ask in the sense that it may save costs and expedite a resolution while not adding any appreciable delay (in terms of timing context, our settlement conference with DLLA that the Court arranged is October 26).  We are thinking we would have the mediation in person in California or by Zoom (as you and Trustee Gupta think best) in early or mid-October.

Please let us know if Trustee Gupta is amenable.  Thanks for considering.

All the best,

- Jerry



Woodland Hills, CA
21650 Oxnard St., Suite 500
Woodland Hills, CA 91367-4911
(818) 827-9000 Main
(818) 827-9090 Fax

Denver, Colorado
5445 DTC Parkway, Suite 800
Greenwood Village, CO 80111
(818) 827-9000 Main
(818) 827-9045 Fax

www.bg.law

Jerrold Bregman
Of Counsel

**(303) 835-1291** Direct
**(818) 827-9101** Direct
**(646) 251-9699** Cell

jbregman@bg.law

Jerrold Bregman

Licensed in California,
Colorado and New York

The preceding e-mail message is subject to Brutzkus Gubner Rozansky Seror Weber LLP's
e-mail policies, which can be found at: https://www.bg.law/web-disclaimer

**From:** Kevin Coleman [mailto:kcoleman@nutihart.com]
**Sent:** Tuesday, September 8, 2020 11:41 AM
**To:** Jerrold Bregman <jbregman@bg.law>
**Cc:** Kavita Gupta <kgupta@guptaferrer.com>; Kim Fineman <kfineman@nutihart.com>
**Subject:** Desert Land Cases *** Your V/M Friday

CAUTION: This email originated from an external source.

Hi Jerry,

I hope you had a nice Labor Day Weekend.

I got your v/m, and if I understand it correctly, you want the Trustee to extend the period for the Desert Land estate to file a claim in Desert Oasis Apartments, and to pursue a mediation process after you share your analysis with us owing to "sensitivities" surrounding that claim.  (In other words, you would prefer not to just file a proof of claim that we could review and decide whether it should be objected to.)

In order to assist us in considering this request, can you tell me when you expect to complete your investigation/analysis?

Can you also please explain what "sensitivities" would be associated with the Desert Land estate asserting a claim against the Desert Oasis Apartments estate?  If there is a legitimate basis for Desert Land to be allowed a claim in Desert Oasis Apartments, the facts and circumstances surrounding that claim are going to have to be disclosed either through the claims allowance process or a 9019 motion, so I don't understand how anything can be done confidentially.

Best regards,

--Kevin

PS: As I have previously stated, I do not see any basis for Desert Land to assert a claim against Desert Oasis Apartments.  And even if one does exist, ███████████████████████████████
███████████████████████████████████████████████

Kevin W. Coleman
**Nuti Hart LLP**
411 30th Street, Suite 408
Oakland, CA 94609
Cell: 415 533-2920
Office: 510 506-7155
kcoleman@nutihart.com



T

**Fill in this information to identify the case:**

Debtor 1    Desert Oasis Apartments, LLC

Debtor 2 _____
(Spouse, if filing)

United States Bankruptcy Court for the:   District of Nevada

Case number   18-12456-gs

---

Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

## Part 1:   Identify the Claim

| | |
|---|---|
| 1. **Who is the current creditor?** | Desert Land, LLC <br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor _____ |
| 2. **Has this claim been acquired from someone else?** | ☑ No <br> ☐ Yes. From whom? _____ |
| 3. **Where should notices and payments to the creditor be sent?** <br><br> Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** <br><br> Jeffrey I. Golden, Trustee for Desert Land, LLC <br> Name <br><br> 650 Town Center Dr., Suite 600 <br> Number   Street <br> Costa Mesa     CA     92626 <br> City     State     ZIP Code <br><br> Contact phone 714-966-1000 <br> Contact email jgolden@wgllp.com <br><br> Uniform claim identifier for electronic payments in chapter 13 (if you use one): <br><br> __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ | **Where should payments to the creditor be sent?** (if different) <br><br> Name <br><br> Number   Street <br> City     State     ZIP Code <br><br> Contact phone _____ <br> Contact email _____ |
| 4. **Does this claim amend one already filed?** | ☑ No <br> ☐ Yes. Claim number on court claims registry (if known) _____     Filed on _____ <br>                                                     MM / DD / YYYY |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No <br> ☐ Yes. Who made the earlier filing? _____ |

---

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**

$ _____At Least 78,000,000.00_____

[$4.5 mm related to account stated and $78 mm related to causes of action. See addendum.]

**Does this amount include interest or other charges?**

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Account stated, plus the amount of non-insider claims against Desert Land based on substantive consolidation and alter ego causes of action. See addendum for details.

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

Amount entitled to priority

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

$_____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

$_____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

$_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

$_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

$_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.

$_____

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☑ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  09/23/2020
                  MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

| Name | Jeffrey | I. | Golden |
|------|---------|-----|--------|
| | First name | Middle name | Last name |

Title  Chapter 11 Trustee for the bankruptcy estate of Desert Land, LLC

Company  Desert Land, LLC
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address  650 Town Center Dr., Suite 600
         Number        Street

Costa Mesa                    CA        92626
City                          State     ZIP Code

Contact phone  714-966-1000          Email  jgolden@wgllp.com

## ADDENDUM TO PROOF OF CLAIM

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEVADA

```
-------------------------------------------------------------x
                                          :
In re:                                    :        Chapter 11
                                          :
DESERT OASIS APARTMENTS, LLC,             :        Case No. BK-S-18-12456-GS
                                          :
                    Debtor.               :
                                          :
-------------------------------------------------------------x
```

### ADDENDUM TO PROOF OF CLAIM OF DESERT LAND, LLC

Jeffrey I. Golden, solely in his capacity as the duly appointed and serving chapter 11 trustee (the "Trustee") for the bankruptcy estate of Desert Land, LLC ("Desert Land"), asserts the proof of claim (the "Proof of Claim") to which this Addendum is annexed, on behalf of the estate of Desert Land against Desert Oasis Apartments, LLC ("Apartments"), the chapter 11 debtor herein. The Trustee, on behalf of the estate of Desert Land, asserts the following claims against Apartments upon personal knowledge as to himself and his own acts, and as to all other matters upon information and believe, based upon the investigation made by and through his attorneys.

### I. Account Stated of Not Less than $4.5 Million.

1. As of the date the order for relief was entered, Apartments owed its related entity Desert Land, LLC ("Desert Land") $4.5 million. This liability is reflected on the following documents: (a) Schedule F of Apartments' Schedules and Statement of Financial Affairs [Doc. #96] filed in In re Desert Oasis Apartments, LLC, Case No. 18-12456-gs (the "Apartments' Bankruptcy Case"), on July 13, 2018, page 18, which page is attached hereto as **Exhibit A**; (b) Schedule F of Apartments' Schedules and Statement of Financial Affairs' [Doc. #104] filed in In

2395414

re Desert Land, LLC, Case No. 18-12454-gs (the "Desert Land Bankruptcy case"), on July 13, 2018, page 19, which is attached hereto as **Exhibit B**; and (c) Schedule F of the Amended Schedules [Doc. #104] filed in the Apartments' Bankruptcy Case on August 28, 2018, page 4, which page is attached hereto as **Exhibit C**.

2.      In the first Desert Oasis Apartments, LLC bankruptcy case, Case No. 11-17208 (the "First Apartments' Bankruptcy Case"), Apartments scheduled $5,468,103.96 as due and owing to Desert Land.  *See*, Schedule F, Doc. #35 filed on May 24, 2011, page 20, which page is attached hereto as **Exhibit D**.

3.      Furthermore, Apartments' Chapter 11 Plan of Reorganization [Doc. #89 in the First Apartments' Bankruptcy Case] (the "Apartments' 2011 Plan") provided for the allowance and treatment of the $5,468,103.96 owed by Apartments to Desert Land.  *See*, page 4 of the Apartments' 2011 Plan.  The Apartments' 2011 Plan is attached hereto as **Exhibit E**.  In the Apartments' 2011 Plan, the "Desert Land, LLC" unsecured claim is provided for under Class 4 treatment.  The claim was subordinated to the claims of non-insider general unsecured creditors but was otherwise allowed with treatment to be paid in full. *See*, page 4 of the Apartments' 2011 Plan. The Apartments' 2011 Plan was confirmed pursuant to Court order entered on December 30, 2011 [Doc. #203 in the First Apartments' Bankruptcy Case].   Thus, the Trustee is informed and believes that Apartments owes Desert Land at least $4.5 million and that the entered confirmation order in the First Apartments' Bankruptcy Case is controlling.

## II.    <u>Substantive Consolidation – Alter Ego Claims of Not Less Than $78 Million.</u>

4.      In light of the compelling evidence adduced to date which indicates that Desert Land and its debtor affiliates (collectively, the "Debtors") were operated as a single unitary entity, Desert Land has a claim against each of the other Debtors in the amount required to satisfy the third-party claims (without counting the claims of insiders) against Desert Land,

-2-

including that: (1) each of the Debtors was influenced and governed by David Gaffin and Howard Bulloch (together, the "Managers"); (2) there was a unity of interest and ownership such that the Debtors are inseparable from each other; (3) the facts are such that adherence to the corporate fiction of separate entities under the relevant circumstances would sanction a fraud or promote injustice; (4) many if not all of the various factors for determining when the corporate fiction should be disregarded are present, including, without limitation, undercapitalization, commingling of funds, failure to observe corporate formalities, loans to or from or among the Debtors and their insiders that were made without sufficient consideration, and the assets of the Debtors were treated as assets of a common "pot" for the mutual benefit of the Debtors; and (5) recognizing the separate corporate existence of the Debtors as distinguished from each other would bring about an inequitable result relative to the third-party creditors of Desert Land. Such evidence was adduced in connection with each of the Debtors' identical motions to substantively consolidate all four bankruptcy cases. *See*, *e.g.,* Doc. #27 in the Desert Land Bankruptcy Case. As the Court noted at the March 11, 2019 hearing in these cases:

> In a declaration filed in support of the motion for substantive consolidation, Gaffin stated in pertinent part, quote:
>
> "The managers of the debtors used the funds available from each entity to pay all the expenses of all entities. The debtors have always been treated as single business (sic) – as a single business since 2004 or from the creation of such member entity." The Desert Land docket, ECF Number 28, Paragraph 11.

March 11, 2019 Transcript of Oral Ruling Re: Motion to Appoint Trustee, 20:13-22.

### III.   Reservation of Rights.

5.   Right to Amend.   The Trustee expressly reserves the right to amend or supplement this Proof of Claim to correct, clarify, explain, expand, supplement or add to any portion of the claim asserted herein, or otherwise to increase the dollar amount of such claim and/or provide additional information and documentation in connection with the claim, including

-3-

2395414

as it may be amended, and including in response to any objection. Moreover, the Trustee specifically reserves the right to conduct discovery with respect to this matter in accordance with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

6.      <u>No Admission</u>.  Nothing contained in this Proof of Claim shall be deemed an admission by the Trustee.  The Trustee expressly reserves the right to withdraw this Proof of Claim in his sole discretion with the effect to be as if this Proof of Claim had never been filed.

| Debtor | **Desert Oasis Apartments, LLC** | Case number (if known) | **18-12456-LEB** |
|---|---|---|---|
| | Name | | |

| 3.3 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$1,150,000.00** |
|---|---|---|---|
| | **Citation Financial, LLC**<br>**10181 Park Run Drive**<br>**#200**<br>**Las Vegas, NV 89145** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.4 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$114.34** |
|---|---|---|---|
| | **Classic Design Group**<br>**600 Cervantes Drive**<br>**Henderson, NV 89014** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.5 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$350,000.00** |
|---|---|---|---|
| | **Compass Investments Holdings, LLC**<br>**10181 Park Run Drive**<br>**#200**<br>**Las Vegas, NV 89145** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.6 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$4,500,000.00** |
|---|---|---|---|
| | **Desert Land, LLC**<br>**10181 Park Run Drive**<br>**#200**<br>**Las Vegas, NV 89145** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.7 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$595.80** |
|---|---|---|---|
| | **HD Supply**<br>**4825 E Cheyenne Avenue**<br>**Las Vegas, NV 89115** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.8 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$50.14** |
|---|---|---|---|
| | **LeaseStar LLC**<br>**2201 Lakeside Blvd**<br>**Richardson, TX 75082** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.9 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$671.77** |
|---|---|---|---|
| | **RealPage, Inc.**<br>**2201 Lakeside Blvd**<br>**Richardson, TX 75082** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

**Exhibit A_001**

| Debtor | **Desert Oasis Apartments, LLC** | | Case number (if known) | **18-12456-LEB** |
|---|---|---|---|---|
| | Name | | | |

| 3.3 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $1,150,000.00 |
|---|---|---|---|
| | **Citation Financial, LLC**<br>**10181 Park Run Drive**<br>**#200**<br>**Las Vegas, NV 89145** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.4 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $114.34 |
|---|---|---|---|
| | **Classic Design Group**<br>**600 Cervantes Drive**<br>**Henderson, NV 89014** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.5 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $350,000.00 |
|---|---|---|---|
| | **Compass Investments Holdings, LLC**<br>**10181 Park Run Drive**<br>**#200**<br>**Las Vegas, NV 89145** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.6 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $4,500,000.00 |
|---|---|---|---|
| | **Desert Land, LLC**<br>**10181 Park Run Drive**<br>**#200**<br>**Las Vegas, NV 89145** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.7 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $595.80 |
|---|---|---|---|
| | **HD Supply**<br>**4825 E Cheyenne Avenue**<br>**Las Vegas, NV 89115** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.8 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $50.14 |
|---|---|---|---|
| | **LeaseStar LLC**<br>**2201 Lakeside Blvd**<br>**Richardson, TX 75082** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.9 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $671.77 |
|---|---|---|---|
| | **RealPage, Inc.**<br>**2201 Lakeside Blvd**<br>**Richardson, TX 75082** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |



| Debtor | Desert Oasis Apartments, LLC | Case number (if known) | 18-12456-LEB |
|---|---|---|---|
| | Name | | |

---

**3.3** | Nonpriority creditor's name and mailing address
Citation Financial, LLC
10181 Park Run Drive
#200
Las Vegas, NV 89145

Date(s) debt was incurred __
Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __

Is the claim subject to offset? ■ No ☐ Yes

$1,150,000.00

---

**3.4** | Nonpriority creditor's name and mailing address
Classic Design Group
600 Cervantes Drive
Henderson, NV 89014

Date(s) debt was incurred __
Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __

Is the claim subject to offset? ■ No ☐ Yes

$114.34

---

**3.5** | Nonpriority creditor's name and mailing address
Compass Investments Holdings, LLC
10181 Park Run Drive
#200
Las Vegas, NV 89145

Date(s) debt was incurred __
Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __

Is the claim subject to offset? ■ No ☐ Yes

$350,000.00

---

**3.6** | Nonpriority creditor's name and mailing address
Desert Land, LLC
10181 Park Run Drive
#200
Las Vegas, NV 89145

Date(s) debt was incurred __
Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __

Is the claim subject to offset? ■ No ☐ Yes

$4,500,000.00

---

**3.7** | Nonpriority creditor's name and mailing address
HD Supply
4825 E Cheyenne Avenue
Las Vegas, NV 89115

Date(s) debt was incurred __
Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __

Is the claim subject to offset? ■ No ☐ Yes

$595.80

---

**3.8** | Nonpriority creditor's name and mailing address
LeaseStar LLC
2201 Lakeside Blvd
Richardson, TX 75082

Date(s) debt was incurred __
Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __

Is the claim subject to offset? ■ No ☐ Yes

$50.14

---

**3.9** | Nonpriority creditor's name and mailing address
RealPage, Inc.
2201 Lakeside Blvd
Richardson, TX 75082

Date(s) debt was incurred __
Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __

Is the claim subject to offset? ■ No ☐ Yes

$671.77

---

B6F (Official Form 6F) (12/07) - Cont.

In re **Desert Oasis Apartments, LLC**                                    Case No. **11-17208-BAM**
                                    Debtor                                                        (If known)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO. | | | | | | | 600.05 |
| Criterion Brock PO Box 22107 Milwaukie, OR 97269 | | | Trade debt | | | | |
| ACCOUNT NO. | | | | | | | 176.27 |
| De Lage Landen Financial Services PO Box 41602 Philadelphia, PA 19101 | | | Trade debt | | | | |
| ACCOUNT NO. | | | | | | | 5,468,103.96 |
| Desert Land, LLC 10181 Park Run Drive #200 Las Vegas, NV 89145 | | | | | | | |
| ACCOUNT NO. | | | | | | | 211.00 |
| Ellipse Communications, Inc. PO Box 801814 Dallas, TX 75380 | | | Trade debt | | | | |
| ACCOUNT NO. 0304 | | | | | | | 3,494.70 |
| For Rent Magazine 75 Remittance Drive #1705 Chicago, IL 60675-1705 | | | Trade debt | | | | |

Sheet no. _1_ of _4_ continuation sheets attached to Schedule of Creditors
Holding Unsecured
Nonpriority Claims

Subtotal ➤ $ **5,472,585.98**

Total ➤ $

(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical
Summary of Certain Liabilities and Related Data.)

**Exhibit D_001**

LENARD E. SCHWARTZER (NV Bar No. 0399)
JEANETTE E. MCPHERSON (NV Bar No. 5423)
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone:     (702) 228-7590
Facsimile:     (702) 892-0122
Email:         bkfilings@s-mlaw.com

Counsel for Debtor and Debtor in Possession

**SCHWARTZER & MCPHERSON LAW FIRM**
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No. BK-S-11-17208-BAM |
| **DESERT OASIS APARTMENTS, LLC,** | Chapter 11 |
| Debtor. | |
| | Hearing Date:<br>Hearing Time:<br>Place:     Courtroom #3 |

## DESERT OASIS APARTMENT, LLC'S AMENDED PLAN OF REORGANIZATION

## ARTICLE I

## SUMMARY

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of DESERT OASIS APARTMENT, LLC (the "Debtor"). The Debtor owns the real property and improvements located in Las Vegas, NV described as Assessor's Parcel Number 162-28-310-001 (the "Property"). The Property consists of approximately 6.4 acres located on the south side of Mandalay Bay Road approximately 800 feet east of Las Vegas Boulevard. On the Property is an apartment complex consisting of 128 one- and two-bedroom units. Approximately, 92%-95% of the apartment units are occupied by tenants ("Tenants"). The Property is worth approximately $6,500,000 and is subject to a loan in the approximate amount of $3,076,000 now held by Wells Fargo Bank, N.A., as trustee for the Registered Holders of JPMorgan Chase Commercial Mortgage Pass-Through Certificates, Series 2004-FL1 (the "Bank") which has matured.

The current owner obtained title to the Property in August of 1999.

**Exhibit E_001**

This Plan provides for one class of priority claims; one class of secured claims; one class of unsecured claims; and one class of equity security holders. **Under the Plan, the rights of Tenants are unimpaired.** The Bank will receive distributions which the proponent of this Plan has valued at 100 cents on the dollar. The Plan proposes to pay the Bank in full over a period of 10 years using the rental income from the Tenants to pay market rate interest of 4.5% per annum and principal amortized over 25 years and a balloon payment at the end of 10 years obtained through sale or refinancing when the mortgage markets become more normal. Tenants with priority claims for deposits will be paid 100% in the normal course of operation of the apartment complex. Under the Plan, the unsecured claim of Tom Gonzales is unimpaired. Under the Plan, the unsecured creditors, except insiders, will be paid over eleven months without interest. Under the Plan, insiders will agree to subordinate their claims to the claims of other unsecured creditors. This Plan also provides for the 100% payment of all other administrative, including fees payable to the Office of the United States Trustee, and priority claims upon confirmation.

All creditors and equity security holders should refer to Articles III through V of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01  Class 1.  All allowed claims entitled to priority under § 507 of the Code.

2.02  Class 2.  The claim of the Bank, to the extent allowed as a secured claim under § 506 of the Code.

2.03  Class 3.  The claim of Tom Gonzales.

2.04  Class 4.  All unsecured claims allowed under § 502 of the Code.

2.05  Class 5.  Equity interests in the Debtor.

**Exhibit E_002**

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1

## ARTICLE III

2

### TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,

3

### U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

4      3.01    Unclassified Claims.  Under section §1123(a)(1), administrative expense claims, and

5  priority tax claims are not in classes.

6      3.02    Administrative Expense Claims.  Each holder of an administrative expense claim

7  allowed under § 503 of the Code will be paid in full on the Effective Date of this Plan, in cash, or

8  upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

9      3.03    Priority Tax Claims.  Each holder of a priority tax claim will be paid on the Effective

10 Date of this Plan, in cash.

11      3.04    United States Trustee Fees.  All fees required to be paid by 28 U.S.C. §1930(a)(6)

12 (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to

13 another chapter of the Code.  Any U.S. Trustee Fees owed on or before the Effective Date of this Plan

14 will be paid on the Effective Date.

15

## ARTICLE IV

16

### TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

17      4.01    Claims and interests shall be treated as follows under this Plan:

18

| Class | Impairment | Treatment |
|-------|------------|-----------|
| Class 1 - Priority Claims | unimpaired | Class 1 is unimpaired by this Plan, and each holder of a Class 1 Priority Claim will be paid in full, in cash, upon the later of the effective date of this Plan as defined in Article VIII, or the date on which such claim is allowed by a final non-appealable order. |

19

20

21

22

23

24

25

26

27

28

**Exhibit E_003**

| Class 2 – Secured Claim of Bank (approximately $3,100,000) | impaired | Class 2 is impaired by this Plan. The Bank will be paid its claim in full, including principal, accrued interest and costs and reasonable attorneys' fees. This amount shall be paid with interest at the rate of 4.5% per annum from the Effective Date. Beginning on 1st day of the 1st month following the Effective Date, the Bank shall be paid an amount necessary to amortize its claim over 25 years together with interest. In addition payments for insurance and real estate taxes will be escrowed. The balance of the Claim shall be all due and payable in 10 years from the Effective Date. There will be no pre-payment penalty. The loan will be assumable. The Bank shall retain its lien on the Property with the same priority it held of the date of the Debtor's Petition. |
|---|---|---|
| Class 3 – Tom Gonzales ($10,000,000) | unimpaired | Class 3 is unimpaired by this Plan. Tom Gonzales will be paid the Parcel A Transfer Fee pursuant to the terms of the Desert Land Plan of Reorganization. That payment is due when, and only when, there is a Parcel A Transfer as defined in that plan. This claim is unsecured. This claim is subject to setoffs and counterclaims by the Debtor. |
| Class 4 - General Unsecured Creditors | impaired | Class 4 is impaired by this Plan. Non-Insider General Unsecured Creditors will be paid in full, without interest from the rent collected from the Tenant. Beginning on 1st day of the 1st month following the Effective Date, Class 4 will be paid $3,000 per month pro rata for approximately 9 months.<br><br>Desert Land, LLC, Citation Financial, LLC and Compass Investments Holdings, LLC have agreed to subordinate their claims to the claims of other unsecured creditors and will be paid only after all other unsecured creditors are paid in full and reasonable reserves for maintenance and repair of the Property have been funded. |
| Class 5- Equity Security Holders of the Debtor | unimpaired | Class 5 is unimpaired by this Plan. Equity Security Holders (the members of the Debtor) will retain their equity interest in the Debtor. |

**ARTICLE V**

**ALLOWANCE AND DISALLOWANCE OF CLAIMS**

5.01    Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has

2    been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

3       5.02    <u>Delay of Distribution on a Disputed Claim</u>. No distribution will be made on account

4    of a disputed claim unless such claim is allowed by a final non-appealable order.

5       5.03    <u>Settlement of Disputed Claims</u>. The Debtor will have the power and authority to settle

6    and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal

7    Rules of Bankruptcy Procedure.

8                       **ARTICLE VI**

9    **PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

10       6.01    <u>Assumed Executory Contracts and Unexpired Leases</u>.

11          (a)      The Debtor assumes the following executory contracts and/or unexpired leases

12    effective upon the:

13              ▪    Leases with Tenants.

14              ▪    Westcorp Management Group - property management

15          (b)      The Debtor will be conclusively deemed to have rejected all executory

16    contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the

17    date of the order confirming this Plan, upon the effective date of this Plan. A proof of a claim arising

18    from the rejection of an executory contract or unexpired lease under this section must be filed no later

19    than thirty (30) days after the date of the order confirming this Plan.

20

21                       **ARTICLE VII**

22          **MEANS FOR IMPLEMENTATION OF THE PLAN**

23       The means for implementation of this Plan is the rents paid by Debtor's existing and future

24    Tenants. The Debtor will sell or refinance the Property within 120 months following the Effective

25    Date. The proceeds from such sale or refinance shall be used to fund the balloon payment to the Bank

26    as set forth in the Plan. If the Property is sold, the Debtor and its affiliates which own the adjacent

27    land will pay the Parcel A Transfer fee to Gonzales from the sales proceeds.

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**Exhibit E_005**

**ARTICLE VIII**

**GENERAL PROVISIONS**

8.01    Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan. Additionally, the following definitions apply:

a.    The "Bank" shall mean Wells Fargo Bank, N.A., as trustee for the Registered Holders of JPMorgan Chase Commercial Mortgage Pass-Through Certificates, Series 2004-FL1.

b.    The "Property" shall mean the real property and improvements thereon located in Las Vegas, NV described as Assessor's Parcel Number 162-28-310-001 (the "Property") consisting of approximately 6.4 acres  located on the south side of Mandalay Bay Road and approximately 800 feet east of Las Vegas Boulevard.

c.    The "Tenants" shall mean the tenants who rent apartment units on the Property.

d.    The "Effective Date" of this Plan is the fifteenth business day following the date of the entry of the order of confirmation.  But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

e.    The "Desert Land Plan of Reorganization" is that plan of reorganization that was confirmed in the case of *In re Desert Land, LLC*, Case No. BK-S-02-16202-RCJ by an order entered April 13, 2003 as amended by decisions of the Bankruptcy Appellate Panel for 9th Circuit and the Court of Appeals for the 9th Circuit.

f.    The "Parcel A Transfer Fee" is the fee provided to be paid to Tom Gonzales in the Desert Land Plan of Reorganization when, and only when, there is a Parcel A Transfer as defined in the Desert Land Plan of Reorganization.

8.02    Severability.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.03    Binding Effect.  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

**Exhibit E_006**

SCHWARTZER & McPHERSON LAW FIRM

2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    8.04   Captions.   The headings contained in this Plan are for convenience of reference only
2  and do not affect the meaning or interpretation of this Plan.

3    8.05   Controlling Effect.   Unless a rule of law or procedure is supplied by federal law
4  (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Nevada
5  govern this Plan and any agreements, documents, and instruments executed in connection with this
6  Plan, except as otherwise provided in this Plan.

7    8.06   Governance.   The Debtor will maintain its current form of governance and its current
8  managers until such managers are replaced as provided in its existing Operating Agreement.

9    8.07   Revesting of Assets in the Debtor.  Upon confirmation of the Plan, all property of the
10  estate of the Debtor shall be revested in the Debtor, pursuant to 11 U.S.C. § 1141(c), which shall
11  retain such property as the Reorganized Debtor free and clear of all claims and interests of the
12  creditors, except as set forth in the Plan.

13    8.08   Disbursing Agent.   The Debtor will serve as disbursing agent and shall make all
14  payments required under the Plan.  The disbursing agent may employ or contract with other entities to
15  assist in or to perform the distribution of the property and shall serve without bond.

16    8.09   Request for Application of 11 U.S.C. § 1129(b).  The Debtor, as Plan proponent, will
17  request the Court to find that the provisions for dissenting classes provide for fair and equitable
18  treatment of said creditors, and to confirm its Plan notwithstanding the requirements of § 1129(a)(8)
19  as to such classes.

20    8.10   Post-Confirmation Management of the Debtor.  The Debtor shall be managed post-
21  confirmation by its current manager, David Gaffin.

22    8.11   Post-Confirmation Litigation.  The Debtor anticipates post-confirmation litigation with
23  Tom Gonzales over the enforcement of the terms of the Plan of Reorganization entered in the Desert
24  Land, LLC Chapter 11 case, as amended by the decisions of the Bankruptcy Appellate Panel for the
25  9th Circuit and the Court of Appeals for the 9th Circuit, and except for collection matters that may
26  occur in the normal course of the Debtor's business, and the determination of certain claims. The
27  Debtor reserves the right to prosecute any objections to claims.

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**Exhibit E_007**

8.12   <u>Post-Confirmation Default</u>.  In the event the Debtor becomes delinquent in duty or obligation under the Plan, the affected creditor or creditors may provide written notice of such default to the Debtor and its counsel at the following addresses:

Lenard E. Schwartzer, Esq.               Desert Oasis Apartments, LLC
Schwartzer & McPherson Law Firm          10181 Park Run Drive, Ste. 200
2850 S. Jones Blvd, Ste. 1               Las Vegas, NV 89145
Las Vegas, NV 89146-5308

The Debtor shall thereafter have fifteen (15) business days from receipt of said notice in which to cure the default.  In the event such default remains uncured, the affected creditor or creditors may bring the matter before the Bankruptcy Court.  At any hearing, the Bankruptcy Court may consider the reason for the default and the ability of the Debtor to bring the payment(s) current in a reasonable period of time.  The Bankruptcy Court may also consider conversion of the case to a Chapter 7 of the Code or dismissal if the same is in the best interests of creditors.

8.13   <u>Federal Income Tax Consequences of the Plan</u>.  The Plan will have limited tax consequences.  The Debtor, as a limited liability company, has elected to be treated as a partnership for federal income tax purposes and, therefore, does not pay federal income tax.  The Plan does not call for forgiveness of any debt.  Creditors are advised to discuss with their own tax advisor any tax effect to the creditor of such payments.

8.14   <u>Injunction</u>.  From and after the Effective Date, and except as provided in the Plan and the Confirmation Order, all entities that have held, currently hold, or may hold a Claim, are permanently enjoined from taking any of the following actions on account of any such Claims: (i) commencing or continuing in any manner any action or other proceeding against the Debtor, or its Property; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order against the Debtor or the Reorganized Debtor, or their respective property; (iii) creating, perfecting or enforcing any lien or encumbrance against the Debtor or the Reorganized Debtor, or their respective property; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability, or obligation due to the Debtor or the Reorganized Debtor, or their

**Exhibit E_008**

1 respective property; or (v) commencing or continuing any action, in any manner or any place, that
2 does not comply with or is inconsistent with the provisions of the Plan or the Bankruptcy Code.

3       8.15   <u>Exculpation</u>. From the Petition Date through the Effective Date, the Debtor and its
4 managers, attorneys, agents and employees shall not have any liability to the Debtor or any other
5 claimants or creditors, or other parties in interest in the Bankruptcy Case for any act or omission in
6 connection with or arising out of the Bankruptcy Case, including, without limitation, prosecuting
7 confirmation of the Plan, confirmation of the Plan, and the administration of the estate, the Plan or the
8 property to be distributed under the Plan, except for gross negligence or willful misconduct, and in all
9 respects, such persons will be entitled to rely on the advice of counsel with respect to their duties and
10 responsibilities with respect to the Chapter 11 Case and the Plan.

11       8.16   <u>Post-petition Employment of Counsel</u>. Following the Effective Date, the Debtor may
12 continue to employ counsel for necessary legal services. Counsel may be paid from the Debtor
13 without further order of the Court.

14       8.17   <u>Closing Case</u>. The estate shall be deemed to be fully administered upon the
15 commencing of distributions to the Class 1 creditor and the case may be closed.

16 **ARTICLE IX**

17 **DISCHARGE**

18     <u>Discharge.</u> The Debtor shall be discharged from any debt that arose before confirmation of the
19 Plan, subject to the occurrence of the effective date.

20                          Respectfully submitted,

21                          Desert Oasis Apartments, LLC
22                          By___ */s/David Gaffin*___
23                             David Gaffin, Manager
                            The Plan Proponent
Prepared by:

24

25 SCHWARTZER & McPHERSON LAW FIRM

26 By:_____
   Lenard E. Schwartzer, Esq.
27 *Counsel for the Debtor and Debtor in Possession*
*And Plan Proponent*

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**Exhibit E_009**

**EXHIBIT 4**

---

**Fill in this information to identify the case:**

Debtor 1     Desert Oasis Investments, LLC

Debtor 2     _____
(Spouse, if filing)

United States Bankruptcy Court for the:   District of Nevada

Case number   18-12457-gs

---

## Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

---

### Part 1:   Identify the Claim

**1. Who is the current creditor?**

Desert Land, LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Jeffrey I. Golden, Trustee for Desert Land, LLC
Name

650 Town Center Dr., Suite 600
Number    Street

Costa Mesa     CA     92626
City     State     ZIP Code

Contact phone   714-966-1000

Contact email   jgolden@wgllp.com

**Where should payments to the creditor be sent?** (if different)

Name

Number    Street

City     State     ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____    Filed on _____
                                                      MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

---

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---------|---------|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**

$ _At Least_ 78,000,000.00   **Does this amount include interest or other charges?**

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

<u>Damages related to substantive consolidation / alter ego claims. See addendum.</u>

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

☑ No

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Yes. Check one:

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $ _____ |

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to specifying local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☑ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   09/23/2020
                   MM / DD / YYYY

Signature _____

**Print the name of the person who is completing and signing this claim:**

| Name | Jeffrey | I. | Golden |
|---|---|---|---|
| | First name | Middle name | Last name |

| Title | Chapter 11 Trustee for the bankruptcy estate of Desert Land, LLC |
|---|---|

| Company | Desert Land, LLC |
|---|---|
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |

| Address | 650 Town Center Dr., Suite 600 |
|---|---|
| | Number      Street |
| | Costa Mesa | CA | 92626 |
| | City | State | ZIP Code |

| Contact phone | 714-966-1000 | Email | jgolden@wgllp.com |
|---|---|---|---|

# ADDENDUM TO PROOF OF CLAIM

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

```
----------------------------------------------------------------x
                                            :
In re:                                      :        Chapter 11
                                            :
DESERT OASIS INVESTMENTS, LLC,              :        Case No. BK-S-18-12457-GS
                                            :
                Debtor.                     :
                                            :
----------------------------------------------------------------x
```

## ADDENDUM TO PROOF OF CLAIM OF DESERT LAND, LLC

Jeffrey I. Golden, solely in his capacity as the duly appointed and serving chapter 11 trustee (the "Trustee") for the bankruptcy estate of Desert Land, LLC ("Desert Land"), asserts the proof of claim (the "Proof of Claim") to which this Addendum is annexed, on behalf of the estate of Desert Land against Desert Oasis Investments, LLC ("Investments"), the chapter 11 debtor herein. The Trustee, on behalf of the estate of Desert Land, asserts the following claims against Investments upon personal knowledge as to himself and his own acts, and as to all other matters upon information and believe, based upon the investigation made by and through his attorneys.

**I.    Substantive Consolidation – Alter Ego Claims of Not Less Than $78 Million.**

1.      In light of the compelling evidence adduced to date which indicates that Desert Land and its debtor affiliates (collectively, the "Debtors") were operated as a single unitary entity, Desert Land has a claim against each of the other Debtors in the amount required to satisfy the third-party claims (without counting the claims of insiders) against Desert Land, including that: (1) each of the Debtors was influenced and governed by David Gaffin and Howard Bulloch (together, the "Managers"); (2) there was a unity of interest and ownership such

2395502

that the Debtors are inseparable from each other; (3) the facts are such that adherence to the corporate fiction of separate entities under the relevant circumstances would sanction a fraud or promote injustice; (4) many if not all of the various factors for determining when the corporate fiction should be disregarded are present, including, without limitation, undercapitalization, commingling of funds, failure to observe corporate formalities, loans to or from or among the Debtors and their insiders that were made without sufficient consideration, and the assets of the Debtors were treated as assets of a common "pot" for the mutual benefit of the Debtors; and (5) recognizing the separate corporate existence of the Debtors as distinguished from each other would bring about an inequitable result relative to the third-party creditors of Desert Land. Such evidence was adduced in connection with each of the Debtors' identical motions to substantively consolidate all four bankruptcy cases. *See, e.g.,* Doc. #27 in the Desert Land Bankruptcy Case. As the Court noted at the March 11, 2019 hearing in these cases:

> In a declaration filed in support of the motion for substantive consolidation, Gaffin stated in pertinent part, quote:
>
> "The managers of the debtors used the funds available from each entity to pay all the expenses of all entities. The debtors have always been treated as single business (sic) – as a single business since 2004 or from the creation of such member entity." The Desert Land docket, ECF Number 28, Paragraph 11.

March 11, 2019 Transcript of Oral Ruling Re: Motion to Appoint Trustee, 20:13-22.

## II.  Reservation of Rights.

2.  Right to Amend.  The Trustee expressly reserves the right to amend or supplement this Proof of Claim to correct, clarify, explain, expand, supplement or add to any portion of the claim asserted herein, or otherwise to increase the dollar amount of such claim and/or provide additional information and documentation in connection with the claim, including as it may be amended, and including in response to any objection.  Moreover, the Trustee

-2-

specifically reserves the right to conduct discovery with respect to this matter in accordance with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

3.  <u>No Admission</u>.  Nothing contained in this Proof of Claim shall be deemed an admission by the Trustee.  The Trustee expressly reserves the right to withdraw this Proof of Claim in his sole discretion with the effect to be as if this Proof of Claim had never been filed.

2395502

T

1   Kevin W. Coleman (CA SBN 168538)
    Christopher H. Hart (CA SBN 184117)
2   NUTI HART LLP
    411 30TH Street, Suite 408
3   Oakland, CA 94609-3311
    Telephone: 510-506-7152
4   Email: kcoleman@nutihart.com
            chart@nutihart.com
5
6   Talitha Gray Kozlowski (NV SBN 9040)
    GARMAN TURNER GORDON LLP
7   650 White Drive, Suite 100
    Las Vegas, NV 89119
8   Telephone: 725-777-3000
    Email: tgray@gtg.legal
9
10  Counsel for Kavita Gupta,
    Chapter 11 Trustee

11                    UNITED STATES BANKRUPTCY COURT

12                           DISTRICT OF NEVADA

13  In re:                              |  Case No.:  BK-S-18-12454-GS

14  DESERT LAND, LLC                    |  Chapter 11

15                          Debtor.     |

16  In re:                              |  Case No.:  BK-S-18-12456-GS

17  DESERT OASIS APARTMENTS, LLC,       |  Chapter 11

18                          Debtor.     |

19  In re:                              |  Case No.:  BK-S-18-12457-GS

    DESERT OASIS INVESTMENTS, LLC,      |  Chapter 11
20
                            Debtor.     |  **DECLARATION OF GINA SHELTON**
21                                      |  **RE INTERCOMPANY CLAIM**

22

23          I, Gina Shelton, declare as follows:

24          1.      I am a senior staff accountant and bookkeeper with Swecker, Moloney & Moir

25  CPA's ("SMM"), and have held this position continuously for approximately 30 years.  My

26  business address is 2451 S. Buffalo Drive Ste. 105, Las Vegas, Nevada 89117.  Except as

27  otherwise noted, all statements in this declaration are based on my own personal knowledge and

28  if called to testify on this matter, I could and would competently testify thereto.

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

                                           1
                    SHELTON DECL. RE INTERCOMPANY CLAIM

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

2. From approximately 1996-97 through approximately 2010-2011, SMM provided bookkeeping and tax preparation services to Desert Land LLC ("DL") and Desert Oasis Apartments LLC ("DOA"). I was the person at SMM who was primarily responsible for inputting entries into the general ledgers maintained for DL and DOA and producing the other accounting documentation referenced below. All of the accounting records discussed (excluding Exhibits B and C) herein were prepared by me or others working under my direction in the ordinary course of providing bookkeeping and tax preparation services to DL and DOA.

3. With limited exceptions not relevant here, journal entries made in DL and DOA's general ledgers were based on source documentation such as checks and escrow statements provided to SMM by David Gaffin. After SMM's bookkeeping and tax preparation services for a given period were completed, the source documentation would be returned to DL and DOA.

4. Counsel for Kavita Gupta, Chapter 11 trustee for the DL and DOA bankruptcy estates served a subpoena on SMM for the production of documents relating to the origins and basis for an $4.5 million debt DOA stated that it owed to DL in the schedule of liabilities filed in this bankruptcy case. SMM thereafter conducted a diligent search of its records, and to the best of its knowledge, produced all documents in SMM's possession, custody, and control sought in the subpoena. The documents produced totaled 107 pages. Attached hereto as **Exhibit A** is a true and correct copy of all of the documents produced in response to the Trustee's subpoena.

5. A working trial balance I prepared for DOA for the period ending December 31, 2000 is included in Exhibit A [at bates page SW0004]. The December 31, 2000 working trial balance indicates that as of December 31, 1999, DOA was obligated on a note payable to Heller Financial in the amount of $5,000,000.00. The amounts reflected as owing by DOA Heller Financial on the December 31, 2000 working trial balance was based on journal entries that I had previously made on DOA's general ledger.

6. DOA's December 31, 2000 working trial balance [SW0004] further indicates that as of December 31, 2000:

        a.    the amount owed by DOA to Heller Financial had been paid; and

        b.    a note payable to DL by DOA had increased by $5,008,060.83.

7.     DOA's payment to Heller Financial and the increased liability to DL referenced in paragraph 6 were also reflected in journal entries entered on DOA's general ledger.

8.     My hand written notation on the DOA December 31, 2000 working trial balance indicates that the $5,008,060.83 credit to the note payable to DL related to "DL escrow #684232."

9.     I made the general ledger entries and prepared DOA's December 31, 2000 working trial balance after reviewing an escrow closing statement provided to SMM by Mr. Gaffin.  Counsel for the Trustee has recently provided me with a copy of the Estimated Borrower's Closing Statement that is attached hereto as **<u>Exhibit B</u>**.  I am advised by the Trustee's counsel that Exhibit B was among documents produced by Mr. Gaffin in response to a subpoena served by the Trustee.

10.     To the best of my recollection, the closing statement I relied on at the time I made the journal entries and prepared DOA's December 31, 2000 working trial balance [SW0004] was either the same or substantially similar to the Estimated Borrower's Closing Statement attached hereto as Exhibit B.  (My understanding is that a final closing statement for an escrow can differ in some respects from an estimated closing statement.)

11.     DL is identified in Exhibit B as the borrower of the $41.5 million loaned by Tom Gonzales.  DOA is not identified as a borrower on the Gonzales loan.  Exhibit B also indicates that $5,028,400.56 of the Gonzales loan proceeds would be disbursed to Heller Financial, which as noted at that time held a $5 million loan secured by DOA's real property.

12.     I interpreted the closing statement I relied on when entering the Heller Financial mortgage refinance transactions into DOA's general ledger to mean that DL, but not DOA, borrowed the $41.5 million from Tom Gonzales.  I also interpreted the closing statement to mean that DOA borrowed the funds used to pay off the Heller Financial mortgage from DL.  It was for that reason that I reflected an amount owing by DOA to DL on the general ledger relating to the payoff of the Heller Financial mortgage.

13.     I recently have seen the petition, and schedules of assets and liabilities filed by DOA in its Chapter 11 bankruptcy case filed on May 31, 2002, Case No. 02-16204, which

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

1  indicate that DOA at that time owed Tom Gonzales $41.5 million. A true and correct copy of

2  DOA's May 31, 2002 petition and schedules supplied to me by counsel for the Trustee are

3  attached hereto as **Exhibit C**. I have also reviewed other documentation provided by counsel for

4  the Trustee indicating that DOA was a co-borrower on the Gonzales loan.

5    14.    Had I known when I made the general ledger entries referenced in paragraphs 5

6  through 7 above that DOA had borrowed the $5,008,060.83 used to pay off the Heller Financial

7  mortgage from Tom Gonzales instead of DL, I would have reflected that liability as owing to

8  Tom Gonzales. I would not have made a journal entry indicating that DOA owed that amount to

9  DL.

10    15.    Accordingly, the amount reflected on DOA and DL's general ledgers and the

11  December 31, 2000 working trial balance as being owed by DOA to DL on December 31, 2000

12  was overstated by $5,008,060.83.

13    I declare under penalty of perjury of the laws of the United States and the State of

14  Nevada that the foregoing is true and correct, and that this Declaration is executed this 27th day

15  of March 2020.

/s/ Gina Shelton

Gina Shelton