# EXHIBIT J

1   John D. Fiero (CA Bar No. 136557)                    Electronically filed:_____, 2020
    Gail S. Greenwood (CA Bar No. 169939)
2   PACHULSKI STANG ZIEHL & JONES LLP
    150 California Street, 15th Floor
3   San Francisco, CA  94111-4500
    Telephone: 415/263-7000
4   E-mail:jfiero@pszjlaw.com
            ggreenwood@pszjlaw.com
5
    Shara L. Larson (NV Bar No. 7786)
6   GHANDI DEETER BLACKHAM
    725 S. 8th St., Suite 100
7   Las Vegas, Nevada 89101
    Tel:  (702) 878-1115
8   Email:  shara@ghandilaw.com

9   [Proposed] Special Litigation Counsel to
    Kavita Gupta, Chapter 11 Trustee
10

11              **UNITED STATES BANKRUPTCY COURT**

12                    **DISTRICT OF NEVADA**

13  In re:                              |  Case No.: bk-s-18-12456-gs

14  **DESERT OASIS APARTMENTS, LLC,**    |  Chapter 11

15                       Debtor.          |  [No Hearing Set]

16

17

18      **DECLARATION OF GAIL GREENWOOD IN SUPPORT OF TRUSTEE'S
        MOTION FOR MONETARY SANCTIONS AGAINST JEFFREY GOLDEN,
19      CHAPTER 11 TRUSTEE OF DESERT LAND, LLC, PURSUANT TO
                    BANKRUPTCY RULE 9011**
20
        I, Gail Greenwood, declare:
21
        1.      I am an attorney with the law firm of Pachulski Stang Ziehl & Jones LLP, special
22
    litigation counsel to Kavita Gupta, the Chapter 11 Trustee (the "Trustee") for Desert Oasis
23
    Apartments, LLC.  In such capacity, and except as otherwise indicated, I have personal knowledge
24
    of the facts set forth below and, if called as a witness, I could and would testify competently thereto.
25
        2.      I submit this declaration in support of the *Chapter 11 Trustee's Motion for Monetary*
26
    *Sanctions Against Jeffrey Golden, Chapter 11 Trustee of Desert Land, LLC Pursuant to Bankruptcy*
27
    *Rule 9011,* and accompanying memorandum of points and authorities (the "Motion").[1]
28

---
[1] All capitalized terms not otherwise defined have the meanings set forth in the Motion.

DOCS_SF:104584.1 33085/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

3.      Attached hereto as **Exhibit A** is a true and correct copy of the Proof of Claim (number 3-1) filed by Trustee Golden on behalf of Desert Land.

4.      Attached hereto as **Exhibit B** is a true and correct copy of the Court's *Memorandum of Decision* entered April 23, 2020 [DL Docket No. 1075].[2]

5.      The claim register for Desert Land, case number 18-12454-GS, currently reflects secured claims in the total amount of $215,474,385.

6.      Attached hereto as **Exhibit C** are excerpts from the transcript of the hearing dated June 26, 2018 regarding the Desert Entities' *Amended Motion to Substantively Consolidate Cases, Etc.*

7.      Attached hereto as **Exhibit D** are excerpts from the transcript of the hearing dated March 11, 2019 regarding the *Oral Ruling re: Motion to Appoint Trustee*.

8.      Attached hereto as **Exhibit E** are true and correct copies of the Trustee's *Motion for Order Determining Whether Kavita Gupta Should Continue as Chapter 11 Trustee for Desert Oasis Apartments, LLC Due to the Existence of Inter-estate Claims, Etc.* [DL Docket No. 772] and the supporting declaration of Kevin Coleman [DL Docket Nos. 775].

9.      Attached hereto as **Exhibit F** is a true and correct copy of the *Supplemental Rule 2014(a) Disclosures by Chapter 11 Trustee Kavita Gupta, Nuti Hart LLP, Garmin Turner Gordan LLP, and Grobstein Teeple LLP* [DOA Docket No. 175], filed on October 12, 2020, including the Declaration of Gina Shelton as Exhibit 5.

10.     Attached hereto as **Exhibit G** is a true and correct copy of the Amended Schedule E/F of Desert Oasis Apartments [DL Docket No. 1080], filed on April 23, 2020.  The Amended Schedule was filed by counsel for the Desert Entities and signed by David Gaffin.

11.     Attached hereto as **Exhibit H** is a true and correct copy of the Amended Schedule A/B of Desert Land [DL Docket No. 1081], filed on April 23, 2020.  The Amended Schedule was also filed by counsel for the Desert Entities and signed by David Gaffin.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

[2] Pursuant to the Court's *Order Unsealing Documents and Hearings* entered Aug. 12, 2020 [DL Docket No. 1430], this document is not under seal.

DOCS_SF:104584.1 33085/001

12.     Attached hereto as **Exhibit I** is a true and correct copy of the *Objection to Amended Motion to Substantively Consolidate Cases* [DL Docket No. 39], filed on June 12, 2018 by counsel for Juniper Loan Servicing Corporation.

13.     On November 25, 2020, my office served a copy of the Motion on Trustee Golden in accordance with Rule 7004.  Counsel for Trustee Golden was also served with the Motion at the same time.  More than twenty-one days have passed since the Motion was served on Trustee Golden and the Proof of Claim has not been withdrawn or amended.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on November 25, 2020, in San Francisco, California.

/s/ Gail S. Greenwood
Gail S. Greenwood

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# EXHIBIT A

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Desert Oasis Apartments, LLC |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | District of Nevada |
| Case number | 18-12456-gs |

## Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309)** that you received.

| **Part 1:** | **Identify the Claim** |
|---|---|

**1. Who is the current creditor?**

Desert Land, LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Jeffrey I. Golden, Trustee for Desert Land, LLC
Name

650 Town Center Dr., Suite 600
Number          Street

Costa Mesa            CA            92626
City                      State          ZIP Code

Contact phone 714-966-1000

Contact email jgolden@wgllp.com

**Where should payments to the creditor be sent?** (if different)

_____
Name

_____
Number          Street

_____
City                      State          ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ — __ __ __ __ __ __ — __ __ __ __ __ __ — __ __ __ __

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____

Filed on _____
                    MM  /  DD  / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**

$ ___At Least 78,000,000.00___

[$4.5 mm related to account stated and $78 mm related to causes of action. See addendum.]

**Does this amount include interest or other charges?**

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Account stated, plus the amount of non-insider claims against Desert Land based on substantive consolidation and alter ego causes of action. See addendum for details.

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed) _____ %

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No | |
|---|---|---|
| | ☐ Yes. *Check one:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

---

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☑ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   09/23/2020
           MM / DD / YYYY

Signature _____

Print the name of the person who is completing and signing this claim:

| | | | |
|---|---|---|---|
| Name | Jeffrey<br>First name | I.<br>Middle name | Golden<br>Last name |
| Title | Chapter 11 Trustee for the bankruptcy estate of Desert Land, LLC | | |
| Company | Desert Land, LLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 650 Town Center Dr., Suite 600 | | |
| | Number      Street | | |
| | Costa Mesa | CA | 92626 |
| | City | State | ZIP Code |
| Contact phone | 714-966-1000 | Email | jgolden@wgllp.com |

# ADDENDUM TO PROOF OF CLAIM

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

---------------------------------------------------------------x
:
In re:                                                        :        Chapter 11
                                                              :
DESERT OASIS APARTMENTS, LLC,                                 :        Case No. BK-S-18-12456-GS
                                                              :
                        Debtor.                               :
                                                              :
---------------------------------------------------------------x

## ADDENDUM TO PROOF OF CLAIM OF DESERT LAND, LLC

Jeffrey I. Golden, solely in his capacity as the duly appointed and serving chapter 11 trustee (the "Trustee") for the bankruptcy estate of Desert Land, LLC ("Desert Land"), asserts the proof of claim (the "Proof of Claim") to which this Addendum is annexed, on behalf of the estate of Desert Land against Desert Oasis Apartments, LLC ("Apartments"), the chapter 11 debtor herein.  The Trustee, on behalf of the estate of Desert Land, asserts the following claims against Apartments upon personal knowledge as to himself and his own acts, and as to all other matters upon information and believe, based upon the investigation made by and through his attorneys.

## I.    Account Stated of Not Less than $4.5 Million.

1.    As of the date the order for relief was entered, Apartments owed its related entity Desert Land, LLC ("Desert Land") $4.5 million.  This liability is reflected on the following documents: (a) Schedule F of Apartments' Schedules and Statement of Financial Affairs [Doc. #96] filed in In re Desert Oasis Apartments, LLC, Case No. 18-12456-gs (the "Apartments' Bankruptcy Case"), on July 13, 2018, page 18, which page is attached hereto as **Exhibit A**; (b) Schedule F of Apartments' Schedules and Statement of Financial Affairs' [Doc. #104] filed in In

2395414

re Desert Land, LLC, Case No. 18-12454-gs (the "Desert Land Bankruptcy case"), on July 13, 2018, page 19, which is attached hereto as **Exhibit B**; and (c) Schedule F of the Amended Schedules [Doc. #104] filed in the Apartments' Bankruptcy Case on August 28, 2018, page 4, which page is attached hereto as **Exhibit C**.

2.      In the first Desert Oasis Apartments, LLC bankruptcy case, Case No. 11-17208 (the "First Apartments' Bankruptcy Case"), Apartments scheduled $5,468,103.96 as due and owing to Desert Land. *See*, Schedule F, Doc. #35 filed on May 24, 2011, page 20, which page is attached hereto as **Exhibit D**.

3.      Furthermore, Apartments' Chapter 11 Plan of Reorganization [Doc. #89 in the First Apartments' Bankruptcy Case] (the "Apartments' 2011 Plan") provided for the allowance and treatment of the $5,468,103.96 owed by Apartments to Desert Land. *See*, page 4 of the Apartments' 2011 Plan. The Apartments' 2011 Plan is attached hereto as **Exhibit E**. In the Apartments' 2011 Plan, the "Desert Land, LLC" unsecured claim is provided for under Class 4 treatment. The claim was subordinated to the claims of non-insider general unsecured creditors but was otherwise allowed with treatment to be paid in full. *See*, page 4 of the Apartments' 2011 Plan. The Apartments' 2011 Plan was confirmed pursuant to Court order entered on December 30, 2011 [Doc. #203 in the First Apartments' Bankruptcy Case]. Thus, the Trustee is informed and believes that Apartments owes Desert Land at least $4.5 million and that the entered confirmation order in the First Apartments' Bankruptcy Case is controlling.

II.      **Substantive Consolidation – Alter Ego Claims of Not Less Than $78 Million.**

4.      In light of the compelling evidence adduced to date which indicates that Desert Land and its debtor affiliates (collectively, the "Debtors") were operated as a single unitary entity, Desert Land has a claim against each of the other Debtors in the amount required to satisfy the third-party claims (without counting the claims of insiders) against Desert Land,

-2-

including that: (1) each of the Debtors was influenced and governed by David Gaffin and Howard Bulloch (together, the "Managers"); (2) there was a unity of interest and ownership such that the Debtors are inseparable from each other; (3) the facts are such that adherence to the corporate fiction of separate entities under the relevant circumstances would sanction a fraud or promote injustice; (4) many if not all of the various factors for determining when the corporate fiction should be disregarded are present, including, without limitation, undercapitalization, commingling of funds, failure to observe corporate formalities, loans to or from or among the Debtors and their insiders that were made without sufficient consideration, and the assets of the Debtors were treated as assets of a common "pot" for the mutual benefit of the Debtors; and (5) recognizing the separate corporate existence of the Debtors as distinguished from each other would bring about an inequitable result relative to the third-party creditors of Desert Land. Such evidence was adduced in connection with each of the Debtors' identical motions to substantively consolidate all four bankruptcy cases. *See*, *e.g.,* Doc. #27 in the Desert Land Bankruptcy Case. As the Court noted at the March 11, 2019 hearing in these cases:

> In a declaration filed in support of the motion for substantive consolidation, Gaffin stated in pertinent part, quote:
>
> "The managers of the debtors used the funds available from each entity to pay all the expenses of all entities. The debtors have always been treated as single business (sic) – as a single business since 2004 or from the creation of such member entity." The Desert Land docket, ECF Number 28, Paragraph 11.

March 11, 2019 Transcript of Oral Ruling Re: Motion to Appoint Trustee, 20:13-22.

## III. <u>Reservation of Rights.</u>

5. <u>Right to Amend.</u> The Trustee expressly reserves the right to amend or supplement this Proof of Claim to correct, clarify, explain, expand, supplement or add to any portion of the claim asserted herein, or otherwise to increase the dollar amount of such claim and/or provide additional information and documentation in connection with the claim, including

-3-

as it may be amended, and including in response to any objection.  Moreover, the Trustee specifically reserves the right to conduct discovery with respect to this matter in accordance with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

6.     <u>No Admission</u>.  Nothing contained in this Proof of Claim shall be deemed an admission by the Trustee.  The Trustee expressly reserves the right to withdraw this Proof of Claim in his sole discretion with the effect to be as if this Proof of Claim had never been filed.

2395414

| Debtor | **Desert Oasis Apartments, LLC** | | Case number (if known) | **18-12456-LEB** |
| | Name | | | |

| 3.3 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $1,150,000.00 |
| | Citation Financial, LLC 10181 Park Run Drive #200 Las Vegas, NV 89145 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | **Basis for the claim:** _ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.4 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $114.34 |
| | Classic Design Group 600 Cervantes Drive Henderson, NV 89014 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | **Basis for the claim:** _ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.5 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $350,000.00 |
| | Compass Investments Holdings, LLC 10181 Park Run Drive #200 Las Vegas, NV 89145 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | **Basis for the claim:** _ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.6 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $4,500,000.00 |
| | Desert Land, LLC 10181 Park Run Drive #200 Las Vegas, NV 89145 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | **Basis for the claim:** _ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.7 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $595.80 |
| | HD Supply 4825 E Cheyenne Avenue Las Vegas, NV 89115 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | **Basis for the claim:** _ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.8 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $50.14 |
| | LeaseStar LLC 2201 Lakeside Blvd Richardson, TX 75082 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | **Basis for the claim:** _ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.9 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $671.77 |
| | RealPage, Inc. 2201 Lakeside Blvd Richardson, TX 75082 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | **Basis for the claim:** _ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

**Exhibit A_001**

| Debtor | **Desert Oasis Apartments, LLC** | | Case number (if known) | **18-12456-LEB** |
|---|---|---|---|---|
| | Name | | | |

| 3.3 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | $1,150,000.00 |
|---|---|---|---|
| | **Citation Financial, LLC**<br>**10181 Park Run Drive**<br>**#200**<br>**Las Vegas, NV 89145** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.4 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | $114.34 |
|---|---|---|---|
| | **Classic Design Group**<br>**600 Cervantes Drive**<br>**Henderson, NV 89014** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.5 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | $350,000.00 |
|---|---|---|---|
| | **Compass Investments Holdings, LLC**<br>**10181 Park Run Drive**<br>**#200**<br>**Las Vegas, NV 89145** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.6 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | $4,500,000.00 |
|---|---|---|---|
| | **Desert Land, LLC**<br>**10181 Park Run Drive**<br>**#200**<br>**Las Vegas, NV 89145** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.7 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | $595.80 |
|---|---|---|---|
| | **HD Supply**<br>**4825 E Cheyenne Avenue**<br>**Las Vegas, NV 89115** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.8 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | $50.14 |
|---|---|---|---|
| | **LeaseStar LLC**<br>**2201 Lakeside Blvd**<br>**Richardson, TX 75082** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.9 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | $671.77 |
|---|---|---|---|
| | **RealPage, Inc.**<br>**2201 Lakeside Blvd**<br>**Richardson, TX 75082** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| Debtor | **Desert Oasis Apartments, LLC** | | Case number (if known) | **18-12456-LEB** |
|---|---|---|---|---|
| | Name | | | |

| 3.3 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | $1,150,000.00 |
|---|---|---|---|
| | **Citation Financial, LLC** <br> **10181 Park Run Drive** <br> **#200** <br> **Las Vegas, NV 89145** | ☐ Contingent <br> ☐ Unliquidated <br> ☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ☐ No ☐ Yes | |

| 3.4 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | $114.34 |
|---|---|---|---|
| | **Classic Design Group** <br> **600 Cervantes Drive** <br> **Henderson, NV 89014** | ☐ Contingent <br> ☐ Unliquidated <br> ☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ☐ No ☐ Yes | |

| 3.5 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | $350,000.00 |
|---|---|---|---|
| | **Compass Investments Holdings, LLC** <br> **10181 Park Run Drive** <br> **#200** <br> **Las Vegas, NV 89145** | ☐ Contingent <br> ☐ Unliquidated <br> ☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.6 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | $4,500,000.00 |
|---|---|---|---|
| | **Desert Land, LLC** <br> **10181 Park Run Drive** <br> **#200** <br> **Las Vegas, NV 89145** | ☐ Contingent <br> ☐ Unliquidated <br> ☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.7 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | $595.80 |
|---|---|---|---|
| | **HD Supply** <br> **4825 E Cheyenne Avenue** <br> **Las Vegas, NV 89115** | ☐ Contingent <br> ☐ Unliquidated <br> ☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ☐ No ☐ Yes | |

| 3.8 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | $50.14 |
|---|---|---|---|
| | **LeaseStar LLC** <br> **2201 Lakeside Blvd** <br> **Richardson, TX 75082** | ☐ Contingent <br> ☐ Unliquidated <br> ☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ☐ No ☐ Yes | |

| 3.9 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | $671.77 |
|---|---|---|---|
| | **RealPage, Inc.** <br> **2201 Lakeside Blvd** <br> **Richardson, TX 75082** | ☐ Contingent <br> ☐ Unliquidated <br> ☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

B6F (Official Form 6F) (12/07) - Cont.

In re  **Desert Oasis Apartments, LLC** _____     Case No.  **11-17208-BAM** _____
                                    Debtor                                    (If known)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (*See instructions above.*) | CODEBTOR | HUSBAND, WIFE, JOINT OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO. **Criterion Brock** PO Box 22107 Milwaukie, OR 97269 | | | Trade debt | | | | 600.05 |
| ACCOUNT NO. **De Lage Landen Financial Services** PO Box 41602 Philadelphia, PA 19101 | | | Trade debt | | | | 176.27 |
| ACCOUNT NO. **Desert Land, LLC** 10181 Park Run Drive #200 Las Vegas, NV 89145 | | | | | | | 5,468,103.96 |
| ACCOUNT NO. **Ellipse Communications, Inc.** PO Box 801814 Dallas, TX 75380 | | | Trade debt | | | | 211.00 |
| ACCOUNT NO. **0304** **For Rent Magazine** 75 Remittance Drive #1705 Chicago, IL 60675-1705 | | | Trade debt | | | | 3,494.70 |

Sheet no. 1 of 4 continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal ➤  $  **5,472,585.98**

Total ➤  $

(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)

**Exhibit D_001**

LENARD E. SCHWARTZER (NV Bar No. 0399)
JEANETTE E. MCPHERSON (NV Bar No. 5423)
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone:     (702) 228-7590
Facsimile:      (702) 892-0122
Email:           bkfilings@s-mlaw.com

Counsel for Debtor and Debtor in Possession

**SCHWARTZER & MCPHERSON LAW FIRM**
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No. BK-S-11-17208-BAM |
| **DESERT OASIS APARTMENTS, LLC,** | Chapter 11 |
| Debtor. | |
| | Hearing Date: |
| | Hearing Time: |
| | Place:          Courtroom #3 |

## DESERT OASIS APARTMENT, LLC'S AMENDED PLAN OF REORGANIZATION

## ARTICLE I

## SUMMARY

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of DESERT OASIS APARTMENT, LLC (the "Debtor"). The Debtor owns the real property and improvements located in Las Vegas, NV described as Assessor's Parcel Number 162-28-310-001 (the "Property"). The Property consists of approximately 6.4 acres located on the south side of Mandalay Bay Road approximately 800 feet east of Las Vegas Boulevard. On the Property is an apartment complex consisting of 128 one- and two-bedroom units. Approximately, 92%-95% of the apartment units are occupied by tenants ("Tenants"). The Property is worth approximately $6,500,000 and is subject to a loan in the approximate amount of $3,076,000 now held by Wells Fargo Bank, N.A., as trustee for the Registered Holders of JPMorgan Chase Commercial Mortgage Pass-Through Certificates, Series 2004-FL1 (the "Bank") which has matured.

The current owner obtained title to the Property in August of 1999.

**Exhibit E_001**

This Plan provides for one class of priority claims; one class of secured claims; one class of unsecured claims; and one class of equity security holders. **Under the Plan, the rights of Tenants are unimpaired.** The Bank will receive distributions which the proponent of this Plan has valued at 100 cents on the dollar. The Plan proposes to pay the Bank in full over a period of 10 years using the rental income from the Tenants to pay market rate interest of 4.5% per annum and principal amortized over 25 years and a balloon payment at the end of 10 years obtained through sale or refinancing when the mortgage markets become more normal. Tenants with priority claims for deposits will be paid 100% in the normal course of operation of the apartment complex. Under the Plan, the unsecured claim of Tom Gonzales is unimpaired. Under the Plan, the unsecured creditors, except insiders, will be paid over eleven months without interest. Under the Plan, insiders will agree to subordinate their claims to the claims of other unsecured creditors. This Plan also provides for the 100% payment of all other administrative, including fees payable to the Office of the United States Trustee, and priority claims upon confirmation.

All creditors and equity security holders should refer to Articles III through V of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01 Class 1.      All allowed claims entitled to priority under § 507 of the Code.

2.02 Class 2.      The claim of the Bank, to the extent allowed as a secured claim under § 506 of the Code.

2.03 Class 3.      The claim of Tom Gonzales.

2.04 Class 4.      All unsecured claims allowed under § 502 of the Code.

2.05 Class 5.      Equity interests in the Debtor.

**Exhibit E_002**

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

## ARTICLE III

### TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,

### U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01    Unclassified Claims. Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.02    Administrative Expense Claims. Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the Effective Date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03    Priority Tax Claims. Each holder of a priority tax claim will be paid on the Effective Date of this Plan, in cash.

3.04    United States Trustee Fees. All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.

## ARTICLE IV

### TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01    Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|-------|-----------|-----------|
| Class 1 - Priority Claims | unimpaired | Class 1 is unimpaired by this Plan, and each holder of a Class 1 Priority Claim will be paid in full, in cash, upon the later of the effective date of this Plan as defined in Article VIII, or the date on which such claim is allowed by a final non-appealable order. |

**Exhibit E_003**

| Class 2 – Secured Claim of Bank (approximately $3,100,000) | impaired | Class 2 is impaired by this Plan. The Bank will be paid its claim in full, including principal, accrued interest and costs and reasonable attorneys' fees. This amount shall be paid with interest at the rate of 4.5% per annum from the Effective Date. Beginning on 1st day of the 1st month following the Effective Date, the Bank shall be paid an amount necessary to amortize its claim over 25 years together with interest. In addition payments for insurance and real estate taxes will be escrowed. The balance of the Claim shall be all due and payable in 10 years from the Effective Date. There will be no pre-payment penalty. The loan will be assumable. The Bank shall retain its lien on the Property with the same priority it held of the date of the Debtor's Petition. |
| Class 3 – Tom Gonzales ($10,000,000) | unimpaired | Class 3 is unimpaired by this Plan. Tom Gonzales will be paid the Parcel A Transfer Fee pursuant to the terms of the Desert Land Plan of Reorganization. That payment is due when, and only when, there is a Parcel A Transfer as defined in that plan. This claim is unsecured. This claim is subject to setoffs and counterclaims by the Debtor. |
| Class 4 - General Unsecured Creditors | impaired | Class 4 is impaired by this Plan. Non-Insider General Unsecured Creditors will be paid in full, without interest from the rent collected from the Tenant. Beginning on 1st day of the 1st month following the Effective Date, Class 4 will be paid $3,000 per month pro rata for approximately 9 months.<br>Desert Land, LLC, Citation Financial, LLC and Compass Investments Holdings, LLC have agreed to subordinate their claims to the claims of other unsecured creditors and will be paid only after all other unsecured creditors are paid in full and reasonable reserves for maintenance and repair of the Property have been funded. |
| Class 5- Equity Security Holders of the Debtor | unimpaired | Class 5 is unimpaired by this Plan. Equity Security Holders (the members of the Debtor) will retain their equity interest in the Debtor. |

**ARTICLE V**

**ALLOWANCE AND DISALLOWANCE OF CLAIMS**

5.01    Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

4

**Exhibit E_004**

1    filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has

2    been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

3         5.02    Delay of Distribution on a Disputed Claim. No distribution will be made on account

4    of a disputed claim unless such claim is allowed by a final non-appealable order.

5         5.03    Settlement of Disputed Claims. The Debtor will have the power and authority to settle

6    and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal

7    Rules of Bankruptcy Procedure.

8                                    **ARTICLE VI**

9            **PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

10        6.01    Assumed Executory Contracts and Unexpired Leases.

11            (a)    The Debtor assumes the following executory contracts and/or unexpired leases

12   effective upon the:

13                ▪ Leases with Tenants.

14                ▪ Westcorp Management Group - property management

15            (b)    The Debtor will be conclusively deemed to have rejected all executory

16   contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the

17   date of the order confirming this Plan, upon the effective date of this Plan. A proof of a claim arising

18   from the rejection of an executory contract or unexpired lease under this section must be filed no later

19   than thirty (30) days after the date of the order confirming this Plan.

20

21                                   **ARTICLE VII**

22                    **MEANS FOR IMPLEMENTATION OF THE PLAN**

23        The means for implementation of this Plan is the rents paid by Debtor's existing and future

24   Tenants. The Debtor will sell or refinance the Property within 120 months following the Effective

25   Date. The proceeds from such sale or refinance shall be used to fund the balloon payment to the Bank

26   as set forth in the Plan. If the Property is sold, the Debtor and its affiliates which own the adjacent

27   land will pay the Parcel A Transfer fee to Gonzales from the sales proceeds.

28

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 • Fax: (702) 892-0122

**Exhibit E_005**

**ARTICLE VIII**

**GENERAL PROVISIONS**

8.01    Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan. Additionally, the following definitions apply:

a.      The "Bank" shall mean Wells Fargo Bank, N.A., as trustee for the Registered Holders of JPMorgan Chase Commercial Mortgage Pass-Through Certificates, Series 2004-FL1.

b.      The "Property" shall mean the real property and improvements thereon located in Las Vegas, NV described as Assessor's Parcel Number 162-28-310-001 (the "Property") consisting of approximately 6.4 acres located on the south side of Mandalay Bay Road and approximately 800 feet east of Las Vegas Boulevard.

c.      The "Tenants" shall mean the tenants who rent apartment units on the Property.

d.      The "Effective Date" of this Plan is the fifteenth business day following the date of the entry of the order of confirmation. But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

e.      The "Desert Land Plan of Reorganization" is that plan of reorganization that was confirmed in the case of *In re Desert Land, LLC*, Case No. BK-S-02-16202-RCJ by an order entered April 13, 2003 as amended by decisions of the Bankruptcy Appellate Panel for 9th Circuit and the Court of Appeals for the 9th Circuit.

f.      The "Parcel A Transfer Fee" is the fee provided to be paid to Tom Gonzales in the Desert Land Plan of Reorganization when, and only when, there is a Parcel A Transfer as defined in the Desert Land Plan of Reorganization.

8.02    Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.03    Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

**Exhibit E_006**

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

8.04   Captions.   The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.05   Controlling Effect.   Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Nevada govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.06   Governance.   The Debtor will maintain its current form of governance and its current managers until such managers are replaced as provided in its existing Operating Agreement.

8.07   Revesting of Assets in the Debtor.   Upon confirmation of the Plan, all property of the estate of the Debtor shall be revested in the Debtor, pursuant to 11 U.S.C. § 1141(c), which shall retain such property as the Reorganized Debtor free and clear of all claims and interests of the creditors, except as set forth in the Plan.

8.08   Disbursing Agent.   The Debtor will serve as disbursing agent and shall make all payments required under the Plan. The disbursing agent may employ or contract with other entities to assist in or to perform the distribution of the property and shall serve without bond.

8.09   Request for Application of 11 U.S.C. § 1129(b).   The Debtor, as Plan proponent, will request the Court to find that the provisions for dissenting classes provide for fair and equitable treatment of said creditors, and to confirm its Plan notwithstanding the requirements of § 1129(a)(8) as to such classes.

8.10   Post-Confirmation Management of the Debtor.   The Debtor shall be managed post-confirmation by its current manager, David Gaffin.

8.11   Post-Confirmation Litigation.   The Debtor anticipates post-confirmation litigation with Tom Gonzales over the enforcement of the terms of the Plan of Reorganization entered in the Desert Land, LLC Chapter 11 case, as amended by the decisions of the Bankruptcy Appellate Panel for the 9th Circuit and the Court of Appeals for the 9th Circuit, and except for collection matters that may occur in the normal course of the Debtor's business, and the determination of certain claims. The Debtor reserves the right to prosecute any objections to claims.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**Exhibit E_007**

8.12 <u>Post-Confirmation Default</u>. In the event the Debtor becomes delinquent in duty or obligation under the Plan, the affected creditor or creditors may provide written notice of such default to the Debtor and its counsel at the following addresses:

Lenard E. Schwartzer, Esq.   Desert Oasis Apartments, LLC
Schwartzer & McPherson Law Firm  10181 Park Run Drive, Ste. 200
2850 S. Jones Blvd, Ste. 1    Las Vegas, NV 89145
Las Vegas, NV 89146-5308

The Debtor shall thereafter have fifteen (15) business days from receipt of said notice in which to cure the default. In the event such default remains uncured, the affected creditor or creditors may bring the matter before the Bankruptcy Court. At any hearing, the Bankruptcy Court may consider the reason for the default and the ability of the Debtor to bring the payment(s) current in a reasonable period of time. The Bankruptcy Court may also consider conversion of the case to a Chapter 7 of the Code or dismissal if the same is in the best interests of creditors.

8.13 <u>Federal Income Tax Consequences of the Plan</u>. The Plan will have limited tax consequences. The Debtor, as a limited liability company, has elected to be treated as a partnership for federal income tax purposes and, therefore, does not pay federal income tax. The Plan does not call for forgiveness of any debt. Creditors are advised to discuss with their own tax advisor any tax effect to the creditor of such payments.

8.14 <u>Injunction</u>. From and after the Effective Date, and except as provided in the Plan and the Confirmation Order, all entities that have held, currently hold, or may hold a Claim, are permanently enjoined from taking any of the following actions on account of any such Claims: (i) commencing or continuing in any manner any action or other proceeding against the Debtor, or its Property; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order against the Debtor or the Reorganized Debtor, or their respective property; (iii) creating, perfecting or enforcing any lien or encumbrance against the Debtor or the Reorganized Debtor, or their respective property; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability, or obligation due to the Debtor or the Reorganized Debtor, or their

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**Exhibit E_008**

1 respective property; or (v) commencing or continuing any action, in any manner or any place, that
2 does not comply with or is inconsistent with the provisions of the Plan or the Bankruptcy Code.

3      8.15   Exculpation. From the Petition Date through the Effective Date, the Debtor and its
4 managers, attorneys, agents and employees shall not have any liability to the Debtor or any other
5 claimants or creditors, or other parties in interest in the Bankruptcy Case for any act or omission in
6 connection with or arising out of the Bankruptcy Case, including, without limitation, prosecuting
7 confirmation of the Plan, confirmation of the Plan, and the administration of the estate, the Plan or the
8 property to be distributed under the Plan, except for gross negligence or willful misconduct, and in all
9 respects, such persons will be entitled to rely on the advice of counsel with respect to their duties and
10 responsibilities with respect to the Chapter 11 Case and the Plan.

11      8.16   Post-petition Employment of Counsel. Following the Effective Date, the Debtor may
12 continue to employ counsel for necessary legal services. Counsel may be paid from the Debtor
13 without further order of the Court.

14      8.17   Closing Case. The estate shall be deemed to be fully administered upon the
15 commencing of distributions to the Class 1 creditor and the case may be closed.

### ARTICLE IX

### DISCHARGE

18     Discharge. The Debtor shall be discharged from any debt that arose before confirmation of the
19 Plan, subject to the occurrence of the effective date.

20                            Respectfully submitted,

21                            Desert Oasis Apartments, LLC
22                            By____*/s/David Gaffin*____
23                                David Gaffin, Manager
                               The Plan Proponent
Prepared by:

24
25 SCHWARTZER & McPHERSON LAW FIRM

26 By: _____
Lenard E. Schwartzer, Esq.
27 *Counsel for the Debtor and Debtor in Possession*
*And Plan Proponent*
28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**Exhibit E_009**

# EXHIBIT B

_____
Honorable Gary Spraker
United States Bankruptcy Judge

Entered on Docket
April 23, 2020

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| In re: | ) | Case No.: 18-12454-GS (LEAD) |
| | ) | Chapter 11 |
| DESERT LAND, LLC, | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | *Jointly Administered with:* |
| In re:_ | ) | 18-12456-GS |
| | ) | |
| DESERT OASIS APARTMENTS, LLC, | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| In re: | ) | 18-12457-GS |
| | ) | |
| DESERT OASIS INVESTMENTS, LLC, | ) | |
| | ) | |
| Debtor. | ) | Hearing Date:   April 16, 2020 |
| _____ | ) | Hearing Time:   9:30 a.m. |

**MEMORANDUM DECISION[1]
[FILED UNDER SEAL]**

_____

[1] All references to "DL ECF No." are to the pleadings in Case No. 18-12454. All references to "DOA ECF No." are to the pleadings in Case No. 18-12456. All references to "DOI ECF No." are to the pleadings in Case No. 18-12457. All references to "SV ECF No." are to the pleadings in Case No. 18-12458.

1

On April 16, 2020, the court held a hearing regarding the Motion to Approve Stipulation and Related Relief[2] (**Motion to Approve**)[3] and the Joint Motion to Suspend the Bankruptcy or in the Alternative to Amend the Bid Procedures to Extend the Upcoming Auction[4] (**Motion to Suspend**).  Both motions seek relief related to the upcoming auction of real property scheduled for May 19, 2020.  For the reasons subsequently stated, the court shall grant the Motion to Approve and deny the Motion to Suspend.  To provide the parties with the context in which the court evaluated both requests for relief and reached its conclusion, some historical background is required.[5]

**Pertinent Background**

**I.    The Bankruptcy Case is Instituted.**

On April 30, 2018 (**Petition Date**), Bradley J. Busbin, as Trustee of the Gonzales Charitable Remainder Unitrust One (**Busbin**), filed an involuntary Chapter 7 bankruptcy petition against Desert Land, LLC[6] (**Desert Land**), Desert Oasis Apartments, LLC[7] (**Desert Apartments**), Desert Oasis Investments, LLC[8] (**Desert Investments, and together with Desert Land and Desert Apartments, the Debtors**), and SkyVue Las Vegas, LLC[9] (**SkyVue**).  Weeks later, Debtors and SkyVue moved to substantively consolidate their respective cases, arguing, in pertinent part, that the pooling of their respective real property assets would maximize value for

---

[2] DL ECF No. 1025.

[3] The court highlights defined terms in this Memorandum Decision for ease of reference.

[4] DL ECF No. 1039.

[5] Pursuant to FED. R. EVID. 201(b), the court takes judicial notice of all pleadings filed on the dockets and claims register in the bankruptcy cases for Desert Land, Desert Apartments, Desert Investments, and SkyVue.

[6] DL ECF No. 1.

[7] DOA ECF No. 1.

[8] DOI ECF No. 1.

[9] SV ECF No. 1.

2

the estate.[10]  The court ultimately denied the request for substantive consolidation, though it granted Debtors' and SkyVue's requests to convert the cases to Chapter 11 and jointly administer the same.[11]

### A.  The Ownership Structure.

As of the Petition Date, David Gaffin (**Gaffin**) and Howard Bulloch (**Bulloch**) were Debtors' and SkyVue's co-managers.[12]

Desert Land is the 100% owner of Desert Investments.[13]

Desert Land and Desert Apartments are owned in the following percentages: 99.5% by SkyVue and .5% by Bulloch's brother, Bruce.[14]

SkyVue is owned in the following approximate percentages: 61.7% by Compass Investments, LLC (**Compass**), 30.2% by Citation Financial (**Citation**), 5.36% by Shotgun Creek Investments, LLC and 2.68% by Shotgun Creek Family Investments, LLC.[15]

Compass "is owned by the Bulloch and Gaffin Trust, The Bulloch Family Limited Partnership, and a trust of Clyde Turner … and Bruce Bulloch."[16]

---

[10] DL ECF Nos. 9-10, as amended by DL ECF Nos. 27-28.

[11] DL ECF Nos. 79, 89, 90; DOA ECF No. 65; DOI ECF No. 48; SV ECF No. 51.

[12] Amended Declaration of David Gaffin in Support of Motion to Substantively Consolidate Cases (**Gaffin SC Declaration**), DL ECF No. 28 at ¶¶ 2-3.

[13] Gaffin SC Declaration at ¶ 5.

[14] Gaffin SC Declaration, ¶ 4; Declaration in Support of Motion to Convert Case to a Chapter 7 (**Shapiro Declaration**), SV ECF No. 104 at ¶ 3; Transcript of March 11, 2019 Oral Ruling re Motion to Appoint Trustee (**March 11, 2019 Oral Ruling**), DL ECF No. 537 at 10:17-19.

[15] March 11, 2019 Oral Ruling at 10:22-11:2.  *See also* Gaffin SC Declaration at ¶ 7 (stating that Bulloch, Gaffin, "and their trusts and other related entities own more than 86% of Skyvue.").

[16] March 11, 2019 Oral Ruling at 11:10-13.

3

Citation "is owned by [the] Bulloch and Gaffin Trust, a Bulloch Family Limited Partnership, a Gaffin Family Limited Partnership, and a trust of … Clyde Turner and Bruce Bulloch…."[17]

## B. The Real Property.

Debtors "own an aggregation of 38.475 net acres of land generally located at the southeast corner of Las Vegas Boulevard South and East Mandalay Bay Road, Las Vegas, Clark County, Nevada…."[18]  As described in Debtors' Third Amended Disclosure Statement, filed on February 12, 2019, the parcels of real property are owned in the following manner:

> 1.    *"Aspen Property"* means Assessor Parcel Number 162-28-301-034 consisting of approximately 3.11 acres located at 3965 Las Vegas Boulevard South, Las Vegas, Nevada 89119.  On the Aspen Property is the Desert Oasis Motel.  The Aspen Property is owned by Desert Land.

> 2.    *"Desert Apartments Property"* means Assessor Parcel Number 162-28-310-001 consisting of approximately 6.4 acres located on the south side of Mandalay Bay Road approximately 800 feet east of Las Vegas Boulevard.  On the property is an apartment complex consisting of 128 one- and two-bedroom units.  The Desert Apartments Property is owned by Desert Apartments.

> 3.    *"Desert Investments Property"* means Assessor Parcel Number 162-28-202-013 consisting of approximately 8.96 undeveloped acres at 95 E. Ali Baba Lane, Las Vegas, Nevada 89119.  The Desert Investments Property is owned by Desert Investments.

> 4.    *"Desert Land Property"* means Assessor Parcel Numbers 162-28-301-001, 162-28-301-002, 162-28-301-010, 162-28-301-029, 162-28-301-032, 162-28-301-033, 162-28-301-034, 162-28-301-036, 162-28-301-037, and 162-28-302-001 consisting of approximately 20 acres located along the east side of Las Vegas Boulevard South, south side of Mandalay Bay Road, east side of Haven Street and north side of Four Seasons Drive, Las Vegas, Nevada.  On the property are several buildings including the Desert Oasis Motel.  The Desert Land Property includes the Aspen Property.  The Desert Land Property is owned by Desert Land.

---

[17] March 11, 2019 Oral Ruling at 11:14-17.

[18] Gaffin SC Declaration at ¶ 6.

4

> The Aspen Property, the Desert Apartments Property, the Desert Investments Property and the Desert Land Property are referred to as the **"Assemblage"** or the **"Real Property"**.[19]

SkyVue does not own any real property.[20]  Indeed, SkyVue has "very little or no assets that can be administered and the Estate is in a holding pattern awaiting the sale of" the Real Property.[21]  Additionally, out of the remaining Debtors, "[o]nly Desert Apartments has had positive cash flow" while both Desert Land and Desert Investments "own property with little or no income held for development."[22]

### C.  The Major Players.[23]

As previously noted, Busbin instituted this bankruptcy proceeding by filing involuntary Chapter 7 petitions against each of the Debtors and SkyVue.  Busbin filed proofs of claim in each of Debtors' respective bankruptcy cases asserting a secured claim of $13,177,708.33 as of July 18, 2018, based on a "recorded Judgment."[24]  In their Third Amended Disclosure Statement, Debtors

---

[19] ECF No. 455 at 4:12-5:5 (some emphasis in original, some emphasis added).

[20] SV ECF No. 63 at Schedule "A/B".

[21] Shapiro Declaration at ¶ 11.

[22] Reply Brief Re Amended Motion to Substantively Consolidate Cases, DL ECF No. 64 at 4:23-5:2.  *See also* March 11, 2019 Oral Ruling at 21:20-24 ("It should be noted that … Desert Apartments is the only debtor currently producing income, and Northern Trust Company is the only secured creditor getting paid out of the existing cash collateral orders in the bankruptcy."); Desert Investments Monthly Operating Report for the month ending February 2020, DL ECF No. 1031 (reflecting $29,051 in cash/cash equivalents, $135,381 in total receipts since the Petition Date, and $0 in receipts for February 2020); Desert Apartments Monthly Operating Report for the month ending February 2020, DL ECF No. 1030 (reflecting $145,071 in cash/cash equivalents, $2,086,661 in total receipts since the Petition Date, and $105,072 in total receipts for February 2020); Desert Land Monthly Operating Report for the month ending February 2020, DL ECF No. 1029 (reflecting $89,744 in cash/cash equivalents, $657,721 in total receipts since the Petition Date, and $32,168 in total receipts for February 2020).

[23] This section only discusses the individuals and/or entities who have been active throughout this bankruptcy case regarding the sale of the Real Property.

[24] *See* Desert Land Claims Register, POC 4; Desert Apartments Claims Register, POC 2; Desert Investments Claims Register, POC 2.  The priority of Busbin's asserted secured claim is the subject of a pending adversary in the Desert Land bankruptcy case.  *See* Adversary No. 19-01108.

represented that the undisputed portion of Busbin's claim was $10,000,000 as of February 12, 2019.[25]

The Northern Trust Company (**Northern Trust**) filed a proof of claim in the Desert Apartments' bankruptcy case asserting a secured claim of $4,914,554.35 as of July 17, 2018. Northern Trust and Busbin are the only two creditors with secured claims against Desert Apartments.[26]  In their Third Amended Disclosure Statement, Debtors represented that the undisputed portion of Northern Trust's claim was $4,950,000 as of February 12, 2019.[27]

Juniper Loan Servicing, Inc. (**Juniper**) filed proofs of claims in each of Desert Land's and Desert Investments' bankruptcy cases asserting a secured claim of $21,493.033.50 as of November 20, 2018.[28]  Other than Juniper and Busbin, the Clark County Treasurer is the only other party asserting a secured claim against Desert Investments in the amount of $99,450.26 as of June 19, 2018.[29]  In their Third Amended Disclosure Statement, Debtors represented that the undisputed portion of Juniper's claim was $18,500,000 as of February 12, 2019.[30]

Shotgun Creek Investments, LLC, Shotgun Las Vegas, LLC, and Shotgun Creek Investments Nevada, LLC (**collectively, the Shotgun Entities**)[31] filed several proofs of claim in Desert Land's bankruptcy case asserting tens of millions of secured claims.[32]  In their Third Amended Disclosure Statement, Debtors represented that the undisputed secured claim of the

---

[25] DL ECF No. 455 at 7.

[26] *See* DOA ECF No. 96 at Schedule "D" and Desert Apartments Claims Register.

[27] DL ECF No. 455 at 7.

[28] Desert Land Claims Register, POC 87; Desert Investments Claims Register, POC 3.

[29] Desert Investments Claims Register at POC 1. *See also* DOI ECF No. 69 at Schedule "D".

[30] DL ECF No. 455 at 7.

[31] The court's reference to the "Shotgun Entities" shall also include all other Shotgun-affiliated parties, including, but not limited to, Shotgun Creek Family Investments, LLC.

[32] Desert Land Claims Register at POCs 69-86.

6

Shotgun Entities was $154,000,000 as of February 12, 2019.[33]  As the court has previously found, the Shotgun Entities' secured claim accrues interest at the approximate rate of $2.2 to $2.3 million a month.[34]  That means that the Shotgun Entities undisputed secured claim has potentially[35] increased by no less than $28,600,000 from March 2019 through March 2020, for a total debt in excess of $180,000,000.[36]

Desert Land Loan Acquisition (**"DLLA"**), which was formed by "principals of Desert Land" and is managed by Bulloch, acquired over 51% of the beneficial interest in a loan (**"Aspen Loan"**) made to Desert Land.[37]  A group of creditors referred to as the **"Sher Group"** owns a minority beneficial interest in the Aspen Loan.[38]

### D.  Chapter 11 Trustees.

On March 11, 2019, the court read an oral ruling into the record in support of its determination that "cause" existed to appoint a trustee under 11 U.S.C. ¶ 1104, the findings of fact and conclusions of law of which are fully incorporated herein by reference.[39]  On March 21, 2019, the court entered an order approving the appointment of a Chapter 11 trustee.[40]  On April 9, 2019,

---

[33] DL ECF No. 455 at 7.

[34] March 11, 2019 Oral Ruling at 15:18-24.  *See also* March 11, 2019 Oral Ruling at 32:10-15 ("Gaffin has testified that this indebtedness will increase again by [$]2.2 … to $2.3 million a month due to the Shotgun [E]ntities' accruing interest.  Based upon this concession, the debtors have incurred no less than $13.2 million in interest during the more than six months this case has been pending since conversion.").

[35] The court says "potentially" because the accrual of post-petition interest is only appropriate to the extent an equity cushion exists on the Aspen Parcel and/or the Desert Land Property.

[36] Calculated at a monthly interest accrual of $2.2 million times 13 months.

[37] DL ECF No. 1007, Exhibit A at Recital N; Declaration of Howard Bulloch in Support of Opposition to Chapter 11 Trustee Kavita Gupta's Motion to Approve Settlement Agreement with the Sher Group Pursuant to Federal Rule of Bankruptcy Procedure 9019, DL ECF No. 753 at ¶ 2.  *See also* March 11, 2019 Oral Ruling at 34:10-12 ("As of February 28, 2017, Bulloch was DLLA's manager and was the person designated to act on behalf of DLLA's interest.").

[38] *See generally*, DL ECF No. 1007, Exhibit A.

[39] *See* March 11, 2019 Oral Ruling.

[40] DL ECF No. 519.

7

the court entered an order severing SkyVue's Chapter 11 case from the Debtors' current jointly administered cases.[41]  Consistent with this severance, the court approved the appointment of two separate Chapter 11 trustees, namely Brian Shapiro (**"Trustee Shapiro"**) in SkyVue's case and Kavita Gupta (**"Trustee Gupta"**) in Debtors' jointly administered cases.[42]

## II.    Sales Efforts of Real Property.

### A.  Gaffin and Bulloch's Sales Efforts.

Debtors have been attempting to sell the Assemblage since 2003 when they emerged from a prior bankruptcy.  Gaffin has previously described the significant ebbs and flows of the Las Vegas real estate market, and Debtors' responses.[43]   During this period, Debtors have retained and employed some of the most respected firms in commercial real estate, including Merrill Lynch in 2005, Goldman Sachs in 2006, CB Richard Ellis in 2007, Cantor Fitzgerald and Cushman-Wakefield in 2015.[44]  Gaffin and Bulloch have previously testified that they "expended roughly 85 to 90 percent of their work time trying to sell" the Real Property.[45]  However, Debtors were still unable to produce a serious buyer with no prospective purchaser moving past the earnest money stage.[46]

Debtors resorted to accumulating loans, including from some of the major players noted above, to stay afloat.[47]  Evidence previously presented to the court in support of the Trustee Motion

---

[41] DL ECF No. 541.

[42] DL ECF Nos. 528-529.

[43] Declaration in Support of Opposition to Motion to Appointment of Chapter 11 Trustee (**Gaffin Trustee Declaration**), DL ECF No. 151 at ¶ 15.

[44] *Gaffin Trustee Declaration* at ¶ 17.  *See also* March 11, 2019 Oral Ruling at 40:2-9 ("[T]he debtors have retained a veritable who's who in commercial real estate to market and broker the real property.  Since 2004, the debtors have retainer Scripps, Merrill Lynch, Goldman Sachs, C.B. Richardson, Cantor Fitzgerald, Cushman & Wakefield, Colliers, iCore, and Capital Markets, yet none of these commercial brokers have been able to sell the property over the past 15 years.").

[45] March 11, 2019 Oral Ruling at 35:24-36:2.

[46] March 11, 2019 Oral Ruling at 39:22-40:1.

[47] Gaffin Trustee Declaration at ¶ 24.

8

established that at the same time, Debtors were providing undocumented, interest-free loans to insiders and related entities, including Bulloch, Gaffin, Compass, Citation, and Bruce Bulloch.[48]

These events precipitated the institution of this bankruptcy case, as previously discussed. Gaffin and Bulloch unsuccessfully continued to pursue a sale of the Assemblage for more than 11 months prior to the appointment of Trustee Gupta  Ultimately, the court ultimately found "cause" under 11 U.S.C. § 1104 to appoint a Chapter 11 trustee, finding, in pertinent part:

> Bulloch and Gaffin have had the benefit of 16 years, two [prior] confirmed plans, and more than nine months in this bankruptcy to effectuate a sale, yet the only offer that they formally presented to the Court was [that of LVB] in which they did minimal due diligence, never received earnest money, and had all the makings of everything … they appeared to want: substantial payout, a continuing equity interest, and a sale format which would protect them from tax liability.

> The Courts finds that Bulloch and Gaffin are elevating their own self-interest about the interest of the creditors and parties in interest.[49]

The court therefore determined that the appointment of "[a]n independent trustee who's not conflicted by the many hats Bulloch and Gaffin now wear in this case" was warranted.[50]

**B. Trustee Gupta's Sales Efforts.**

Less than one week after being appointed Chapter 11 trustee, Trustee Gupta filed a status report expressing confidence that any sale of the Real Property would pay all creditors in full:

> [T]he Trustee has conferred with the Debtors about the history of their efforts to market the properties.  She has also obtained information from Colliers and plans a follow-up meeting on April 10, 2019.  The Trustee has also reviewed several offers made for the real properties.  Based thereon, the Trustee expects that

---

[48] March 11, 2019 Oral Ruling at 19:1-20:7.  In an April 8, 2019, status report, Trustee Gupta represented "that litigation to recover avoidable transfers will be deferred until it is known for certain whether all creditors will be paid in full through sale of the real properties."  DL ECF No. 538 at 8:2-4.  It is unclear to the court if Trustee Gupta intends to pursue any such avoidable transfers should the auction of the Real Property not produce sums to pay all creditors in full.

[49] March 11, 2019 Oral Ruling at 52:24-53:7.

[50] March 11, 2019 Oral Ruling at 57:5-9.

9

the properties can be sold – either separately or as a bulk sale – for a sum sufficient to pay all secured and unsecured creditors in full.[51]

In a status report filed one month later, Trustee Gupta, with Colliers' continued assistance, continued to express optimism that any sale of the Real Property would pay all creditors in full, albeit at a substantially lower listing price than previously marketed under the helm of Bulloch and Gaffin:

> After a consultation with non-insider secured lenders, the Trustee has published a listing price of $325 million for all 38.5 acres … Colliers … continues to act as the brokers for the Trustee in connection with the sale of the [Real] Property. The Trustee has also had direct communications with two potential purchasers that are excluded from the Colliers listing agreement. The Trustee expects that the properties can be sold – either separately or in bulk – for a sum sufficient to pay all secured and unsecured creditors in full.[52]

Several months after her appointment, and without any sales prospects presented to the court, Trustee Gupta continued to press forward to market and sell the Real Property by requesting to extend Collier's employment as broker and add Keen-Summit Capital Partners LLC (**Keen-Summit**) to the estate's arsenal as well.[53]  Up to that point, the Trustee, similarly to Bulloch and Gaffin, had not received any viable offers.[54]  Therefore, Trustee Gupta's going-forward strategy, with the assistance of Colliers and Keen-Summit, was to attempt to market the Assemblage as one unit and simultaneously market the Real Property as separate parcels.[55]  Trustee Gupta's strategy

---

[51] DL ECF No. 538 at 7:20-24.

[52] DL ECF No. 659 at 2:12-18.

[53] DL ECF Nos. 878-881, 888, 889, 895, 907, 925-928.

[54] *See* Chapter 11 Trustee Kavita Gupta's Case Status Conference Statement, dated December 2, 2019, filed under seal as reflected at DL ECF Nos. 898 and 906, at 4:18-20 ("As of October 2019, neither the Debtors nor the Trustee had received any viable offers for the [Real] Property during the 14 month period of the Colliers listing, and the parties who had expressed interest had largely gone silent."); DL ECF No. 916 at 2:11-12 ("While there was and may still be interest in the entire assemblage, no viable offers had materialized by the time the prior Colliers listing agreement expired on October 18, 2019.").

[55] *See* Chapter 11 Trustee Kavita Gupta's Case Status Conference Statement, dated December 2, 2019, filed under seal as reflected at DL ECF Nos. 898 and 906, at 4:17-6:5.

10

to test the market for the sale of the individual parcels was met with opposition from Bulloch, Gaffin, and entities they controlled and/or in which they owned an interest.[56]  Bulloch, Gaffin, and their entities, claimed the only option Trustee Gupta should consider is a sale of the Real Property as an Assemblage.[57]  The Trustee responded that "experience has demonstrated that it's time to take a different approach."[58]  The court granted the Trustee's proposed retention of Colliers and Keen-Summit, though it made clear that "approval of the … Agreement[s] is not approval of any marketing or sales process [and t]he Trustee shall separately seek Court approval of bid and sale procedures."[59]

### C.  Bid and Sale Procedures.

On January 3, 2020, the court approved Trustee Gupta's separate request for bid and sale procedures by entering an "Order (A) Approving Bidding Procedures and Form of Purchase and Sale Agreement, (B) Setting Auction Date and Sale Hearing, and (C) Granting Related Relief"[60] (**Bid Procedures Order**).  The Bid Procedures established an April 30, 2020, deadline for the submission of offers and a May 19, 2020, auction.[61]  Attached to the Bid Procedures Order was a

---

[56] Such opposition was unsurprising as the court found in its March 11, 2019 Oral Ruling, Bulloch and Gaffin's primary focus over their unsuccessful 16-year period of attempting to sell the Real Property was to sell the Assemblage, and not individual parcels.  *See* March 11, 2019 Oral Ruling at 31:2-8 ("Based upon the pleadings, the testimony at the evidentiary hearing, and the debtors' continued use of appraisals that only value the property at – in a total amount, it is apparent that Gaffin and Bulloch have not considered or pursued the prospect of selling each of debtors' properties separately in order to – in order to satisfy the separate, though sometimes overlapping, creditor claims.").

[57] *See* DL ECF Nos. 899 and 944 (Debtors); DL ECF Nos. 900, 902, 922, and 946 (Compass and Citation); DL ECF Nos. 901, 914, and 915 (DLLA, Bulloch and his family trusts, and Gaffin and his family trusts, who are collectively referred to as the **Bulloch Parties**); DL ECF No. 945 (DLLA).

[58] DL ECF No. 917 at 2:8-9.

[59] DL ECF No. 953 at ¶ 7; DL ECF No. 954 at ¶ 5.  *See also* DL ECF No. 970.

[60] ECF No. 972.  The Bid Procedures Order was submitted by Trustee Gupta and approved by counsel for each of Juniper, the Bulloch Parties, Desert Investments, Shotgun Entities, Busbin, Northern Trust, and the Sher Creditors.

[61] DL ECF No. 972 at ¶ 3.

11

form of Bidding Procedures (**Bid Procedures**), which clarified that "Debtors' assets shall be simultaneously marketed for sale as an 'Assemblage' and as four separate lots…."[62]  The Bid Procedures further stated that "[a]t any time prior to [April 30, 2020], the Trustee shall be permitted to make an application to the Bankruptcy Court and obtain a hearing on seven (7) days' notice for authorization to withdraw any parcel … and dispose of such parcel(s) in a manner other than governed by these bid procedures…."[63]  The Bid Procedures also gave Trustee Gupta considerable discretion relating to the procedures and upcoming auction:

> The Trustee reserves her right to modify these Bidding Procedures in her reasonable business judgment in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Purchased Assets, including, without limitation: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; and (e) rejecting any or all bids or Bids.[64]

### D. The Real Property's Decreasing Value.

At the beginning of the case, Debtors, via Bulloch and Gaffin, submitted an appraisal performed by Keith Harper, MAI (**Harper**) valuing the Assemblage at $460,000,000 as of October 26, 2017.[65]  In January 2019, Debtors, via Bulloch and Gaffin, submitted a more recent appraisal from Harper valuing the Assemblage at $385,000,000[66] as of December 1, 2018—a dramatic

---

[62] DL ECF No. 972, Exhibit A at § 1.

[63] DL ECF No. 972, Exhibit A at § 2.

[64] DL ECF No. 972, Exhibit A at § 10.

[65] DL ECF No. 254, Exhibit B.  *See also* Amended Declaration of David Gaffin in Support of Motion to Substantively Consolidate Cases, DL ECF No. 28 at ¶ 6.

[66] This value conclusion for the Assemblage results in a value per acre of approximately $10,007,798 ($385,000,000 divided by 38.47 acres).  Yet, as the court noted in its March 11, 2019 Oral Ruling, "Gaffin testified that the debtors have never listed the real property for a price less than $10.5 million an acre, a price which the Court notes is now higher than both appraisals before the Court, including the $10 million-per-acre Harper appraisals."  March 11, 2019 Oral Ruling at 44:21-25.

$75,000,000 decline from Harper's value conclusion from a little more than 13 months prior.[67]

Harper's updated value conclusion was also more than $75,000,000 higher than an appraisal

performed by Charles E. Jack, IV, MAI (**Jack**), who valued the Real Property at $307,800,000 as

of December 4, 2018, "less the estimated cost of removing improvements and a $9,384,000

reduction in value for an easement."[68]

     The viable offers received during this case have either been around, or significantly less

than, Jack's appraisal.  Indeed, as the court found in its March 11, 2019 Oral Ruling, the only

seemingly viable offers received during Bulloch and Gaffin's reign were in September 2018 from

Crescent Heights for $250 million and $320 million, which would have fully paid all creditors and

generated a return to equity.[69]  Bulloch and Gaffin, though, rejected these offers.[70]

---

[67] DL ECF No. 455 at 5:19-21 and Exhibit B.

[68] DL ECF No. 455 at 5:21-25 and Exhibit C.

[69] As the court found:

     The evidence at the hearing established that in September
2018, Crescent Heights made an offer for the entire property for a
total purchase price of $250 million.  Debtors rejected that offer,
characterizing it as a lowball … offer.  Crescent Heights nonetheless
came back with a $320 million offer for less than all of the property.
Once again, the debtors felt that this was a lowball offer.

     Gaffin testified that Crescent Heights, however, the
entity that made the rejected offers, was a serious buyer that he
acknowledged had the ability to finally close the sale that had
eluded them for 16 years.  Mr. Gaffin did testify that discussions
with Crescent Heights remaining ongoing.  He did also recognize
that a $320 million sale, based upon the debtors' own prepared
projections, would provide a return to … equity, including
Compass and Citation, by more than $65 million after payment of
all creditors.  There is nothing on the docket to date suggesting any
further details or any further movement on discussions with
Crescent Heights.

March 11, 2019 Oral Ruling at 42:5-23.

[70] *See* March 11, 2019 Oral Ruling at 25:19-26:2 ("Based on the court's review of the
transcript … excerpts from 2004 exams, as well as Gaffin and Bulloch's testimony at the
hearing, it is apparent that this offer was rejected in part because the sale would not provide them
and other insiders with sufficient proceeds to pay off all potential tax liabilities.  Indeed, Mr.
Gaffin testified at the 2004 exam that although $250 million could pay the debtors' debts, he,

13

Approximately 20 months after submitting the above offers, Crescent Heights remains interested, albeit at a substantially discounted price. Matthew Bordwin (**Bordwin**), the principal and managing director of Keen-Summit, represents to the court that Crescent Heights is interested in serving as the stalking horse bidder at a $70 million price for approximately 26 acres of land and a $80 million price for the Assemblage.[71] Bordwin further represents that another entity has submitted an all-cash offer of $50 million for the Assemblage.[72] Both of these offers were on the high end of the "[v]erbal pricing guidance communicated to Keen-Summit and Colliers by potential buyers of the Assemblage prior to the crash [of] $30 million to $55 million."[73] Indeed, the highest other offer received for the Assemblage is for $175 million, though Exec West Properties (**Exec West**), the proposed buyer, "told the brokers and the Trustee that it was willing to proceed only if all of the secured lenders consented to a sale at the offer price, and that no auction take place."[74] Exec West's offer would not be sufficient to pay all secured creditor's claims, which informs the conditions placed on their offer. Indeed, Exec West's conditions are consistent with buyer communications received by Keen-Summit and Colliers "in February that they were deterred by the prospect of losing the property to secured creditor credit bid…."[75]

Meanwhile, pursuant to the parallel track approved under the Bid Procedures Order regarding the dual marketing of both the Assemblage and individual parcels, Trustee Gupta has an

---

Gaffin, Compass, and Citation, in pertinent part, would be left with a tax liability without the money to pay it.").

[71] Declaration of Matthew Bordwin in Support of Chapter 11 Trustee Kavita Gupta's Response to Joint Motion to Suspend the Bankruptcy or in the Alternative to Amend the Bid Procedures to Extend the Upcoming Auction (**Bordwin Declaration**), DL ECF No. 1054 (filed under seal), at ¶ 9 and Exhibit B.

[72] Bordwin Declaration at ¶ 9 and Exhibit B.

[73] Bordwin Declaration at ¶ 10.

[74] Bordwin Declaration at ¶ 9.

[75] Bordwin Declaration at ¶ 11.

14

executed purchase agreement for $9 million on the Desert Apartments Property and anticipates entering into a $17 million agreement for the Desert Investments Property.[76]

### III.    The Current Motions.

#### A.    Trustee Gupta's Role, Fiduciary Duty, and Exercise of Business Judgment.

The United States Bankruptcy Appellate Panel for the Ninth Circuit has aptly summarized the role a Chapter 11 trustee plays:

> The trustee's role in a chapter 11 case is statutorily based. Foremost, the chapter 11 trustee is the representative of the estate. § 323(a). As such, the trustee is charged with various duties listed in § 1106(a), which incorporates some subsections of § 704. Under § 704, the trustee is held accountable for the estate, investigates the debtor's financial affairs, and furnishes information concerning the estate and its administration to parties-in-interest. § 704(a)(2), (4) and (7).[77]

These responsibilities carry with them a fiduciary duty to "each creditor of the estate" and "a duty to treat all creditors fairly and to exercise that measure of care and diligence that an ordinarily prudent person under similar circumstances would exercise."[78]  The trustee's fiduciary duty, however, does not extend to "'act[ing] for the benefit of any particular creditor'" or party-in-interest.[79]

As previously noted, the Bid Procedures give the Trustee discretion, in the exercise of her business judgment, to take various actions relating to the bidding procedures and upcoming auction.  The "business-judgment rule" has been defined as "[t]he judicial presumption that in making business decisions not involving direct self-interest or self-dealing, corporate directors act

---

[76] Bordwin Declaration at ¶ 9.

[77] *Nilsen v. Neilson (In re Cedar Funding, Inc.)*, 419 B.R. 807, 816-17 (B.A.P. 9th Cir. 2009).

[78] *Hall v. Perry (In re Cochise College Park, Inc.)*, 703 F.2d 1339, 1357 (9th Cir. 1983). *See also U.S. v. Aldrich (In re Rigden)*, 795 F.2d 727, 730 (9th Cir. 1986).

[79] *Reno Snax Sales, LLC v. Heritage Bank of Nev. (In re Reno Snax Sales, LLC)*, 2013 WL 3942974 (B.A.P. 9th Cir. July 31, 2013) *quoting* 3 Collier on Bankruptcy ¶ 323.02[1] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. rev. 2012).

on an informed basis, in good faith, and in the honest belief that their actions are in the corporation's best interest."[80]

### B. Motion to Approve.

By the Motion to Approve, Trustee Gupta asks to approve a stipulation (**Stipulation**) relating to Juniper's secured claim collateralized by the Desert Investments Property. The Motion to Approve and supporting Declaration of Trustee Gupta discuss her efforts to ensure feedback from all secured creditors regarding the terms of the Stipulation:

> The Trustee has advised the secured creditors of Desert Land, LLC and Desert Oasis Apartments, LLC regarding the terms of this Stipulation and received their input thereon. After the final comments by the other secured creditors were incorporated into the Stipulation, the Trustee has also given notice of the Stipulation and this proposed Motion to the United States Trustee. Neither the secured creditors nor the U.S. Trustee have expressed opposition to the Trustee to the terms outlined herein.[81]

In pertinent part, the Stipulation provides that Juniper will not file a motion for relief from the automatic stay prior to the auction for fear of chilling the bidding at the auction. In consideration therefore, the Trustee, in pertinent part, agrees to entry of an order modifying the automatic stay in Juniper's favor if, but only if, "there are no offers on the Assemblage or the [Real] Property by May 14, 2020...."[82]

The only party opposing the Motion to Approve is DLLA.[83] In its reply to DLLA,[84] Juniper argues that DLLA lacks standing to object because it is not a creditor of Desert Investments. Juniper is correct.[85] At the hearing, DLLA's counsel responded that it does have standing under

---

[80] BLACK'S LAW DICTIONARY (11th ed. 2019).

[81] Motion to Approve at 4:6-12. *See also* Declaration of Kavita Gupta in Support of Motion to Approve Stipulation and Related Relief (filed under seal) at ¶¶ 10-11.

[82] Motion to Approve at 4:17-5:8.

[83] DL ECF No. 1037.

[84] DL ECF No. 1048.

[85] *See Hughes v. Tower Park Props., LLC (In re Tower Park Props., LLC)*, 803 F.3d 450 (9th Cir. 2015) (discussing standing to object in a bankruptcy proceeding).

16

1   the Bid Procedures and Bid Procedures Order, pursuant to which it is entitled to notice of, and an

2   opportunity to object to, any proposal by which the Trustee seeks to withdraw parcels of property

3   from a sale of the Assemblage.  Yet, this is not what is happening under the Stipulation.  Instead,

4   Trustee Gupta, in a sound and reasonable exercise of her business judgment and consistent with

5   her fiduciary duty to the estate, is seeking to delay Juniper's existing right to file a motion for relief

6   from automatic stay to avoid chilling bidding prior to the auction.  This is exactly why the Court

7   appointed a chapter 11 trustee – to independently evaluate the sales prospects, develop a sales

8   process, and to exercise her business judgment.  The record demonstrates that Trustee Gupta has

9   done exactly that.

10        The court additionally reminds DLLA of an important point it and other affiliated insiders

11   seem to overlook: these cases are not substantively consolidated and never have been.  Rather,

12   they are only being jointly administered.  Up to this point, the attempt to aggregate for sale parcels

13   of property owned by separate estates has been because of the consent, and considerable patience

14   of, secured creditors of the separate estates based upon a harmonic chorus that considerable equity

15   existed to pay all creditors of all estates.  There is no obligation for secured creditors to continue

16   down a path that has not worked for almost two decades when all the risk will be borne by them

17   for the unlikely benefit of insiders and their related parties who assisted in creating the current

18   state of circumstances.  For these reasons, the court therefore finds and concludes that DLLA's

19   opposition is due to be denied because it lacks standing to object.  DLLA fears that losing a parcel

20   from the Assemblage will ultimately harm *its* interest as a secured creditor in the Desert Land

21   bankruptcy.  But DLLA has no interest, and hence no standing, to assert any position in the Desert

22   Investments bankruptcy.

23        Even if DLLA has standing, DLLA's opposition must still be denied on the merits.  First,

24   contrary to DLLA's opposition, the Motion to Approve and Stipulation comply with Local Rule

25   4001 and FED. R. BANKR. P. 4001, which encourage negotiation and resolution of stay relief

26   matters upon appropriate notice.  Second, the record before the court, as previously discussed,

27   belies DLLA's implicit argument that the recent coronavirus pandemic may affect the submission

28

1    of higher and better bids than already received.  Indeed, the significant hiccups experienced by the

2    Trustee to receive viable offers to fully pay all creditors is simply the culmination of almost two

3    decades worth of delay and missed opportunities in the sale of the Assemblage.  More importantly,

4    the basis for relief from stay advanced by Juniper appears to be well supported.  Juniper is not

5    seeking stay relief at the very commencement of the bankruptcy.  It appears to be undersecured

6    and Desert Investments has no income and little, if any, prospect of reorganization.  And Desert

7    Investments admitted on July 13, 2018, that it was a single asset real estate debtor, thereby

8    invoking § 362(d)(3).[86]  The stipulation appears warranted and in the best interests of the estate.

9           For all these reasons, the court overrules DLLA's opposition and grants the Motion to

10   Approve.

11                      **C.  Motion to Suspend.**

12          The Motion to Suspend was filed by Trustee Shapiro, the Sher Creditors, the Shotgun

13   Entities, and DLLA, with joinders filed by Compass, Citation, and Debtors.[87]  Responses to the

14   Motion to Suspend were filed by Busbin, Juniper, Trustee Gupta, and Northern Trust.[88]

15          In pertinent part, the Motion to Suspend asks the court to suspend proceedings and/or

16   continue the May 19, 2020, auction and all related deadlines pursuant to 11 U.S.C. §§ 105 and

17   305.  Section 305(a)(1) authorizes the court to suspend proceedings if it finds that "the interests of

18   creditors and the debtor would be better served by such … suspension…."  Section 105(a)

19   authorizes the court to "issue any order, process, or judgment that is necessary or appropriate to

20   carry out the provisions of this title."  The moving parties point to the ongoing Coivd-19 pandemic

21   as an extraordinary situation warranting the extraordinary act of suspending the bankruptcy,

22   though they ask only for a 60-90 day continuance of the sale.  Nothing in this decision should be

23   construed to minimize the current situation.  However, for the following reasons, the court does

24

25          [86] DOI ECF No. 66.

26          [87] DL ECF Nos. 1051, 1053.

27          [88] DL ECF Nos. 1052, 1054-1058.

28                                             18

1   not believe that any suspension or continuation is, on the current record, in the interests of creditors

2   and the Debtors.

3       As previously noted, the Bid Procedures give the Trustee the discretion, in her business

4   judgment, to adjourn or cancel the auction.  In her declaration filed in support of her opposition to

5   the Motion to Suspend, Trustee Gupta details the significant efforts she and her real estate

6   professionals have undertaken to ensure a vibrant auction process.[89]  Despite her and her

7   professionals' best efforts, however, the facts have lead Trustee Gupta to come to the realization

8   that "the Assemblage would not sell for a price in excess of the secured debt."[90]  Having reached

9   this conclusion, which is amply supported by the Bordwin Declaration and the history[91]

10  surrounding the attempted sale of the Assemblage, Trustee Gupta correctly concludes that she

11  "cannot, consistent with [her] duties as a trustee, administer property solely for the benefit of

12  secured creditors[,][92] especially when "a significant amount of administrative expense has been

13  and will continue to accrue until the properties are sold."[93]

14

---

15  [89] *See generally* Declaration of Kavita Gupta in Support of Chapter 11 Trustee Kavita
    Gupta's Response to Joint Motion to Suspend the Bankruptcy or in the Alternative to Amend the
16  Bid Procedures to Extend the Upcoming Auction (**Trustee Gupta Declaration**), DL ECF No.
    1052 (filed under seal).
17

18  [90] Trustee Gupta Declaration at ¶ 8.

19  [91] Indeed, Debtors' Third Amended Chapter 11 Plan of Reorganization and Third
    Amended Disclosure Statement, filed on February 12, 2019, proposed up to an additional 15
20  months of marketing to sell the Real Property.  *See* DL ECF Nos. 453-456.  In addition to the 16
    years they previously had to sell the Real Property, by the time of the auction, Debtors will have
21  also enjoyed the additional 15 months of marketing they previously proposed.

22  [92] Trustee Gupta Declaration at ¶ 10, *citing In re KVN Corp., Inc.*, 514 B.R. 1, 5-7
    (B.A.P. 9th Cir. 2014) (discussing a Chapter 7 trustee's duties vis-à-vis over-encumbered
23  property) and Chapter 11 Trustee Handbook, p. 37 ("When evaluating whether to sell assets of
    the estate outside of the ordinary course of business, the trustee must determine whether there are
24  valid liens against the asset and whether the asset's value exceeds the liens.  The trustee must
    also consider whether the costs of administration or the tax consequences of any sale will
25  significantly erode or exhaust the estate's equity interest.  If the sale would result in little or no
    equity for the estate to benefit creditors, the trustee should generally abandon the asset rather
26  than sell it.").

27  [93] Trustee Gupta Declaration, ¶ 11.

28                                      19

Nevertheless, Trustee Gupta "is not *per se* opposed to a reasonable extension of 30 to 45 days of the bid deadline and auction[,]" though she contends that any such extension only makes sense if secured creditors agree to cap their credit bidding and stipulate to carveouts to pay administrative expenses and provide a return to unsecured creditors.[94]  The Trustee also appears to object to any extension that will interfere were her ability to meeting an anticipated June 30, 2020, deadline to close on a sale of the Desert Apartments Property.[95]  For various reasons, however, Trustee Gupta has not been able to reach an agreement with secured creditors regarding credit bidding and carveouts.  Additionally, for the reasons raised in Northern Trust's opposition, it is procedurally improper to impose Trustee Gupta's conditions absent a motion requesting such affirmative relief.

In short, the parties seeking the continuance of the auction ask the court to substitute their business judgment for that of the chapter 11 trustee.  Yet, Trustee Gupta has thoroughly detailed a reasoned basis for the exercise of her discretion to oppose the continuance.  While movants believe, or hope, that things will get better in 60-90 days, Trustee Gupta believes that things may well get worse.  Her reasoning is as equally as sound as, if not better supported than, that of the movants.  Therefore, the court finds and concludes that Trustee Gupta's reasons against suspending and/or continuing the auction absent these conditions is a sound and reasonable exercise of her business judgment, and the Motion to Suspend must be denied.  Trustee Gupta, however, retains the discretion under the Bid Procedures, in the exercise of her business judgment, to adjourn and/or cancel the auction, or even to seek a continuance if matters should develop that lead her to believe that one is warranted.

---

[94] *See* DL ECF No. 1052 (filed under seal) at 6:10-15 ("If the secured lenders continue to insist on credit bidding and have unrealistic expectations of what the Debtors' assets are worth, extending the deadlines will not result in anything other than a credit bid whether that takes place on May 19, 2020 or six months from now.  Similarly, if the secured lenders are unwilling to agree to reasonable carveout that provide a meaningful distribution to unsecured creditors, extending the deadlines will serve only to deepen the estates' administrative insolvency.").

[95] DL ECF No. 1052 (filed under seal) at 2-3.

20

1    **IT IS THEREFORE ORDERED** that the Motion to Approve Stipulation and Related

2    Relief, Docket No. 1025, is **GRANTED.**

3    **IT IS FURTHER ORDERED** that the Joint Motion to Suspend the Bankruptcy or in the

4    Alternative to Amend the Bid Procedures to Extend the Upcoming Auction, Docket No. 1039, is

5    **DENIED.**

6    IT IS SO ORDERED

7    **LIMITED SERVICE:**

8    **This Memorandum was served by the court by email to only those counsel and trustees**

9    **appearing at the April 16,  2020, sealed hearing.**

10                                               # # #

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                          21

# EXHIBIT C

```
                    UNITED STATES BANKRUPTCY COURT
                    DISTRICT OF NEVADA (LAS VEGAS)

                               .   Case No.  18-12454-leb
      IN RE:                   .
                               .   Chapter 7
      DESERT LAND, LLC,        .
                               .
               Debtor.         .
                               .
      . . . . . . . . . . . . .
                               .   Case No.  18-12456-leb
      IN RE:                   .
                               .   Chapter 7
      DESERT OASIS APARTMENTS, .
      LLC,                     .
                               .
               Debtor.         .
                               .
      . . . . . . . . . . . . .
                               .   Case No.  18-12457-leb
      IN RE:                   .
                               .   Chapter 7
      DESERT OASIS INVESTMENTS,.
      LLC,                     .
                               .
               Debtor.         .
                               .
      . . . . . . . . . . . . .
                               .   Case No. 18-12458-gs
      IN RE:                   .
                               .
      SKYVUE LAS VEGAS, LLC,   .   300 Las Vegas Blvd. South
                               .   Las Vegas, NV  89101
               Debtor.         .
                               .   Tuesday, June 26, 2018
      . . . . . . . . . . . . .   2:41 p.m.
```

 TRANSCRIPT OF 18-12454 AMENDED MOTION TO CONSOLIDATE 18-12456;
  18-12457; 18-2458 WITH LEAD CASE 18-12454 AMENDED MOTION TO
 SUBSTANTIVELY CONSOLIDATE CASES FILED BY LENARD E. SCHWARTZER
           ON BEHALF OF DESERT LAND, LLC [27];
                      (CONTINUED)
           **BEFORE THE HONORABLE LAUREL E. BABERO**
           **UNITED STATES BANKRUPTCY COURT JUDGE**

Audio Operator:          Helen Smith, ECR

Transcription Company:   Access Transcripts, LLC
                         10110 Youngwood Lane
                         Fishers, IN 46038
                         (855) 873-2223
                         www.accesstranscripts.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

2

TRANSCRIPT OF (CONTINUED):

18-12454 AMENDED APPLICATION TO EMPLOY SCHWARTZER & MCPHERSON
LAW FIRM AS COUNSEL, AMENDED MOTION FOR APPROVAL OF THE
EMPLOYMENT OF SCHWARTZER & MCPHERSON LAW FIRM FOR CONSOLIDATED
DEBTORS FILED BY LENARD E. SCHWARTZER ON BEHALF OF
DESERT LAND, LLC [23];
18-12454 AMENDED APPLICATION AMENDED MOTION FOR CONVERSION OF
CASE TO CHAPTER 11 FILED BY LENARD E. SCHWARTZER ON BEHALF
OF DESERT LAND, LLC [30];
18-12454 STATUS HEARING RE: CHAPTER 7
INVOLUNTARY PETITION, NON-INDIVIDUAL [5];
18-12454 STATUS HEARING RE: OST RE: MOTION FOR RELIEF
FROM STAY PROPERTY: 3.11 ACRES OF VACANT LAND LOCATED AT
3965 SOUTH LAS VEGAS BOULEVARD, LAS VEGAS, NEVADA WITH
SUPPORTING EXHIBITS A THROUGH D, FEE AMOUNT 181, WITH PROPOSED
ORDER WITH CERTIFICATE OF SERVICE FILED BY MICHAEL N. FEDER ON
BEHALF OF ANGELO JOHN ARMINIO, BARON H. WINDHAM JR., IRA,
BESSIE CHACHAS, GEORGE CHACHAS, MACK CLAYTON, TRACY L. CLAYTON,
DONDERO SURVIVORS TRUST, ANDREA DEANEAN GLENN,
GREGG S. LAWRENCE SUBTRUST OF CLIFFORD LAWRENCE AND
CAROLYN LAWRENCE  REVOCABLE FAMILY TRUST DTD 9/30/96,
JAMES C. CHACHAS TRUST, MARK E. JONAH, JONANNA POLLARD LIVING
TRUST, LEWIS ROY SHER LIVING TRUST, LINDA JEAN LUND, JANINE
MARSHALL, WILLIAM MARSHALL, PATRICK AND CLARA CARMEN DERMODY
FAMILY TRUST, HELEN L. PEABODY, JAMES P. PEABODY,
SHER DEVELOPMENT, LLC, TERRY L. BELL IRREVOCABLE TRUST,
THE FRANK ARMINIO AND MARY ARMINIO REVOCABLE TRUST,
THE JOE P. SCHWAN FAMILY TRUST, THE JOSEPH D. EYSTAD AND
MARY ANN ARMINIO REVOCABLE TRUST DATED 09/03/03,
THE NEWBY 1984 TRUST THE PAUL L. GARCELL AND
PAMELA HERTZ REVOCABLE FAMILY TRUST, VERONICA C. WOLF TRUST,
VIVIAN A. WEBER LIVING TRUST, CATHERINE WAGNER,
TERRY WAGNER, WALTER BROELAND AND CAROL BROELAND
REVOCABLE TRUST, YARG, LLC [50];
18-12456 MOTION REGARDING CHAPTER 11 FIRST DAY MOTIONS,
MOTION FOR ORDER (1) PROHIBITING UTILITY COMPANIES FROM
ALTERING, REFUSING OR DISCONTINUING SERVICE;
(2) AUTHORIZING PAYMENT OF PREPETITION ORDINARY COURSE CLAIMS
OF UTILITY COMPANIES; AND (3) DEEMING UTILITY COMPANIES
ADEQUATELY ASSURED FILED BY LENARD E. SCHWARTZER ON BEHALF OF
DESERT OASIS APARTMENTS, LLC [18];
18-12456 MOTION REGARDING CHAPTER 11 FIRST DAY MOTIONS,
MOTION FOR AUTHORITY TO HONOR PRE-PETITION TENANT SECURITY
DEPOSITS WITH PROPOSED ORDER FILED BY LENARD E. SCHWARTZER ON
BEHALF OF DESERT OASIS APARTMENTS, LLC [16];
18-12456 MOTION TO LIMIT NOTICE FILED BY LENARD E. SCHWARTZER
ON BEHALF OF DESERT OASIS APARTMENTS, LLC [33];

3

<u>18-12456</u> AMENDED MOTION TO CONSOLIDATE 18-12456; 18-12457;
18-12458 WITH LEAD CASE 18-12454 AMENDED MOTION TO
SUBSTANTIVELY CONSOLIDATE CASES FILED BY LENARD E. SCHWARTZER
ON BEHALF OF DESERT OASIS APARTMENTS, LLC [28];
<u>18-12456</u> AMENDED APPLICATION, AMENDED MOTION FOR CONVERSION OF
CASE TO CHAPTER 11 FILED BY LENARD E. SCHWARTZER ON BEHALF OF
DESERT OASIS APARTMENTS, LLC [31];
<u>18-12456</u> AMENDED APPLICATION TO EMPLOY SCHWARTZER & MCPHERSON
LAW FIRM AS COUNSEL, AMENDED MOTION FOR APPROVAL OF THE
EMPLOYMENT OF SCHWARTZER & MCPHERSON LAW FIRM FOR CONSOLIDATED
DEBTORS FILED BY LENARD E. SCHWARTZER ON BEHALF OF
DESERT OASIS APARTMENTS, LLC [24];
<u>18-12456</u> STATUS HEARING RE: CHAPTER 7
INVOLUNTARY PETITION, NON-INDIVIDUAL [5];
<u>18-12457</u> AMENDED APPLICATION TO EMPLOY SCHWARTZER & MCPHERSON
LAW FIRM AS COUNSEL, AMENDED MOTION FOR APPROVAL OF THE
EMPLOYMENT OF SCHWARTZER & MCPHERSON LAW FIRM FOR CONSOLIDATED
DEBTORS FILED BY LENARD E. SCHWARTZER ON BEHALF OF
DESERT OASIS INVESTMENTS, LLC [20];
<u>18-12457</u> AMENDED MOTION TO CONSOLIDATE 18-12456; 18-12457;
18-12458 WITH LEAD CASE 18-12454 AMENDED MOTION TO
SUBSTANTIVELY CONSOLIDATE CASES FILED BY LENARD E. SCHWARTZER
ON BEHALF OF DESERT OASIS INVESTMENTS, LLC [24];
<u>18-12457</u> AMENDED APPLICATION AMENDED MOTION FOR CONVERSION OF
CASE TO CHAPTER 11 FILED BY LENARD E. SCHWARTZER ON BEHALF OF
DESERT OASIS INVESTMENTS, LLC [27];
<u>18-12457</u> STATUS HEARING RE: CHAPTER 7
INVOLUNTARY PETITION, NON-INDIVIDUAL [5];
<u>18-12458</u> AMENDED APPLICATION TO EMPLOY SCHWARTZER & MCPHERSON
LAW FIRM AS COUNSEL AMENDED MOTION FOR APPROVAL OF THE
EMPLOYMENT OF SCHWARTZER & MCPHERSON LAW FIRM FOR
CONSOLIDATED DEBTORS FILED BY LENARD E. SCHWARTZER
ON BEHALF OF SKYVUE LAS VEGAS, LLC [23];
<u>18-12458</u> AMENDED MOTION TO CONSOLIDATE 18-12456; 18-12457;
18-12458 WITH LEAD CASE 18-12454 AMENDED MOTION TO
SUBSTANTIVELY CONSOLIDATE CASES FILED BY LENARD E. SCHWARTZER
ON BEHALF OF SKYVUE LAS VEGAS, LLC [27];
<u>18-12458</u> AMENDED APPLICATION AMENDED MOTION FOR CONVERSION OF
CASE TO CHAPTER 11 FILED BY LENARD E. SCHWARTZER ON BEHALF OF
SKYVUE LAS VEGAS, LLC [30];
<u>18-12458</u> STATUS HEARING RE: CHAPTER 7
INVOLUNTARY PETITION, NON-INDIVIDUAL [5]



4

APPEARANCES:

| | |
|---|---|
| For the Debtor: | Schwartzer & McPherson Law Firm |
| | BY:  LENARD E. SCHWARTZER, ESQ. |
| | 2850 S. Jones Boulevard, Suite 1 |
| | Las Vegas, NV 89146 |
| | (702) 228-7590 |

For Bradley J. Busbin,   Law Office of Mark Wray
as Trustee of the       By:  MARK WRAY, ESQ.
Gonzales Charitable     608 Lander Street
Remainder Unitrust One:  Reno, NV 89509
                             (775) 348-8877

For Shotgun Creek        Black & Lobello
Investments Nevada, LLC,  By:  BRIGID M. HIGGINS, ESQ.
Shotgun Creek           10777 West Twain Avenue, 3rd Floor
Investments, LLC and     3rd Floor
Shotgun Creek Las       Las Vegas, NV 89135
Vegas, LLC:             (702) 869-8801

For Northern Trust     Fennemore Craig
Company:              By:  CATHY REECE, ESQ.
                     2394 East Camelback Road, Suite 600
                     Phoenix, AZ 85016
                     (602) 916-5343

For Juniper Loan       Lewis Roca Rothgerber LLP
Servicing Corporation:  By:  JUSTIN J. HENDERSON, ESQ.
                     201 E Washington Street, Suite 1200
                     Phoenix, AZ 85004
                     (602) 262-5738

                     Foster Pepper PLLC
                     By:  DILLON E. JACKSON, ESQ.
                     1111 Third Avenue, Suite 3400
                     Seattle, WA 98101-3264
                     (206) 447-8962

For the Sher Group:    Dickinson Wright, PLLC
                     BY:  MICHAEL N. FEDER, ESQ.
                        JOEL SCHWARZ, ESQ.
                     8363 W. Sunset Road, Suite 200
                     Las Vegas, NV 89113-2210
                     (702) 382-4002

17

1  opposed to administrative consolidation.  Because I don't -- I

2  would just ask if the Court wanted to ask him about that issue.

3          THE COURT:  Mr. Henderson, are you --

4          MR. HENDERSON:  We don't oppose joint administration,

5  but we'd like for it to be an interim order just so it can be

6  revisited if it needs to be.

7          THE COURT:  All right.  Thank you.  I appreciate

8  that.

9          MR. SCHWARTZER:  Your Honor, what I would -- after

10  hearing arguments rather than extending why I'm right and why I

11  should get the results on the motion the debtors would find

12  that a order granting joint administration so we have one

13  docket for all four to simplify the case.  And number two,

14  denying the motion for substantive consolidation without

15  prejudice in case we want to bring it up at a later time would

16  be an acceptable approach for us, Your Honor.

17          THE COURT:  All right.  And I understand there are

18  objections to the employment of Mr. Schwartzer's firm and we'll

19  address those, but for the purposes of the motion to

20  consolidate the motion to consolidate is denied without

21  prejudice and the Court will allow joint administration of all

22  of the cases.

23          That takes us to the employment application of

24  Schwartzer & McPherson.

25          MR. WRAY:  Your Honor, on joint administration is

70

1          **C E R T I F I C A T I O N**

2

3          I, Alicia Jarrett, court-approved transcriber, hereby

4    certify that the foregoing is a correct transcript from the

5    official electronic sound recording of the proceedings in the

6    above-entitled matter, and to the best of my ability.

7

8

9



10

11   ALICIA JARRETT, AAERT NO. 428     DATE:  November 4, 2020

12   ACCESS TRANSCRIPTS, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT D

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA (LAS VEGAS)


IN RE:                           .   Case No.  18-12454-gs
                                 .
                                 .   Chapter 11
DESERT LAND, LLC,                .   (Jointly Administered)
                                 .
                                 .   300 Las Vegas Blvd. South
                 Debtor.         .   Las Vegas, NV 89101
                                 .
                                 .   Monday, March 11, 2019
. . . . . . . . . . . . . . .    .   1:33 p.m.

 TRANSCRIPT OF ORAL RULING RE: MOTION TO APPOINT TRUSTEE WITH
     CERTIFICATE OF SERVICE FILED BY MARK WRAY ON BEHALF OF
          BRADLEY J. BUSBIN, AS TRUSTEE OF THE GONZALES
               CHARITABLE REMAINDER UNITRUST ONE [121];
  MOTION TO EXTEND EXCLUSIVITY PERIOD FOR FILING A CHAPTER 11
 PLAN AND/OR DISCLOSURE STATEMENT, MOTION TO EXTEND EXCLUSIVITY
  PERIOD FOR DEBTOR TO CONFIRM PLAN OF REORGANIZATION FILED BY
       LENARD E. SCHWARTZER ON BEHALF OF DESERT LAND, LLC,
   DESERT OASIS APARTMENTS, LLC, DESERT OASIS INVESTMENTS, LLC,
                 SKYVUE LAS VEGAS, LLC [358];
  MOTION FOR APPROVAL OF PROCEDURES, MOTION TO SET CONFIRMATION
 HEARING MOTION FOR ORDER: (1) APPROVING ADEQUACY OF DISCLOSURES
 IN PROPOSED DISCLOSURE STATEMENT AND (2) SETTING A CONFIRMATION
       HEARING, RECORD DATE AND DEADLINES FOR BALLOTING AND
    OPPOSITIONS TO CONFIRMATION WITH PROPOSED ORDER FILED BY
       LENARD E. SCHWARTZER ON BEHALF OF DESERT LAND, LLC,
   DESERT OASIS APARTMENTS, LLC, DESERT OASIS INVESTMENTS, LLC,
                 SKYVUE LAS VEGAS, LLC [265];
       STATUS HEARING RE: CHAPTER 11 INVOLUNTARY PETITION
    NON-INDIVIDUAL RE: DESERT LAND, LCC FILED BY PETITIONING
   CREDITOR(S): BRADLEY J. BUSBIN, AS TRUSTEE OF THE GONZALES
            CHARITABLE REMAINDER UNITRUST ONE [1]
             **BEFORE THE HONORABLE GARY SPRAKER**
             **UNITED STATES BANKRUPTCY COURT JUDGE**


APPEARANCES CONTINUED.


Audio Operator:          Helen Smith, ECR


Transcription Company:   Access Transcripts, LLC
                         10110 Youngwood Lane
                         Fishers, IN 46038
                         (855) 873-2223
                         www.accesstranscripts.com


        Proceedings recorded by electronic sound recording,
           transcript produced by transcription service.

2

APPEARANCES: (Continued)

For the Debtors:            Schwartzer & McPherson Law Firm
                           By:  LENARD E. SCHWARTZER, ESQ.
                           2850 S. Jones Boulevard, Suite 1
                           Las Vegas, NV 89146
                           (702) 228-7590

For the Shotgun Creek      Black & LoBello
Entities:                  By:  BRIGID M. HIGGINS, ESQ.
                                GREG PERRY, ESQ.
                           10777 W. Twain Avenue, Third Floor
                           Las Vegas, NV 89135
                           (702) 869-8801

For Northern Trust         Fennemore Craig
Company:                   By:  ANTHONY AUSTIN, ESQ.
                           2394 E. Camelback Road, Suite 600
                           Phoenix, AZ 85016
                           (602) 916-5347

For the Sher               Dickinson Wright
Development Entities:      By:  MICHAEL N. FEDER, ESQ.
                           8363 West Sunset Road, Suite 200
                           Las Vegas, NV 89113
                           (702) 550-4400

For Juniper Loan           Lewis Roca Rothgerber Christie
Servicing Corporation:    By:  JUSTIN HENDERSON, ESQ.
                           201 East Washington Street, Suite 1200
                           Phoenix, AZ 85004
                           (602) 262-5738


TELEPHONIC APPEARANCES:

For Bradley J. Busbin,     Law Office of Mark Wray
as Trustee of The          By:  MARK WRAY, ESQ.
Gonzales Charitable        608 Lander Street
Remainder Unitrust One:   Reno, NV 89509
                           (775) 348-8877

For Juniper Loan           Foster Pepper PLLC
Servicing Corporation:    By:  DILLON E. JACKSON, ESQ.
                           1111 Third Avenue, Suite 3000
                           Seattle, WA 98101
                           (206) 447-8962



3

TELEPHONIC APPEARANCES:   (Continued)

For the Shotgun Creek      Shotgun Creek Investments, LLC
Entities:                  By:  GREG PERRY, ESQ.
                           5152 Edgewood Drive, Suite 375
                           Provo, UT 84604
                           (206) 972-0282

8

1          MR. SCHWARTZER:  That'll be fine, Your Honor.  I

2     think that's an acceptable solution.

3          THE COURT:  Okay.  Thank you.

4          Any other party want to weigh in regarding the

5     disclosure of what has been previously sealed?  All right.

6     Then the Court will begin.

7          The following constitutes the Court's findings of

8     fact and conclusions of law pursuant to Rule 52 of the Federal

9     Rules of Civil Procedure, made applicable to this proceeding

10    pursuant to Bankruptcy Rules 9014(c) and 7052.  Any finding of

11    fact that should be a conclusion of law is deemed a conclusion

12    of law, and any conclusion of law that should be a finding of

13    fact is deemed a finding of fact.

14          The record before the Court reflects numerous issues

15    in other proceedings having some bearing on the strict matter

16    before the Court, which is the motion to appoint Chapter 11

17    trustee filed by Bradley J. Busbin as trustee of the Gonzales

18    Charitable Remainder Unitrust filed in the lean -- lead

19    bankruptcy case, Desert Land, LLC, Case Number 18-1245 at

20    Docket 121.

21          The Court has listened attentively to the testimony,

22    reviewed the voluminous exhibits, and has taken judicial notice

23    of the dockets in the instant bankruptcy cases.  I will attempt

24    to minimize the details of a number of these relevant matters

25    to only what is necessary to deal with the motion to appoint

1 the Chapter 11 trustee presently before the Court in the hopes

2 that I may sufficiently detail the record to show what impact

3 it may or may not have on the motion to appoint the Chapter 11

4 trustee.

5          There are actually four related bankruptcy cases

6 being jointly administered under a prior court order that will

7 be discussed in a bit further detail in a moment.  The debtors

8 are Desert Land, LLC; Desert Oasis, LLC; Desert Oasis

9 Investments; and Skyvue Las Vegas, LLC.  The Court will

10 collectively refer to these four entities as the debtors.

11 David Gaffin and Howard Bulloch have been the sole managers of

12 each of these entities since their formation.

13          Individually, once again, in a little further detail,

14 the debtors in the four bankruptcies are -- the first being

15 Desert Land, LLC, referred to as Desert Land.  It was formed

16 approximately 1995.  In pertinent part, Desert Land's most

17 recent bankruptcy schedule, A/B, lists its primary assets as

18 100-percent ownership interest of another debtor, Desert Oasis

19 Investments, LLC; 20 acres of land on or near the Las Vegas

20 strip; and the Desert Oasis Motel.

21          Desert Oasis Apartments, which will be referred to as

22 Desert Apartments, was formed in approximately 1989.  In

23 pertinent part, Desert Apartments' most recent bankruptcy

24 schedule, A/B, lists as assets a fee simple interest in a

25 128-unit apartment complex on or near the Las Vegas strip.  Of

1  that he and/or entities which own 61 percent of DLLA would

2  utilize the majority interest to waive any appeal on behalf of

3  the Aspen investors to modify the $13.9 million debt to more

4  than $70 million.  Bulloch clarified, however, that this waiver

5  is contingent upon a plan being confirmed to his and Gaffin's

6  satisfaction.

7          When asked if Bulloch was taking this position,

8  quote, "because you're acting in your own self best interest,

9  [i.e. what's] in the best interest for the debtors," Bulloch

10  responded yes.  This admitted self-interest is personified in

11  the third amended disclosure statement, which places the Aspen

12  debt into its own Class 4 and states that Bulloch, as the

13  manager of DLLA, is a person entitled to case a vote for

14  Class 4.

15          On January 22, 2019, the Court conducted the first

16  day of the evidentiary hearing on the motion.  The matter was

17  continued for further evidentiary hearing on February 19, 2019.

18  Over the course of those two days of evidence, the Court heard

19  the testimony of David Gaffin, Howard Bulloch, and Mike Mixer.

20  Closing arguments were made on February 22, 2019.

21          The Court makes the following additional observations

22  regarding some of the pertinent factual matters on the evidence

23  which was presented:

24          Mr. Gaffin has testified that for approximately the

25  last 16 years, he and Mr. Bulloch have expended roughly 85 to

36

1  90 percent of their work time trying to sell the debtors' real

2  property, which now aggregates to approximately 38.47 acres as

3  one -- 38.47 acres.  The efforts to sell the property largely,

4  if not exclusively, focused upon selling the property as one

5  single unit.

6          Gaffin further testified that this 85 to 90 percent

7  of his effort also included managing the properties, though the

8  Court somewhat discounts Gaffin's characterization of the

9  allegedly extensive management time required of him and Bulloch

10 to manage mostly vacant land and an apartment complex that's

11 currently managed by a third party.  Indeed, when either Gaffin

12 or Bulloch were asked specific questions that should have been

13 in the purview of themselves as sole manager of the debtors,

14 they regularly deferred to third parties such as accountants to

15 provide the information.

16         Additionally, during his testimony, Mr. Bulloch

17 testified that the debtors have separate assets, separate

18 liabilities, and file separate tax returns.  At the evidentiary

19 hearing on the trustee's motion, when asked whether the debtors

20 have been treated as a single business enterprise since their

21 inception, Gaffin contradicted his declaration by testifying, I

22 don't know that that's the case.

23         Gaffin dismissed without explanation the statement in

24 his prior declaration testifying that the debtors are four

25 separate entities, that they file their own tax returns, and

1 they are not exactly mirrors of the ownership and have

2 different entities in them -- different assets in them.

3 However, Gaffin subsequently provided a third characterization

4 of the debtors' separate natures or lack thereof, testifying

5 that Desert Investments' books and tax returns are incorporated

6 with Desert Land because Desert Land owns 100 percent of Desert

7 Investments.  These statements also seem to be at odds with the

8 motion for substantive consolidation.

9          Despite disclosing over $40 million in receiver --

10 receivables, the debtors have made no effort to collect these

11 receivables as previously mentioned.  Other than saying that

12 the debtors did not pay themselves -- debtors did not pay them

13 a management fee, Bulloch did not explain the business judgment

14 behind loaning tens of millions of undocumented, interest-free,

15 unsecured loans to entities who lacked the means to pay them

16 back.

17          During the hearing, the debtors refer -- did refer to

18 potential offsets against these receivables.  Indeed, there are

19 references in the stated descriptions of the receivables in

20 their -- in the schedules that these remain subject to offset.

21 Despite these references, the schedules do not list any claims

22 due from Desert Land or Desert Apartments to any of the

23 insiders.  Additionally, neither Bulloch nor Gaffin could

24 explain during their testimony what offsets were being

25 referenced in the schedules in the third amended disclosure

38

1  statement.

2          Generally speaking, Bulloch and Gaffin gave two

3  reasons why the debtors had not and would not pursue the

4  reasons (sic), the first being that the sale of real property

5  would fully pay all creditors, making collections of the

6  receivables unnecessary.  The second reason given was that the

7  entities owing the money, overwhelmingly insiders of the

8  debtors, did not have the monies pay -- monies -- or the

9  ability to pay the receivables, making further collection a

10  waste of time.

11          At the evidentiary hearing, Bulloch testified that,

12  quote, "It would" -- that it would be, quote, "a huge waste of

13  efforts," to pursue these claims because the insiders did not

14  have much in the way of assets other than their interest in the

15  debtors.  Gaffin agreed with Bulloch's assessment not to pursue

16  the insider receivables, testifying that the debtors' efforts

17  were better focused on selling the property instead.

18          While these two reasons were made in a general sense,

19  it has been 11 months since the bankruptcy was filed, and no

20  evidence was presented regarding the financial condition of

21  those account debtors and insiders other than the current

22  debtors that owe the receivables stated in the schedules of the

23  Desert Land and Desert Apartments.

24          This position is encapsulated in the debtors' most

25  recent third amended disclosure statement, which states that,

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

1  quote:

2          "The debtors (sic) -- the managers of the debtors do

3          not intend to request payment from insiders unless

4          there are insufficient funds from the sale of assets

5          to pay the claims of non-insider creditors in full."

6          ECF Number 455, Page 40.

7          The third amended disclosure statement further states

8  that the -- or indicates that the debtors will not pursue these

9  insider receivables even if necessary to pay non-insider debt

10 in full, stating in pertinent part, quote:

11          "Since the main asset of the non-debtor insiders who

12          owe money to any of the debtors is their direct or

13          indirect interest of the equity of the debtor, the

14          managers of the debtors have determined that the bulk

15          of any money owed to the debtors is either offset by

16          monies owed by the debtors or uncollectible until and

17          unless the assets are sold for more than the secured

18          debt."

19          At this point in time, the Court should review the

20 prior sale effort discussed during the testimony over the two

21 days on the motion for appointment of Chapter 11 trustee.

22 Mr. Gaffin testified that during this past 16 years, the

23 debtors have entertained probably 12 letters of intent, from

24 which only two potential buyers ever deposited earnest money.

25 However, these two buyers failed to move past the -- earnest

54

1  therefore, has the right to vote in favor of the plan on behalf

2  of the Class 4 Aspen creditors.  The Sher creditors object, and

3  the parties are currently involved in state court litigation

4  regarding their respective rights.

5       Therefore, Bulloch is not only equity and a debtor

6  that owes millions of dollars to the debtors that he will not

7  seek to recover, but he is also a creditor of the debtors in a

8  personal dispute with other creditors of the debtors regarding

9  his right to vote on behalf for a plan that he and Gaffin will

10  propose.

11       Again, the Court places significant weight on

12  Bulloch's and Gaffin's presence as equity holders, as a

13  significant creditor in the form of DLLA with ongoing

14  litigation over the claim to present against these debtors, and

15  finally as account debtors owing tens of millions to these

16  debtors which have not been examined or any effort made to

17  collect for years.  To back up, as the evidence demonstrates,

18  the details of these underlying debts owed to the debtors by

19  the insiders are scarce, including the reasons why over $40

20  million went out from these debtors.

21       Finally, with respect to their conflicts, Bulloch and

22  Gaffin flip-flop between treating the entities as separate or

23  consolidated as may be needed.  Indeed, it appears that they

24  have never considered or attempted to pursue the sale of the

25  debtors' separate property as individual parcels or individual

ACCESS TRANSCRIPTS, LLC                    1-855-USE-ACCESS (873-2223)

55

1   uses -- units.  Although considering a sale of the real

2   property as a combined total does not inherently result in a

3   conflict, it does when, as in this case, Bulloch and Gaffin

4   authorize the estate to expend substantial attorney's fees and

5   dedicate months in pursuing only pie-in-the-sky offers such as

6   the LVB Acquisition that appears to satisfy their personal

7   interests to the exclusion of the other interests in -- against

8   the estate.

9          Most apparently, and second, more than 96 percent of

10  the non-insider debt owed by the debtors is in favor of

11  appointing a trustee and have clearly lost confidence in the

12  ability of the debtors' current managers to control the process

13  in an effective, efficient, and good manner in which their

14  interests are at least on equal footing with equity.

15         Third, time is of the essence, as Bulloch testified.

16  Testimony at the hearing repeated a common thought that now --

17  that now is the time to sell the real property because several

18  developments have created an interest in the property.

19  Specifically, these include designation of an economic

20  enterprise zone around the area and the development of a NFL

21  football stadium for the National Football League's Raiders in

22  close proximity.  However, as the creditors noted during the

23  arguments, these developments are not new, at least in respect

24  to the timing of this case.  More importantly, despite these

25  developments, which have created an important time and buzz in

72

1            And we'll sign off now, Madam Clerk.

2            We're adjourned.

3            THE CLERK:  Thank you, Your Honor.

4            UNIDENTIFIED:  Thank you, Your Honor.

5            THE CLERK:  Off record.

6       (Proceedings concluded at 3:32 p.m.)

7                        * * * * *

8

9

10

11

12

13

14

15              **C E R T I F I C A T I O N**

16

17       I, Liesl Springer, court-approved transcriber, hereby

18  certify that the foregoing is a correct transcript from the

19  official electronic sound recording of the proceedings in the

20  above-entitled matter, and to the best of my ability.

21

22

23  _____

24  LIESL SPRINGER, AAERT NO. 685      DATE:  APRIL 3, 2019

25  ACCESS TRANSCRIPTS, LLC


ACCESS TRANSCRIPTS, LLC            1-855-USE-ACCESS (873-2223)

# EXHIBIT E

1  Kevin W. Coleman (CA SBN 168538)
   Christopher H. Hart (CA SBN 184117)
2  NUTI HART LLP
   411 30TH Street, Suite 408
3  Oakland, CA 94609-3311
   Telephone: 510-506-7152
4  Email: kcoleman@nutihart.com
           chart@nutihart.com
5
6  Talitha Gray Kozlowski (NV SBN 9040)
   GARMAN TURNER GORDON LLP
7  650 White Drive, Suite 100
   Las Vegas, NV 89119
8  Telephone: 725-777-3000
   Email: tgray@gtg.legal
9
   Counsel for Kavita Gupta,
10 Chapter 11 Trustee

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

11

12              **UNITED STATES BANKRUPTCY COURT**

13                    **DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No.: BK-S-18-12454-GS |
| DESERT LAND, LLC | Chapter 11 |
| Debtor. | |
| In re: | Case No.: BK-S-18-12456-GS |
| DESERT OASIS APARTMENTS, LLC, | Chapter 11 |
| Debtor. | |
| In re: | Case No.: BK-S-18-12457-GS |
| DESERT OASIS INVESTMENTS, LLC, | Chapter 11 |
| Debtor. | **MOTION FOR ORDER DETERMINING WHETHER KAVITA GUPTA SHOULD CONTINUE AS CHAPTER 11 TRUSTEE FOR DESERT OASIS APARTMENTS, LLC DUE TO THE EXISTENCE OF INTER-ESTATE CLAIMS, OR ALTERNATIVELY, APPOINT AN EXAMINER** |
| | Date:  August 27, 2019<br>Time:  1:30 p.m.<br>Judge:  Hon. Gary Spraker |

1

Kavita Gupta, the duly appointed and acting Chapter 11 trustee in the above captioned cases (the "Trustee"), hereby moves the Court (the "Motion"), for entry of an order determining whether the Trustee should continue to serve in the Desert Oasis Apartments, LLC case, and if so, addressing how certain inter-estate claims will be handled. As discussed below, the Trustee has determined that the estate of Desert Land, LLC scheduled a claim for approximately $4.5 million against the estate of Desert Oasis Apartments, LLC, and that there may be grounds to object to that claim if the property owned by Desert Oasis Apartments, LLC cannot be sold for a sum in excess of what is owed to all of its creditors. Thus, circumstances may arise where the interests of two estates in which the Trustee serves are adverse. This Motion is being filed in order to apprise the Court and other interested parties of the issue, and seek guidance from the Court as to whether: (a) the Trustee should continue to serve in all three cases, and if so under what conditions, or (b) the Trustee should volunteer her resignation in the Desert Oasis Apartments, LLC case so that the Court may order the appointment of a new trustee for that estate. An alternative option the Court may wish to consider is the appointment of an examiner to conduct a further investigation and make a recommendation to the Court concerning the validity of the purported inter-debtor claim, and the implications thereof. In support of this request, the Trustee states as follows:

## I.    JURISDICTION

1. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§157 and 1334. Venue is proper pursuant to 28 U.S.C. §§1408 and 1409. The subject matter of the Application is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

2. The statutory predicate for the relief requested herein is Sections 105(a) and 327(a) and 328(a) of the Bankruptcy Code, and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure.

3. Pursuant to LR 9014.2, the Trustee consents to entry of a final order or judgment by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the U.S. Constitution. //

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

2

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

## II.  FACTS

4.  On April 30, 2018 (the "Petition Date"), Bradley J. Busbin, as Trustee of the Gonzales Charitable Reminder Unitrust One, commenced these cases by filing involuntarily petitions for relief under Chapter 7 of the Bankruptcy Code.

5.  On June 28, 2018, the Court granted the motion for conversion of these cases to Chapter 11 filed by Desert Land, LLC ("Desert Land"), Desert Oasis Apartments, LLC ("Desert Apartments"), and Desert Oasis Investments, LLC ("Desert Investments" and, collectively, the "Desert Entities" or "Debtors") [Dkt.79].

6.  On July 6, 2018, the Court entered the Order Granting in part, Denying in part Motion to Consolidate [Dkt. 89] and Order Granting Joint Administration [Dkt. 90].

7.  On July 13, 2018, Desert Apartments filed its schedules of assets and liabilities [Dkt. 96]. Desert Land is listed in Desert Apartments' Schedule F as holding an unsecured claim in the amount of $4.5 million. *See* Dkt. 96, ECF p. 18 of 53, Request for Judicial Notice ("RJN") at Tab 1.

8.  Desert Land also filed its schedules of assets and liabilities on July 13, 2018 [Dkt. 102]. No corresponding claim against Desert Apartments is listed as an asset in the Desert Land Schedule B. *See* Dkt. 102, ECF pp. 11-14 of 61, RJN at Tab 2.

9.  On April 2, 2019, the Court granted the Application by the United States Trustee to appoint Kavita Gupta (the "Trustee") as the Chapter 11 trustee of the Desert Entities bankruptcy estates [Dkt. 528].

10.  Prior to her appointment, the Trustee advised the Office of the United States Trustee that the schedules filed in the Debtors' cases suggested that there may be inter-estate conflicts of interest that it would be necessary to investigate. *See* Declaration of Kavita Gupta ("Gupta Decl.") at ¶ 7. The Trustee also brought that fact to the attention of the Court and interested parties starting with the Case Status Conference Statement filed on April 8, 2019 [Dkt. 538, ECF p.8 of 9], RJN at Tab 3.

11.  The Trustee's financial advisors, Grobstein Teeple, LLP (the "Financial Advisors"), proceeded to analyze the Debtors' tax returns and other financial records, and

3

interviewed the Debtors' management, former accountants and other related parties to determine

whether the schedules were in error, or whether there was in fact an inter-company obligation

potentially creating an inter-estate conflict of interest. *See* Declaration of Benjamin Howard

("Howard Decl."), at ¶3.

        12.    By mid-June, the Financial Advisors had ascertained:

           a.   The potential intercompany obligation by Desert Apartments to Desert Land was created by a journal entry in Quickbooks on December 31, 2002;

           b.   The journal entry was described as a year-end adjustment;

           c.   According to tax returns and Quickbooks records, Desert Apartments owed Desert Land $4,499,329.00 as of December 31, 2017 (the "Inter-Estate Claim");

           d.   Although requested, no contemporaneous supporting documentation was provided to the Financial Advisors to establish the basis for or validity of the purported Inter-Estate Claim;

           e.   Although requested, no accounting records or other documentation for periods prior to 2002 were provided to the Financial Advisors;

           f.   It is unclear whether the purported Inter-Estate Claim arose on December 31, 2002 or at an earlier date;

           g.   The Debtors' management did not recall the underlying reasons for why Desert Apartments is reflected as having a liability to Desert Land;

           h.   No subsequent written agreement between Desert Apartments and Desert Land (or other writing signed by Desert Apartments) can be located that memorializes the reasons the purported Inter-Estate Claim is reflected on the Debtors' books and records and tax returns.

           i.   Desert Land's general ledger reflects that the following transfers were made by Desert Apartments to Desert Land in prior years: (a) $87,000.00 in 2017, $177,000 in 2016, $218,000 in 2015, $185,442 in 2014, $210,000 in 2013, and $28,000 in 2012, however, the Financial Advisors were unable to match

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

4

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

these apparent transfers on account of the Inter-Estate Claim to Desert Apartments' banking records (the "Potential Avoidance Claims").  *See* Howard Decl., ¶4.

13. On June 18, 2019, the Trustee's counsel emailed counsel for the Debtors seeking management's confirmation that no further documentation or information regarding the origin of the purported Inter-Estate Claim was available, or alternatively, to provide any such information/documentation before June 21, 2019.  *See* Declaration of Kevin Coleman ("Coleman Decl."), ¶3, Exh. A.

14. The Debtors' counsel did not respond to the June 18 email, and so a follow-up email requesting a response was sent on June 27, 2019.  *See* Coleman Decl., ¶4, Exh. B.  That follow-up email further asked that if the Debtors' management could not confirm anything regarding the Trustee's June 18 inquiry, to advise where the Debtors had banking relationships at the relevant time.

15. As of the filing of this Motion, neither the Debtors' counsel nor the Debtors' management have responded to either email request and so the Financial Advisors appear to have no further avenues available to establish the basis for the purported Inter-Estate Claim.  *See* Coleman Decl., ¶5.

16. Consequently, as best as the Trustee can determine based on the information available to her:

    a. The basis for the purported Inter-Estate Claim cannot be reliably established.

    b. Prior to the Trustee's appointment, Desert Land and Desert Apartments have apparently not disputed or investigated the purported Inter-Estate Claim.

    c. There are potential grounds upon which a creditor might challenge the validity and enforceability of the purported Inter-Estate Claim, including but not limited to:

        i. It is unenforceable on statute of limitations grounds;

        ii. It is subject to re-characterization as an equity contribution;

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

iii.  It is subject to disallowance because the estate of Desert Land may be unable to sustain its burden to demonstrate the validity of the debt.

d.  If the Court were to conclude that the obligation should be treated as an equity contribution rather than a debt, the Desert Apartments estate may have a claim against the Desert Land estate for recovery of the payments made pre-bankruptcy.

e.  If the Court were to conclude a valid indebtedness exists, the estate of Desert Oasis Apartments may have a claim against Desert Land for recovery of an insider preference.

f.  The circumstances described in ¶16.d and ¶16.e could give the Desert Apartments estate a defense to the purported Inter-Estate Claim under Bankruptcy Code section 502(d).  (Any affirmative claim by Apartments against Desert Land appears to be subject to the bar date for filing claims, however, there remains a possibility that leave to file a late-claim could be permitted under Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd., 507 U.S. 380, 394 (1993).)

17.  The estate of Desert Apartments has $33,433.15 in total non-insider unsecured non-priority debt.  (That number could increase if the apartment parcel is sold for less an amount sufficient to pay Northern Trust and the Gonzales judgment lien – which would leave a deficiency.)  Insider unsecured claims total approximately $6.172 million.  Hence, unless the Desert Apartments assets could be sold for a price exceeding approximately $28 to $30 million (i.e., enough to pay Northern Trust, the Gonzales Judgment lien, administrative claims and all unsecured claims in full), it would be necessary to examine the validity of the Inter-Estate Claim and possibly object to it.

18.  Even if the Desert Apartments property can be sold for $30 million, an investigation/objection to the purported Inter-Estate Claim may still be necessary because if that claim is disallowed, a distribution to the SkyVue Las Vegas, LLC estate (the owner of 99.5% of the member interest in Desert Apartments) and Howard Bullock (owner of the remaining

member interest) would be possible.  *See* List of Equity Security Holders [Dkt. 96, ECF p. 34 of 53].

19.     Conversely, Desert Land has unsecured non-priority claims of roughly $8.2 million (assuming the compromise with the Sher creditors is approved).  Unless the Desert Land parcels are sold for enough to pay all creditors in full, that estate has an interest in maximizing its recovery from the estate of Desert Apartments.

20.     In short, the interests of Desert Land and Desert Apartments would be adverse in any situation where the Debtors' properties cannot be sold collectively for enough to pay all creditors in full and make a distribution to equity holders.

### III.     ANALYSIS AND BASIS FOR REQUESTED RELIEF

21.     Under Bankruptcy Code section 1104(d), if the Court orders the appointment of a trustee "the United States Trustee, . . . , shall appoint, . . . one *disinterested* person other than the United States Trustee to serve as trustee . . . in the case."  11 U.S.C. § 1104(d) [emphasis added]. The Bankruptcy Code defines a disinterested person as one: (a) who is not a creditor, equity security holder, or insider of the debtor, (b) was not within two years before the petition date an officer, director or employee of the debtor, and (c) "does not have an interest materially adverse to the interest of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the debtor, or for any other reason."  11 U.S.C. § 101(14).  A trustee is a fiduciary who must represent all creditors without partiality.  In re AFI Holding, Inc., 530 F.3d 832, 844 (9th Cir. 2008).

22.     Under certain circumstances, a trustee may be considered not disinterested when he or she serves as trustee in two cases that have claims against each other.  *See*  In re BH & P , Inc., 949 F.2d 1300, 1309-10 (3d Cir. 1991) (holding that although a claim asserted by a trustee in another case where the trustee serves in a representative capacity did not make the trustee a creditor, assertion of a claim could under some circumstances be deemed a materially adverse interest).

23.     Consequently, while it is not *per se* improper for a trustee to serve in two cases where the debtors' estates assert claims against the other, *BH & P* explains:

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

"While we recognize that cases involving multiple debtors served by a single trustee present special concerns requiring the trustee to balance competing interests with vigilance and guard against conflicts, we also recognize the reality that a single trustee is often able to maximize the return to jointly administered estates through increased economy and efficiency. Joint administration by a single trustee is commonplace in the scheme of bankruptcy administration and its positives often outweigh any negatives. Furthermore, as the trustees recognize in their brief before us here, 'if there is a presumption that can be stated with certitude regarding jointly administered estates, it is that there will be interdebtor claims or potential claims.'

Given these realities, the district court's interpretation of the 'disinterested person' requirement to encompass a trustee who files interdebtor claims in jointly administered cases and its conclusion that lack of disinterest premised on the existence of interdebtor claims invariably constitutes grounds for removal of the trustee are problematic. Were we to endorse this interpretation, the use of single trustees in jointly administered cases, in fact joint administration itself, would become a rarity, exposing untold numbers of bankruptcy estates to the potential for increased costs and inefficiency." Id. at 1310-11.

24.     Ultimately, *BH & P* concluded that the bankruptcy court should decide whether a trustee should continue to serve in jointly administered cases where interdebtor claims exist, stating:

"It is for the court to decide whether the [arrangement] carries with it a sufficient threat of material adversity to warrant prophylactic action.... The test must be an objective one. The question is not necessarily whether a conflict exists--although an actual conflict of any degree of seriousness will obviously present a towering obstacle--but whether a potential conflict, or the perception of one renders the [trustee's] interest materially adverse to the estate of the creditors.

This inquiry is of necessity case-specific. There must be at a minimum full and timely disclosure of the details of any given arrangement. Armed with knowledge of all of the relevant facts, the bankruptcy court must determine, case by case, whether [a situation such as the presence of a single trustee in jointly administered cases where there are interdebtor claims] can be tolerated under the particular circumstances. In so doing, the court should consider the full panoply of events and elements.... The nature and extent of the conflict must be assayed, along with the likelihood that a potential conflict might turn into an actual one. An effort should be made to measure the influence the putative conflict may have in subsequent decisionmaking. Perceptions are important; how the matter likely appears to creditors and to other parties in legitimate interest should be taken into account.

What counts is that the matter not be left either to hindsight or the unfettered desires of the [parties involved], but that the bankruptcy judge be given an immediate opportunity to make an intelligent appraisal of the situation and to apply his experience, common sense, and knowledge of the particular proceeding to the request..... " Id. at 1312-13.

25.     The Ninth Circuit follows the Third Circuit's "case-by-case analysis" approach outlined in *BH & P*. AFI Holding, 530 F.3d at 848.

8

26. As noted above, there is unquestionably a risk that the Desert Land and Desert Apartments estates would have interests adverse to the other. The question the Trustee is asking the Court to decide is whether she should continue as trustee in all three cases or resign her position as trustee in the Desert Apartments case.

27. On the one hand, sale of the Debtors' assets for a sufficient sum would appear to eliminate any conflict between creditors of the Desert Land and Desert Apartments cases, appointment of a new trustee for Desert Apartments would cause that estate to incur additional administrative expenses, and it may complicate and/or delay efforts to sell if a buyer is interested both the Desert Land and Desert Apartments parcels. Moreover, if the Court concludes that a single trustee benefits all parties, the Court has other means to mitigate any conflict of interest with respect to the Inter-Estate Claim issue, such as an order limiting the Trustee's authority with regard to the Inter-Estate Claim, and/or designating other interested parties to act on behalf of the Desert Land and Desert Apartments estates in connection therewith. *See, generally* Louisiana World Exposition v. Federal Ins. Co., 858 F.2d 233, 247 n.14 (5th Cir. 1988) (bankruptcy court can designate other interested parties to pursue actions on behalf of an estate); In re Together Development Corp., 262 B.R. 586, 589 (Bankr. D. Mass. 2001) (same); In re Celeritas Technologies, LLC, 446 B.R. 514, 521 (Bankr. D. Kan. 2011) (bankruptcy court can define the scope of powers that an appointed trustee may exercise in a case).

28. But on the other hand, it is not known what the properties will sell for, and we are not presented with a situation where the inter-company claims are comparatively small and no obvious grounds exist to object to them. *See* In re Jack Greenberg, Inc., 189 B.R. 906, 912 (Bankr. E.D. Pa. 1995) (inter-debtor claims not grounds for removal of trustee where claims were not disputed); BH & P, 949 F.2d at 1313-14 (bankruptcy court's finding that disputed nature of inter-debtor claims constituted a materially adverse interest warranting removal of the trustee was not clearly erroneous).

//

//

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

9

29.     Five options seem to be available to the Court to address the situation presented by the purported Inter-Estate Claim and Potential Avoidance Claim:

a. Allow the Trustee to continue as trustee in all three cases until one or more of the Debtors' properties are sold and reassess what, if any, further action should be taken;

b. Accept the Trustee's offer to resign her position in the Desert Apartments case;

c. Allow the Trustee to continue as trustee in all three cases until they are closed, but designate an interested party to act on behalf of Desert Apartments to investigate and/or litigate the validity of the Inter-Estate Claim;

d. Allow the Trustee to continue as trustee in all three cases until they are closed, but designate an interested party to act on behalf of Desert Apartments and another interested party to act on behalf of Desert Land to investigate and/or litigate the validity of the purported Inter-Estate Claim; and

e. Appoint an examiner to conduct a further investigation and make a recommendation with regard to the validity of the purported Inter-Company Claim and the Potential Avoidance Claims. *See* 11 U.S.C. § 1104(c) (authorizing a court to appoint an examiner in lieu of ordering the appointment of a new trustee for Desert Apartments).

30.     Since it is a matter for the Court to decide, the Trustee is not advocating for any particular outcome and she is prepared to accept whatever directions the Court deems appropriate.

### III.     NOTICE

31.     Notice of this Motion has been given to all creditors and parties in interest; and the Motion, supporting declarations, and RJN in support thereof have been served on the United States Trustee, and those requesting special notice.  The Trustee submits that no further notice need be given.

//

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

10

### IV.    CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court enter any appropriate order concerning whether the Trustee should continue to serve as trustee in all three of the Debtors' cases in view of the existence of the Inter-Estate Claim and issues it presents.

Dated: July 12, 2019

NUTI HART LLP

By:    */s/ Kevin W. Coleman*
       Kevin W. Coleman
       Attorneys for Kavita Gupta,
       Chapter 11 Trustee

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

Kevin W. Coleman (CA SBN 168538)
Christopher H. Hart (CA SBN 184117)
NUTI HART LLP
411 30TH Street, Suite 408
Oakland, CA 94609-3311
Telephone: 510-506-7152
Email: kcoleman@nutihart.com
      chart@nutihart.com

Talitha Gray Kozlowski (NV SBN 9040)
GARMAN TURNER GORDON LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
Telephone: 725-777-3000
Email: tgray@gtg.legal

Counsel for Kavita Gupta,
Chapter 11 Trustee

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>DESERT LAND, LLC<br><br>            Debtor. | Case No.: BK-S-18-12454-GS<br><br>Chapter 11 |
| In re:<br><br>DESERT OASIS APARTMENTS, LLC,<br><br>            Debtor. | Case No.: BK-S-18-12456-GS<br><br>Chapter 11 |
| In re:<br><br>DESERT OASIS INVESTMENTS, LLC,<br><br>            Debtor. | Case No.: BK-S-18-12457-GS<br><br>Chapter 11<br><br>**DECLARATION OF KEVIN W. COLEMAN IN SUPPORT OF MOTION FOR ORDER DETERMINING WHETHER KAVITA GUPTA SHOULD CONTINUE AS CHAPTER 11 TRUSTEE FOR DESERT OASIS APARTMENTS, LLC DUE TO THE EXISTENCE OF INTER-ESTATE CLAIMS, OR ALTERNATIVELY, APPOINT AN EXAMINER**<br><br>Date:     August 27, 2019<br>Time:     1:30 p.m.<br>Judge:   Hon. Gary Spraker |

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

1

I, Kevin W. Coleman, declare:

1. I am senior counsel with the law firm Nuti Hart LLP ("NH" or the "Firm"), counsel for Kavita Gupta, chapter 11 trustee in the above-captioned cases ("Trustee"). In such capacity, and except as otherwise indicated herein, I have personal knowledge of the facts set forth below, and if called as a witness I could and would competently testify to the matters set forth in this declaration.

2. I submit this declaration in support of the Trustee's motion (the "Motion") for an order determining whether I should continue as trustee in all three cases in which I presently serve as trustee, resign my role as trustee in the Desert Oasis Apartments, LLC case due to potential inter-estate claims, or alternatively, appointing an examiner to investigate the inter-estate claims.

3. On June 18, 2019, I emailed Lenard Schwartzer, counsel for the Debtors, seeking the Debtors' management's confirmation that no further documentation or information regarding the origin of what is referred to in the Motion as the Inter-Estate Claim was available, or alternatively, to provide any such information/documentation before June 21, 2019. A true and correct copy of my June 18, 2019 email is attached hereto as **Exhibit A**.

4. Mr. Schwartzer did not respond to the June 18 email, and so I sent a follow-up email requesting a response on June 27, 2019. A true and correct copy of my June 27, 2019 email is attached hereto as **Exhibit B**. That follow-up email further asked that if the Debtors' management could not confirm anything regarding the Trustee's June 18 inquiry, to advise where the Debtors had banking relationships at the relevant time.

5. As of the filing of this Motion, neither the Debtors' counsel nor the Debtors' management have responded to either email request.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed this 12th day of July, 2019 at Calistoga, California.

*/s/ Kevin W. Coleman*
Kevin W. Coleman

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

# EXHIBIT A

| From: | Kevin Coleman |
|---|---|
| To: | "Lenard Schwartzer" |
| Cc: | "Joshua Teeple"; Ben Howard; Kavita Gupta; Chris Hart |
| Subject: | Desert Land, et al *** Potential Inter-Company Claims |
| Date: | Tuesday, June 18, 2019 5:28:00 PM |
| Attachments: | Desert Land 2002 YE JOURNAL ENTRY.PDF |
| | image003.png |
| Importance: | High |

Hi Lenard,

As I think you know, the Trustee's financial advisors have been trying to determine if intercompany claims exist. According to tax returns and Quickbooks records, Desert Oasis Apartments, LLC owed Desert Land, LLC $4,499,329.00 as of December 31, 2017.

As far as they have been able to determine, the potential intercompany obligation to Desert Land was created by a journal entry in Quickbooks in 2002, which is attached. As you can see, it was apparently booked as a year-end adjustment on December 31, 2002. My understanding is that the Trustee's financial advisors have asked for documentation to validate the journal entry, but the Debtor's management has been unable to provide it. I also understand that the financial advisors have asked management for an explanation of what gave rise to the obligation (was it a loan or other cash infusion, allocation of expenses, etc.) and for copies of any agreements memorializing the advance, but they have been unable to provide those either.

We will be filing a motion in order to bring the potential inter-estate conflict of interest to the attention of the Court, creditors, and the UST, and am therefore asking you to confirm with your clients whether they disagree with any of the following statements:

1. The oldest financial records referencing the intercompany obligation from Desert Oasis Apartments, LLC to Desert Land, LLC go back to 2002, and no prior records relating to this transaction are available;
2. It is unclear whether the intercompany obligation arose in 2002 or at an earlier date;
3. The Debtors management does not recall the underlying reasons for why Desert Oasis Apartments is reflected as having a liability to Desert Land, LLC; and
4. No written agreement between Desert Oasis Apartments, LLC and Desert Land, LLC (or other writing signed by Desert Oasis Apartments, LLC) can be located that memorializes the reasons an intercompany debt is reflected on the Debtors' books and records and tax returns.

If any of these statements are inaccurate, or if you have any other information concerning the purported intercompany debt from Desert Oasis Apartments to Desert Land, please let us know by the end of this week.

If you have any questions or wish to discuss, please feel free to contact me.

Best regards,

--Kevin


Kevin W. Coleman
**Nuti Hart LLP**

411 30th Street, Suite 408
Oakland, CA 94609
Cell: 415 533-2920
Office: 510 506-7155
kcoleman@nutihart.com



**DESERT LAND, LLC**

**Detail of Journal Entry "2002 YE adj" booked into QuickBooks as of 12/31/2002**

| ACCT | Date | Transaction Type | Memo/Description | Account | Debit | Credit |
|---|---|---|---|---|---|---|
| 1000000 Petty Cash | 12/31/2002 | Journal Entry | 2002 YE adj | 1000000 Petty Cash | 1,200.00 | |
| 1012900 Cash - Olympus Inn | 12/31/2002 | Journal Entry | 2002 YE adj | 1012900 Cash - Olympus Inn | 403.54 | |
| 1013900 Cash - Desert Oasis Motel | 12/31/2002 | Journal Entry | 2002 YE adj | 1013900 Cash - Desert Oasis Motel | 15,913.34 | |
| 1014900 Cash - Happi Inn | 12/31/2002 | Journal Entry | 2002 YE adj | 1014900 Cash - Happi Inn | 11,350.23 | |
| 1110003 Casa Malaga Motel, Inc. | 12/31/2002 | Journal Entry | 2002 YE adj | 1110003 Due From Affiliates:Casa Malaga Motel, Inc. | 257,544.03 | |
| 1110007 Desert Oasis Apartments, LLC | 12/31/2002 | Journal Entry | 2002 YE adj | 1110007 Due From Affiliates:Desert Oasis Apartments, LLC | 7,218,823.56 | |
| 1110009 The Ranch, LLC | 12/31/2002 | Journal Entry | 2002 YE adj | 1110009 Due From Affiliates:The Ranch, LLC | 103,153.03 | |
| 1110012 Glass Pool | 12/31/2002 | Journal Entry | 2002 YE adj | 1110012 Due From Affiliates:Glass Pool | 1,100.81 | |
| 1110018 Happi Inn | 12/31/2002 | Journal Entry | 2002 YE adj | 1110018 Due From Affiliates:Happi Inn | 5,475.24 | |
| 1110019 Olympus Inn | 12/31/2002 | Journal Entry | 2002 YE adj | 1110019 Due From Affiliates:Olympus Inn | 10,954.33 | |
| 1110020 Desert Oasis Motel | 12/31/2002 | Journal Entry | 2002 YE adj | 1110020 Due From Affiliates:Desert Oasis Motel | 60.70 | |
| 1110021 Desert Ranch | 12/31/2002 | Journal Entry | 2002 YE adj | 1110021 Due From Affiliates:Desert Ranch | 1,657.00 | |
| 1310000 Payroll Asset | 12/31/2002 | Journal Entry | 2002 YE adj | 1310000 Payroll Asset | 85.00 | |
| 1505000 Land | 12/31/2002 | Journal Entry | 177-08-601-003 | 1505000 Fixed Assets:Land | 631,649.69 | |
| 1505000 Land | 12/31/2002 | Journal Entry | Adj. Basis Desert Ranch LLC | 1505000 Fixed Assets:Land | | 18,665,123.39 |
| 1505000 Land | 12/31/2002 | Journal Entry | 177-05-801-024 | 1505000 Fixed Assets:Land | 640,760.35 | |
| 1505000 Land | 12/31/2002 | Journal Entry | 162-28-301-011 | 1505000 Fixed Assets:Land | 2,832,598.24 | |
| 1505000 Land | 12/31/2002 | Journal Entry | 162-33-101-002 | 1505000 Fixed Assets:Land | 5,000.00 | |
| 1505000 Land | 12/31/2002 | Journal Entry | 162-28-301-007,008,012 | 1505000 Fixed Assets:Land | 25,848,089.25 | |
| 1505000 Land | 12/31/2002 | Journal Entry | Desert Oasis Motel Land | 1505000 Fixed Assets:Land | 9,632,834.20 | |
| 1505000 Land | 12/31/2002 | Journal Entry | Tivoli Motel Land | 1505000 Fixed Assets:Land | 1,001,954.23 | |
| 1505000 Land | 12/31/2002 | Journal Entry | Sov. Bank Enfield Land | 1505000 Fixed Assets:Land | 167,682.45 | |
| 1505000 Land | 12/31/2002 | Journal Entry | Sov. Bank Farmington Land | 1505000 Fixed Assets:Land | 134,145.76 | |
| 1505000 Land | 12/31/2002 | Journal Entry | 177-05-801-012 | 1505000 Fixed Assets:Land | 419,567.34 | |
| 1505000 Land | 12/31/2002 | Journal Entry | Pt Gov Lots 164,166,175 | 1505000 Fixed Assets:Land | 1,106,103.00 | |
| 1505000 Land | 12/31/2002 | Journal Entry | Mandalay Haven Site | 1505000 Fixed Assets:Land | 4,246,965.93 | |
| 1505000 Land | 12/31/2002 | Journal Entry | 177-05-801-025 | 1505000 Fixed Assets:Land | 571,940.53 | |
| 1505000 Land | 12/31/2002 | Journal Entry | 177-05-801-011 | 1505000 Fixed Assets:Land | 417,833.60 | |
| 1505000 Land | 12/31/2002 | Journal Entry | 177-08-601-001 | 1505000 Fixed Assets:Land | 1,305,273.39 | |
| 1505000 Land | 12/31/2002 | Journal Entry | 177-05-801-027 | 1505000 Fixed Assets:Land | 1,132,266.58 | |
| 1505000 Land | 12/31/2002 | Journal Entry | 177-05-801-003 | 1505000 Fixed Assets:Land | 886,522.19 | |
| 1510000 Building | 12/31/2002 | Journal Entry | Tivoli Motel | 1510000 Fixed Assets:Building | 3,992,816.91 | |
| 1510000 Building | 12/31/2002 | Journal Entry | Sov. Bank Farmington | 1510000 Fixed Assets:Building | 536,583.02 | |
| 1510000 Building | 12/31/2002 | Journal Entry | Sov. Bank Enfield | 1510000 Fixed Assets:Building | 706,250.61 | |
| 1520000 Furniture and Fixtures | 12/31/2002 | Journal Entry | 2002 YE adj | 1520000 Fixed Assets:Furniture and Fixtures | 7,938.00 | |
| 1610000 Building | 12/31/2002 | Journal Entry | 2002 YE adj | 1610000 Fixed Assets:Accumulated Depreciation:Building | | 201,371.00 |
| 1350000 Refundable Deposits | 12/31/2002 | Journal Entry | 2002 YE adj | 1350000 Refundable Deposits | 400,000.00 | |
| 1711801 Capital Invested | 12/31/2002 | Journal Entry | 2002 YE adj | 1711801 Notes Receivable - External:[Borrower Name]:[Specific Note (if applicable)]:Capital:Capital Invested | 25,000.00 | |
| 1800000 Equity Investments | 12/31/2002 | Journal Entry | Keating - 2002 YE adj | 1800000 Equity Investments | 25,475.00 | |
| 1800000 Equity Investments | 12/31/2002 | Journal Entry | Airport - 2002 YE adj | 1800000 Equity Investments | 7,500.00 | |
| 1800000 Equity Investments | 12/31/2002 | Journal Entry | 70LP - 2002 YE adj | 1800000 Equity Investments | 35,000.00 | |
| 1800000 Equity Investments | 12/31/2002 | Journal Entry | Cedar Mountain - 2002 YE adj | 1800000 Equity Investments | 52,030.00 | |
| 1800000 Equity Investments | 12/31/2002 | Journal Entry | Lewis - 2002 YE adj | 1800000 Equity Investments | 236,000.00 | |
| 1800000 Equity Investments | 12/31/2002 | Journal Entry | Frias - 2002 YE adj | 1800000 Equity Investments | 25,000.00 | |
| 1999000 Suspense | 12/31/2002 | Journal Entry | 2002 YE adj | 1999000 Suspense | 307,650.14 | |
| 2000000 Accounts Payable | 12/31/2002 | Journal Entry | 2002 YE adj | 2000000 Accounts Payable | | 113.28 |
| 2010900 Credit Card Payable | 12/31/2002 | Journal Entry | 2002 YE adj | 2010900 Credit Card Payable | | 9,252.51 |
| 2100003 Casa Malaga Motel, Inc. | 12/31/2002 | Journal Entry | 2002 YE adj | 2100003 Due To Affiliates:Casa Malaga Motel, Inc. | | 150.00 |
| 2100010 Tivoli Motel, Inc. | 12/31/2002 | Journal Entry | 2002 YE adj | 2100010 Due To Affiliates:Tivoli Motel, Inc. | | 4,994,601.14 |
| 2100013 Miami Beach | 12/31/2002 | Journal Entry | 2002 YE adj | 2100013 Due To Affiliates:Miami Beach | | 1,695.76 |
| 2100018 Happi Inn | 12/31/2002 | Journal Entry | 2002 YE adj | 2100018 Due To Affiliates:Happi Inn | | 825.31 |
| 2100022 Sovereign Bank - Enfield | 12/31/2002 | Journal Entry | 2002 YE adj | 2100022 Due To Affiliates:Sovereign Bank - Enfield | | 104,584.22 |
| 2100023 Sovereign Bank - Farmington | 12/31/2002 | Journal Entry | 2002 YE adj | 2100023 Due To Affiliates:Sovereign Bank - Farmington | | 83,667.41 |
| 2210000 Refundable Deposits | 12/31/2002 | Journal Entry | 2002 YE adj | 2210000 Refundable Deposits | | 19,694.00 |
| 2240000 Sales Tax Payable | 12/31/2002 | Journal Entry | 2002 YE adj | 2240000 Sales Tax Payable | | 4,023.00 |
| 2400001 T Gonzales | 12/31/2002 | Journal Entry | 2002 YE adj | 2400001 Notes Payable - External:T Gonzales | | 41,500,000.00 |
| 2400002 Aspen Financial | 12/31/2002 | Journal Entry | 2002 YE adj | 2400002 Notes Payable - External:Aspen Financial | | 16,082,000.00 |
| 2400003 Consolidated Mortgage | 12/31/2002 | Journal Entry | 2002 YE adj | 2400003 Notes Payable - External:Consolidated Mortgage | | 7,835,706.00 |
| 2400004 First Security - Enfield | 12/31/2002 | Journal Entry | 2002 YE adj | 2400004 Notes Payable - External:First Security - Enfield | | 528,288.60 |
| 2400005 First Security - Farmington | 12/31/2002 | Journal Entry | 2002 YE adj | 2400005 Notes Payable - External:First Security - Farmington | | 422,630.64 |
| 2610000 Deferred Installment Gain | 12/31/2002 | Journal Entry | 2002 YE adj | 2610000 Deferred Installment Gain | | 13,499,972.44 |
| 3000000 Opening Balance Equity (3) | 12/31/2002 | Journal Entry | 2002 YE adj | 3000000 Opening Balance Equity (3) | 38,987,547.48 | |
| | | | | | 103,953,698.70 | 103,953,698.70 |

# EXHIBIT B

| From: | Kevin Coleman |
|---|---|
| To: | "Lenard Schwartzer" |
| Cc: | "Joshua Teeple"; "Ben Howard"; "Kavita Gupta"; Chris Hart |
| Subject: | RE: Desert Land, et al *** Potential Inter-Company Claims |
| Date: | Thursday, June 27, 2019 12:29:00 PM |
| Attachments: | image001.png |
| Importance: | High |

Hi Lenard,

I wanted to follow-up on the below request. Were you able to confer with David Gaffin and/or Howard Bullock about our questions? We really do need responses ASAP since we anticipate filing a motion soon to bring the intercompany claim issue to the court's attention. If there is no other information to share, please confirm to us that that is the case.

There is one other question on this topic that we would like to pose to the Debtors' managers, however. Could they please tell us where Desert Land and Desert Oasis Apartments had banking relationships in 2002 and prior years?

Best regards,

--Kevin

**From:** Kevin Coleman
**Sent:** Tuesday, June 18, 2019 5:29 PM
**To:** 'Lenard Schwartzer' <LSchwartzer@s-mlaw.com>
**Cc:** 'Joshua Teeple' <jteeple@gtllp.com>; Ben Howard <bhoward@gtllp.com>; Kavita Gupta <kgupta@guptaferrer.com>; Chris Hart <chart@nutihart.com>
**Subject:** Desert Land, et al *** Potential Inter-Company Claims
**Importance:** High

Hi Lenard,

As I think you know, the Trustee's financial advisors have been trying to determine if intercompany claims exist. According to tax returns and Quickbooks records, Desert Oasis Apartments, LLC owed Desert Land, LLC $4,499,329.00 as of December 31, 2017.

As far as they have been able to determine, the potential intercompany obligation to Desert Land was created by a journal entry in Quickbooks in 2002, which is attached. As you can see, it was apparently booked as a year-end adjustment on December 31, 2002. My understanding is that the Trustee's financial advisors have asked for documentation to validate the journal entry, but the Debtor's management has been unable to provide it. I also understand that the financial advisors have asked management for an explanation of what gave rise to the obligation (was it a loan or other cash infusion, allocation of expenses, etc.) and for copies of any agreements memorializing the advance, but they have been unable to provide those either.

We will be filing a motion in order to bring the potential inter-estate conflict of interest to the

attention of the Court, creditors, and the UST, and am therefore asking you to confirm with your clients whether they disagree with any of the following statements:

1. The oldest financial records referencing the intercompany obligation from Desert Oasis Apartments, LLC to Desert Land, LLC go back to 2002, and no prior records relating to this transaction are available;
2. It is unclear whether the intercompany obligation arose in 2002 or at an earlier date;
3. The Debtors management does not recall the underlying reasons for why Desert Oasis Apartments is reflected as having a liability to Desert Land, LLC; and
4. No written agreement between Desert Oasis Apartments, LLC and Desert Land, LLC (or other writing signed by Desert Oasis Apartments, LLC) can be located that memorializes the reasons an intercompany debt is reflected on the Debtors' books and records and tax returns.

If any of these statements are inaccurate, or if you have any other information concerning the purported intercompany debt from Desert Oasis Apartments to Desert Land, please let us know by the end of this week.

If you have any questions or wish to discuss, please feel free to contact me.

Best regards,

--Kevin


Kevin W. Coleman
**Nuti Hart LLP**
411 30th Street, Suite 408
Oakland, CA 94609
Cell: 415 533-2920
Office: 510 506-7155
kcoleman@nutihart.com



# EXHIBIT F

Kevin W. Coleman (CA SBN 168538)
Christopher H. Hart (CA SBN 184117)
NUTI HART LLP
411 30TH Street, Suite 408
Oakland, CA 94609-3311
Telephone: 510-506-7152
Email: kcoleman@nutihart.com
        chart@nutihart.com

Talitha Gray Kozlowski (NV SBN 9040)
GARMAN TURNER GORDON LLP
7251 Amigo Street, Suite 210
Las Vegas, NV 89119
Telephone: 725-777-3000
Email: tgray@gtg.legal

Counsel for Kavita Gupta,
Chapter 11 Trustee

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>DESERT OASIS APARTMENTS, LLC,<br><br>Debtor. | Case No.: BK-S-18-12456-GS<br><br>Chapter 11<br><br>**SUPPLEMENTAL RULE 2014(a) DISCLOSURES BY CHAPTER 11 TRUSTEE KAVITA GUPTA, NUTI HART LLP, GARMIN TURNER GORDAN LLP, AND GROBSTEIN TEEPLE LLP**<br><br>Date: **[no hearing required unless requested]**<br>Time:<br>Judge: Hon. Gary Spraker |

**TO:    THE HONORABLE GARY SPRAKER, ALL CREDITORS AND PARTIES IN INTEREST AND THE OFFICE OF THE UNITED STATES TRUSTEE**

**PLEASE TAKE NOTICE THAT** pursuant to Federal Rule of Bankruptcy Procedure 2014(a), Kavita Gupta, the duly appointed and acting Chapter 11 trustee in the above captioned cases (the "Trustee"), Nuti Hart LLP, Garman Turner Gordon LLP, and Grobstein Teeple LLP ("Financial Advisors") hereby supplement the disclosures made in their respective applications for employment to state the following:

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

## I. INTRODUCTION

On October 1, 2020, counsel to Jeffrey I. Golden, Chapter 11 trustee appointed in the case of Desert Land LLC ("Trustee Golden") communicated that Trustee Golden believes that Kavita Gupta, Chapter 11 trustee for the estates of Desert Oasis Apartments, LLC ("Desert Oasis Apartments") and Desert Oasis Investments, LLC, and former Chapter 11 trustee for Desert Land, LLC ("Desert Land"), Nuti Hart, LLP, Garman Turner Gordon, LLP, and Grobstein Teeple, LLP (collectively, the "Professionals") had a conflict of interest, and that during the period of time the conflict existed, the Trustee and the Professionals took actions that purportedly damaged the Desert Land estate.

The specific accusation was relayed in an email to Kevin W. Coleman, and states as follows:

> As you know, Jeff and our firm have a fiduciary duty to the estate and creditors. Given the facts before us, we are required to object to the fee application. Kavita's resignation confirmed an actual conflict existed, ***which conflict appears to have arisen prior to actions which harmed the Desert Land estate (i.e. de-scheduling of $4.5MM A/R, $1MM credit for DLLA, etc).*** [emphasis added]

A copy of the email is attached as __Exhibit 1__.

The accusations of Trustee Golden and his counsel against the Trustee and the Professionals lack any factual or legal basis. Trustee Golden and his counsel first accuse the Trustee and the Professionals of "descheduling" a $4.5 million dollar claim. This is entirely inaccurate. In actuality, David Gaffin, the manager of the Debtors, scheduled a $4.5 million claim for Desert Land in the Desert Oasis Apartments case. *See* Dkt. 96. The Trustee, in compliance with her statutory duty to investigate the assets and liabilities of each of the Debtors under Section 1106(a)(3),[1] conducted an investigation which revealed that Desert Oasis

---

[1] 11 U.S.C. 1106(a) provides:

    (**a**) A trustee shall—

        (**3**) except to the extent that the court orders otherwise, investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

Apartments did not owe $4.5 million to Desert Land. When Mr. Gaffin and his counsel were advised of the facts of this investigation, including the sworn testimony of the Debtors' former accountant, Mr. Gaffin, on behalf of Desert Land and Desert Oasis Apartments, **voluntarily** amended the schedules to remove the claim because it was improperly scheduled. Therefore, Mr. Gaffin – not the Trustee – amended the schedules. More importantly, the Trustee would have violated her duties had she failed to investigate the claims, ignored the evidence establishing that Desert Land did not hold a claim against Desert Oasis Apartments and/or suppressed that evidence. Therefore, Trustee Golden's claim that the Trustee and the Professionals damaged the Desert Land estate by "descheduling" the $4.5 million claim is false.[2]

Second, Trustee Golden and his counsel accuse the Trustee and the Professionals of damaging the Desert Land estate by entering into a court-approved settlement between Desert Land with Desert Land Loan Acquisition, LLC, other insiders, and the Sher Group of creditors which gave rise to the $1 million credit. The settlement was negotiated at a two day court-supervised mediation conducted under the auspices of the Hon. Christopher Jaime, United States Bankruptcy Court Judge for the Eastern District of California. The $1 million credit was one provision of a complex agreement that resolved litigation that potentially could have saddled Desert Land with an additional $70 million in debt, and so cannot be disaggregated from the other terms or viewed in isolation. This Court entered an order approving the settlement expressly finding that it was in the best interest of the Debtor, the Desert Land estate and the creditors. Therefore, Trustee Golden's allegation that the court-approved settlement damaged the Desert Land estate lacks merit.

Finally, if Trustee Golden and his counsel believed that the Trustee and the Professionals had an actual conflict of interest which harmed the Desert Land estate, they could have and should have filed an objection to the Professionals' fee applications so that the Trustee Golden's accusations could be openly and properly resolved by the Bankruptcy Court. **Neither Trustee**

---

[2] The accusation of Trustee Golden and his counsel is a red herring. The relevant issue is why Trustee Golden is attempting to revive the $4.5 million scheduled claim when Nuti Hart has advised Trustee Golden and his counsel in June 2020 that the evidence clearly establishes that the claim was scheduled in error.

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

**Golden nor his counsel did so**.  Instead, on September 4, 2020, Trustee Golden and his counsel asked the Trustee and Nuti Hart to participate in a "closed door" mediation in early October 2020 to settle an "undisclosed" claim that Desert Land purportedly held against Desert Oasis Apartments.  Trustee Golden's counsel advised Nuti Hart that they would only disclose the claim in the mediation when the mediation privilege applied.  The Trustee declined to participate in a mediation since she could not justify expending Desert Oasis Apartments' resources to mediate an "undisclosed" claim nor could she or Nuti Hart properly defend Desert Oasis Apartments against an "undisclosed" claim.   In other words, instead of raising the the purported conflict of the Trustee and the Professionals to the Bankruptcy Court, Trustee Golden and his counsel tried to orchestrate a quick settlement of an "undisclosed" claim with the very professionals that Trustee Golden and his counsel are making accusations against.

This supplemental Rule 2014 statement responds to Trustee Golden's baseless assertions concerning the alleged conflict of interest, and to the false assertion that any actions taken by the undersigned caused damage to the Desert Land estate.

**II.    SUMMARY**

      **A.    The Trustee, Nuti Hart LLP, Garman Turner Gordon LLP, and Grobstein Teeple LLP Timely Disclosed Potential Conflicts of Interest**

The Trustee fully disclosed the potential conflict arising from the purported $4.5 million claim and potential preference or other avoidance claims *inter alia* to the United States Trustee prior to confirmation of her appointment, to the Court in a case status conference statement filed April 8, 2019 [Dkt. 538], in employment applications [Dkt. 544], and in Supplemental Rule 2014(a) Disclosures filed August 12, 2019 [Dkt. 824].  Neither the Court, the Office of the United States Trustee, nor any interested party objected to the Trustee's continued tenure as trustee in all three cases based upon the potential conflict of interest.

There is no *per se* prohibition on a trustee serving in jointly administered estates where inter-debtor claims exist.  Fed. R. Bankr. Proc. 2009(d);  In re BH & P, Inc., 949 F.2d 1300, 1312-13 (3d Cir. 1991).  The propriety of a trustee's continued service has to be evaluated on a case-by-case basis, and a trustee is required to investigate and disclose the circumstances actual

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

1    and potential conflicts arising from the inter-debtor claims.  Id.  It was therefore entirely proper

2    for the Trustee to investigate the basis for the purported $4.5 million claim as she had a statutory

3    duty to investigate the claims and assets of each of the Debtors.

**B.      The $4.5 Million Intercompany Claim Never Existed and Therefore, It Did Not and Could Not Create an Actual Conflict**

6            The Debtors' managers stated to the Trustee that the purported $4.5 million intercompany

7    claim appeared on the schedules because that amount was reflected as owing by Desert Oasis

8    Apartments to Desert Land on the Debtors' general ledger and tax returns, but that they could not

9    recall when or why the purported obligation arose.  The tax returns similarly were based on the

10   general ledger.  Investigation revealed that the Debtors' former accountant made an erroneous $5

11   million entry on the Debtors' internal accounting records in 2001 based upon her

12   misunderstanding of an escrow statement provide to her by David Gaffin.  That erroneous entry

13   caused the intercompany account balance on the general ledger to overstate the amount owed by

14   Desert Oasis Apartments to Desert Land by $5 million at all times after 2001.

15           The investigation also revealed that Desert Land never held a right to payment against

16   Desert Oasis Apartments.  Desert Land did not incur debt on behalf of Desert Oasis Apartments,

17   acquire assets for Desert Oasis Apartments, pay expenses of Desert Oasis Apartments, loan

18   money to Desert Oasis Apartments, or give any other form of consideration to Desert Oasis

19   Apartments in exchange for the purported $4.5 million debt.

20           The erroneous recording of the $5 million intercompany transaction in 2001 on the

21   general ledger cannot and does not create a legally enforceable right to payment.   A general

22   ledger entry serves as an internal record of an underlying transaction, and they are subject to

23   change if there is a discovery of an error.  The entry itself cannot be the source for the obligation.

24   Accounting Standards Codification Topic 250 (ASC 250) governs accounting changes and error

25   corrections.  Discovery of a material error requires the entity to restate and re-issue its previously

26   issued financial statements to reflect the correction of the error in those financial statements.

27           As more fully discussed below, the Debtors' original accountants agreed and provided a

28   sworn statement that they would not have booked the transaction as originally presented if they

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

5

had been provided the relevant facts. *See* **Exhibit 4.** The amendment of the schedules conforms to ASC 250 and effectively re-issues the financial information, in their corrected form.

For a conflict of interest to exist, Desert Land would have had to hold a right to payment against Desert Oasis Apartments "independent" of what the general ledger entries stated. But in reality, Desert Land ***never had any right to payment*** from Desert Oasis Apartments when the erroneous accounting entry was made in 2001, and it did not hold a right to payment when the bankruptcy petitions were filed.

The Trustee brought the facts concerning the erroneous accounting entry to the attention of the Debtors' managers, David Gaffin and Howard Bulloch, and their counsel in April 2020. After reviewing those facts, including the sworn statement of Debtors' former accountants describing the error, and conferring with their counsel, Mr. Gaffin, voluntarily amended the schedules of Desert Land and Desert Oasis Apartments to eliminate the purported $4.5 million claim. Notably, the Trustee did not amend the schedules. Hence, Trustee Golden's assertion that the Trustee was responsible for "de-scheduling" the $4.5 million claim is false. The decision to amend the schedules was made solely by David Gaffin and his counsel after recognizing that a mistake had been made, and as a result, that the schedules were in error.

No conflict of interest existed and all actions taken by the Trustee and her professionals with respect to the purported $4.5 million obligation scheduled as owing by Desert Oasis Apartments to Desert Land were entirely proper. Because Desert Oasis Apartments had no legal obligation to pay $4.5 million to Desert Land, there necessarily cannot be a "conflict" of interest between Desert Land and Desert Oasis Apartments.

A trustee has, among other things, a statutory duty to investigate claims (11 U.S.C. § 704(a)(5)) and to investigate the acts, conduct, assets, and liabilities of a debtor (11 U.S.C. § 1106(a)(3). Even if a debtor has filed schedules, a Chapter 11 trustee may be required to file appropriate amendments after a reasonable investigation and review.   U.S. Department of Justice, Executive Office for United States Trustee, Chapter 11 Trustee Handbook, page 20. However, a trustee has a duty <u>not</u> to pursue meritless claims or litigation on behalf of an estate. <u>Maxwell v. KPMG, LLP</u>, 520 F.3d 713, 719 (7th Cir. 2008) (inviting appellee to file motion for

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

1    sanctions against a trustee and counsel, stating "But frivolous suits are forbidden. So

2    frivolousness must depend not on the net expected value of a suit in relation to the cost of suing,

3    but on the probability of the suit's succeeding. If that probability is very low, the suit is frivolous;

4    really that is all that most courts, including ours, mean by the word."); In re American

5    Remanufacturers Inc., 453 B.R. 235, 240 (Bankr. D. Del. 2011) (sanctioning trustee and counsel

6    under 28 U.S.C. § 1927 for pursuing litigation after it became clear that the claims were not

7    viable). Consequently, the Trustee had a statutory duty to review the assets and liabilities of

8    Desert Land and Desert Oasis Apartments. She would have violated her duties as trustee for

9    both Desert Land and Desert Oasis Apartments had she ignored the incontrovertible evidence

10   establishing that Desert Land did not hold a claim against Desert Oasis Apartments, suppressed

11   that evidence, or continued to insist that Desert Land had a basis to assert the $4.5 million

12   intercompany claim against Desert Land.

13        **C.    The  Court Approved DLLA/Sher Group Settlement and $1 Million Credit**

14        The settlement between Desert Land with Desert Land Loan Acquisition, LLC, other

15   insiders, and the Sher Group of creditors which gave rise to the $1 million credit was negotiated

16   at a court-supervised mediation conducted under the auspices of the Hon. Christopher Jaime,

17   United States Bankruptcy Court Judge for the Eastern District of California. The $1 million

18   credit was one provision of a complex agreement that resolved litigation that potentially could

19   have saddled Desert Land with an additional $70 million in debt, and so cannot be disaggregated

20   from the other terms or viewed in isolation.

21        Counsel for creditors holding over 97% of the claims in the Desert Land case participated

22   in the mediation and were involved in the negotiations leading to the settlement. The

23   participating counsel were Brigid Higgins representing the Shotgun Entities, Mark Wray and

24   John Fischer representing the Gonzales Trust, Michael Feder representing the Sher Group, and

25   Candace Carlyon representing DLLA and the insiders. Consequently, substantially all of Desert

26   Land's creditors – including unsecured creditors – were aware of and consented to all terms of

27   the settlement agreement, including the $1 million credit.

28

7

The resulting settlement agreement was filed with the Court on February 14, 2020 [Dkts. 1006 & 1007], and the Court issued an order approving the compromise following a hearing on March 19, 2020 [Dkt. 1035] finding that the settlement agreement was, among other things, in the best interest of Desert Land, the Desert Land estate and the creditors of the estate.

### D. The Trustee Timely Resigned After a Potential Conflict Ripened Into an Actual Conflict

In early June 2020, the Financial Advisors completed their analysis of potential avoidance claims.[3] This analysis confirmed that that Desert Oasis Apartments had transferred in excess of $610,000.00 to Desert Land in the four (4) years prior to bankruptcy. The transfers did not appear to have been made in exchange for reasonably equivalent value or other consideration.[4] In early June, the results of the auction of the Debtors' real property assets had also become known. While the auction on the Apartments was robust, the sale price ultimately was not sufficient to pay all of Desert Oasis Apartments creditors in full, which meant that it would be necessary to pursue avoidance claims, one of which involved Desert Land. It was at that point that the Trustee properly concluded that she had to resign from Desert Land and she immediately notified the Office of the United States Trustee in writing for the bases for her resignation.

Provided that there was disclosure of a potential conflict (which occurred here), it is appropriate for a single trustee to continue serving in jointly administered cases until the potential conflict ripens into an actual conflict. In re Petters Co., Inc., 401 B.R. 391, 413 (Bankr. D. Minn. 2009) (denying motion to appoint separate trustees in jointly administered cases with potential conflicts and stating "After the recovery and assemblage of the estates' due, the next phase of administration would begin. At that point, a trustee's pursuit of claims cross-running between the estates, or the potential dilution of a realization via substantive consolidation, could

---

[3]     June 29, 2020 was the deadline for commencing avoidance actions under 11 U.S.C. §546.

[4]     The investigation into potentially avoidable transfers also revealed that Desert Oasis Investments transferred approximately $714,000 to Desert Land for no apparent consideration.

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

raise the prospect of disqualifying prejudice. *However, the issue could arise only then, and only then would it get focused.*" [emphasis added]) *aff'd* Ritchie Special Credit Invs. Ltd. v. United States Tr., 620 F.3d 847, 856 (8th Cir. 2010) (noting that it may be appropriate to revisit whether to appoint separate trustees at such time as 'a cash bearing estate has been assembled and at a time the investigation' prove[s] that unripened conflicts have materialized).

Consequently, the Trustee was not required to resign until the conflict presented by the avoidance claims of Desert Oasis Apartments and Desert Oasis Investments against Desert Land ripened. That conflict did not ripen until such time as it was confirmed that the Desert Oasis Apartments creditors would not be paid in full, and it became necessary to exercise avoidance powers on behalf of that estate against Desert Land. At that point, the Trustee notified the Office of the United States Trustee and promptly tendered her resignation.

E.    **Reservation of Rights Concerning Trustee Golden's Conduct Waiving any Conflict**

Trustee Golden and his counsel were informed no later than late June 2020 of all of the facts recited above, including: the fact that the scheduled $4.5 million claim had no basis in reality and the reasons the Debtors voluntarily amended their schedules to eliminate that claim; the terms of the settlement with DLLA/Sher Group including the $1 million credit; and the fact that the Trustee resigned from the Desert Land case because she determined in early June 2020 that Desert Oasis Apartments would be required to pursue avoidance claims against Desert Land.

Despite Trustee Golden's knowledge and his assertion that the Trustee and her professionals had a conflict of interest and took inappropriate actions that harmed Desert Land, Trustee Golden asked Grobstein Teeple, LLP, the Trustee's Financial Advisors, to prepare monthly operating reports for Desert Land, LLC for the months of June, July, and August 2020 because Trustee Golden had not retained an accountant. Trustee Golden's request was surprising as his counsel's employment application expressly provides that its services include the preparation of the monthly operating reports *See* Dkt. 1325, at 5:13-16. Notwithstanding, Grobstein Teeple, LLP provided such services to Trustee Golden as a courtesy.

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

Neither Trustee Golden nor Grobstein Teeple LLP advised the Trustee that Grobstein Teeple was preparing Desert Land's monthly operating reports until Grobstein Teeple advised her of the same on September 18, 2020. She was further advised that Grobstein Teeple LLP has not requested or received any payments for the services Trustee Golden requested. The Trustee immediately notified her counsel Nuti Hart LLP and Grobstein Teeple was asked not to provide any additional services to Trustee Golden and/or the Desert Land estate.

Despite Trustee Golden's knowledge and his assertion of a conflict of interest, Trustee Golden's counsel left a voicemail on September 4, 2020 with the Trustee's counsel asking the Trustee for an extension of time to file claims against the Desert Oasis Apartments estate, and asking the Trustee and her counsel Nuti Hart LLP to participate in a mediation to discuss the merits of the claims the Desert Land estate believed it had against Desert Oasis Apartments. The September 4, 2020 voicemail also alluded to certain "sensitivities" but did not disclose what those sensitivities were.

The Trustee's counsel responded on September 8, 2020 via email requesting clarification of the request, which stated in its entirety:

Hi Jerry,

I hope you had a nice Labor Day Weekend.

 I got your v/m, and if I understand it correctly, you want the Trustee to extend the period for the Desert Land estate to file a claim in Desert Oasis Apartments, and to pursue a mediation process after you share your analysis with us owing to "sensitivities" surrounding that claim. (In other words, you would prefer not to just file a proof of claim that we could review and decide whether it should be objected to.)

In order to assist us in considering this request, can you tell me when you expect to complete your investigation/analysis?

Can you also please explain what "sensitivities" would be associated with the Desert Land estate asserting a claim against the Desert Oasis Apartments estate? If there is a legitimate basis for Desert Land to be allowed a claim in Desert Oasis Apartments, the facts and circumstances surrounding that claim are going to have to be disclosed either through the claims allowance process or a 9019 motion, so I don't understand how anything can be done confidentially.

Best regards,

--Kevin

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

10

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

> PS: As I have previously stated, I do not see any basis for Desert Land to assert a claim against Desert Oasis Apartments. And even if one does exist, ███████

Trustee's Golden's counsel responded via email on September 9, 2020, which email stated in its entirety:

> Hi Kevin,
>
> Thanks for your note. Yes, we are asking for an extension of time from the September 23 current end of the tolling period (30 days to October 23?) for Trustee Golden to file claims in Trustee Gupta's other cases, and the opportunity for our respective clients to meet in the context of a mediation to discuss the claims.
>
> While we anticipate completing our analysis of claims before the end of the tolling period as hopefully will be extended, **our intention is to defer getting into any of the substance of the claims until mediation, at which point the mediation privilege will apply. We think this confidential setting is far more conducive to frank and productive settlement discussions.**
>
> Of course in the event a settlement reached then all required and appropriate disclosure would be made in connection with any approval.
>
> We don't think this is a big ask in the sense that it may save costs and expedite a resolution while not adding any appreciable delay (in terms of timing context, our settlement conference with DLLA that the Court arranged is October 26). We are thinking we would have the mediation in person in California or by Zoom (as you and Trustee Gupta think best) in early or mid-October.
>
> Please let us know if Trustee Gupta is amenable. Thanks for considering.
>
> All the best,
>
> -    Jerry [Emphasis added.]

Copies of these emails are attached as **Exhibit 2**.

The Trustee declined Trustee Golden's request to extend the deadline to file claims or enter into a mediation. First, as their email advised, despite having already been provided with a 90-day extension in which to file claims, Trustee Golden and his counsel were not anticipating "completing their claims analysis" for yet another 30 days (i.e., October 23, 2020). Second, Trustee Golden and his professionals wanted a mediation prior to their completion of their claims analysis in early to mid-October. Third and most importantly, they were unwilling to disclose basic information about their alleged claims (i.e., nature, amount and supporting evidence) unless

"mediation privilege" applied. For all of those reasons, there appear to be no justification to extend the deadline or expend Desert Apartments' resources to mediate a claim Trustee Golden and his professionals were not willing to file or openly discuss unless cloaked in mediation privilege. In addition, it would be impossible for Nuti Hart and the Trustee to prepare for a mediation on a claim that would be disclosed in the mediation.

On September 23, 2020, Trustee Golden filed proofs of claim in the Desert Oasis Apartments and Desert Oasis Investments cases for amounts not less than $78 million based on alter ego, substantive consolidation, and the $4.5 intercompany claim. Each of the proofs of claim also included the following language: "No Admission. Nothing contained in this Proof of Claim shall be deemed an admission by the Trustee [Golden]. The Trustee [Golden] expressly reserves the right to withdraw this Proof of Claim in his sole discretion with the effect to be as if this Proof of Claim had never been filed." Copies of these claims are attached as **Exhibits 3** and **4**.

As relevant here, the proof of claim filed against Desert Oasis Apartments attempts to revive the $4.5 million intercompany claim by arguing that regardless of the fact that no right to payment ever existed as an initial matter, the plan of reorganization confirmed in Desert Oasis Apartments' 2011 bankruptcy case allowed the Desert Land claim.

In order to avoid any controversy concerning whether Nuti Hart would be in violations of duties owed to a former client, Nuti Hart requested a formal waiver from Trustee Golden to allow Nuti Hart to prepare an objection to the $78 million claims. Trustee Golden declined to grant the waiver.

On October 1, 2020, Trustee Golden filed his *Reservation of Rights with Respect to First Interim Fee Applications of: (1) Nuti Hart LLP; Garmen Turner Gordon LLP; and (3) Grobstein Teeple LLP* in the Desert Oasis Apartments case. *See* Dkt. 165. In this pleading, he fails to state any specific objections or concerns. Rather, Trustee Golden states that he "hopes to work consensually with the Trustee and the Professionals to address and resolve those concerns prior to a final hearing on the Fee Application and therefore is not elaborating on them in this Reservation of Rights." *See* Dkt. 165.

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

12

In view of Trustee Golden's position with respect to the asserted conflict of interest, Nuti Hart will not comment on the merits of the $78 million claims. The Trustee is in the process of retaining special counsel who will object to those claims.

Nevertheless, in view of Trustee Golden's conduct *inter alia* requesting Nuti Hart's involvement in a "closed door" mediation over the asserted claims and approval for any resulting settlement, the Trustee and her Professionals reserve all rights with respect to whether Trustee Golden' conduct constitutes a waiver of any conflict with respect to the $78 million claims.

**III. FACTS**

1. On July 13, 2018, Desert Oasis Apartments, LLC filed its schedules of assets and liabilities [Dkt. 96]. Desert Land was listed in Desert Apartments' Schedule F as holding an unsecured claim in the amount of $4.5 million. *See* Dkt. 96, ECF p. 18 of 53.

2. Desert Land also filed its schedules of assets and liabilities on July 13, 2018 [Dkt. 102]. No corresponding claim against Desert Apartments was listed as an asset in the Desert Land Schedule B. *See* Dkt. 102, ECF pp. 11-14 of 61.

3. On August 28, 2018, Desert Land filed amended schedules, which state that there was $4,499,328.50 due from Desert Oasis Apartments, subject to offsets. *See* Dkt. 250, ECF p. 8 of 20.

4. On April 2, 2019, the Court granted the Application by the United States Trustee to appoint Kavita Gupta (the "Trustee") as the Chapter 11 trustee of for each of Debtors' bankruptcy estates [Dkt. 528]. The Trustee subsequently obtained approval from the Court to retain Nuti Hart LLP as her general counsel, Garmin Turner Gordon LLP as her local counsel and real estate counsel, and Grobstein Teeple LLP as her financial advisors/accountants.

5. On April 8, 2019, the Trustee filed her first Case Status Conference Statement. On page 8 of that statement, the Trustee disclosed the potential inter-estate claim, and explained:

> [T]he Trustee has sought additional information to determine if an inter-company obligation does exist that might require the Trustee to resign her position from one or more of the three cases in which she was appointed to serve. *See, generally* In re BH & P, Inc., 949 F.2d 1300, 1312-13 (3d Cir. 1991) (although there is no *per se* rule against it, a trustee may be precluded from serving as trustee in two related cases where intercompany claims exist). The Trustee will

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

supplement this disclosure (and if necessary, take remedial action) once the underlying facts are determined.

6.     The Financial Advisors proceeded to analyze the Debtors' tax returns and other financial records, and interviewed the Debtors' management, former accountants and other related parties to determine whether the schedules were in error, or whether there was in fact an inter-company obligation potentially creating an inter-estate conflict of interest.

7.     By mid-June 2019, the Financial Advisors had ascertained:

    a.   The potential intercompany obligation by Desert Apartments to Desert Land appeared to have been created by a journal entry in Quickbooks on December 31, 2002;

    b.   The journal entry was described as a year-end adjustment;

    c.   According to tax returns and Quickbooks records, Desert Apartments owed Desert Land $4,499,329.00 as of December 31, 2017 (the "Inter-Estate Claim");

    d.   Although requested, no contemporaneous supporting documentation was provided by the Debtors to the Financial Advisors to establish the basis for or validity of the purported Inter-Estate Claim;

    e.   Although requested, no accounting records or other documentation for periods prior to 2002 were provided to the Financial Advisors;

    f.   It was unclear whether the purported Inter-Estate Claim arose on December 31, 2002 or at an earlier date;

    g.   The Debtors' management did not recall the underlying reasons for why Desert Apartments is reflected as having a liability to Desert Land;

    h.   No subsequent written agreement between Desert Apartments and Desert Land (or other writing signed by Desert Apartments) can be located that memorializes the reasons the purported Inter-Estate Claim is reflected on the Debtors' books and records and tax returns.

i. Desert Land's general ledger reflects that the following transfers were made by Desert Apartments to Desert Land in prior years: (a) $87,000.00 in 2017, $177,000 in 2016, $218,000 in 2015, $185,442 in 2014, $210,000 in 2013, and $28,000 in 2012, however, the Financial Advisors were unable to match these apparent transfers on account of the Inter-Estate Claim to Desert Apartments' banking records (the "Potential Avoidance Claims").

8.     On June 18, 2019, the Trustee's counsel emailed counsel for the Debtors seeking management's confirmation that no further documentation or information regarding the origin of the purported Inter-Estate Claim was available, or alternatively, to provide any such information/documentation before June 21, 2019.

9.     The Debtors' counsel did not respond to the June 18 email, and so a follow-up email requesting a response was sent on June 27, 2019.  That follow-up email further asked that if the Debtors' management could not confirm anything regarding the Trustee's June 18 inquiry, to advise where the Debtors had banking relationships at the relevant time.

10.    The Debtors' counsel did not respond to the June 18, 2019 email or follow-up inquiry prior to August 12, 2019.

11.    On August 12, 2019, the undersigned filed their first Supplemental Rule 2014(a) Disclosures ("First Supp. 2014 Statement") in order to inform the Court and interested parties concerning the status of what was known concerning the Inter-Estate Claim as of that time, explain the circumstances that could give rise to a conflict of interest, and discuss the relevant legal principles that apply when a trustee serves in jointly administered cases having inter-company claims.  *See* Dkt. 824.

12.    The First Supp. 2014 Statement was served via ECF on all registered ECF participants appearing in this case, including the Office of the United States Trustee.  *See* Dkt. 825.

13.    The First Supp. 2014 Statement further stated that:

"After further consultation with the Financial Advisors and counsel, the Trustee is continuing to investigate the Inter-Company debt and anticipates that

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

15

1    she will likely file applications for examinations under Federal Rule of

2    Bankruptcy Procedure 2004 and/or issue subpoenas in the near future." *See* Dkt.

3    824, p. 7.

4    14.    After disclosure of the potential conflict and stated intention to continue

5    investigation of the Inter-Company Claim on August 12, 2019, neither the Court, the Office of

6    the United States Trustee, nor any interested party raised concerns about the Trustee continuing

7    to serve in all three cases.

8    15.    After August 12, 2019, the Trustee and her professionals continued to investigate

9    whether Desert Land held an enforceable claim against Desert Oasis Apartments.  That

10   investigation included requesting additional information from the Debtors' managers, reviewing

11   bank records, and conducting an interview on March 13, 2020 with Gina Shelton of Swecker,

12   Moloney & Moir CPA's ("SMM"), the Debtors' former accountant to provided accounting and

13   tax services to the Debtors at the relevant time.

14   16.    From approximately 1996 through 2010, Ms. Shelton was the person at SMM

15   primarily responsible for inputting entries into the general ledgers maintained for Desert Land

16   and Desert Oasis Apartments and producing the other accounting documentation referenced

17   below.

18   17.    A working trial balance prepared for Desert Oasis Apartments by Ms. Shelton

19   reflected that as of December 31, 2000:

20   a.    A $5 million mortgage on the Apartments previously owed to Heller Financial

21   had been paid off during 2000; and

22   b.    The general ledger account tracking the amount of a note payable to Desert

23   Land by Desert Oasis Apartments had increased by $5,008,060.83.

24   18.    At the March 13 interview, Ms. Shelton stated that she believed that she would

25   have recorded the transactions referenced in paragraph 20 after reviewing an escrow statement.

26   That escrow statement was later located and provided to Ms. Shelton on March 20, 2020.

27   19.    On March 27, 2020, Ms. Shelton executed a declaration under penalty of perjury

28   in which she testified in pertinent part that:

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

16

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

a. She entered the transactions referenced in paragraph 20 on the Debtors' general ledger based on the escrow statement related to the loan made by Tom Gonzales to Desert Land and Desert Oasis Apartments in December 2000;

b. Because the escrow statement did not list Desert Oasis Apartments as a borrower, it appeared to her to indicate that Desert Land was the only borrower on the Gonzales loan;

c. It further appeared to her that Desert Land had used approximately $5 million of the Gonzales loan proceeds to pay off the Heller Financial Mortgage;

d. Because it appeared to her at the time that Desert Land had loaned Desert Oasis Apartments $5 million to pay off the Heller mortgage, the transaction was reflected as an amount owed by Desert Oasis Apartments to Desert Land.

20. Ms. Shelton further testifies in her declaration that:

"14. Had I known when I made the general ledger entries referenced in paragraphs 5 through 7[5] above that DOA had borrowed the $5,008,060.83 used to pay off the Heller Financial mortgage from Tom Gonzales instead of DL, I would have reflected that liability as owing to Tom Gonzales. I would not have made a journal entry indicating that DOA owed that amount to DL.

15. Accordingly, the amount reflected on DOA and DL's general ledgers and the December 31, 2000 working trial balance as being owed by DOA to DL on December 31, 2000 was overstated by $5,008,060.83." A copy of Ms. Shelton's declaration (with relevant excerpts of the exhibits) is attached as **Exhibit 5**.

21. In short, Ms. Shelton's declaration established beyond any doubt that the journal entries reflecting a $5 million liability from Desert Oasis Apartments to Desert Land was the

---

[5] These transactions are the same as referenced in paragraph 20 of these Supplemental Rule 2014(a) Disclosures. DOA refers to Desert Oasis Apartments, and DL refers to Desert Land.

17

1  product of a mistake, and that the entries were not based on any actual right to payment Desert

2  Land held against Desert Oasis Apartments.[6]

3      22.    The Shelton declaration and supporting documentation was provided to the

4  Debtors' former managers and their counsel, Candace Carlyon, and it was discussed in a follow-

5  up conference call with David Gaffin and Ms. Carlyon.

6      23.    After reviewing the Shelton declaration, Mr. Gaffin and his counsel agreed that

7  the $4.5 million Desert Land claim had no legal basis and had been scheduled in error.

8  Therefore, he filed amended schedules eliminating that purported claim on April 23, 2020.

9      24.    The Shelton declaration and supporting documentation was transmitted to counsel

10  for Trustee Golden on June 23, 2020.

11  **III.    NOTICE**

12      25.    Notice of this supplemental Rule 2014(a) disclosure has been given to the Hon.

13  Gary Spraker, United States Bankruptcy Court Judge, all creditors and parties in interest, and the

14  Office of the United States Trustee.  The Trustee submits that no further notice need be given.

15  Dated: October 12, 2020

16                        KAVITA GUPTA, CHAPTER 11 TRUSTEE FOR
DESERT OASIS APARTMENTS LLC, AND
DESERT OASIS INVESTMENTS LLC, AND

17                        FORMER CHAPTER 11 TRUSTEE FOR THE
ESTATE OF DESERT LAND LLC,

18

19

20                        */s/ Kavita Gupta*_____
                      Kavita Gupta, Chapter 11 Trustee

21

22

23

24

25  [6]    The Gonzales loan was compromised through a settlement agreement incorporated into Desert Land and Desert Oasis Apartments' joint plan of reorganization confirmed in 2003.  Desert Oasis Apartments, however remained liable on the full amount of the $10 million transfer fee which forms the basis for the Gonzales Trust's claim in this case. Desert Land has paid nothing to the Gonzales Trust on account of its claim.  It is anticipated that the Gonzales Trust will be paid in excess of $8 million in the Desert Oasis Apartments case, and that as a result, the Desert Oasis Apartments estate will have a claim for contribution against Desert Land.

26

27

28

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

18

1   Dated: October 12, 2020

2                                                NUTI HART LLP

3

4                                                By:  */s/ Kevin W. Coleman*
                                                     Kevin W. Coleman
5                                                    Attorneys for Kavita Gupta, Chapter 11
                                                     Trustee
6   Dated: October 12, 2020

7                                                GARMAN TURNER GORDON LLP

8

9                                                By:  */s/ Talitha Gray Kozlowski*
                                                     Talitha Gray Kozlowski
10                                                   Attorneys for Kavita Gupta, Chapter 11
                                                     Trustee
11
    Dated: October 12, 2020
12                                               GROBSTEIN TEEPLE LLP

13

14                                               By:  */s/ Howard Grobstein*
                                                     Howard Grobstein
15                                                   Financial Advisors/Accountants for Kavita
                                                     Gupta, Chapter 11 Trustee
16

17

18

19

20

21

22

23

24

25

26

27

28

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

19