# EXHIBIT K

**BRUTZKUS GUBNER**
YOUR COUNSEL MATTERS®

300 S. 4th Street, Suite 1550
Las Vegas, NV 89101
(702) 835-0800
(866) 995-0215 Fax
www.bg.law

Steven T. Gubner
(818) 827-9118 Direct
sgubner@bg.law

December 1, 2020

**VIA EMAIL AND U.S. MAIL**
jfiero@pszjlaw.com
[*Exhibits sent by Citrix ShareFile link only*]

John D. Fiero, Esq.
Pachulski Stang Ziehl & Jones
150 California Street, 15th Floor
San Francisco, CA  94111-4500

      **Re:**      In re: Desert Oasis Apartments, LLC, NV Case No. bk-s-18-12456-gs
              **Desert Land, LLC's Proof of Claim** (Our File No. 3899.005.08)

Dear Mr. Fiero:

      This letter responds to your letter dated November 25, 2020 ("your letter"), addressed to our client Jeffrey I. Golden, not individually but solely in his capacity as the chapter 11 trustee ("Trustee Golden") of Desert Land, LLC ("Desert Land").  Your letter, on behalf of your client, Kavita Gupta ("Ms. Gupta"), who previously served as chapter 11 trustee of Desert Land, threatens to file a motion under Fed. R. Bankr. P. 9011, by including a draft of same and related documents (collectively, the "Threatened Motion"), in the event Trustee Golden does not withdraw the Desert Land POC (as defined below) within 21 days after the date of your letter.

**PRELIMINARY STATEMENT**

      The $4.5 Million Claim (as defined below) embodied in the Desert Land POC, is the subject of your Threatened Motion.[1]  Before discussing the merits of the Threatened Motion, a preliminary issue needs to be addressed and we welcome your comments.  Nothing herein is

---

[1] This letter does not separately address the substantive consolidation components of the Desert Land POC, which is supported by substantial evidence presented at the trial on the substantive consolidation motion, which the Bankruptcy Court denied "without prejudice."  *See* Bankruptcy Court Order entered July 6, 2018 [Dkt. # 90] ("IT IS ORDERED that substantively consolidating the cases of all of the Desert Entities is denied ***without prejudice***.") (emphasis added).  The Threatened Motion acknowledges the existence of conflicting testimony (for example, *see* p. 13:8-9, "'Bulloch and Gaffin flip-flop between treating the entities separate or consolidates as may be needed.'").  Accordingly, Rule 11 is not invoked.  *See In re: Patsy Fierro*, 615 B.R. 403, 410 (Bankr. E.D.N.Y. 2020) (9011 standard for proofs of claim is that "[i]t must be 'patently clear that a claim has absolutely ***no*** chance of success.'") (emphasis added) quoting *In re Spectee Group, Inc.*, 85 B.R. 146, 159 (Bankr. S.D.N.Y. 1995) (internal quotations omitted.)

2532860

**BRUTZKUS GUBNER**
YOUR COUNSEL MATTERS®

John D. Fiero, Esq.
December 1, 2020
Page 2

intended as a waiver of rights and a further response may be forthcoming in the event the demand in the Threatened Motion is not withdrawn.

As demonstrated by numerous documents, including, without limitation, those documents described below, each of which is being sent to you via a "Citrix ShareFile" link email being sent simultaneously with the email transmitting this letter (referenced herein as "attached hereto"), there was in fact a conflict of interest that became actual at the point your client began to dispute the claim. Promptly after her appointment as trustee for Desert Land and its affiliates Desert Oasis Apartments, LLC ("Apartments") and Desert Oasis Investments, LLC, focused on this $4.5 Million Claim then took action designed to eliminate the claim by hypothesizing and advocating for a narrative that the claim was based on a mistake at its inception almost two decades ago.

This culminated in causing Apartments' insider, David Gaffin – who had been displaced by Ms. Gupta's appointment and was not in possession of Apartments – to amend Apartments' bankruptcy schedules to remove the debt shown as owing to Desert Land. This was contrary to the norms of bankruptcy practice of objecting to disputed scheduled or filed claims, and did not show Ms. Gupta's involvement. This action was also taken in derogation of the bankruptcy court's confirmation order from Apartments' 2011 bankruptcy case (the "2011 Confirmation Order") which provided for the treatment and payment of this claim. Thus, the amendment was unavailing because, "[o]nce a bankruptcy plan is confirmed, it is binding on all parties…." *Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995).[2] Like the Threatened Motion, Ms. Gupta did not address the 2011 Confirmation Order – **which is not subject to collateral attack** – which was not disclosed to the CPA Gina Shelton or the Office of the U.S. Trustee. *See* 2011 Confirmation Order, and accompanying plan of reorganization, attached hereto as **Exhibit A**.

Ms. Gupta herself signed under penalty of perjury two Federal Tax Returns for Desert Land, for 2018 and for 2019 (attached hereto as **Exhibit B** and **Exhibit C**, respectively (highlighting added)), each of which states Desert Land's "end of year" receivable from Apartments in the amount of $4,467,329. Ms. Gupta's hand-written signature is on page 1 of

---

[2] "[A]ll questions that could have been raised pertaining to the plan are entitled to *res judicata* effect. . . . Since the plaintiffs never appealed the bankruptcy court's confirmation order, the order is a final judgment…." *Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995). In *In re Diruzzo*, 527 B.R. 800 (1st Cir. BAP 2015), a chapter 13 trustee attempted to set aside a claim that had been allowed as part of a confirmed plan on the basis that the claim had been allowed by mistake. Finding that a confirmed plan is *res judicata* and its terms are not subject to collateral attack, *Diruzzo* rejected the challenge though the claim would have been disallowed if the objection had been timely. *In re Diruzzo,* 527 B.R. at 804, 809; *see also In re Kelly*, 199 B.R. 698, 702-03 (9th Cir. BAP 1996) ("A confirmed chapter 11 plan 'operates to preclude the assertion of actions which arose out of the prepetition relationship of the parties, the facts of which were fully known by the debtor.' For that reason, a confirmed chapter 11 plan is a 'final judgment' for purposes of *res judicata*.") (citations omitted).

2532860

**BRUTZKUS GUBNER**
YOUR COUNSEL MATTERS®

John D. Fiero, Esq.
December 1, 2020
Page 3

each return.  Ms. Gupta signed the 2019 Federal Tax Return on May 29, 2020 – 36 days *after* Apartments' amended schedules were filed on April 23, 2020, and 70 days *after* CPA Gina Shelton signed her declaration on March 20, 2020 that Ms. Gupta's counsel prepared.

These actions leading to the removal of the claim from Apartments' schedules effected an actual conflict of interest and violated Ms. Gupta's and her counsel's fiduciary duty to Desert Land because they were taken while serving as trustee and counsel for Desert Land.  *In re Perez*, 30 F.3d 1209, 1214 (9th Cir. 1994) ("the debtor-in-possession or trustee … stand in a fiduciary relationship to the estate's creditors"); *In re Long Dei Liu*, 2020 WL 5543041 *2 (C.D. Cal. Sept. 14, 2020) (recognizing that both a chapter 11 trustee and her counsel have a fiduciary duty to a bankruptcy estate and its creditors).  The conflict was actual, not potential, because your client and her counsel in fact placed one debtor's interests (Apartments) ahead of those of the other debtor (Desert Land) in trying to find a basis to vitiate the $4.5 Million Claim.

These actions were effected through your client's counsel's advocacy, which led to the acquiescence of third parties to support the theory that the $4.5 Million Claim was based on a mistake.  In obtaining such third-party acquiescence, there is no evidence of disclosure that Apartments, in its 2011 case, scheduled Desert Land's claim as undisputed in the amount of $5,468,103.96 (though there was disclosure that the claim was not scheduled in Apartments' 2002 case), that the claim was allowed in the 2011 case, that the 2011 Confirmation Order confirmed Apartments' plan providing for the treatment and payment of the claim, and that Apartments made payments on that claim from 2012 through 2017 pursuant to the 2011 Confirmation Order. *See* "Inter-Company Debt Investigation" [N/H-000705 (at pp. 000710-11)] attached hereto as **Exhibit D**.[3] *see also* November 16, 2018, 2004 Examination of David Gaffin, at pp. 34, 49.

Without any apparent good cause, your Threatened Motion ignores the 2011 Confirmation Order's treatment and provisions for payment of the $4.5 Million Claim, and that this receivable was reflected in Desert Land's books and records (including its tax returns) since at least 2005 (the earliest tax returns that we have in our possession) and through 2019.  This alone suggests that the conflict has attenuated to counsel (yourself) for failing to follow the law of the case without any legal basis for the same.  The Threatened Motion does not recite any law or facts which you believe allow your client to disregard the effects of the 2011 Confirmation Order.

Your client's resignation as trustee does not nullify the fiduciary duty to Desert Land that arose and exists as a consequence of her serving as its trustee.  Your client may not permissibly use confidential information and work product that belongs to Desert Land, and is exclusively vested in Trustee Golden as its chapter 11 trustee, for the purpose of attacking the Desert Land POC (which, as discussed above, is not subject to collateral attack in the first instance).

---

[3] Documents identified with Bates stamp numbers beginning with "N/H-[number]" were produced to us by Ms. Gupta's bankruptcy counsel, Kevin W. Coleman of Nuti Hart LLP.

2532860

**BRUTZKUS GUBNER**
YOUR COUNSEL MATTERS®

John D. Fiero, Esq.
December 1, 2020
Page 4

Your letter constitutes the continuation of the breach of her fiduciary duty to Desert Land arising from your client's actual conflict of interest which led to her resignation as trustee.

In short, your client and now you are prohibited by her continuing fiduciary duty to Desert Land to play any role in prosecuting any objection to the Desert Land POC because to do so constitutes a violation of your client's continuing fiduciary duty to Desert Land. As such, by and thru this letter you and your client are requested to cease and desist all further action in violation of her fiduciary duty. We suggest your client defer to an examiner or other fiduciary to be appointed by the Bankruptcy Court, to review and take any appropriate action concerning the Desert Land POC and that your client immediately cease all actions to harm Desert Land.

### REQUEST FOR WITHDRAWAL OF THREAT TO FILE 9011 MOTION

You are requested to confirm in writing **by no later than December 9, 2020**, which is seven days before 21 days after the date of your letter, that your client withdraws the Threatened Motion. If your client fails to do so, be advised that we will proceed to expend substantial resources preparing our response to your Threatened Motion.[4]

### CERTAIN DISPOSITIVE UNDISPUTED FACTS

Reference is made to the following facts none of which is subject to reasonable dispute:

1.      Your letter was sent on behalf of Ms. Gupta in her capacity as the chapter 11 trustee of the bankruptcy estate of Apartments, whose bankruptcy case is pending in the District of Nevada as case number 18-12456-gs.

2.      Your letter concerns that certain proof of claim, dated September 23, 2020 (the "Desert Land POC"), that Trustee Golden filed in the Apartments' case on behalf of Desert Land, whose bankruptcy case is pending in the District of Nevada as case number 18-12454-gs.

3.      Ms. Gupta served simultaneously as chapter 11 trustee of both the Apartments case and the Desert Land case from the date of her appointment, on April 3, 2019, to the date that she resigned as trustee of Desert Land by her letter, dated June 9, 2020, addressed to Edward M. McDonald of the Office of the United States Trustee (the "Resignation Letter"). A true and correct copy of the Resignation Letter [N/H-019214-262] is hereto attached as **Exhibit E.**

---

[4] All of Trustee Golden's rights are reserved, including, without limitation, to seek damages for contempt of the 2011 Confirmation Order and to recover all legal fees and costs in responding to the Threatened Motion pursuant to Fed. R. Bankr. P. 9011(c)(1)(A). Be advised this letter does not recite or address all material facts, arguments, or legal principals relevant to this matter.

2532860

**BRUTZKUS GUBNER**
YOUR COUNSEL MATTERS®

John D. Fiero, Esq.
December 1, 2020
Page 5

4.      Ms. Gupta resigned as trustee of Desert Land, whose estate had virtually no cash on the date of her resignation, while Ms. Gupta remained as trustee of Apartments, whose case had more than $10 million in cash on the date of her resignation.  Resignation Letter at p. 3.

5.      Ms. Gupta resigned as trustee of Desert Land because she suffered from an actual conflict of interest.  Resignation Letter at p. 23 ("… I believe that there is an actual conflict of interest since I cannot simultaneously prosecute an action on behalf of Desert Apartments and defend that same action on behalf of Desert Land.").

6.      The Desert Land POC embodies a $4.5 million claim that is at the heart of the "actions" that Ms. Gupta cited in her Resignation Letter as giving rise to her actual conflict of interest, namely, the $4.5 million amount stated in Apartments' original bankruptcy schedules as owing to Desert Land (the "$4.5 Million Claim").

7.      Ms. Gupta and her professionals knew the $4.5 Million Claim was not only scheduled as undisputed and allowed in Apartments' 2011 bankruptcy case, but Apartments' confirmed chapter 11 plan provided for the treatment and payment of that claim as a class 4 claim.[5]  *See* "Inter-Company Debt Investigation" [N/H – 000705-711], attached hereto as **Exhibit D** ("Fact …. Desert Land scheduled as holding an undisputed, non-contingent and liquidated unsecured non-priority claim in the amount of $5,468,103.96. ….Cash flow projections attached as Exh. F to the 2011 disclosure statement indicates that DOA would make 'debt-service payments' of $219,000 per year, and $36,000 per year in payments to class 4 unsecured creditors.").

8.      Mrs. Gupta and her professionals knew that Apartments made payments to Desert Land on account of its approved class 4 claim from 2012 through 2017.  *See* N/H-000711 attached hereto as **Exhibit D** ("DOA made payments to DL from 2012 to 2017.  'These amounts

---

[5] The $4.5 Million Claim was subordinated only to class 4 non-insider general unsecured claims and not, per the assertion in your letter, to all general unsecured claims.  In the Apartments' 2011 plan, insider claims were not subordinated to the class 3 claim of Tom Gonzales.  Not only is subordination not provided for in the class 3 treatment of the Gonzales claim, but in the 2011 Apartments' bankruptcy case, Gonzales and Apartments entered into a "Stipulation as to Treatment of Tom Gonzales in Debtor's Plan of Reorganization" [Doc. # 180 in Apartments' 2011 bankruptcy case].  This stipulation was attached to the 2011 Confirmation Order, which order specifically provides that "the Order Granting Stipulation as to Treatment of Tom Gonzales in Debtor's Plan of Reorganization [Docket # 188], entered on December 5, 2011 … is reaffirmed."  The stipulation is Exhibit C to the 2011 Confirmation Order.  The stipulation provides that Gonzales' claim rides through the bankruptcy unaffected and unimpaired by the 2011 bankruptcy case or plan.

2532860

**BRUTZKUS GUBNER**
YOUR COUNSEL MATTERS®

John D. Fiero, Esq.
December 1, 2020
Page 6

were made in monthly payments from the cash flow from the Desert Oasis Apartment to Desert
Land, LLC'").

9.      Ms. Gupta has admitted the $4.5 Million Debt may be *either* (a) a "valid debt," in
which case payments thereon to Desert Land in the amount of $60,000 within one year of
Apartments' petition date may be subject to recovery as an "insider preference claim against
Desert Land," or (b) as something other than "true indebtedness," in which case Ms. Gupta
alleges the amount "up to $610,000" "should be treated as equity contributions" giving rise to an
alleged claim for "fraudulent conveyance." *See,* Resignation Letter at p. 23.

10.     The Threatened Motion admits that Ms. Gupta "immediately" began to focus on
the $4.5 Million Debt. *See* Memorandum of Points and Authorities in support of Threatened
Motion at p. 3:26-27 ("Immediately following her appointment, the Trustee began investigating a
$4.5 million claim scheduled by Desert Oasis Apartments in favor of Desert Land.").

11.     Even before accepting her appointment, Ms. Gupta recognized the issue of a
conflict of interest invoked by the $4.5 Million Claim. *See* Ms. Gupta's email to her counsel of
March 28, 2019 [N/H-016821], attached hereto as **Exhibit F** ("Potential Conflict of Interest. …
please research … whether this debt would constitute a conflict requiring my resignation.").

12.     Ms. Gupta and her counsel recognized that the conflict of interest threatened Ms.
Gupta's ability to continue to serve as trustee and her ability to recover fees. *See* email of June
14, 2020 [N/H-017176], attached hereto as **Exhibit G** ("If there is actually an inter-estate claim,
Kavita may need to resign …. None of us (and it would be all of us) want [sic] to find ourselves
in the ***horrible position of being disqualified and denied compensation*** ….") (emphasis added).

13.     Ms. Gupta's counsel described the conflict created by the inter-company claims in
personal terms rather than the best interests of Desert Land's estate or its creditors. *See* email of
June 18, 2019 [N/H-017178], attached hereto as **Exhibit H** ("This inter-company obligation is
potentially ***problematic for us*** and the one we need to dig into.") (emphasis added).

14.     Ms. Gupta's counsel developed possible theories to challenge the claim. *See* email
of June 11, 2019 [N/H-017165], attached hereto as **Exhibit I** (counsel questions "the basis" for
the $4.5 Million Claim); *and* email of June 27, 2019 [N/H-017192], attached hereto as **Exhibit J**
(noting "[t]he Debtors … have treated the liability as legitimate, and do not dispute it," but noting
"[t]here are grounds upon which a creditor might challenge the validity and enforceability of the
debt," then listing various possible grounds, such as "statute of limitations" and "re-
characterization as an equity contribution", and then observing it may "be necessary to …
possibly object" to Desert Land's claim).

15.     Ms. Gupta never allowed the Bankruptcy Court to decide the conflict issue though
she was provided authority indicating the court should do so (she withdrew her motion before any
adjudication). *See* text of language highlighted in original attachment of the case emailed to Ms.

2532860

**BRUTZKUS GUBNER**
YOUR COUNSEL MATTERS®

John D. Fiero, Esq.
December 1, 2020
Page 7

Gupta from *In re BH&P, Inc.*, 949 F.2d 1300, 1332 (3rd Cir. 1991) ("In the final analysis … it is the bankruptcy court … which must determine the propriety of permitting a [single trustee to serve in jointly administered cases where there are intercreditor claims.] …. It is for the court to decide whether the [arrangement] carries with it a sufficient threat of material adversity …."), [N/H-017208] attached to June 27, 2019 email from counsel to Ms. Gupta [N/H-017192] attached hereto as **Exhibit J**.

16.    Ms. Gupta was advised by her counsel to not be involved in seeking to resolve the inter-company claim.  *See* Ms. Gupta's email of July 10, 2019 [N/H-017279], attached hereto as **Exhibit K**  ("Why wouldn't a single person have the same conflict of interest if she is representing both estates in a dispute?"); *and* counsel's response, *id*., ("I was suggesting that two different parties be designated, one to act for Desert Land, and the other for Desert Apartments. An examiner might be another option …."); *and* counsel's email from July 10, 2019 [N/H-017279-80], attached hereto **Exhibit K** (affirming implementation of Ms. Gupta's change to the draft motion seeking court's guidance regarding the conflict, from Debtors "do not dispute" the $4.5 Million Claim, to Debtors "have apparently not disputed or investigated" the claim, and adding, "[s]eems to me that if you stay completely out of the litigation it would be better.").

17.    Ms. Gupta withdrew a "conflicts and 2014 disclosure" to avoid anyone filing a response that may interfere with her sale of the properties.  *See* August 9, 2019 email [N/H-017431], attached hereto as **Exhibit L** ("We need to [] withdrawal [sic] the conflicts and 2014 disclosures today.  The last thing we need is an early opp filed, which means we can't withdraw.").

18.    The Resignation Letter devotes approximately four pages to contending the $4.5 Million Claim is the result of an error from almost two decades ago, without mentioning substantial evidence confirming the merit of the claim (*see* Resignation Letter at pp. 20-23), including:

a.    Does not mention that the $4.5 Million Claim was not only scheduled but that its treatment and payment were provided for in Apartments' 2011 chapter 11 plan confirmed by the 2011 Confirmation Order;

b.    Contends that Gaffin "finally conceded" that the debt was not owing; the word "conceded" evidences succumbing to Ms. Gupta's advocacy – this was not a case of the debtors' insiders themselves deciding to amend the schedules – and the statement to the U.S. Trustee omits that Gaffin never agreed with the conclusion that no debt was owing.  *See* March 30, 2020 email from Ms. Gupta's counsel to Gaffin's counsel [N/H-018865] attached hereto as **Exhibit M** ("Our assumption is [the claim is based on a mistake]…."), *and* April 1, 2020 email from Gaffin's counsel [N/H-018885] attached hereto as **Exhibit N** ("Generally, my client doesn't have any objection [to amending the schedules]….").

**BRUTZKUS GUBNER**
YOUR COUNSEL MATTERS®

John D. Fiero, Esq.
December 1, 2020
Page 8

 c. Admits that Desert Land was the borrower on the loan from Gonzales the proceeds of which Ms. Gupta's counsel contends were used to pay Apartments' creditor giving rise to the debt (*see* Resignation Letter at p. 22 ("$5 million of the loan proceeds were used to pay off an existing mortgage on Desert Apartments' property")), which Ms. Gupta then characterized as a loan only from Gonzales (ignoring that Desert Land was a borrower) to convince CPA Shelton to sign a declaration in lieu of being deposed.  Furthermore in this regard:

  i. *See* March 13-25, 2020, e-trail between Ms. Gupta's attorney and the CPA Shelton [N/H-018615] attached hereto as **Exhibit O**, in which Ms. Shelton refuses to respond "yes" to counsel's question, "do you agree that this item should not have been entered on the general ledger as an amount 'due to' Desert Land" and instead confirms only "that the loan payable was to Tom Gonzales," which does not negate Desert Land's obligation to Tom Gonzales for that loan he made to Desert Lend, nor does it negate Desert Land's claim against Apartments for the use of loan proceeds to pay Apartments' creditor; and

  ii. March 27, 2020 email from DPA Shelton [N/H-018713], attached hereto as **Exhibit P**, in which she confirms Ms. Gupta's explanation is not based on her own recollection ("Larry and I have reviewed the declaration and we think it is a fair statement based on our conversations, backup documentation, etc."); thus, Ms. Shelton's declaration relies on hearsay and lacks foundation; and

  iii. March 23, 2020 email [N/H-018599], attached hereto as **Exhibit Q**, in which Ms. Gupta's counsel suggests CPA Shelton change her assumptions ("Thank you Gina. Yes, I understand that you input the information on the general ledger based on the documents that were provided to you and that at the time it appeared entirely proper to do so. ***But knowing now that Desert Oasis Apartments borrowed the $5M*** from Tom Gonzales and ***<u>not</u> Desert Land***, do you agree that this item should not have been entered on the general ledger as an amount 'due to' Desert Land?") (emphasis added).

 19. Decades of corporate records of Apartments and Desert Land show Apartments' indebtedness to Desert Land, including, without limitation, many years of tax returns, including most prominently, the Federal Tax Returns for 2018 and 2019.  Apartments' indebtedness to Desert Land is also reflected in tax returns at least as far back as 2005, for which Desert Land's 2005 Federal Tax Return shows Apartments' indebtedness to Desert Land in the amount of $5.627 million (before the debt was paid down).

 20. Ms. Gupta's counsel recognized the "sensitive" issues of Ms. Gupta's serving as trustee of both Apartments and Desert Land in light of this $4.5 Million Claim and payments

2532860

**BRUTZKUS GUBNER**
YOUR COUNSEL MATTERS®

John D. Fiero, Esq.
December 1, 2020
Page 9

thereon, including Ms. Gupta's filing a motion asking the Bankruptcy Court whether she should
resign from the Apartments' case (which apparently was her original plan) and remain trustee for
the Desert Land case, and then her decision to withdraw that motion. *See* August 9, 2019 email
circulating a draft withdrawal of that motion [N/H-017433], attached hereto as **Exhibit R** ("I
understand from Kevin we'd like to get this filed as soon as possible today.… I know ***this is a bit
of [a] sensitive subject*** so I've tried to keep it as straight-forward and neutral as possible.")
(emphasis added); *and* June 8, 2020 email [N/H-018983], attached hereto as **Exhibit S** ("***This is a
sensitive situation and want to be careful not to do anything that bites us in the butt.***")
(emphasis added).

21.     Ms. Gupta was aware of the potential significance of a claim being scheduled and
dealt with in a prior bankruptcy.  *See* February 10, 2020 email to Ms. Gupta from counsel [N/H-
017764], attached hereto as **Exhibit T** (noting the $4.5 Million Claim is not listed in Apartments'
2002 bankruptcy schedules but not disclosing anything about Apartments' 2011 case or the 2011
Confirmation Order); *and* February 11, 2020 email from Ms. Gupta to counsel [N/H-017915],
attached hereto as **Exhibit U** ("I wanted to see whether the $4.5M debt was scheduled and if so,
whether it was dealt with in any confirmed plan.  The documents you obtained answers [sic] those
questions so I think we are good.").

22.     There is no evidence that Ms. Gupta or her counsel told CPA Shelton or the U.S.
Trustee that the payments Apartments made to Desert Land after 2011 were pursuant to the plan
confirmed by the 2011 Confirmation Order.[6]

## SUPPLEMENTAL RELEVANT LEGAL AUTHORITY

The fiduciary duty that Ms. Gupta assumed as trustee of Desert Land enjoins her from
taking action adverse to Desert Land.  *See In re AFI Holding, Inc.*, 355 B.R. 139, 148 (B.A.P. 9th
Cir. 2006) ("a bankruptcy trustee must have no interest adverse to the estate"); *and Ritchie
Special Credit Investments*, Ltd. v. U.S. Trustee, 620 F.3d 847, 854-855 (8th Cir. 2010) (actual
conflict of interest arises upon prejudice to one estate for the benefit of another estate, "'[T]he
predicate for application of Rule 2009(d) is not that a common trustee is "disinterested" but that
prejudice will occur as a result of the trustee's dual representation.'"); *and In re BH&P, Inc.*, 103
B.R. 556, 569 (D. N.J. 1989) 949 F.2d at 1311 n.13 (same). 569 ("The court has no doubt that if
any party in interest were prejudiced by a breach of the duty to disclose facts relating to possible
conflicts on an application for joint administration, the responsible individuals could be denied
compensation and held personally liable to the extent of such prejudice.").

Ms. Gupta's did not shed her fiduciary duty to Desert Land merely by resigning, which
would allow her to be adverse to Desert Land on the same matters giving rise to the actual

---

[6] These payments included:  $28,000 in 2012; $210,000 in 2013; $185,442 in 2014; $218,000 in
2015; $177,000 in 2016; and $87,000 in 2017.  *See* January 20, 2020 email to Ms. Gupta [N/H-
017577 (at 017583, citing Gaffin's response to question 10)], attached hereto as **Exhibit V**.

2532860

**BRUTZKUS GUBNER**
YOUR COUNSEL MATTERS®

John D. Fiero, Esq.
December 1, 2020
Page 10

conflict of interest causing her to resign.  *See In re Mortgage & Realty Trust v. Zim Co*., 195 B.R. 740, 750-51 (Bankr. C.D. Cal. 1996) (Attorney who served in non-attorney capacity, as director on company's board, retained fiduciary duties after resignation.  "The duty to protect and preserve confidential information received during service as a director continues after a director leaves the board.  Similarly, this duty continues for a trustee of a REIT after the trustee ceases to serve. … Bucher continued to be bound by his duty of loyalty not to disclose confidential information after he left the MRT board of trustees.") citing *William H Raley Co. v. Superior Court*, 149 Cal.App.3d, 1042 ("Professional responsibilities to do not turn on whether a member of the State Bar acts as a lawyer."); *see also* Rule 1.9 of Nevada's Rules of Professional Conduct ("(a)  A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."); *and* Rule 1.9 (a), Cal. R. P. Conduct (same); *see also Hall CA-NV, LLC v. Ladera Development, LLC*, 2019 WL 5448458 * 9 (D. Nev. Oct. 24, 2019) ("When a lawyer acts as the common attorney of two parties, their communications to him are privileged as far as concerns strangers, but as to themselves they stand on the same footing as the lawyer, and either can compel him to testify against the other as to their negotiations.") quoting *Livingston v. Wagner*, 23 Nev. 53, 42 P. 290, 292 (1895), quoting *In re Bauer's* Estate, 79 Cal. 304 (Cal. 1889). We note that Ms. Gupta is licensed to practice law in California and her bar membership in active.

Ms. Gupta has no legal right to use any confidential information, work product, or privileged information she obtained while serving as trustee of Desert Land, all of which are now vested in Trustee Golden.  *See Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 358 (1985) ("'The trustee of a corporation in bankruptcy has the power to waive the corporation's attorney-client privilege with respect to prebankruptcy communications.'  Upon appointment, the Trustee succeeds to the attorney-client privilege ….'" quoting *In re Bame*, 251 B.R. 367, 375 (Bankr. D. Minn. 2000)).

<u>**CONCLUSION**</u>

For the foregoing reasons, we respectfully ask that Ms. Gupta withdraw her Threatened Motion and cease and desist from prosecuting any objection to the Desert Land POC.

We hope to receive your favorable response by no later than December 9, 2020.

Sincerely,

STEVEN T. GUBNER

Encls.
cc:    Jeffrey I. Golden, Trustee

2532860

# EXHIBIT A



_____
Honorable Bruce A. Markell
United States Bankruptcy Judge

Entered on Docket
December 30, 2011

Lenard E. Schwartzer
Nevada Bar No. 0399
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com
*Attorneys for Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

In re:

**DESERT OASIS APARTMENTS, LLC,**

Debtor.

Case No. BK-S-11-17208-BAM

Chapter 11

**ORDER CONFIRMING DEBTOR'S AMENDED PLAN OF REORGANIZATION AS AMENDED**

Hearing Date: December 16, 2011
Hearing Time: 9:30 a.m.

The *Debtor's Amended Plan Of Reorganization* [Docket # 89], attached hereto as Exhibit "A", as amended by the *Amendment* [Docket # 148], attached hereto as Exhibit "B", and the *Stipulation as to Treatment of Tom Gonzales* [Docket # 180], attached hereto as Exhibit "C" (collectively, the "Plan"), having come before this Court pursuant to Notice as required by law; Lenard E. Schwartzer of the Schwartzer & McPherson Law Firm having appeared for the Debtor, Karol D. Denniston, Jeffrey S. Rugg, and Rebecca J. Winthrop of Brownstein Hyatt Farber Schreck, LLP, having appeared for the Lender, and Janet L. Chubb and Louis M. Bubala III of Armstrong Teasdale LLP and J. Randall Jones of Kemp, Jones & Coulthard having appeared for Tom Gonzales; the Court having reviewed the pleadings and the evidence and having heard the

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1

P:\Desert Land\Desert Oasis Chapter 11 Pleadings\Plan DS\Order Confirming Plan - num.doc

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   testimony of the witnesses and arguments and representations of counsel; the Court having

2   approved the Gonzales Order (as hereafter defined) on December 5, 2011 and reconsidered the

3   Gonzales Order in light of Wells Fargo Bank, N.A.'s Supplemental Brief Regarding Stipulation as

4   to Treatment of Tom Gonzales in Debtor's Plan of Reorganization [Docket # 197]; the Court

5   having made its findings and conclusions on the record pursuant to Rule 7052 and FRCP 52; and

6   having found good cause, it is

7       **ORDERED** that the Plan is confirmed; and it is further

8       **ORDERED** that the ORDER GRANTING STIPULATION AS TO TREATMENT OF

9   TOM GONZALES IN DEBTOR'S PLAN OF REORGANIZATION [Docket # 188], entered on

10  December 5, 2011 (the "Gonzales Order"), is reaffirmed.

11  Submitted by:                                    Approved / ~~Disapproved~~ by:

12  /s/ Lenard E. Schwartzer                          /s/ Rebecca J. Winthrop
13  Lenard E. Schwartzer, Esq.                       Karol D. Denniston, Esq.
    Schwartzer & McPherson Law Firm                  Jeffrey S. Rugg, Esq.
14  2850 South Jones Blvd., Suite 1                  Rebecca J. Winthrop, Esq.
    Las Vegas, NV 89146                              Brownstein Hyatt Farber Schreck, LLP
15  Attorneys for Debtor and Debtor in Possession    100 N. City Parkway, #1600
                                                     Las Vegas, NV 89106
16                                                   Attorneys for Wells Fargo Bank, N.A.

17  Approved / ~~Disapproved~~ by:

18    /s/ Louis M. Bubala III
    Janet L. Chubb, Esq.
19  Louis M. Bubala III, Esq.
    Armstrong Teasdale LLP
20  50 W. Liberty St., Ste 950
    Reno, NV 89501
21  Attorneys for Tom Gonzales

22

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28

2

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that:

\_\_\_\_\_ The court has waived the requirement set forth in LR 9021 (b)(1).
\_\_\_\_\_ No party appeared at the hearing or filed an objection to the motion.
\_\_X\_\_ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated above.
\_\_\_\_\_ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

/s/   Lenard E. Schwartzer
Lenard E. Schwartzer, Esq.
*Attorneys for Debtor and Debtor in Possession*

# # #

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

3

# EXHIBIT "A"

1  LENARD E. SCHWARTZER (NV Bar No. 0399)
   JEANETTE E. MCPHERSON (NV Bar No. 5423)
2  SCHWARTZER & MCPHERSON LAW FIRM
   2850 South Jones Boulevard, Suite 1
3  Las Vegas, Nevada 89146-5308
   Telephone:    (702) 228-7590
4  Facsimile:    (702) 892-0122
   Email:        bkfilings@s-mlaw.com
5
6  Counsel for Debtor and Debtor in Possession

7                  **UNITED STATES BANKRUPTCY COURT**

8                       **DISTRICT OF NEVADA**

9  In re                                  Case No. BK-S-11-17208-BAM
                                          Chapter 11
10 **DESERT OASIS APARTMENTS, LLC,**

11              Debtor.

12
                                          Hearing Date:
13                                        Hearing Time:
                                          Place:        Courtroom #3
14

15   **DESERT OASIS APARTMENT, LLC'S AMENDED PLAN OF REORGANIZATION**

16

17                            **ARTICLE I**

18                            **SUMMARY**

19         This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the
20 "Code") proposes to pay creditors of DESERT OASIS APARTMENT, LLC (the "Debtor"). The
21 Debtor owns the real property and improvements located in Las Vegas, NV described as Assessor's
22 Parcel Number 162-28-310-001 (the "Property"). The Property consists of approximately 6.4 acres
23 located on the south side of Mandalay Bay Road approximately 800 feet east of Las Vegas Boulevard.
24 On the Property is an apartment complex consisting of 128 one- and two-bedroom units.
25 Approximately, 92%-95% of the apartment units are occupied by tenants ("Tenants"). The Property is
26 worth approximately $6,500,000 and is subject to a loan in the approximate amount of $3,076,000
27 now held by Wells Fargo Bank, N.A., as trustee for the Registered Holders of JPMorgan Chase
28 Commercial Mortgage Pass-Through Certificates, Series 2004-FL1 (the "Bank") which has matured.

       The current owner obtained title to the Property in August of 1999.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

This Plan provides for one class of priority claims; one class of secured claims; one class of unsecured claims; and one class of equity security holders. **Under the Plan, the rights of Tenants are unimpaired.** The Bank will receive distributions which the proponent of this Plan has valued at 100 cents on the dollar. The Plan proposes to pay the Bank in full over a period of 10 years using the rental income from the Tenants to pay market rate interest of 4.5% per annum and principal amortized over 25 years and a balloon payment at the end of 10 years obtained through sale or refinancing when the mortgage markets become more normal. Tenants with priority claims for deposits will be paid 100% in the normal course of operation of the apartment complex. Under the Plan, the unsecured claim of Tom Gonzales is unimpaired. Under the Plan, the unsecured creditors, except insiders, will be paid over eleven months without interest. Under the Plan, insiders will agree to subordinate their claims to the claims of other unsecured creditors. This Plan also provides for the 100% payment of all other administrative, including fees payable to the Office of the United States Trustee, and priority claims upon confirmation.

All creditors and equity security holders should refer to Articles III through V of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

### ARTICLE II

### CLASSIFICATION OF CLAIMS AND INTERESTS

| | | | |
|---|---|---|---|
| 2.01 | Class 1. | All allowed claims entitled to priority under § 507 of the Code. |
| 2.02 | Class 2. | The claim of the Bank, to the extent allowed as a secured claim under § 506 of the Code. |
| 2.03 | Class 3. | The claim of Tom Gonzales. |
| 2.04 | Class 4. | All unsecured claims allowed under § 502 of the Code. |
| 2.05 | Class 5. | Equity interests in the Debtor. |

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 • Fax: (702) 892-0122

**ARTICLE III**

**TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,**

**U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS**

3.01    Unclassified Claims.  Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.02    Administrative Expense Claims.  Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the Effective Date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03    Priority Tax Claims.  Each holder of a priority tax claim will be paid on the Effective Date of this Plan, in cash.

3.04    United States Trustee Fees.  All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.

**ARTICLE IV**

**TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN**

4.01    Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - Priority Claims | unimpaired | Class 1 is unimpaired by this Plan, and each holder of a Class 1 Priority Claim will be paid in full, in cash, upon the later of the effective date of this Plan as defined in Article VIII, or the date on which such claim is allowed by a final non-appealable order. |

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

| Class 2 – Secured Claim of Bank (approximately $3,100,000) | impaired | Class 2 is impaired by this Plan. The Bank will be paid its claim in full, including principal, accrued interest and costs and reasonable attorneys' fees. This amount shall be paid with interest at the rate of 4.5% per annum from the Effective Date. Beginning on 1st day of the 1st month following the Effective Date, the Bank shall be paid an amount necessary to amortize its claim over 25 years together with interest. In addition payments for insurance and real estate taxes will be escrowed. The balance of the Claim shall be all due and payable in 10 years from the Effective Date. There will be no pre-payment penalty. The loan will be assumable. The Bank shall retain its lien on the Property with the same priority it held of the date of the Debtor's Petition. |
| --- | --- | --- |
| Class 3 – Tom Gonzales ($10,000,000) | unimpaired | Class 3 is unimpaired by this Plan. Tom Gonzales will be paid the Parcel A Transfer Fee pursuant to the terms of the Desert Land Plan of Reorganization. That payment is due when, and only when, there is a Parcel A Transfer as defined in that plan. This claim is unsecured. This claim is subject to setoffs and counterclaims by the Debtor. |
| Class 4 - General Unsecured Creditors | impaired | Class 4 is impaired by this Plan. Non-Insider General Unsecured Creditors will be paid in full, without interest from the rent collected from the Tenant. Beginning on 1st day of the 1st month following the Effective Date, Class 4 will be paid $3,000 per month pro rata for approximately 9 months. Desert Land, LLC, Citation Financial, LLC and Compass Investments Holdings, LLC have agreed to subordinate their claims to the claims of other unsecured creditors and will be paid only after all other unsecured creditors are paid in full and reasonable reserves for maintenance and repair of the Property have been funded. |
| Class 5- Equity Security Holders of the Debtor | unimpaired | Class 5 is unimpaired by this Plan. Equity Security Holders (the members of the Debtor) will retain their equity interest in the Debtor. |

### ARTICLE V

### ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed

1  filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has

2  been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

3      5.02  Delay of Distribution on a Disputed Claim.  No distribution will be made on account

4  of a disputed claim unless such claim is allowed by a final non-appealable order.

5      5.03  Settlement of Disputed Claims.  The Debtor will have the power and authority to settle

6  and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal

7  Rules of Bankruptcy Procedure.

8                              **ARTICLE VI**

9          **PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

10      6.01  Assumed Executory Contracts and Unexpired Leases.

11      (a)  The Debtor assumes the following executory contracts and/or unexpired leases

12  effective upon the:

13          ▪  Leases with Tenants.

14          ▪  Westcorp Management Group - property management

15      (b)  The Debtor will be conclusively deemed to have rejected all executory

16  contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the

17  date of the order confirming this Plan, upon the effective date of this Plan. A proof of a claim arising

18  from the rejection of an executory contract or unexpired lease under this section must be filed no later

19  than thirty (30) days after the date of the order confirming this Plan.

20

21                              **ARTICLE VII**

22          **MEANS FOR IMPLEMENTATION OF THE PLAN**

23      The means for implementation of this Plan is the rents paid by Debtor's existing and future

24  Tenants. The Debtor will sell or refinance the Property within 120 months following the Effective

25  Date.  The proceeds from such sale or refinance shall be used to fund the balloon payment to the Bank

26  as set forth in the Plan. If the Property is sold, the Debtor and its affiliates which own the adjacent

27  land will pay the Parcel A Transfer fee to Gonzales from the sales proceeds.

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**ARTICLE VIII**

**GENERAL PROVISIONS**

8.01 <u>Definitions and Rules of Construction</u>. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan. Additionally, the following definitions apply:

        a.    The "Bank" shall mean Wells Fargo Bank, N.A., as trustee for the Registered Holders of JPMorgan Chase Commercial Mortgage Pass-Through Certificates, Series 2004-FL1.

        b.    The "Property" shall mean the real property and improvements thereon located in Las Vegas, NV described as Assessor's Parcel Number 162-28-310-001 (the "Property") consisting of approximately 6.4 acres located on the south side of Mandalay Bay Road and approximately 800 feet east of Las Vegas Boulevard.

        c.    The "Tenants" shall mean the tenants who rent apartment units on the Property.

        d.    The "Effective Date" of this Plan is the fifteenth business day following the date of the entry of the order of confirmation. But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

        e.    The "Desert Land Plan of Reorganization" is that plan of reorganization that was confirmed in the case of *In re Desert Land, LLC*, Case No. BK-S-02-16202-RCJ by an order entered April 13, 2003 as amended by decisions of the Bankruptcy Appellate Panel for 9th Circuit and the Court of Appeals for the 9th Circuit.

        f.    The "Parcel A Transfer Fee" is the fee provided to be paid to Tom Gonzales in the Desert Land Plan of Reorganization when, and only when, there is a Parcel A Transfer as defined in the Desert Land Plan of Reorganization.

8.02 <u>Severability</u>. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.03 <u>Binding Effect</u>. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

8.04    Captions.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.05    Controlling Effect.  Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Nevada govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.06    Governance.  The Debtor will maintain its current form of governance and its current managers until such managers are replaced as provided in its existing Operating Agreement.

8.07    Revesting of Assets in the Debtor. Upon confirmation of the Plan, all property of the estate of the Debtor shall be revested in the Debtor, pursuant to 11 U.S.C. § 1141(c), which shall retain such property as the Reorganized Debtor free and clear of all claims and interests of the creditors, except as set forth in the Plan.

8.08    Disbursing Agent. The Debtor will serve as disbursing agent and shall make all payments required under the Plan.  The disbursing agent may employ or contract with other entities to assist in or to perform the distribution of the property and shall serve without bond.

8.09    Request for Application of 11 U.S.C. § 1129(b). The Debtor, as Plan proponent, will request the Court to find that the provisions for dissenting classes provide for fair and equitable treatment of said creditors, and to confirm its Plan notwithstanding the requirements of § 1129(a)(8) as to such classes.

8.10    Post-Confirmation Management of the Debtor. The Debtor shall be managed post-confirmation by its current manager, David Gaffin.

8.11    Post-Confirmation Litigation. The Debtor anticipates post-confirmation litigation with Tom Gonzales over the enforcement of the terms of the Plan of Reorganization entered in the Desert Land, LLC Chapter 11 case, as amended by the decisions of the Bankruptcy Appellate Panel for the 9th Circuit and the Court of Appeals for the 9th Circuit, and except for collection matters that may occur in the normal course of the Debtor's business, and the determination of certain claims.  The Debtor reserves the right to prosecute any objections to claims.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 • Fax: (702) 892-0122

8.12 <u>Post-Confirmation Default</u>. In the event the Debtor becomes delinquent in duty or obligation under the Plan, the affected creditor or creditors may provide written notice of such default to the Debtor and its counsel at the following addresses:

Lenard E. Schwartzer, Esq.        Desert Oasis Apartments, LLC
Schwartzer & McPherson Law Firm   10181 Park Run Drive, Ste. 200
2850 S. Jones Blvd, Ste. 1          Las Vegas, NV 89145
Las Vegas, NV 89146-5308

The Debtor shall thereafter have fifteen (15) business days from receipt of said notice in which to cure the default. In the event such default remains uncured, the affected creditor or creditors may bring the matter before the Bankruptcy Court. At any hearing, the Bankruptcy Court may consider the reason for the default and the ability of the Debtor to bring the payment(s) current in a reasonable period of time. The Bankruptcy Court may also consider conversion of the case to a Chapter 7 of the Code or dismissal if the same is in the best interests of creditors.

8.13 <u>Federal Income Tax Consequences of the Plan</u>. The Plan will have limited tax consequences. The Debtor, as a limited liability company, has elected to be treated as a partnership for federal income tax purposes and, therefore, does not pay federal income tax. The Plan does not call for forgiveness of any debt. Creditors are advised to discuss with their own tax advisor any tax effect to the creditor of such payments.

8.14 <u>Injunction</u>. From and after the Effective Date, and except as provided in the Plan and the Confirmation Order, all entities that have held, currently hold, or may hold a Claim, are permanently enjoined from taking any of the following actions on account of any such Claims: (i) commencing or continuing in any manner any action or other proceeding against the Debtor, or its Property; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order against the Debtor or the Reorganized Debtor, or their respective property; (iii) creating, perfecting or enforcing any lien or encumbrance against the Debtor or the Reorganized Debtor, or their respective property; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability, or obligation due to the Debtor or the Reorganized Debtor, or their

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1 | respective property; or (v) commencing or continuing any action, in any manner or any place, that
2 | does not comply with or is inconsistent with the provisions of the Plan or the Bankruptcy Code.

3 |        8.15   <u>Exculpation</u>. From the Petition Date through the Effective Date, the Debtor and its
4 | managers, attorneys, agents and employees shall not have any liability to the Debtor or any other
5 | claimants or creditors, or other parties in interest in the Bankruptcy Case for any act or omission in
6 | connection with or arising out of the Bankruptcy Case, including, without limitation, prosecuting
7 | confirmation of the Plan, confirmation of the Plan, and the administration of the estate, the Plan or the
8 | property to be distributed under the Plan, except for gross negligence or willful misconduct, and in all
9 | respects, such persons will be entitled to rely on the advice of counsel with respect to their duties and
10 | responsibilities with respect to the Chapter 11 Case and the Plan.

11 |        8.16   <u>Post-petition Employment of Counsel</u>. Following the Effective Date, the Debtor may
12 | continue to employ counsel for necessary legal services. Counsel may be paid from the Debtor
13 | without further order of the Court.

14 |        8.17   <u>Closing Case</u>. The estate shall be deemed to be fully administered upon the
15 | commencing of distributions to the Class 1 creditor and the case may be closed.

16 | **ARTICLE IX**

17 | **DISCHARGE**

18 | <u>Discharge</u>. The Debtor shall be discharged from any debt that arose before confirmation of the
19 | Plan, subject to the occurrence of the effective date.

20 |                     Respectfully submitted,

21 |                     Desert Oasis Apartments, LLC
22 |                     By___*/s/David Gaffin*____
                      David Gaffin, Manager
23 |                       The Plan Proponent
  Prepared by:

24 |

25 | SCHWARTZER & McPHERSON LAW FIRM

26 | By:
  Lenard E. Schwartzer, Esq.
27 | *Counsel for the Debtor and Debtor in Possession*
*And Plan Proponent*

28 |

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

# EXHIBIT "B"

Lenard E. Schwartzer
Nevada Bar No. 0399
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146-5308
Telephone:  (702) 228-7590
Facsimile:  (702) 892-0122
E-Mail:  bkfilings@s-mlaw.com

*Attorneys for Debtor and Debtor in Possession*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No. BK-S-11-17208-BAM |
| **DESERT OASIS APARTMENTS, LLC,** | Chapter 11 |
| Debtor. | **AMENDMENT TO DESERT OASIS APARTMENTS, LLC'S AMENDED PLAN OF REORGANIZATION** |
| | Date:   December 2, 2011<br>Time: 9:30 a.m. |

DESERT OASIS APARTMENTS, LLC (the "Debtor" and "Debtor in Possession"),

proposes to amend §6.01(a) of its Amended Plan of Reorganization [Docket No. 89] to provide

that the following lease will be assumed:

The Lease of the laundry rooms to WASH Mutlifamily Laundry Systems,

successor in interest to Web Service Company, Inc. which expires May 11, 2011.

A copy of the Lease is attached hereto as Exhibit "A".

There are no defaults by either party under this lease and therefore no cure amounts.

Dated this 14th day of November,  2011.

SCHWARTZER & MCPHERSON LAW FIRM

By: _____
Lenard E. Schwartzer, Esq.
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146-5308
*Attorneys for Debtor and Debtor in Possession*

# EXHIBIT "A"

Case 11-17208-gwz Doc 470-3 Entered 09/29/21 08:42 Page 7 of 24
Case 13-11722-mkn Doc 470-3 Entered 09/29/21 08:42 Page 7 of 24
Case 13-11722-mkn Doc 470-3 Entered 09/09/21 08:42 Page 7 of 24 of 58

Doc ID# NV 70-00-204 | DATE 7/3/08 501

Sales Rep: KW/mp
Location #: NV 70-00-204
Doc ID: 1-IOHCF

# LEASE

This LEASE AGREEMENT is entered into this day, MAY 12, 2008, by and between DESERT OASIS APARTMENTS, LLC, A NEVADA LIMITED LIABILTY COMPANY (hereinafter referred to as "Lessor"), and Web Service Company, LLC (hereinafter referred to as "Lessee"). Lessor does hereby lease to Lessee, and Lessee does hereby accept, the exclusive possession of all common laundry room(s) located on the real property and improvements of 128 units, located at 5316 SOUTH DANVILLE LANE, LAS VEGAS, NEVADA 89119, and commonly known as OASIS APARTMENTS, which real property and improvements are herein referred to as the "property." Lessor warrants and represents that only 0 residential units on the property are plumbed with their own washer or dryer connections.

1.   **Representation of Owner or Agent.** Lessor does hereby warrant and represent that it is the owner of the property, or the authorized agent thereof, acting with full authority to enter into this Lease, and further, said owner or representative thereof warrants and represents that there is no other lease, license, or other instrument granting the same or similar right in and to the laundry room(s) on the property.

2.   **Exclusive Use and Possession of Leased Premises.** Lessor does hereby grant, convey, and transfer to Lessee the exclusive use and possession of all now existing and hereafter created common laundry room(s) on the property, which room(s) is/are described as encompassing approximately 500 square feet, for its use as a laundry room(s) [said room(s) is/are hereinafter referred to as the "Leased Premises"].

3.   **Quiet Enjoyment.** Lessee may use, occupy, and possess the Leased Premises, as set forth above, to the exclusion of all others, and enjoy the quiet and peaceful enjoyment thereof.

4.   **Term.** The term of this Lease shall be for a period of SEVEN (7) year(s), commencing on MAY 12, 2008.

5.   **Rent.** Lessee agrees to pay Lessor as Rent, for the use and possession of the Leased Premises, an amount equal to the greater of $5.00 per month or SIXTY-THREE PERCENT (63%) of the Lessee's gross income from the Leased Premises, less any applicable gross receipts, sales, use, value added, or similar excise taxes.

6.   **Equipment.** Lessee shall be permitted to place personal property and equipment in the Leased Premises, and the title to such property shall remain at all times that of the Lessee, and at the conclusion of the term of this Lease, or any extension thereof; Lessee shall be permitted to remove such personal property and equipment remaining on the Leased Premises.

7.   **Insurance.** Lessee shall insure against liability for bodily injury and property damage caused by Lessee up to the amount of $10,000,000 per occurrence and annual aggregate. Lessee shall hold Lessor harmless from claims of liability caused by the negligent acts or omissions of Lessee insured by the above policy.

8.   **Utilities and Maintenance.** Lessor does hereby agree that it will provide all utility service necessary for proper operation and maintenance of laundry equipment which the Lessee deems fit to place within the Leased Premises; that Lessor shall perform all necessary janitorial and maintenance services for the Leased Premises, including but not limited to, maintaining the Leased Premises in good repair and cleanliness, and the Lessee hereby grants to the Lessor a revocable license to come onto the Leased Premises to perform such services. Lessor warrants that the Leased Premises comply with all federal, state, and local requirements. The Lessee shall not be responsible for property damage or personal injury due to lack of or inadequacy of a floor drain in the Leased Premises.

52-0323 Rev. 10/05/2007                              Page 1 of 2

REC'D JUN 26 2008

(5316 SOUTH DANVILLE LANE, LAS VEGAS, NEVADA 89119)
MAY 12, 2008

9. **Assignment or Transfer.** This Lease shall be binding upon the parties hereto, their respective heirs, personal representatives, successors, assigns, or transferees. If any litigation results in connection with this Lease, the successful party shall be entitled to reasonable attorneys' fees.

10. **Home Office Approval.** This Lease, and any modification and/or addendum(s) to this Lease, shall require written approval of Lessee's Home Office before becoming effective, and shall immediately become effective upon such approval, with or without notification to Lessor.

11. **Non-Competition Clause.** Lessor agrees that during the term of this Lease, Lessor shall not furnish, provide, lease, rent, or in any manner cause to be installed, or enter into any agreement with anyone other than Lessee to furnish, provide, lease, rent, or in any manner cause to be installed any washers and/or dryers in any residential unit ("unit") and/or common laundry facility on the property. Lessor agrees that washer and/or dryer connections shall not be added in any unit. Any breach of this paragraph shall result in Lessee being immediately entitled to damages of $6.67, multiplied by the number of units in which a breach occurred, multiplied by the number of months remaining on this Lease at the time of each breach. Additionally, a breach of any portion of this paragraph by Lessor shall entitle Lessee to terminate this Lease at Lessee's option.

12. **Validity of Provisions.** The invalidity or illegality of any provision shall not affect the remainder of this Lease. No delay on the part of any party in exercising any right herein shall be deemed to be a waiver thereof, nor shall any waiver of a right preclude any further exercise thereof.

13. Lessee to replace the existing laundry equipment with new Whirlpool machines within sixty (60) days after Lessee's Home Office signature approval of this Lease. Initial washer price to be $1.00. Initial dryer price to be $.75.

14. In the event of an impending sale or demolition of the property, DESERT OASIS APARTMENTS, LLC, A NEVADA LIMITED LIABILTY COMPANY shall have the option to terminate this Lease with at least 30 days prior written notice to Lessee.

Lessee: WEB SERVICE COMPANY, LLC

_(signature)_
District Sales Manager

APPROVED: WEB SERVICE CO., LLC, LESSEE
HOME OFFICE: 3690 REDONDO BEACH AVE.
REDONDO BEACH, CA 90278

By: _(signature)_

Its: Assistant Secretary

Date: 6/17/08

Lessor: DESERT OASIS APARTMENTS, LLC, A NEVADA LIMITED LIABILITY COMPANY

By: _(signature)_
JOHN EDWARDS

Its: ~~MANAGING MEMBER~~ _Property Manager_

Date: _May 12, 2008_

PAY RENT TO:
Name: DESERT OASIS APARTMENTS, LLC.
DBA THE OASIS APTS.
Address: 5316 DANVILLE LN., APT. C
LAS VEGAS, NV 89119
Tax ID: 33-0324029

52-0323 Rev. 10/05/2007

Page 2 of 2

# EXHIBIT "C"

LOUIS M. BUBALA III, ESQ.
Nevada Bar No. 8974
ARMSTRONG TEASDALE LLP
50 W. Liberty St., Ste. 950
Reno, NV 89501
Telephone: (775) 322-7400
Facsimile: (775) 322-9049
Email: lbubala@armstrongteasdale.com

Counsel for Tom Gonzales

**ELECTRONICALLY FILED ON
December 1, 2011**

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>DESERT OASIS APARTMENTS, LLC,<br><br>    Debtor. | Case No. BK-S-11-17208-BAM<br><br>Chapter 11<br><br>**STIPULATION AS TO TREATMENT OF TOM GONZALES IN DEBTOR'S PLAN OF REORGANIZATION** |

Tom Gonzales ("Mr. Gonzales") and Desert Oasis Apartments, LLC ("Debtor") stipulate as follows:

1.      Mr. Gonzales filed a complaint against Desert Oasis Apartments, LLC, and other defendants, asserting that his right to a $10 million payment (the "Parcel A Transfer Fee") has been triggered and the payment is due. *Gonzales v. Desert Land, LLC*, Case No. A-11-633175-C (8th Jud. Dist. Ct. filed Jan. 13. 2011). Mr. Gonzales' rights and claims are further detailed in the complaint and underlying documentation. The complaint was subsequently removed to U.S. Bankruptcy Court as Adversary Proceeding No. 11-05015-GWZ (Bankr. D. Nev.) and the reference withdrawn to U.S. District Court as Case No. 3:11-cv-00613-RCJ-VPC (D. Nev.).

2.      After Mr. Gonzales filed his complaint, Debtor filed a Chapter 11 bankruptcy petition. *In re Desert Oasis Apartments, LLC*, Case No. BK-S-11-17208 (Bankr. D. Nev., filed May 10, 2011).

3.      Debtor filed an amended plan of reorganization (Ct. Dkt. #97, filed Sept. 2, 2011) (the "Plan"). Debtor classified Mr. Gonzales' claim as the sole claim in Class 3. Debtor described the Class 3 treatment as follows:

1

> Class 3 is unimpaired by this Plan.  Tom Gonzales will be paid the Parcel A Transfer Fee pursuant to the terms of the Desert Land Plan of Reorganization.  That payment is due when, and only when, there is a Parcel A Transfer as defined in that plan.  This claim is unsecured.  This claim is subject to setoffs and counterclaims by the Debtor.

*Id.* at 24.

4.      Debtor moved for confirmation of its Plan (Ct. Dkt. #122, filed Oct. 26, 2011).

Debtor states in its motion:

> The Plan leaves Gonzales legal, equitable and contractual rights unaltered which means he is unimpaired.  The Plan does not determine his legal, equitable, and contractual right to demand, at this time, payment of the Parcel A Transfer fee.  That will be determined by Judge Jones in Case 3:11-cv- 00613-RCJ –VPC.  The Plan does not determine his legal, equitable, and contractual right to a lien on the Property.  That is to be determined in the two pending adversary proceedings.  The Plan does not determine the validity of Desert Oasis counterclaim.  That will be determined by Judge Jones in Case 3:11-cv-00613-RCJ –VPC.

*Id.* at 15:5-11.

5.      Mr. Gonzales objected to Debtor's Plan (Ct. Dkt. #146, filed Nov. 11, 2011).

6.      In opposition to a motion to stay the confirmation hearing, Debtor responded that:

> At the confirmation hearing, the Debtor will show that Gonzales' lien claim is without merit, Gonzales' claim for immediate payment is without merit, and that in the unlikely event that Gonzales is entitled to payment, the parties responsible for payment have sufficient assets to make that payment without the Debtor's property.

(Ct. Dkt. #153 at 3:8-11, filed Nov. 18, 2011).

7.      Mr. Gonzales filed a Proof of Claim on September 7, 2011.

8.      Debtor filed an objection to Mr. Gonzales' Proof of Claim of November 30, 2011.

9.      As a resolution of Debtors' treatment of Mr. Gonzales' rights as part of Debtor's bankruptcy case, Debtor and Mr. Gonzales have agreed to the following treatment.

10.     All rights of Mr. Gonzales pass through this bankruptcy case unimpaired and unmodified, and they shall be determined by the U.S. District Court in *Gonzales v. Desert Land, LLC (In re Specialty Trust, Inc.)*, Case No. 3:11-cv-00613-RCJ-VPC (D. Nev.) or any other subsequent court should the parties seek later judicial determination after the determination of the U.S. District Court.  The U.S. District Court's determinations shall include whether payment of the Parcel A

Transfer Fee has been triggered, and whether the Parcel A Transfer Fee is secured and the priority of such secured claim.

11.      All rights of Debtor against Mr. Gonzales pass through this bankruptcy case unimpaired and they shall be determined by the U.S. District Court in *Gonzales v. Desert Land, LLC (In re Specialty Trust, Inc.)*, Case No. 3:11-cv-00613-RCJ-VPC (D. Nev.) or any other subsequent court should the parties seek later judicial determination after the determination of the U.S. District Court.  The U.S. District Court's determinations shall include but not be limited to the claims of the Debtor and its affiliates for slander of title and interference with prospective economic advantage.

12.      U.S. District Court Chief Judge Robert C. Jones held a hearing on November 28, 2011, and granted the Motion to Dismiss by defendant Wells Fargo Bank, N.A. (in its capacity as stated in the complaint), and the Motion for Summary Judgment by defendants Specialty Trust, Inc., Specialty Mortgage Corp., and Specialty Strategic Financing Fund, LP.  Debtor and Mr. Gonzales agree that Judge Jones held that Mr. Gonzales did not have a senior lien on the Parcel A property owned by the Debtor and its affiliates and, therefore, these defendants had priority over Mr. Gonzales as to the property in which they had as collateral.  Debtor and Mr. Gonzales do not agree whether Judge Jones held whether Mr. Gonzales has a interest in the property.  The U.S. District Court has not yet entered its written order.  A final transcript of the Judge's ruling is not available.  Therefore, Mr. Gonzales and Debtor agree that this Stipulation and the findings, holdings or orders in the U.S. Bankruptcy Court shall not alter their rights in the proceeding before U.S. District Court.

13.      Mr. Gonzales also continues to assert that the Parcel A Transfer Fee is due, and Debtor continues to assert that the fee is not due.  The issue, as noted above, shall be determined in the proceeding before U.S. District Court.

14.      Notwithstanding the disagreements between Debtor and Mr. Gonzales to be determined in U.S. District Court, Debtor and Mr. Gonzales stipulate that the Bankruptcy Court shall determine, for purposes of finding the Debtor's Plan to be feasible, that it is more likely than not that (a) Mr. Gonzales has no lien on the Debtor's real property, and (b) the Parcel A Transfer Fee is not, at this time, due to be paid.  This stipulation shall have no binding effect on the proceeding in U.S.

District Court or any other subsequent court should the parties seek later judicial determination after the determination of the U.S. District Court. Debtor and Mr. Gonzales still may present any and all evidence, authority and argument on these issues in U.S. District Court without prejudice or regard to this stipulation.

15. To the extent Debtor objects to Mr. Gonzales' claim, the determination of Mr. Gonzales' claim and Debtor's rights shall be made in the proceeding in U.S. District Court.

16. Any findings or holdings by the U.S. Bankruptcy Court in this case as it pertains to Mr. Gonzales' rights are not final judgments and are not entitled to be used in the U.S. District Court or any other subsequent court should the parties seek later judicial determination after the determination of the U.S. District Court under the doctrines of issue preclusion, including the doctrines of direct estoppel and collateral estoppel, or the doctrine of claim preclusion, also known as *res judicata*.

17. Mr. Gonzales and Debtor also are contemporaneously stipulating with CT Investment Management Co., LLC (in its capacity as previously specified in this case) regarding the admissibility of certain documents for the confirmation hearings. Such stipulation is to admissibility only in this case and shall not bind the parties as to admissibility or substance in the U.S. District Court proceeding or any other subsequent proceeding as identified in Paragraphs 11 to 16.

18. Mr. Gonzales preserves all arguments regarding the U.S. Bankruptcy Court's power or authority to make decisions regarding his state-law rights under *Stern v. Marshall*, 564 U.S. ___, 131 S. Ct. 2594 (2011).

///

///

///

4

19.     This stipulation shall be incorporated by reference as part of the order confirming Debtor's amended plan of reorganization.

20.     Mr. Gonzales withdraws his objection to confirmation of Debtor's Plan.

Dated this 1st day of December, 2011      ARMSTRONG TEASDALE LLP

By:   /s/Louis M. Bubala III
LOUIS M. BUBALA III, ESQ.

Counsel to Tom Gonzales

Dated this 1st day of December, 2011      SCHWARTZER & MCPHERSON LAW FIRM

By:   /s/ Lenard E. Schwartzer
LENARD SCHWARTZER, ESQ.

Counsel to Desert Oasis Apartments, LLC

# EXHIBIT B

# Form 1065

U.S. Return of Partnership Income

Department of the Treasury
Internal Revenue Service

For calendar year 2018, or tax year beginning _____ , _____ , ending _____ , _____ .

OMB No. 1545-0123

## 2018

| | | |
|---|---|---|
| **A** Principal business activity | **Name of partnership** | **D** Employer identification number |
| INVESTMENT | DESERT LAND LLC | 88-0367492 |
| **B** Principal product or service | C/O KAVITA GUPTA, CHAPTER 11 TRUSTEE | |
| | Type or Print | **E** Date business started |
| REAL ESTATE | Number, street, and room or suite no. If a P.O. box, see instructions. | 08/26/1996 |
| **C** Business code number | 1300 BRISTOL ST NO, STE 100 | **F** Total assets |
| | City or town, state or province, country, and ZIP or foreign postal code | |
| 531120 | NEWPORT BEACH            CA 92660 | $ 358274881. |

**G** Check applicable boxes: (1) ☐ Initial return (2) ☐ Final return (3) ☐ Name change (4) ☒ Address change (5) ☐ Amended return

**H** Check accounting method: (1) ☒ Cash (2) ☐ Accrual (3) ☐ Other (specify) ▶

**I** Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year ▶ 2

**J** Check if Schedules C and M-3 are attached ................................................................................ ▶ ☒

Caution: Include only trade or business income and expenses on lines 1a through 22 below. See instructions for more information.

| | Income | | |
|---|---|---|---|
| 1a | Gross receipts or sales | 1a | |
| b | Returns and allowances | 1b | |
| c | Balance. Subtract line 1b from line 1a | 1c | |
| 2 | Cost of goods sold (attach Form 1125-A) | 2 | |
| 3 | Gross profit. Subtract line 2 from line 1c | 3 | |
| 4 | Ordinary income (loss) from other partnerships, estates, and trusts (attach statement) | 4 | |
| 5 | Net farm profit (loss) (attach Schedule F (Form 1040)) | 5 | |
| 6 | Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) | 6 | |
| 7 | Other income (loss) (attach statement) | 7 | |
| 8 | Total income (loss). Combine lines 3 through 7 | 8 | |
| 9 | Salaries and wages (other than to partners) (less employment credits) | 9 | |
| 10 | Guaranteed payments to partners | 10 | |
| 11 | Repairs and maintenance | 11 | |
| 12 | Bad debts | 12 | |
| 13 | Rent | 13 | |
| 14 | Taxes and licenses | 14 | |
| 15 | Interest (see instructions) | 15 | |
| 16a | Depreciation (if required, attach Form 4562) | 16a | |
| b | Less depreciation reported on Form 1125-A and elsewhere on return | 16b | 16c |
| 17 | Depletion (Do not deduct oil and gas depletion.) | 17 | |
| 18 | Retirement plans, etc. | 18 | |
| 19 | Employee benefit programs | 19 | |
| 20 | Other deductions (attach statement) | 20 | |
| 21 | Total deductions. Add the amounts shown in the far right column for lines 9 through 20 | 21 | |
| 22 | Ordinary business income (loss). Subtract line 21 from line 8 | 22 | 0. |

(Deductions (see instructions for limitations))

| | Tax and Payments | | |
|---|---|---|---|
| 23 | Interest due under the look-back method-completed long-term contracts (attach Form 8697) | 23 | |
| 24 | Interest due under the look-back method-income forecast method (attach Form 8866) | 24 | |
| 25 | BBA AAR imputed underpayment (see instructions) | 25 | |
| 26 | Other taxes (see instructions) | 26 | |
| 27 | Total balance due. Add lines 23 through 27 | 27 | |
| 28 | Payment (see instructions) | 28 | |
| 29 | Amount owed. If line 28 is smaller than line 27, enter amount owed | 29 | |
| 30 | Overpayment. If line 28 is larger than line 27, enter overpayment | 30 | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than partner or limited liability company member) is based on all information of which preparer has any knowledge.

Signature of partner or limited liability company member

_Kavita Gupta, Trustee as_    Date 9/14/19

May the IRS discuss this return with the preparer shown below (see instr.)? ☒ Yes ☐ No

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date 7/16/19 | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|
| KERMITH BOFFILL | | | | P00958329 |
| Firm's name ▶ GROBSTEIN TEEPLE, LLP | | | Firm's EIN ▶ 46-1955807 | |
| Firm's address ▶ 6300 CANOGA AVENUE, SUITE 1500W | | | | |
| WOODLAND HILLS, CA 91367 | | | Phone no. 818-532-1020 | |

LHA  For Paperwork Reduction Act Notice, see separate instructions.    811001 12-21-18

Form **1065** (2018)

Form 1065 (2018)  DESERT LAND LLC C/O KAVITA GUPTA, CHAPTE    88-0367492    Page **2**

## Schedule B    Other Information

| | | | | Yes | No |
|---|---|---|---|---|---|
| **1** | What type of entity is filing this return?  Check the applicable box: | | | | |
| **a** | ☐ Domestic general partnership | **b** | ☐ Domestic limited partnership | | |
| **c** | ☒ Domestic limited liability company | **d** | ☐ Domestic limited liability partnership | | |
| **e** | ☐ Foreign partnership | **f** | ☐ Other ▶ | | |

| | | Yes | No |
|---|---|---|---|
| **2** | At the end of the tax year: | | |
| **a** | Did any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, or tax-exempt organization, or any foreign government own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership | | X |
| **b** | Did any individual or estate own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership | | X |
| **3** | At the end of the tax year, did the partnership: | | |
| **a** | Own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of stock entitled to vote of any foreign or domestic corporation? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (iv) below | | X |

| (i) Name of Corporation | (ii) Employer Identification Number (if any) | (iii) Country of Incorporation | (iv) Percentage Owned in Voting Stock |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| | | Yes | No |
|---|---|---|---|
| **b** | Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial interest of a trust? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (v) below | | X |

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| | | Yes | No |
|---|---|---|---|
| **4** | Does the partnership satisfy **all four** of the following conditions? | | |
| **a** | The partnership's total receipts for the tax year were less than $250,000. | | |
| **b** | The partnership's total assets at the end of the tax year were less than $ 1 million. | | |
| **c** | Schedules K-1 are filed with the return and furnished to the partners on or before the due date (including extensions) for the partnership return. | | |
| **d** | The partnership is not filing and is not required to file Schedule M-3 ............................................... | | X |
| | If "Yes," the partnership is not required to complete Schedules L, M-1, and M-2; item F on page 1 of Form 1065; or item L on Schedule K-1. | | |
| **5** | Is this partnership a publicly traded partnership, as defined in section 469(k)(2)? | | X |
| **6** | During the tax year, did the partnership have any debt that was canceled, was forgiven, or had the terms modified so as to reduce the principal amount of the debt? | | X |
| **7** | Has this partnership filed, or is it required to file, Form 8918, Material Advisor Disclosure Statement, to provide information on any reportable transaction? | | X |
| **8** | At any time during calendar year 2018, did the partnership have an interest in or a signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)? See instructions for exceptions and filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR). If "Yes," enter the name of the foreign country. ▶ | | X |
| **9** | At any time during the tax year, did the partnership receive a distribution from, or was it the grantor of, or transferor to, a foreign trust? If "Yes," the partnership may have to file Form 3520, Annual Return To Report Transactions With Foreign Trusts and Receipt of Certain Foreign Gifts. See instructions | | X |
| **10 a** | Is the partnership making, or had it previously made (and not revoked), a section 754 election? ....................... | X | |
| | See instructions for details regarding a section 754 election. | | |
| **b** | Did the partnership make for this tax year an optional basis adjustment under section 743(b) or 734(b)? If "Yes," attach a statement showing the computation and allocation of the basis adjustment. See instructions | | X |

811011  12-21-18                                                                 Form **1065** (2018)

2

Form 1065 (2018)  DESERT LAND LLC C/O KAVITA GUPTA, CHAPTE        88-0367492    Page 3

| **Schedule B** | **Other Information** (continued) | Yes | No |
|---|---|---|---|

| | | Yes | No |
|---|---|---|---|
| c | Is the partnership required to adjust the basis of partnership assets under section 743(b) or 734(b) because of a substantial built-in loss (as defined under section 743(d)) or substantial basis reduction (as defined under section 734(d))? If "Yes," attach a statement showing the computation and allocation of the basis adjustment. See instructions | | X |
| 11 | Check this box if, during the current or prior tax year, the partnership distributed any property received in a like-kind exchange or contributed such property to another entity (other than disregarded entities wholly owned by the partnership throughout the tax year) ▶ ☐ | | |
| 12 | At any time during the tax year, did the partnership distribute to any partner a tenancy-in-common or other undivided interest in partnership property? | | X |
| 13 | If the partnership is required to file Form 8858, Information Return of U.S. Persons With Respect To Foreign Disregarded Entities (FDEs) and Foreign Branches (FBs), enter the number of Forms 8858 attached. See instructions ▶ | | |
| 14 | Does the partnership have any foreign partners? If "Yes," enter the number of Forms 8805, Foreign Partner's Information Statement of Section 1446 Withholding Tax, filed for this partnership ▶ | | X |
| 15 | Enter the number of Forms 8865, Return of U.S. Persons With Respect to Certain Foreign Partnerships, attached to this return. ▶ | | |
| 16 a | Did you make any payments in 2018 that would require you to file Form(s) 1099? See instructions | | X |
| b | If "Yes," did you or will you file required Form(s) 1099? | | |
| 17 | Enter the number of Form(s) 5471, Information Return of U.S. Persons With Respect To Certain Foreign Corporations, attached to this return. ▶ | | |
| 18 | Enter the number of partners that are foreign governments under section 892. ▶ | | |
| 19 | During the partnership's tax year, did the partnership make any payments that would require it to file Form 1042 and 1042-S under chapter 3 (sections 1441 through 1464) or chapter 4 (sections 1471 through 1474)? | | X |
| 20 | Was the partnership a specified domestic entity required to file Form 8938 for the tax year? See the Instructions for Form 8938 | | X |
| 21 | Is the partnership a section 721(c) partnership, as defined in Treasury Regulations section 1.721(c)-1T(b)(14)? | | X |
| 22 | During the tax year, did the partnership pay or accrue any interest or royalty for which the deduction is not allowed under section 267A? See instructions. If "Yes," enter the total amount of the disallowed deductions. ▶ $ | | X |
| 23 | Did the partnership have an election under section 163(j) for any real property trade or business or any farming business in effect during the tax year? See instructions | | X |
| 24 | Does the partnership satisfy one of the following conditions and the partnership does not own a pass-through entity with current year, or prior year, carryover excess business interest expense? See instructions | X | |
| a | The partnership's aggregate average annual gross receipts (determined under section 448(c)) for the 3 tax years preceding the current tax year do not exceed $25 million, and the partnership is not a tax shelter; or | | |
| b | The partnership only has business interest expense from (1) an electing real property trade or business, (2) an electing farming business, or (3) certain utility businesses under section 163(j)(7). If "No," complete and attach Form 8990. | | |
| 25 | Is the partnership electing out of the centralized partnership audit regime under section 6221(b)? See instructions If "Yes," the partnership must complete Schedule B-2 (Form 1065). Enter the total from Schedule B-2, Part III, line 3. ▶ If "No," complete Designation of Partnership Representative below. | | X |

**Designation of Partnership Representative** (see instructions)

Enter below the information for the partnership representative (PR) for the tax year covered by this return.

| Name of PR ▶ | DESERT LAND LLC | U.S. taxpayer identification number of PR ▶ | 88-0367492 |
|---|---|---|---|
| U.S. address of PR ▶ | 1300 BRISTOL ST NO, STE 100 NEWPORT BEACH, CA 92660 | U.S. phone number of PR ▶ | 949-387-4470 |
| If the PR is an entity, name of the designated individual for the PR ▶ | KAVITA GUPTA, CHAPTER 11 TRUSTEE | U.S. taxpayer identification number of the designated individual ▶ | |
| U.S. address of designated individual ▶ | 1300 BRISTOL ST NO, STE 100 NEWPORT BEACH, CA 92660 | U.S. phone number of designated individual ▶ | 949-387-4470 |

| 26 | Is the partnership attaching Form 8996 to certify as a Qualified Opportunity Fund? | | X |
|---|---|---|---|
| | If "Yes," enter the amount from Form 8996, line 13. ▶ $ | | |

Form **1065** (2018)

811021 12-21-18

3

Form 1065 (2018)  DESERT LAND LLC C/O KAVITA GUPTA, CHAPTE    88-0367492  Page **4**

| | **Schedule K** | **Partners' Distributive Share Items** | | | **Total amount** |
|---|---|---|---|---|---|

| | | | | | Total amount |
|---|---|---|---|---|---|
| **Income (Loss)** | 1 | Ordinary business income (loss) (page 1, line 22) | | 1 | 0. |
| | 2 | Net rental real estate income (loss) (attach Form 8825) ...... SEE STATEMENT 2 | | 2 | -4,023,766. |
| | 3 a | Other gross rental income (loss) | 3a | | |
| | b | Expenses from other rental activities (attach statement) | 3b | | |
| | c | Other net rental income (loss). Subtract line 3b from line 3a | | 3c | |
| | 4 | Guaranteed payments | | 4 | |
| | 5 | Interest income | | 5 | |
| | 6 | Dividends and dividend equivalents: **a** Ordinary dividends | | 6a | |
| | | **b** Qualified dividends | 6b | | |
| | | **c** Dividend equivalents | 6c | | |
| | 7 | Royalties | | 7 | |
| | 8 | Net short-term capital gain (loss) (attach Schedule D (Form 1065)) | | 8 | |
| | 9 a | Net long-term capital gain (loss) (attach Schedule D (Form 1065)) | | 9a | |
| | b | Collectibles (28%) gain (loss) | 9b | | |
| | c | Unrecaptured section 1250 gain (attach statement) | 9c | | |
| | 10 | Net section 1231 gain (loss) (attach Form 4797) | | 10 | |
| | 11 | Other income (loss) (see instructions) Type ▶ | | 11 | |
| **Deductions** | 12 | Section 179 deduction (attach Form 4562) | | 12 | |
| | 13 a | Contributions | | 13a | |
| | b | Investment interest expense | | 13b | |
| | c | Section 59(e)(2) expenditures: **(1)** Type ▶ _____ **(2)** Amount ▶ | | 13c(2) | |
| | d | Other deductions (see instructions) Type ▶ | | 13d | |
| **Self-Employ-ment** | 14 a | Net earnings (loss) from self-employment | | 14a | 0. |
| | b | Gross farming or fishing income | | 14b | |
| | c | Gross nonfarm income | | 14c | |
| **Credits** | 15 a | Low-income housing credit (section 42(j)(5)) | | 15a | |
| | b | Low-income housing credit (other) | | 15b | |
| | c | Qualified rehabilitation expenditures (rental real estate) (attach Form 3468, if applicable) | | 15c | |
| | d | Other rental real estate credits (see instructions) Type ▶ | | 15d | |
| | e | Other rental credits (see instructions) Type ▶ | | 15e | |
| | f | Other credits (see instructions) Type ▶ | | 15f | |
| **Foreign Transactions** | 16 a | Name of country or U.S. possession ▶ | | | |
| | b | Gross income from all sources | | 16b | |
| | c | Gross income sourced at partner level | | 16c | |
| | | Foreign gross income sourced at partnership level | | | |
| | d | Section 951A category ▶ _____ **e** Foreign branch category ▶ | | 16e | |
| | f | Passive category ▶ _____ **g** General category ▶ _____ **h** Other ▶ | | 16h | |
| | | Deductions allocated and apportioned at partner level | | | |
| | i | Interest expense ▶ _____ **j** Other ▶ | | 16j | |
| | | Deductions allocated and apportioned at partnership level to foreign source income | | | |
| | k | Section 951A category ▶ _____ **l** Foreign branch category ▶ | | 16l | |
| | m | Passive category ▶ _____ **n** General category ▶ _____ **o** Other ▶ | | 16o | |
| | p | Total foreign taxes (check one): ▶ Paid ☐ Accrued ☐ | | 16p | |
| | q | Reduction in taxes available for credit (attach statement) | | 16q | |
| | r | Other foreign tax information (attach statement) | | | |
| **Alternative Minimum Tax (AMT) Items** | 17 a | Post-1986 depreciation adjustment | | 17a | |
| | b | Adjusted gain or loss | | 17b | |
| | c | Depletion (other than oil and gas) | | 17c | |
| | d | Oil, gas, and geothermal properties - gross income | | 17d | |
| | e | Oil, gas, and geothermal properties - deductions | | 17e | |
| | f | Other AMT items (attach statement) | | 17f | |
| **Other Information** | 18 a | Tax-exempt interest income | | 18a | |
| | b | Other tax-exempt income | | 18b | |
| | c | Nondeductible expenses ...... SEE STATEMENT 3 | | 18c | 101. |
| | 19 a | Distributions of cash and marketable securities | | 19a | |
| | b | Distributions of other property | | 19b | |
| | 20 a | Investment income | | 20a | |
| | b | Investment expenses | | 20b | |
| | c | Other items and amounts (attach statement) ...... STMT 4 | | | |

811041 12-21-18                   **4**               Form **1065** (2018)

Form 1065 (2018)  DESERT LAND LLC C/O KAVITA GUPTA, CHAPTE    88-0367492    Page 5

## Analysis of Net Income (Loss)

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 Net income (loss). Combine Schedule K, lines 1 through 11. From the result, subtract the sum of Schedule K, lines 12 through 13d, and 16p | | | | | **1** | -4,023,766. |

| 2 Analysis by partner type: | (i) Corporate | (ii) Individual (active) | (iii) Individual (passive) | (iv) Partnership | (v) Exempt Organization | (vi) Nominee/Other |
|---|---|---|---|---|---|---|
| a General partners | | | | | | |
| b Limited partners | | -20,119. | -4,003,647. | | | |

## Schedule L    Balance Sheets per Books

| | Assets | Beginning of tax year (a) | (b) | End of tax year (c) | (d) |
|---|---|---|---|---|---|
| 1 | Cash | | 35,230. | | 69,008. |
| 2a | Trade notes and accounts receivable | | | | |
| b | Less allowance for bad debts | | | | |
| 3 | Inventories | | | | |
| 4 | U.S. government obligations | | | | |
| 5 | Tax-exempt securities | | | | |
| 6 | Other current assets (attach statement) | STATEMENT 5 | 48,944,146. | | 48,926,521. |
| 7a | Loans to partners (or persons related to partners) | | | | |
| b | Mortgage and real estate loans | | | | |
| 8 | Other investments (attach statement) | | | | |
| 9a | Buildings and other depreciable assets | 281,800. | | 281,800. | |
| b | Less accumulated depreciation | 150,951. | 130,849. | 156,081. | 125,719. |
| 10a | Depletable assets | | | | |
| b | Less accumulated depletion | | | | |
| 11 | Land (net of any amortization) | | 262,318,034. | | 262,318,034. |
| 12a | Intangible assets (amortizable only) | | | | |
| b | Less accumulated amortization | | | | |
| 13 | Other assets (attach statement) | STATEMENT 6 | 46,835,601. | | 46,835,599. |
| 14 | Total assets | | 358,263,860. | | 358,274,881. |
| | Liabilities and Capital | | | | |
| 15 | Accounts payable | | | | |
| 16 | Mortgages, notes, bonds payable in less than 1 year | | 84,933,872. | | |
| 17 | Other current liabilities (attach statement) | STATEMENT 7 | 2,013,815. | | 13,476. |
| 18 | All nonrecourse loans | | | | |
| 19a | Loans from partners (or persons related to partners) | | | | |
| b | Mortgages, notes, bonds payable in 1 year or more | | | | |
| 20 | Other liabilities (attach statement) | STATEMENT 8 | 91,021,980. | | 182,653,149. |
| 21 | Partners' capital accounts | | 180,294,193. | | 175,608,256. |
| 22 | Total liabilities and capital | | 358,263,860. | | 358,274,881. |

## Schedule M-1    Reconciliation of Income (Loss) per Books With Income (Loss) per Return

Note: The partnership may be required to file Schedule M-3. See instructions.

| | | | | | |
|---|---|---|---|---|---|
| 1 | Net income (loss) per books | | 6 | Income recorded on books this year not included on Schedule K, lines 1 through 11 (itemize): | |
| 2 | Income included on Schedule K, lines 1, 2, 3c, 5, 6a, 7, 8, 9a, 10, and 11, not recorded on books this year (itemize): | | a | Tax-exempt interest $ | |
| 3 | Guaranteed payments (other than health insurance) | | 7 | Deductions included on Schedule K, lines 1 through 13d, and 16p, not charged against book income this year (itemize): | |
| 4 | Expenses recorded on books this year not included on Schedule K, lines 1 through 13d, and 16p (itemize): | | a | Depreciation $ | |
| a | Depreciation $ | | 8 | Add lines 6 and 7 | |
| b | Travel and entertainment $ | | 9 | Income (loss) (Analysis of Net Income (Loss), line 1). Subtract line 8 from line 5 | |
| 5 | Add lines 1 through 4 | | | | |

## Schedule M-2    Analysis of Partners' Capital Accounts

| | | | | | |
|---|---|---|---|---|---|
| 1 | Balance at beginning of year | 180,294,193. | 6 | Distributions: a Cash | |
| 2 | Capital contributed: a Cash | | | b Property | |
| | b Property | | 7 | Other decreases (itemize): | |
| 3 | Net income (loss) per books | -4,023,867. | | STMT 9 | 662,070. |
| 4 | Other increases (itemize): | | 8 | Add lines 6 and 7 | 662,070. |
| 5 | Add lines 1 through 4 | 176,270,326. | 9 | Balance at end of year. Subtract line 8 from line 5 | 175,608,256. |

5

Form **1065** (2018)

811042 12-21-18

Form **8825**
(Rev. November 2018)
Department of the Treasury
Internal Revenue Service

## Rental Real Estate Income and Expenses of a Partnership or an S Corporation
▶ Attach to Form 1065 or Form 1120S.
▶ Go to www.irs.gov/Form8825 for the latest information.

OMB No. 1545-0123

Name **DESERT LAND LLC**
**C/O KAVITA GUPTA, CHAPTER 11 TRUSTEE**

Employer identification number **88 0367492**

1 Show the type and address of each property. For each rental real estate property listed, report the number of days rented at fair rental value and days with personal use. See instructions. See page 2 to list additional properties.

| Physical address of each property - street, city, state, ZIP code | Type - Enter code 1-8; see page 2 for list | Fair Rental Days | Personal Use Days |
|---|---|---|---|
| A ARMSTRONG PROPERTY LAS VEGAS, NV 89121 | 5 | 0 | |
| B CASEY ARMS PROPERTY LAS VEGAS, NV 89119 | 5 | 120 | |
| C DESERT OASIS MOTEL PROPERTY LAS VEGAS, NV 89119 | 4 | 365 | |
| D HAPPI TIVOLI PROPERTY LAS VEGAS, NV 89119 | 5 | 0 | |

| | | Properties | | |
| Rental Real Estate Income | | A | B | C | D |
|---|---|---|---|---|---|
| 2 Gross rents | 2 | | 120,120. | 376,037. | |
| **Rental Real Estate Expenses** | | | | | |
| 3 Advertising | 3 | | | | |
| 4 Auto and travel | 4 | | | 553. | |
| 5 Cleaning and maintenance | 5 | | | | |
| 6 Commissions | 6 | | | | |
| 7 Insurance | 7 | | | 14,854. | |
| 8 Legal and other professional fees | 8 | | 25,000. | 8,370. | |
| 9 Interest | 9 | | 4,161,892. | | |
| 10 Repairs | 10 | | | 31,806. | |
| 11 Taxes | 11 | | | 66,180. | |
| 12 Utilities | 12 | | | 85,761. | |
| 13 Wages and salaries | 13 | | | 76,814. | |
| 14 Depreciation (see instructions) | 14 | | | | |
| 15 Other (list) ▶ SEE STATEMENT 10   SEE STATEMENT 11 | 15 | | 367. | 47,104. | |
| 16 Total expenses for each property. Add lines 3 through 15 | 16 | | 4,187,259. | 331,442. | |
| 17 Income or (Loss) from each property. Subtract line 16 from line 2 | 17 | | -4,067,139. | 44,595. | |

| | | |
|---|---|---|
| 18a Total gross rents. Add gross rents from line 2, columns A through H | 18a | 505,157. |
| b Total expenses. Add total expenses from line 16, columns A through H | 18b | ( 4,528,923. ) |
| 19 Net gain (loss) from Form 4797, Part II, line 17, from the disposition of property from rental real estate activities | 19 | |
| 20a Net income from rental real estate activities from partnerships, estates, and trusts in which this partnership or S corporation is a partner or beneficiary (from Schedule K-1) | 20a | |

b Identify below the partnerships, estates, or trusts from which net income (loss) is shown on line 20a. Attach a schedule if more space is needed:

| (1) Name | (2) Employer identification number |
|---|---|
| | |
| | |
| | |

| | | |
|---|---|---|
| 21 Net rental real estate income (loss). Combine lines 18a through 20a. Enter the result here and on: • Form 1065 or 1120S: Schedule K, Line 2 | 21 | -4,023,766. |

For Paperwork Reduction Act Notice, see instructions.
820141 11-15-18   JWA
Form 8825 (Rev. 11-2018)

6

08060913 601963 DESERTLANDLLC.BK        2018.04020 DESERT LAND LLC C/O KAVIT DESERTL1

Form 8825 (Rev. 11-2018)    **DESERT LAND LLC C/O KAVITA GUPTA, CHAPTE**    88-0367492    Page **2**

**1** Show the type and address of each property. For each rental real estate property listed, report the number of days rented at fair rental value and days with personal use. See instructions.

| Physical address of each property - street, city, state, ZIP code | | Type - Enter code 1-8; see below for list | Fair Rental Days | Personal Use Days |
|---|---|---|---|---|
| E | LEWIS PROPERTY | | | |
| | LAS VEGAS, NV 89118 | 4 | 365 | |
| F | MANDALAY HAVEN LAS VEGAS BLVD | | | |
| | LAS VEGAS, NV 89119 | 5 | 0 | |
| G | OLYMPUS INN | | | |
| | LAS VEGAS, NV 89119 | 5 | 0 | |
| H | | | | |

| | | | Properties | | | |
|---|---|---|---|---|---|---|
| **Rental Real Estate Income** | | | **E** | **F** | **G** | **H** |
| **2** Gross rents | | 2 | 9,000. | | | |
| **Rental Real Estate Expenses** | | | | | | |
| **3** Advertising | | 3 | | | | |
| **4** Auto and travel | | 4 | | | | |
| **5** Cleaning and maintenance | | 5 | | | | |
| **6** Commissions | | 6 | | | | |
| **7** Insurance | | 7 | | | | |
| **8** Legal and other professional fees | | 8 | | | | |
| **9** Interest | | 9 | | | | |
| **10** Repairs | | 10 | 1,836. | | | |
| **11** Taxes | | 11 | 3,170. | | | |
| **12** Utilities | | 12 | | | | |
| **13** Wages and salaries | | 13 | | | | |
| **14** Depreciation (see instructions) | | 14 | 5,130. | | | |
| **15** Other (list) ▶ STMT 14 | | 15 | 86. | | | |
| | | | | | | |
| | | | | | | |
| **16** Total expenses for each property. Add lines 3 through 15 | | 16 | 10,222. | | | |
| **17** Income or (Loss) from each property. Subtract line 16 from line 2 | | 17 | -1,222. | | | |

**Allowable Codes for Type of Property**
1 - Single Family Residence
2 - Multi-Family Residence
3 - Vacation or Short-Term Rental
4 - Commercial
5 - Land
6 - Royalties
7 - Self-Rental
8 - Other (include description with the code on Form 8825 or on a separate statement)

JWA                                                                                           Form **8825** (Rev. 11-2018)

820142
11-15-18

08060913  601963  DESERTLANDLLC.BK          2018.04020 DESERT LAND LLC C/O KAVIT DESERTL1

**SCHEDULE B-1**
**(Form 1065)**
(Rev. September 2017)
Department of the Treasury
Internal Revenue Service

# Information on Partners Owning 50% or More of the Partnership

▶ Attach to Form 1065.
▶ Go to www.irs.gov/Form1065 for the latest information.

OMB No. 1545-0123

| Name of partnership | Employer identification number |
|---|---|
| DESERT LAND LLC C/O KAVITA GUPTA, CHAPTER 11 TRUSTEE | 88-0367492 |

**Part I    Entities Owning 50% or More of the Partnership**   (Form 1065, Schedule B, Question 3a)

Complete columns (i) through (v) below for any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, tax-exempt organization, or any foreign government that owns, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership (see instructions).

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| SKYVUE LAS VEGAS LLC C/O BRIAN D. SHAPIRO | 45-3075158 | PARTNERSHIP | UNITED STATES | 99.50 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**Part II    Individuals or Estates Owning 50% or More of the Partnership**   (Form 1065, Schedule B, Question 3b)

Complete columns (i) through (iv) below for any individual or estate that owns, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership (see instructions).

| (i) Name of Individual or Estate | (ii) Identifying Number (if any) | (iii) Country of Citizenship (see instructions) | (iv) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

LHA   **For Paperwork Reduction Act Notice, see the Instructions for Form 1065.**        Schedule B-1 (Form 1065) (Rev. 9-2017)

824551 04-01-18

08060913 601963 DESERTLANDLLC.BK      2018.04020 DESERT LAND LLC C/O KAVIT DESERTL1

**SCHEDULE C**
**(Form 1065)**

(Rev. December 2014)
Department of the Treasury
Internal Revenue Service

# Additional Information for Schedule M-3 Filers

▶ Attach to Form 1065. See separate instructions.
▶ Information about Schedule C (Form 1065) and its instructions is at www.irs.gov/form1065.

OMB No. 1545-0123

| Name of partnership | Employer identification number |
|---|---|
| DESERT LAND LLC<br>C/O KAVITA GUPTA, CHAPTER 11 TRUSTEE | 88-0367492 |

|  |  | Yes | No |
|---|---|---|---|
| 1 | At any time during the tax year, were there any transfers between the partnership and its partners subject to the disclosure requirements of Regulations section 1.707-8? | | X |
| 2 | Does any amount reported on Schedule M-3, Part II, lines 7 or 8, column (d), reflect allocations to this partnership from another partnership of income, gain, loss, deduction, or credit that are disproportionate to this partnership's share of capital in that partnership or its ratio for sharing other items of that partnership? | | X |
| 3 | At any time during the tax year, did the partnership sell, exchange, or transfer any interest in an intangible asset to a related person as defined in sections 267(b) and 707(b)(1)? | | X |
| 4 | At any time during the tax year, did the partnership acquire any interest in an intangible asset from a related person as defined in sections 267(b) and 707(b)(1)? | | X |
| 5 | At any time during the tax year, did the partnership make any change in accounting principle for financial accounting purposes? See instructions for a definition of change in accounting principle | | X |
| 6 | At any time during the tax year, did the partnership make any change in a method of accounting for U.S. income tax purposes? | | X |

JWA   For Paperwork Reduction Act Notice, see the Instructions for Form 1065.

Schedule C (Form 1065) (Rev. 12-2014)

811151
04-01-18

08060913  601963  DESERTLANDLLC.BK          2018.04020 DESERT LAND LLC C/O KAVIT DESERTL1

**SCHEDULE M-3**
(Form 1065)

Department of the Treasury
Internal Revenue Service

# Net Income (Loss) Reconciliation for Certain Partnerships

▶ Attach to Form 1065.
▶ Go to www.irs.gov/Form1065 for instructions and the latest information.

OMB No. 1545-0123

**2018**

Name of partnership
DESERT LAND LLC
C/O KAVITA GUPTA, CHAPTER 11 TRUSTEE

Employer identification number
88-0367492

This Schedule M-3 is being filed because (check all that apply):

A [X] The amount of the partnership's total assets at the end of the tax year is equal to $10 million or more.

B [X] The amount of the partnership's adjusted total assets for the year is equal to $10 million or more. If box B is checked, enter the amount of adjusted total assets for the tax year   362,960,818.

C [ ] The amount of total receipts for the tax year is equal to $35 million or more. If box C is checked, enter the total receipts for the tax year   .

D [X] An entity that is a reportable entity partner with respect to the partnership owns or is deemed to own an interest of 50% or more in the partnership's capital, profit, or loss on any day during the tax year of the partnership.

| Name of Reportable Entity Partner | Identifying Number | Maximum Percentage Owned or Deemed Owned |
|---|---|---|
| SKYVUE LAS VEGAS LLC | 45-3075158 | 99.5000% |

E [ ] Voluntary Filer

## Part I — Financial Information and Net Income (Loss) Reconciliation

**1a** Did the partnership file SEC Form 10-K for its income statement period ending with or within this tax year?

    [ ] **Yes.** Skip lines 1b and 1c and complete lines 2 through 11 with respect to that SEC Form 10-K.

    [X] **No.** Go to line 1b. See instructions if multiple non-tax-basis income statements are prepared.

**b** Did the partnership prepare a certified audited non-tax-basis income statement for that period?

    [ ] **Yes.** Skip line 1c and complete lines 2 through 11 with respect to that income statement.

    [X] **No.** Go to line 1c.

**c** Did the partnership prepare a non-tax-basis income statement for that period?

    [X] **Yes.** Complete lines 2 through 11 with respect to that income statement.

    [ ] **No.** Skip lines 2 through 3b and enter the partnership's net income (loss) per its books and records on line 4a.

**2** Enter the income statement period:   Beginning 01/01/2018   Ending 12/31/2018

**3a** Has the partnership's income statement been restated for the income statement period on line 2?

    [ ] **Yes.** (If "Yes," attach a statement and the amount of each item restated.)

    [X] **No.**

**b** Has the partnership's income statement been restated for any of the five income statement periods immediately preceding the period on line 2?

    [ ] **Yes.** (If "Yes," attach a statement and the amount of each item restated.)

    [X] **No.**

| | | | |
|---|---|---|---|
| **4a** | Worldwide consolidated net income (loss) from income statement source identified in Part I, line 1 | **4a** | -4,023,867. |
| **b** | Indicate accounting standard used for line 4a (see instructions): | | |
| | 1 [X] GAAP   2 [ ] IFRS   3 [ ] 704(b) | | |
| | 4 [ ] Tax-basis   5 [ ] Other: (specify) ▶ | | |
| **5a** | Net income from nonincludible foreign entities (attach statement) | **5a** | ( ) |
| **b** | Net loss from nonincludible foreign entities (attach statement and enter as a positive amount) | **5b** | |
| **6a** | Net income from nonincludible U.S. entities (attach statement) | **6a** | ( ) |
| **b** | Net loss from nonincludible U.S. entities (attach statement and enter as a positive amount) | **6b** | |
| **7a** | Net income (loss) of other foreign disregarded entities (attach statement) | **7a** | |
| **b** | Net income (loss) of other U.S. disregarded entities (attach statement) | **7b** | |
| **8** | Adjustment to eliminations of transactions between includible entities and nonincludible entities (attach stmt.) | **8** | |
| **9** | Adjustment to reconcile income statement period to tax year (attach statement) | **9** | |
| **10** | Other adjustments to reconcile to amount on line 11 (attach statement) | **10** | |
| **11** | **Net income (loss) per income statement of the partnership.** Combine lines 4a through 10 | **11** | -4,023,867. |

**Note.** Part I, line 11, must equal Part II, line 26, column (a) or Schedule M-1, line 1. See instructions.

**12** Enter the total amount (not just the partnership's share) of the assets and liabilities of all entities included or removed on the following lines:

| | Total Assets | Total Liabilities |
|---|---|---|
| **a** Included on Part I, line 4 | 358,274,881. | 182,666,625. |
| **b** Removed on Part I, line 5 | | |
| **c** Removed on Part I, line 6 | | |
| **d** Included on Part I, line 7 | | |

For Paperwork Reduction Act Notice, see the Instructions for your return.

**Schedule M-3 (Form 1065) 2018**

810991 01-03-19   JWA

08060913 601963 DESERTLANDLLC.BK      2018.04020 DESERT LAND LLC C/O KAVIT DESERTL1

Schedule M-3 (Form 1065) 2018 — Page **2**

| Name of partnership | DESERT LAND LLC | Employer identification number |
|---|---|---|
| | C/O KAVITA GUPTA, CHAPTER 11 TRUSTEE | 88-0367492 |

**Part II**  Reconciliation of Net Income (Loss) per Income Statement of Partnership with Income (Loss) per Return

| Income (Loss) Items | (a) Income (Loss) per Income Statement | (b) Temporary Difference | (c) Permanent Difference | (d) Income (Loss) per Tax Return |
|---|---|---|---|---|
| Attach statements for lines 1 through 10. | | | | |
| 1 Income (loss) from equity method foreign corporations | | | | |
| 2 Gross foreign dividends not previously taxed | | | | |
| 3 Subpart F, QEF, and similar income inclusions | | | | |
| 4 Gross foreign distributions previously taxed | | | | |
| 5 Income (loss) from equity method U.S. corporations | | | | |
| 6 U.S. dividends | | | | |
| 7 Income (loss) from U.S. partnerships | | | | |
| 8 Income (loss) from foreign partnerships | | | | |
| 9 Income (loss) from other pass-through entities | | | | |
| 10 Items relating to reportable transactions | | | | |
| 11 Interest income (see instructions) | | | | |
| 12 Total accrual to cash adjustment | | | | |
| 13 Hedging transactions | | | | |
| 14 Mark-to-market income (loss) | | | | |
| 15 Cost of goods sold (see instructions) | ( ) | | | ( ) |
| 16 Sale versus lease (for sellers and/or lessors) | | | | |
| 17 Section 481(a) adjustments | | | | |
| 18 Unearned/deferred revenue | | | | |
| 19 Income recognition from long-term contracts | | | | |
| 20 Original issue discount and other imputed interest | | | | |
| 21a Income statement gain/loss on sale, exchange, abandonment, worthlessness, or other disposition of assets other than inventory and pass-through entities | | | | |
| b Gross capital gains from Schedule D, excluding amounts from pass-through entities | | | | |
| c Gross capital losses from Schedule D, excluding amounts from pass-through entities, abandonment losses, and worthless stock losses | | | | |
| d Net gain/loss reported on Form 4797, line 17, excluding amounts from pass-through entities, abandonment losses, and worthless stock losses | | | | |
| e Abandonment losses | | | | |
| f Worthless stock losses (attach statement) | | | | |
| g Other gain/loss on disposition of assets other than inventory | | | | |
| 22 Other income (loss) items with differences (attach statement) | | | | |
| 23 Total income (loss) items. Combine lines 1 through 22 | | | | |
| 24 Total expense/deduction items (from Part III, line 31) (see instructions) | -4,167,123. | | 101. | -4,167,022. |
| 25 Other items with no differences   STMT 15 | 143,256. | | | 143,256. |
| 26 Reconciliation totals. Combine lines 23 through 25 | -4,023,867. | | 101. | -4,023,766. |

**Note.** Line 26, column (a), must equal Part I, line 11, and column (d) must equal Form 1065, Analysis of Net Income (Loss), line 1.

JWA

Schedule M-3 (Form 1065) 2018

810092
01-03-19

08060913 601963 DESERTLANDLLC.BK        2018.04020 DESERT LAND LLC C/O KAVIT DESERTL1

Schedule M-3 (Form 1065) 2018                    Page **3**

| Name of partnership | DESERT LAND LLC | | |
|---|---|---|---|

C/O KAVITA GUPTA, CHAPTER 11 TRUSTEE

Employer identification number: 88-0367492

**Part III** Reconciliation of Net Income (Loss) per Income Statement of Partnership With Income (Loss) per Return - Expense/Deduction Items

| # | Expense/Deduction Items | (a) Expense per Income Statement | (b) Temporary Difference | (c) Permanent Difference | (d) Deduction per Tax Return |
|---|---|---|---|---|---|
| 1 | State and local current income tax expense | | | | |
| 2 | State and local deferred income tax expense | | | | |
| 3 | Foreign current income tax expense (other than foreign withholding taxes) | | | | |
| 4 | Foreign deferred income tax expense | | | | |
| 5 | Equity-based compensation | | | | |
| 6 | Meals and entertainment | | | | |
| 7 | Fines and penalties | | | | |
| 8 | Judgments, damages, awards, and similar costs | | | | |
| 9 | Guaranteed payments | | | | |
| 10 | Pension and profit-sharing | | | | |
| 11 | Other post-retirement benefits | | | | |
| 12 | Deferred compensation | | | | |
| 13 | Charitable contribution of cash and tangible property | | | | |
| 14 | Charitable contribution of intangible property | | | | |
| 15 | Organizational expenses as per Regulations section 1.709-2(a) | | | | |
| 16 | Syndication expenses as per Regulations section 1.709-2(b) | | | | |
| 17 | Current year acquisition/reorganization investment banking fees | | | | |
| 18 | Current year acquisition/reorganization legal and accounting fees | | | | |
| 19 | Amortization/impairment of goodwill | | | | |
| 20 | Amortization of acquisition, reorganization, and start-up costs | | | | |
| 21 | Other amortization or impairment write-offs | | | | |
| 22 | Reserved | | | | |
| 23a | Depletion - Oil & Gas | | | | |
| b | Depletion - Other than Oil & Gas | | | | |
| 24 | Intangible drilling & development costs | | | | |
| 25 | Depreciation | 5,130. | | | 5,130. |
| 26 | Bad debt expense | | | | |
| 27 | Interest expense (see instructions) | 4,161,892. | | | 4,161,892. |
| 28 | Purchase versus lease (for purchasers and/or lessees) | | | | |
| 29 | Research and development costs | | | | |
| 30 | Other expense/deduction items with differences (attach statement) STMT 17 | 101. | | -101. | |
| 31 | **Total expense/deduction items.** Combine lines 1 through 30. Enter here and on Part II, line 24, reporting positive amounts as negative and negative amounts as positive | 4,167,123. | | -101. | 4,167,022. |

JWA           Schedule M-3 (Form 1065) 2018

810993 01-03-19

08060913 601963 DESERTLANDLLC.BK    2018.04020 DESERT LAND LLC C/O KAVIT DESERTL1

**2018 DEPRECIATION AND AMORTIZATION REPORT**

DESERT OASIS MOTEL PROPERTY

R- 3

| Asset No. | Description | Date Acquired | Method | Life | C o n v | Line No. | Unadjusted Cost Or Basis | Bus % Excl | Section 179 Expense | Reduction In Basis * | Basis For Depreciation | Beginning Accumulated Depreciation | Current Sec 179 Expense | Current Year Deduction | Ending Accumulated Depreciation |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | FULLY DEPRECIATED F&F | 09/10/10 | 200DB | 5.00 | HY17 | | 20,461. | | | | 20,461. | 20,461. | | 0. | 20,461. |
| 2 | FULLY DEPRECIATED EQUIPMENT | 10/21/10 | 200DB | 5.00 | HY17 | | 32,254. | | | | 32,254. | 32,254. | | 0. | 32,254. |
| 3 | FULLY DEPRECIATED VEHICLE | 12/20/07 | 200DB | 5.00 | HY17 | | 29,000. | | | | 29,000. | 29,000. | | 0. | 29,000. |
| | * TOTAL RENTAL DEPRECIATION | | | | | | 81,715. | | | | 81,715. | 81,715. | | 0. | 81,715. |

828111 04-01-18

(D) - Asset disposed

* ITC, Salvage, Bonus, Commercial Revitalization Deduction, GO Zone

13

# 2018 DEPRECIATION AND AMORTIZATION REPORT

LEWIS PROPERTY

R- 4

| Asset No. | Description | Date Acquired | Method | Life | Cov | Line No. | Unadjusted Cost Or Basis | Bus % Excl | Section 179 Expense | Reduction In Basis | Basis For Depreciation | Beginning Accumulated Depreciation | Current Sec 179 Expense | Current Year Deduction | Ending Accumulated Depreciation |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11 | BUILDING | 07/01/04 | SL | 39.00 | MM | 17 | 200,084. | | | | 200,084. | 69,236. | | 5,130. | 74,366. |
| | * TOTAL RENTAL DEPRECIATION | | | | | | 200,084. | | | | 200,084. | 69,236. | | 5,130. | 74,366. |

828111 04-01-18

(D) - Asset disposed

* ITC, Salvage, Bonus, Commercial Revitalization Deduction, GO Zone

14

| Form **8916-A** | **Supplemental Attachment to Schedule M-3** | OMB No. 1545-0123 |
|---|---|---|
| Department of the Treasury<br>Internal Revenue Service | ▶ Attach to Schedule M-3 for Form 1065, 1120, 1120-L, 1120-PC, or 1120S.<br>▶ Go to www.irs.gov/Form1120 for the latest information. | **2018** |

| Name of common parent | Employer identification number |
|---|---|
| DESERT LAND LLC C/O KAVITA GUPTA, CHAPTE | 88-0367492 |

| Name of subsidiary | Employer identification number |
|---|---|
| | |

**Part I   Cost of Goods Sold**

| Cost of Goods Sold Items | (a)<br>Expense per<br>Income Statement | (b)<br>Temporary<br>Difference | (c)<br>Permanent<br>Difference | (d)<br>Deduction per<br>Tax Return |
|---|---|---|---|---|
| 1   Amounts attributable to cost flow assumptions | | | | |
| 2   Amounts attributable to: | | | | |
| a   Stock option expense | | | | |
| b   Other equity-based compensation | | | | |
| c   Meals and entertainment | | | | |
| d   Parachute payments | | | | |
| e   Compensation with section 162(m) limitation | | | | |
| f   Pension and profit sharing | | | | |
| g   Other post-retirement benefits | | | | |
| h   Deferred compensation | | | | |
| i   Reserved | | | | |
| j   Amortization | | | | |
| k   Depletion | | | | |
| l   Depreciation | | | | |
| m   Corporate-owned life insurance premiums | | | | |
| n   Other section 263A costs | | | | |
| 3   Inventory shrinkage accruals | | | | |
| 4   Excess inventory and obsolescence reserves | | | | |
| 5   Lower of cost or market write-downs | | | | |
| 6   Other items with differences (attach statement) | | | | |
| 7   Other items with no differences | | | | |
| 8   **Total cost of goods sold.** Add lines 1 through 7 in columns a, b, c, and d. Enter totals on the applicable Schedule M-3. See instructions | | | | |

| JWA   **For Paperwork Reduction Act Notice, see instructions.** | Form **8916-A** (2018) |
|---|---|

Form 8916-A (2018)  DESERT LAND LLC C/O KAVITA GUPTA, CHAPTE          88-0367492   Page **2**

## Part II    Interest Income

| | Interest Income Item | (a) Income (Loss) per Income Statement | (b) Temporary Difference | (c) Permanent Difference | (d) Income (Loss) per Tax Return |
|---|---|---|---|---|---|
| 1 | Tax-exempt interest income | | | | |
| 2 | Interest income from hybrid securities | | | | |
| 3 | Sale/lease interest income | | | | |
| 4a | Intercompany interest income - From outside tax affiliated group | | | | |
| 4b | Intercompany interest income - From tax affiliated group | | | | |
| 5 | Other interest income | | | | |
| 6 | Total interest income. Add lines 1 through 5 in columns a, b, c, and d. Enter total on the applicable Schedule M-3. See instructions. | | | | |

## Part III    Interest Expense

| | Interest Expense Item | (a) Expense per Income Statement | (b) Temporary Difference | (c) Permanent Difference | (d) Deduction per Tax Return |
|---|---|---|---|---|---|
| 1 | Interest expense from hybrid securities | | | | |
| 2 | Lease/purchase interest expense | | | | |
| 3a | Intercompany interest expense - Paid to outside tax affiliated group | | | | |
| 3b | Intercompany interest expense - Paid to tax affiliated group | | | | |
| 4 | Other interest expense            STMT 19 | 4,161,892. | | | 4,161,892. |
| 5 | Total interest expense. Add lines 1 through 4 in columns a, b, c, and d. Enter total on the applicable Schedule M-3. See instructions. | 4,161,892. | | | 4,161,892. |

JWA                                                                          Form **8916-A** (2018)

813316
11-16-18

08060913  601963  DESERTLANDLLC.BK          2018.04020 DESERT LAND LLC C/O KAVIT DESERTL1

DESERT LAND LLC C/O KAVITA GUPTA, CHAPTE

88-0367492

# Qualified Business Income (Section 199A)

| Description | Qualified Business Income | Specified Service Income | W-2 Wages | Unadjusted Basis of Assets | Qualified PTP Income | Gain on Disposition of PTP | Total PTP Income |
|---|---|---|---|---|---|---|---|
| LAND - ARMSTRONG PROPERTY | | | | | | | |
| LAND - HAPPI TIVOLI PROPERTY | | | | | | | |
| COMMERCIAL - DESERT OASIS MOTEL PROPERTY | 44,595. | | 76,814. | 52,715. | | | |
| COMMERCIAL - LEWIS PROPERTY | -1,222. | | | 200,084. | | | |
| LAND - CASEY ARMS PROPERTY | -4,067,139. | | | | | | |
| LAND - OLYMPUS INN | | | | | | | |
| LAND - MANDALAY HAVEN LAS VEGAS BLVD | | | | | | | |
| TOTAL | -4,023,766. | | 76,814. | 252,799. | | | |

Qualified REIT dividends .............................

Unused prior year losses .............................

Cooperative qualified business income .............................

814821 02-14-19

17

## Worksheet for Adjusted Current Earnings Adjustments

| Name of partnership | Employer identification number |
|---|---|
| **DESERT LAND LLC**<br>**C/O KAVITA GUPTA, CHAPTER 11 TRUSTEE** | 88-0367492 |

**1.** Additions to AMTI:

| | | |
|---|---|---|
| **a.** Depreciation recomputed for AMT purposes | 5,130. | |
| **b.** Tax-exempt interest income | | |
| **c.** Amortization of IRC 173 | | |
| **d.** Depletion for post-1989 properties | | |
| **e.** Intangible drilling costs deducted from AMTI | | |
| **f.** Total additions to AMTI | | 5,130. |

**2.** Deductions:

| | | |
|---|---|---|
| **a.** Depreciation recomputed for ACE purposes | 5,130. | |
| **b.** Depletion recomputed for ACE purposes | | |
| **c.** ACE intangible drilling costs | | |
| **d.** Total deductions | | 5,130. |

**3.** Other adjustments:

| | | |
|---|---|---|
| **a.** Basis adjustments from sales or exchanges | | |
| **b.** Other adjustments | | |
| **c.** Total other adjustments | | |

**4.** Total adjustments to AMTI for ACE calculation. Combine lines 1f, 2d and 3c ........ **0.**

812181 11-07-18

08060913 601963 DESERTLANDLLC.BK          2018.04020 DESERT LAND LLC C/O KAVIT DESERTL1

SECTION 1.263(A)-1(F) DE MINIMIS SAFE HARBOR ELECTION


DESERT LAND LLC
C/O KAVITA GUPTA, CHAPTER 11 TRUSTEE
1300 BRISTOL ST NO, STE 100
NEWPORT BEACH, CA  92660


EMPLOYER IDENTIFICATION NUMBER:  88-0367492


FOR THE YEAR ENDING DECEMBER 31, 2018


DESERT LAND LLC C/O KAVITA GUPTA, CHAPTER 11 TRUSTEE IS MAKING THE
DE MINIMIS SAFE HARBOR ELECTION UNDER REG. SEC. 1.263(A)-1(F).

DESERT LAND LLC C/O KAVITA GUPTA, CHAPTE                        88-0367492

| FOOTNOTES | STATEMENT 1 |
|---|---|

ON APRIL 03, 2018, CREDITORS OF DESERT LAND, LLC ("DEBTOR")
FILED FOR AN INVOLUNTARY CHAPTER 7 BANKRUPTCY.  ON JUNE 28,
2018, THE BANKRUPTCY WAS CONVERTED TO A CHAPTER 11
BANKRUPTCY AND KAVITA GUPTA WAS APPOINTED AS THE CHAPTER 11
TRUSTEE (CASE NUMBER: 18-12454-GS). THIS RETURN IS BASED, IN
PART, ON ACCOUNTING RECORDS OF TRANSACTIONS AND ACTIVITY
THAT OCCURRED PRIOR TO THE BANKRUPTCY CASE AND APPOINTMENT
OF THE BANKRUPTCY TRUSTEE. THE BANKRUPTCY TRUSTEE HAS NO
PERSONAL KNOWLEDGE OF SUCH ACTIVITY AND IS NOT RESPONSIBLE
FOR THE PRIOR ACTIVITIES OR RECORDS OF THE DEBTOR. THE
ACCOUNTANT FOR THE TRUSTEE PREPARED THE TAX RETURNS BASED ON
THE AVAILABLE RECORDS. HOWEVER, BASED ON THE FOREGOING, THE
BANKRUPTCY TRUSTEE CANNOT VERIFY THE COMPLETENESS OR
ACCURACY OF THE RECORDS THE DEBTOR MAINTAINED PRIOR TO THE
TRUSTEE'S APPOINTMENT.

| SCHEDULE K | NET INCOME (LOSS) FROM RENTAL REAL ESTATE | STATEMENT 2 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| LAND - ARMSTRONG PROPERTY | 0. |
| LAND - HAPPI TIVOLI PROPERTY | 0. |
| COMMERCIAL - DESERT OASIS MOTEL PROPERTY | 44,595. |
| COMMERCIAL - LEWIS PROPERTY | -1,222. |
| LAND - CASEY ARMS PROPERTY | -4,067,139. |
| LAND - OLYMPUS INN | 0. |
| LAND - MANDALAY HAVEN LAS VEGAS BLVD | 0. |
| TOTAL TO SCHEDULE K, LINE 2 | -4,023,766. |

| SCHEDULE K | NONDEDUCTIBLE EXPENSE | STATEMENT 3 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| LIFE INSURANCE | 101. |
| TOTAL TO SCHEDULE K, LINE 18C | 101. |

DESERT LAND LLC C/O KAVITA GUPTA, CHAPTE                      88-0367492

| SCHEDULE K | OTHER ITEMS | STATEMENT 4 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| GROSS RECEIPTS FOR SECTION 59A(E) | 505,157. |
| SECTION 199A QUALIFIED BUSINESS INCOME | -4,023,766. |
| SECTION 199A W-2 WAGES | 76,814. |
| SECTION 199A UNADJUSTED BASIS | 252,799. |
| SECTION 199A REIT DIVIDENDS | 0. |
| SECTION 199A PTP INCOME | 0. |

| SCHEDULE L | OTHER CURRENT ASSETS | STATEMENT 5 |
|---|---|---|

| DESCRIPTION | BEGINNING OF TAX YEAR | END OF TAX YEAR |
|---|---|---|
| BOND DEPOSIT | 0. | 1,900. |
| CITATION FINANCIAL | 24,880,129. | 24,880,129. |
| COMPASS INVESTMENTS | 5,294,213. | 5,294,213. |
| DESERT OASIS APARTMENTS | 4,499,329. | 4,467,329. |
| DUE FROM - BB | 144,030. | 144,030. |
| DUE FROM - DG | 584,474. | 584,474. |
| DUE FROM - HAPPI | 0. | 9,975. |
| DUE FROM - HB | 2,539,584. | 2,539,584. |
| EMPLOYEE ADVANCES | 3,420. | 3,420. |
| SKYVUE LAS VEGAS | 10,923,967. | 10,926,467. |
| TIVOLI MOTEL INC | 75,000. | 75,000. |
| TOTAL TO SCHEDULE L, LINE 6 | 48,944,146. | 48,926,521. |

| SCHEDULE L | OTHER ASSETS | STATEMENT 6 |
|---|---|---|

| DESCRIPTION | BEGINNING OF TAX YEAR | END OF TAX YEAR |
|---|---|---|
| CAPITALIZED INTEREST - DESERT OASIS INVESTMENT | 46,835,599. | 46,835,599. |
| ROUNDING | 2. | 0. |
| TOTAL TO SCHEDULE L, LINE 13 | 46,835,601. | 46,835,599. |