Dye counters that her former representation of Meister and Eriksen, in unrelated matters, did not present an *actual* conflict of interest, let alone injury or fraud, which she maintains is the required standard for her removal under § 324. Dye maintains that the bankruptcy court applied a punitive *"per se"* rule improperly based on either an appearance of impropriety or a potential conflict of interest.

### B. The Legal Standard for Removal of Trustees

The standard for removal of a trustee due to a conflict of interest under *§ 324* has not been formalized in the Ninth Circuit. Nationally, there are three approaches in the case law to which we will look for guidance. As noted, some of these cases involve attorneys and other professionals, not trustees.

Some courts will not remove the trustee unless there is actual injury to the estate or fraud. See *In re Freeport Italian Bakery, Inc.,* 340 F.2d 50, 54 (2d Cir.1965) (actual conflict of interest and fraud). Such harm may simply be the loss of creditor confidence to the point that "discord threatens the estate." 3 *Collier, supra,* ¶ 324.02, at 324-5. Thus, these courts will consider the best interests of the bankruptcy estate. If it "would suffer more from the discord created by the present trustee than would be suffered from a change of administration, the removal of the trustee is necessarily the better solution." *Baker v. Seeber (In re Baker),* 38 B.R. 705, 708 (D.Md.1983) (quoting *Freeport Italian Bakery,* 340 F.2d at 55); *see also In re Microdisk Inc.,* 33 B.R. 817, 819 (D.Nev.1983).

Another approach is *per se* disqualification if an individual is determined to be not disinterested, typically under the plain terms of §§ 101(14)(A)-(D), without analyzing the effect of any such conflict on the estate. The majority of courts applying this standard do so on the theory that the court cannot use its equitable powers to

[530 F.3d 847]

disregard unambiguous statutory language. *See, e.g., Michel v. Fed'd Dep't Stores, Inc. (In re Fed'd Dep't Stores, Inc.),* 44 F.3d 1310, 1318-19 (6th Cir.1995), Cf. *Movitz v. Baker (In re Triple Star Welding, Inc.),* 324 B.R. 778, 790 (9th Cir. BAP 2005) (noting, in a case involving the attorney for the estate, that the court cannot approve employment of a person who is not disinterested); *First Interstate Bank of Nev., N.A. v. CIC Inv. Corp. (In re CIC Inv. Corp.),* 175 B.R. 52, 56 & n. 4 (9th Cir. BAP 1994) (holding, in a case involving professionals but not a trustee, that a court must follow the unambiguous language of §§ 327(a) and 101(14). but reserving judgment in regards to an attorney with a claim arising solely from services rendered in the bankruptcy case). The Fourth, Sixth and Eighth Circuits have adopted a per se rule in disqualifying attorneys who are not disinterested. *See Harold & Williams Dev. Co. v. U.S. Trustee (In re Harold & Williams Dev. Co.),* 977 F.2d 906, 909-10 (4th Cir.1992) (but holding that the congressionally established per se rules are "carefully delineated and narrowly tailored"); *Childress v. Middleton Arms, L.P. (In re Middleton Arms., L.P.),* 934 F.2d 723, 725 (6th Cir. 1991); and *Pierce v. Aetna Life Ins. Co. (In re Pierce),* 809 F.2d 1356, 1362-63 (8th Cir.1987).

The last approach, formulated by the First and Third Circuits, holds that there is no bright-line rule, but that each case "must be judged in the perspective of the particular case and the facts presented." 3 *Collier, supra,* ¶ 327.04[2][a][I], at 327-35. These courts apply a non-exhaustive list of factors to determine whether a conflict of interest, even if it arises under § 101(14), is sufficient for removal or disqualification because of a potential for a materially adverse effect upon the estate. See *In re Martin,* 817 F.2d 175, 182 (1st Cir.1987) and *BH & P Inc.,* 949 F.2d at 1313, as clarified in *In re Marvel Entm't Group, Inc.,* 140 F.3d 463, 476-77 (3d Cir. 1998). Both of these cases,



-10-


which are relied upon by Dye, deserve closer scrutiny.

Martin involved a debtor's attorney who duly disclosed that he had taken a mortgage in the chapter 11 debtor's real property, prepetition, in order to secure his fees. The case was then converted to chapter 7 and the attorney sought to enforce the mortgage. The bankruptcy court denied his motion because, according to the plain language of § 101(14)(A) and the disinterested requirement of § 327(a), the attorney was a "creditor," and therefore not disinterested. *Id.* at 177.

On appeal, the First Circuit rejected this par se approach as "a literalistic reading [which] defies common sense and must be discarded as grossly overbroad." *Martin,* 817 F.2d at 180. It adopted a "full panoply of events and elements" test to determine whether such conflict of. interest was materially adverse to the estate and creditors, and elucidated a non-exhaustive list of factors to consider. *Id.* at 182. The First Circuit then remanded the case for such an analysis.

Some of those factors, which are relevant to our case, include the likelihood that a potential conflict might turn into an actual one, the influence the conflict might have in subsequent decisionmaking, and how the matter is perceived by creditors and other parties in interest. *Id.*

In a 1991 case, the Third Circuit was similarly faced with making a per se decision, viz., the removal of a trustee because he represented multiple debtors and therefore was a "creditor," under § 101(14)(A) by virtue of having filed claims against the related estates. *See BH & P,* 949 F.2d at 1310. It opined that it would be unfair and unsound from a standpoint of administrative

[530 F.3d 848]

efficiency and economy to disqualify a trustee on that basis alone, and that such an

interpretation of the Code was "overbroad." *Id.* at 1310.

First, the Third Circuit correctly reasoned that § 101(14)(A) was inapplicable because it was intended to disqualify only creditors with personal claims and those "holding" prepetition adverse interests, not trustees having claims against the estate solely in a representative capacity. *See Tevis v. Wilke, Fleury, Hoffelt, Gould & Birney, LLP (In re Tevis),* 347 B.R. 679, 688 (9th Cir.BAP2006) ("To represent an adverse interest means to serve as an attorney for an entity holding such an adverse interest.")

Second, it adopted *Martin* and held that the inquiry as to whether the "single trustee in jointly administered estates with interdebtor claims" had a materially adverse interest should be "evaluated prospectively on a case-by-case basis," by an examination of "the full panoply of events and elements." *BH & P,* 949 F.2d at 1312-13. The Third Circuit concluded that the disputed nature of the proofs of claim and the need for advocacy of the competing interests was a materially adverse potential or actual conflict of interest. *Id.* at 1313. It therefore affirmed the bankruptcy court's removal of the trustee and his attorneys. *Id.* at 1313-14.

Appellees concede, in their responsive brief, that the proper analysis for our case is the *Martin* "full panoply of events and elements" or totality-of-circumstances test. In addition, Dye encourages the panel to adopt *BH & P's* approach, and suggests the use of several additional factors which she has gleaned from the case law.[10]

We agree with this approach to the extent that the question of materiality is addressed in the disinterestedness determination. Whether an interest is "materially adverse" necessarily requires an objective and fact-driven inquiry. *See Rus, Miliband & Smith, APC v. Yoo (In re Dick Cepek, Inc.),* 339 B.R. 730, 739-40 & n. 10 (9th Cir. BAP 2006) (holding that where no



N/H-017233

per se disqualification exists, "the inquiry into whether the professional holds interests adverse to the estate, is disinterested or otherwise is impaired by conflict of interest (actual or potential) is necessarily case- and fact-specific."); *In re Guy Apple Masonry Contr'r, Inc.,* 45 B.R. 160, 166 (Bankr.D.Ariz.1984) (analyzing all the evidence to decide whether an actual conflict of interest due to dual representation was materially adverse).[11] We also generally agree that a court should apply a

[530 F.3d 849]

totality-of-circumstances analysis in determining other "causes" for removal under § 324. We do not subscribe to a rigid application of factors, however, but view them as aids for the court's discretionary review.

### *C. Application to Our Facts*

Having adopted the totality-of-circumstances approach to determine lack of disinterestedness under § 101(14)(E) as cause under § 324, we now examine the facts and procedure in our case.

Indeed, the bankruptcy court made the precise analysis. It found that Dye had certain social connections with Meister, whom she had represented when he was an insider of Debtor, and a past professional connection with Eriksen (Meister's domestic partner), who was an investor and limited partner in the AFI Entities (Dye described him as a "partner" in her letter to Eisenberg during the settlement negotiations). Both individuals had a direct interest in, or adverse interest to, Debtor at the time she represented them.

However, Dye argues that insider status must be a "present" one and maintains that such individuals were no longer affiliated with AFI at the time of the bankruptcy petition. Dye urges that whether circumstances exist as would create a conflict of interest must be considered as of the time of appointment. *In re*

*Lee Way Holding, Co.,* 102 B.R. 616 (S.D.Ohio 1988).

The facts and law support the bankruptcy court's ruling and make practical sense. The definition of "insider" is open-ended because the term is not precise. 3 *Collier, supra,* ¶ 327.04[2][a][iii][C], at 327-36 to 327-37. "[I]nsider status may be based on a professional or business relationship with the debtor, in addition to the Code's per se classifications, [12] where such relationship compels the conclusion that the individual or entity has a relationship with the debtor, close enough to gain an advantage attributable simply to affinity rather than to the course of business dealings between the parties." *Friedman v. Sheila Plotsky Brokers, Inc. (In re Friedman),* 126 B.R. 63, 70 (9th Cir. BAP 1991).

The bankruptcy court properly considered the larger picture of these interrelationships

[530 F.3d 850]

in order to determine their materiality. At the time Dye formed business and social relationships with Meister and Eriksen, they were insiders. Dye claimed that she did not know about Meister's problems with AFI, but there was colorable evidence that she knew that Eriksen's reasons for wanting to withdraw his investment were closely tied to the fallout from the Ponzi scheme. Dye was in an adversarial position with AFI in representing Eriksen and negotiated a settlement for him which she could have believed would withstand scrutiny by any future bankruptcy trustee. As fate had it, she was that trustee.

In addition, the court correctly found that these associations could conceivably have influenced Dye's decision not to assert a recovery action against Eriksen[13] or litigation against Meister. Then, Dye received payment from AFI as part of the settlement. These relationships created suspicion and discord between Dye and the estate's creditors which



N/H-017234

was detrimental to the administration of the estate.[14]

A trustee/fiduciary must be free from any hint of bias. All of this evidence fits within the parameters of a materially adverse interest based on either an appearance of impropriety or a potential conflict of interest. Either is a viable cause for removal.

The Code's definition of disinterestedness "covers not only actual impropriety, but the appearance of impropriety as well." *In re Paolino,* 80 B.R. 341, 345 (Bankr.E.D.Pa.1987); *see also Martin,* 817 F.2d at 180-81 ("Section 327 is intended, however, to address the appearance of impropriety as much as its substance, to remove the temptation and opportunity to do less than duty demands."); *In re Vebeliunas,* 231 B.R. 181, 191-92 (Bankr. S.D.N.Y.1999) ("[t]o be disinterested is `to prevent even the appearance of a conflict'" and a disinterested person "`should be divested of any scintilla of personal interest which might be reflected in his decision concerning estate matters.'") (citations omitted).[15]

[530 F.3d 851]

Even if an appearance of impropriety is not an adequate basis upon which to disqualify an employed professional, *see Tevis,* 347 B.R. at 688 (stating that what constitutes material adversity for a lawyer is defined by neither bankruptcy law nor other federal law, but by California state law), it can be "cause" for a trustee's removal under § 324. Such a condition tends to create disharmony and lack of confidence among the creditor body.

Furthermore, courts which eschew the appearance of impropriety standard will authorize the bankruptcy court to remove a trustee or attorney with a potential conflict. The Third Circuit, with respect to attorney representation, held:

(I) Section 327(a), as well as § 327(c), imposes a per se disqualification as trustee's counsel of any attorney who has an actual conflict of interest; (2) the district court may within its discretion-pursuant to § 327(a) and consistent with § 327(c)disqualify an attorney who has a *potential* conflict of interest and (3) the district court may not disqualify an attorney on the *appearance* of conflict alone.

*Marvel Entm't Group,* 140 F.3d at 476 (emphasis supplied).

The Ninth Circuit has held that disqualification is appropriate where trustee's counsel previously represented an electric company and had a potential conflict of interest in pursuing a cause of action against such company on behalf of the estate. *Chugach Elec. Ass'n v. U.S. Dist. Ct.,* 370 F.2d 441, 442-43 (9th Cir.1966). The court concluded:

A likelihood here exists which cannot be disregarded that [counsel's] knowledge of private matters gained in confidence would provide him with greater insight and understanding....

Where conflict of interest or abuse of professional confidence is asserted, the right of an attorney freely to practice his profession must, in the public interest, give way in cases of doubt.

*Id.* at 443-44.

Here, the loss of Appellees' confidence in Trustee Dye was not simply tactical, but was based on perceptions of partiality due to her prior connections with Meister and Eriksen and her receipt of the AFI payment.

The bankruptcy court also considered the factor of Dye's nondisclosure regarding a material conflict of interest. At the time of her appointment as chapter 11 trustee, Dye's Declaration of Disinterestedness merely referred to her previous representation of an unnamed investor. Dye did not mention her



-13-

representation of Meister, identify Eriksen, nor either explain the connection between Meister and Eriksen or Mister's connection to AFI.[6] She did not make full disclosure until four years later, prompted by the litigation with

[530 F.3d 852]

Appellees, after she had been appointed the chapter 7 trustee.

It is axiomatic that a fiduciary has a duty to disclose any connections with the debtor, creditors, or any other party in interest. *See In re Haldeman Pipe & Supply Co.,* 417 F.2d 1302, 1304 (9th Cir. 1969); *Triple Star Welding,* 324 B.R. at 789. Failure to do so, even if inadvertent, can be a relevant factor for the bankruptcy court's consideration of "cause" for a panel trustee's removal Such nondisclosure could serve as a basis for the creditors to lose confidence in the trustee, which is precisely what the court found had occurred in this case. Therefore, the bankruptcy court did not abuse its discretion in finding that such nondisclosure supported the "cause" necessary to require removal under § 324.

Based on the foregoing analysis, we conclude that the bankruptcy court did not err in its determination that Dye was not disinterested because she had a materially adverse interest which created ongoing disharmony in the administration of the estate. Thus, these factors were sufficient to constitute cause for her removal under § 324.

### CONCLUSION

Cause for removal of an appointed panel trustee under § 324(a) is not susceptible to sharp definition, but is determined on a case-by-case, totality-of-circumstances approach, subject to the bankruptcy court's broad discretion.

The bankruptcy court did not err in determining that Dye's lack of disinterestedness, as evidenced by having a "materially adverse interest to the interests of the estate or any class of creditors or equity security holders," was cause for her removal. Lack of disinterestedness, as § 324 cause, may also consist of an appearance of impropriety or the trustee's failure to make disclosures of connections, factors which were also properly considered by the bankruptcy court under its totality-of-circumstances approach.

We conclude that the bankruptcy court neither erred nor abused its discretion in determining that cause existed to remove Dye as trustee. Therefore, we **AFFIRM.**

---------------

Notes:

* The Honorable Ralph R. Beistline, United States District Judge for the District of Alaska, sitting by designation.

1. Among the factors considered in the allocation of fees is "whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title." 11 U.S.C. § 330(a)(3)(C). Services that were, among other things, not "reasonably likely to benefit the debtor's estate" or not "necessary to the administration of the case" will not be compensated. *Id.* at § 330(a)(4)(A).

*

*9th Cir. BAP (Cal.), 2006 In re AFI Holding, Inc. 355 B.R. 139, 47 Bankr.Ct.Dec. 92, Bankr.L Rep. P 97,104, 06 Cal. Daily Op. Serv. 10,575, 2006 Daily Journal D.A.R. 15,028

1. Unless otherwise indicated, all code, section, and chapter references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 prior to its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of



N/H-017236

2005, Pub.L. 109-8, 119 Stat 23 (2005). "Rule" references are to the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr.P."), Rules 1001-9036.

2. This change was interesting in that Meister's deposition contained two and one-half pages of testimony concerning his alleged 1997 contact with Dye, and the new declaration was filed along with Dye's declaration in opposition to the motion to remove her as trustee, in which she denied having advised Meister concerning his termination from AFI. *See* Decl. of Dye 27, ¶ 8, Apr. 13, 2005.

3. Nonetheless, in the subsequent compromise negotiations, Dye insisted that Eriksen had a partner's right to inspect the partnership's tax return. See Letter from Dye to Eisenberg, May 4, 1999, Exh. 5 to Reply to Trustee's Opposition to Motion for Removal.

4. Appellees also alleged that Dye had blocked and frustrated discovery. However, the bankruptcy court found no improprieties, and Appellees have not filed a cross-appeal. Therefore, we will not address the issue.

5. There is a trend to make no distinction between potential and actual conflicts. See generally 1 *Norton Bankr.L. & Prac.2d* § 25:5 (2006). That topic is beyond the scope of our decision.

6. Dye's counsel informed the Panel at oral argument that she will not return as trustee no matter the outcome of this appeal. The matter is not moot, however, because her standing is an issue for her compensation. Additionally, this order is final and appealable. *See Matter of Schultz Mfg. Fabricating Co.,* 956 F.2d 686, 691-92 (7th Cir.1992.); *In re BH & P, Inc.,* 949 F.2d 1300, 1306 (3rd Cir.1991) (order removing chapter 7 trustee was final); *cf. Richman v. Straley,* 48 F.3d 1139, 1143 (10th Cir.1995) (court assumed that appeal from an order which claimed to be a de facto removal of a chapter 13 trustee was a final order).

7. We do not decide whether an elected chapter 7 trustee must also be disinterested. See § 702(a) (silent on topic of disinterestedness).

8. Section 101(14) also provides that a "disinterested person":

(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not an investment banker for any outstanding security of the debtor;

(C) has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor;

(D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph; ...

11 U.S.C § 101(14).

9. It is also well established that professionals employed by the estate and approved by the bankruptcy court must be disinterested. Section 327(a) provides:

Except as otherwise provided in this section the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

It would be an odd rule, indeed, if a trustee's professional must be disinterested, while the trustee need not.



N/H-017237

10. Dye recommends an 11-point test including the following factors: (1) the seriousness of a potential adverse interest; (2) whether the potential conflict ever ripened into a materially adverse interest; (3) whether the estate suffered injury as a consequence of any materially adverse interest; (4) the extent to which, if at all, the potentially adverse interest was disclosed and when it was disclosed; (5) the extent that the potential conflict was not disclosed for some period of time, the extent to which, if at all, the trustee was culpable with regard to the nondisclosure; (6) the extent to which, if at all, the trustee's conduct "was suggestive of irregularity"; (7) the extent to which, if at all, the moving party was dilatory in seeking removal; (8) the effect of removal on estate administration, including a consideration of whether the movant is adverse to the trustee in litigation and may be motivated by litigation tactics; (9) whether a prophylactic purpose could be served by removing the trustee; (10) the position of the U.S. Trustee regarding the motion; and (11) the fairness of removal to the trustee under the circumstances.

11. Moreover, because our facts only implicate the "catch-all" provision of § 101(14)(E), we do not need to "throw out the baby with the bath water." In other words, we do not need to decide whether or not a per se rule should be applied to a lack of disinterestedness based on §§ 101(14)(A)-(D).

In fact, the Third Circuit later circumscribed its holding in *BH & P* in a case where the professional was clearly a creditor of the debtor and thus not disinterested under the plain terms of § 101(14)(A). It stated:

We similarly reject the argument that our decision in *In re BH & P* authorizes bankruptcy courts to take a "flexible approach" in determining whether a professional who is not "disinterested" under the statutory definition may nevertheless be employed pursuant to Section 327(a). In *In re BH & P*, we were required to interpret the phrase "actual

conflict of interest" in Section 327(c). We found this phrase to be ambiguous and thus held that a bankruptcy court should have discretion "in determining whether an actual conflict exists `in light of the particular facts of each case.'" *In re BH & P*, 949 F.2d at 1315 (citations omitted). In the current case, we must interpret and apply Section 327(a), not Section 327(c). and as we have explained, we find no ambiguity in the relevant language of Section 327(a).

*U.S. Trustee v. Price Waterhouse*, 19 F.3d 138, 142 (3d Cir.1994). The court then reversed the order of employment.

12. Section 101(31)(B) provides that insiders of a corporate debtor include:

(i) director of the debtor;

(ii) officer of the debtor;

(iii) person in control of the debtor;

(iv) partnership in which the debtor is a general partner;

(v) general partner of the debtor; or

(vi) relative of a general partner, director, officer, or person in control of the debtor.

11 U.S.C. § 101(31)(B).

13. Dye maintains that the release made Eriksen judgment proof. However, the court found that no signed release had been put into evidence. Nor does the record reflect that any judgment against Eriksen would be uncollectible.

14. Dye further argues that "adverse interest" in § 101(14)(E) only refers to personally adverse interests and does not encompass her past representational interests. She misapplies *BH & P*, which opined that § 327(a) prohibits conflicts created by concurrent adverse legal representation, *See* § 327(a) (authorizing employment of professionals "that do not *hold or represent* an interest adverse to the estate,



-16-

and that are disinterested persons....")
(emphasis added).

Dye was not an employed professional,
but an appointed trustee. Her interests were
past personal as well as professional
relationships which could have predisposed
her under circumstances that created a bias
against the estate in her present trusteeship.
*See Roberts*, 46 B.R. at 827.

15. Historically, in view of the strict
impartiality requirement, some courts
presumptively disqualified trustees based on
any "prejudicial association" with interests
adverse to those of the estate. 6 *Collier, supra*,
¶ 702.08[1], at 702-18 to 702-19. This strict
standard was reinforced in state ethics rules,
particularly Canon 9 of the American Bar
Association ("ABA") Model Code of
Professional Responsibility ("A lawyer should
avoid even the appearance of professional
impropriety.")

Although the ABA Code has been replaced
by the ABA Rules of Professional Conduct,
which expressly eliminates the "appearance of
impropriety" standard (see ABA Rule 1, 9,
comment [5]), and although California has
neither adopted the ABA Code or Rules nor
has its own such standard, the Code and case
law illustrates that federal courts have the
inherent power to apply it. *See In re Glenn
Elec. Sales Corp.*, 99 B.R. 596, 598-99
(D.N.J.1988); *In re Snyder*, 472 U.S. 634, 645
n. 6, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985)
(holding that the state code of professional
responsibility did not by its own terms apply to
attorney sanctions in the federal courts, but
that federal courts in exercising their inherent
power under the standards imposed by federal
law may charge attorneys with the knowledge
of, and conformity to, the state codes); *see also
U.S. Trustee v. S.S. Retail Stores Corp. (In re
S.S. Retail Stores Corp.)*, 211 B.R. 699, 703
(9th Cir.BAP1997) (although California law
provides for a waiver of a conflict, the
Bankruptcy Code does not allow for such
waiver under §§ 101(14) or 327(a)); *Jin re*

*Granite Partners, L.P.*, 219 B.R. 22, 34
(Bankr.S.D.N.Y.1998) (same).

16. Section 1104 provides that the chapter 11
trustee must be a "disinterested person." *See*
11 U.S.C. § 1104(b) and (d); 7 *Collier, supra*, ¶
1104.02[7][a] at 1104-27.

---------------



# EXHIBIT K

| From: | Kevin Coleman |
|---|---|
| To: | Kavita Gupta |
| Cc: | Chris Hart; Greg Nuti; Kim Fineman; Joshua Teeple; Howard Grobstein; Ben Howard |
| Subject: | RE: Desert Land *** motion to address inter-company claim issue |
| Date: | Wednesday, July 10, 2019 9:07:00 PM |

I was suggesting that two different parties be designated, one to act for Desert Land, the other for Desert Apartments.  An examiner might be another option, let me think about that a little more.

I did not look into whether bank records are available prior to 2002.  Lenny never responded to our request to identify which bank(s) the debtors used, so I was never in a position to figure out who to contact.

Best regards,

--Kevin

**From:** Kavita Gupta [mailto:kgupta@guptaferrer.com]
**Sent:** Wednesday, July 10, 2019 8:35 PM
**To:** Kevin Coleman <kcoleman@nutihart.com>
**Cc:** Chris Hart <chart@nutihart.com>; Greg Nuti <gnuti@nutihart.com>; Kim Fineman <kfineman@nutihart.com>; Joshua Teeple <jteeple@gtllp.com>; Howard Grobstein <hgrobstein@gtllp.com>; Ben Howard <bhoward@gtllp.com>
**Subject:** Re: Desert Land *** motion to address inter-company claim issue

Kevin -

I don't follow your reasoning.  Why wouldn't a single person have the same conflict of interest if she is representing both estates in a dispute?   For example, would she file a claim objection on behalf of DOAPT and then defend it on behalf of DL?  Or are you proposing two people be appointed.

I wonder if an examiner with a limited role would make sense - that is, to determine if there even is a claim.   The managers don't seem to know anything about the purported claim even though they filed the schedules under penalty of perjury.  Is it even possible to get bank records from 2002?  Did you verify that?

Anyway, we can discuss tomorrow if you wish.

Thanks for all your help.

Sent from my iPhone

On Jul 10, 2019, at 7:48 PM, Kevin Coleman <kcoleman@nutihart.com> wrote:

> Thanks Kavita.  I will incorporate your changes, but I do think we should have the court designate some other interested party in both the Desert Land and Desert Oasis

Apartments cases to act on behalf of the estates in any dispute over the inter-company claims. My thinking is that if you take Desert Land's "side" in the controversy over the intercompany claim it still creates an appearance of impropriety from the perspective of the Desert Oasis Apartments creditors. Seems to me that if you stay completely out of the litigation it would be better.

Are you OK with me keeping that in?

Best regards,

--Kevin

**From:** Kavita Gupta [mailto:kgupta@guptaferrer.com]
**Sent:** Wednesday, July 10, 2019 6:03 PM
**To:** Kevin Coleman <kcoleman@nutihart.com>
**Cc:** Chris Hart <chart@nutihart.com>; Greg Nuti <gnuti@nutihart.com>; Kim Fineman <kfineman@nutihart.com>; Joshua Teeple <jteeple@gtllp.com>; Howard Grobstein <hgrobstein@gtllp.com>; Ben Howard <bhoward@gtllp.com>
**Subject:** Re: Desert Land *** motion to address inter-company claim issue

Kevin – attached is a redlined revised draft with minor changes for your consideration. Best,

## Kavita Gupta

GUPTA | FERRER L.L.P

1300 Bristol Street North, Suite 100
Newport Beach, CA  92660
Tel: 949.387.4470
Fax: 949.258.9786
*www.guptaferrer.com*
vCard  Bio

**Confidentiality Notice**: The information contained in this electronic mail message and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please notify me by return e-mail immediately, and delete the original message and all copies from your system. Thank you.

**IRS Circular 230 Disclosure**: To ensure compliance with IRS's requirements, please be advised that any tax advice contained in this communication (including any attachments) is not intended or written to be used or relied upon, and cannot be used or relied upon, for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**From:** Kevin Coleman <kcoleman@nutihart.com>

**Date:** Wednesday, July 10, 2019 at 5:28 PM
**To:** Kavita Gupta <kgupta@guptaferrer.com>
**Cc:** Chris Hart <chart@nutihart.com>, Greg Nuti <gnuti@nutihart.com>, Kim Fineman <kfineman@nutihart.com>, Joshua Teeple <jteeple@gtllp.com>, Howard Grobstein <hgrobstein@gtllp.com>, Ben Howard <bhoward@gtllp.com>
**Subject:** Desert Land *** motion to address inter-company claim issue

Hi Kavita,

Attached is a draft of the motion seeking guidance from the court as to the inter-company claim issue.  As you will see, it essentially tries to disclose as much as we know about the inter-company claims, outlines three options:

1.  order that you continue in all three cases until a sale at which time we can re-evaluate,
2.  accept your offer to resign from Desert Apartments, and
3.  order that you continue as trustee until all cases are closed but designate other parties to investigate/prosecute any necessary actions.

It does not attempt to advocate for one or the other option, but rather invites the court to make the call.

Let me know if you have any comments or wish to discuss.  Once we finalize the motion, I will turn to drafting the supporting declaration.

Best regards,

--Kevin

PS: John/Howard/Ben, could you please also look at how I describe your inquiry and investigation into the inter-company claim and let me know if anything should be changed?

Kevin W. Coleman
**Nuti Hart LLP**
411 30th Street, Suite 408
Oakland, CA 94609
Cell: 415 533-2920
Office: 510 506-7155
kcoleman@nutihart.com

<image002.png>

N/H-017281

# EXHIBIT L

| From: | Kavita Gupta |
|---|---|
| To: | Kevin Coleman |
| Subject: | Re: Desert Land - Colliers Listing Agreement |
| Date: | Friday, August 9, 2019 10:52:50 AM |

Yes. Thanks.

We need to the withdrawal of the conflicts and 2014 disclosures today. The last thing we need is an early opp filed, which means we can't withdraw.

Sent from my iPhone

> On Aug 9, 2019, at 10:45 AM, Kevin Coleman <kcoleman@nutihart.com> wrote:
>
> Hi Kavita- can I call you around 11:30am to discuss?
>
> —Kevin
>
> Sent from my iPhone
>
>> On Aug 8, 2019, at 6:47 PM, Kavita Gupta <kgupta@guptaferrer.com> wrote:
>>
>> I agree this is a tough issue. However, I think Colliers will go pens down on us with this agreement and we don't have time to recover.
>>
>> What about a provision that provides a joint commission for Colliers/Keen Summit if we have to go to an auction? That way, Colliers is motivated to get its full 1% but if we have to go to an auction, it will still participate in the auction process and get some commission. Perhaps 1.25% or 1.50%, which each firm getting half. Keen-Summit offered .75% but wants an advance of marketing costs (which we don't have funds to do) so it's no too far off. See attached. Per Joe, 1%-2% is the normal commission for transactions of this size. While I think highly of the Keen-Summit folks, their weakness is that they don't know the LV market, the players, and they are not on the ground to meet with people. Could we file the application under seal so no one sees our strategy? I think the judge would understand.
>>
>> Lets also discuss whether we can sell the DO APT separately since Shotgun doesn't want it.
>>
>> I'm around all day tomorrow.
>> Best,
>>
>> Kavita Gupta
>> GUPTA | FERRER LLP
>> 1300 Bristol Street North, Suite 100
>> Newport Beach, CA 92660
>> Tel: 949.387.4470
>> Fax: 949.258.9786
>> www.g<http://www.guptaferrer.com>uptaferrer.com<http://www.guptaferrer.com>
>> vCard<http://www.guptaferrer.com/guptaferrer/Gupta.vcf> Bio<http://www.linkedin.com/pub/kavita-gupta/28/329/27a/>
>>
>> Confidentiality Notice: The information contained in this electronic mail message and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please notify me by return e-mail immediately, and delete the original message and all copies from your system. Thank you.
>> IRS Circular 230 Disclosure: To ensure compliance with IRS's requirements, please be advised that any tax

advice contained in this communication (including any attachments) is not intended or written to be used or relied upon, and cannot be used or relied upon, for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.
>>
>> From: Kevin Coleman <kcoleman@nutihart.com>
>> Date: Thursday, August 8, 2019 at 6:30 PM
>> To: Kavita Gupta <kgupta@guptaferrer.com>
>> Subject: RE: Desert Land - Colliers Listing Agreement
>>
>> Hi Kavita,
>>
>> Attached is a revised listing agreement.  It grants you the right to terminate the exclusive listing on 7-days' notice, which is the only solution I could come up with that did not draw a lot of attention to the fact that we might have to go into auction mode.
>>
>> Candidly, I was not certain how to handle the commission if the property is sold to someone brought in by/through Colliers after the listing is terminated or expires.  Odds are we will have to pay an additional commission to Keen-Summit (or other broker) if we are forced into an auction process.
>>
>> Do you have time in the late morning tomorrow to discuss?
>>
>> Best regards,
>>
>> --Kevin
>>
>> From: Kavita Gupta [mailto:kgupta@guptaferrer.com]
>> Sent: Thursday, August 8, 2019 1:55 PM
>> To: Kevin Coleman <kcoleman@nutihart.com>
>> Subject: Desert Land - Colliers Listing Agreement
>>
>> Hi Kevin – the listing is expiring on 8/17; we need to discuss whether we are going to build in a contingency for hiring an auctioneer, if necessary.  Let me know your thoughts.  I'm in the office the rest of the week.  Best,
>>
>> Kavita Gupta
>> GUPTA | FERRER LLP
>> 1300 Bristol Street North, Suite 100
>> Newport Beach, CA  92660
>> Tel:  949.387.4470
>> Fax: 949.258.9786
>> www.g<http://www.guptaferrer.com>uptaferrer.com<http://www.guptaferrer.com>
>> vCard<http://www.guptaferrer.com/guptaferrer/Gupta.vcf>  Bio<http://www.linkedin.com/pub/kavita-gupta/28/329/27a/>
>>
>> Confidentiality Notice: The information contained in this electronic mail message and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged.  If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please notify me by return e-mail immediately, and delete the original message and all copies from your system. Thank you.
>> IRS Circular 230 Disclosure: To ensure compliance with IRS's requirements, please be advised that any tax advice contained in this communication (including any attachments) is not intended or written to be used or relied upon, and cannot be used or relied upon, for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.
>> <Trustee Kavita Gupta - Desert Land - Keen-Summit Capital Partners 6-28-2019[1].pdf>

N/H-017432

# EXHIBIT M

## Kevin Coleman

| | |
|---|---|
| **From:** | Kevin Coleman |
| **Sent:** | Monday, March 30, 2020 5:33 PM |
| **To:** | 'Candace Carlyon' |
| **Cc:** | Dawn Cica; Talitha Gray; Kim Fineman; Kavita Gupta; REECE, CATHY; AUSTIN, ANTHONY; Michael N. Feder; Nancy Rodriguez; Cristina Robertson |
| **Subject:** | RE: Desert Land *** Gaffin/Bulloch 2004 Exams |
| **Attachments:** | Gonzales41.5Dec2000.pdf; 2020-03-27 Shelton Decl. re Scheduled Intercompany Claim [Executed Copy].pdf |

Candace,

First, I hope that you son's test comes back negative and that otherwise he is better soon.

I would suggest that we start with a phone interview with you and Mr. Gaffin, which depending on what he says, might help us short cut this process.

Gina Swecker, the debtors' accountant/bookkeeper at the time, has signed a declaration stating that she erroneously recorded a $5M liability from Desert Oasis Apartments to Desert Land back in 2000, and as a result, the intercompany obligation shown on the debtors' books was overstated by $5M starting as of December 31, 2000. I attach a copy of that declaration (without exhibits, because they are too voluminous to email).

Ms. Swecker based her entries into the general ledger on a closing statement for the $41.5M loan obtained from Tom Gonzales in December 2000. Ms. Swecker (incorrectly) interpreted the closing statement to mean that Desert Land was the only borrower on the Gonzales loan, and $5M of the loan proceeds paid of an existing mortgage on the apartments property owed to Heller Financial. (In other words, she booked the $5M as owed by Desert Oasis Apartments to Desert Land because it appeared as if Desert Oasis Apartments borrowed the money from Desert Land, not Gonzales.) Now realizing that Desert Oasis Apartments borrowed the money from Gonzales – a fact that no one disputes – she admits that this $5M debt should have been reflected as a liability owed to Gonazles, not Desert Land.

Our assumption is that the schedules filed by Desert Oasis Apartments were prepared based on the debtor's accounting records which showed a $4.5M intercompany balance owing to Desert Land in 2018. However, as noted, the erroneous entry from 2000 showing that Desert Oasis Apartments owed Desert Land $5M based on the payoff of the Heller Financial loan overstated the account balance, and that error was carried on the books for years because no one caught it. The bottom line is that since the amount owing to Desert Land was overstated by $5M back in 2000, it appears to us that Desert Oasis Apartments did not owe Desert Land $4.5M by the time these bankruptcy cases were filed. If Mr. Gaffin agrees that the scheduled debt was based on an accounting error, the Desert Oasis Apartments schedule F should be amended to eliminate the purported liability to Desert Land.

In addition, the general ledger also indicates that $470,000 was paid to Eagle Mortgage in April 2003, and this is reflected on the GL as a credit against the intercompany claim balance owed to Desert Land. However, based on our review of the dockets in the 2002 bankruptcy cases, it appears that Desert Oasis Apartments was the borrower under that Eagle Mortgage loan, and so it appears likely that this $470K credit was erroneous as well.

Please let me know if you and Mr. Gaffin are willing to discuss the foregoing, and if so, if there is a time when we can speak tomorrow afternoon or Wednesday.

Best regards,

1

N/H-018865

--Kevin

---

**From:** Candace Carlyon [mailto:ccarlyon@carlyoncica.com]
**Sent:** Monday, March 30, 2020 2:51 PM
**To:** Kevin Coleman <kcoleman@nutihart.com>
**Cc:** Dawn Cica <Dcica@carlyoncica.com>; Talitha Gray <tgray@gtg.legal>; Kim Fineman <kfineman@nutihart.com>; Kavita Gupta <kgupta@guptaferrer.com>; REECE, CATHY <CREECE@fclaw.com>; AUSTIN, ANTHONY <AAUSTIN@fclaw.com>; Michael N. Feder <MFeder@dickinson-wright.com>; Nancy Rodriguez <nrodriguez@carlyoncica.com>; Cristina Robertson <crobertson@carlyoncica.com>
**Subject:** RE: Desert Land *** Gaffin/Bulloch 2004 Exams

Kevin/Talitha, please see attached in furtherance of the request to defer the deposition.

We have moved!
Candace Carlyon
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119
702.685.4444 (office)
702.577.3613 (direct)



---

**From:** Candace Carlyon
**Sent:** Monday, March 30, 2020 10:29 AM
**To:** Kevin Coleman <kcoleman@nutihart.com>
**Cc:** Dawn Cica <Dcica@carlyoncica.com>; Talitha Gray <tgray@gtg.legal>; Kim Fineman <kfineman@nutihart.com>; Kavita Gupta <kgupta@guptaferrer.com>; REECE, CATHY <CREECE@fclaw.com>; AUSTIN, ANTHONY <AAUSTIN@fclaw.com>; Michael N. Feder <MFeder@dickinson-wright.com>; Nancy Rodriguez <nrodriguez@carlyoncica.com>; Cristina Robertson <crobertson@carlyoncica.com>
**Subject:** RE: Desert Land *** Gaffin/Bulloch 2004 Exams

Kevin, my client wants me to be with him during his deposition. Given his age and the fact that I am awaiting test results for my quarantined son, let's put this off until an in person deposition is realistic, or proceed via written deposition questions.

We have moved!
Candace Carlyon
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119
702.685.4444 (office)
702.577.3613 (direct)



2

**From:** Kevin Coleman <kcoleman@nutihart.com>
**Sent:** Friday, March 27, 2020 4:28 PM
**To:** Candace Carlyon <ccarlyon@carlyoncica.com>
**Cc:** Dawn Cica <Dcica@carlyoncica.com>; Talitha Gray <tgray@gtg.legal>; Kim Fineman <kfineman@nutihart.com>; Kavita Gupta <kgupta@guptaferrer.com>; REECE, CATHY <CREECE@fclaw.com>; AUSTIN, ANTHONY <AAUSTIN@fclaw.com>; Michael N. Feder <MFeder@dickinson-wright.com>; Nancy Rodriguez <nrodriguez@carlyoncica.com>; Cristina Robertson <crobertson@carlyoncica.com>
**Subject:** Re: Desert Land *** Gaffin/Bulloch 2004 Exams

Candace,

If you want to be on the phone that's fine, you can listen I to the Zoom conference, but I want to be able to see Mr. Gaffin and make sure that if I am directing him to a place in an exhibit he is looking at the right thing.

Most laptops and tablets have cameras, which again is all you would need.

—Kevin

Sent from my iPhone

> On Mar 27, 2020, at 4:20 PM, Candace Carlyon <ccarlyon@carlyoncica.com> wrote:
>
> I don't have video or sound on my computer, we can do it telephonically.
>
>
> Candace Carlyon
> Carlyon Cica Chtd.
> 265 E. Warm Springs Suite 107
> Las Vegas, NV 89119
> 702.685.4444 (office)
> 702.577-3613 (direct)
> CarlyonCica.com
>
>
> **From:** Kevin Coleman <kcoleman@nutihart.com>
> **Sent:** Friday, March 27, 2020 3:52 PM
> **To:** Candace Carlyon <ccarlyon@carlyoncica.com>
> **Cc:** Dawn Cica <Dcica@carlyoncica.com>; Talitha Gray <tgray@gtg.legal>; Kim Fineman <kfineman@nutihart.com>; Kavita Gupta <kgupta@guptaferrer.com>; REECE, CATHY <CREECE@fclaw.com>; AUSTIN, ANTHONY <AAUSTIN@fclaw.com>; Michael N. Feder <MFeder@dickinson-wright.com>; Nancy Rodriguez <nrodriguez@carlyoncica.com>; Cristina Robertson <crobertson@carlyoncica.com>
> **Subject:** RE: Desert Land *** Gaffin/Bulloch 2004 Exams
>
> My understanding is that this is done through your computer or tablet.
>
> --Kevin

3

N/H-018867

**From:** Candace Carlyon [mailto:ccarlyon@carlyoncica.com]
**Sent:** Friday, March 27, 2020 3:49 PM
**To:** Kevin Coleman <kcoleman@nutihart.com>
**Cc:** Dawn Cica <Dcica@carlyoncica.com>; Talitha Gray <tgray@gtg.legal>; Kim Fineman <kfineman@nutihart.com>; Kavita Gupta <kgupta@guptaferrer.com>; REECE, CATHY <CREECE@fclaw.com>; AUSTIN, ANTHONY <AAUSTIN@fclaw.com>; Michael N. Feder <MFeder@dickinson-wright.com>; Nancy Rodriguez <nrodriguez@carlyoncica.com>; Cristina Robertson <crobertson@carlyoncica.com>
**Subject:** Re: Desert Land *** Gaffin/Bulloch 2004 Exams

We don't have video capability


Candace Carlyon
Carlyon Cica Chtd.
265 E. Warm Springs Suite 107
Las Vegas, NV 89119
702.685.4444 (office)
702.577-3613 (direct)
CarlyonCica.com



On Mar 27, 2020, at 3:48 PM, Kevin Coleman <kcoleman@nutihart.com> wrote:

OK/We'll make the Zoom video conference arrangements for Apr 2 at 1pm. I will send the exhibits ahead of time.

--Kevin

**From:** Candace Carlyon [mailto:ccarlyon@carlyoncica.com]
**Sent:** Thursday, March 26, 2020 8:33 AM
**To:** Kevin Coleman <kcoleman@nutihart.com>
**Cc:** Dawn Cica <Dcica@carlyoncica.com>; Talitha Gray <tgray@gtg.legal>; Kim Fineman <kfineman@nutihart.com>; Kavita Gupta <kgupta@guptaferrer.com>; REECE, CATHY <CREECE@fclaw.com>; AUSTIN, ANTHONY <AAUSTIN@fclaw.com>; Michael N. Feder <MFeder@dickinson-wright.com>; Nancy Rodriguez <nrodriguez@carlyoncica.com>; Cristina Robertson <crobertson@carlyoncica.com>
**Subject:** Re: Desert Land *** Gaffin/Bulloch 2004 Exams


April 2 works via telephone. Will you be sending the exhibits over beforehand?

Candace Carlyon
Carlyon Cica Chtd.
265 E. Warm Springs Suite 107
Las Vegas, NV 89119

4

N/H-018868

702.685.4444 (office)
702.577-3613 (direct)
CarlyonCica.com

On Mar 24, 2020, at 5:05 PM, Kevin Coleman
<kcoleman@nutihart.com> wrote:

Hi Candace,

Would you and Mr. Gaffin be available for his exam in the
afternoon on either Thursday April 2 or Tuesday
April7?  Although not my preference, looks like we'll do this by
video. If those dates don't work, please let me know a few around
there that do.

I am now thinking that depending on what Mr. Gaffin says, we
may not need to have an examination of Bruce Bulloch.

Best regards,

--Kevin

**From:** Candace Carlyon [mailto:ccarlyon@carlyoncica.com]
**Sent:** Thursday, March 19, 2020 8:34 AM
**To:** Kevin Coleman <kcoleman@nutihart.com>; Dawn Cica
<Dcica@carlyoncica.com>
**Cc:** Talitha Gray <tgray@Gtg.legal>; Kim Fineman
<kfineman@nutihart.com>; Kavita Gupta
<kgupta@guptaferrer.com>; REECE, CATHY
<CREECE@fclaw.com>; AUSTIN, ANTHONY
<AAUSTIN@fclaw.com>; Michael N. Feder
<MFeder@dickinson-wright.com>
**Subject:** RE: Desert Land *** Gaffin/Bulloch 2004 Exams

I am not available April 8, and the Nevada lockdown is scheduled
to run at least through April 17.  I am available the 15th and 16th,
and will check with Mr. Gaffin as to his availability.  I can also
reach out to Bruce Bulloch as a courtesy to you (although you are
welcome to contact him directly, I do not represent him).

We have moved!
Candace Carlyon
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119
702.685.4444 (office)
702.577.3613 (direct)
<image001.png>

5

N/H-018869

**From:** Kevin Coleman <kcoleman@nutihart.com>
**Sent:** Wednesday, March 18, 2020 4:36 PM
**To:** Candace Carlyon <ccarlyon@carlyoncica.com>; Dawn Cica
<Dcica@carlyoncica.com>
**Cc:** Talitha Gray <tgray@Gtg.legal>; Kim Fineman
<kfineman@nutihart.com>; Kavita Gupta
<kgupta@guptaferrer.com>; REECE, CATHY
<CREECE@fclaw.com>; AUSTIN, ANTHONY
<AAUSTIN@fclaw.com>; Michael N. Feder
<MFeder@dickinson-wright.com>
**Subject:** RE: Desert Land *** Gaffin/Bulloch 2004 Exams

Thanks Candace. It would be much less cumbersome to have the
examinations in person, so I would prefer to stick with the April 8
and 16 dates in hopes that we can do them that way. But if it's
clear we can't as we approach those dates, I will set them up
through Zoom. Are the 8th and 16th going to work on your end?

--Kevin

**From:** Candace Carlyon [mailto:ccarlyon@carlyoncica.com]
**Sent:** Wednesday, March 18, 2020 10:02 AM
**To:** Kevin Coleman <kcoleman@nutihart.com>; Dawn Cica
<Dcica@carlyoncica.com>
**Cc:** Talitha Gray <tgray@Gtg.legal>; Kim Fineman
<kfineman@nutihart.com>; Kavita Gupta
<kgupta@guptaferrer.com>; REECE, CATHY
<CREECE@fclaw.com>; AUSTIN, ANTHONY
<AAUSTIN@fclaw.com>; Michael N. Feder
<MFeder@dickinson-wright.com>
**Subject:** RE: Desert Land *** Gaffin/Bulloch 2004 Exams

Good morning. Hope you are all managing this crisis. If you want
to go forward with the depositions remotely next week that works
for us. I do not represent Bruce Bulloch (I represent his brother
Howard), but I understand that he would be available for a remote
link if that is available. I have not worked with "Zoom", but
would agree to any reasonable method which permits everyone to
be at their desks. Candace

We have moved!
Candace Carlyon
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119
702.685.4444 (office)
702.577.3613 (direct)
<image002.png>

6

**From:** Kevin Coleman <kcoleman@nutihart.com>
**Sent:** Tuesday, March 17, 2020 2:30 PM
**To:** Candace Carlyon <ccarlyon@carlyoncica.com>; Dawn Cica <Dcica@carlyoncica.com>
**Cc:** Talitha Gray <tgray@Gtg.legal>; Kim Fineman <kfineman@nutihart.com>; Kavita Gupta <kgupta@guptaferrer.com>; REECE, CATHY <CREECE@fclaw.com>; AUSTIN, ANTHONY <AAUSTIN@fclaw.com>; Michael N. Feder <MFeder@dickinson-wright.com>
**Subject:** Desert Land *** Gaffin/Bulloch 2004 Exams

Candace,

We will defer the Gaffin and Bulloch examinations currently scheduled for March 25 and 26. For Mr. Gaffin, I would request that we have Mr. Gaffin's on April 8 at 1pm, and Mr. Bulloch's on April 16 at 10:30am.

For now, I plan to do those in person in Las Vegas and Woodland Hills, CA, respectively. But if the coronavirus situation shows no signs of abating, I would do them by a Zoom teleconference. I would, however, need you to stipulate that the examinations can proceed in that manner.

If you are not available on Apr. 8 and 16, please let me know what earlier days are open.

Best regards,

--Kevin


Kevin W. Coleman
**Nuti Hart LLP**
411 30th Street, Suite 408
Oakland, CA 94609
Cell: 415 533-2920
Office: 510 506-7155
kcoleman@nutihart.com

<image003.png>

N/H-018871

First American Title Company of Nevada
3760 Pecos McLeod Interconnect, Suite 7 * Las Vegas, NV 89121-4253
(702) 731-4131

ESCROW NUMBER:  884232
PROPERTY: Vacant Land
         026 and 162-28-302-001

TODAY'S DATE: 12/06/2000
CLOSING DATE: 12/06/2000

BORROWERS:
    Desert Land LLC

### ESTIMATED BORROWER'S CLOSING STATEMENT

| DESCRIPTION | | DEBITS | CREDITS |
|---|---|---|---|
| Loan from | Tom Gonzales | | 41,500,000.00 |
| Funds previously received from Tom Gonzalez on 11/22/00 | | 500,000.00 | |
| 190-99218 | Gonzo Financial | 1,867,994.03 | |
| #99-133/Oasis Apartments | Heller Financial | 5,028,400.56 | |
| Pay off to New World, LLC | | 5,000,000.00 | |
| Origination Fee    2.000% | Tom Gonzales | 830,000.00 | |
| Origination fee    1.000% | Barry Fieldman | 415,000.00 | |
| Interest - 1 yr in advance | Tom Gonzales | 5,397,493.26 | |
| Sammie Armstrong    to | #889231 | 1,350,616.67 | |
| Interest from 11/22/2000 to 12/06/2000 @ $178.09000/day | | 2,493.26 | |
| To # 86015 Tivoli | | 5,219,472.00 | |
| To 833089 FLT Trust | | 15,852,120.22 | |
| Title Premium - Owners | First American Title Co/Nevada | 200.00 | |
| Alta Premium - Lenders | First American Title Co/Nevada | 16,340.00 | |
| County tax/stamps:    Deed $  6,750.00 Mtg $ | | 6,750.00 | |
| Recording fees: Deed$    Mtg$  250.00 Releases$ | | 250.00 | |
| Recon Tracking Fee | First American Title | 400.00 | |
| Overnight Del/Handling Fee | First American Title | 95.00 | |
| Inspection Fee | First American Title | 1,120.00 | |
| Fax/Phone Charges | First American Title | 105.00 | |
| Escrow Fee | First American Title Co/Nevada | 2,650.00 | |
| Held For Misc | | 500.00 | |
| Subtotals | | 41,500,000.00 | 41,500,000.00 |
| Balance Due From Borrower | | | |
| TOTALS | | 41,500,000.00 | 41,500,000.00 |

Borrower understands the Closing or Escrow Agent has assembled this information
representing the transaction from the best information available from other sources and
cannot guarantee the accuracy thereof. The Lender involved may be furnished a copy of this
Statement.

The undersigned hereby authorizes FIRST AMERICAN TITLE COMPANY to make expenditures and
disbursements as shown and approves same for payment. The undersigned also acknowleges
receipt of Loan Funds in the amount shown above and receipt of a copy of this Statement.

APPROVED AND ACCEPTED THIS  6th  Day of  December  , 20 00 .

First American Title Company of Nevada

By: Sharon G. Silverberg

Desert Land LLC

By: Howard Bulloch, Manager

SGS

N/H-018872

1  Kevin W. Coleman (CA SBN 168538)
   Christopher H. Hart (CA SBN 184117)
2  NUTI HART LLP
   411 30ᵀᴴ  Street, Suite 408
3  Oakland, CA 94609-3311
   Telephone: 510-506-7152
4  Email: kcoleman@nutihart.com
          chart@nutihart.com
5
   Talitha Gray Kozlowski (NV SBN 9040)
6  GARMAN TURNER GORDON LLP
   650 White Drive, Suite 100
7  Las Vegas, NV 89119
   Telephone: 725-777-3000
8  Email: tgray@gtg.legal
9
   Counsel for Kavita Gupta,
10 Chapter 11 Trustee
11
                    **UNITED STATES BANKRUPTCY COURT**
12
                          **DISTRICT OF NEVADA**
13
   In re:                           Case No.:  BK-S-18-12454-GS
14
   DESERT LAND, LLC                 Chapter 11
15
                Debtor.
16 In re:                           Case No.:  BK-S-18-12456-GS
17 DESERT OASIS APARTMENTS, LLC,    Chapter 11
18              Debtor.
19 In re:                           Case No.:  BK-S-18-12457-GS
20 DESERT OASIS INVESTMENTS, LLC,   Chapter 11
21              Debtor.            **DECLARATION OF GINA SHELTON
                                    RE INTERCOMPANY CLAIM**
22
23     I, Gina Shelton, declare as follows:

24     1.     I am a senior staff accountant and bookkeeper with Swecker, Moloney & Moir

25 CPA's ("SMM"), and have held this position continuously for approximately 30 years.  My

26 business address is 2451 S. Buffalo Drive Ste. 105, Las Vegas, Nevada 89117.  Except as

27 otherwise noted, all statements in this declaration are based on my own personal knowledge and

28 if called to testify on this matter, I could and would competently testify thereto.

NUTI HART LLP
411 30ᵀᴴ STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

N/H-018873

2.      From approximately 1996-97 through approximately 2010-2011, SMM provided bookkeeping and tax preparation services to Desert Land LLC ("DL") and Desert Oasis Apartments LLC ("DOA").  I was the person at SMM who was primarily responsible for inputting entries into the general ledgers maintained for DL and DOA and producing the other accounting documentation referenced below.  All of the accounting records discussed (excluding Exhibits B and C) herein were prepared by me or others working under my direction in the ordinary course of providing bookkeeping and tax preparation services to DL and DOA.

3.      With limited exceptions not relevant here, journal entries made in DL and DOA's general ledgers were based on source documentation such as checks and escrow statements provided to SMM by David Gaffin.  After SMM's bookkeeping and tax preparation services for a given period were completed, the source documentation would be returned to DL and DOA.

4.      Counsel for Kavita Gupta, Chapter 11 trustee for the DL and DOA bankruptcy estates served a subpoena on SMM for the production of documents relating to the origins and basis for an $4.5 million debt DOA stated that it owed to DL in the schedule of liabilities filed in this bankruptcy case.  SMM thereafter conducted a diligent search of its records, and to the best of its knowledge, produced all documents in SMM's possession, custody, and control sought in the subpoena.   The documents produced totaled 107 pages.  Attached hereto as **Exhibit A** is a true and correct copy of all of the documents produced in response to the Trustee's subpoena.

5.      A working trial balance I prepared for DOA for the period ending December 31, 2000 is included in Exhibit A [at bates page SW0004].  The December 31, 2000 working trial balance indicates that as of December 31, 1999, DOA was obligated on a note payable to Heller Financial in the amount of $5,000,000.00.  The amounts reflected as owing by DOA Heller Financial on the December 31, 2000 working trial balance was based on journal entries that I had previously made on DOA's general ledger.

6.      DOA's December 31, 2000 working trial balance [SW0004] further indicates that as of December 31, 2000:

a.      the amount owed by DOA to Heller Financial had been paid; and

b.      a note payable to DL by DOA had increased by $5,008,060.83.

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

2
SHELTON DECL. RE INTERCOMPANY CLAIM

N/H-018874

7.    DOA's payment to Heller Financial and the increased liability to DL referenced in paragraph 6 were also reflected in journal entries entered on DOA's general ledger.

8.    My hand written notation on the DOA December 31, 2000 working trial balance indicates that the $5,008,060.83 credit to the note payable to DL related to "DL escrow #684232."

9.    I made the general ledger entries and prepared DOA's December 31, 2000 working trial balance after reviewing an escrow closing statement provided to SMM by Mr. Gaffin.  Counsel for the Trustee has recently provided me with a copy of the Estimated Borrower's Closing Statement that is attached hereto as **Exhibit B**.  I am advised by the Trustee's counsel that Exhibit B was among documents produced by Mr. Gaffin in response to a subpoena served by the Trustee.

10.    To the best of my recollection, the closing statement I relied on at the time I made the journal entries and prepared DOA's December 31, 2000 working trial balance [SW0004] was either the same or substantially similar to the Estimated Borrower's Closing Statement attached hereto as Exhibit B.  (My understanding is that a final closing statement for an escrow can differ in some respects from an estimated closing statement.)

11.    DL is identified in Exhibit B as the borrower of the $41.5 million loaned by Tom Gonzales.  DOA is not identified as a borrower on the Gonzales loan.  Exhibit B also indicates that $5,028,400.56 of the Gonzales loan proceeds would be disbursed to Heller Financial, which as noted at that time held a $5 million loan secured by DOA's real property.

12.    I interpreted the closing statement I relied on when entering the Heller Financial mortgage refinance transactions into DOA's general ledger to mean that DL, but not DOA, borrowed the $41.5 million from Tom Gonzales.  I also interpreted the closing statement to mean that DOA borrowed the funds used to pay off the Heller Financial mortgage from DL.  It was for that reason that I reflected an amount owing by DOA to DL on the general ledger relating to the payoff of the Heller Financial mortgage.

13.    I recently have seen the petition, and schedules of assets and liabilities filed by DOA in its Chapter 11 bankruptcy case filed on May 31, 2002, Case No. 02-16204, which

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

3
SHELTON DECL. RE INTERCOMPANY CLAIM

N/H-018875

1   indicate that DOA at that time owed Tom Gonzales $41.5 million. A true and correct copy of

2   DOA's May 31, 2002 petition and schedules supplied to me by counsel for the Trustee are

3   attached hereto as **Exhibit C**. I have also reviewed other documentation provided by counsel for

4   the Trustee indicating that DOA was a co-borrower on the Gonzales loan.

5       14.   Had I known when I made the general ledger entries referenced in paragraphs 5

6   through 7 above that DOA had borrowed the $5,008,060.83 used to pay off the Heller Financial

7   mortgage from Tom Gonzales instead of DL, I would have reflected that liability as owing to

8   Tom Gonzales. I would not have made a journal entry indicating that DOA owed that amount to

9   DL.

10      15.   Accordingly, the amount reflected on DOA and DL's general ledgers and the

11  December 31, 2000 working trial balance as being owed by DOA to DL on December 31, 2000

12  was overstated by $5,008,060.83.

13      I declare under penalty of perjury of the laws of the United States and the State of

14  Nevada that the foregoing is true and correct, and that this Declaration is executed this 27TH day

15  of March 2020.

16

17                                    /s/ _Gina Shelton_

18                                        Gina Shelton

19

20

21

22

23

24

25

26

27

28

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

4

SHELTON DECL. RE INTERCOMPANY CLAIM

# EXHIBIT N

## Kevin Coleman

| | |
|---|---|
| **From:** | Candace Carlyon <ccarlyon@carlyoncica.com> |
| **Sent:** | Wednesday, April 1, 2020 11:35 AM |
| **To:** | Kevin Coleman |
| **Cc:** | Howard Bulloch; David Gaffin |
| **Subject:** | FW: Desert Land *** Gaffin/Bulloch 2004 Exams |
| **Attachments:** | Gonzales41.5Dec2000.pdf; 2020-03-27 Shelton Decl. re Scheduled Intercompany Claim [Executed Copy].pdf |

Kevin, we are available for a call early this afternoon or any time tomorrow to discuss the issues set forth in your email below.  Generally, my client doesn't have any objection to the corrections you suggest.

We have moved!
Candace Carlyon
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119
702.685.4444 (office)
702.577.3613 (direct)



---

**From:** Kevin Coleman <kcoleman@nutihart.com>
**Sent:** Monday, March 30, 2020 5:33 PM
**To:** Candace Carlyon <ccarlyon@carlyoncica.com>
**Cc:** Dawn Cica <Dcica@carlyoncica.com>; Talitha Gray <tgray@gtg.legal>; Kim Fineman <kfineman@nutihart.com>; Kavita Gupta <kgupta@guptaferrer.com>; REECE, CATHY <CREECE@fclaw.com>; AUSTIN, ANTHONY <AAUSTIN@fclaw.com>; Michael N. Feder <MFeder@dickinson-wright.com>; Nancy Rodriguez <nrodriguez@carlyoncica.com>; Cristina Robertson <crobertson@carlyoncica.com>
**Subject:** RE: Desert Land *** Gaffin/Bulloch 2004 Exams

Candace,

First, I hope that you son's test comes back negative and that otherwise he is better soon.

I would suggest that we start with a phone interview with you and Mr. Gaffin, which depending on what he says, might help us short cut this process.

Gina Swecker, the debtors' accountant/bookkeeper at the time, has signed a declaration stating that she erroneously recorded a $5M liability from Desert Oasis Apartments to Desert Land back in 2000, and as a result, the intercompany obligation shown on the debtors' books was overstated by $5M starting as of December 31, 2000.  I attach a copy of that declaration (without exhibits, because they are too voluminous to email).

Ms. Swecker based her entries into the general ledger on a closing statement for the $41.5M loan obtained from Tom Gonzales in December 2000.  Ms. Swecker (incorrectly) interpreted the closing statement to mean that Desert Land was the only borrower on the Gonzales loan, and $5M of the loan proceeds paid of an existing mortgage on the apartments

1

N/H-018885

property owed to Heller Financial. (In other words, she booked the $5M as owed by Desert Oasis Apartments to Desert Land because it appeared as if Desert Oasis Apartments borrowed the money from Desert Land, not Gonzales.) Now realizing that Desert Oasis Apartments borrowed the money from Gonzales – a fact that no one disputes – she admits that this $5M debt should have been reflected as a liability owed to Gonazles, not Desert Land.

Our assumption is that the schedules filed by Desert Oasis Apartments were prepared based on the debtor's accounting records which showed a $4.5M intercompany balance owing to Desert Land in 2018. However, as noted, the erroneous entry from 2000 showing that Desert Oasis Apartments owed Desert Land $5M based on the payoff of the Heller Financial loan overstated the account balance, and that error was carried on the books for years because no one caught it. The bottom line is that since the amount owing to Desert Land was overstated by $5M back in 2000, it appears to us that Desert Oasis Apartments did not owe Desert Land $4.5M by the time these bankruptcy cases were filed. If Mr. Gaffin agrees that the scheduled debt was based on an accounting error, the Desert Oasis Apartments schedule F should be amended to eliminate the purported liability to Desert Land.

In addition, the general ledger also indicates that $470,000 was paid to Eagle Mortgage in April 2003, and this is reflected on the GL as a credit against the intercompany claim balance owed to Desert Land. However, based on our review of the dockets in the 2002 bankruptcy cases, it appears that Desert Oasis Apartments was the borrower under that Eagle Mortgage loan, and so it appears likely that this $470K credit was erroneous as well.

Please let me know if you and Mr. Gaffin are willing to discuss the foregoing, and if so, if there is a time when we can speak tomorrow afternoon or Wednesday.

Best regards,

--Kevin

---

**From:** Candace Carlyon [mailto:ccarlyon@carlyoncica.com]
**Sent:** Monday, March 30, 2020 2:51 PM
**To:** Kevin Coleman <kcoleman@nutihart.com>
**Cc:** Dawn Cica <Dcica@carlyoncica.com>; Talitha Gray <tgray@gtg.legal>; Kim Fineman <kfineman@nutihart.com>; Kavita Gupta <kgupta@guptaferrer.com>; REECE, CATHY <CREECE@fclaw.com>; AUSTIN, ANTHONY <AAUSTIN@fclaw.com>; Michael N. Feder <MFeder@dickinson-wright.com>; Nancy Rodriguez <nrodriguez@carlyoncica.com>; Cristina Robertson <crobertson@carlyoncica.com>
**Subject:** RE: Desert Land *** Gaffin/Bulloch 2004 Exams

Kevin/Talitha, please see attached in furtherance of the request to defer the deposition.

We have moved!
Candace Carlyon
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119
702.685.4444 (office)
702.577.3613 (direct)

---

**From:** Candace Carlyon
**Sent:** Monday, March 30, 2020 10:29 AM

N/H-018886

**To:** Kevin Coleman <kcoleman@nutihart.com>
**Cc:** Dawn Cica <Dcica@carlyoncica.com>; Talitha Gray <tgray@gtg.legal>; Kim Fineman <kfineman@nutihart.com>; Kavita Gupta <kgupta@guptaferrer.com>; REECE, CATHY <CREECE@fclaw.com>; AUSTIN, ANTHONY <AAUSTIN@fclaw.com>; Michael N. Feder <MFeder@dickinson-wright.com>; Nancy Rodriguez <nrodriguez@carlyoncica.com>; Cristina Robertson <crobertson@carlyoncica.com>
**Subject:** RE: Desert Land *** Gaffin/Bulloch 2004 Exams

Kevin, my client wants me to be with him during his deposition. Given his age and the fact that I am awaiting test results for my quarantined son, let's put this off until an in person deposition is realistic, or proceed via written deposition questions.

We have moved!
Candace Carlyon
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119
702.685.4444 (office)
702.577.3613 (direct)

**From:** Kevin Coleman <kcoleman@nutihart.com>
**Sent:** Friday, March 27, 2020 4:28 PM
**To:** Candace Carlyon <ccarlyon@carlyoncica.com>
**Cc:** Dawn Cica <Dcica@carlyoncica.com>; Talitha Gray <tgray@gtg.legal>; Kim Fineman <kfineman@nutihart.com>; Kavita Gupta <kgupta@guptaferrer.com>; REECE, CATHY <CREECE@fclaw.com>; AUSTIN, ANTHONY <AAUSTIN@fclaw.com>; Michael N. Feder <MFeder@dickinson-wright.com>; Nancy Rodriguez <nrodriguez@carlyoncica.com>; Cristina Robertson <crobertson@carlyoncica.com>
**Subject:** Re: Desert Land *** Gaffin/Bulloch 2004 Exams

Candace,

If you want to be on the phone that's fine, you can listen I to the Zoom conference, but I want to be able to see Mr. Gaffin and make sure that if I am directing him to a place in an exhibit he is looking at the right thing.

Most laptops and tablets have cameras, which again is all you would need.

—Kevin

Sent from my iPhone

> On Mar 27, 2020, at 4:20 PM, Candace Carlyon <ccarlyon@carlyoncica.com> wrote:
>
> I don't have video or sound on my computer, we can do it telephonically.
>
> Candace Carlyon
> Carlyon Cica Chtd.
> 265 E. Warm Springs Suite 107

3

N/H-018887

Las Vegas, NV 89119
702.685.4444 (office)
702.577-3613 (direct)
CarlyonCica.com

---

**From:** Kevin Coleman <kcoleman@nutihart.com>
**Sent:** Friday, March 27, 2020 3:52 PM
**To:** Candace Carlyon <ccarlyon@carlyoncica.com>
**Cc:** Dawn Cica <Dcica@carlyoncica.com>; Talitha Gray <tgray@gtg.legal>; Kim Fineman
<kfineman@nutihart.com>; Kavita Gupta <kgupta@guptaferrer.com>; REECE, CATHY
<CREECE@fclaw.com>; AUSTIN, ANTHONY <AAUSTIN@fclaw.com>; Michael N. Feder
<MFeder@dickinson-wright.com>; Nancy Rodriguez <nrodriguez@carlyoncica.com>; Cristina Robertson
<crobertson@carlyoncica.com>
**Subject:** RE: Desert Land *** Gaffin/Bulloch 2004 Exams

My understanding is that this is done through your computer or tablet.

--Kevin

---

**From:** Candace Carlyon [mailto:ccarlyon@carlyoncica.com]
**Sent:** Friday, March 27, 2020 3:49 PM
**To:** Kevin Coleman <kcoleman@nutihart.com>
**Cc:** Dawn Cica <Dcica@carlyoncica.com>; Talitha Gray <tgray@gtg.legal>; Kim Fineman
<kfineman@nutihart.com>; Kavita Gupta <kgupta@guptaferrer.com>; REECE, CATHY
<CREECE@fclaw.com>; AUSTIN, ANTHONY <AAUSTIN@fclaw.com>; Michael N. Feder
<MFeder@dickinson-wright.com>; Nancy Rodriguez <nrodriguez@carlyoncica.com>; Cristina
Robertson <crobertson@carlyoncica.com>
**Subject:** Re: Desert Land *** Gaffin/Bulloch 2004 Exams

We don't have video capability

Candace Carlyon
Carlyon Cica Chtd.
265 E. Warm Springs Suite 107
Las Vegas, NV 89119
702.685.4444 (office)
702.577-3613 (direct)
CarlyonCica.com

On Mar 27, 2020, at 3:48 PM, Kevin Coleman <kcoleman@nutihart.com> wrote:

OK/We'll make the Zoom video conference arrangements for Apr 2 at 1pm.  I
will send the exhibits ahead of time.

--Kevin

4

N/H-018888

**From:** Candace Carlyon [mailto:ccarlyon@carlyoncica.com]
**Sent:** Thursday, March 26, 2020 8:33 AM
**To:** Kevin Coleman <kcoleman@nutihart.com>
**Cc:** Dawn Cica <Dcica@carlyoncica.com>; Talitha Gray <tgray@gtg.legal>;
Kim Fineman <kfineman@nutihart.com>; Kavita Gupta
<kgupta@guptaferrer.com>; REECE, CATHY <CREECE@fclaw.com>;
AUSTIN, ANTHONY <AAUSTIN@fclaw.com>; Michael N. Feder
<MFeder@dickinson-wright.com>; Nancy Rodriguez
<nrodriguez@carlyoncica.com>; Cristina Robertson
<crobertson@carlyoncica.com>
**Subject:** Re: Desert Land *** Gaffin/Bulloch 2004 Exams

April 2 works via telephone. Will you be sending the exhibits over beforehand?

Candace Carlyon
Carlyon Cica Chtd.
265 E. Warm Springs Suite 107
Las Vegas, NV 89119
702.685.4444 (office)
702.577-3613 (direct)
CarlyonCica.com

> On Mar 24, 2020, at 5:05 PM, Kevin Coleman
> <kcoleman@nutihart.com> wrote:
>
> Hi Candace,
>
> Would you and Mr. Gaffin be available for his exam in the
> afternoon on either Thursday April 2 or Tuesday
> April7?  Although not my preference, looks like we'll do this by
> video. If those dates don't work, please let me know a few around
> there that do.
>
> I am now thinking that depending on what Mr. Gaffin says, we
> may not need to have an examination of Bruce Bulloch.
>
> Best regards,
>
> --Kevin
>
> **From:** Candace Carlyon [mailto:ccarlyon@carlyoncica.com]
> **Sent:** Thursday, March 19, 2020 8:34 AM
> **To:** Kevin Coleman <kcoleman@nutihart.com>; Dawn Cica
> <Dcica@carlyoncica.com>
> **Cc:** Talitha Gray <tgray@Gtg.legal>; Kim Fineman

5

<kfineman@nutihart.com>; Kavita Gupta
<kgupta@guptaferrer.com>; REECE, CATHY
<CREECE@fclaw.com>; AUSTIN, ANTHONY
<AAUSTIN@fclaw.com>; Michael N. Feder
<MFeder@dickinson-wright.com>
**Subject:** RE: Desert Land *** Gaffin/Bulloch 2004 Exams

I am not available April 8, and the Nevada lockdown is scheduled to run at least through April 17. I am available the 15th and 16th, and will check with Mr. Gaffin as to his availability. I can also reach out to Bruce Bulloch as a courtesy to you (although you are welcome to contact him directly, I do not represent him).

We have moved!
Candace Carlyon
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119
702.685.4444 (office)
702.577.3613 (direct)
<image001.png>

**From:** Kevin Coleman <kcoleman@nutihart.com>
**Sent:** Wednesday, March 18, 2020 4:36 PM
**To:** Candace Carlyon <ccarlyon@carlyoncica.com>; Dawn Cica <Dcica@carlyoncica.com>
**Cc:** Talitha Gray <tgray@Gtg.legal>; Kim Fineman <kfineman@nutihart.com>; Kavita Gupta <kgupta@guptaferrer.com>; REECE, CATHY <CREECE@fclaw.com>; AUSTIN, ANTHONY <AAUSTIN@fclaw.com>; Michael N. Feder <MFeder@dickinson-wright.com>
**Subject:** RE: Desert Land *** Gaffin/Bulloch 2004 Exams

Thanks Candace. It would be much less cumbersome to have the examinations in person, so I would prefer to stick with the April 8 and 16 dates in hopes that we can do them that way. But if it's clear we can't as we approach those dates, I will set them up through Zoom. Are the 8th and 16th going to work on your end?

--Kevin

**From:** Candace Carlyon [mailto:ccarlyon@carlyoncica.com]
**Sent:** Wednesday, March 18, 2020 10:02 AM
**To:** Kevin Coleman <kcoleman@nutihart.com>; Dawn Cica <Dcica@carlyoncica.com>
**Cc:** Talitha Gray <tgray@Gtg.legal>; Kim Fineman <kfineman@nutihart.com>; Kavita Gupta <kgupta@guptaferrer.com>; REECE, CATHY <CREECE@fclaw.com>; AUSTIN, ANTHONY <AAUSTIN@fclaw.com>; Michael N. Feder

6

<MFeder@dickinson-wright.com>
**Subject:** RE: Desert Land *** Gaffin/Bulloch 2004 Exams

Good morning. Hope you are all managing this crisis. If you want to go forward with the depositions remotely next week that works for us. I do not represent Bruce Bulloch (I represent his brother Howard), but I understand that he would be available for a remote link if that is available. I have not worked with "Zoom", but would agree to any reasonable method which permits everyone to be at their desks. Candace

We have moved!
Candace Carlyon
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119
702.685.4444 (office)
702.577.3613 (direct)
<image002.png>

**From:** Kevin Coleman <kcoleman@nutihart.com>
**Sent:** Tuesday, March 17, 2020 2:30 PM
**To:** Candace Carlyon <ccarlyon@carlyoncica.com>; Dawn Cica <Dcica@carlyoncica.com>
**Cc:** Talitha Gray <tgray@Gtg.legal>; Kim Fineman <kfineman@nutihart.com>; Kavita Gupta <kgupta@guptaferrer.com>; REECE, CATHY <CREECE@fclaw.com>; AUSTIN, ANTHONY <AAUSTIN@fclaw.com>; Michael N. Feder <MFeder@dickinson-wright.com>
**Subject:** Desert Land *** Gaffin/Bulloch 2004 Exams

Candace,

We will defer the Gaffin and Bulloch examinations currently scheduled for March 25 and 26. For Mr. Gaffin, I would request that we have Mr. Gaffin's on April 8 at 1pm, and Mr. Bulloch's on April 16 at 10:30am.

For now, I plan to do those in person in Las Vegas and Woodland Hills, CA, respectively. But if the coronavirus situation shows no signs of abating, I would do them by a Zoom teleconference. I would, however, need you to stipulate that the examinations can proceed in that manner.

If you are not available on Apr. 8 and 16, please let me know what earlier days are open.

Best regards,

--Kevin

N/H-018891

Kevin W. Coleman
**Nuti Hart LLP**
411 30th Street, Suite 408
Oakland, CA 94609
Cell: 415 533-2920
Office: 510 506-7155
kcoleman@nutihart.com

<image003.png>

8

N/H-018892

First American Title Company of Nevada
3760 Pecos McLeod Interconnect, Suite 7 * Las Vegas, NV 89121-4253
(702) 731-4131

ESCROW NUMBER: 884232
PROPERTY: Vacant Land
      026 and 162-28-302-001

TODAY'S DATE: 12/06/2000
CLOSING DATE: 12/06/2000

BORROWERS:
    Desert Land LLC

### ESTIMATED BORROWER'S CLOSING STATEMENT

| DESCRIPTION | | DEBITS | CREDITS |
|---|---|---|---|
| Loan from | Tom Gonzales | | 41,500,000.00 |
| Funds previously received from Tom Gonzalez on 11/22/00 | | 500,000.00 | |
| 190-99218 | Gonzo Financial | 1,867,994.03 | |
| #99-133/Oasis Apartments | Heller Financial | 5,028,400.56 | |
| Pay off to New World, LLC | | 5,000,000.00 | |
| Origination Fee    2.000% | Tom Gonzales | 830,000.00 | |
| Origination fee    1.000% | Barry Fieldman | 415,000.00 | |
| Interest - 1 yr in advance | Tom Gonzales | 5,397,493.26 | |
| Sammie Armstrong    to | #889231 | 1,350,616.67 | |
| Interest from 11/22/2000 to 12/06/2000 @ $178.09000/day | | 2,493.26 | |
| To # 86015 Tivoli | | 5,219,472.00 | |
| To 833089 FLT Trust | | 15,852,120.22 | |
| Title Premium - Owners | First American Title Co/Nevada | 200.00 | |
| Alta Premium - Lenders | First American Title Co/Nevada | 16,340.00 | |
| County tax/stamps:    Deed $  6,750.00 Mtg $ | | 6,750.00 | |
| Recording fees: Deed$    Mtg$  250.00 Releases$ | | 250.00 | |
| Recon Tracking Fee | First American Title | 400.00 | |
| Overnight Del/Handling Fee | First American Title | 95.00 | |
| Inspection Fee | First American Title | 1,120.00 | |
| Fax/Phone Charges | First American Title | 105.00 | |
| Escrow Fee | First American Title Co/Nevada | 2,650.00 | |
| Held For Misc | | 500.00 | |
| Subtotals | | 41,500,000.00 | 41,500,000.00 |
| Balance Due From Borrower | | | |
| TOTALS | | 41,500,000.00 | 41,500,000.00 |

Borrower understands the Closing or Escrow Agent has assembled this information representing the transaction from the best information available from other sources and cannot guarantee the accuracy thereof. The Lender involved may be furnished a copy of this Statement.

The undersigned hereby authorizes FIRST AMERICAN TITLE COMPANY to make expenditures and disbursements as shown and approves same for payment. The undersigned also acknowleges receipt of Loan Funds in the amount shown above and receipt of a copy of this Statement.

APPROVED AND ACCEPTED THIS 6th Day of December, 2000.

First American Title Company of Nevada

By: Sharon G. Silverberg

Desert Land LLC

By: Howard Bulloch, Manager

SGS

N/H-018893

1  Kevin W. Coleman (CA SBN 168538)
   Christopher H. Hart (CA SBN 184117)
2  NUTI HART LLP
   411 30TH Street, Suite 408
3  Oakland, CA 94609-3311
   Telephone: 510-506-7152
4  Email: kcoleman@nutihart.com
          chart@nutihart.com
5
6  Talitha Gray Kozlowski (NV SBN 9040)
   GARMAN TURNER GORDON LLP
7  650 White Drive, Suite 100
   Las Vegas, NV 89119
8  Telephone: 725-777-3000
   Email: tgray@gtg.legal
9
10 Counsel for Kavita Gupta,
   Chapter 11 Trustee

11                  **UNITED STATES BANKRUPTCY COURT**
12                         **DISTRICT OF NEVADA**

13 In re:                                   Case No.:  BK-S-18-12454-GS
14 DESERT LAND, LLC                         Chapter 11
15              Debtor.
16 In re:                                   Case No.:  BK-S-18-12456-GS
17 DESERT OASIS APARTMENTS, LLC,            Chapter 11
18              Debtor.
19 In re:                                   Case No.:  BK-S-18-12457-GS
20 DESERT OASIS INVESTMENTS, LLC,           Chapter 11
21              Debtor.                     **DECLARATION OF GINA SHELTON
                                            RE INTERCOMPANY CLAIM**
22

23     I, Gina Shelton, declare as follows:

24     1.    I am a senior staff accountant and bookkeeper with Swecker, Moloney & Moir

25 CPA's ("SMM"), and have held this position continuously for approximately 30 years.  My

26 business address is 2451 S. Buffalo Drive Ste. 105, Las Vegas, Nevada 89117.  Except as

27 otherwise noted, all statements in this declaration are based on my own personal knowledge and

28 if called to testify on this matter, I could and would competently testify thereto.

NUTI HART LLP
411 30™ STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

N/H-018894

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

2.      From approximately 1996-97 through approximately 2010-2011, SMM provided bookkeeping and tax preparation services to Desert Land LLC ("DL") and Desert Oasis Apartments LLC ("DOA").  I was the person at SMM who was primarily responsible for inputting entries into the general ledgers maintained for DL and DOA and producing the other accounting documentation referenced below.  All of the accounting records discussed (excluding Exhibits B and C) herein were prepared by me or others working under my direction in the ordinary course of providing bookkeeping and tax preparation services to DL and DOA.

3.      With limited exceptions not relevant here, journal entries made in DL and DOA's general ledgers were based on source documentation such as checks and escrow statements provided to SMM by David Gaffin.  After SMM's bookkeeping and tax preparation services for a given period were completed, the source documentation would be returned to DL and DOA.

4.      Counsel for Kavita Gupta, Chapter 11 trustee for the DL and DOA bankruptcy estates served a subpoena on SMM for the production of documents relating to the origins and basis for an $4.5 million debt DOA stated that it owed to DL in the schedule of liabilities filed in this bankruptcy case.  SMM thereafter conducted a diligent search of its records, and to the best of its knowledge, produced all documents in SMM's possession, custody, and control sought in the subpoena.   The documents produced totaled 107 pages.  Attached hereto as **Exhibit A** is a true and correct copy of all of the documents produced in response to the Trustee's subpoena.

5.      A working trial balance I prepared for DOA for the period ending December 31, 2000 is included in Exhibit A [at bates page SW0004].  The December 31, 2000 working trial balance indicates that as of December 31, 1999, DOA was obligated on a note payable to Heller Financial in the amount of $5,000,000.00.  The amounts reflected as owing by DOA Heller Financial on the December 31, 2000 working trial balance was based on journal entries that I had previously made on DOA's general ledger.

6.      DOA's December 31, 2000 working trial balance [SW0004] further indicates that as of December 31, 2000:

a.      the amount owed by DOA to Heller Financial had been paid; and

b.      a note payable to DL by DOA had increased by $5,008,060.83.

2

SHELTON DECL. RE INTERCOMPANY CLAIM

N/H-018895

7.      DOA's payment to Heller Financial and the increased liability to DL referenced in paragraph 6 were also reflected in journal entries entered on DOA's general ledger.

8.      My hand written notation on the DOA December 31, 2000 working trial balance indicates that the $5,008,060.83 credit to the note payable to DL related to "DL escrow #684232."

9.      I made the general ledger entries and prepared DOA's December 31, 2000 working trial balance after reviewing an escrow closing statement provided to SMM by Mr. Gaffin.  Counsel for the Trustee has recently provided me with a copy of the Estimated Borrower's Closing Statement that is attached hereto as **Exhibit B**.  I am advised by the Trustee's counsel that Exhibit B was among documents produced by Mr. Gaffin in response to a subpoena served by the Trustee.

10.     To the best of my recollection, the closing statement I relied on at the time I made the journal entries and prepared DOA's December 31, 2000 working trial balance [SW0004] was either the same or substantially similar to the Estimated Borrower's Closing Statement attached hereto as Exhibit B.  (My understanding is that a final closing statement for an escrow can differ in some respects from an estimated closing statement.)

11.     DL is identified in Exhibit B as the borrower of the $41.5 million loaned by Tom Gonzales.  DOA is not identified as a borrower on the Gonzales loan.  Exhibit B also indicates that $5,028,400.56 of the Gonzales loan proceeds would be disbursed to Heller Financial, which as noted at that time held a $5 million loan secured by DOA's real property.

12.     I interpreted the closing statement I relied on when entering the Heller Financial mortgage refinance transactions into DOA's general ledger to mean that DL, but not DOA, borrowed the $41.5 million from Tom Gonzales.  I also interpreted the closing statement to mean that DOA borrowed the funds used to pay off the Heller Financial mortgage from DL.  It was for that reason that I reflected an amount owing by DOA to DL on the general ledger relating to the payoff of the Heller Financial mortgage.

13.     I recently have seen the petition, and schedules of assets and liabilities filed by DOA in its Chapter 11 bankruptcy case filed on May 31, 2002, Case No. 02-16204, which

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

N/H-018896

1  indicate that DOA at that time owed Tom Gonzales $41.5 million.  A true and correct copy of

2  DOA's May 31, 2002 petition and schedules supplied to me by counsel for the Trustee are

3  attached hereto as **Exhibit C**.  I have also reviewed other documentation provided by counsel for

4  the Trustee indicating that DOA was a co-borrower on the Gonzales loan.

5        14.     Had I known when I made the general ledger entries referenced in paragraphs 5

6  through 7 above that DOA had borrowed the $5,008,060.83 used to pay off the Heller Financial

7  mortgage from Tom Gonzales instead of DL, I would have reflected that liability as owing to

8  Tom Gonzales.  I would not have made a journal entry indicating that DOA owed that amount to

9  DL.

10        15.     Accordingly, the amount reflected on DOA and DL's general ledgers and the

11  December 31, 2000 working trial balance as being owed by DOA to DL on December 31, 2000

12  was overstated by $5,008,060.83.

13        I declare under penalty of perjury of the laws of the United States and the State of

14  Nevada that the foregoing is true and correct, and that this Declaration is executed this 27ᵗʰ day

15  of March 2020.

16

17  /s/  _Gina Shelton_

18            Gina Shelton

19

20

21

22

23

24

25

26

27

28

NUTI HART LLP
411 30ᵀᴴ STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

4

SHELTON DECL. RE INTERCOMPANY CLAIM

N/H-018897

# EXHIBIT O

## Kevin Coleman

| | |
|---|---|
| **From:** | Kevin Coleman |
| **Sent:** | Wednesday, March 25, 2020 4:07 PM |
| **To:** | 'Gina Shelton' |
| **Cc:** | Ben Howard; Kevin Meacham; Kavita Gupta; Talitha Gray; wswecker@aol.com |
| **Subject:** | RE: Desert Land - Interview |
| **Attachments:** | 2020-03-23 Shelton Decl. re Scheduled Intercompany Claim.docx |

Hi Gina,

Attached is a draft of the declaration for you that I prepared based on our conversation.  Please take a look and let me know if there is anything you would like to correct, change, or add.

Best regards,

--Kevin

**From:** Gina Shelton [mailto:gina@smmcpas.com]
**Sent:** Monday, March 23, 2020 10:28 AM
**To:** Kevin Coleman <kcoleman@nutihart.com>
**Cc:** Ben Howard <bhoward@gtllp.com>; Kevin Meacham <kmeacham@gtllp.com>; Kavita Gupta
<kgupta@guptaferrer.com>; Talitha Gray <tgray@Gtg.legal>; wswecker@aol.com
**Subject:** RE: Desert Land - Interview

Kevin,

Based on the information presented to me within the last few weeks, we agree that the loan payable was to Tom
Gonzales.
Gina


### We have moved our office down the hall to Suite 105 (same building)!!

**Gina Shelton**
**Staff Accountant**
**Swecker, Moloney & Moir CPA's**
**2451 S. Buffalo Drive Ste. 105**
**Las Vegas, Nevada 89117**
**Gina@smmcpas.com**
**702.877.9351 office | 702.877 2731 fax**

CONFIDENTIALITY NOTICE: This e-mail message and its attachments are intended solely for the addressed recipient and may contain legally privileged and confidential information. Any unauthorized use, disclosure or duplication is prohibited. If you are not the addressed recipient, or you've received this e-mail message in error, please notify the sender.

**From:** Kevin Coleman <kcoleman@nutihart.com>
**Sent:** Monday, March 23, 2020 10:11 AM

1

**To:** Gina Shelton <gina@smmcpas.com>
**Cc:** Ben Howard <bhoward@gtllp.com>; Kevin Meacham <kmeacham@gtllp.com>; Kavita Gupta <kgupta@guptaferrer.com>; Talitha Gray <tgray@Gtg.legal>; wswecker@aol.com
**Subject:** RE: Desert Land - Interview

Thank you Gina. Yes, I understand that you input the information on the general ledger based on the documents that were provided to you and that at the time it appeared entirely proper to do so. But knowing now that Desert Oasis Apartments borrowed the $5M from Tom Gonzales and not Desert Land, do you agree that this item should not have been entered on the general ledger as an amount "due to" Desert Land?

Best regards,

--Kevin


**From:** Gina Shelton [mailto:gina@smmcpas.com]
**Sent:** Monday, March 23, 2020 7:11 AM
**To:** Kevin Coleman <kcoleman@nutihart.com>
**Cc:** Ben Howard <bhoward@gtllp.com>; Kevin Meacham <kmeacham@gtllp.com>; Kavita Gupta <kgupta@guptaferrer.com>; Talitha Gray <tgray@Gtg.legal>; wswecker@aol.com
**Subject:** RE: Desert Land - Interview

Hi Kevin,

Larry Swecker and I have reviewed the documents and this email and discussed my phone interview at great length. We are in agreement that we recorded the transactions in accordance with the documents provided to us by the client.

Gina


**We have moved our office down the hall to Suite 105 (same building)!!**

**Gina Shelton**
**Staff Accountant**
**Swecker, Moloney & Moir CPA's**
**2451 S. Buffalo Drive Ste. 105**
**Las Vegas, Nevada 89117**
**Gina@smmcpas.com**
**702.877.9351 office | 702.877 2731 fax**

CONFIDENTIALITY NOTICE: This e-mail message and its attachments are intended solely for the addressed recipient and may contain legally privileged and confidential information. Any unauthorized use, disclosure or duplication is prohibited. If you are not the addressed recipient, or you've received this e-mail message in error, please notify the sender.

**From:** Kevin Coleman <kcoleman@nutihart.com>
**Sent:** Friday, March 20, 2020 3:13 PM
**To:** Gina Shelton <gina@smmcpas.com>
**Cc:** Ben Howard <bhoward@gtllp.com>; Kevin Meacham <kmeacham@gtllp.com>; Kavita Gupta

N/H-018616

<kgupta@guptaferrer.com>; Talitha Gray <tgray@Gtg.legal>
**Subject:** RE: Desert Land - Interview

Hi Gina,

Hope you are managing OK in the midst of this coronavirus craziness. (At least tax day has been pushed to July!)

As I recall when we spoke last week, you speculated that you might have booked the $5,028,400.56 amount as "due to" Desert Land from Desert Oasis Apartments if the closing statement for the Gonzales loan reflected Desert Land as the only borrower and $5,028,400.56 as going to pay off the existing mortgage on the Desert Oasis Apartments property.

Attached is the closing statement for the Gonzales loan escrow we obtained from David Gaffin, which shows exactly that.

If I also recall correctly, you indicated that had you known at the time that Desert Oasis Apartments was in fact a borrower on the Gonzales loan, it would have been an error to record the item as due to Desert Land. (The loan came from Tom Gonzales, not Desert Land- something the escrow statement did not make clear.) I previously sent you the Petition and Schedules of Assets/Liabilities Desert Oasis Apartments filed in its 2002 bankruptcy case, which are also attached here. As we discussed last week, on p. 11 of 19, Desert Oasis Apartments stated that it owed Tom Gonzales $41.5M. No one disputes that Desert Oasis Apartments and Desert Land jointly borrowed the $41.5M from Mr. Gonzales. This fact is also is confirmed by information obtained from the Clark County Recorder, which indicates that Gonzales recorded a deed of trust against the Desert Oasis Apartments property on December 15, 2000, followed shortly thereafter by a re-conveyance of the Heller Financial mortgage.

The above, in my view, establish that Desert Oasis Apartments borrowed the funds used to pay the Heller Financial mortgage from Mr. Gonzales, not Desert Land. But please take a look at these documents and let me know if you concur that it was a mistake to reflect on the general ledger that Desert Oasis Apartments had an amount due to Desert Land of $5,028,400.56 back in 2000. If you agree, I would ask you to sign a declaration so stating, which of course would explain why it appears the error was made. If you think you need to review anything else in order to come to a conclusion, let me know and I will try to track it down.

Best regards,

--Kevin

**From:** Gina Shelton [mailto:gina@smmcpas.com]
**Sent:** Friday, March 13, 2020 12:05 PM
**To:** Kevin Coleman <kcoleman@nutihart.com>
**Subject:** RE: Desert Land - Interview

Thank you!!
Gina


**We have moved our office down the hall to Suite 105 (same building)!!**

**Gina Shelton**
**Staff Accountant**
**Swecker, Moloney & Moir CPA's**
**2451 S. Buffalo Drive Ste. 105**
**Las Vegas, Nevada 89117**

N/H-018617

**Gina@smmcpas.com**
**702.877.9351 office | 702.877 2731 fax**

CONFIDENTIALITY NOTICE: This e-mail message and its attachments are intended solely for the addressed recipient and may contain legally privileged and confidential information. Any unauthorized use, disclosure or duplication is prohibited. If you are not the addressed recipient, or you've received this e-mail message in error, please notify the sender.

**From:** Kevin Coleman <kcoleman@nutihart.com>
**Sent:** Friday, March 13, 2020 11:51 AM
**To:** Gina Shelton <gina@smmcpas.com>
**Cc:** Talitha Gray <tgray@Gtg.legal>; Vicki DiMaio <vdimaio@Gtg.legal>
**Subject:** Desert Land - Interview

Hi Gina,

I am co-counsel with Talitha Gray in the Desert Land cases. Attached are copies of the documents you provided to Talitha in response to the document subpoena, marked at the bottom with a bates stamp. I'm also attaching copies of the bankruptcy petition and schedules of assets/liabilities filed by Desert Land and Desert Oasis Apartments when they were in Chapter 11 back in 2002.

Many of the questions we'll be going over involve these documents so it would be helpful if you could have them open or have hard copies printed when we speak.

Looking forward to talking with you at 1pm.

Best regards,

--Kevin


Kevin W. Coleman
**Nuti Hart LLP**
411 30th Street, Suite 408
Oakland, CA 94609
Cell: 415 533-2920
Office: 510 506-7155
kcoleman@nutihart.com



N/H-018618

1  Kevin W. Coleman (CA SBN 168538)
   Christopher H. Hart (CA SBN 184117)
2  NUTI HART LLP
   411 30TH Street, Suite 408
3  Oakland, CA 94609-3311
   Telephone: 510-506-7152
4  Email: kcoleman@nutihart.com
          chart@nutihart.com
5
   Talitha Gray Kozlowski (NV SBN 9040)
6  GARMAN TURNER GORDON LLP
   650 White Drive, Suite 100
7  Las Vegas, NV 89119
   Telephone: 725-777-3000
8  Email: tgray@gtg.legal
9
   Counsel for Kavita Gupta,
10 Chapter 11 Trustee

11              **UNITED STATES BANKRUPTCY COURT**

12                      **DISTRICT OF NEVADA**

13 | In re:                              | Case No.: BK-S-18-12454-GS |

14 | DESERT LAND, LLC                    | Chapter 11                 |

15 |                           Debtor.   |                            |

16 | In re:                              | Case No.: BK-S-18-12456-GS |

17 | DESERT OASIS APARTMENTS, LLC,       | Chapter 11                 |

18 |                           Debtor.   |                            |

19 | In re:                              | Case No.: BK-S-18-12457-GS |

20 | DESERT OASIS INVESTMENTS, LLC,      | Chapter 11                 |

21 |                           Debtor.   | **DECLARATION OF GINA SHELTON RE INTERCOMPANY CLAIM** |

22

23       I, Gina Shelton, declare as follows:

24       1.       I am a senior staff accountant and bookkeeper with Swecker, Moloney & Moir

25 CPA's ("SMM"), and have held this position continuously for approximately 30 years.  My

26 business address is 2451 S. Buffalo Drive Ste. 105, Las Vegas, Nevada 89117.  Except as

27 otherwise noted, all statements in this declaration are based on my own personal knowledge and

28 if called to testify on this matter, I could and would competently testify thereto.

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

                                1
                 SHELTON DECL. RE INTERCOMPANY CLAIM

2.      From approximately 1996-97 through approximately 2010-2011, SMM provided bookkeeping and tax preparation services to Desert Land LLC ("DL") and Desert Oasis Apartments LLC ("DOA").  I was the person at SMM who was primarily responsible for inputting entries into the general ledgers maintained for DL and DOA and producing the other accounting documentation referenced below.  All of the accounting records discussed (excluding Exhibits B and C) herein were prepared by me or others working under my direction in the ordinary course of providing bookkeeping and tax preparation services to DL and DOA.

3.      With limited exceptions not relevant here, journal entries made in DL and DOA's general ledgers were based on source documentation such as checks and escrow statements provided to SMM by David Gaffin.  After SMM's bookkeeping and tax preparation services for a given period were completed, the source documentation would be returned to DL and DOA.

4.      Counsel for Kavita Gupta, Chapter 11 trustee for the DL and DOA bankruptcy estates served a subpoena on SMM for the production of documents relating to the origins and basis for an $4.5 million debt DOA stated that it owed to DL in the schedule of liabilities filed in this bankruptcy case.  SMM thereafter conducted a diligent search of its records, and to the best of its knowledge, produced all documents in SMM's possession, custody, and control sought in the subpoena.   The documents produced totaled 107 pages.  Attached hereto as **Exhibit A** is a true and correct copy of all of the documents produced in response to the Trustee's subpoena.

5.      A working trial balance I prepared for DOA for the period ending December 31, 2000 is included in Exhibit A [at bates page SW0004].  The December 31, 2000 working trial balance indicates that as of December 31, 1999, DOA was obligated on a note payable to Heller Financial in the amount of $5,000,000.00.  The amounts reflected as owing by DOA Heller Financial on the December 31, 2000 working trial balance was based on journal entries that I had previously made on DOA's general ledger.

6.      DOA's December 31, 2000 working trial balance [SW0004] further indicates that as of December 31, 2000:

   a.      the amount owed by DOA to Heller Financial had been paid; and

   b.      a note payable to DL by DOA had increased by $5,008,060.83.

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

2
SHELTON DECL. RE INTERCOMPANY CLAIM

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

7.      DOA's payment to Heller Financial and the increased liability to DL referenced in paragraph 6 were also reflected in journal entries entered on DOA's general ledger.

8.      My hand written notation on the DOA December 31, 2000 working trial balance indicates that the $5,008,060.83 credit to the note payable to DL related to "DL escrow #684232."

9.      I made the general ledger entries and prepared DOA's December 31, 2000 working trial balance after reviewing an escrow closing statement provided to SMM by Mr. Gaffin.  Counsel for the Trustee has recently provided me with a copy of the Estimated Borrower's Closing Statement that is attached hereto as **Exhibit B**.  I am advised by the Trustee's counsel that Exhibit B was among documents produced by Mr. Gaffin in response to a subpoena served by the Trustee.

10.     To the best of my recollection, the closing statement I relied on at the time I made the journal entries and prepared DOA's December 31, 2000 working trial balance [SW0004] was either the same or substantially similar to the Estimated Borrower's Closing Statement attached hereto as Exhibit B.  (My understanding is that a final closing statement for an escrow can differ in some respects from an estimated closing statement.)

11.     DL is identified in Exhibit B as the borrower of the $41.5 million loaned by Tom Gonzales.  DOA is not identified as a borrower on the Gonzales loan.  Exhibit B also indicates that $5,028,400.56 of the Gonzales loan proceeds would be disbursed to Heller Financial, which as noted at that time held a $5 million loan secured by DOA's real property.

12.     I interpreted the closing statement I relied on when entering the Heller Financial mortgage refinance transactions into DOA's general ledger to mean that DL, but not DOA, borrowed the $41.5 million from Tom Gonzales.  I also interpreted the closing statement to mean that DOA borrowed the funds used to pay off the Heller Financial mortgage from DL.  It was for that reason that I reflected an amount owing by DOA to DL on the general ledger relating to the payoff of the Heller Financial mortgage.

13.     I recently have seen the petition, and schedules of assets and liabilities filed by DOA in its Chapter 11 bankruptcy case filed on May 31, 2002, Case No. 02-16204, which

N/H-018621

indicate that DOA at that time owed Tom Gonzales $41.5 million.  A true and correct copy of DOA's May 31, 2002 petition and schedules supplied to me by counsel for the Trustee are attached hereto as **Exhibit C**.  I have also reviewed other documentation provided by counsel for the Trustee indicating that DOA was a co-borrower on the Gonzales loan.

14.    Had I known when I made the general ledger entries referenced in paragraphs 5 through 7 above that DOA had borrowed the $5,008,060.83 used to pay off the Heller Financial mortgage from Tom Gonzales instead of DL, I would have reflected that liability as owing to Tom Gonzales.  I would not have made a journal entry indicating that DOA owed that amount to DL.

15.    Accordingly, the amount reflected on DOA and DL's general ledgers and the December 31, 2000 working trial balance as being owed by DOA to DL on December 31, 2000 was overstated by $5,008,060.83.

I declare under penalty of perjury of the laws of the United States and the State of Nevada that the foregoing is true and correct, and that this Declaration is executed this ___ day of March 2020.

_/s/_ _____
Gina Shelton

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

N/H-018622

# EXHIBIT P

## Kevin Coleman

| | |
|---|---|
| **From:** | Gina Shelton <gina@smmcpas.com> |
| **Sent:** | Friday, March 27, 2020 6:08 AM |
| **To:** | Kevin Coleman |
| **Cc:** | Ben Howard; Kevin Meacham; Kavita Gupta; Talitha Gray; wswecker@aol.com |
| **Subject:** | RE: Desert Land – Interview |

Hi Kevin,

Larry and I have reviewed the declaration and we think it is a fair statement based on our conversations, backup documentation, etc.

Gina

### We have moved our office down the hall to Suite 105 (same building)!!

**Gina Shelton**
**Staff Accountant**
**Swecker, Moloney & Moir CPA's**
**2451 S. Buffalo Drive Ste. 105**
**Las Vegas, Nevada 89117**
**Gina@smmcpas.com**
**702.877.9351 office | 702.877 2731 fax**

CONFIDENTIALITY NOTICE: This e-mail message and its attachments are intended solely for the addressed recipient and may contain legally privileged and confidential information. Any unauthorized use, disclosure or duplication is prohibited. If you are not the addressed recipient, or you've received this e-mail message in error, please notify the sender.

**From:** Kevin Coleman <kcoleman@nutihart.com>
**Sent:** Wednesday, March 25, 2020 4:07 PM
**To:** Gina Shelton <gina@smmcpas.com>
**Cc:** Ben Howard <bhoward@gtllp.com>; Kevin Meacham <kmeacham@gtllp.com>; Kavita Gupta <kgupta@guptaferrer.com>; Talitha Gray <tgray@Gtg.legal>; wswecker@aol.com
**Subject:** RE: Desert Land - Interview

Hi Gina,

Attached is a draft of the declaration for you that I prepared based on our conversation. Please take a look and let me know if there is anything you would like to correct, change, or add.

Best regards,

--Kevin

**From:** Gina Shelton [mailto:gina@smmcpas.com]
**Sent:** Monday, March 23, 2020 10:28 AM

1

**To:** Kevin Coleman <kcoleman@nutihart.com>
**Cc:** Ben Howard <bhoward@gtllp.com>; Kevin Meacham <kmeacham@gtllp.com>; Kavita Gupta
<kgupta@guptaferrer.com>; Talitha Gray <tgray@Gtg.legal>; wswecker@aol.com
**Subject:** RE: Desert Land - Interview

Kevin,

Based on the information presented to me within the last few weeks, we agree that the loan payable was to Tom
Gonzales.
Gina

<u>**We have moved our office down the hall to Suite 105 (same building)!!**</u>

**Gina Shelton**
**Staff Accountant**
**Swecker, Moloney & Moir CPA's**
**2451 S. Buffalo Drive Ste. 105**
**Las Vegas, Nevada 89117**
**Gina@smmcpas.com**
**702.877.9351 office | 702.877 2731 fax**

CONFIDENTIALITY NOTICE: This e-mail message and its attachments are intended solely for the addressed recipient and
may contain legally privileged and confidential information. Any unauthorized use, disclosure or duplication is
prohibited. If you are not the addressed recipient, or you've received this e-mail message in error, please notify the
sender.

**From:** Kevin Coleman <kcoleman@nutihart.com>
**Sent:** Monday, March 23, 2020 10:11 AM
**To:** Gina Shelton <gina@smmcpas.com>
**Cc:** Ben Howard <bhoward@gtllp.com>; Kevin Meacham <kmeacham@gtllp.com>; Kavita Gupta
<kgupta@guptaferrer.com>; Talitha Gray <tgray@Gtg.legal>; wswecker@aol.com
**Subject:** RE: Desert Land - Interview

Thank you Gina.  Yes, I understand that you input the information on the general ledger based on the documents that
were provided to you and that at the time it appeared entirely proper to do so.  But knowing now that Desert Oasis
Apartments borrowed the $5M from Tom Gonzales and not Desert Land, do you agree that this item should not have
been entered on the general ledger as an amount "due to" Desert Land?

Best regards,

--Kevin

**From:** Gina Shelton [mailto:gina@smmcpas.com]
**Sent:** Monday, March 23, 2020 7:11 AM
**To:** Kevin Coleman <kcoleman@nutihart.com>
**Cc:** Ben Howard <bhoward@gtllp.com>; Kevin Meacham <kmeacham@gtllp.com>; Kavita Gupta
<kgupta@guptaferrer.com>; Talitha Gray <tgray@Gtg.legal>; wswecker@aol.com
**Subject:** RE: Desert Land - Interview

N/H-018714

Hi Kevin,

Larry Swecker and I have reviewed the documents and this email and discussed my phone interview at great length. We are in agreement that we recorded the transactions in accordance with the documents provided to us by the client.

Gina

### We have moved our office down the hall to Suite 105 (same building)!!

**Gina Shelton**
**Staff Accountant**
**Swecker, Moloney & Moir CPA's**
**2451 S. Buffalo Drive Ste. 105**
**Las Vegas, Nevada 89117**
**Gina@smmcpas.com**
**702.877.9351 office | 702.877 2731 fax**

CONFIDENTIALITY NOTICE: This e-mail message and its attachments are intended solely for the addressed recipient and may contain legally privileged and confidential information. Any unauthorized use, disclosure or duplication is prohibited. If you are not the addressed recipient, or you've received this e-mail message in error, please notify the sender.

**From:** Kevin Coleman <kcoleman@nutihart.com>
**Sent:** Friday, March 20, 2020 3:13 PM
**To:** Gina Shelton <gina@smmcpas.com>
**Cc:** Ben Howard <bhoward@gtllp.com>; Kevin Meacham <kmeacham@gtllp.com>; Kavita Gupta <kgupta@guptaferrer.com>; Talitha Gray <tgray@Gtg.legal>
**Subject:** RE: Desert Land - Interview

Hi Gina,

Hope you are managing OK in the midst of this coronavirus craziness. (At least tax day has been pushed to July!)

As I recall when we spoke last week, you speculated that you might have booked the $5,028,400.56 amount as "due to" Desert Land from Desert Oasis Apartments if the closing statement for the Gonzales loan reflected Desert Land as the only borrower and $5,028,400.56 as going to pay off the existing mortgage on the Desert Oasis Apartments property.

Attached is the closing statement for the Gonzales loan escrow we obtained from David Gaffin, which shows exactly that.

If I also recall correctly, you indicated that had you known at the time that Desert Oasis Apartments was in fact a borrower on the Gonzales loan, it would have been an error to record the item as due to Desert Land. (The loan came from Tom Gonzales, not Desert Land- something the escrow statement did not make clear.) I previously sent you the Petition and Schedules of Assets/Liabilities Desert Oasis Apartments filed in its 2002 bankruptcy case, which are also attached here. As we discussed last week, on p. 11 of 19, Desert Oasis Apartments stated that it owed Tom Gonzales $41.5M. No one disputes that Desert Oasis Apartments and Desert Land jointly borrowed the $41.5M from Mr. Gonzales. This fact is also is confirmed by information obtained from the Clark County Recorder, which indicates that Gonzales recorded a deed of trust against the Desert Oasis Apartments property on December 15, 2000, followed shortly thereafter by a re-conveyance of the Heller Financial mortgage.

N/H-018715

The above, in my view, establish that Desert Oasis Apartments borrowed the funds used to pay the Heller Financial mortgage from Mr. Gonzales, not Desert Land. But please take a look at these documents and let me know if you concur that it was a mistake to reflect on the general ledger that Desert Oasis Apartments had an amount due to Desert Land of $5,028,400.56 back in 2000. If you agree, I would ask you to sign a declaration so stating, which of course would explain why it appears the error was made. If you think you need to review anything else in order to come to a conclusion, let me know and I will try to track it down.

Best regards,

--Kevin

**From:** Gina Shelton [mailto:gina@smmcpas.com]
**Sent:** Friday, March 13, 2020 12:05 PM
**To:** Kevin Coleman <kcoleman@nutihart.com>
**Subject:** RE: Desert Land - Interview

Thank you!!
Gina


### We have moved our office down the hall to Suite 105 (same building)!!

**Gina Shelton**
**Staff Accountant**
**Swecker, Moloney & Moir CPA's**
**2451 S. Buffalo Drive Ste. 105**
**Las Vegas, Nevada 89117**
**Gina@smmcpas.com**
**702.877.9351 office | 702.877 2731 fax**

CONFIDENTIALITY NOTICE: This e-mail message and its attachments are intended solely for the addressed recipient and may contain legally privileged and confidential information. Any unauthorized use, disclosure or duplication is prohibited. If you are not the addressed recipient, or you've received this e-mail message in error, please notify the sender.

**From:** Kevin Coleman <kcoleman@nutihart.com>
**Sent:** Friday, March 13, 2020 11:51 AM
**To:** Gina Shelton <gina@smmcpas.com>
**Cc:** Talitha Gray <tgray@Gtg.legal>; Vicki DiMaio <vdimaio@Gtg.legal>
**Subject:** Desert Land - Interview

Hi Gina,

I am co-counsel with Talitha Gray in the Desert Land cases. Attached are copies of the documents you provided to Talitha in response to the document subpoena, marked at the bottom with a bates stamp. I'm also attaching copies of the bankruptcy petition and schedules of assets/liabilities filed by Desert Land and Desert Oasis Apartments when they were in Chapter 11 back in 2002.

Many of the questions we'll be going over involve these documents so it would be helpful if you could have them open or have hard copies printed when we speak.

4

N/H-018716

Looking forward to talking with you at 1pm.

Best regards,

--Kevin


Kevin W. Coleman
**Nuti Hart LLP**
411 30th Street, Suite 408
Oakland, CA 94609
Cell: 415 533-2920
Office: 510 506-7155
kcoleman@nutihart.com



N/H-018717

# EXHIBIT Q