## Kevin Coleman

| | |
|---|---|
| **From:** | Kevin Coleman |
| **Sent:** | Monday, March 23, 2020 10:11 AM |
| **To:** | 'Gina Shelton' |
| **Cc:** | Ben Howard; Kevin Meacham; Kavita Gupta; Talitha Gray; wswecker@aol.com |
| **Subject:** | RE: Desert Land - Interview |

Thank you Gina. Yes, I understand that you input the information on the general ledger based on the documents that were provided to you and that at the time it appeared entirely proper to do so. But knowing now that Desert Oasis Apartments borrowed the $5M from Tom Gonzales and not Desert Land, do you agree that this item should not have been entered on the general ledger as an amount "due to" Desert Land?

Best regards,

--Kevin


**From:** Gina Shelton [mailto:gina@smmcpas.com]
**Sent:** Monday, March 23, 2020 7:11 AM
**To:** Kevin Coleman <kcoleman@nutihart.com>
**Cc:** Ben Howard <bhoward@gtllp.com>; Kevin Meacham <kmeacham@gtllp.com>; Kavita Gupta <kgupta@guptaferrer.com>; Talitha Gray <tgray@Gtg.legal>; wswecker@aol.com
**Subject:** RE: Desert Land - Interview

Hi Kevin,

Larry Swecker and I have reviewed the documents and this email and discussed my phone interview at great length. We are in agreement that we recorded the transactions in accordance with the documents provided to us by the client.

Gina


### We have moved our office down the hall to Suite 105 (same building)!!

**Gina Shelton**
**Staff Accountant**
**Swecker, Moloney & Moir CPA's**
**2451 S. Buffalo Drive Ste. 105**
**Las Vegas, Nevada 89117**
**Gina@smmcpas.com**
**702.877.9351 office | 702.877 2731 fax**

CONFIDENTIALITY NOTICE: This e-mail message and its attachments are intended solely for the addressed recipient and may contain legally privileged and confidential information. Any unauthorized use, disclosure or duplication is prohibited. If you are not the addressed recipient, or you've received this e-mail message in error, please notify the sender.

N/H-018599

**From:** Kevin Coleman <kcoleman@nutihart.com>
**Sent:** Friday, March 20, 2020 3:13 PM
**To:** Gina Shelton <gina@smmcpas.com>
**Cc:** Ben Howard <bhoward@gtllp.com>; Kevin Meacham <kmeacham@gtllp.com>; Kavita Gupta <kgupta@guptaferrer.com>; Talitha Gray <tgray@Gtg.legal>
**Subject:** RE: Desert Land - Interview

Hi Gina,

Hope you are managing OK in the midst of this coronavirus craziness. (At least tax day has been pushed to July!)

As I recall when we spoke last week, you speculated that you might have booked the $5,028,400.56 amount as "due to" Desert Land from Desert Oasis Apartments if the closing statement for the Gonzales loan reflected Desert Land as the only borrower and $5,028,400.56 as going to pay off the existing mortgage on the Desert Oasis Apartments property.

Attached is the closing statement for the Gonzales loan escrow we obtained from David Gaffin, which shows exactly that.

If I also recall correctly, you indicated that had you known at the time that Desert Oasis Apartments was in fact a borrower on the Gonzales loan, it would have been an error to record the item as due to Desert Land. (The loan came from Tom Gonzales, not Desert Land- something the escrow statement did not make clear.) I previously sent you the Petition and Schedules of Assets/Liabilities Desert Oasis Apartments filed in its 2002 bankruptcy case, which are also attached here. As we discussed last week, on p. 11 of 19, Desert Oasis Apartments stated that it owed Tom Gonzales $41.5M. No one disputes that Desert Oasis Apartments and Desert Land jointly borrowed the $41.5M from Mr. Gonzales. This fact is also is confirmed by information obtained from the Clark County Recorder, which indicates that Gonzales recorded a deed of trust against the Desert Oasis Apartments property on December 15, 2000, followed shortly thereafter by a re-conveyance of the Heller Financial mortgage.

The above, in my view, establish that Desert Oasis Apartments borrowed the funds used to pay the Heller Financial mortgage from Mr. Gonzales, not Desert Land. But please take a look at these documents and let me know if you concur that it was a mistake to reflect on the general ledger that Desert Oasis Apartments had an amount due to Desert Land of $5,028,400.56 back in 2000. If you agree, I would ask you to sign a declaration so stating, which of course would explain why it appears the error was made. If you think you need to review anything else in order to come to a conclusion, let me know and I will try to track it down.

Best regards,

--Kevin

**From:** Gina Shelton [mailto:gina@smmcpas.com]
**Sent:** Friday, March 13, 2020 12:05 PM
**To:** Kevin Coleman <kcoleman@nutihart.com>
**Subject:** RE: Desert Land - Interview

Thank you!!
Gina


**We have moved our office down the hall to Suite 105 (same building)!!**

**Gina Shelton**

N/H-018600

**Staff Accountant**
**Swecker, Moloney & Moir CPA's**
**2451 S. Buffalo Drive Ste. 105**
**Las Vegas, Nevada 89117**
Gina@smmcpas.com
**702.877.9351 office | 702.877 2731 fax**

CONFIDENTIALITY NOTICE: This e-mail message and its attachments are intended solely for the addressed recipient and may contain legally privileged and confidential information. Any unauthorized use, disclosure or duplication is prohibited. If you are not the addressed recipient, or you've received this e-mail message in error, please notify the sender.

**From:** Kevin Coleman <kcoleman@nutihart.com>
**Sent:** Friday, March 13, 2020 11:51 AM
**To:** Gina Shelton <gina@smmcpas.com>
**Cc:** Talitha Gray <tgray@Gtg.legal>; Vicki DiMaio <vdimaio@Gtg.legal>
**Subject:** Desert Land - Interview

Hi Gina,

I am co-counsel with Talitha Gray in the Desert Land cases. Attached are copies of the documents you provided to Talitha in response to the document subpoena, marked at the bottom with a bates stamp. I'm also attaching copies of the bankruptcy petition and schedules of assets/liabilities filed by Desert Land and Desert Oasis Apartments when they were in Chapter 11 back in 2002.

Many of the questions we'll be going over involve these documents so it would be helpful if you could have them open or have hard copies printed when we speak.

Looking forward to talking with you at 1pm.

Best regards,

--Kevin


Kevin W. Coleman
**Nuti Hart LLP**
411 30th Street, Suite 408
Oakland, CA 94609
Cell: 415 533-2920
Office: 510 506-7155
kcoleman@nutihart.com

N/H-018601



N/H-018602

# EXHIBIT R

## Kevin Coleman

| | |
|---|---|
| **From:** | Kim Fineman |
| **Sent:** | Friday, August 9, 2019 12:35 PM |
| **To:** | Kavita Gupta |
| **Cc:** | Kevin Coleman; Nicole White |
| **Subject:** | Withdrawal of Motion  for Your Review |
| **Attachments:** | 2019-08-09 Withdrawal of Motion re Inter-Debtor Claims.docx |

Kavita, attached for your review is a withdrawal of our motion regarding the inter-estate claims.  I understand from Kevin we'd like to get this filed as soon as possible today.  Could you please take a look and let me know if this work or if any changes are needed.  I know this is a bit of sensitive subject so I've tried to keep it as straight-forward and neutral as possible.

Thanks,
Kim

**Kimberly S. Fineman**
Senior Counsel
**NUTI HART LLP**
411 30th Street, Suite 408 | Oakland, CA 94609-3311
Direct:  510.506.7156
Mobile: 415.722.9718
kfineman@nutihart.com | www.nutihart.com

i

N/H-017433

1  Kevin W. Coleman (CA SBN 168538)
   Christopher H. Hart (CA SBN 184117)
2  Kimberly S. Fineman (CA SBN 184433)
   NUTI HART LLP
3  411 30TH Street, Suite 408
   Oakland, CA 94609-3311
4  Telephone: 510-506-7152
   Email: kfineman@nutihart.com
5
   Talitha Gray Kozlowski (NV SBN 9040)
6  GARMAN TURNER GORDON LLP
   650 White Drive, Suite 100
7  Las Vegas, NV 89119
   Telephone: 725-777-3000
8  Email: tgray@gtg.legal
9
   Counsel for Kavita Gupta,
10 Chapter 11 Trustee

11             **UNITED STATES BANKRUPTCY COURT**

12                  **DISTRICT OF NEVADA**

| 13 | In re: | Case No.: BK-S-18-12454-GS |
|---|---|---|
| 14 | DESERT LAND, LLC | Chapter 11 |
| 15 | Debtor. | |
| 16 | In re: | Case No.: BK-S-18-12456-GS |
| 17 | DESERT OASIS APARTMENTS, LLC, | Chapter 11 |
| 18 | Debtor. | |
| 19 | In re: | Case No.: BK-S-18-12457-GS |
| 20 | DESERT OASIS INVESTMENTS, LLC, | Chapter 11 |
| 21 | Debtor. | **NOTICE OF WITHDRAWAL AND WITHDRAWAL OF MOTION FOR ORDER DETERMINING WHETHER KAVITA GUPTA SHOULD CONTINUE AS CHAPTER 11 TURSTEE FOR DESERT OASIS APARTMENTS, LLC DUE TO THE EXISTENCE OF INTER-ESTATE CLAIMS, OR, ALTERNATIVELY, APPOINT AN EXAMINER** |

22

23

24

25

26  Previously Notice Hearing on Motion now
    Withdrawn:
27  Date:      August 27, 2019
28  Time:      1:30 p.m.

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

1

N/H-017434

On July 12, 2019, Kavita Gupta, the duly appointed and acting Chapter 11 trustee in the above-captioned cases (the "Trustee") filed a Motion for Order Determining Whether Kavita Gupta Should Continue as Chapter 11 Trustee for Desert Oasis Apartments, LLC Due to Existence of Inter-Estate Claims, or Alternatively, Appoint an Examiner (the "Motion") [Doc. No. 772].  Upon consultation with representatives of the Office of the United States Trustee regarding the Motion, the Trustee hereby withdraws the Motion.  Therefore, the currently scheduled hearing on the Motion will not go forward and the Trustee respectfully requests that the Court remove the matter from its calendar.

Dated:  August 9, 2019                          NUTI HART LLP


                                                By: /s/ _____
                                                        Kimberly S. Fineman
                                                        Attorneys for Kavita Gupta,
                                                        Chapter 11 Trustee

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

2

# EXHIBIT S

**Kevin Coleman**

| | |
|---|---|
| **From:** | Chris Hart |
| **Sent:** | Monday, June 8, 2020 3:05 PM |
| **To:** | Greg Nuti; Kevin Coleman |
| **Subject:** | RE: Desert Land *** Call re Potential Inter-Estate Conflict |

I can be on too.

---

**From:** Greg Nuti <gnuti@nutihart.com>
**Sent:** Monday, June 8, 2020 3:05 PM
**To:** Kevin Coleman <kcoleman@nutihart.com>
**Cc:** Chris Hart <chart@nutihart.com>
**Subject:** RE: Desert Land *** Call re Potential Inter-Estate Conflict

Ok  will do

**Gregory C. Nuti**
Nuti Hart LLP
411 30th Street, Suite 408
Oakland, CA 94609
Office: 510 506-7153
Cell: 510 333-4398
gnuti@nutihart.com

<< OLE Object: Picture (Device Independent Bitmap) >>

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

---

**From:** Kevin Coleman <kcoleman@nutihart.com>
**Sent:** Monday, June 08, 2020 3:04 PM
**To:** Greg Nuti <gnuti@nutihart.com>
**Cc:** Chris Hart <chart@nutihart.com>
**Subject:** RE: Desert Land *** Call re Potential Inter-Estate Conflict

If you are available.  Desert Oasis Apartments made a number of transfers to Desert Land that may be avoidable as a preference (assuming the transfer was on account of a debt) or fraudulent conveyances (if deemed equity distributions). If there is a conflict, it may require Kavita to resign from the Desert Land.

This is a sensitive situation and want to be careful not to do anything that bites us in the butt.

1

N/H-018983

--Kevin

_____

**From:** Greg Nuti
**Sent:** Monday, June 8, 2020 3:01 PM
**To:** Kevin Coleman <kcoleman@nutihart.com>
**Cc:** Chris Hart <chart@nutihart.com>
**Subject:** RE: Desert Land *** Call re Potential Inter-Estate Conflict


Kevin:  Do you want me or Chris on this call?

**Gregory C. Nuti**
Nuti Hart LLP
411 30th Street, Suite 408
Oakland, CA 94609
Office: 510 506-7153
Cell: 510 333-4398
gnuti@nutihart.com


<< OLE Object: Picture (Device Independent Bitmap) >>

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.


-----Original Appointment-----
**From:** Kevin Coleman <kcoleman@nutihart.com>
**Sent:** Monday, June 08, 2020 2:49 PM
**To:** Kavita Gupta; Kim Fineman; Chris Hart; Greg Nuti
**Subject:** Desert Land *** Call re Potential Inter-Estate Conflict
**When:** Monday, June 08, 2020 4:00 PM-5:00 PM (UTC-08:00) Pacific Time (US & Canada).
**Where:** 866-513-2140/PIN 33438

2

N/H-018984

# EXHIBIT T

**Kevin Coleman**

| | |
|---|---|
| **From:** | Talitha Gray <tgray@Gtg.legal> |
| **Sent:** | Monday, February 10, 2020 4:58 PM |
| **To:** | Kevin Coleman |
| **Cc:** | Kavita Gupta |
| **Subject:** | FW: Desert Land, LLC - Case No. 02-16202-bam |
| **Attachments:** | Document List for 2002 Desert Land Case.docx; DKT 114 Disclosure Statements.pdf; DKT 29 Amended Schedules.pdf; DKT 1 Petition.pdf; DKT 35 Amendment to Schedule F.pdf; DKT 188 Second Amended Plan.pdf; DKT 54 Amendment to Schedule F.pdf; DKT 189 Order Confirming Plan.pdf |

Email 2 of 2.

**Talitha Gray Kozlowski**

Partner

P 725 777 3000 | F 725 777 3112

GARMAN | TURNER | GORDON

7251 AMIGO STREET, SUITE 210
LAS VEGAS, NV 89119

website | vCard | map | email

  

---

**From:** Vicki DiMaio <vdimaio@Gtg.legal>
**Sent:** Monday, February 10, 2020 4:00 PM
**To:** Kavita Gupta <kgupta@guptaferrer.com>
**Cc:** Talitha Gray <tgray@Gtg.legal>
**Subject:** Desert Land, LLC - Case No. 02-16202-bam

Kavita,

Attached please find some of the documents that we were able to pull from the 2002 Desert Land bankruptcy.

**Vicki DiMaio**
Legal Assistant

N/H-017764

P 725 777 3000 | F 725 777 3112

GARMAN | TURNER | GORDON

7251 AMIGO STREET, SUITE 210
LAS VEGAS, NV 89119

website | vCard | map | email

  

N/H-017765

# ORIGINAL

RECEIVED
AND FILED

Jan 2 4 02 PM '03

UNITED STATES
BANKRUPTCY COURT
PATRICIA GRAY
CLERK

Lenard E. Schwartzer
Nevada Bar No. 0399
Jeanette E. McPherson
Nevada Bar No. 5423
Schwartzer & McPherson Law Firm
3800 Howard Hughes Pkwy, Suite 1100
Las Vegas, NV 89109
Telephone: (702) 693-4230
Facsimile: (702) 892-0122
Attorneys for Debtors

### UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| In re | BK-S-02-16202 RCJ<br>Chapter 11 |
| DESERT LAND, LLC, | BK-S-02-16204<br>Desert Oasis Apartments, LLC |
| Debtor. | BK-S-02-16205<br>Desert Ranch, LLC |
| In re | |
| DESERT OASIS APARTMENTS, LLC, | **DISCLOSURE STATEMENT** |
| Debtor. | Date: January 29, 2003<br>Time: 9:30 a.m. |
| In re | |
| DESERT RANCH, LLC, | |
| Debtor. | |

Desert Land, LLC ("Desert Land"), Desert Oasis Apartments, LLC ("Desert Oasis") and Desert Ranch, LLC ("Desert Ranch") (collectively, the "Debtors") by and through their counsel, Schwartzer & McPherson Law Firm, are proposing this Plan Of Reorganization (the "Plan") pursuant to 11 U.S.C. § 1123, and are seeking approval of the Plan by the creditors and members of Desert Land and by the Court. Only Desert Land is seeking reorganization of its debts. Desert Oasis and Desert Ranch are requesting dismissal of their cases upon confirmation of the Plan for Desert Land.

///

## IMPORTANT PROCEDURES

1
2
3
4
5
6

This Disclosure Statement has been approved by the Court as containing adequate information to permit the creditors and equity interest holders to make informed judgments about whether to vote to accept or reject the Plan of Reorganization. Ballots have been mailed to the Creditors and equity interest holders entitled to vote on the Plan along with this Disclosure Statement.

7
8
9
10
11
12

THIS DISCLOSURE STATEMENT IS THE ONLY DOCUMENT AUTHORIZED BY THE COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES ACCEPTING THE PLAN. NO REPRESENTATIONS ARE AUTHORIZED CONCERNING THE DEBTORS, THE VALUE OF THEIR ASSETS, THE PROSPECTS FOR THEIR BUSINESSES, OR CREDITORS' CLAIMS, OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.

13
14
15
16
17
18

This Disclosure Statement contains important information about the Plan, considerations relevant to acceptance or rejection of the Plan, and information about the Bankruptcy Estate. The Plan is mailed with this Disclosure Statement. ALL CREDITORS AND EQUITY INTEREST HOLDERS ARE ENCOURAGED TO READ THE ENTIRE DISCLOSURE STATEMENT AND PLAN CAREFULLY BEFORE DECIDING TO ACCEPT OR REJECT THE PLAN.

19
20
21
22

In order for the Plan to be confirmed by the Court, it must meet applicable requirements of the Bankruptcy Code. For a Plan to be confirmed, normally, two-thirds (2/3) in dollar amount of the claims and a majority of the number of claims in each impaired Class must have voted to accept the Plan.

23
24
25
26

The Court will hold a hearing to consider confirmation of the Plan at the time and location stated in the notice accompanying this Disclosure Statement. BALLOTS MUST BE COMPLETED AND RECEIVED AT THE FOLLOWING ADDRESS ON OR BEFORE FIVE (5) BUSINESS DAYS PRIOR TO THE HEARING:

27
///

28
///

P:\WorldPortResorts\Pleadings\Disclosure Statement (final-2).wpd          2

N/H-017767

SCHWARTZER & McPHERSON LAW FIRM
Attn: Lenard E. Schwartzer, Esq.
3800 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89109

Please use only the ballot or ballots sent to you with this Disclosure Statement.

The creditors and members of Desert Land are to vote separately.

### DESCRIPTION OF THE DEBTORS AND THEIR ASSETS

1.    DEBTORS: Desert Land and Desert Oasis are Nevada limited liability companies owned 90% by Howard Bulloch and 10% by David Gaffin. Desert Ranch is a Nevada limited liability company owned 89.1% by Howard Bulloch, 9.9% by David Gaffin and 1% by Bruce Bulloch. All the Debtors are affiliates as that term is defined in Bankruptcy Code section 101(2) and as used in Bankruptcy Rule 1015(b).

2.    DEBTORS' ASSETS:    Desert Ranch, Desert Land, LLC and Desert Oasis Apartments, LLC own, or have options to purchase, directly or indirectly, several adjacent hotel/casino/retail sites across the street from Mandalay Bay Resort. The most northern portion is called "Site A." Site A is located between Mandalay Bay Road and Four Seasons Drive. The southern portions are called "Site B," "Site C" and "Site D." Sites B, C and D are south of Four Seasons Drive. See the map and pictures of the Sites attached hereto as **Exhibit "1."**

Site A is owned by Desert Land, Desert Oasis Apartments, Gonzales and Barry Fieldman. Desert Land and Desert Oasis Apartments own an undivided 94.5% interest, Gonzales owns an undivided 5% and Fieldman owns an undivided 0.5% undivided interest. Site A consists of 26.32 acres of land. Desert Land owns 16.63 acres. Desert Land has an option to purchase an additional 3.52 acres for $19.5 million. Desert Land also owns 3.02 acres which is financed with Aspen Mortgage for $11.9 million on which is located the Desert Oasis Motel (the "Desert Oasis Motel Property"). Desert Oasis Apartments owns 6.4 acres. Debtors believe that the total value of Site A (excluding the 3.02 acre parcel in which Gonzales and Fieldman have no interest) is approximately $160 million. Tom Gonzales has a deed of trust which encumbers 23.02 acres of Site A (on which is situated

N/H-017768

1   the Desert Oasis Apartments and the Happi Inn) and a collateral assignment of the option

2   to purchase the remaining 3.52 acres to secure repayment of $41.5 million. Thus, Debtors

3   believe Gonzales' $41.5 million loan has a $99 million equity cushion. There is a billboard

4   on Site A for which $2,000 per month is paid. A second billboard is contemplated.

5       Sites B, C and D are owned by New World, LLC ("New World"). New World is

6   owned 65% by Desert Ranch, 19.7436% by Tom Gonzales, 5% by Makena Entertainment

7   Las Vegas Boulevard, LLC ("Makena") and the balance is owned by assignees of Tom

8   Gonzales.

9       Site B consists of 19.4 acres along the east side of Las Vegas Boulevard, south of

10  Four Seasons Drive. Debtors believe the value of Site B is approximately $126 million.

11      Site C consists of 22.64 acres along the east side of Las Vegas Boulevard, south

12  of Site B. Debtors believe the value of Site C is approximately $122 million.

13      Site D consists of 5.29 acres along the east side of Las Vegas Boulevard, south of

14  Site C. Debtors believe the value of Site D is approximately $29 million.

15      Debtors believe the total value of the sites owned by New World is approximately

16  $277 million and they are unencumbered.

17      In addition to Sites A, B, C and D, Desert Land owns undeveloped real property of

18  approximately 19.2 acres located on the west side of Las Vegas Boulevard north of Warm

19  Springs Road and south of Arby Avenue (the "Arby Avenue Property"). Debtors believe

20  this property is worth approximately $12,090,000 pursuant to an appraisal by Charles E.

21  Jack Appraisal & Consulting, Inc. dated as of January 24, 2002. This property is subject

22  to a deed of trust for the benefit of Consolidated Mortgage Corporation securing a loan of

23  $7,569,210.

24      In addition to the above, Desert Land owns two parcels of undeveloped real property

25  of approximately five acres each located at Eldorado Lane and Las Vegas Boulevard (the

26  "Eldorado Lane Property"). Debtors believe this property is worth approximately

27  $6,400,000 pursuant to an appraisal by Charles E. Jack & Consulting dated as of August

28  12, 2001. This property is subject to a deed of trust for the benefit of Aspen Financial

N/H-017769

1   Corporation securing a loan of $4,182,000. On the Eldorado Lane Property there is a
2   billboard for which rent of $1,500 per month is paid.

3          See map of these additional parcels on **Exhibit "2."**

4          Desert Land has a claim which is being litigated in the U.S. District Court for the
5   District of Nevada, as Case No. CV-S-00-1406 JCM, against Vestin Mortgage, Del Mar
6   Mortgage, Michael Shustek and others seeking damages regarding certain penalties and
7   "exit fees" for federal securities fraud, intentional interference with contractual relations and
8   with prospective economic advantage, common law fraud, negligent misrepresentation,
9   collusive tort, breaches of contracts, unlawful contracts, fraudulent inducement, economic
10  duress, breach of implied covenant of good faith and fair dealing, and conspiracy seeking
11  damages and injunctive relief. The estimated recovery is $9,126,226. The litigation is
12  ready for trial, pending the defendants' motion to dismiss for lack of jurisdiction, but has not
13  been set for trial.

14         Desert Land and Desert Oasis obtained a judgment by default against Meridian
15  Capital Partners, Inc. In the Superior Court of DeKalb County, Georgia in the amount of
16  $200,000. The Debtors believe that a portion of this judgment may be collected.

17         3.    <u>DEBTORS' BUSINESS</u>:   Debtors' primary business is the assemblage of
18  large parcels of real estate along Las Vegas Boulevard for development, joint venture or
19  sale. In the meantime, Desert Oasis Apartments has income from the operation of its
20  apartments of approximately $35,000 per month, net of operating expenses and
21  management fees. These apartments are managed by Con Am Management. Desert
22  Oasis Motel produces income of $15,000 to $20,000 per month, net of operating expenses
23  and management fees. The Happi Inn produces no income net of operating expenses and
24  management fees.   These motels are managed by Hospitality Associates, Inc., an
25  unrelated third party. Desert Land has income from the rental of billboards of $3,500 per
26  month.

27         See each of the Debtors' Balance Sheets as of 2002 which are attached as **Exhibit**
28  **"3"** and Desert Lands's and Desert Oasis's Statement of Cash Inflow and Outflows for the

N/H-017770

year 2001 and for the year 2002 through September 30, 2002 which are attached as **Exhibit "4."** Desert Ranch has no cash transactions. The available cash of Desert Land as of September 30, 2002 was $16,355.  The available cash of Desert Oasis as of September 30, 2002 was $129,641. The projected available cash as of January 30, 2003 will be approximately the same.

4.    DEBTORS' MANAGEMENT:    The management of the Debtors are Howard Bulloch and David Gaffin, two experienced Nevada real estate licensees who have worked for years to assemble this real estate development owned by the Debtors. Howard Bulloch graduated from Brigham Young University with a Bachelors Degree. He spent 15 years working as a real estate broker in the Las Vegas market. He is uniquely familiar with land, hotel and gaming markets in this area.  He was the number one commercial broker for Prudential out of 31,000 brokers nationwide in 1994 and has received the National Association of Realtors – Realtors Land Institute Accredited Land Consultant designation, one of only a few in Las Vegas.  David Gaffin graduated from Brigham Young University with a Bachelors Degree in Business Management and Finance.  He is a licensed real estate broker and has worked for the past 16 years in Las Vegas in the real estate industry. He is a member of the Las Vegas Board of Realtors.

## HISTORY OF DEBTORS' BANKRUPTCY ESTATE

1.    Each of the Debtors filed a voluntary petition in this Court for reorganization relief under chapter 11 of title II of the United States Code, 11 U.S.C. §§ 101-1330 (as amended, the "Bankruptcy Code") on May 31, 2002. The Debtors continue to operate their business and manage their properties as debtors and debtors-in-possession pursuant to Bankruptcy Code § 1107(a) and 1108.

2.    No trustee or examiner has yet been appointed in any of the Debtors' chapter 11 cases, and no committees have been appointed or designated by the Unites States Trustee.

3.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    Tom Gonzales and Makena filed a motion to disqualify Judge Jones from hearing these cases which was denied on July 8, 2002.

5.    Tom Gonzales and Makena filed a motion to modify the automatic stay so that they could take management control of new World from Desert Ranch (Howard Bulloch and David Gaffin). This motion was continued to August 26, 2002.

6.    The three Debtors have filed an APPLICATION FOR ORDER DIRECTING JOINT ADMINISTRATION OF CASES PURSUANT TO FED. R. BANKR. P. 1015(B) which seeks joint administration without substantive consolidation of the three cases. This Motion was granted on August 26, 2002.

7.    Desert Land and Desert Oasis have each filed a MOTION FOR USE OF CASH COLLATERAL seeking to use the income generated by the Desert Oasis Apartments and the Desert Oasis Motel for the legal expenses incurred in the litigation against Vestin Mortgage and for expenses of administration in these Chapter 11 cases. This Motion was granted on August 26, 2002.

6.    The Debtors have filed a Joint Plan of Reorganization within the exclusive period provided by Bankruptcy Code § 1121(b).

### EXPLANATION OF THE PLAN

The Plan provides for the reorganization of Desert Land's secured debts to Gonzales, Aspen Financial and Consolidated Mortgage.

The debt to Gonzales will be repaid within two (2) years from the Effective Date of the Plan with interest at the prime rate plus 2% from the Effective Date from the sale or refinancing of Site A. No interest will be paid and the interest will accrue and be payable at the same time as the principal amount of the debt. Debtors believe negative amortization of the debt to Gonzales is permissible because the value of the property which is secured by the debt is worth more than three times the amount of the debt. Debtors believe Gonzales' $41.5 million loan has a $99 million equity cushion. Upon the Effective Date, the debt to Gonzales will be deemed to be not in default.

Except for the $2,707,000 owed to The Ranch, LLC (a limited liability company

N/H-017772

owned and managed by Howard Bulloch and David Gaffin), the remaining unsecured creditors of Desert Land will be paid in full in six (6) equal installments beginning within thirty (30) days of the Effective date of the Plan. The Ranch, LLC will be paid from the proceeds from the sale or refinancing of Desert Land's property after all other unsecured creditors of Desert Land have been paid in full.

On the Effective Date, the Arby Avenue Property will be transferred to Desert Oasis Investments LLC, a Nevada limited liability company owned and managed by Howard Bulloch and David Gaffin.

On the Effective Date, the Eldorado Lane Property will be transferred to The Ranch LLC, a Nevada limited liability company owned by Howard Bulloch and David Gaffin. The Ranch LLC owns an adjacent five acre parcel.

The Desert Oasis Motel Property will remain in the name of Desert Land.

Beginning on the first day of the month following the Effective Date, Consolidated Mortgage Corporation and Aspen Financial Corporation will be paid the current interest for the following month due to Consolidated Mortgage for the Arby Avenue Property and due to Aspen Financial for the Eldorado Lane Property and the Desert Oasis Motel Property. The loans secured by these properties will be all due and payable including accrued interest, attorneys' fees and costs (but not default interest or late charges) six (6) months from the date that the first payment was due under the Plan.

The Desert Ranch case will be dismissed.

The Desert Oasis case will be dismissed.

The income produced by the properties will be used for administrative expenses and for development of the property. No payments will be made to any member for services.

**TREATMENT OF CREDITORS' CLAIMS OF THE LIQUIDATING DEBTORS**

The following is a brief summary of the claims against the Debtors and the proposed treatment under the Plan. The "Effective Date" is defined in the Plan as eleven (11) days after the entry of an order confirming the Plan unless an appeal is filed and a stay pending appeal is obtained which would prevent the consummation of the Plan until the appeal is

1  determined.

2  **Administrative Claims:**  Administrative Claims are those claims pertaining to the

3  administration of the Estates.  These claims include the ordinary and necessary expenses

4  of maintaining the estate such as U.S. Trustee Quarterly fees, professional fees,

5  management fees, trade creditors and other necessary fees incurred after the filing of the

6  Debtors' petitions for relief.  These claims will be paid in full immediately after the Effective

7  Date of the Plan or as soon thereafter as the amount of such claim is determined by the

8  Court.

9  **B.    Class 1:    Priority Claims of the Desert Land and Desert Oasis.**

10  The Bankruptcy Code calls for certain types of pre-petition claims such as tax, wage

11  and consumer deposits to be given priority status.  There are no such claims in these

12  cases.  However, if such creditors do exist, they will be paid in full immediately after the

13  Effective Date of the Plan, or as soon after as determined by the Court.

14  **C.    Class 2:    Unsecured Creditors of the Desert Land**

15  This class consists of unsecured, non-member creditors of Desert Land.  All

16  general, unsecured, non-member claims for creditors of Desert Land will be in this class.

17  These creditors are owed approximately $2,782,000 of which approximately $2,707,000

18  is owed to The Ranch LLC.  These creditors, other than The Ranch LLC,  will be paid in

19  full in six (6) equal installments beginning within thirty (30) days of the Effective Date.  The

20  Ranch LLC is willing to subordinate its claim.  The Ranch LLC will be paid from the

21  proceeds from the sale or refinancing of Desert Land's property after all other unsecured

22  creditors of Desert Land have been paid in full.

23  **D.    Class 3:  Secured Creditors of the Desert Land.**

24  Each claim in Class 3 shall be paid up to 100% of the claim to be paid as follows:

25  **Class 3a:**

26  The debt to Gonzales will be repaid within two (2) years from the Effective Date of

27  the Plan with interest at the prime rate plus 2% (or, if Gonzales disputes that this is the fair

28  market rate, such interest rate as the Bankruptcy Court, after notice and hearing,

N/H-017774

1    determines to be the fair market interest rate for this type of oversecured real estate loan)

2    from the Effective Date.  Interest will accrue and be payable at the same time as the

3    principal amount of the debt.  Debtors believe negative amortization of the debt to

4    Gonzales is permissible because the value of the property which is secured by the debt is

5    worth more than three times the amount of the debt. Debtors believe Gonzales' $41.5

6    million loan  has a $99 million equity cushion.  Upon the Effective Date, the debt to

7    Gonzales will be deemed to be not in default

8    for all purposes.  This will mean that Gonzales will not be permitted to foreclose upon the

9    property of Desert Oasis or Desert Ranch unless and until there is a subsequent default

10    of the obligation reorganized by the Plan.

11    The ownership interest in Site "A" owned by Gonzales and Fieldman shall be sold

12    at the same time and at the same price as the land owned by Desert Land and Desert

13    Oasis.

14    The security interest to Gonzales in one-half of Desert Ranch's membership interest

15    in New World LLC shall be cancelled because Gonzales is fully secured by the real

16    property owned by New World and Desert Oasis Apartments.

17    **Class 3b:**

18    The debt to Consolidated Mortgage secured by the Warm Springs Property shall be

19    paid as follows:

20    The Warm Springs Property shall be transferred to Desert Oasis

21    Investments LLC.

22    Beginning on the first day of the month following the Effective Date of

23    this Plan, Howard Bulloch and David Gaffin will pay the interest for the

24    following month at the current contractual (non-default) rate.

25    All principal and interest (at the non-default rate provided in the note)

26    accrued prior to the first day of the month following the Effective Date will be

27    due and payable six (6) months from the date the first payment under the

28    Plan was due.

N/H-017775

1    In exchange for this transfer, The Ranch LLC will subordinate its claim

2    against Desert Land.

3    **Class 3c:**

4    The debt to Aspen Financial secured by the Eldorado Lane Property shall be paid

5    as follows:

6    The Eldorado Lane Property will be transferred to The Ranch LLC.

7    Beginning on the first day of the month following the Effective Date of

8    this Plan, Howard Bulloch and David Gaffin will pay the interest for the

9    following month at the current contractual (non-default) rate.

10    All principal and interest (at the non-default rate provided in the note)

11    accrued prior to the first day of the month following the Effective Date will be

12    due and payable six (6) months from the date the first payment under the

13    Plan was due.

14    In exchange for this transfer, The Ranch LLC will subordinate its claim

15    against Desert Land.

16    **Class 3d:**

17    The debt to Aspen Financial secured by the property on which is located the Desert

18    Oasis Motel shall be paid as follows:

19    Beginning on the Effective Date, the net income of the operation of

20    the motels (after expenses of operation) will be paid to Aspen Financial. All

21    principal and interest (at the non-default rate provided in the note) accrued

22    prior to the first day of the month following the Effective Date will be due six

23    (6) months from the Effective Date.

24    **F.    Class 5 Members of the Desert Land.**

25    The members of Desert Land will retain their equity interest in Desert Land.

26    **OPERATIONS OF THE DEBTORS' BUSINESSES**

27    The Debtors shall continue to own and operate their assets until the Effective Date

28    and Desert Land shall continue operation after the Effective Date subject to the provisions

P:\WorldPortResorts\Pleadings\Disclosure Statement (final-2).wpd    11

N/H-017776

1    of the Plan.  The purpose of this Plan is provide for the reorganization of the debts of the

2    Desert Land in accordance with the Plan and applicable Bankruptcy Law.  With the

3    dismissal of the Desert Ranch and Desert Oasis cases, these entities will continue to

4    operate their assets.

5    Desert Land expects that if it has not sold Site "A" by July 2003, it will be able to

6    negotiate an extension of the option to purchase the 3.52 acres for $19.5 million.

7                                           **LITIGATION**

8    Desert Land will continue to own and prosecute its litigation against Vestin Mortgage

9    and others.  Desert Land will continue to own and attempt to collect the judgment it has

10    against Meridian Capital Partners, Inc. Debtors are not aware of any other ongoing

11    litigation at this time.

12                                           **INJUNCTION**

13    The Plan provides that confirmation will be deemed to be a permanent injunction

14    against the commencement or continuation of any action to enforce a debt or membership

15    interest provided for in the Plan against any party including Desert Oasis and Desert Ranch

16    and their members, so long as the terms of the Plan are being complied with.

17    Furthermore, this Plan provides that the exclusive jurisdiction of any issues surrounding

18    Desert Land's Plan or this bankruptcy, shall be retained by the United States Bankruptcy

19    Court, District of Nevada.  The United States Bankruptcy Court shall retain jurisdiction of

20    this case in order to resolve any issues regarding United States Trustee quarterly fees.

21                                        **TAX CONSEQUENCES**

22    The treatment of claims of creditors and members under the Plan and the payment

23    of any dividends may have federal, state, local or other tax consequences to the creditors

24    or members.  Each creditor or member should consult its own tax advisor regarding any

25    possible tax consequences.

26    The Debtors will remain limited liability companies and they will be required to file

27    federal income tax returns but will not be required to pay federal income tax on the gain

28    recognized.

N/H-017777

## ALTERNATIVES TO CONFIRMATION

If the proposed Plan is not confirmed, it is anticipated that an alternative plan will be proposed by the Debtors. The alternative plan that Debtors will propose will provide for the distribution to the secured creditors of property equal to the amount of their debt plus 10% and the distribution to members of the remaining property in accordance with their proportionate ownership in each Debtor. Debtors have been informed that Gonzales intends to propose an alternative plan providing for payment in full on the effective date of the plan of all unsecured creditors of Desert Land (except for insiders) with interest at the Federal Judgment Rate from the Petition Date and for all other secured creditors of Desert Land to be entitled to pursue the remedies as provided for in their security documents as of the effective date.

If the Debtors were liquidated by a Trustee, the Debtors predict that the result would be as described in **Exhibit "4."** Debtors believe that the Trustee would obtain a sales price for the real estate in excess of the secured debt and unsecured creditors would be paid in full.

## APPROVAL OF PLAN

In order to obtain confirmation of the Plan by the Bankruptcy Court, the Plan must be accepted by a majority of the voting creditors for Desert Land in each Class who hold at least two-thirds (2/3) of the total amount of voting claims in each respective Class. The creditors and members of Desert Ranch and Desert Oasis do not have the right to vote for or against this Plan.

///
///
///
///
///
///
///

N/H-017778

1    Under the Code, as long as the Plan is accepted by the non-insider holders of

2    claims or interest in at least one (1) impaired Class of Desert Land, the Plan may be

3    confirmed by the Court by "cramming down" the Plan provisions against the non-accepting

4    Classes of creditors.  The provisions for effecting a "cram down" are very detailed and

5    complex, and creditors should consult the Code and their own counsel in assessing the

6    effect of a "cram down" on their position.  Debtors may seek to use the "cram down"

7    provisions if there are dissenting Classes of creditors or equity interest holders.

8    DATED: December ___, 2002            Debtors-in-Possession

9

10                                By: _____

11                                   David Gaffin, Manager and authorized
                                     signator of all Debtors

12   Submitted by:

13   SCHWARTZER & McPHERSON LAW FIRM

14

15   Lenard E. Schwartzer, Esq.
     Nevada Bar No. 0399
16   3800 Howard Hughes Parkway, Suite 1100
     Las Vegas NV 89109
17   (702) 693-4230
     Attorneys for Debtors

18

19

20

21

22

23

24

25

26

27

28

N/H-017779



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "1"

N/H-017780



N/H-017781



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "2"

N/H-017782



N/H-017783



N/H-017784

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "3"

N/H-017785

## DESERT LAND, LLC FINANCIAL STATEMENT

3951 S. Las Vegas Blvd.
Las Vegas, Nevada  89119
(As of: 9-30-02)

**Assets**

Current Assets
| | | |
|---|---|---|
| Cash - Wells Fargo Bank | $9,317 | |
| Cash - Wells Fargo Bank Money Market | $16,355 | |
| Total Current Assets | | $25,672 |

Investments
| | | |
|---|---|---|
| Hacienda Site | $104,633,016 | |
| Olympus Inn Site (Option) | $22,842,015 | |
| Desert Oasis Motel | $20,998,098 | |
| LV Blvd. & Arby 19.2 acres | $12,090,000 | |
| Windy & Eldorado 10 Acres | $6,534,000 | |
| Sovereign Bank Building Farmington, CT. | $670,730 | |
| Sovereign Bank Building Enfield CT. | $838,800 | |
| Total Investments - Real Estate | | $168,606,659 |
| Total Assets | | $168,632,331 |

**Liabilities**

| | | |
|---|---|---|
| Gonzales | $33,206,250 | |
| FLT Trust (Olympus Inn-Option) | $19,500,000 | |
| Aspen Financial (D. Oasis Motel) | $11,900,000 | |
| Consolidated Mortgage | $7,530,000 | |
| Aspen Financial (Windy & Eldorado) | $4,182,000 | |
| The Ranch, LLC | $2,722,000 | |
| First Security Bank S Bank Farmington | $560,105 | |
| First Security Bank S Bank Enfield | $700,132 | |
| Total Liabilities | | $80,300,487 |

| | | |
|---|---|---|
| **NET WORTH** | | $88,331,844 |

N/H-017786

---

**DESERT OASIS APARTMENTS, LLC FINANCIAL STATEMENT**

3951 S. Las Vegas Blvd.
Las Vegas, Nevada  89119
(As of: 9-30-02)

---

**Assets**

Current Assets
    Cash - Bank of America M Market         $129,641

      Total Current Assets                       $129,641

Investments
    Oasis Apartments 128 Units         $43,211,520
      Total Investments - Real Estate         $43,211,520

      Total Assets                       $43,341,161

**Liabilities**
    Gonzales                     $10,541,667

      Total Liabilities             $10,541,667

          **NET WORTH**         $32,799,494

N/H-017787

**DESERT RANCH, LLC FINANCIAL STATEMENT**

3951 S. Las Vegas Blvd.
Las Vegas, Nevada  89119
(As of: 9-30-02)

**Assets**

| | |
|---|---|
| New World, LLC Equity | $124,107,000 |
| **NET WORTH** | $124,107,000 |

N/H-017788



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "4"

N/H-017789

Sent By: ;    Case 02-16202-bam    Doc 2548335tered 01/03/03 13:09.04 : OPPage 25 of 28age 5/5

# Desert Land LLC
## Inflows and Outflows
(1/01/01 to 12/31/01)

**Inflows**

| | | |
|---|---|---|
| Billboard Income | $40,000 | |
| Escrow Overfunding | $2,894 | |
| Interest Income | $6,031 | |
| Lease & Rental Income | $42,356 | |
| Loan Proceeds | $2,656,034 | |
| Motel Owner Distribution | $95,000 | |
| Owner Contribution | $69,621 | |
| | | $2,911,936 |

**Outflows**

| | | |
|---|---|---|
| Capital Contribution David | $45,000 | |
| Capital Contribution Howard | $370,228 | |
| Charitable Donations | $750 | |
| Dues & Subscriptions | $2,004 | |
| Entertainment | $2,025 | |
| Fees & Permits | $558 | |
| Insurance | $2,181 | |
| Interest Expense | $700,919 | |
| Investments | $116,020 | |
| Legal & Professional | $801,009 | |
| Maintenance | $41,699 | |
| Miscellaneous | $1,970 | |
| Office | $39,742 | |
| Plans Supplies | $2,294 | |
| Property Taxes | $106,612 | |
| Travel | $13,926 | |
| Utilities | $4,580 | |
| | | $2,251,516 |

| | | |
|---|---|---|
| Overall Total | | $660,420 |

Received Time Nov.27.  1:29PM

N/H-017790

Sent By: ;    Case 02-16202-bam    Doc 269ce943ad5cb727 Entered 01/03/03 16:02:04 :03Page 26 of 28 Page 4

# Desert Land LLC
## Inflows and Outflows
### (1/01/02 to 9/30/02)

**Inflows**

| | | |
|---|---:|---:|
| Billboard Income | $36,250 | |
| Interest Income | $2,434 | |
| Lease & Rental Income | $4,988 | |
| Loan Proceeds | $2,076,867 | |
| Motel Distribution Owner | $55,000 | |
| Owner Contribution | $147,832 | |
| | | $2,323,371 |

**Outflows**

| | | |
|---|---:|---:|
| Capital Contribution David | $70,000 | |
| Capital Contribution Howard | $95,000 | |
| Charitable Donations | $200 | |
| Dues & Subscriptions | $1,071 | |
| Entertainment | $2,012 | |
| Fees & Permits | $229 | |
| Insurance | $3,619 | |
| Interest Expense | $1,991,704 | |
| Investments | $486,000 | |
| Lease FLT Trust | $80,000 | |
| Legal & Professional | $227,507 | |
| Maintenance | $3,465 | |
| Miscellaneous | $1,075 | |
| Office | $25,373 | |
| Property Taxes | $108,612 | |
| Travel | $3,461 | |
| Trustees Fees | $3,750 | |
| Utilities | $6,195 | |
| | | $3,109,273 |

|  |  |  |
|---|---:|---:|
| Overall Total | | -$785,902 |

Received Time Nov.27. 1:29PM

N/H-017791

## Desert Oasis Apartments LLC
### Inflows and Outflows
(1/01/01 to 12/31/01)

<u>Inflows</u>

| | | |
|---|---|---|
| Interest Income | $498 | |
| Owner Distribution | $412,819 | |
| | | $413,317 |

<u>Outflows</u>

| | | |
|---|---|---|
| Interest Expense | $20,000 | |
| Legal & Professional | $362,357 | |
| Maintenance | $3,855 | |
| | | $386,212 |
| | Overall Total | $27,105 |

N/H-017792

## Desert Oasis Apartments LLC
## Inflows and Outflows
### (1/01/02 to 9/30/02)

**Inflows**

| | | |
|---|---|---|
| Interest Income | $548 | |
| Owner Distribution | $378,457 | |
| | | $379,005 |

**Outflows**

| | | |
|---|---|---|
| Interest Expense | $138,535 | |
| Investments | $36,000 | |
| Lease Expense | $10,000 | |
| Legal & Professional | $116,075 | |
| Office | $2,932 | |
| Property Taxes | $37,907 | |
| Miscellaneous | $81 | |
| Trustees Fees | $500 | |
| | | $342,029 |

| | | |
|---|---|---|
| Overall Total | | $36,976 |

N/H-017793

ORIGINAL

RECEIVED
FILED

APR 17  9 24 AM '03

1   Lenard E. Schwartzer
    Nevada Bar No. 0399
2   Jeanette E. McPherson
    Nevada Bar No. 5423
3   Schwartzer & McPherson Law Firm
    3800 Howard Hughes Pkwy, Suite 1100
4   Las Vegas, NV 89109
    Telephone: (702) 693-4230
5   Facsimile: (702) 892-0122
    Attorneys for Debtors and
6   Debtors in Possession

7

8                    UNITED STATES BANKRUPTCY COURT
9
                         DISTRICT OF NEVADA
10

11  In re                              BK-S-02-16202 RCJ
                                       Chapter 11
12  DESERT LAND, LLC,
                                       BK-S-02-16204
13           Debtor.                   Desert Oasis Apartments, LLC
                                  /    BK-S-02-16205
14  In re                              Desert Ranch, LLC

15  DESERT OASIS APARTMENTS, LLC,      SECOND   AMENDED   PLAN   OF
                                       REORGANIZATION
16           Debtor.
                                  /    Date: January 29, 2003
17  In re                              Time: 9:30 a.m.

18  DESERT RANCH, LLC,

19           Debtor.

20  _____/

21         Desert Land, LLC ("Desert Land"), Desert Oasis Apartments, LLC ("Desert Oasis")

22  and Desert Ranch, LLC ("Desert Ranch") (collectively, the "Debtors") by and through their

23  counsel, Schwartzer & McPherson Law Firm, are proposing this Plan Of Reorganization

24  (the "Plan") pursuant to 11 U.S.C. § 1123, and are seeking approval of the Plan by the

25  creditors and members of Desert Land and by the Court.  Under the Plan, the debts of

26  Desert Land are reorganized and the Chapter 11 cases of Desert Oasis and Desert Ranch

27  are dismissed.

28  ///

# ARTICLE I

## DEFINITIONS:

"Allowed Claim" shall mean a pre-petition claim against or an interest in Desert Land to the extent that such claim or interest has been scheduled as undisputed, non-contingent and liquidated.  Claims may also be allowed by virtue of their having been filed under § 1111(a) and by specific order of the Court.

"Administrative Expense or Claim" shall mean those expenses incurred after the commencement of the case and which are allowed under § 503 of the Code.  Such expenses include wages, salaries, rents, taxes, management fees, trade credits and the like which are incurred in the ordinary course of the Debtors' business, after the commencement of the case, which shall be paid in the ordinary course of the Debtors' business.  Such expenses include all of the fees and costs for Debtors' counsel which shall be paid on the Effective Date or when allowed by the Court.

"Aspen" shall mean Aspen Financial Services, Inc. or its affiliates.

"Bankruptcy Code" or "Code" refers to Title 11 of the United States Code.

"Bankruptcy Court" or "Court" refers to the United States Bankruptcy Court for the District of Nevada, Southern Division, or such other Court where the venue may be proper.

"Case" shall mean these joint proceedings for the Debtors for relief under Chapter 11 presently pending in this Court.

"Claim" shall mean the right to payment or performance as defined under § 101(4) of the Code.

"CMC" shall mean Consolidated Mortgage corporation or its affiliates.

"Confirmation" shall mean the entry of an order of the Court which approves this Plan.

"Creditor" shall mean any entity that has a claim against Desert Land or the estate, and which arose prior to the filing of the case.

"Debtors" means, collectively, Desert Land, LLC, Desert Oasis Apartments, LLC and Desert Ranch, LLC.

2nd Amended Plan of Reorganization 041603.wpd

2

1        "Effective Date of the Plan" or "Effective Date" shall mean the first business day ten

2 (10) days after Confirmation.

3        "Fieldman" shall mean Barry Fieldman, Makena Entertainment Las Vegas

4 Boulevard, LLC and their affiliates as defined in Bankruptcy Code § 101(31).

5        "Gonzales" shall mean Tom Gonzales and his affiliates as defined in Bankruptcy

6 Code § 101(31).

7        "Members" shall mean members of Desert Land as of the Petition Date and their

8 affiliates as defined in Bankruptcy Code § 101(31).

9        "New World" shall mean New World LLC, a Nevada limited liability company.

10        "Parcel A" shall have the same meaning as set forth in the Settlement Agreement.

11        "Petition Date" means the day these cases were filed, e.g., May 31, 2002, and upon

12 which an order for relief was entered.

13        "Plan" means this plan of reorganization under § 1121 proposed by the Debtors,

14 which may be amended or modified, from time to time.

15        "Priority Claims" shall mean those allowed claims and expenses that are defined in

16 § 507 of the Code, or that otherwise arise by operation of law.

17        "Secured Creditor" shall mean any creditor of Desert Land holding an allowed

18 secured claim under the Code.

19        "Settlement Agreement" shall mean the agreement between the Debtors and

20 Gonzales attached hereto as Exhibit "A"

21        "Unsecured Creditor" shall mean any creditor of Desert Land who is not a Secured

22 Creditor and who is holding an allowed claim which is not a Priority Claim.

23 **ARTICLE II**

24 **CLASSIFICATION OF CREDITORS AND INTERESTS**

25        The Debtors hereby propose the following classification of creditors, pursuant to 11

26 U.S.C. § 1123(a)(1):

27        CLASS 1 shall consist of priority creditors of Desert Land.

28        CLASS 2 shall consist of Unsecured Creditors of Desert Land.

2nd Amended Plan of Reorganization 041603.wpd

3

N/H-017796

1    CLASS 3 shall consist of the Secured Creditors of Desert Land.  Class 3 shall be

2  divided into a subclass for each Secured Creditor.

3            a.    Gonzales

4            b.    CMC

5            c.    Aspen (debt secured by Eldorado Lane Property)

6            d.    Aspen (debt secured by Desert Oasis Motel Property)

7    CLASS 4 shall consist of the Members.

8                            **ARTICLE III**

9                        **TREATMENT OF CLASSES**

10        Class 1:        These Claims will be paid in full upon confirmation except to the extent

11  that the claim holders agree to some other treatment.

12        Class 2:        These Claims shall will be paid in full in six (6) equal monthly

13  installments beginning within thirty (30) days of the Effective Date of the Plan, except that

14  the claim of The Ranch LLC shall be subordinated to all claims and shall not be paid until

15  all other Unsecured Creditors have been paid in full and funds are available from the sale

16  or refinancing of Desert Land's property.

17        Class 3:        Each Claim in Class 3 shall be paid up to 100% of the Claim to be paid

18  as follows:

19            A.    Gonzales.    Pursuant to and subject to the terms and conditions as

20  more fully set forth in the Settlement Agreement by and among Debtors and Gonzales, the

21  debt to Gonzales will be cancelled.  On the Effective Date, and pursuant to the terms and

22  subject to the conditions as more fully set forth in the Settlement Agreement:

23        (a)    On or before the Effective Date, Desert Ranch will convey its 65%

24  membership interest in New World to Gonzales free and clear of any and all liens and

25  encumbrances.

26        (b)    On or before the Effective Date, Gonzales will convey his undivided 5%

27  interest in Parcel A to Desert Land free and clear of any and all liens and encumbrances

28  other than those of record as of Confirmation.

2nd Amended Plan of Reorganization 041603.wpd                    4

1    (c)    On or before the Effective Date, Gonzales will cancel that certain debt in the

2  amount of $41.5 million made by Gonzales to Desert Land and Desert Oasis, any accrued

3  interest and attorneys' fees and costs and will reconvey the deed of trust on Parcel A and

4  release all other security for the debt.

5    (d)    On or before the Effective Date, Gonzales will cause Fieldman to convey

6  Fieldman's undivided 0.5% interest of Parcel A to Desert Land free and clear of any and

7  all liens and encumbrances other than those of record as of Confirmation.

8    (e)    *Parcel A Transfer Fee.*  Concurrently with a Parcel A Transfer, Desert Land

9  and/or Desert Oasis shall pay to Gonzales a cash payment (the "*Parcel A Transfer Fee*")

10  of either (i) $7.5 million in the event that (A) there is a Bona Fide Escrow opened for the

11  Parcel A Transfer on or before 90 days following Confirmation (as defined in the Debtors'

12  Plan) and in fact closes within six months of the date such Bona Fide Escrow was opened

13  or (B) the Parcel A Transfer Fee is paid within six months of Confirmation; or (ii) $10 million

14  in the event that the Parcel A Transfer occurs more than 90 days following Confirmation,

15  with the exception of an escrow for a Parcel A Transfer which was opened on or before 90

16  days following Confirmation and does in fact close within six months of the date that such

17  escrow was opened.  Notwithstanding the foregoing to the contrary, (i) upon a Parcel A

18  Equity Transfer, Desert Land and/or Desert Oasis shall not be required to pay the entire

19  Parcel A Transfer Fee, but shall pay Gonzales 50% of the Net Proceeds received from the

20  Parcel A Equity Transfer until such time as the Parcel A Transfer Fee has been paid in full;

21  and (ii) all payments on account of a Parcel A Equity Transfer shall be credited to and

22  reduce the amount of the Parcel A Transfer Fee subsequently due.  The Parcel A Transfer

23  Fee shall be evidenced by the Parcel A Memorandum, which shall not, however, constitute

24  a mortgage, deed of trust or other lien on Parcel A, and payment thereof shall be

25  subordinate to any Parcel A Permitted Financing. Gonzales will subordinate his right to the

26  payment of the Parcel Transfer Fee to any such Parcel A Permitted Financing and shall

27  execute, acknowledge and deliver, from time to time, upon no less than 20 days written

28  notice to Gonzales, such subordination agreement(s) as may be reasonably required by

N/H-017798

1 the title insurer insuring the liens or security interests related to the Permitted Parcel A
2 Financing.

3     As used in this Plan:

4     *"Bona fide escrow"* shall mean (i) an escrow opened with a party who deposits the
5 greater of $1,000,000 or 5% of the purchase price in escrow (up to $2,500,000), (ii) which
6 provides that the deposit will become non-refundable in 90 days from the opening of the
7 escrow unless the escrow is cancelled, and (iii) which provides that the escrow must close
8 within six (6) months from the opening of the escrow.

9     *"Mortgage"* shall mean a mortgage, deed of trust, security agreement and/or
10 collateral assignment securing a bona fide loan for value.

11     *"Net proceeds"* shall mean the gross proceeds of a Parcel A Equity Transfer, less
12 the transaction costs directly related to the Parcel A Equity Transfer paid to unrelated
13 parties, including, but not limited to, brokerage commissions paid to parties other than
14 Howard Bulloch and/or David Gaffin. Net proceeds shall not include consideration wholly
15 in the form of stock, membership, partnership or other equity interests in a corporation,
16 limited liability company, partnership or other entity wholly owned or controlled by Howard
17 Bulloch or David Gaffin or their trusts. Gonzales acknowledges and agrees that
18 membership interests in Desert Land and/or Desert Oasis may be transferred in
19 consideration of past services or other consideration and that, so long as the Net Proceeds
20 received by the transferor are nothing more than such past consideration, the Net
21 Proceeds shall be deemed to be zero.

22     *"Parcel A Transfer"* shall mean: (a) the sale, transfer or other conveyance of all or
23 any part of Parcel A, other than (i) a Parcel A Mortgage or (ii) sales, transfers or other
24 conveyances or purchases for easements or to realign property lines, or condemnations
25 involving less than 5% of the gross Parcel A land area; or (b) the sale, transfer or other
26 conveyance of any legal or beneficial interest in the entity or entities that own Parcel A (a
27 *"Parcel A Equity Transfer"*).

28     *"Parcel A Permitted Financing"* shall mean (i) one or more Mortgages against Parcel

N/H-017799

1   A or any part thereof, securing financing in the principal amount of up to $25,000,000 at

2   any one time outstanding and (ii) a Mortgage securing the purchase of the real property

3   subject to the FLT Option, the proceeds of which are used exclusively for the purchase of

4   such real property.

5          (f)   The $25,000,000 portion of the Parcel A Permitted Financing shall be used to

6   pay expenses of Desert Land and The Ranch, LLC to maintain, develop and promote the

7   sale of the property owned by these entities, to pay the expenses of these entities, to repay

8   or refinance the loans secured by the property owned by Desert Land or The Ranch, LLC

9   (which in the case of The Ranch, LLC are the three loans in the approximate amount of

10  $2,200,000 each from Aspen Financial Services), to pay reasonable compensation to

11  Howard Bulloch and David Gaffin and up to $5,000,000 (the "safe harbor" amount) for any

12  purpose, including a distribution to members.  Desert Land shall deliver to Gonzales'

13  counsel a report on expenditures from Parcel A Permitted Financing on August 1, 2003

14  and the first day of each three (3) months thereafter until the Parcel A Transfer Fee has

15  been paid in full.

16         (g)   A memorandum will be recorded in the Office of the County Recorder of Clark

17  County, Nevada to give notice of Gonzales' right to the Parcel A Transfer Fee and that the

18  right to the Parcel A Transfer Fee will be subordinate to Parcel A Permitted Financing

19  which may encumber all or portions of Parcel A.

20         (h)   Gonzales and the Debtors shall be bound to the terms of the Settlement

21  Agreement.

22         B.   Consolidated Mortgage Corporation.   On the Effective Date, the

23  19.2 acres of undeveloped real property which is subject to the deed of trust for the benefit

24  of CMC (the "Arby Avenue Property") shall be conveyed to Desert Oasis Investments, LLC

25  ("Desert Oasis Investments"), a Nevada limited liability company owned by Howard Bulloch

26  and David Gaffin or their trusts.  Beginning on the Effective Date, (a) payment shall be

27  made of the interest accrued on the note secured by the Arby Avenue Property (the "CMC

28  Note") at the non-default rate provided in the CMC Note from February 1, 2003 to the end

2nd Amended Plan of Reorganization 041603.wpd                7

1   of the month of the Effective Date and (b) monthly payments on the first day of each month
2   beginning after the Effective Date of current interest only at the non-default rate provided
3   in the CMC Note. All principal and interest (at the non-default rate provided in the CMC
4   Note) accrued prior to February 1, 2003 and attorneys' fees and costs (but not penalties
5   or late charges) will be all due and payable August 1, 2003. CMC will retain its existing lien
6   on the property transferred to Desert Oasis Investments. Payments made by Desert Oasis
7   Investments or Desert Land shall be deemed made for fair and adequate consideration.
8   In the event of default by Desert Land or Desert Oasis Investments, CMC shall be
9   immediately entitled to record a Notice of Breach and Election to Sell the Arby Avenue
10  Property, and all past-due interest shall be recalculated at the default rate specified in the
11  CMC Note, and shall all then be due and payable. Additional terms for this class are as
12  follows:

13      1.      The Confirmation Order shall provide that (a) Desert Oasis Investments is
14              strictly prohibited from seeking bankruptcy protection until CMC is paid in full;
15              (b) Desert Oasis Investments will not accrue unsecured debt until CMC is
16              paid in full; (c) Desert Oasis Investments will execute a stipulation that the
17              automatic stay of 11 U.S.C. §362 will terminate to permit CMC to foreclose
18              on the Arby Avenue Property if any bankruptcy petition is filed by or against
19              Desert Oasis Investments; and (d) Desert Oasis Investments may not further
20              transfer the Arby Avenue Property until CMC is paid in full without the prior
21              written consent of CMC.

22      2.      On the Effective Date, Desert Land or Desert Oasis Investments will pay to
23              CMC a forbearance fee equal to the difference between the default rate of
24              interest under the CMC Note and the contract rate under the CMC Note (the
25              "CMC Forbearance Fee") in the approximate amount of $38,000.

26      3.      On the Effective Date, Desert Land or Desert Oasis Investments will
27              commence monthly interest payments to CMC on the first day of each month

28

2nd Amended Plan of Reorganization 041603.wpd                8

1    at the non-default rate, for a period ending August 1, 2003 (the "Initial CMC

2    Payment Period"). If payments during the Initial CMC Payment Period are

3    timely made and no other events of default have occurred, on the date that

4    the sixth payment is due, Debtor shall have the option of obtaining a six (6)

5    month extension (the "CMC Extension Period") upon the payment of an

6    extension fee equal to 1% of the principal balance in the approximate

7    amount of $75,000.

8    4.    During the CMC Extension Period, Desert Land or Desert Oasis Investments

9    will pay to CMC six (6) monthly interest payments at the non-default rate on

10    the first day of each month.  At the expiration of the CMC Extension Period,

11    if the debt is not paid in full, CMC may commence foreclosure on the Arby

12    Avenue Property.

13    5.    Interest for the period prior to Confirmation will accrue at the non-default rate

14    and will be payable at the end of either the Initial CMC Payment Period, or

15    if the extension has been obtained, at the end of the CMC Extension Period.

16    6.    Interest will accrue at the non-default rate from Confirmation.

17    7.    In the event of any default under the terms of this section B of the Plan (the

18    section that applies to the treatment of CMC), CMC may immediately

19    reinstate default interest.

20    8.    Desert Land or Desert Oasis Investments will pay all attorney's fees, costs,

21    and foreclosure costs (which, to Confirmation, are estimated to be in the

22    approximate amount of $20,000) no later than the end of the Initial CMC

23    Payment Period, or if the extension has been obtained, at the end of the

24    CMC Extension Period.

25    9.    In event of appeal of the order confirming the Plan by a party other than

26    CMC, Desert Land and Desert Oasis Investments will continue to perform

27    their obligations under the Plan to CMC regardless of the appeal or of a stay

28    pending appeal.

N/H-017802

C.    Aspen.

1.    On the Effective Date, the two (2) five-acre parcels of undeveloped real property which are subject to deeds of trust for the benefit of Aspen (the "Eldorado Lane Property") shall be conveyed to The Ranch, LLC ("The Ranch"). Beginning on the Effective Date, payments on the notes secured by the Eldorado Lane Property (the "Aspen Eldorado Notes") for the period from February 1, 2003 through July 31, 2003 shall be made on the Effective Date (for the period of February 1, 2003, through the first business day of the calendar month in which the Effective Date occurs) and continuing on the first business day of each succeeding calendar month in the following amounts: (a) accrued interest at the non-default rate for the preceding month(s), plus (b) one-half of the amount of such accrued interest at the non-default rate for the preceding month(s) (until all accrued and unpaid interest for the period prior to February 1, 2003 shall have been paid). By these payments, current interest, as well as all accrued but unpaid interest at the nondefault rate for the period prior to February 1, 2003, shall be paid by August 1, 2003. All principal and accrued interest (at the non-default rate provided in the respective Aspen Eldorado Note) shall be due and payable August 1, 2003. Aspen shall retain its existing lien on the property transferred to The Ranch. Payments made by The Ranch or Desert Land shall be deemed made for fair and adequate consideration. In the event of any default by Desert Land or The Ranch, Aspen shall be immediately entitled to record a Notice of Breach and Election to Sell the Eldorado Lane Property, and all interest past due shall be recalculated at the default rate specified in the respective Aspen Eldorado Note, and shall all then be due and payable. Additional terms for this class are as follows:

a.    The Confirmation Order shall provide that (i) The Ranch is strictly prohibited from seeking bankruptcy protection until Aspen is paid in full; (ii) The Ranch shall not incur nor allow any unsecured debt to be incurred until Aspen is paid in full; (iii) The Ranch shall execute a stipulation that any automatic stay of 11 U.S.C. §362 shall terminate to permit Aspen to foreclose on the Eldorado Lane Property if any bankruptcy petition is filed by or against The Ranch; (iv) The Ranch shall not further transfer nor

2nd Amended Plan of Reorganization 041603.wpd

10

1    encumber the Eldorado Lane Property or any interest therein, until after Aspen is paid in

2    full, without the prior written consent of Aspen; and (v) The Ranch shall irrevocably amend

3    its Operating Agreement to provide that it may not file a voluntary bankruptcy petition

4    without the written permission of Aspen, until after Aspen is paid in full.

5            b.      On or before August 1, 2003, Desert Land or The Ranch shall pay to

6    Aspen a forbearance fee equal to the difference between the default rate of interest and

7    the contract rate (the "Aspen Eldorado Forbearance Fee") in the approximate amount of

8    $21,000.

9            c.      If payments prior to August 1, 2003 as stated above are timely made

10    and no event of default hereunder have occurred, on or before August 1, 2003, Desert

11    Land or The Ranch shall have the option of obtaining a three (3) month extension (the

12    "Aspen Eldorado Extension Period"), so long as:

13                    i.      during the Aspen Eldorado Extension Period, Desert Land or

14                            The Ranch shall pay to Aspen on the first business day of such

15                            month interest payments calculated at the non-default rate,

16                            and

17                    ii.     at the expiration of the Aspen Eldorado Extension Period, if the

18                            debt is not paid in full, Aspen may complete foreclosure on the

19                            Eldorado Lane Property, and all accrued and unpaid interest

20                            shall be recalculated at the default rate of interest specified in

21                            the Aspen Eldorado Note and shall then be due and payable.

22            d.      Interest will accrue at the non-default rate.

23            e.      In the event of any default under the terms of this section C.1 of the

24    Plan (the section that applies to the treatment of Aspen), Aspen may immediately reinstate

25    the default interest rate Aspen Eldorado Notes.

26            f.      Desert Land or The Ranch shall pay all attorney's fees, costs, and

27    foreclosure costs (which, to Confirmation, are estimated to be,  when combined with the

28

2nd Amended Plan of Reorganization 041603.wpd                    11

1   fees incurred relating to the Aspen Desert Oasis Note, in the approximate amount of

2   $30,000) no later than 6 months from Confirmation, or if the extension has been obtained,

3   at the end of the Aspen Eldorado Extension Period.

4          g.      In event of appeal of the order confirming the Plan, Desert Land and

5   The Ranch shall continue to perform their obligations to Aspen under the Plan, regardless

6   of the appeal or of a stay pending appeal.

7          2.      The 3.02 acre parcel of real property on which is located the

8   Desert Oasis Motel, and which is subject to a deed of trust for the benefit of Aspen

9   Financial Corporation (the "Desert Oasis Motel Property") shall remain titled in the name

10   of Desert Land. Beginning on the Effective Date, payments on the notes secured by the

11   Desert Oasis Motel Property (the "Aspen Desert Oasis Motel Notes") for the period from

12   February 1, 2003 through July 31, 2003 shall be made on the Effective Date (for the period

13   of February 1, 2003, through the first business day of the calendar month in which the

14   Effective Date occurs) and continuing on the first business day of each succeeding

15   calendar month in the following amounts: (a) accrued interest at the non-default rate for

16   the preceding month(s), plus (b) one-half of the amount of such accrued interest at the

17   non-default rate for the preceding month(s) (until all accrued and unpaid interest for the

18   period prior to February 1, 2003 shall have been paid). By these payments, current

19   interest, as well as all interest accrued for the period prior to February 1, 2003, shall be

20   paid. All principal and accrued interest (at the non-default rate provided in the respective

21   Aspen Desert Oasis Motel Note) shall be all due and payable on August 1, 2003. Aspen

22   shall retain its existing lien on the Desert Oasis Motel. In the event of a default by Desert

23   Land, Aspen shall be immediately entitled to record a Notice of Breach and Election to Sell

24   the Desert Oasis Motel Property, and all interest past due shall be recalculated at the

25   default rate specified in the respective Aspen Desert Oasis Motel Note, and shall then be

26   due and payable. Additional terms for this class are as follows:

27          a.   The Confirmation Order shall provide that (i) Desert Land is strictly

28   prohibited from seeking bankruptcy protection until Aspen is paid in full; (ii) Desert Land

2nd Amended Plan of Reorganization 041603.wpd        12

N/H-017805

1  will not incur or allow unsecured debt to be incurred (except in the ordinary course of

2  business) until Aspen is paid in full; (iii) Desert Land shall execute a stipulation that any

3  automatic stay of 11 U.S.C. §362 shall terminate to permit Aspen to foreclose on the

4  Desert Oasis Motel Property if any bankruptcy petition is filed by or against Desert Land;

5  (iv) Desert Land shall not further transfer or encumber the Desert Oasis Motel Property or

6  any interest therein, until Aspen is paid in full, without the prior written consent of Aspen;

7  and (v) Desert Land shall immediately amend its Operating Agreement to provide that it

8  may not file a voluntary bankruptcy petition without the written permission of Aspen, until

9  after Aspen is paid in full.

10          b.    On or before August 1, 2003, Desert Land shall pay to Aspen a

11  forbearance fee equal to the difference between the default rate of interest and the

12  contract rate (the "Aspen Desert Oasis Forbearance Fee") in the approximate amount of

13  $60,000.

14          c.    If payments prior to August 1, 2003 as stated above are timely made

15  and no events of default hereunder have occurred, on the date that the sixth monthly

16  payment is due, Desert Land shall have the option of obtaining a three (3) month extension

17  (the "Aspen Desert Oasis Extension Period"), so long as:

18          i.    During the Aspen Desert Oasis Extension Period, Desert Land

19                or The Ranch shall pay to Aspen on the first business day of

20                such month interest payments calculated at the non-default

21                rate,

22          ii.   at the expiration of the Aspen Desert Oasis Extension Period,

23                if the debt is not paid in full, Aspen may complete foreclosure

24                on the Desert Oasis Motel Property, and all interest accrued

25                and unpaid interest shall be recalculated at the default rate of

26                interest specified in the Note and shall then be immediately

27                due and payable.

28

2nd Amended Plan of Reorganization 041603.wpd                13

N/H-017806

1    d.    Interest shall accrue at the non-default rate.

2    e.    In the event of any default in under the terms of this section C.2 of the

3  Plan (the section that applies to the treatment of Aspen), Aspen may immediately reinstate

4  the default interest rate on the Aspen Desert Oasis Note.

5    f.    Desert Land shall pay all attorney's fees, costs, and foreclosure costs

6  (which, to Confirmation, are estimated to be, when combined with the fees incurred relating

7  to the Aspen Eldorado Note, in the approximate amount of $30,000) no later than 6 months

8  from Confirmation, or if the extension has been obtained, at the end of the Aspen Desert

9  Oasis Extension Period.

10    g.    In event of appeal of the order confirming the Plan by a party other

11  than Aspen, Desert Land shall continue to perform its obligations under the Plan to Aspen,

12  regardless of the appeal or of a stay pending appeal.

13    h.    Desert Land shall pay its debts to third parties promptly and timely, but

14  in no event later than 15 days after the due date, unless contested in good faith by Desert

15  Land.  Monthly, Desert Land shall provide Aspen with a copy of the monthly management

16  report from the management company operating the Desert Oasis Motel and a statement

17  that all accounts payable are current or, if applicable, the nature of the dispute with regard

18  to unpaid claims.

19    Class 4:    The Members shall retain their interests in the Debtors as of the

20  Petition Date.  The Desert Ranch case will be dismissed.  The Desert Oasis case will be

21  dismissed.

22    **ARTICLE IV**

23    **CLASSES IMPAIRED BY THE PLAN**

24  All classes of creditors of Desert Land will be impaired by the plan except Class 1.

25  Members of Desert Land are impaired.

26    **ARTICLE V**

27    **MEANS FOR THE PLAN'S IMPLEMENTATION**

28  Funding of the plan and of ongoing operations of the business will be implemented

2nd Amended Plan of Reorganization 041603.wpd                    14

N/H-017807

1 | through several means:

2 |     (a)    By refinancing property of the Debtors.

3 |     (b)    Future earnings from the sale or lease of the properties owned by Desert

4 |     Land.

5 |     (c)    Howard Bulloch and David Gaffin.

6 |     Debtors may also utilize any net proceeds of any causes of action, rights, claims

7 | and demands belonging to it as an additional source of funding for the Plan. Desert Land

8 | shall hold all assets free and clear of all claims and interests of creditors and equity

9 | security holders and free and clear of all liens, encumbrances, liabilities and obligations of

10 | debtors and debtors-in-possession, except as otherwise specifically stated in the Plan.

11 |     Howard Bulloch and David Gaffin (and their assigns) shall retain 100% of the

12 | membership interests in Desert Land subject to all creditors being paid in full.

13 |     Debtors, and all other necessary parties, are authorized and empowered, without

14 | further Court order, to execute and deliver any instrument, security agreement or

15 | document, and to perform any act, that is necessary, desirable, or required for the

16 | consummation of the Plan, including, without limitation, executing any appropriate

17 | documents contemplated by, related to or in accordance with the Settlement Agreement,

18 | to effectuate and consummate the transactions provided for in the Settlement Agreement.

19 |     Consistent with the Plan and Settlement Agreement, Reorganized Desert Land and

20 | the other Debtors are hereby authorized to perform and transfer all of the transferred or

21 | exchanged assets free and clear of all liens, claims, interests and encumbrances (except

22 | as otherwise provided in the Plan and this Confirmation Order) as provided for in the

23 | Settlement Agreement and to take all actions necessary or appropriate to implement,

24 | consummate and effectuate the transactions contemplated thereby, together with all

25 | additional instruments and documents that may be reasonably necessary or desirable to

26 | implement the Settlement Agreement and the transactions contemplated thereby, and to

27 | take all further actions as may be reasonably be requested by any of the parties for the

28 | purpose of assigning, transferring, granting, conveying and conferring to the parties or

2nd Amended Plan of Reorganization 041603.wpd       15

N/H-017808

1    reducing to possession any or all of the transferred or exchanged assets, as may be

2    necessary or appropriate to the performance of the Debtors' obligations as contemplated

3    by the Settlement Agreement, all without further action by the Court or corporate action by

4    the directors, members or stockholders (or similar positions) of Debtors.

5    **ARTICLE VI**

6    **ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

7    All executory contracts of Desert Land not heretofore assumed are hereby

8    assumed.  All unexpired leases of Desert Land not heretofore assumed are hereby

9    assumed.

10    The executory contracts and unexpired leases of Desert Land which relate to the

11    real estate owned by New World will be assigned to New World, specifically the following:

12    (A)     Ground Lease dated September 1, 1999 between Mary Bartsas as landlord

13    and Desert Land, LLC as tenant;

14    (B)     Management contract between Hospitality Associates and Desert Land, LLC

15    for the Glass Pool Inn;

16    (C)     Management contract between Hospitality Associates and Casa Malaga

17    Motel Inc. for the Casa Malaga Motel; and

18    (D)     Billboard lease or rental agreement between Outdoor Media Group and Casa

19    Malaga Motel Inc.  Outdoor Media Group has been purchased by Viacom Outdoor Inc.;

20    and

21    (E)     Billboard lease or rental agreement between Seiler, LLC and Desert Land,

22    LLC.  Seiler, LLC has been purchased by The Lamar Companies.

23    **ARTICLE VII**

24    **CONTEMPLATED COMPENSATION FOR SERVICES,**

25    **COSTS AND EXPENSES**

26    No compensation has been paid or promised by these the Debtors or to the Debtors'

27    knowledge by any other entity for services, costs or expenses except the following:

28    Schwartzer & McPherson Law Firm and Jones Vargas shall be paid by Debtors or

N/H-017809