# EXHIBIT L

```
                    UNITED STATES BANKRUPTCY COURT
                    DISTRICT OF NEVADA (LAS VEGAS)


                                  .   Case No. 18-12456
IN RE:                            .
                                  .   Chapter 11
DESERT OASIS APARTMENTS, LLC,     .
                                  .   300 Las Vegas Blvd. South
                                  .   Las Vegas, NV 89101
            Debtor.              .
                                  .   Thursday, December 10, 2020
. . . . . . . . . . . . . . . . .   9:46 a.m.


   TRANSCRIPT OF APPLICATION TO EMPLOY PACHULSKI STANG ZIEHL &
  JONES LLP AS SPECIAL LITIGATION COUNSEL WITH PROPOSED ORDER
    FILED BY NEDDA GHANDI ON BEHALF OF KAVITA GUPTA [187];
  APPLICATION TO EMPLOY GHANDI DEETER BLACKHAM AS LOCAL COUNSEL
  FOR PROPOSED SPECIAL LITIGATION COUNSEL WITH PROPOSED ORDER
    FILED BY NEDDA GHANDI ON BEHALF OF KAVITA GUPTA [190]
           BEFORE THE HONORABLE MIKE E. NAKAGAWA
           UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

 For the Debtor:          Schwartzer & McPherson Law Firm
                          By:  LENARD E. SCHWARTZER, ESQ.
                          2850 South Jones Boulevard, Suite 1
                          Las Vegas, NV 89146
                          (702) 228-7590

 For the U.S. Trustee:    Office of the United States Trustee
                          By:  JOHN W. NEMECEK, ESQ.
                          C. Clifton Young Federal Building
                          300 Booth Street, Room 3009
                          Reno, NV 89509
                          (775) 784-5335



APPEARANCES CONTINUED.


Audio Operator:          Helen Smith, ECR


Transcription Company:   Access Transcripts, LLC
                         10110 Youngwood Lane
                         Fishers, IN 46038
                         (855) 873-2223
                         www.accesstranscripts.com

     Proceedings recorded by electronic sound recording,
        transcript produced by transcription service.
```

APPEARANCES (Continued):                                          2


```
For Bradley J. Busbin,      Law Office of Mark Wray
as Trustee of the           By:  MARY WRAY, ESQ.
Gonzales Charitable         608 Lander Street
Remainder UniTrust One:     Reno, NV 89509
                            (775) 348-8877

                            Zisblatt & Kiss, LLP
                            By:  JOHN DAVID FISCHER, ESQ.
                            1901 Avenue of the Stars, Suite 1100
                            Los Angeles, CA 90067
                            (310) 785-1111

For Kavita Gupta:           Pachulski, Stang, Ziehl & Jones
                            By:  JOHN D. FIERO, ESQ.
                            150 California Street, 15th Floor
                            San Francisco, CA 94111
                            (415) 263-7000

                            Ghandi Deeter Blackham
                            By:  SHARA L. LARSON, ESQ.
                            725 South 8th Street, Suite 100
                            Las Vegas, NV 89101
                            (702) 878-1115

For Jeffrey I. Golden,      Brutzkus Gubner
Trustee of Desert Land:     By:  JERROLD BREGMAN, ESQ.
                            21650 Oxnard Street, Suite 500
                            Woodland Hills, CA 91367
                            (818) 827-9000

For The Northern Trust      Fennemore Craig
Company:                    By:  CATHY L. REECE, ESQ.
                            2394 East Camelback Road, Suite 600
                            Phoenix, AZ 85016
                            (602) 916-5347
```

ACCESS TRANSCRIPTS, LLC      1-855-USE-ACCESS (873-2223)

3

1       (Proceedings commence at 11:09 a.m.)

2           THE COURT:  Moving on then, we have matters in Desert

3   Oasis Apartments, LLC for the application to employ counsel and

4   local counsel, Items 6 and 7 on the calendar.  We'll take

5   appearances in both of these matters if we could, beginning

6   with Trustee's counsel.

7           MR. FIERO:  Good morning, Your Honor.  John Fiero of

8   Pachulski Stang appearing for my law firm and the Trustee.

9   Also on the phone --

10          THE COURT:  Thank you.

11          MR. FIERO:  -- I believe is our local counsel.

12          THE COURT:  Thank you.

13          MS. LARSON:  Good morning, Your Honor.  This is Shara

14  Larson of Ghandi Deeter Blackham, appearing as local --

15  proposed local counsel for the Chapter 11 Trustee.

16          THE COURT:  Thank you.

17          MR. NEMECEK:  Good morning, Your Honor.  John Nemecek

18  on behalf of the United States Trustee.

19          THE COURT:  Thank you, Mr. Nemecek.

20          MR. FISCHER:  John Fischer on behalf of Brad Busbin,

21  Trustee.

22          THE COURT:  Thank you.

23          MR. WRAY:  Mark Wray for Brad Busbin.

24          THE COURT:  Thank you, Mr. Fischer and Mr. Wray.

25          MS. REECE:  And Cathy Reece on behalf of the Northern

4

1  Trust Company.

2          THE COURT:  Good morning, Ms. Reece.

3          MR. SCHWARTZER:  I'm Lenard Schwartzer,

4  administrative priority creditor.

5          THE COURT:  Thank you.  And --

6          MR. BREGMAN:  Good morning, Your Honor.  Jerrold

7  Bregman.  I'm sorry.

8          THE COURT:  Go ahead, Mr. Bregman.  I was --

9      MR. BREGMAN:  Just stating an appearance on behalf of

10  Jeffrey Golden, Chapter (audio interference) trustee of the

11  Desert Land, LLC case.

12          THE COURT:  All right.  And do we have Mr. Coleman or

13  someone representing Trustee Gupta?

14          Mr. Fiero, are we expecting a representative from

15  General Trustee's counsel?

16          MR. FIERO:  No, I wasn't, Your Honor.

17          THE COURT:  Okay.

18          MR. FIERO:  Our involvement is directly related to us

19  taking over one particular piece of the estate, and so here we

20  are.

21          THE COURT:  Okay.  All right.  I'm aware that the

22  U.S. Trustee's office has filed an opposition.  In light of

23  that opposition, there has been an admitted application and an

24  affidavit addressing the conflicts check.

25          To cut to the point, Mr. Nemecek, as to that aspect

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

5

1  of the opposition, did that amended application satisfy the

2  U.S. Trustee's concerns?

3          MR. NEMECEK:  Yes.  Again, John Nemecek on behalf of

4  the U.S. Trustee for the record.

5          We are satisfied with the amended application.  We

6  would just ask that the proposed order indicate that the

7  employment still require the Debtor to seek and is to be -- the

8  Trustee to seek approval of fees and compensation prior to

9  payment, but other than that, yes, judge.  We're satisfied.

10          THE COURT:  All right.  I assume, Mr. Fiero, that

11  your firm doesn't have a problem with that?

12          MR. FIERO:  No, Your Honor.  And, in fact, our

13  application, I -- our proposed form of order, I didn't realize

14  it was going to be Mr. Nemecek on the phone.  I thought it was

15  going to be Mr. McDonald.

16          THE COURT:  Sure.

17          MR. FIERO:  But we'll be happy to put in a couple

18  extra words that say, you know, no payment shall be made in

19  advance of a court review under Bankruptcy Code Section 330.

20  Not a problem.

21          THE COURT:  Okay.  All right.  So this case and the

22  associated related cases are obviously fairly mature at this

23  point in time.  I am struggling to understand why special

24  counsel is needed at this point.

25          MR. FIERO:  Your Honor, it relates to a recent filing

6

1  of a proof of claim by the Desert Land estate in the Desert

2  Oasis case.

3          THE COURT:  Right.

4          MR. FIERO:  And that is a matter that the Trustee is

5  actively reviewing and working on a strategy to resolve.  The

6  proof of claim is for $78 million, Your Honor, which sort of

7  blows up the case, so --

8          THE COURT:  It does, but --

9          MR. FIERO:  -- we'll introduce that in the near

10 future.

11         THE COURT:  Mr. Wray?  Mr. Fischer?

12         MR. WRAY:  Yes, Your Honor.

13         THE COURT:  You have not filed an opposition.  You

14 represent a creditor that is most directly affected by what's

15 going on here.  Are you okay hiring counsel at $800 an hour and

16 a paralegal at over 400?

17         MR. WRAY:  Your Honor, this is Mark Wray.  No, I'm

18 not okay with these prices.  It's very steep for a guy -- a

19 little guy from Reno just to think about.  But if I could, our

20 reasoning is that Mr. Coleman and his firm has drawn a very

21 strong, you know, barrier between themselves and defending

22 against this proof of claim because of some conflict.  So

23 Mr. Coleman will not address the proof of claim because of this

24 conflict.  So we need someone to respond to this claim on

25 behalf of the Trustee and the estate, and so we see no choice

7

1  here.

2        For example, at 10:30 on that calendar, there will be

3  this motion to dismiss that everyone has an opinion about, and

4  we want someone there to represent the position of the estate

5  with regard to that.  And Mr. Coleman has indicated there's a

6  conflict of some kind here, that he can't do it, so we don't

7  see much choice here.

8        THE COURT:  All right.  I'm aware that there is a

9  conflict issue out there.  It has not really been developed.

10  Quite honestly, in reviewing this, I was not aware that this

11  was as a result of that conflict.

12        Mr. Fiero, quite simply, I do have a concern that

13  Trustee Gupta is retaining counsel.  And, look, I have the most

14  -- utmost respect for your firm and don't begrudge you charging

15  $800 an hour as a reduced rate.  It's just considerably more

16  than the local going rate I would expect for claims litigation.

17        Now, I understand it's $78 million, $78 million based

18  upon a consolidation claim that was rejected by the Court

19  earlier, let me see, two years ago and which has not been

20  raised or broached previously.  I am very, very concerned about

21  the cost of this case, and this case being all three of them.

22        MR. FIERO:  Did you find my --

23        THE COURT:  And you come in, unfortunately -- no, let

24  me finish.

25        MR. FIERO:  Certainly.

8

1          THE COURT:  And again I want to be very clear, this

2  is not directed at your firm or you coming in.  It's directed

3  at the situation that this case is in.  And, one, I am not

4  inclined to approve really any travel time back and forth at

5  this point.  You indicated -- the application indicated in

6  light of the pandemic, there's not likely to be -- look, I am

7  doing this from Anchorage, Alaska, so I don't begrudge anybody

8  appearing remotely.  Zoom has leveled that playing field so

9  there would never be a real reason to do it unless it was an

10  exceedingly -- you know, a high-evidentiary matter which

11  required serious questions of credibility, which is not likely

12  to be held any time soon in person.

13          So -- and all this may be moot depending upon what

14  happens at 10:30.  So let me -- how can I -- the question to

15  you is how can I approve the employment of two firms at

16  considerable cost to the estate when it appears like the

17  Trustee has options locally in Las Vegas at a reduced rate.

18          MR. BREGMAN:  If I might chime in, Your Honor, with

19  apologies, since I'm not appearing by Zoom.

20          THE CLERK:  Who is this?

21          THE COURT:  Is this Jerrold --

22          MR. BREGMAN:  I'm sorry.  This is Jerrold Bregman --

23          THE CLERK:  Thank you.

24          MR. BREGMAN:  -- for Trustee Golden.

25          THE COURT:  Go ahead, Mr. Bregman.

9

1        MR. BREGMAN:  Thank you, Your Honor.  I apologize for

2   the belated notification of the Court, but we had intended to

3   note this at the next hour's hearing.  Trustee Golden has

4   determined to file an amended proof of claim where it states

5   only the four-and-a-half-million-dollar claim which was

6   provided for and to be paid under a 2011 Chapter 11 plan that

7   was confirmed by order of the Bankruptcy Court in the

8   Apartment's prior case.  So, with that, we don't expect that

9   there would be substantial litigation about that.  And in any

10  event, I think that's a material point, so I just wanted to

11  make the Court aware of that.

12        THE COURT:  Thank you.

13        So, Mr. Fiero, again I am, you know, not -- I don't

14  know what the word between concerned and apologize for having

15  this be your introduction to this case, but stepping into the

16  breach, I want to give you a opportunity to respond.

17        MR. FIERO:  Yes, Your Honor.  First, going to sort of

18  your introductory comments with regard to travel and that sort

19  of thing, I truly don't anticipate any expenses like that, and

20  I'm happy to tell the Court that we will waive travel costs to

21  the extent they ever arise, although, you know, perhaps they

22  never will.

23        With regard to the question of why would the Trustee

24  choose Pachulski Stang to litigate a claim objection, the

25  answer is it was a $78 million claim objection until about

10

1  45 seconds ago, and even then, Your Honor, we have put

2  substantial work into understanding and helping the Trustee

3  come to grips with how to best approach that proof of claim.

4  It's work that, you know, is valuable to the estate and will

5  redound to its benefit as Trustee Gupta's strategy unfolds in

6  front of Your Honor.

7          So with that, I would suggest that, you know, the

8  concern that there is going to be a tremendous amount of fees

9  charged is -- you know, while valid, is unlikely.  And also I

10 would tell the Court that, you know, one of the value

11 propositions that my firm offers to clients nationwide is that,

12 frankly, we do stuff in less time, we just do, and we always

13 have, and we don't staff our cases in ways that result in, you

14 know, tremendous numbers of billers.  And so that is how we

15 create the value proposition, and I believe that's the value

16 proposition that Ms. Gupta felt made sense in this case.

17         THE COURT:  And that's why I asked if Counsel,

18 Mr. Coleman or Ms. Fineman, was going to be appearing on behalf

19 of Ms. Gupta for that decision.

20         Look, I think, quite honestly, we should probably

21 continue this for about two weeks, see how the motion to

22 dismiss in Desert Land goes, let you have a conversation with

23 Trustee Gupta, have her appear at the next hearing, and we can

24 address that.  I would be interested to know how much fees --

25 how many hours your firm has entailed.

1    I would be interested in knowing if we can waive

2  local counsel  I would be interested in knowing how we can

3  mitigate these expenses to the estate and justify -- between

4  the hundred-hour cap and the 650 low fee, it would seem that

5  the blended rate is going to be, you know, somewhere around

6  700 and change.  I need to understand why that shouldn't be --

7  especially for an account stated, be handled by someone else at

8  a lower fee.

9    I appreciate the offer on the waiver of travel.  To

10  the extent that -- again, I'm looking at the Busbin claim as

11  being the predominant one in the bankruptcy.  I guess I'd be

12  interested to the extent Desert Land is around and maintains

13  its claim.  If the Desert Land case is not dismissed, I'd be

14  interested -- if the parties with the unsecured claims in that

15  case do not have a problem with that and affirmatively tell me

16  that, then that will weigh heavy on the Court's mind because

17  it's coming out of their pockets.

18    But I am -- you know, I just have general concern

19  that has only been amplified over the course of this case.  So

20  I apologize that that is my introduction and your introduction

21  to this case, but those -- that is the perspective from which

22  the Court is coming at.

23    MR. FIERO:  Okay.  Your Honor, this is John Fiero

24  again.  Couple things, just I guess we need a continued hearing

25  date, and the other matter is that I'd like to advise you that

12

1 we have been in contact with Mr. Wray, and actually have used

2 his office as a resource for certain documents that are

3 relevant to the prosecution of the claims and prior events in

4 the cases.  So we are working with them, and we'll be happy to

5 check in with them on this topic.

6          THE COURT:  Thank you.

7          MR. FISCHER:  Your Honor, John (audio interference)

8 Your Honor, one point.  In speaking with Mr. Coleman last

9 night, it is his position that the position of the Trustee on

10 the 10:30 calendar was going to be expressed by the Pachulski

11 firm because they feel the conflict.  But that's -- with that,

12 wondered if there is some way of getting Mr. Coleman some

13 assurance as he appears and expresses the Trustee's position on

14 the motion to dismiss that, you know, there's some, you know,

15 immunity here, that he's not violating confidential -- the

16 conflict.  Because otherwise no one is going to be available at

17 10:30 to express the Trustee of the Desert Oasis Apartment's

18 position in terms of the motion to dismiss, which is very

19 important in terms of the analysis.

20          THE CLERK:  Excuse me, who was that speaking?

21          MR. FISCHER:  John Fischer for Bradley -- for Brad

22 Busbin.

23          THE CLERK:  Thank you.

24          MR. FIERO:  Your Honor, this is John Fiero at

25 Pachulski Stang.  It was our intention to appear at the hearing

13

1  and express the Trustee's position to the extent that the Court

2  deemed it relevant.

3           THE COURT:  I --

4           MR. FIERO:  We're happy to let Mr. Coleman speak for

5  the Trustee if he can -- you know, as the -- as Mr. Fischer

6  suggested, in some way be immunized from some claim that he's

7  disqualifying himself.

8           THE COURT:  I have not considered the full

9  ramification of this aspect, and while Desert Oasis Apartments

10 is now a stated creditor of Desert Land, quite honestly there

11 are other creditors involved.  While I welcome Desert Oasis

12 Apartments' input into that, I'm not sure that it is essential,

13 and I'm just not -- let me put it another way.  I don't think

14 it's going to be determinative.

15          I don't mean to preclude Desert Oasis Apartments from

16 any participation, but I note again that the Busbin creditor is

17 a significant creditor of that estate, has been exceedingly

18 active in all of the cases, in all their combinations, and in

19 my mind sort of acts -- can act as a proxy for that.  I

20 understand that there are administrative expenses and such in

21 Desert Oasis that do not make that a perfect overlay.

22          I am not that concerned about a statement from either

23 Mr. Coleman, from you, Mr. Fiero.  There's a bigger picture

24 here that really is my focus rather than whether a statement at

25 Desert Land's dismissal motion is going to create a waiver of a

14

1    conflict of interest.  That's certainly not my intent.

2           So, Mr. Bregman, did you want to weigh in on that?

3           MR. BREGMAN:  Thank you, Your Honor.  Jerrold Bregman

4    for Trustee Golden.  Other than to say that we reserve all

5    rights and remedies, we don't have anything further to add to

6    this conversation on this point.

7           THE COURT:  Okay.  And again, Mr. Fiero, I take that

8    as I's and P's will be required, and that Mr. Coleman and

9    Desert Oasis should act accordingly, despite the Court's more

10   lax view of that.  So I don't -- to put a point on this, I

11   still have a sense that there's a chicken and egg situation

12   here.  I want to see what happens with Desert Land.  I also

13   want to understand the fee costs here.

14          Mr. Wray, I'm going to come back to you and

15   Mr. Fischer as to this matter and put you on the spot.  In

16   light of the reduction in the scope of the claims litigation,

17   are you -- do you want time to think about this?  Are you okay

18   with the rates?  What does Mr. Busbin think?

19          MR. WRAY:  Yes, Your Honor.  This is Mark Wray.

20   Thank you.

21          We think that the amount of time that the Pachulski

22   Stang firm shall have to spend on this will be minimal given

23   the status of the case and the pending motion to dismiss, and

24   that we're hopeful and we're predicting that when it's all said

25   and done, that Pachulski Stang's work will all be in the past

15

1  mostly, once the Desert Land case motion to dismiss is ruled

2  upon.  So we didn't look at it as a long-term proposition, and

3  that's what we believe and that's what Mr. Busbin believes

4  should happen is that we should go to the motion on the 10:30

5  calendar.

6          THE COURT:  With Mr. Fiero employed as counsel for

7  Desert Oasis?

8          MR. WRAY:  Well, yes.  That's what we anticipated.

9  Yes, that's right.

10         THE COURT:  Mr. Bregman, since you are not -- you

11 know, you still maintain a 4.25 million or whatever that

12 $4 million figure is, claim in Desert Oasis, you have not

13 objected either and have no continuing objection?

14         MR. BREGMAN:  To -- this is Jerrold Bregman.

15         THE COURT:  To the employment of -- to the employment

16 of Mr. Fiero and Pachulski Stang.

17         MR. BREGMAN:  Your Honor, we have not filed any

18 response to the employment application.

19         THE COURT:  All right.

20         Mr. Fiero, are you aware of the other creditors --

21         Ms. Reece, I know you are, but again, or not you

22 personally, I apologize, but Northern Trust remains a creditor

23 in the case, and we have not resolved the attorney fee issue.

24 But again my default in that is to believe, given my rulings,

25 that Northern Trust is fully secured and is not the paramount,

16

1  you know, focus of this discussion.  I should probably, knowing

2  your participation, allow you to have any say that you care to.

3          MS. REECE:  This is something --

4          MR. FIERO:  Your Honor, this is -- oh, I'm sorry.  He

5  wasn't direct there.

6          THE COURT:  Ms. Reece.  Let's hear from Ms. Reece.

7  I'm sorry.

8          MS. REECE:  Yes.  This is Cathy Reece on behalf of

9  the Northern Trust Company.

10          There's also the retention issue, how much needs to

11 be reserved for the future appeal, but Northern Trust has no

12 position in the employment of Pachulski or their local counsel

13 or how this particular Trustee is -- in the Apartment's case,

14 is going to handle the $4.5 million claim or the counterclaim

15 that the Apartment case has in the Desert Land case for even

16 offset or whatever it may be.  But we have no position on the

17 employment of counsel.  Thank you.

18          THE COURT:  Thank you.

19          Mr. Fiero, I apologize for the swerve in direction

20 there, but I think you were going to respond.

21          MR. FIERO:  Your Honor, I was just going to say that

22 our employment is limited to questions involving the proof of

23 claim of Trustee Golden, and as special counsel, we're not

24 aware of any issues with regard to Northern Trust and its

25 positions.

17

1          THE COURT:  Yes.  All right.

2          Mr. Nemecek, can I ask you a question?

3          MR. NEMECEK:  I apologize, Your Honor.  I was on

4     mute.  Yes, please.

5          THE COURT:  No problem.  That's what I have kind of

6     learned to kind of, you know, lean into these changes of

7     direction for that exact reason.  No problem at all.

8          What is the local association requirement here?  Is

9     that a, you know, strict requirement or is that something the

10    Court can waive?

11         MR. NEMECEK:  Your Honor, I'm not sure I understand

12    your question.  Again, John Nemecek for the U.S. Trustee.  I'm

13    not certain exact what the question was that you noted.

14         THE COURT:  If I have a well-recognized bankruptcy

15    firm dealing with a limited bankruptcy issue, it concerns me --

16    and this is no -- again, no slight to Ms. Ghandi's firm, but I

17    do not really see the utility of requiring local counsel and

18    whatever limited additional fees that will entail for a

19    well-established, accomplished bankruptcy firm to file claims

20    objections on an account stated in an electronic basis, you

21    know, on an electronic system.  I do not see necessarily the

22    benefit in this situation of having associated counsel.  It

23    only -- what is the value there and can I waive it if there is

24    no value?

25         MR. NEMECEK:  Again, Your Honor, John Nemecek for the

18

1  United States Trustee for the record.

2         That wasn't an issue that was raised in our

3  opposition, although it very well may be an issue that the

4  Court has sort of brought sua sponte.  But it wasn't one that

5  we've raised, so I'm not prepared to address that today.

6         THE COURT:  Okay.  All right.  And I should -- kind

7  of moving on, look, these are all capturing the Court's concern

8  that the estates have money.  They generally had money since

9  June/July.  There is no imminent source of distribution, and

10  quite honestly the litigation that has continued seems to have

11  been of limited utility.

12         I understand that's only from my vantage point above

13  the water line, and there is likely to be a lot of activity

14  below that that I am not privy to, but I am charged with

15  exercising the discretion over this, and I become, as I stated,

16  more and more concerned about the ultimate distribution to the

17  creditors which, going back to my initial involvement two years

18  ago, was to get as much value to the unsecured creditors as

19  possible, and I continue to be increasingly concerned about it

20  in this matter.

21         That is not a knock, but I am at a loss to understand

22  the value to be brought by local counsel in this matter other

23  than the form of requiring local counsel, and I should probably

24  let, you know, Ms. Ghandi's firm speak as to that matter.

25         MS. LARSON:  This is Shara Larson appearing on behalf

19

1    of the Chapter 11 Trustee as proposed local counsel.

2            My understanding -- and, you know, I'm frantically

3    trying to pull up the Rules of Professional Conduct and the --

4    to be honest with you, the federal rules locally with regard to

5    pro hac appearances.

6            My understanding has always been that they are

7    required to associate local counsel if they are appearing on a

8    pro hac basis.  Our firm, just informally in discussing things

9    with the Chapter 11 Trustee and with Pachulski Stang, have

10   specifically talked about what that role really is intended to

11   look like, and we don't intend to unnecessarily shadow

12   Pachulski Stang.  We've discussed that we would not -- in the

13   event of a claim objection and in the event of ongoing

14   discovery, we would not participate in depositions.  We don't

15   believe that that's a requirement.

16           Our understanding is our job is simply to make sure

17   that pleadings comply with local rules and to make sure that,

18   in the event that there are hearings that are before Your

19   Honor, that we would have to appear at those, but we would not

20   have to appear at more informal, like I said, discovery

21   depositions.  If there was a discovery dispute, we specifically

22   have already discussed the fact that we would not feel that we

23   would have to appear to that because it's not a formal hearing.

24   So we intended to keep our participation pretty limited, if

25   that clarifies anything.

20

1          The other thing that I think we all need to maybe
2 keep sight of is the fact that these applications, and pursuant
3 to our resolution with the United States Trustee's Office, we
4 are applying pursuant to 330 of the Code, so we are still
5 subject to a reasonable and necessity analysis when we submit
6 fee applications down the road.  So, you know, our position
7 would be that it is my understanding that pursuant to the laws
8 of the state of Nevada, appearing counsel that's not licensed
9 here is required to assign or associate with local counsel.

10          THE COURT:  Thank you.  I think that was very well
11 said.  I think that we are ignoring reality though to say
12 that --

13          MS. LARSON:  Yes.

14          THE COURT:  -- that once you are employed, the Court
15 can say, look, I don't think the fact that you did, you know,
16 what you are saying is required of local counsel, make sure
17 there's compliance with local rules and such and attend the
18 claims objections that are anticipated or any other hearings.

19          And, look, I have a wandering imagination, and I can
20 see a few ways that this goes a little different that
21 necessitates some additional litigation involving the claims.
22 So I can see that it does get a little more expensive rather
23 than just one simple objection, a quick hearing, and be done.
24 Nothing in this case has gone like that.  And Mr. Bregman and
25 the Desert Land Trustee, Mr. Golden, have taken aggressive

21

1  positions.  They've taken an aggressive position here.  I

2  expect it to continue.

3           So -- but there's a difference between saving the

4  estate that cost at all or allowing that cost and determining

5  its reasonableness, Ms. Larson, and that's where the Court is

6  concerned.  I am afraid that looking back, I am not going to

7  understand the value.  But what you did and what I expect you

8  would do in that situation would be fine under a reasonableness

9  application.  That's the Court's concern.

10          And how much that may be, whether saving $5,000 in

11  this case, you know, given the debts and the amounts at issue,

12  really moves that needle, I don't know.  But I am repeating

13  myself in saying the additional costs and litigation, when

14  taken cumulatively, is reducing the unsecured creditors'

15  distribution, and that is my concern.

16          So, Mr. Fiero, I've certainly extended these two

17  matters much longer than you anticipated.  Again, I want to

18  apologize for that.  I will hold the application regarding

19  Ms. Ghandi's firm under submission.  I will take a look and

20  talk to Judge Landis as the Chief Judge regarding the

21  requirement for local counsel and issue an order regarding

22  that.

23          I accept the amended application and affidavit as

24  resolving the conflicts issue.  Given the statements of

25  counsel, I will say that I am -- I think I can -- I'm sorry,

22

1  I'm not being complete.  The statements of counsel of the main

2  creditors in this case and the lack of opposition.  Apparently,

3  there's no opposition by either the U.S. Trustee or the

4  unsecured creditors regarding the retention of counsel at

5  650 to $800 and a $425 paralegal.

6        I will have to say that as to that paralegal, you

7  will be required to justify -- and again, a bad habit.  The law

8  firm will be required to justify the paralegal's time at 425.

9  I will be looking at that to understand that the paralegals are

10  effectively performing those tasks at about half the time

11  required of an ordinary paralegal.  425 is commensurate with

12  partners at the lower end in the Las Vegas area from my

13  experience, so I will be examining that fairly harsh -- hardly

14  -- hardly?  Fairly critically.

15        And then I will be examining, again to hold the law

16  firm to the statement that you are able to accomplish these

17  tasks, given the expertise, which, you know, I concede that

18  your firm has, in a more efficient manner than otherwise would

19  have been required at a local law firm at the 450 to 550, $600

20  range.

21        I do expect that top of the pay scale will be more

22  administrative and that the work will be funneled down to the

23  less expensive.  Again, if your associates are charging 650,

24  and that is upper/middle for Las Vegas, I need to understand

25  the efficiency that was brought.  Otherwise, the Court will be

23

1  fairly critical of those fees.  And I've just had enough

2  experiences now that I want to share those concerns and that

3  view with you at the very beginning so it doesn't come as a

4  surprise at the end.

5        But I think you've convinced me to go ahead and

6  approve the application of Pachulski Stang, with those

7  concerns, with it expressly stated that the Court reserves the

8  right, regardless of the application, to review the

9  reasonableness of the fees upon application for payment, that

10 no travel time will be allowed, and subject to the Court's

11 concerns regarding the differential in the fee charges for the

12 -- sorry, the hourly fees between the application as stated and

13 what the Court considers to be the average fees for similar

14 work at the similar level within the Las Vegas metropolitan

15 area.

16        So the Court will -- based upon that, will approve

17 the application of Pachulski Stang.  The Court will hold in

18 submission to a little further query regarding the application

19 for local counsel.

20        And, Mr. Fiero, again I feel compelled to say, this

21 is not a personal slight.  It is not saying that your firm

22 isn't worth every penny that it charges.  It's just in this

23 case, in this circumstance, especially as narrowed now -- which

24 I understand you did not know coming in, but I have always had

25 a jaundiced eye regarding substantive consolidation in this

24

1  case, and at this time I believe I have made that position
2  abundantly clear throughout the litigation of this case.  So
3  you're walking into a situation that's carrying a lot of
4  baggage, and I just want to put that on the record.  So knowing
5  that this is not directed to you personally or your law firm at
6  all.

7          MR. FIERO:  Your Honor, this is John Fiero.  Thank
8  you for that.  The only other thing I would add, and it's just
9  really as a matter of information for the Court, is that while
10 it's impossible to always tie one event occurring to a
11 subsequent event, but I would note for the Court that our
12 appearance in the case and our having communicated with the
13 Desert Land Trustee about the substantive consolidation
14 question appears to have affected a fee change that results in
15 a roughly 94 percent reduction in the matters at issue.  And so
16 I think that we have added value and we will continue to add
17 value, and we'll be happy to prove the value proposition at the
18 time our fee application is submitted.  We understand your
19 comments entirely.

20          THE COURT:  I'll only push back a little bit.  I
21 mean, I can make the same argument when I go into a settlement
22 conference as the settlement judge and am able to knock down
23 the $30 million offer to the other side down to $500,000.  That
24 starting point -- and I don't -- I am certainly not discounting
25 what you say substantially.  I believe that you may well be

25

1   right.  But again, jaundiced eye, living with this case,

2   marching it through, having these continuing discussions with

3   the debtor, the debtor's experienced counsel, and the counsel

4   for Mr. Busbin, Shotgun entities, the Share creditors, DLLA,

5   all of them, the Court has not been subtle in its mind

6   regarding this.  And it has been adjudicated previously.

7          So we'll let that lie.  I hope that it gets to be

8   resolved and resolved quickly, you know, and inexpensively

9   because I do believe that these -- that all of the unsecured

10  creditors should be receiving their distributions sooner than

11  later.

12         But that's it for the Desert Oasis Apartments.  We

13  probably -- I probably spent too much time on this, but if you

14  would go ahead and propose -- lodge your proposed order, I will

15  take a look at it as soon as I can, and I will try not to hold

16  up the response regarding local counsel too long.

17         So that will conclude --

18         MR. FIERO:  Sure, Your Honor.

19         THE COURT:  Go ahead, sir.

20         MR. FIERO:  We'll do it.  We will do it.  Thank you.

21         THE COURT:  That will conclude the two Desert Oasis

22  Apartments matters.

23      (Proceedings concluded at 10:29 a.m.)

24                        *  *  *  *  *

25

26

1

# C E R T I F I C A T I O N

2

3          I, Ilene Watson, court-approved transcriber, hereby

4    certify that the foregoing is a correct transcript from the

5    official electronic sound recording of the proceedings in the

6    above-entitled matter.

7

8

9

10   ILENE WATSON, AAERT NO. 447     DATE:  December 19, 2020

11   ACCESS TRANSCRIPTS, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25