# EXHIBIT U

John D. Fiero (CA Bar No. 136557)
Gail S. Greenwood (CA Bar No. 169939)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA  94111-4500
Telephone: 415/263-7000
E-mail:jfiero@pszjlaw.com
          ggreenwood@pszjlaw.com

Shara L. Larson (NV Bar No. 7786)
GHANDI DEETER BLACKHAM
725 S. 8th St., Suite 100
Las Vegas, Nevada 89101
Tel:  (702) 878-1115
Email:  shara@ghandilaw.com

Special Litigation Counsel to
Kavita Gupta, Disbursing Agent under the
Confirmed Plan for the Estate of Desert Oasis
Apartments, LLC

**DRAFT – READY FOR
IMMEDIATE FILING**

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re:

**DESERT OASIS APARTMENTS, LLC,**

                              Debtor.

Case No.: bk-s-18-12456-gs

Chapter 11

[No Hearing Set]

## DISBURSING AGENT'S OBJECTION TO PROOF OF CLAIM
### (NUMBER 3) FILED BY DESERT LAND, LLC

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ............................................. 2

    A.     The Bankruptcy Proceeding.................................................................... 2

    B.     Substantive Consolidation of the Desert Entities Was Considered and Denied. .......... 3

    C.     Trustee Gupta Is Appointed and Discovers the Mistaken Intercompany Claim. ......... 3

    D.     Golden is Appointed Trustee of Desert Land and Files the Meritless Claim. ............. 4

    E.     The 2011 Bankruptcy............................................................................. 5

III.    LEGAL ARGUMENT ......................................................................................... 6

    A.     The Purported Account Stated Is Unenforceable Because It Is Based on a Mistake. .. 6

    B.     The Claim Is Not Enforceable on a Theory of Res Judicata Under the 2011 Plan....... 8

        1.     A Confirmation Order Only Precludes the Assertion of Claims That Arise From the Same Transactional Nucleus of Facts Pertaining to the Plan............ 8

        2.     A Confirmation Order Only Precludes the Assertion of Claims That Could or Should Have Been Raised During the Pendency of the Case. ........................ 10

        3.     The 2011 Plan's Reservation of Rights Precludes the Operation of Res Judicata. ...................................................................................... 10

        4.     Desert Land Cannot Satisfy Its Burden of Proving That an Objection to Its Claim Is Precluded Under the Terms of the 2011 Plan. ............................... 12

    C.     Even If the Claim Was Deemed Allowed Under the 2011 Plan on a Theory of Res Judicata, It Would Be Subordinate to the Claim of Gonzales. ................................... 12

    D.     The Claim Is Objectively Frivolous and Sanctionable. ............................................. 13

IV.     CONCLUSION ................................................................................................. 15

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

DOCS_SF:105609.5 33085/001

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

### Cases

4

*Alary Corp. v. Sims (In re Associated Vintage Gp., Inc.),*
    283 B.R. 549 (9th Cir. BAP 2002)...................................................................... passim

5

*Christian v. Mattel, Inc.,*
    286 F. 3d 1118 (9th Cir. 2002) .......................................................................... 13

6

*Coker Equipment, Inc. v. Great Western Capital Corp.,*
    885 P.2d 1321 (Nev. 1994)............................................................................ 1, 7

7

*Davis & Cox v. Summa Corp.,*
    751 F.2d 1507 (9th Cir.1985) ............................................................................ 7

8

*Davis v. Yageo Corp.,*
    481 F. 3d 661 (9th Cir. 2007) ............................................................................ 11

9

*Hamilton v. United States (In re Hamilton),*
    104 B.R. 525 (Bankr. M.D. Ga. 1989)................................................................ 13

10

*Heritage Hotel Partnership I v. Valley Bank of Nevada*
    *(In re Heritage Hotel Partnership I),*
    160 B.R. 374 (9th Cir. BAP 1993).................................................................. 8, 10

11

*In re CMR Mortgage Fund, LLC,*
    2016 Bankr. LEXIS 235 (Bankr. N.D. Cal. Jan. 26, 2016) ................................ 13

12

*In re Dansereau,*
    274 B.R. 686 (Bankr. W.D. Tex. 2002) .............................................................. 13

13

*In re Diruzzo,*
    527 B.R. 800 (1st Cir. BAP 2015) ...................................................................... 11

14

*In re Grantham Bros.,*
    922 F. 2d 1438 (9th Cir. 1991) .......................................................................... 13

15

*In re Khalil,*
    379 B.R. 163 (9th Cir. BAP 2007)...................................................................... 7

16

*In re McAllister,*
    123 B.R. 393 (Bankr. D. Or. 1991)..................................................................... 13

17

*Kelley v. South Bay Bank (In re Kelley),*
    199 B.R. 698 (9th Cir. BAP 1996)................................................................... 8-11

18

*Marsch v. Marsch (In re Marsch),*
    36 F.3d 825 (9th Cir. 1994) ............................................................................... 13

19

*Old West Enterprises v. Reno Escrow Co.,*
    86 Nev. 727, 729, 476 P.2d 1 (1970) ................................................................. 7

20

*Robert C. Malt & Co. v. Kelly Tractor Co.,*
    518 So.2d 991 (Fla.1988)................................................................................... 7

21

*Trafton v. Youngblood,*
    69 Cal. 2d 17 (1968) .......................................................................................... 7

22

*Trulis v. Barton,*
    107 F.3d 685 (9th Cir. 1995............................................................................... 11

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

ii

**Statutes**

11 U.S.C. §1106.................................................................................................... 14

**Rules**

Fed. R. Bankr. P. 1009............................................................................................ 6

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

iii

DOCS_SF:105609.5 33085/001

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# I.

# **INTRODUCTION**

Kavita Gupta, the disbursing agent ("Disbursing Agent" or "Ms. Gupta") and former chapter 11 trustee for Desert Oasis Apartments LLC (the "Debtor), objects to the proof of claim (claim number 3, the "Claim") filed by Jeffrey I. Golden, former chapter 11 trustee and current interim chapter 7 trustee ("Golden"), appointed in the case of Desert Land LLC ("Desert Land") because it is entirely without merit.  In September 2020, and in the face of overwhelming evidence against it, Golden initially filed the Claim in the amount of "at least $78,000,000" based on a theory of substantive consolidation of the Debtor and Desert Land and the existence of an alleged account stated.  After a stern warning from Ms. Gupta about the Claim's defects, Golden amended the Claim on December 15, 2020 to eliminate substantive consolidation.  As a result, Golden now seeks $4,500,000 based on an alleged account stated in favor of Desert Land.  The Claim should be disallowed because ***there is no account stated*** and ***there was never an agreement*** by the Debtor to pay the amount at issue to Desert Land.  All evidence demonstrates that there was a bookkeeping error that has since been corrected on the bankruptcy schedules of both the Debtor and Desert Land.

As counsel for Golden has admitted in open court, the essential facts surrounding the Claim are not in dispute.  Thus, the Court can reject the Claim as a matter of law based on the pleadings.  Golden seeks to "revive" the mistaken bookkeeping entry for the alleged benefit of Desert Land on the theory that the error was included in the Debtor's 2011 plan of reorganization (the "2011 Plan").  The Disbursing Agent disputes, as a matter of law, that an account stated could exist or that the 2011 Plan operated as *res judicata* to create on obligation in favor of Desert Land because, under applicable law, the 2011 Plan did not establish an enforceable claim.  The Nevada Supreme Court has unequivocally held that an account stated is unenforceable if it is the product of mistake.  *Coker Equipment, Inc. v. Great Western Capital Corp.,* 885 P.2d 1321, 1323 (Nev. 1994).  Moreover, the intercompany account stated was not an allowed claim under the 2011 Plan because claim objections were reserved, and even if it were allowed under the 2011 Plan, the purported claim was subordinated to that of Mr. Gonzales who still seeks payment today.

Golden refuses to accept the amended financial schedules filed by Mr. Gaffin on behalf of the Debtor and Desert Land upon discovery of the mistaken accounting entry. The Claim is not warranted by the available facts or existing law and its prosecution appears to be nothing more than an effort to extract a settlement to pay professional fees. A copy of the Claim is attached hereto as **Exhibit A**.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Bankruptcy Proceeding.

Prior to 2000, Tom Gonzales ("Gonzales") loaned approximately $41.5 million to the Debtor and Desert Land secured by real property on the Las Vegas Strip across from the Mandalay Bay hotel and casino. In 2018, Gonzales[1] obtained a judgment for approximately $13.1 million against the Debtor, Desert Land, and certain other debtors (collectively referred to as the "Desert Entities").

On April 30, 2018, Gonzales filed involuntary petitions against each of the Desert Entities based on the recorded judgment. As of the petition date, the Debtor owned approximately six acres of real property with an apartment complex that generated modest income. Gonzales and Northern Trust Company (which was owed approximately $4.9 million) were the only entities holding secured claims against the Debtor. Northern Trust Company's secured first priority claim has been paid. However, the Debtor's estate has insufficient assets to fully satisfy the Gonzales claim.

As of the petition date, Desert Land owned approximately twenty acres of real property. Desert Land has multiple secured creditors, including the Clark County Treasurer, creditors referred to as the "Shotgun Creek Entities," the Sher Group/Desert Land Loan Acquisition, Juniper Loan Servicing, Inc., David Stroebling (another judgment creditor), and Gonzales. The Shotgun Creek Entities are owed more than $154 million, which the Court estimated was accruing interest in excess of $2 million *per month.* Gonzales is the only creditor with claims against all of the Desert Entities, and he is the only overlapping creditor between the Debtor and Desert Land.

---

[1] Gonzales assigned the judgment to Bradley J. Busbin, trustee. For simplicity, this Objection refers to Mr. Gonzales.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**B.    Substantive Consolidation of the Desert Entities Was Considered and Denied.**

Almost immediately following the petition date and prior to the filing of any schedules, the Desert Entities filed motions for substantive consolidation and for conversion of the cases to chapter 11 (collectively referred to as a single motion).  The substantive consolidation motion recited basic facts regarding the Desert Entities' varied creditors and ownership and summarily argued that "as a practical matter, pooling of the sales proceeds of all available parcels . . . will most likely result in full payment of all unsecured creditors as well as maximization of distributions to equity."  DL Docket Nos. 27-28.

The substantive consolidation motion was opposed by Gonzales, Juniper Loan Servicing Inc., and the Shotgun Creek Entities on grounds, among others, that it was premature and failed to meet the Ninth Circuit standards for substantive consolidation.  Judge Babero heard the matter on June 26, 2018, but made no findings of fact or conclusions on the record.  Following arguments and at the request of the Desert Entities' counsel, the Court denied substantive consolidation without prejudice. No evidence supports substantive consolidation and no further efforts were made to substantively consolidate the Desert Entities.

**C.    Trustee Gupta Is Appointed and Discovers the Mistaken Intercompany Claim.**

In July 2018, Gonzales filed a motion to appoint a chapter 11 trustee for the Desert Entities' cases.  Months later, on March 11, 2019, after several days of evidentiary hearings during which the Court heard testimony from the LLC managers of the Debtor and Desert Land (David Gaffin and Howard Bulloch), the Court granted the appointment of a chapter 11 trustee.  Ms. Gupta was appointed as chapter 11 trustee of the Debtor, Desert Land, and Desert Investments.

Immediately following her appointment, Ms. Gupta began investigating a $4.5 million claim scheduled by the Debtor in favor of Desert Land.  The investigation was undertaken in order to fulfill her duties as chapter 11 trustee to (a) investigate claims against the estates and the debtors' financial affairs, (b) disclose as fully as possible the known facts and circumstances surrounding the intercompany claim, and (c) assess whether remedial action was warranted.  Based on analysis by her accountants and their communications with the principals of the Desert Entities, Ms. Gupta learned that the intercompany obligation was created by a journal entry at or before the end of 2002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

without any documentation.  In June 2019, Ms. Gupta's counsel repeatedly sought confirmation from the Desert Entities' counsel that no further documentation existed or, if documentation existed, requested that such documents be provided.

In March 2020, Ms. Gupta and her professionals interviewed Gina Shelton of Swecker, Moloney & Moir CPA, a former accountant for the Desert Entities from 1996 through 2010.  Ms. Shelton explained that her original journal entry in 2000 reflecting an amount owing from the Debtor to Desert Land was a mistake.  Ms. Shelton executed a declaration under penalty of perjury stating that she misunderstood the obligors on the Gonzales loan, of which approximately $5 million was used to pay off a mortgage debt owed by the Debtor to Heller Financial.  Ms. Shelton further declared that, had she known that the Gonzales loan was an obligation of both the Debtor and Desert Land (and not just Desert Land as she believed at the time), she would not have made general ledger entries reflecting a liability owed by the Debtor to Desert Land based on the portion of loan proceeds used to pay off Heller Financial, and would instead have shown the liability as owing to Gonzales. *See* Shelton Declaration, attached hereto as **Exhibit B**.

Based on the mistaken accounting entry (and the absence of any information supporting a genuine obligation by the Debtor to Desert Land), on April 23, 2020, Gaffin voluntarily amended the bankruptcy schedules filed on behalf of the Debtor and Desert Land and thereby eliminated any scheduled debt of the Debtor in favor of Desert Land.  Specifically, the Debtor's Schedule E/F at page 2 was amended to eliminate a scheduled unsecured claim in favor of Desert Land ($4,500,000); and Desert Land's Schedule A/B at page 4 was amended to eliminate alleged money due from Desert Oasis Apartments ($4,499,328).  *See* Excerpted Schedules, attached as **Exhibit C** [DL Docket Nos. 1080-81].  There can be no dispute that the Debtor and Desert Land were jointly liable for the Gonzales loan.  *See* Gonzales Deed of Trust and Amendment, attached as **Exhibit D**.  In fact, in the absence of cash or operating income, Desert Land was never in a position to loan money to the Debtor.

**D.    Golden is Appointed Trustee of Desert Land and Files the Meritless Claim.**

In June 2020, based on Ms. Gupta's discovery and disclosure of potential fraudulent transfer claims held by the Debtor against Desert Land, Ms. Gupta resigned as chapter 11 trustee of Desert

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Land and Golden was subsequently appointed in her stead.  In September 2020, Golden on behalf of Desert Land filed the initial Claim against the Debtor for "*at least $78,000,000*," citing "compelling evidence adduced to date" in support of substantive consolidation.  It has since been proven that no such evidence existed.  Indeed, on December 15, 2020, following communications among counsel, Golden amended the Claim to the reduced amount of "not less than $4,500,000" based on an alleged account stated.  Attachments to the Claim consist of excerpts from the Debtor and Desert Land's original *uncorrected* schedules from July/August 2018 and May 2011, and the 2011 Plan.

Golden, on behalf of Desert Land, is and was fully aware of the Shelton Declaration (Exhibit B) and the amended schedules that were filed by Desert Land's manager (Exhibit C).  There is no evidence that a valid obligation of the Debtor exists in favor of Desert Land beyond the existence of the mistaken accounting entry that was carried forward on the entities' books.

### E.  The 2011 Bankruptcy.

The Claim relies, in part, on a prior bankruptcy and reorganization plan of the Debtor.  In May 2002, Desert Land, and entity called Desert Ranch LLC, and the Debtor filed chapter 11 petitions in the face of mounting debts and litigation by Gonzales (USBC, D. Nev., Case No. 02-16202).  In May 2011, the Debtor alone filed a chapter 11 petition (USBC, D. Nev., Case No. 11-17208).  At that time, the Debtor scheduled a claim in favor of Desert Land for $5,468,103.

Pursuant to the Debtor's 2011 Plan, insider claims were subordinated to the claims of all other unsecured creditors.  Gonzales was separately classified as holding an unimpaired claim for $10 million, which was unsecured; and all other non-insider general unsecured creditors received payment in full without interest over time.  The 2011 Plan confirmed that Desert Land and certain other insider entities "agreed to subordinate their claims to the claims of other unsecured creditors and will be paid only after all other unsecured creditors are paid in full."  *See* 2011 Plan Excerpts at §4.01, attached as **Exhibit E**.  In addition, the 2011 Plan confirmed the Debtor's reservation of rights to prosecute any claim objections at any time.  *Id.* at §8.11.

The 2011 Plan did not "allow" or pay any portion of the mistaken claim scheduled in favor of Desert Land.  As an intercompany claim, it simply remained on the Debtor's books and was never investigated.  Now. ten years later, Golden argues that the 2011 Plan somehow controls and

1  established a claim owing to Desert Land notwithstanding subsequent correction of the accounting

2  error.  Claim (Exhibit A) at ¶3 ("[T]he entered confirmation order in the First Apartments'

3  Bankruptcy Case is controlling.").

### III.

### LEGAL ARGUMENT

**A.    The Purported Account Stated Is Unenforceable Because It Is Based on a Mistake.**

The Claim asserts an account stated of not less than $4,500,000 based on superseded

schedules filed in this case and based on the Debtor's 2011 Plan.  All evidence shows that the

purported account stated was a ***mistaken accounting entry*** that was properly corrected in the

schedules of both the Debtor and Desert Land, and promptly and voluntarily corrected upon

discovery.  As discussed below, as a matter of law, an accounting error cannot create an enforceable

debt under the theory of account stated.

The facts relayed in the Shelton declaration are incontrovertible.  Gonzales made a $41.5

million loan in December 2000 to both the Debtor and Desert Land, not just Desert Land.  The

Debtor and Desert Land's managers, David Gaffin and Howard Bulloch, executed a deed of trust in

favor of Mr. Gonzales reciting that the Debtor and Desert Land were co-borrowers, and the

recording of the deed of trust created a lien against the Debtor's property for the entire $41.5 million

loan.  Ms. Shelton's declaration states explicitly that *if* she had understood that both the Debtor and

Desert Land were obligated on the Gonzales loan, she *would not* have made journal entries on their

general ledgers indicating that Desert Land was the source of the funds used to pay off the Heller

Financial mortgage on the Debtor's property.  Ms. Shelton also admitted that because this entry was

made in error, the intercompany account balances between the Debtor and Desert Land were

overstated by $5 million from December 31, 2000 forward.  *See* Shelton Declaration (Exhibit B), at

¶¶ 12-15.  This error was not detected and corrected until April 2020.

Gaffin properly corrected the schedules of both Desert Oasis Apartments and Desert Land

upon learning that there was an error on the books of each entity.  *See* Excerpted Schedules (Exhibit

C).  Gaffin had both a right to amend the debtors' schedules and an obligation to do so.  Fed. R.

Bankr. P. 1009(a) (debtor's right to amend schedules any time prior to case closing); *In re Khalil,*

379 B.R. 163, 177 (9th Cir. BAP 2007) (false statement or omission regarding creditors and debts is just as important as nondisclosure of assets and constitutes grounds for denial of discharge).

The Nevada Supreme Court has made clear that an account stated cannot be maintained based upon a mistake regarding the balance of the account. *Coker Equip., Inc. v. Great Western Capital Corp.,* 885 P.2d 1321, 1323 (Nev. 1994)  ("An account stated is unenforceable if there was fraud or mistake in the stating of the account.").  In *Coker Equip., Inc.,* an equipment lessee and lender entered a modification agreement to extend the time for payment of the lease/loan to Great Western Capital.  The modification was not intended to renegotiate the amount due.  *Id.* at 1322.  Nevertheless, the modification recited the amount due at the time was $276,930.  One year later, the lessee performed an audit and discovered that it had overpaid the original debt by approximately $66,000 and stopped making payments.  *Id.*  Reversing summary judgment in favor of the lender, the court emphasized that an account stated is based on an agreement regarding the balance owed and cannot be the product of mistake.  Thus, the court stated:

> It is undisputed that the outstanding balance that Coker and Great Western agreed to in the modification agreement was an account stated. **This court has defined an account stated as "an agreement based upon prior transactions between the parties with respect to the items composing the account and the balance due."** *Old West Enterprises v. Reno Escrow Co.,* 86 Nev. 727, 729, 476 P.2d 1, 2 (1970).
>
> On appeal, Coker asserts that there was a mutual mistake regarding the account stated. **An account stated is unenforceable if there was fraud or mistake in the stating of the account.** *Davis & Cox v. Summa Corp.,* 751 F.2d 1507 (9th Cir.1985). A debtor may overcome the presumption of the correctness of an account stated by meeting the burden of proving fraud, mistake or error. *Robert C. Malt & Co. v. Kelly Tractor Co.,* 518 So.2d 991 (Fla.1988). Coker has submitted a balance sheet and copies of its cancelled checks into evidence to support its argument. Furthermore, Coker has supplied an affidavit of its accountant which verifies the balance sheet.

*Id.* at 1323 (emphasis added).  *See also Trafton v. Youngblood,* 69 Cal. 2d 17, 26 (1968) ("[S]ince accounts stated were 'intended to preserve and protect legitimate demands but not create obligations independent of prior indebtedness,' the rendering of an account, although not objected to, cannot create a liability where no liability existed before.") (citations omitted).

In this case, Desert Land does not dispute, and there is no question of fact regarding, the existence of the accounting error.  *See* Exhibits B and C.  The fact that the accounting error remained

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1    on the books for years, or that it may be reflected in numerous old documents, does not alter the

2    conclusion that there was no valid debt (and hence no agreement).  Moreover, the Debtor overcame

3    any presumption of correctness of the entries based on the Shelton Declaration and amended

4    schedules that were filed in April 2020.

5    **B.    The Claim Is Not Enforceable on a Theory of Res Judicata Under the 2011 Plan.**

6        Golden alternatively argues that the court's order confirming the 2011 Plan is "controlling"

7    based on a theory of *res judicata.  See, e.g., Desert Land LLC's Motion for an Order Allowing Its*

8    *Claim at $4.5 Million for Purposes of Plan Confirmation, Voting, Etc.* [Docket No. 250] at pp. 14-

9    15.

10        Res judicata or claim preclusion prevents a party from re-litigating a cause of action.  It does

11    not create a debt where none existed, nor does it support a cause of action that has not previously

12    been litigated.  In order for res judicata to apply, the following elements must be satisfied: (1) there

13    must be a final judgment on the merits; (2) the judgment must have been rendered by a court of

14    competent jurisdiction; (3) a second action involving the same parties would have to arise; and (4)

15    the same cause of action must be involved in both cases. *Heritage Hotel Partnership I v. Valley*

16    *Bank of Nevada (In re Heritage Hotel Partnership I)*, 160 B.R. 374, 376-78 (9th Cir. BAP 1993),

17    *aff'd*, 59 F.3d 175 (9th Cir.1995).  Desert Land will never demonstrate that the 2011 Plan involved

18    the same nucleus of operative of facts as the purported account stated in order to satisfy the fourth

19    factor.  *Id.; Alary Corp. v. Sims (In re Associated Vintage Gp., Inc.),* 283 B.R. 549, 558-62 (9th Cir.

20    BAP 2002) (hereafter, "Associated Vintage").  Analyzing the facts pertaining to a confirmed plan in

21    the manner required by *Associated Vintage,* it is clear that there is no logical relationship between

22    what was resolved by the 2011 Plan (reorganization of bank debt and rental income) and what the

23    Disbursing Agent challenges by her objection to the Claim (namely that an accounting entry made

24    decades earlier was the product of an acknowledged mistake).

25        **1.    A Confirmation Order Only Precludes the Assertion of Claims That Arise From**

26             **the Same Transactional Nucleus of Facts Pertaining to the Plan.**

27        The case of *Kelley v. South Bay Bank (In re Kelley)*, 199 B.R. 698 (9th Cir. BAP 1996) (cited

28    by Desert Land) has been severely limited by subsequent case law and does not support allowance of

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

the purported Claim or any purported claim preclusion.  In *Associated Vintage,* the Ninth Circuit

Bankruptcy Appellate Panel limited its holding in *Kelley*[2] and announced the need to be more

precise regarding when and why a confirmed plan may render a particular dispute incontestable.  283

B.R. at 554.  Following a lengthy analysis, the court concluded that post-confirmation litigation

contesting the secured status of a creditor as preferential was not precluded by the plan terms, which

reserved claim objections, and under circumstances where the creditor was not misled into accepting

the plan.  *Id.* at 553, 567 (affirming claim objection where plan preserved objection powers and

claimant was not lured into accepting plan based on implicit claim allowance).  The decision focuses

on the need for a case-by-case "transactional analysis" for purposes of determining the scope of the

claim at issue, which in turn depends on the terms, the context, and the timing of the chapter 11 plan.

*Id.* at 560.  Importantly, in order for claim preclusion to apply, ultimately there must be a "logical

nexus between the subject of the second action and what was resolved in the plan so that they fit

within the same 'transactional nucleus of facts.'"  *Id.* at 561 (citation omitted).

  The Disbursing Agent's objection to the Claim is not barred by the 2011 Plan because,

among other matters, the substance of the Claim was never addressed by the prior bankruptcy or the

2011 Plan and the Claim and 2011 Plan do not fit within the same "transactional nucleus of facts."

As the *Associated Vintage* court observed, a plan that is confirmed early in a case does not ordinarily

resolve all of the claims.  *Id.* at 560.  For that reason, debtors often can and do reserve objections

until after they have completed a review process.  A plan that does not purport to settle a claim and

that does not involve specially-negotiated treatment of the claim does not preclude subsequent

objections.  *Id* at 561-62 (no claim preclusion based on shared nucleus of operative facts; "[T]he

plan merely adopts the bankruptcy liquidation scheme and does not purport to settle anything with

creditors.  There was no specially-negotiated treatment of Alary, nor of any creditor junior to

Alary.").

  Here, the 2011 Plan was confirmed in short order (approximately seven months after the

petition date) and, as discussed below, the Debtor expressly reserved all claim objections.  Desert

---

[2] *Associated Vintage,* 283 B.R. at 259 ("*Kelley* and *Heritage Hotel* are easily understood as fundamentally two-party disputes over substantive questions of state law (enforceability of a guaranty and lender liability) between individual debtors, who also were the proponents of the confirmed chapter 11 plans, and a single creditor.").

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Land did not negotiate for or receive special treatment under the Plan and was not allowed to receive payment until Gonzales was paid in full. The Claim of Desert Land was never investigated, negotiated, or deemed allowed. The bankruptcy was certainly not a "two-party dispute" between Desert Land and the Debtor. Under these circumstances, the common nucleus of facts is lacking and forecloses application of principles of res judicata.

**2.     A Confirmation Order Only Precludes the Assertion of Claims That Could or Should Have Been Raised During the Pendency of the Case.**

As a general rule, a confirmed chapter 11 plan is binding on all parties and precludes "the raising of issues which could or should have been raised during the pendency of the case." *In re Heritage Hotel Partnership I,* 160 B.R. at 177 (lender liability claims known to debtor and not disclosed in plan or disclosure statement barred by res judicata and equitable estoppel). *See also Associated Vintage,* 288 B.R. at 556; *In re Kelley*, 199 B.R. at 702-03 (9th Cir. BAP 1996), *limited on other grounds by Associated Vintage*. This concept is a corollary to the requirement that there be a transactional nucleus of facts that taken together resolved a claim by virtue of the plan confirmation process.

Here, a mistaken accounting entry was carried forward on the books of both the Debtor and Desert Land and remained undetected until April 2020. If the Debtor had known earlier that there was an accounting error in its favor, the Debtor would have amended its schedules and disclosed the error. Res judicata cannot ratify an unknown and never-litigated accounting error as the basis for the Claim. Stated differently, the 2011 Plan did not resolve or pay the Claim and merely recited its existence as scheduled. Under these circumstances, there is no basis to find that the Debtor could or should have challenged its propriety prior to confirmation.

**3.     The 2011 Plan's Reservation of Rights Precludes the Operation of Res Judicata.**

In *Associated Vintage,* the Bankruptcy Appellate Panel rejected arguments that a plan's reservation of rights was not sufficiently specific and, therefore, that a post-confirmation claim objection was precluded under the confirmation order. *Associated Vintage,* 288 B.R. at 563-64 ("We agree with the other courts that regard it as impractical and unnecessary to expect that a disclosure statement and plan must list each and every possible defendant and each and every possible

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

theory."). The court went on to state that its comment in *Kelley* that a general reservation of rights is insufficient was "pure dictum . . . and cannot be construed as a general statement of law." *Id. See also Davis v. Yageo Corp.,* 481 F. 3d 661, 682 (9th Cir. 2007) (reservation of rights under plan and subsequent assignment of claims was not so general as to render it invalid; rejecting reliance on *Kelley*).

The 2011 Plan contemplated post-confirmation litigation and specifically reserved the right to prosecute any claim objections. *See* 2011 Plan Excerpts (Exhibit E) at §8.11 ("The Debtor anticipates post-confirmation litigation with Tom Gonzales over the enforcement of the terms of the Plan of Reorganization entered in the Desert Land LLC Chapter 11 case… The Debtor reserves the right to prosecute any objections to claims."). Contrary to Golden's statements and posturing, nothing in the 2011 Plan provides that Desert Land's Claim against the Debtor was or is allowed. The reservation of rights to prosecute any claim objections is not subject to any deadline and, insofar as the Debtor and Desert Land are still litigating with Gonzales and his debt has not been paid in full, the reservation remains valid. The cases relied upon by Desert Land are inapposite and, frankly, should never have been cited. *See, e.g., Trulis v. Barton,* 107 F.3d 685, 691 (9th Cir. 1995) (plan confirmation order explicitly released accepting creditors' claims against third-party developer and affiliates and required dismissal of pending litigation); *In re Diruzzo,* 527 B.R. 800, 802 (1st Cir. BAP 2015) (Chapter 13 plan confirmation order explicitly provided that "[t]he second mortgage claim by Pawtucket Credit Union will be allowed as a wholly unsecured claim pursuant to the Order Granting Motion to Modify Secured Claim entered by this Court on February 27, 2009.").

The Debtor's reservation of rights to prosecute claim objections under the 2011 Plan necessarily preserves the Disbursing Agent's current right to object to the Claim as a mistaken accounting entry. Application of res judicata in this case would unnecessarily incentivize debtors to perform an expensive claim reconciliation process before confirming any plan,[3] and would inequitably give a windfall to Desert Land in the absence of a valid debt.[4]

---

[3] *Associated Vintage,* 288 B.R. at 560 ("A plan confirmed early in the process necessarily must leave more to future resolution than a plan confirmed after most disputes have been resolved.").

[4] *Cf. Carey v. Flintridge Lumber Sales, Inc. (In re RJW Lumber Co.),* 262 B.R. 91, 93 (Bankr. N.D. Cal. 2001) (rejecting res judicata operation of confirmed plan to preclude chapter 7 claims; "As a court of equity, this court is very reluctant to apply a technical legal doctrine to reach an inequitable result… Res judicata should not be applied to thwart the equitable goals of the Bankruptcy Code.").

4.      **Desert Land Cannot Satisfy Its Burden of Proving That an Objection to Its Claim Is Precluded Under the Terms of the 2011 Plan.**

The proponent of claim preclusion bears the burden of demonstrating each of the four elements, and that no exception applies. *Associated Vintage,* 288 B.R. at 562.  On appeal, the preclusive effect of a plan confirmation order is a mixed question of law and fact, with legal issues predominating, that is reviewed de novo.  *Id.* at 554.

Desert Land cannot prove that the 2011 Plan precludes objection to the Claim because the 2011 Plan did not resolve the Claim and the Debtor expressly reserved the right to prosecute any objections to claims.  As a matter of law, Desert Land cannot demonstrate the requisite transactional nucleus of facts for claim preclusion.  The 2011 Plan did not create or validate an obligation of the Debtor where none existed.  As a factual matter, there is simply no evidence to support a valid debt in favor of Desert Land.  Consequently, upon discovery of the mistaken accounting entry, the manager of Desert Land acknowledged the error and corrected the schedules of both the Debtor and Desert Land.  Golden on behalf of Desert Land cannot fabricate "new" evidence regarding the Claim or witnesses to its alleged treatment under the 2011 Plan.

C.      **Even If the Claim Was Deemed Allowed Under the 2011 Plan on a Theory of Res Judicata, It Would Be Subordinate to the Claim of Gonzales.**

Golden on behalf of Desert Land cannot pick and choose which portions of the 2011 Plan are "controlling."  Therefore, even assuming that the Claim could be deemed allowed and not subject to objection on a theory of claim preclusion under the 2011 Plan -- and by ignoring all available evidence, including the corrected schedules filed by Desert Land -- the Claim is expressly subordinate to the outstanding claim asserted by Gonzales.

The 2011 Plan clearly subordinated all intercompany claims until unsecured creditors, including Gonzales, were paid in full.  Excerpts from the 2011 Plan are attached to the Claim that, in and of themselves, reflect the subordination.  *See* Exhibits A and E (Class 3/ Tom Gonzales is unsecured; "Desert Land LLC, Citation Financial LLC and Compass Investments Holdings LLC have agreed to subordinate their claims to the claims of other unsecured creditors and will be paid only after all other unsecured creditors are paid in full and reasonable reserves for maintenance and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

repair of the Property has been funded."). Gonzales has not, and will not, be paid in full from the Debtor's estate. Golden on behalf of Desert Land cannot selectively assert the 2011 Plan as binding on the Debtor for purposes of a mistaken intercompany debt carried on its books while ignoring the subordination provision which renders the Claim wholly uncollectable.

**D.    The Claim Is Objectively Frivolous and Sanctionable.**

Sanctions under Rule 9011 are appropriate when a creditor files a meritless proof of claim. *See, e.g., In re Dansereau,* 274 B.R. 686 (Bankr. W.D. Tex. 2002) (creditor sanctioned for filing baseless priority claims); *In re McAllister,* 123 B.R. 393, 397 (Bankr. D. Or. 1991) (sanctions imposed against Department of Revenue for filing precautionary proof of claim without sufficient investigation, notwithstanding subsequent withdrawal of claim); *Hamilton v. United States (In re Hamilton),* 104 B.R. 525, 527 (Bankr. M.D. Ga. 1989) (sanctions imposed against IRS for overstated proof of claim that included additional tax years that were not outstanding); *In re CMR Mortgage Fund, LLC,* 2016 Bankr. LEXIS 235 at *5-6 (Bankr. N.D. Cal. Jan. 26, 2016) (sanctions imposed against creditor for filing meritless claim that was waived by arbitration award).

Representations to the court must satisfy *each* of the four prongs of Rule 9011(b) (i.e., (i) not filed for any improper purpose, (ii) warranted by law, and (iii-iv) factual contentions and denials are supported or likely to be supported by evidence). Moreover, sanctions are available for violation of *any one* of them. One of the fundamental purposes of the rule is to "reduce frivolous claims, defenses or motions and to deter costly meritless maneuvers." *Christian v. Mattel, Inc.,* 286 F. 3d 1118, 1127 (9th Cir. 2002). *See also In re Grantham Bros.,* 922 F. 2d 1438, 1441 (9th Cir. 1981) (Rule is applied "vigorously 'to curb widely acknowledged abuse from the filing of frivolous pleadings;" internal citations omitted); *Marsch v. Marsch (In re Marsch),* 36 F.3d 825, 831 (9th Cir. 1994) (reversal of BAP in favor of sanctions for bad faith filing of petition to compensate opposing party for unnecessary litigation expense).

The Claim is patently frivolous because it is contradicted by all available factual evidence, is not warranted by existing law, and circumstances surrounding the Claim's prosecution suggest that it was filed for the improper purpose of leveraging a quick settlement designed to fund administrative expenses with little or no benefit to the creditors of Desert Land.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

The allegations and factual contentions of the Claim lack evidentiary support, or are outright false, in the following respects:

- The purported "account stated" is refuted by **sworn testimony** describing an accounting error;

- The schedules attached to the Claim are refuted by **sworn amended schedules** submitted by the manager of Desert Land; and

- The purported "account stated" is not supported by consideration or any evidence of an agreement between the Debtor and Desert Land regarding the item(s) comprising the account and balance due, all of which was sought from Desert Land and known to Golden.

The Claim and legal contentions therein are not warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law for reasons including the following:

- Nevada law unequivocally holds that an account stated that is based on mistake is unenforceable;

- Ninth Circuit law and the cases cited by Golden do not (in any conceivable respect) support claim preclusion as a means of sanctifying an undisputed accounting error;

- Golden fails to cite controlling law regarding claim preclusion (i.e., *Associated Vintage*), including the requisite "transactional analysis" of facts; and

- Separate from the accounting error, the 2011 Plan reserves claim objections and subordinates any payments to insiders until unsecured creditors, including Gonzales, are paid in full.

The Claim is being presented for an improper purpose of leveraging unwarranted settlement funds based on the following facts and circumstances:

- Golden sought to mediate and settle the Claim in advance of any proof of claim being filed;

- The original version of the Claim sought "in excess of $78 million" based on substantive consolidation and alter ego claims that the Debtor and Desert Land operated as a single entity – despite specific findings by the Court to the contrary. *See* March 11, 2019 Hearing Transcript, 36:16- 37:8.

- The Claim was reduced to $4.5 million upon service of a motion and supporting documents pursuant to Rule 11.  The reduced demand is less staggering in amount, but no less frivolous or improper;

- The Claim has been accompanied by meritless arguments that Ms. Gupta, by investigating the Claim (as required by Bankr. Code §1106), allegedly breached her fiduciary duties and must therefore waive or disgorge her professional fees; and

- Golden and his professionals are the only conceivable beneficiaries of pursuit of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1    Claim because Desert Land is administratively insolvent.

2    Sanctions may be imposed by the Court on its own initiative against an attorney, law firm, or

3    party.  Fed. R. Bankr. P. 9011(c)(1)(B).  In this case, in light of the baseless nature of the Claim and

4    surrounding facts and arguments, the Court should consider issuing an order to show cause as to why

5    sanctions should not be imposed.

6    **IV.**

7    **<u>CONCLUSION</u>**

8    There is no credible basis for the Claim, which is undisputedly based on superseded

9    schedules and an erroneous accounting entry.  The Disbursing Agent requests that the Court sustain

10    this objection, disallow the Claim, and consider awarding monetary sanctions based on reasonable

11    attorneys' fees incurred to respond to the Claim.

12

13    Dated: July __, 2021                    PACHULSKI STANG ZIEHL & JONES LLP

14                                            */s/ John D. Fiero*

15                                            John D. Fiero
                                             Gail S. Greenwood
16                                           150 California Street, 15th Floor
                                             San Francisco, CA  94111-4500

17                                           And

18                                           GHANDI DEETER BLACKHAM
                                             Shara L. Larson
19                                           725 S. 8th St., Suite 100
                                             Las Vegas, Nevada 89101
20

21                                           Special Litigation Counsel to
                                             Kavita Gupta, Disbursing Agent under the
22                                           Confirmed Plan for the Estate of Desert Oasis
                                             Apartments, LLC

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP<br>ATTORNEYS AT LAW<br>SAN FRANCISCO, CALIFORNIA

# EXHIBIT A

| Fill in this information to identify the case: |
| --- |

| Debtor 1 | Desert Oasis Apartments, LLC |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | District of Nevada |
| Case number | 18-12456-gs |

Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. **Do not use this form to make a request for payment of an administrative expense.** Make such a request according to 11 U.S.C. § 503.

Filers must leave out or **redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

Desert Land, LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Jeffrey I. Golden, Trustee for Desert Land, LLC
Name

650 Town Center Dr., Suite 600
Number     Street

Costa Mesa          CA          92626
City                State        ZIP Code

Contact phone  714-966-1000

Contact email  jgolden@wgllp.com

Where should payments to the creditor be sent? (if different)

Name

Number     Street

City          State          ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

☐ No
☑ Yes.  Claim number on court claims registry (if known) 3-1     Filed on  09/23/2020
                                                                              MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**

$ _____4,500,000.00_____ . **Does this amount include interest or other charges?**

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

<u>Account stated.  See attached addendum for details.</u>

**9. Is all or part of the claim secured?**

☑ No

☐ Yes.  The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | Amount entitled to priority |
|---|---|---|
| | ☐ Yes. *Check one:* | |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:   Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐  I am the creditor.

☐  I am the creditor's attorney or authorized agent.

☑  I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐  I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  12/14/2020
　　　　　　　　　MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

| Name | Jeffrey | I. | Golden |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Chapter 11 Trustee for the bankruptcy estate of Desert Land, LLC | | |
| Company | Desert Land, LLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 650 Town Center Dr., Suite 600 | | |
| | Number        Street | | |
| | Costa Mesa | CA | 92626 |
| | City | State | ZIP Code |
| Contact phone | 714-966-1000 | Email | jgolden@wgllp.com |

## ADDENDUM TO AMENDED PROOF OF CLAIM

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEVADA

```
-----------------------------------------------------------------x
                                        :
In re:                                  :        Chapter 11
                                        :
DESERT OASIS APARTMENTS, LLC,           :        Case No. BK-S-18-12456-GS
                                        :
                    Debtor.             :
                                        :
-----------------------------------------------------------------x
```

### ADDENDUM TO AMENDED PROOF OF CLAIM OF DESERT LAND, LLC

Jeffrey I. Golden, solely in his capacity as the duly appointed and serving chapter 11

trustee (the "Trustee") for the bankruptcy estate of Desert Land, LLC ("Desert Land"), asserts

the amended proof of claim (the "Amended Claim") to which this Addendum is annexed, on

behalf of the estate of Desert Land against Desert Oasis Apartments, LLC ("Apartments"), the

chapter 11 debtor herein.  The Trustee, on behalf of the estate of Desert Land, asserts the

following claims against Apartments upon personal knowledge as to himself and his own acts,

and as to all other matters upon information and believe, based upon the investigation, analysis

and advice made by and through his attorneys.

### I.    Account Stated of Not Less than $4.5 Million.

1.      As of the date the order for relief was entered, Apartments owed its related entity

Desert Land, LLC ("Desert Land") $4.5 million.  This liability is reflected on the following

documents: (a) Schedule F of Apartments' Schedules and Statement of Financial Affairs [Doc.

#96] filed in In re Desert Oasis Apartments, LLC, Case No. 18-12456-gs (the "Apartments'

Bankruptcy Case"), on July 13, 2018, page 18, which page is attached hereto as **Exhibit A**; (b)

Schedule F of Apartments' Schedules and Statement of Financial Affairs' [Doc. #104] filed in In

re Desert Land, LLC, Case No. 18-12454-gs (the "Desert Land Bankruptcy case"), on July 13, 2018, page 19, which is attached hereto as **Exhibit B**; and (c) Schedule F of the Amended Schedules [Doc. #104] filed in the Apartments' Bankruptcy Case on August 28, 2018, page 4, which page is attached hereto as **Exhibit C**.  This liability is also reflected on Desert Land's tax returns for the years 2005 through and including 2019.

2.    In the first Desert Oasis Apartments, LLC bankruptcy case, Case No. 11-17208 (the "First Apartments' Bankruptcy Case"), Apartments scheduled $5,468,103.96 as due and owing to Desert Land.  *See*, Schedule F, Doc. #35 filed on May 24, 2011, page 20, which page is attached hereto as **Exhibit D**.

3.    Furthermore, Apartments' Chapter 11 Plan of Reorganization [Doc. #89 in the First Apartments' Bankruptcy Case] (the "Apartments' 2011 Plan") provided for the allowance and treatment of the $5,468,103.96 owed by Apartments to Desert Land.  *See*, page 4 of the Apartments' 2011 Plan.  The Apartments' 2011 Plan is attached hereto as **Exhibit E**.  In the Apartments' 2011 Plan, the "Desert Land, LLC" unsecured claim is provided for under Class 4 treatment.  The claim was subordinated to the claims of non-insider general unsecured creditors but was otherwise allowed with treatment to be paid in full. *See*, page 4 of the Apartments' 2011 Plan. The Apartments' 2011 Plan was confirmed pursuant to Court order entered on December 30, 2011 [Doc. #203 in the First Apartments' Bankruptcy Case].   Thus, the Trustee is informed and believes that Apartments owes Desert Land at least $4.5 million and that the entered confirmation order in the First Apartments' Bankruptcy Case is controlling.

## II.    <u>Reservation of Rights.</u>

4.    <u>Right to Amend</u>.  The Trustee expressly reserves the right to further amend or supplement this Amended Claim to correct, clarify, explain, expand, supplement or add to any portion of the claim asserted herein, or otherwise to increase the dollar amount of such claim

-2-

and/or provide additional information and documentation in connection with the claim, including as it may be amended, and including in response to any objection.  Moreover, the Trustee specifically reserves the right to conduct discovery with respect to this matter in accordance with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

     5.    <u>No Admission</u>.  Nothing contained in this Amended Claim shall be deemed an admission by the Trustee.  The Trustee expressly reserves the right to withdraw this Amended Claim in his sole discretion with the effect to be as if this Amended Claim had never been filed.

-3-

| Debtor | **Desert Oasis Apartments, LLC** | | Case number (if known) | **18-12456-LEB** |
| | Name | | | |

| 3.3 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $1,150,000.00 |
|---|---|---|---|
| | **Citation Financial, LLC**<br>**10181 Park Run Drive**<br>**#200**<br>**Las Vegas, NV 89145** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: _ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.4 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $114.34 |
|---|---|---|---|
| | **Classic Design Group**<br>**600 Cervantes Drive**<br>**Henderson, NV 89014** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: _ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.5 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $350,000.00 |
|---|---|---|---|
| | **Compass Investments Holdings, LLC**<br>**10181 Park Run Drive**<br>**#200**<br>**Las Vegas, NV 89145** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: _ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.6 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $4,500,000.00 |
|---|---|---|---|
| | **Desert Land, LLC**<br>**10181 Park Run Drive**<br>**#200**<br>**Las Vegas, NV 89145** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: _ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.7 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $595.80 |
|---|---|---|---|
| | **HD Supply**<br>**4825 E Cheyenne Avenue**<br>**Las Vegas, NV 89115** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: _ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.8 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $50.14 |
|---|---|---|---|
| | **LeaseStar LLC**<br>**2201 Lakeside Blvd**<br>**Richardson, TX 75082** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: _ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.9 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $671.77 |
|---|---|---|---|
| | **RealPage, Inc.**<br>**2201 Lakeside Blvd**<br>**Richardson, TX 75082** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: _ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No  ☐ Yes | |

| Debtor | Desert Oasis Apartments, LLC | | Case number (if known) | 18-12456-LEB |
|---|---|---|---|---|
| | Name | | | |

| | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | |
|---|---|---|---|
| 3.3 | **Citation Financial, LLC**<br>**10181 Park Run Drive**<br>**#200**<br>**Las Vegas, NV 89145** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | $1,150,000.00 |
| | Date(s) debt was incurred _ | Basis for the claim: _ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No  ☐ Yes | |

| | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | |
|---|---|---|---|
| 3.4 | **Classic Design Group**<br>**600 Cervantes Drive**<br>**Henderson, NV 89014** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | $114.34 |
| | Date(s) debt was incurred _ | Basis for the claim: _ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No  ☐ Yes | |

| | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | |
|---|---|---|---|
| 3.5 | **Compass Investments Holdings, LLC**<br>**10181 Park Run Drive**<br>**#200**<br>**Las Vegas, NV 89145** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | $350,000.00 |
| | Date(s) debt was incurred _ | Basis for the claim: _ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No  ☐ Yes | |

| | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | |
|---|---|---|---|
| 3.6 | **Desert Land, LLC**<br>**10181 Park Run Drive**<br>**#200**<br>**Las Vegas, NV 89145** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | $4,500,000.00 |
| | Date(s) debt was incurred _ | Basis for the claim: _ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No  ☐ Yes | |

| | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | |
|---|---|---|---|
| 3.7 | **HD Supply**<br>**4825 E Cheyenne Avenue**<br>**Las Vegas, NV 89115** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | $595.80 |
| | Date(s) debt was incurred _ | Basis for the claim: _ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No  ☐ Yes | |

| | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | |
|---|---|---|---|
| 3.8 | **LeaseStar LLC**<br>**2201 Lakeside Blvd**<br>**Richardson, TX 75082** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | $50.14 |
| | Date(s) debt was incurred _ | Basis for the claim: _ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No  ☐ Yes | |

| | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | |
|---|---|---|---|
| 3.9 | **RealPage, Inc.**<br>**2201 Lakeside Blvd**<br>**Richardson, TX 75082** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | $671.77 |
| | Date(s) debt was incurred _ | Basis for the claim: _ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No  ☐ Yes | |

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com

| Debtor | **Desert Oasis Apartments, LLC** | Case number (if known) | **18-12456-LEB** |
|---|---|---|---|
| | Name | | |

---

| 3.3 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$1,150,000.00** |
|---|---|---|---|
| | **Citation Financial, LLC** | ☐ Contingent | |
| | **10181 Park Run Drive** | ☐ Unliquidated | |
| | **#200** | ☐ Disputed | |
| | **Las Vegas, NV 89145** | | |
| | Date(s) debt was incurred __ | **Basis for the claim:** __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.4 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$114.34** |
|---|---|---|---|
| | **Classic Design Group** | ☐ Contingent | |
| | **600 Cervantes Drive** | ☐ Unliquidated | |
| | **Henderson, NV 89014** | ☐ Disputed | |
| | Date(s) debt was incurred __ | **Basis for the claim:** __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.5 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$350,000.00** |
|---|---|---|---|
| | **Compass Investments Holdings, LLC** | ☐ Contingent | |
| | **10181 Park Run Drive** | ☐ Unliquidated | |
| | **#200** | ☐ Disputed | |
| | **Las Vegas, NV 89145** | | |
| | Date(s) debt was incurred __ | **Basis for the claim:** __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.6 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$4,500,000.00** |
|---|---|---|---|
| | **Desert Land, LLC** | ☐ Contingent | |
| | **10181 Park Run Drive** | ☐ Unliquidated | |
| | **#200** | ☐ Disputed | |
| | **Las Vegas, NV 89145** | | |
| | Date(s) debt was incurred __ | **Basis for the claim:** __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.7 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$595.80** |
|---|---|---|---|
| | **HD Supply** | ☐ Contingent | |
| | **4825 E Cheyenne Avenue** | ☐ Unliquidated | |
| | **Las Vegas, NV 89115** | ☐ Disputed | |
| | Date(s) debt was incurred __ | **Basis for the claim:** __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.8 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$50.14** |
|---|---|---|---|
| | **LeaseStar LLC** | ☐ Contingent | |
| | **2201 Lakeside Blvd** | ☐ Unliquidated | |
| | **Richardson, TX 75082** | ☐ Disputed | |
| | Date(s) debt was incurred __ | **Basis for the claim:** __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.9 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$671.77** |
|---|---|---|---|
| | **RealPage, Inc.** | ☐ Contingent | |
| | **2201 Lakeside Blvd** | ☐ Unliquidated | |
| | **Richardson, TX 75082** | ☐ Disputed | |
| | Date(s) debt was incurred __ | **Basis for the claim:** __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

---

**Schedule E/F: Creditors Who Have Unsecured Claims**