# EXHIBIT V

John D. Fiero (CA Bar No. 136557)
Gail S. Greenwood (CA Bar No. 169939)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA 94111-4500
Telephone: 415/263-7000
E-mail:jfiero@pszjlaw.com
      ggreenwood@pszjlaw.com

Shara L. Larson (NV Bar No. 7786)
GHANDI DEETER BLACKHAM
725 S. 8th St., Suite 100
Las Vegas, Nevada 89101
Tel: (702) 878-1115
Email: shara@ghandilaw.com

Special Litigation Counsel to
Kavita Gupta, Disbursing Agent under the Confirmed
Plan for the Estate of Desert Oasis Apartments, LLC

**CONFIDENTIAL – FOR IN CAMERA REVIEW ONLY**

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>**DESERT OASIS APARTMENTS, LLC,**<br><br>                      Debtor. | Case No.: bk-s-18-12456-gs<br><br>Chapter 11<br><br>Mediation Date: July 21, 2021<br>Time: 9:30 a.m.<br>Settlement Judge: Hon. Paul Sala |

**CONFIDENTIAL SETTLEMENT BRIEF OF THE DISBURSING AGENT OF THE ESTATE OF DESERT OASIS APARTMENTS, LLC**

**I.**

**INTRODUCTION**

Kavita Gupta, solely in her capacity as the Disbursing Agent under the confirmed plan ("Disbursing Agent") for the Estate of Desert Oasis Apartments, LLC ("Desert Oasis" or the "Debtor")[1] and not individually, submits this confidential settlement brief in accordance with the procedures set forth in the Court's *Order Scheduling Settlement and Status Conference* [Dkt. No. 350].

---

[1] Ms. Gupta is solely participating in this mediation in her capacity as the Disbursing Agent of Desert Oasis, and not an administrative creditor of Desert Land. She does not represent and/or speak for any other administrative creditor in Desert Land.

1  This confidential settlement brief addresses the issues in dispute arising from a $4.5 million Claim (the "Claim") asserted by Jeffrey Golden ("Golden"), the interim[2] chapter 7 trustee of the Estate of Desert Land, LLC ("Desert Land") against Desert Oasis. Golden alleges that the Claim arises from a purported loan from Desert Land to Desert Oasis. As set forth in the accompanying claim objection ("Objection"), the Claim should be denied in its entirety because, prior to Golden's appointment, the principals of Desert Oasis and Desert Land determined that the purported loan between those entities was in fact an accounting error, and as a result they amended the schedules of the Desert Oasis and Desert Land estates to remove that Claim. Nevertheless, Golden, without any supporting facts or evidence, and against the applicable law, proceeded to assert the Claim against Desert Oasis.[3]

## II.

## RELEVANT BACKGROUND FACTS

Below are the relevant facts which provide the factual background and context in which this mediation is taking place.

### A. Ms. Gupta's Prior Role as the Chapter 11 Trustee for the Estate of Desert Land

On April 30, 2018, Tom Gonzales ("Gonzales"), a judgment creditor,[4] filed involuntary Chapter 7 petitions against Desert Land, Desert Oasis and Desert Investments. The Court subsequently converted those Chapter 7 cases to Chapter 11 cases and ordered that they be jointly administered. In April 2019, Ms. Gupta was appointed as the Chapter 11 trustee in each of those cases.

---

[2] The Court converted the Desert Land case to a Chapter 7 case on April 30, 2021, and Golden was appointed as the interim Chapter 7 Trustee. The 341(a) meeting was set for May 7, 2021. DLLA, a creditor in the Desert Land case, along with other creditors, threatened to elect a different Chapter 7 Trustee. To avoid that result, Golden continued the Section 341(a) meeting to August 21, 2021, with the hope of reaching a settlement with those creditors prior to that date.

[3] Golden originally filed "at least" $78 million proof of claim against Desert Oasis. He filed the same proof of claim against Desert Oasis Investments, LLC. ("Desert Investments"). Ms. Gupta, who was the Chapter 11 Trustee of Desert Oasis and Desert Investments at the time, retained special litigation counsel and served Golden with a Rule 11 sanction motion. As a result, Golden withdrew his claim against Desert Investments and reduced the Claim against Desert Oasis by 94% to $4.5 million.

[4] Tom Gonzales obtained a judgment in 2018 for approximately $13.1 million (with interest accruing) against Desert Land, Desert Oasis and allegedly, Desert Investments, which he assigned to Bradley J. Busbin, trustee. For simplicity, this creditor will continue to be referred to as "Gonzales."

DOCS_SF:105807.1 33085/001         2

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**1. Desert Land's Assets and Liabilities at the Time of Ms. Gupta's Appointment**

Desert Land was a Nevada limited-liability company whose primary assets consisted of 23 acres of real property, 16 of which was vacant land. The remaining property consisted of the Desert Oasis Motel — a three-building complex containing 100 motel apartments and two commercial buildings. The secured creditors are Clark County, Nevada ($1.2 million), the Shotgun Entities ($185 million) and DLLA ($16.50 million).

**2. Ms. Gupta's Administration of the Desert Land Chapter 11 Case**

Upon her appointment of the Chapter 11 Trustee in the Desert Land case, Ms Gupta retained the following professionals: Nuti Hart, LLP (bankruptcy counsel); Garman Turner Gordon, LLP (local/real estate counsel); Grobstein Teeple, LLP (accountants); Gordan Law (employment counsel) and Keen-Summit Capital Partners, LLC and Colliers International (real estate brokers).

Then, within two weeks of her appointment, she inspected Desert Land's real property and reviewed its insurance, daily operations and cash controls, financial records, security issues and environmental issues. That inspection and review revealed that Desert Land had serious operational deficiencies: First, the real property had not been properly or adequately insured. Second, the management company for the motel, had neglected that property by failing to address security and cash controls issues. Third, the debtors' principals had failed to address serious environmental issues at the motel and commercial buildings. Fourth, homeless people in the area were using a vacant building in the motel complex for housing and illegal activity. Finally, there were substantial quantities of trash, human waste, overgrown vegetation, and graffiti present on all the real property.

Ms. Gupta and her professionals then spent considerable time and resources rectifying these various issues while simultaneously marketing the Desert Land property for sale. She marketed the property on dual tracks – that is, separately and as part of an aggregate sale with the property owned by estates of Desert Oasis[5] and Desert Investments.[6] Unfortunately, despite her and her professionals' very substantial efforts, no buyer was willing to make an offer for the Desert Land property in excess

---

[5] The Desert Oasis property sold for $15.6 million to a third party.

[6] The Desert Oasis Investment, LLC property sold for $12 million to a third party. In June 2021, the Court confirmed a reorganization plan for Desert Investment and Desert Oasis (the "Plan"). Under the Plan, Ms. Gupta was appointed as the Disbursing Agent for Desert Investments and Desert Oasis

1  of the liens (over $205 million).  Moreover, the secured creditors were not willing to reduce their

2  claims and/or waive their right to credit bid, which severely chilled the efforts to effectively market the

3  property.

4      On June 5, 2020, the Bankruptcy Court conducted an auction and the secured creditors

5  Shotgun Entities and DLLA, each credit bid for the property encumbered by their respective liens.

6  The Bankruptcy Court approved the sale to these entities, subject to the priority property tax liens of

7  Clark County Treasurer.   Shortly thereafter, upon discovering fraudulent transfer claims held by

8  Desert Oasis against Desert Land which she disclosed in writing to the Office of the United States

9  Trustee, Ms. Gupta resigned as chapter 11 trustee of Desert Land.   At the time of her resignation,

10 the total professionals' claims that accrued during the 14-month administration was approximately

11 $756,244.50, of which $642,813.11 remains outstanding.  These fees are comprised of the following:

| Professional | Fees and Expenses Requested | Amount Allowed | Amount Outstanding |
|---|---|---|---|
| Kavita Gupta | $25,856.04 and $4,164.79 | $25,856.04 and $4,164.79 [Dkt. No. 1643] | $19,520.83 |
| Garman Turner Gordon, LLP | $61,547.75 and $6,282.89 | $61,547.75 and $6,282.89 [Dkt. No. 1641] | $43,519.39 |
| Grobstein Teeple, LLC | $117,535.83 and $6,282.89 | $117,535.83 and $6,282.89 [Dkt. No. 1581] | $102,818.72 |
| Aviva Gordon | $9,682.00 | $9,682.50 [Dkt. No. 1644] | $9,682.00 |
| Nuti Hart, LLC | $528,590.67 and $4,266.43 | Pending and contested by Golden | $449,272.10 |
| TOTAL | **$756,244.50** | | **$624,813.00** |

20      Ms. Gupta also executed a stipulation with the Shotgun Entities pursuant to which they

21 agreed to pay $240,000 for professionals' fees to settle a surcharge motion.

22     **3.**    **Remaining Assets and Liabilities Desert Land Case Upon Golden's Appointment**

23         **as Successor Trustee**

24     By the time Golden was appointed as the successor Chapter 11 Trustee, the property held by the

25 bankruptcy estate in Desert Land had been sold.  The remaining assets consisted of approximately

26 $124,000 of unencumbered cash and potential litigation claims.  Of that amount, $100,000 had been

27 donated to the estate by Ms. Gupta and her professionals from the surcharge funds provided by the

28 Shotgun Entities for her efforts to sell the property.  The estate's liabilities consisted of approximately

$765,000 in administrative claims and over $89 million in general unsecured claims. In sum, Desert Land was, and is, currently administratively insolvent.

Therefore, at the time of his appointment, Golden's limited tasks included: (1) filing a routine motion to extend the bar date to file avoidance actions; (2) investigating and prosecuting a claim against the principals of Desert Land; (3) finalizing the sale orders (initial drafts of which Nuti Hart had already provided) and (4) turning over the real property to the Shotgun Entities and DLLA. However, Golden did not finalize the sale order and/or turn over the Desert Land real property encumbered by the DLLA lien (i.e., the motel) for over six months. His continued operation of the motel provided no economic benefit for the estate (all operating cash was cash collateral) and created significant potential liability.

**4.    The Proposed Settlement is for the Sole Economic Benefit of Golden and Brutzkus Gubner Who have Failed to Exercise Any Billing Judgment**

In the 13 months that have elapsed since Golden's appointment as the successor Chapter 11 trustee and later, as the interim Chapter 7 Trustee, Golden has not brought **a single penny** into the Desert Land estate and he and his counsel have performed limited services. To wit, Golden filed a frivolous claim for "at least" $78 million in the Desert Oasis case, which he reduced by 94% to $4.5 million, and he filed a complaint in the Insider Adversary which is subject to a Rule 12(b) motion. The bulk of counsel's time and services has been devoted to fending off the motion to dismiss and pursuing a settlement against Desert Oasis to pay their own fees.

As evidenced by the table below, assuming Golden's settlement offer of $950,000 is accepted, Golden and his counsel, Brutzkus Gubner, will have professional fee claims exceeding $1 million dollars.

| Professional | Fees and Expenses Requested | Amount Allowed | Amount Outstanding |
|---|---|---|---|
| Jeffrey Golden (Chapter 11 Trustee) | $42,110.77 and $980.36. | Pending and contested by DLLA | $17,235.09[7] |
| Brutzkus Gubner (Chapter 11 counsel for | $476,818.25 and $8,503.39 [Dkt. No. | Pending and contested by Shotgun Entities and | Brutzkus Gubner's employment |

---

[7] Golden filed a final fee application seeking fees and expenses totaling $42,110.77 and $980.36, respectively 326 [Dkt. No. 1589], to be prorated with Ms. Gupta as required by Section 326. Because Ms. Gupta has been awarded $25,856.04 on a final basis, Golden is entitled to a maximum of $16,254.73 plus expenses of $980.36.

| | | | |
|---|---|---|---|
| period of 8/11/20 – 1/7/21) | 1590] | DLLA | application provides that it is entitled to hourly fees for certain bankruptcy services and a contingency fee for the Claim Objection and Insider Adversary. Brutzkus Gubner has advised the Disbursing Agent that that its hourly fees are approximately $700,000 (est) |
| Brutzkus Gubner (Chapter 11 counsel for period of 1/8/21 – 4/30/21) (date case converted) | Not yet filed | Not yet filed | See note above |
| Jeffrey Golden (Chapter 7 Trustee) | Estimated as $50,750 under Section 326 | Not yet filed | $50,750 (est) |
| Brutzkus Gubner (Chapter 7 counsel) | Estimated as $237,500 for 25% contingency fee | Not yet filed | $237,500 (est) |
| | | **TOTAL** | **$1,005,485.09** |

Assuming Golden's settlement offer of $950,000 was accepted and he carved out $100,000 for unsecured creditors (which funds Golden seeks to create by demanding the waiver of the Chapter 11 administrative fee claims of other professionals), the distribution would be .0001% of the total amount of the unsecured claims which exceed $89 million. It is clear that Golden and Brutzkus Gubner are administering the Desert Land case solely for their own benefit, not the benefit of the estate and its creditors, which is a breach of their duty to the estate and a basis for the total denial of their fees.[8]

---

[8] A "professional, employed…by the debtor in possession, is…expected to act only in the best interest of the estate," and "not the debtor or any creditor." *McCutchem, Doyle, Brown & Enersen v. Official Committee of Unsecured Creditors (In re Weibel, Inc.)*, 176 B.R. 209, 212 (9th Cir BAP 1994). Therefore, a professional must make a cost benefit analysis *prior to* providing services. *Unsecured Creditors' Committee v. Puget Sound Plywood, Inc.*, 924 F.2d 955, 958-59 (9th Cir. 1991). Under such an analysis, a professional must consider the following factors: (1) whether the burden of the probable cost of legal services disproportionately large in relation to the size of the estate and maximum probable recovery; (2) to what extent will the estate suffer if the services are not rendered; and (3) to what extent may the estate benefit if the services are rendered and the likelihood of the disputed issues being resolved successfully. *Puget Sound Plywood*, 924 F.2d at 958-959. If a professional's cost benefit analysis indicates that the only parties who will likely benefit from [a service] are the trustee and his professionals," the service is unwarranted, and a court does not abuse its discretion in denying fees for those services." *Estes & Hoyt. v. Crake (In re Riverside–Linden Investment Co.),* 925 F.2d 320, 321 (9th Cir. 1991).

DOCS_SF:105807.1 33085/001                           6

# II.

# SETTLEMENT ISSUES

**1. Nature of the Action.** The Objection to Desert Land's Claim is straight forward and uncomplicated. Desert Land is not entitled to any recovery for a mistaken entry on its general ledger, which is acknowledged by its principal and duly supported by sworn amended schedules.

Golden seeks to leverage a settlement based on the costs of litigation and meritless and veiled threats that Ms. Gupta allegedly breached her fiduciary duties to Desert Land by merely investigating an intercompany claim and fully disclosing the intercompany claim and her investigation from the outset to the Bankruptcy Court, creditors. Golden's position is contrary to Rule 2009, longstanding case law and common practice that permits a trustee to represent multiple related debtors.[9] Ms. Gupta was statutorily obligated to investigate claims pursuant to Bankruptcy Code section 1106(a)(3)-(4) and upon discovery of the accounting error, the scheduled intercompany claims were voluntarily amended by David Gaffin in his capacity as co-manager of each of the Debtor and Desert Land with advice of his counsel. Accordingly, the principals of Desert Land fully acknowledge the accounting error. Golden's conflict of interest argument is an effort to (1) deflect from the fact that the Claim is baseless, and (2) inappropriately pressure Ms. Gupta to disgorge fees despite the fact that she was disinterested, disclosed all facts, and her nominal fees (approximately $25,000) have been approved by a final order.

**2. Evidence Supporting Ms. Gupta's Objection and Theory of the Case.** Golden has the burden of proving the amount and validity of the Desert Land Claim. He has failed to do so. Rather,

---

[9] *See, e.g.,* Fed. R. Bankr. P. 2009(c)( appointment of trustees for estates being jointly administered); *In re BH&P Inc.,* 949 F. 2d 1300, 1310-11 (3d Cir. 1991) ("A standard for removal based on section 101(14))(E), that automatically disqualifies a trustee from serving in jointly administered cases where there are interdebtor claims, is overbroad. While we recognize that cases involving multiple debtors served by a single trustee present special concerns requiring the trustee to balance competing interests with vigilance and guard against conflicts, we also recognize the reality that a single trustee is often able to maximize the return to jointly administered estates through increased economy and efficiency. Joint administration by a single trustee is commonplace in the scheme of bankruptcy administration and its positives often outweigh any negatives."); *In re O.P.M. Leasing Serv., Inc.,* 16 B.R. 932, 939 (Bankr. S.D.N.Y. 1982) ("Clearly, International Oil [427 F. 2d 186 (2d Cir. 1970)], puts an end to any argument that [an] intercompany claim should disqualify [Hassett]. The fact that Hassett as Chapter 11 trustee of OPM is a creditor of Cali or that Hassett as Chapter 11 trustee of Cali owns the stock of OPM does not prevent Hassett from being disinterested or constitute an impermissible conflict of interest."); and *In re AFI Holding, Inc.,* 355 B.R. 139, 151 (9th Cir. BAP 2006) (adopting *BH&P Inc.* approach to conflict analysis based on the "totality of the circumstances" and "evaluated prospectively on a case-by-case basis" to assess whether particular conflict is "materially adverse" to the estate sufficient constitute cause for removal), *affirmed at* 530 F. 3d 832, 838 (9th Cir. 2006).

1 the Objection to Desert Land's Claim sets forth the undisputed evidence demonstrating that the

2 original scheduled claim in favor of Desert Land was the subject of an accounting error. The

3 existence of the accounting error is demonstrated by a sworn declaration of the debtors' senior

4 accountant and bookkeeper (Objection, Exhibit B) and the sworn amended schedules (Objection,

5 Exhibit C). There is no dispute regarding the accounting error, and Golden does not purport to offer

6 any countervailing evidence.

**3. Analysis of Key Issues.** The key factual and legal issues are addressed in detail in the Objection. Counsel for Golden concedes that there are no material factual disputes concerning the Claim.[10] As a factual matter, there was a mistake in the debtors' records because the accountant mistakenly believed that Desert Land was the sole obligor on a loan Gonzales, such that use of certain proceeds by Desert Oasis constituted a loan from Desert Land. In fact, the Debtor and Desert Land were jointly obligated on the Gonzales loan ($41.5 million) and all proceeds were owed to Gonzales. As a legal matter, Nevada law does not recognize an "account stated" that is the product of a mistake. As a further legal matter, the theory of *res judicata* or claim preclusion cannot turn the accounting error into an enforceable debt. First, the Debtor's 2011 Plan of reorganization did not involve any investigation or negotiation of intercompany debts between Desert Oasis and Desert Land. The 2011 Plan and Desert Land's claim do not arise from the same "transactional nucleus of facts." *Alary Corp. v. Sims (In re Associated Vintage Gp., Inc.),* 283 B.R. 549, 561 (9th Cir. BAP 2002). Second, the 2011 Plan did not approve an allowed claim against the Debtor and expressly reserved all objections to claims. *See* Objection, Exhibit D. Third, the 2011 Plan expressly subordinated all insider claims, including a scheduled claim of Desert Land until unsecured creditors, including Gonzales, were paid in full. *Id.* Golden cannot twist the existence and terms of the 2011 Plan into a mechanism to validate what the principal parties agree was an accounting error.

**4. Strength and Weaknesses of the Debtor's Objection.** The facts and law support the Debtor's Objection to the Claim to such an extent that Golden and his attorneys risk sanctions under

---

[10] *See* 3/11/21 Hearing Tr.at 28:24-29:3 ("There's no disputed facts in that claim. Not meaning to get ahead of myself, but there's no disputed facts. All those issues can be decided. To the extent there are any contested issues, they're legal conclusions based on applications of law…").

Rule 11.  *See* Objection at Section II D.  Furthermore, Ms. Gupta's fees in the Desert Land case have been approved by final order, and there is no factual or legal basis for Golden to claw back such fees for purposes of paying himself and his professionals to pursue an objectively frivolous claim.

**5. Strength and Weaknesses of Desert Land's Claim.**  Desert Land's Claim is fundamentally flawed and beyond weak.  The "strength" of the Claim lies in the fact that continued litigation will increase professional expenses and directly reduce the distribution available to the Debtor's principal unsecured creditor, Gonzales, who is also a creditor of Desert Land.  Gonzales has engaged in ongoing private settlement discussions with Golden in an effort to resolve the Claim and avoid further litigation expense, all of which is based on a substantial payment from the Debtor's estate that would otherwise be payable to Gonzales.  Ms. Gupta seeks to maximize the estate for the benefit of the unsecured creditor and is prepared to follow the settlement prerogative of Gonzales with respect to estate funds available for distribution to creditors.

**6. Settlement History.**  Gonzales initially offered $100,000 cash payable from his distribution of the Desert Oasis estate, and has variously increased the offer to $350,000 as part of a global settlement to resolve all claims asserted by Desert Land, including the Claim against Desert Oasis and litigation against principals and insiders of Desert Land (the "Insider Adversary").  Ms. Gupta is informed that Desert Land has consistently sought an aggregate of $900,000, has not reduced the demand, and, in fact, increased the demand to $950,000 in connection with this mediation.  The most recent settlement offer was comprised of $350,000 from Gonzales' distribution from the Debtor, plus additional cash ($100,000) and a secured note ($200,000) offered on behalf of the defendants to the Insider Adversary, such that the parties are approximately $300,000 apart.

Ms. Gupta has reiterated the aforementioned settlement offer for purposes of mediation.  Ms. Gupta  is prepared to increase the settlement offer only to the extent that Gonzales wishes to increase a payment from the Debtor's assets available to creditors.  As stated above, Ms. Gupta is not participating in this mediation in her capacity as an administrative creditor of Desert Land and therefore, she will not enter into any discussions as to the waiver of her professional fees.

**7. A Fair Settlement.** Ms. Gupta believes that litigation of the accompanying Objection will resolve the Claim in favor of the Debtor and will not exceed $350,000. Therefore, Gonzales' current offer is generous.

**8. Concluding Settlement.** Subject to the consent of Gonzales, Ms. Gupta is prepared to offer $350,000 payable from the Debtor's estate to Desert Land in exchange for withdrawal of the Claim and general and mutual releases of known and unknown claims between the Debtor, Desert Land, and their respective agents, including releases of claims between the trustees in their capacities as former chapter 11 trustees and/or interim chapter 7 trustee of Desert Land. The proposed settlement is solely between the Debtor and Desert Land and must not be conditioned on any terms or settlement that may be reached regarding the Insider Adversary.

Dated: July 16, 2021

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ John D. Fiero*

John D. Fiero
Gail S. Greenwood
150 California Street, 15th Floor
San Francisco, CA  94111-4500

Special Litigation Counsel to
Kavita Gupta, Disbursing Agent

-and-

GHANDI DEETER BLACKHAM
Shara L. Larson
725 S. 8th St., Suite 100
Las Vegas, Nevada 89101

Local Special Litigation Counsel to
Kavita Gupta, Chapter 11 Trustee