1  MARK WRAY, #4425
2  mwray@markwraylaw.com
   LAW OFFICES OF MARK WRAY
3  608 Lander Street
   Reno, Nevada 89509
4  (775) 348-8877
5  (775) 348-8351 – Fax

6
   JOHN DAVID FISCHER (CA Bar No. 76401 - *admitted pro hac vice*)
7  OF COUNSEL

8  Attorneys for Creditor BRADLEY J. BUSBIN, TRUSTEE
9

10              UNITED STATES BANKRUPTCY COURT
11
12                    DISTRICT OF NEVADA

13  In re                              Case No. BK-S-18-12456-GS

14  DESERT OASIS APARTMENTS, LLC,      Chapter 11
15
16                       Debtor.        Hearing Date:  Nov. 18, 2021
                                        Hearing Time:  1:30 p.m.
                 _____/
17
18  **BUSBIN'S OPPOSITION TO APPLICATION FOR APPROVAL AND PAYMENT**
    **OF ATTORNEYS FEES FROM SALE PROCEEDS TO SECURED CREDITOR**
19              **THE NORTHERN TRUST COMPANY**

20        Millions of dollars in cash in a bankruptcy estate is too great a temptation for the
21
    Northern Trust Company.  Not satisfied with getting all of its principal, interest, default
22
23  interest and late charges, plus its attorneys fees and costs, paid by the Desert Oasis

24  Apartments, LLC bankruptcy estate in 2020, Northern Trust eyes the remaining millions

25  and sees an opportunity to continue to plunder the estate with grossly inflated demands
26
27  for attorneys fees.

28

                                         1

But Northern Trust has already been paid in full on its Notes and there is no legal basis for recovering further attorneys fees under 11 U.S.C. § 506.

And even if fees were recoverable, those requested fees are unreasonable in nature and amount.  Far too much time was charged by experienced attorneys to complete simple tasks.  Charges were duplicated.  Fees were charged for services that are not compensable.  Descriptions of services lack the basic information needed to determine if they are compensable.  Further, fees were previously requested and paid for the title company's defense attorney, which were discovered to have been paid directly by the title company, with no legal obligation of Northern Trust to pay the title company defense attorney.  The estate deserves a credit for that payment.

Accordingly, Northern Trust's motion for fees [ECF No. 403] fails to meet the requisites of 11 U.S.C. § 506 and  Brad Busbin, Trustee of the Gonzales Charitable Remainder Unitrust One ("Busbin") opposes the motion and requests that if any fees are awarded, they be reduced to a reasonable figure.

**I**

**NORTHERN TRUST'S CURRENT FEE APPLICATION CONTINUES A PATTERN OF OVERCHARGING THE DESERT APARTMENTS ESTATE, INCLUDING CHARGING FOR FEES OF DEFENSE COUNSEL THAT WERE NOT AN OBLIGATION OF NORTHERN TRUST**

Northern Trust knows it is overcharging.  Soon after filing its first motion for payment of attorneys fees on July 20, 2020 [ECF No. 1368 in Case No. 18-12454], Northern Trust readily stipulated with Chapter 11 Trustee Kavita Gupta to reduce its attorney fee demand by $90,000 [ECF No. 118, p. 2].  Because the amount claimed was

2

$547,693.56, Northern Trust voluntarily sliced 16.4% off the top of its demand without a fight. *Id.* The stipulation reflects two circumstances: (1) Northern Trust's attorneys grossly overcharge, and (2) fee reductions are in order. This Opposition will show that with the current motion, Northern Trust continues its practice of spectacular overcharging.

A gross example of Northern Trust's practice of overcharging is the fees of Gerrard Cox Larson ("Gerrard"). After Northern Trust and Gerrard evaded questions about their engagement for months, it was determined that Gerrard was engaged by First American Title Insurance Company ("First American") to defend the adversary case in which Northern Trust is a defendant [Case No. 19-01108] under First American's Loan Policy of Title Insurance ("title policy") that requires First American to defend "***at its own cost.***" *Wray Decl., Ex. 1, ¶ 5(a)*(emphasis added). First American – which is not even a creditor of this estate -- is the obligor for Gerrard's fees. Northern Trust is billed nothing and pays nothing toward Gerrard's fees. *Wray Decl., Ex's 2 & 3.* Yet in the first motion for fees filed July 20, 2020, Northern Trust sought and obtained payment of $64,029.34 from the estate to reimburse First American for fees that ***First American*** paid to Gerrard. *See ECF No. 128; Wray Decl., Ex.'s 2 & 3.*

To justify payment where Northern Trust never had any obligation to pay for defense counsel, Gerrard and First American argue that as an oversecured creditor, Northern Trust is entitled under 11 U.S.C. § 506 to recovery of its fees, and since First American is contractually subrogated to Northern Trust's position, Northern Trust can recover fees paid by First American. *Wray Decl., Ex's 2 & 3.* This argument is specious.

3

The title policy states that a right of subrogation is only triggered when First American has "settled and paid a claim under this policy." *Wray Decl., Ex. 1, ¶ 12.* **First American has neither settled nor paid a claim in this case.** *Wray Decl.* Purely as a matter of contract law, therefore, First American is not subrogated to any alleged "rights" of Northern Trust.[1] *Id.*

Accordingly, First American is not a creditor of the Desert Apartments estate and the estate does not owe First American or Gerrard anything. Additionally, Gerrard represents both Northern Trust *and* the Shotgun Entities[2] in the adversary proceeding. But the Shotgun Entities are creditors only in the Desert Land, LLC case [Case No. 18-12454]. Therefore, even if subrogation existed, which it does not, no more than *half* of Gerrard's fees (the half attributable to Northern Trust) could properly be charged to the Desert Apartments estate. The simple fact is that Northern Trust, First American and Gerrard went after the *entire* Gerrard billing of $64,029.34[3] from the Desert Apartments

---

[1] Hypothetically, even if First American were eventually called upon to pay the claim, so as to make Northern Trust whole and thereby trigger a right of subrogation, ***the payment of the claim would mean that Mr. Busbin had prevailed in the adversary case and established his right to priority ahead of Northern Trust***. In that event, Mr. Busbin would be entitled to first priority to the proceeds of the sale of the apartments property. First American would be a junior lienholder only entitled to payment after Mr. Busbin was paid in full. Because there would not be sufficient proceeds left after payment of Mr. Busbin to pay First American in full, First American as subrogee of Northern Trust would not be able to claim the status of an oversecured creditor, and thus could not recover any attorneys fees from the Desert Apartments estate under 11 U.S.C. § 506.

[2] The "Shotgun Entities" are Shotgun Creek Investments, LLC, Shotgun Creek Las Vegas, LLC and Shotgun Investments Nevada, LLC.

[3] Gerrard had already been paid this sum by First American.

4

estate in 2020 because the Desert Apartments estate has cash and Desert Land doesn't, when Northern Trust had no legal right to do so.

# II

# FACTS

### A.    Northern Trust's Counsel Overbills to Reply to a Charge of Overbilling

Trustee Gupta planned to object to Northern Trust's attorneys fees demand contained in its motion to disburse filed July 20, 2020 [ECF No. 1368 in Case No. 18-12454] until Northern Trust stipulated with Trustee Gupta to reduce its billing by $90,000.  [ECF No.  1407 in Case No. 18-12454].

Mr. Busbin's *five-paragraph* response to the fees request [ECF No. 1436 in Case No. 18-12454] filed August 14, 2020 concurred with the $90,000 reduction. _Any_ attorney,  let alone experienced bankruptcy attorneys familiar with the subject matter, would have digested this response in a couple of minutes.  Yet on August 14, 2020, Ms. Reece recorded these entries:

**Receipt and review Response filed by Gonzales Trust to fees (1.7), draft email to client (.3), outline issues for reply (.8)**

As Ms. Reese billed $1,054 (1.7 hours at her hourly rate of $620) to read the 5-paragraph response, and .8 more hours to allegedly "outline" the alleged "issues," attorney Anthony Austin was billing 1.2 hours to "begin work on shell of response to fee objections."  This was followed on August 16, 2020 by Ms. Reece billing .7 hours to

"review objection and work on reply" and another .7 hours to "review declarations[4] for reply." Then on August 17, 2020, Mr. Austin billed .5 hours to "work on reply regarding disbursement of funds" and Ms. Reece charged 1.7 more hours to "edit reply." Thus, the two lawyers charged **at least 8.6 hours[5]** to read and "reply" to Mr. Busbin's 5-paragraph concurrence with the stipulated resolution of the motion.

Ironically, Northern Trust lawyers massively padded a billing to read a short filing concurring that Northern Trust's lawyers had in fact padded their bills.

**B.      Overbilling to Read a Notice of Withdrawal of a Disclosure Statement**

In 2018, co-debtor SkyVue Las Vegas, LLC filed a disclosure statement and plan that never went anywhere. Two years later, on July 2, 2020, SkyVue filed **a one-sentence withdrawal** of the motion to approve the disclosure statement and plan. [ECF No. 164 in Case No. 12458]. On July 2, 2020, Ms. Reece billed .7 hours -- $434 -- to read that sentence. Specifically, she billed .7 to "review withdrawal of disclosure statement." She separately billed .7 hours for emails with unnamed parties on the same date supposedly concerning whether the disclosure statement hearing was continued. On July 3, 2020, Mr. Austin billed .3 hours to read the same one-sentence withdrawal "and correspond with Ms. Reece regarding" it. These are frivolous overcharges that should be entirely rejected.

---

[4] The reply contained no declarations when it was filed. *See ECF No. 118,* filed 8/17/20.

[5] Interspersed in the billings are charges for emails and correspondence between attorneys Reece, Austin and Hawkins. The descriptions are minimalist, and there are key redactions, but given their proximity to the entries concerning the reply, these emails and other communications likely could be charged to the reply, resulting in *more* than 8.6 hours' worth of charges.

6

### C.    Overcharging to Read the Order Granting a Rule 54(b) Motion

On July 1, 2020 the Court issued an 11-page order and 2-page judgment granting Northern Trust's Rule 54(b) motion in Adv. No. 19-01108.  On July 1, 2020, Mr. Austin recorded that he allegedly spent .7 hours on "attention to" the order and judgment and .1 hours emailing Ms. Reece about it.  On July 1, 2020, Ms. Reece charged 1.2 hours for "review and analysis" of the same order, resulting in a total duplicative billing of 1.9 hours to read a ruling on a motion whose facts, issues and law were intimately familiar to counsel.  For good measure, Ms. Reece billed .8 more hours allegedly to email the client about the order.  To be generous, to read the ruling and email a status report to the client could have taken at most a half hour.  The billing of 2.8 hours ($1,560) is absurd.

### D.    Overcharging to "Prepare for Hearings" on a Motion

Northern Trust's motion to disburse funds required two hearings:  one on August 6, 2020 and one on August 18, 2020.  Mr. Busbin had asked Northern Trust to set the motion for hearing on a date after the District Court ruled on Mr. Busbin's motion for a stay pending appeal in the adversary case.  Northern Trust insisted on proceeding by order shortening time on August 6, 2020. *Wray Decl., filed herewith.*  At the hearing, the Court determined it should not make a ruling on the disbursement motion until after the District Court ruled on the stay motion, and so the hearing was continued until August 18th.

Ms. Reece billed 1.0 hours on August 5, 2020 to "prepare for argument" and another 2.7 hours on August 6th allegedly to "prepare for the hearings." Her alleged "preparation" time of 3.7 hours is suspicious because she had quite recently prepared the

motion (it was heard on shortened time) and she had billed an extraordinary number of hours on the motion already, so the arguments were obviously still fresh in her mind.

Be that as it may, the District Court denied Mr. Busbin's motion for stay and the hearing on the motion to disburse proceeded on August 18th.  Due to denial of a stay, it was a foregone conclusion that the motion to disburse would be granted.  Yet on August 17th Ms. Reece billed .8 hours to "prepare for hearing."  She then billed another 3.8 hours on August 18, 2020 to "prepare for and attend" the hearing.  The Trustee's counsel, Kevin Coleman billed .7 hours to attend the hearing, *Wray Decl, filed herewith*, so the hearing only lasted 42 minutes.  Ms. Reece thus claims to have spent 3.9 hours to "prepare for" argument a second time on a motion the Court was going to grant, after having billed 3.7 hours 12 days earlier allegedly to "prepare for" the argument.  The claim that she spent 3.7 hours and then 3.9 hours more to "prepare for" the argument 12 days apart is preposterous.  Even if she had actually "prepared" for 7.6 hours, this amount of time to "prepare" would have been grossly unreasonable.

### E.    Overbilling to Prepare a Payoff Demand

Northern Trust is a financial institution.  It is has people whose job it is to keep track of what it is owed and produce payoff demands.

At the first hearing on Northern Trust's motion for disbursement, on August 6, 2020, the Court directed Northern Trust to provide the other parties and file with the court a payoff demand on its two notes and deeds of trust.

While the descriptions are vague and there is a redacted portion, from August 6-11, 2020, Ms. Reece recorded having spent at least 5.8 hours to allegedly produce a

8

"schedule" of the debt allegedly owed to Northern Trust.  After all that billing by Ms. Reece, on August 11, 2020 Mr. Austin billed .5 hours to "work on filing related to schedule of debt owed *and prepare schedule*" (emphasis added).  Ms. Reece then recorded an additional 1.6 hours to allegedly "edit notice of filing and work on schedule," bringing the total of her time alone to produce a payoff demand to 7.4 hours.  In total, Northern Trust charged the obscene amount of $5,102 in attorneys fees for a payoff demand that Northern Trust should have produced without incurring hardly any fees.

On August 11, 2020, Northern Trust filed a two-sentence notice with a very basic, one-page spreadsheet of principal, interest, and default interest owed, plus the amount claimed to be owed for attorneys fees (ECF No.1427 in Case No. 18-14524).  This information was "prepared" into notice and spreadsheet form by Mr. Austin in half an hour.  Ms. Reece's billing (7.4 hours X $620 = $4,588) is totally ridiculous.

**F.      Overcharging for the Hearing on the Break-Up Fee Motion**

On August 12, 2020, Ms. Reece recorded:

> **Review and respond to emails about hearing on breakup fees (.8), draft email and review response about language for order and concern (.6), draft email to client about [redacted] (.4)**

Trustee Gupta's counsel Kim Fineman and Kevin Coleman did exchange emails with Ms. Reece on August 12, 2020 about the hearing on the motion to approve the break-up fee, which was set for the next day.  The emails took very little time.  Mr. Coleman did not even bill for it and Ms. Fineman billed .2. *Wray Decl., Ex. 5.*  Ms. Reece charging .8 hours is excessive.

Then on August 13, 2020, Ms. Reece recorded:

9

**Prepare for and attend hearing on breakup fee (1.8), review and approve form of order (.4), draft email to trustee's attorney (.2), draft memo about [redacted] (.8)**

Ms. Fineman billed .4 hours on August 13, 2020 to prepare for and attend the hearing on the breakup fee, ***and it was her motion.*** *Wray Decl., Ex. 4.* Ms. Reece could not honestly bill 1.8 hours to prepare for and attend this hearing.

**G.     Time Sheet Entries Lack Sufficient Descriptions to be Compensable**

Ms. Reece's time entries on September 4, 2020 look like this:

**Review and draft emails to client about [redacted] (1.6), conference call with client (.8), draft emails to client about [redacted] (.8), review and respond to email from client about [redacted] (.6)**

These entries total 3.8 hours and $2,356 but the descriptions reveal absolutely nothing about how the services allegedly rendered should be compensable. It would not reveal a confidential communication to disclose what the general subject matter of the services is, such as, a particular pending motion or issue. Furthermore, Northern Trust has the burden to disclose sufficient information to enable the Mr. Busbin to ascertain if the services are compensable. The purported descriptions of services on September 4, 2020 with the redactions are tantamount to no descriptions at all and they are completely inadequate for the purpose of determining reasonableness under 11 U.S.C. § 506. The Court may be able to see in its unredacted versions of the billings the information that was redacted from the version provided to Mr. Busbin. Mr. Busbin strongly suspects that the redacted information does not contain any attorney-client communications. Having redacted or simply failed to include the non-confidential information necessary for Mr.

Busbin to determine whether the fees are reasonable, Northern Trust should be deemed to have waived any claim it has to recover the amount of those fees.

The following are time entries that should not be compensable because non-confidential information necessary for Mr. Busbin to determine reasonableness is missing or redacted. The following does not list all the entries whose descriptions are lacking. The list only includes those entries where it was impossible to determine from the context of *other surrounding entries* or from *filings with the court* how the services allegedly rendered could be compensable:

| 7/24/20 | Anthony Austin | Telephone to Ms. Reece regarding [redacted] | .6 |
| | | Attention to correspondence from Ms. Reece and respond regarding same | .2 |
| 7/27/20 | Anthony Austin | Telephone from Ms. Reece regarding [redacted] | .7 |
| 7/27/20 | Cathy Reece | Long telephone call with client about [redacted] | .6 |
| | | Long telephone call with D. Gerrard about [redacted] | .8 |
| 7/28/20 | Cathy Reece | Long telephone call with D. Gerrard and Associate about [redacted] | .8 |
| 7/29/20 | Mark Hawkins | Review [redacted] | .4 |
| 8/10/20 | Cathy Reece | Review [redacted] | 1.0 |
| 8/13/20 | Cathy Reece | Draft memo about [redacted] | .8 |
| 8/17/20 | Cathy Reece | Review and respond to emails to and from client | .4 |
| | | Emails about [redacted] | .3 |

11

| Date | Name | Description | Hours |
|------|------|-------------|-------|
| | | Draft letter to title company | .8 |
| | | Telephone call with M Hawkins about [redacted] | .4 |
| | | Draft email to in-house counsel | .2 |
| 8/17/20 | Mark Hawkins | Analyze [redacted] | .4 |
| 8/18/20 | Don Miner | Conference regarding [redacted] | .6 |
| 8/21/20 | Cathy Reece | Receipt and review email from title company About [redacted] | .6 |
| 8/27/20 | Cathy Reece | Call with D. Gerrard | .4 |
| 9/3/20 | Cathy Reece | Analysis of [redacted] | .8 |
| | | Draft email to client and response about [redacted] | .5 |
| 9/4/20 | Cathy Reece | Review and draft emails to client about [redacted] | 1.6 |
| | | Conference call with client | .8 |
| | | Draft emails to client about [redacted] | .8 |
| | | Review and respond to email from client about [redacted] | .6 |
| 9/24/20 | Mark Hawkins | Confer with C. Reece regarding [redacted] | .4 |
| 9/30/20 | Cathy Reece | Review and respond to email from client | .2 |
| | | Draft email to client about [redacted] | .4 |
| 10/6/20 | Anthony Austin | Participate in telephone conference with Counsel regarding [redacted] | .7 |
| | | Telephone from Ms. Reece regarding | |

12

| | | | |
|---|---|---|---|
| | | [redacted] | .5 |
| 10/6/20 | Cathy Reece | Prepare for and attend long call about [redacted] | 2.8 |
| 10/12/20 | Anthony Austin | Correspond with Ms. Reece regarding [redacted] | .7 |
| 10/15/20 | Anthony Austin | Telephone from Ms. Reece regarding [redacted] | .3 |
| 10/15/20 | Cathy Reece | Conference call with client about [redacted] | .8 |
| 12/11/20 | Cathy Reece | Draft and send email to client about [redacted] | .4 |
| 12/18/20 | Cathy Reece | Conference call with D Gerrard about [redacted] | 4. |
| 2/2/21 | Cathy Reece | Draft email to client about [redacted] | .4 |
| 2/5/21 | Cathy Reece | Telephone call with client about [redacted] | .4 |
| | | Send email to clients | .4 |
| 2/15/21 | Cathy Reece | Review and respond to email and issues | .3 |
| 3/15/21 | Anthony Austin | Prepare and attend teleconference with Reece regarding [redacted] | .5 |
| 3/25/21 | Anthony Austin | Telephone from Ms. Reece regarding [redacted] | .4 |
| 3/26/21 | Anthony Austin | Research [redacted] | 1.3 |
| 3/30/21 | Anthony Austin | Review research regarding [redacted] | 1.1 |
| | | Attention to correspondence from Ms. Reece regarding [redacted] | .1 |

In summary, the charges that should be disallowed due to lack of adequate descriptions of services are as follows:

13

| Anthony Austin | 7.1 hours | $2,840 |
| Cathy Reece | 18.5 hours | $11,470 |
| Mark Hawkins | 1.2 hours | $480 |
| Don Miner | .6 hours | $348 |
| | TOTAL: | **$15,138** |

**H.     Overcharging for Emails Is Obvious from the Billings**

In the experience of the undersigned over years of billing, the vast majority of emails are billed at .1 because they take a few minutes to read or to draft. A typical email to a client is a status report or request for information, and a typical email to another attorney is few sentences long . *Wray Decl., attached.* There are of course emails that are longer, but for the most part, reading an email that has been received is a .1 and drafting an email is a .1. *Id.*

A dramatic example is the billings of Trustee Kavita Gupta. In ECF No. 372-1, Trustee Gupta produced 117 pages of time entries covering the period of March 2019 through June 2021. During that period, per a count done by the undersigned's staff, Ms. Gupta recorded sending or receiving an email 2,888 times. Of that total, 33 emails were recorded at .2 or greater. All the rest were recorded as .1. So approximately 99% of Trustee Gupta's emails were .1's.

In contrast, of the 150 entries by Ms. Reece in the billings attached to the motion that mention either reviewing or composing an email, only 9 of those entries are for .1 hours:

7/17/20  - draft email to client (.1)

7/19/20  - draft emails to clients (.1)

7/21/20  - draft email (.1)

9/18/20 – draft email to client (.1)

10/13/20 – draft email to D Gerrard (.1)

11/23/20  - draft email to client (.1)

2/26/21 – draft email to D Gerrard (.1)

4/25/21 – Draft email to client with reply brief (.1)

4/25/21  -  Draft email to D Gerrard with reply brief (.1)

While one reasonably expects a very high percentage of emails to be .1's, in the case of Ms. Reece, it is the opposite.  In her case, 94% of her emails are recorded as .2 or more.  The evidence supports a reasonable conclusion that Ms. Reece pads her billings for reviewing and sending emails.  And when she pads, she does so with gusto.  She does not simply go with a .2, she records a .4 in many cases.  Each time that happens, Ms. Reece is inflating her billing a minimum of 100% up to 400% or more.

## I.    Doing the Same Work as Gerrard Should Not Be Compensable

As shown above, the Gerrard firm was paid, and is being paid, by First American under a title policy to defend Adv. No. 19-01108, *Busbin v. Shotgun*, et al., but Northern Trust got all of Gerrard's fees reimbursed to First American as part of Northern Trust's motion to disburse in 2020.

Beginning on October 2, 2020, Northern Trust's attorneys at Fennemore began charging for services to defend Mr. Busbin's appeal to the District Court in the adversary

proceeding.  The vast majority of all time entries in October, 2020 relate to charges for the appeal of the adversary case for which Gerrard is also billing the estate (35.7 hours out of 49.20 total hours).  To a lesser extent, the charges in November (2.5 hours) and December (1.1) also relate to the appeal.

The estate should not be liable for paying both Gerrard's and Fennemore's bills for the appeal.  As shown above, Gerrard is not a creditor of the estate.  Its fees should be paid by First American.  Paying Fennemore for charges related to the appeal that is being handled by insurance defense counsel is an unnecessary and unreasonable duplication of fees.  It must be presumed that First American would engage counsel competent to defend the adversary action by itself.  All the fees requested for appeal charges in October, November and December, 2020 should be rejected.

**III**

**ARGUMENT**

A.      **Northern Trust Has Failed to Establish the Requisites for Recovery of Attorneys Fees and Costs under 11 U.S.C. § 506**

Under 11 U.S.C. § 506(b):

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

Thus, Northern Trust is entitled to attorneys fees under Section 506 only to the extent that (1) the claim is an allowed secured claim; (2) Northern Trust is oversecured; (3) the fees are reasonable; and (4) the fees are provided for under the agreement.  *Kord*

16

*Enters. II v. Cal. Commerce Bank (In re Kord Enters. II)*, 139 F.3d 684, 686-87 (9th Cir. 1998).

Northern Trust contends that it holds an allowed, oversecured claim based on the Court's ruling in Adv. No. 19-01108, which is now on appeal. *Motion, p. 2.* Northern Trust also asserts that its security is the proceeds of sale of the apartments property, and that Northern Trust is oversecured "by virtue of the amount of the proceeds from the purchase price paid for the Apartment vis-à-vis Northern Trust's Claim." *Id., 2:25-27.*

Assuming *for purposes of discussion only* that Northern Trust has a security interest attaching to the remaining proceeds of sale, Northern Trust was paid in 2020 by the Desert Apartments estate for the full amount owed on its notes. Northern Trust now has no claim except  the amount of attorneys fees that Northern Trust continues to charge in this bankruptcy case. As to whether those attorneys fees are "provided for under the agreement" as required by Bankruptcy Code § 506, Illinois law – the law applicable to the Notes -- requires that the attorney's fees clause be strictly construed. *Northbrook Bank & Trust v. Abbas*,  102 N.E.3d 861, 878 (Ill. App. 2018) ("We are required to strictly construe a contractual provision for attorney fees."). Northern Trust's moving papers rely upon language from the Notes which allows Northern Trust to recover the amount paid to "someone else to help collect this Note if Borrower does not pay." *See Motion, p. 3:17-21.* A plain reading of the Note language quoted at page 3 of the moving papers would be that "expenses for bankruptcy proceedings" are recoverable, but only to the extent those expenses are being paid to "someone else to help collect this Note." Again, the Notes have already been collected.   Thus, the attorneys fees that Northern

17

Trust seeks to collect here are _not_ being paid to "someone else to help collect this Note."

Applying the plain language of the Notes that Northern Trust relies upon, Northern Trust

has failed to show that the fees it seeks to recover by way of the instant motion are

"provided for under the agreement."  Consequently, the prerequisites for recovery of

attorneys fees under Section 506 are not satisfied and the motion for fees should be

denied on that basis.

        **B.**      **Even If Northern Trust Could Recover Fees and Costs under 11 U.S.C.
§ 506, the Fees Must Be Limited to a Reasonable Amount**

      Although Northern Trust is precluded by the language it quotes from its own

Notes from recovering fees in the instant motion, the evidence set forth in the "Facts"

section, above, shows that the fee request should be denied anyway because it is

unreasonable.

      In *In re Dalessio*, 74 B.R. 721, 723 (B.A.P. 9th Cir. 1987), the court stated:

> Reasonableness embodies a range of human conduct. The key
> determinant is whether the creditor incurred expenses and fees that fall
> within the scope of the fees provision in the agreement, and took the kinds
> of actions that similarly situated creditors might reasonably conclude
> should be taken, or whether such actions and fees were so clearly outside
> the range as to be deemed unreasonable. The bankruptcy court should
> inquire whether, considering all relevant factors including duplication, the
> creditor reasonably believed that the services employed were necessary to
> protect his interests in the debtor's property. *In re Carey*, 8 B.R. 1000, 1004
> (Bankr. S.D. Cal. 1981).

      In *Dalessio,* as in the instant case, the creditor was paid the entire principal amount

of its loan, all of the accrued interest, pre-petition late charges, and default interest on that

amount.   The court in *Dalessio* held that the creditor in that instance should not

automatically be awarded fees, pursuant to § 506(b), for bankruptcy-related appearances,

nor should the oversecured creditor be paid for unnecessary or redundant tasks "or for doing the very thing any creditor, unsecured as well as secured, is entitled to do under the Bankruptcy Code." *Id.,* at 723-24.

Instead, Northern Trust has the burden of proving the fees sought are reasonable. *In re Coates*, 292 B.R. 894, 900-901 (Bankr. C.D. Ill. 2003) ("When an oversecured creditor seeks to charge the bankruptcy estate with its attorney fees, costs and expenses, the creditor bears the burden to prove the reasonableness thereof."); *O'Bannon Plaza LLC v. CAB Props., LLC (In re O'Bannon Plaza LLC)*, 523 B.R. 720, 727 (D. Nev. 2014) ("nor should an oversecured creditor be given a blank check to incur fees and costs which will automatically be reimbursed out of its collateral").

## C. Fees Charged for Objecting to the Plan and Disclosure Statement Should Not Be Recoverable

Northern Trust has failed to carry its burden under the case law cited above. Many of the time entries are for doing the very thing that any creditor is entitled to do under the Bankruptcy Code, such as object to a disclosure statement or vote on a plan of reorganization. *See Dalessio, supra.* After the Desert Apartments plan and disclosure statement were filed on January 26, 2021 [ECF No. 240], Northern Trust's attorneys' invoices for February ($4,147.20), March ($14,801.40), April ($25,160.40), May ($23,610) and June ($10,243.80) consist almost entirely of charges for opposing, objecting to, and litigating the disclosure statement and plan. A remarkable aspect of these charges is that Northern Trust's only claim in the estate at that time was for ***residual attorneys fees***, and yet, as the monthly fee amounts suggest, Northern Trust

challenged virtually every paper filed by the Trustee or other parties, as Northern Trust exhausted every effort to attempt to prevent the disclosure statement from being approved and plan from being confirmed. This all-out effort proved unsuccessful, ultimately, and the fees for that effort are the sole responsibility of Northern Trust and not the estate.

**D.    The Vague Billing Entries Fail to Meet Northern Trust's Burden of Showing Reasonableness**

The billing entries by Northern Trust's lawyers are minimalist, giving only the briefest and vaguest descriptions of services. The versions of these billings disclosed to Mr. Busbin also are heavily redacted. Mr. Busbin's counsel and staff had the labor-intensive and time-consuming job of figuring out the nature of the services using other Fennemore billing entries, pleadings, emails, and time entries of other creditors' counsels, as well as time entries of the trustee and the trustee's counsels. In some instances, despite diligent efforts, time entries for which Northern Trust demands to be compensated simply could not be analyzed for reasonableness because they are too vague. In such instances, Northern Trust has failed to prove reasonableness on the face of the billings, and its fee demands should be rejected.

The job of reviewing the billings didn't need to be that hard and it didn't need to take that much time, but Northern Trust imposed that burden on Mr. Busbin by unnecessarily concealing the nature of the services allegedly being rendered. The price Northern Trust should pay is the waiver of its right to recover those asserted fees.

E.    **The Time Entries Show the Charges Are Unreasonable and Beyond the Scope of the Fee Agreement**

In other instances, such as the outrageous and redundant amounts billed by two attorneys for reviewing simple pleadings (a five-paragraph response and a one-sentence withdrawal of a motion to approve a plan and disclosure statement), the job of Mr. Busbin's counsel was relatively easy because the time entry could be linked to the specific review of a specific document.  Unfortunately, it was more often the case that the time entries could not be linked to anything specific.  But when an attorney is shown by a sufficient number of specific examples to be repeatedly overcharging, it is fair to conclude that the practice of padding bills exists in all of that attorney's billings.  Fortunately, there are sufficient specific instances of gross overcharging to support a reasonable inference that overcharging is prevalent throughout Northern Trust's attorneys' billings.

In *Dalessio*, the court pointed out that in determining reasonableness "[t]he key determinant is *whether the creditor incurred expenses and fees that fall within the scope of the fees provision in the agreement*, and took the kinds of actions that similarly situated creditors might reasonably conclude should be taken, or whether such actions and fees were so clearly outside the range as to be deemed unreasonable." *Dalessio*, at 723 (emphasis added).

As has been pointed out, above, the time entries that are the subject of the instant motion fall outside the scope of the fees provision in the Notes, and for that reason, the fees should be considered unreasonable. *Id.*

21

Additionally, the fees that were previously awarded to Northern Trust on account of billings by the Gerrard firm – on the asserted "subrogation" theory -- fall completely outside the scope of the fee provision in the Notes, and the estate should be entitled to a credit of $64,029.34 plus interest at the legal rate against any future fees awarded to Northern Trust.

## IV

## CONCLUSION

Based on the billing entries, the evidence and argument in this Opposition, and the papers and pleadings on file in this proceeding, it is respectfully requested that the Northern Trust's motion for attorneys fees and costs be denied, and that the Court award all other appropriate relief.

DATED: November 4, 2021          LAW OFFICES OF MARK WRAY


By _____/s/ *Mark Wray*_____
   MARK WRAY
   Attorney for Creditor
   BRADLEY J. BUSBIN, AS TRUSTEE
   OF THE GONZALES CHARITABLE
   REMAINDER UNITRUST ONE

22

CERTIFICATE OF SERVICE

1. On November 4, 2021, I served the following documents:

BUSBIN'S OPPOSITION TO APPLICATION FOR APPROVAL AND PAYMENT OF ATTORNEYS FEES FROM SALE PROCEEDS TO SECURED CREDITOR THE NORTHERN TRUST COMPANY

2. I served the above-named document(s) by the following means to the persons as listed below:

a. ECF System: 18-12456-gs Notice will be electronically mailed to:

ANTHONY W. AUSTIN on behalf of Creditor THE NORTHERN TRUST COMPANY
aaustin@fclaw.com, gkbacon@fclaw.com

JERROLD L. BREGMAN on behalf of Interested Party JEFFREY I. GOLDEN, TRUSTEE OF DESERT LAND
jbregman@bg.law, ecf@bg.law

DAWN M. CICA on behalf of Defendant DAVID GAFFIN
dcica@carlyoncica.com,
nrodriguez@carlyoncica.com;crobertson@carlyoncica.com;dmcica@gmail.com;dcica@carlyoncica.com;to
steen@carlyoncica.com;3342887420@filings.docketbird.com

DAWN M. CICA on behalf of Defendant HOWARD BULLOCH
dcica@carlyoncica.com,
nrodriguez@carlyoncica.com;crobertson@carlyoncica.com;dmcica@gmail.com;dcica@carlyoncica.com;to
steen@carlyoncica.com;3342887420@filings.docketbird.com

DAWN M. CICA on behalf of Interested Party DAVID GAFFIN
dcica@carlyoncica.com,
nrodriguez@carlyoncica.com;crobertson@carlyoncica.com;dmcica@gmail.com;dcica@carlyoncica.com;to
steen@carlyoncica.com;3342887420@filings.docketbird.com

DAWN M. CICA on behalf of Interested Party HOWARD BULLOCH
dcica@carlyoncica.com,
nrodriguez@carlyoncica.com;crobertson@carlyoncica.com;dmcica@gmail.com;dcica@carlyoncica.com;to
steen@carlyoncica.com;3342887420@filings.docketbird.com

23

KEVIN W COLEMAN on behalf of Other Prof. KAVITA GUPTA
kcoleman@nutihart.com, nwhite@nutihart.com

KEVIN W COLEMAN on behalf of Plaintiff KAVITA GUPTA
kcoleman@nutihart.com, nwhite@nutihart.com

KEVIN W COLEMAN on behalf of Trustee KAVITA GUPTA
kcoleman@nutihart.com, nwhite@nutihart.com

JAMIE P. DREHER on behalf of Petitioning Creditor BRADLEY J. BUSBIN, AS
TRUSTEE OF THE GONZALES CHARITABLE REMAINDER UNITRUST ONE
jdreher@downeybrand.com,
mfrazier@downeybrand.com;reno@downeybrand.com

KIMBERLY S. FINEMAN on behalf of Trustee KAVITA GUPTA
kfineman@nutihart.com

EDMUND GEE on behalf of U.S. Trustee U.S. TRUSTEE - LV - 11, 11
edmund.gee@usdoj.gov

NEDDA GHANDI on behalf of Special Counsel GAIL S. GREENWOOD
nedda@ghandilaw.com,
lks@ghandilaw.com,nedda@ecf.inforuptcy.com;r41525@notify.bestcase.com,shara@gh
andilaw.com

NEDDA GHANDI on behalf of Special Counsel JOHN D. FIERO
nedda@ghandilaw.com,
lks@ghandilaw.com,nedda@ecf.inforuptcy.com;r41525@notify.bestcase.com,shara@gh
andilaw.com

NEDDA GHANDI on behalf of Trustee KAVITA GUPTA
nedda@ghandilaw.com,
lks@ghandilaw.com,nedda@ecf.inforuptcy.com;r41525@notify.bestcase.com,shara@gh
andilaw.com

TALITHA B. GRAY KOZLOWSKI on behalf of Plaintiff KAVITA GUPTA
tgray@brg.legal, bknotices@gtg.legal

STEVEN T GUBNER on behalf of Interested Party JEFFREY I. GOLDEN, TRUSTEE
OF DESERT LAND
sgubner@bg.law, ecf@bg.law

24

KAVITA GUPTA
kgupta@guptaferrer.com

EDWARD M. MCDONALD on behalf of U.S. Trustee U.S. TRUSTEE - LV - 11, 11
edward.m.mcdonald@usdoj.gov

TRACY M. O'STEEN on behalf of Defendant 10181 PARK RUN LLC
tosteen@carlyoncica.com,
crobertson@carlyoncica.com;nrodriguez@carlyoncica.com;ccarlyon@carlyoncica.com

TRACY M. O'STEEN on behalf of Defendant COMPASS INVESTMENTS LLC
tosteen@carlyoncica.com,
crobertson@carlyoncica.com;nrodriguez@carlyoncica.com;ccarlyon@carlyoncica.com

TRACY M. O'STEEN on behalf of Defendant THE RANCH LLC
tosteen@carlyoncica.com,
crobertson@carlyoncica.com;nrodriguez@carlyoncica.com;ccarlyon@carlyoncica.com

TRACY M. O'STEEN on behalf of Defendant DAVID GAFFIN
tosteen@carlyoncica.com,
crobertson@carlyoncica.com;nrodriguez@carlyoncica.com;ccarlyon@carlyoncica.com

TRACY M. O'STEEN on behalf of Defendant HOWARD BULLOCH
tosteen@carlyoncica.com,
crobertson@carlyoncica.com;nrodriguez@carlyoncica.com;ccarlyon@carlyoncica.com

TRACY M. O'STEEN on behalf of Interested Party CITATION FINANCIAL, LLC,
tosteen@carlyoncica.com,
crobertson@carlyoncica.com;nrodriguez@carlyoncica.com;ccarlyon@carlyoncica.com

TRACY M. O'STEEN on behalf of Interested Party COMPASS INVESTMENTS
HOLDINGS, LLC
tosteen@carlyoncica.com,
crobertson@carlyoncica.com;nrodriguez@carlyoncica.com;ccarlyon@carlyoncica.com

TRACY M. O'STEEN on behalf of Interested Party DESERT LAND LOAN
ACQUISITION, LLC
tosteen@carlyoncica.com,
crobertson@carlyoncica.com;nrodriguez@carlyoncica.com;ccarlyon@carlyoncica.com

TRACY M. O'STEEN on behalf of Interested Party DAVID GAFFIN
tosteen@carlyoncica.com,
crobertson@carlyoncica.com;nrodriguez@carlyoncica.com;ccarlyon@carlyoncica.com

25

1

2  TRACY M. O'STEEN on behalf of Interested Party HOWARD BULLOCH
   tosteen@carlyoncica.com,
3  crobertson@carlyoncica.com;nrodriguez@carlyoncica.com;ccarlyon@carlyoncica.com

4
   ERIC R OLSEN on behalf of Interested Party WASH MULTIFAMILY LAUNDRY
5  SYSTEMS, LLC
   eolsen@gtg.legal
6  U.S. TRUSTEE - LV - 11, 11
7  USTPRegion17.lv.ecf@usdoj.gov

8
   MARK M. WEISENMILLER on behalf of Interested Party WASH MULTIFAMILY
9  LAUNDRY SYSTEMS, LLC
   mweisenmiller@gtg.legal, bknotices@gtg.legal
10

11        I declare under penalty of perjury that the foregoing is true and correct.

12        DATED this 4th day of November, 2021.

13

14                            _____/s/ Karla Mena_____

15                            KARLA MENA, an employee of
                             L0AW OFFICES OF MARK WRAY
16

17

18

19

20

21

22

23

24

25

26

27

28

                                   26