FENNEMORE CRAIG, P.C.
Cathy L. Reece *(AZ Bar No. 005932)*
Anthony W. Austin (NV Bar No. 010850)
2394 E. Camelback Rd., Ste. 600
Phoenix, AZ 85016-3429
Telephone: (602) 916-5343
Facsimile: (602) 916-5543
Email: creece@fclaw.com
       aaustin@fclaw.com

*Attorneys for The Northern Trust Company*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| In re: | Chapter 11 |
|---|---|
| DESERT OASIS APARTMENTS, LLC, | Case No.: BK-S-18-12456-GS |
| Debtor. | **Hearing Date: November 18, 2021**<br>**Hearing Time: 1:30 p.m.** |

### REPLY TO OPPOSITION TO APPLICATION FOR APPROVAL AND PAYMENT OF ATTORNEYS' FEES FROM SALE PROCEEDS TO SECURED CREDITOR THE NORTHERN TRUST COMPANY

The Northern Trust Company ("Northern Trust"), the secured creditor of Desert Oasis Apartments LLC ("Debtor"), hereby files this Reply to the Opposition filed by Busbin as Trustee for the Gonzales Trust [DE 436] and to the Joinder by Disbursing Agent's Joinder [DE 438] (collectively referred to as the "Opposition").[1] Northern Trust requests that the Opposition be overruled and that the Application be granted and approved.

**A.    *Ad hominem* attacks are not appropriate and should be disregarded.**

Rather than just express the Gonzales Trust's objection to the requested fees, the Opposition includes many *ad hominem* attacks on Ms. Reece. Such attacks are utterly

---

[1] The Joinder filed by the Disbursing Agent was untimely filed and is in fact not a joinder at all but a substantive objection. The Disbursing Agent fails to provide this Court cause for its untimely objection. Further, calling a substantive filing a "joinder" does not cure the untimely nature of the filing and it should be stricken or otherwise ignored by this Court. *See e.g. In re Frank's Oilfield Service, Inc.*, 2013 WL 4048604, *2-3 (Bkrtcy.D.N.M.,2013). Nevertheless and in an abundance of caution Northern Trust addresses both the "Joinder" and the Opposition.

19031729.3

1  inappropriate, unprofessional, and unwarranted. *See In re Plise*, 719 Fed.Appx. 622, 625
2  (9th Cir. 2018)(rejecting such attacks and finding them "improper and unprofessional").
3  The Gonzales Trust spends nearly the entirety of the Opposition accusing Ms. Reece of
4  "padding" time and questioning the credibility of billing practices with no evidence other
5  than supposition and statements of counsel. This is outrageous, uncalled for and should
6  not be condoned. Despite these attacks and the allegations of counsel, counsel for
7  Northern Trust confirms and repeats that all the time billed and requested for payment in
8  the Application was time actually spent on this case.

9  Given that most of the Opposition consists of these types of attacks and baseless
10 allegations the Court should summarily ignore nearly the entirety of the Opposition. What
11 remains of actual argument and claims are easily refuted as described below.

12 **B.      Amounts paid to Gerard Cox Larson are irrelevant to the Application.**

13 The Opposition requests that $64,029.34 of fees paid to Northern Trust pursuant to
14 the previous August 28, 2020 Order [DE 128] for the time incurred on its behalf by the
15 Gerrard Cox Larson law firm be disgorged and offset against the current Application.
16 Such a request is improper as the approval of these fees or any fees related to Gerrard Cox
17 Larson are not the subject of the Application and because it seeks to attack a final non-
18 appealable order.

19 This current Application only requests fees for Fennemore Craig's time and does
20 not involve Gerrard Cox Larson's fees. Should an objection to repayment of Gerrard Cox
21 Larson's fees arise, the Gonzales Trust may raise its objections at that time and in that
22 context.  However, there is no procedural basis to conflate the payments to Gerrard Cox
23 Larson and Fennemore Craig as done in the Opposition and to request disgorgement of
24 those fees as an offset to the fees sought in the Application.

25 Further, the previous Order directing the payment of fees to Northern Trust was
26 entered on August 28, 2020 [DE 128] and was paid by the Trustee on September 1,
27 2020—over a year ago. The August 28, 2020 Order is a final order that was not appealed
28 and cannot be undone by a request in the Opposition. No motion to set aside the previous

Order under Rule 60 or otherwise has been filed. Due process has not been provided to Northern Trust or Gerrard Cox Larson for this request. Procedurally it is improper and can only be addressed in a Rule 60 Motion to set aside the prior Order.

More telling and important is that the request for Gerrard Cox Larson's fees, filed in July 2020, was not opposed by either the Chapter 11 Trustee (now the Disbursing Agent) or by the Gonzales Trust. While Gonzales Trust raised issues of payment for Fennemore Craig's fees, no objection was made regarding Gerrard Cox Larson. Accordingly, any such objection has been waived and the previous Order is law of the case and binding on the parties.

Mr. Wray complains in his Declaration [DE 437] that he was not able to review certain items at the time, including an engagement letter for Gerrard Cox Larson. Nevertheless, the Gonzales Trust did not raise the lack of an engagement letter being provided in its objection. In fact, as the Wray Declaration makes clear, the request for the engagement letter was not made until after the Court entered the order approving the fees. Further, as the Wray Declaration makes clear, after those inquiries were made, Gonzales Trust was provided all of the information it requested, either from Ms. Reece or Mr. Gerrard.

To the extent the Gonzales Trust believes that Gerrard Cox Larson was improperly paid, it must seek procedurally proper methods to assert that claim. Shoehorning this issue into an objection to the Application, which does not cover a single Gerrard Cox Larson fee, is procedurally improper and cannot be allowed.

**C.    Northern Trust has met its burden of proof.**

The Opposition argues that Northern Trust has not met its burden of proof under Section 506(b) of the Code. For Northern Trust to recover attorney's fees under that section, four elements need to be met: (1) Northern Trust must have an allowed secured claim (it does); (2) the creditor must be oversecured (it is); (3) the fees must be reasonable under the circumstances (they are); and (4) the fees must be provided for under the agreement (they are). *In re Salazar,* 82 B.R. 538, 540 (9th Cir. BAP 1987). "[W]hen fees

- 3 -
19031729.3

are provided for in the underlying agreement, and when the creditor is oversecured, allowance of the attorney's fees is mandatory." *In re Dalessio,* 74 B.R. 721, 723 (9th Cir. BAP 1987). The Opposition asserts that elements three and four have not been met.

**1.    The fees requested are reasonable and within the scope of the loan documents.**

In determining reasonableness, *Dalessio* Court states that:

> [t]he key determinant is whether the creditor incurred expenses and fees that fall within the scope of the fees provision in the agreement, and took the kinds of actions that similarly situated creditors might reasonably conclude should be taken, or whether such actions and fees were so clearly outside the range as to be deemed unreasonable. The bankruptcy court should inquire whether, considering all relevant factors including duplication, the creditor reasonably believed that the services employed were necessary to protect his interests in the debtor's property.

*Dalessio*, 74 B.R. at 723 (citation omitted). "The attorney applying for fees bears the burden of proving the reasonableness of those fees, which can only be done by presentation of carefully detailed applications and supporting documentation." *Id*. at 724.

The Application and the facts therein [DE 403] are supported by the invoices from Fennemore Craig P.C. which are attached to the Application as <u>Exhibit A</u>, the Declaration of Cathy Reece [DE 404] signed and sworn under penalty of perjury which was filed simultaneously with the Application, and the complete record in this case and the formerly jointly administered cases, all of which are incorporated by reference. The evidence presented in this manner is the customary manner for fee requests.

The Opposition makes no argument that additional information is required to establish the reasonableness of the requested attorneys' fees and does not ask to see additional documentation.  Rather, the Opposition asserts a variety of unsubstantiated claims that it believes shows the fees are not reasonable.

a.    <u>The fees are for compensable work</u>.

The Opposition appears to argue that Northern Trust should not be compensated for its objections to the Chapter 11 Trustee's Plan and the Disclosure Statement because

- 4 -

19031729.3

"it is the very thing any creditor is entitled to do under the Bankruptcy Code…." However, that statement and admission supports payment for those services. As the Gonzales Trust admits, the standard of reasonableness asks the Court to assess "whether, considering all relevant factors…the creditor reasonably believed that the services employed were necessary to protect his interests in the debtor's property." *Dalessio*, 74 B.R. at 723. Accordingly, if a creditor is entitled to object to the Plan and Disclosure Statement (as admitted by the Gonzales Trust), such an objection is well within Northern Trust's reasonable belief that such an objection was necessary to protect its interests.

Because of the pending appeal by the Gonzales Trust, Northern Trust is required to continue to protect its interests in this bankruptcy case until such time as it no longer faces the risk of disgorgement. This is especially true with respect to the Trustee's Plan that included specific provisions, among others, for payments to Gonzales Trust after a Reversal Event, rights to seek disgorgement from Northern Trust, and treatment of Northern Trust's right to attorneys' fees.

Accordingly, Northern Trust took steps to assert its objections to the Plan which included filing a motion to allow it to vote and an objection to certain provisions in the Plan. As part of the Plan process and at several hearings, Northern Trust was able to obtain concessions and to ensure certain provisions were maintained—particularly the concession reducing the potential priority claim by the amount of administrative claims and the reserve of the distributions to Class 5 creditors until the litigation between Gonzales Trust and Northern Trust was final. The Court overruled the objection and denied the motion to vote only after these concessions were placed on the record. Northern Trust incurred the fees in good faith to protect its interests, to preserve the undistributed Sales Proceeds in the event of a Reversal Event and to minimize its risk.

While the Opposition argues that Northern Trust was not the prevailing party and not entitled to fees, the case law is clear that fee requests under Section 506(b) are governed by federal law, not state law. *In re Kord Enterprises II*, 139 F.3d 684, 688-89 (9th Cir. 1998). Otherwise there would be a potential for varying and divergent standards

- 5 -
19031729.3

throughout the fifty states. Nothing in federal law and Section 506(b) requires a "prevailing party" requirement. *See Kord*, 139 F.3d at 689 (upholding fees when the "the creditor incurred expenses and fees that fall within the scope of the fees provision in the agreement, and took the kinds of actions that similarly situated creditors might reasonably conclude should be taken").

Section 506(b) also provides for fees to be recovered under the terms of the loan documents. Here the Notes do not have a requirement concerning prevailing party. Instead in several places it provides for fees whether or not suit is filed, for efforts to modify or vacate the stay, and for appeals. Prevailing party is not and cannot be the standard in those situations. *See Id*.

      b. <u>The narratives are sufficient to describe services provided</u>.

Without citation to any standard of billing narratives, the Gonzales Trust simply argues it was too hard for it to review the invoices of Fennemore Craig. In so doing, it continues to engage in unnecessary attacks that the work was "concealed" to harm the Gonzales Trust. Such an argument is puffery at best and inflammatory at worst and should be ignored. Fennemore Craig's narratives are sufficient under the relevant ethical standards for advising a client of the work performed. It was under no special duty to give the Gonzales Trust "an easier time" in reviewing the narratives.

The Gonzales Trust also argues that the redactions render the narratives too vague to even be reviewed. As mentioned in the Application and as previously directed by the Court, the Court received by email the unredacted invoices and can review them. Not all entries were redacted, only a few, and only to protect attorney client privilege. The redaction was made so that the strategy discussed or issues researched or the conversations and analysis would not be revealed to an opposing party in active litigation and appeals. As the Court has previously stated, this method is a fair compromise between having to file an application with invoices and with protecting the work product and attorney client privilege. Northern Trust asserts that the redaction is appropriate and the time incurred is appropriate and reasonable.

- 6 -

19031729.3

c.     The fees are within the scope of the loan documents.

Without stating how, the Gonzales Trust argues that fees incurred by Northern Trust are outside the scope of the loan documents governing Northern Trust's loans to the Debtor. The Gonzales Trust does not cite to any provision of the loan documents or any particular fee that is outside the scope of the fee agreement but continues with its attacks on Ms. Reece. The failure is telling. The loan documents provide for recovery of attorneys' fees in a broad range of situations including bankruptcy. The Note states:

> Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

All of the actions taken by Northern Trust have fallen within language quoted above and the Gonzales Trust's statements are unfounded, baseless, and just wrong.

d.     The fees were reasonable and actually incurred.

Despite the attacks on the credibility of Northern Trust's lawyers, the fees covered in the Application are reasonable and actually incurred. Notably, the reasonableness of the hourly rates was not questioned, only the reasonableness of some of the time incurred. The Opposition argues that the amount of time charged for certain tasks is too much and then imputes that assumption to all of the fees. Northern Trust disagrees with the assessment of the Opposition on the issues raised and asserts all the time was appropriate.

For example, Gonzales Trust asserts that Fennemore Craig excessively prepared for the two hearings on Northern Trust's Motion for Order Directing Disbursements. However, the hearings on Northern Trust's disbursement motion and the payoff statement were hotly contested by the Gonzales Trust itself. Accordingly, spending time preparing for the two different hearings that were adamantly opposed and where additional issues were raised, was not unreasonable.

19031729.3

1           Even the preparation of the payoff statement was controversial and objected to by
2   the Gonzales Trust. The interest rate had to be recalculated several times and had to be
3   checked and double checked with the client and parties. Even the form of the document to
4   present to the Court has contested.  As with much of the Opposition's complaints, it was
5   Gonzales Trust's incessant litigation and objections that drove many of these fees and
6   costs.
7           As to the objection to the time spent attending to the motion for rejection of
8   contracts (and the potential for rejection damages), the motion concerning a trade claim
9   (when prepetition claims had already been inappropriately paid during the case from cash
10  collateral without Northern Trust's or Court approval) and the motion to pay the breakup
11  fee of $100,000 and expenses of the sale of about $50,000, in August 2020, Northern
12  Trust believed that its interest in the proceeds needed to be protected and so it monitored
13  the requests, the hearings and orders closely. Contrary to the Opposition position, these
14  matters could have impacted Northern Trust and it could not ignore or not pay attention to
15  them. It was concerned about the use of proceeds without Northern Trust's consent and
16  particularly the use of any cash collateral proceeds. The Court did not enter the order
17  directing the Trustee to pay Northern Trust until August 28, 2020. That Order addressed
18  both the use of Cash Collateral Proceeds and the Sale Proceeds.  As was expressed
19  numerous times,  Northern Trust was the only party with a lien on the Cash Collateral.
20  The Adversary and assertion of priority by the Gonzales Trust only dealt with the lien on
21  the real property.  As such, Northern Trust attended the cattle call type hearing in question
22  and asked to review and reviewed orders on all such matters. It spent the time necessary to
23  do the tasks and seeks reimbursement for the fees incurred.
24          As to the objection to the time spent on new appeal pleadings, the order granting
25  the Judgment was entered on July 1, 2020 and the Notice of Appeal on July 10. The
26  election to the District Court was filed on July 11. The issue of which District Court Judge
27  was to be assigned to the appeal was important and so new pleadings needed to be
28  monitored. The appeal issues moved along very quickly and had to be reviewed when new

- 8 -

19031729.3

1  matters were raised. Northern Trust was expecting a motion for stay pending appeal from
2  the Gonzales Trust any day. Accordingly spending time making sure what filings were
3  made and what District Court Judge was assigned to the new pleadings was necessary and
4  important to Northern Trust. It spent the time necessary and seeks reimbursement for the
5  fees incurred.

6  As to the objection to the time spent on the Skyvue Disclosure Statement on July 2,
7  2020, Northern Trust disagrees with the assessment in the Opposition. Skyvue and the
8  principals are guarantors of the Loans that had not yet been paid by Debtor Desert Oasis
9  Apartments. The Skyvue Plan and Disclosure Statement were not acceptable to Northern
10 Trust and so it was monitoring the hearing and objection period. When the withdrawal of
11 the Disclosure Statement and Plan came in, not only was it reviewed but also there were
12 follow up emails about it. Plus the withdrawal did not indicate if the hearing was being
13 continued or if the proponents were going to refile the pleadings. Northern Trust asserts
14 that the time incurred was reasonable and necessary to protect its interests.

### D.     Arbitrary assumptions and reductions are improper.

16 The Opposition Joinder cites to what it claims are examples that are "inherently
17 suspect" simply because the Disbursing Agent believes it should not have taken that long.
18 Again the Disbursing Agent cherry picks items she believes took too long and
19 inappropriate and without support extrapolates to the entirety of the requested fees. No
20 actual analysis of fees is performed. The examples are addressed and explained above.

21 Further, the fees highlighted by the Gonzales Trust and the Disbursing Agent are a
22 fraction of the fees incurred which remain undisputed by the parties. The Gonzales
23 Trust's broad sweeping allegations are unfounded and its objections represent a small
24 fraction of the time incurred. The Gonzales Trust cites a handful of entries it deems
25 suspect and then draws a conclusion that all entries are thus suspect and requests that all
26 or most of the fees be denied. Adding up the examples cited in the Gonzales Trust's
27 Opposition on pages 5 through 10, characterized as unreasonable entries, the amount is
28 about $20,000 (prior to the 10% discount given by Fennemore Craig in its monthly

- 9 -

19031729.3

1  invoice).² The Gonzales Trust complains not that the tasks were not done but that they
2  took too long. Accordingly, reducing these tasks by an arbitrary number (say 10%) to
3  reflect what they "should have" taken, the bill would be reduced by $1,800.  It is a
4  fraction of the amount requested. No inference can be draw at all from this amount.

5  Contrary to the Opposition and Joinder, none of the examples cited provide a basis
6  to reduce the total fee request by 40% as suggested by the Disbursing Agent. It is an
7  arbitrary number picked out of nowhere and unrelated to the work actually done and the
8  services provided to collect the amounts due on the Notes and protect the interests of
9  Northern Trust.

### E.  Duplication of work done by Gerrard Cox Larson is disingenuous.

The Opposition argues that a portion of the current Application spent on the appeal is duplicative of the work done by Gerrard Cox Larson and cannot be approved.  This argument fails first because the Opposition does not highlight what work was duplicated or how the work performed by Fennemore Craig with respect to the appeal did not benefit the process.  Simply because two law firms worked to some degree on the appeal issues does not equate to a finding of duplication of work.

Further, the argument is disingenuous given that the Gonzales Trust seeks to disgorge all fees previously paid to Gerrard Cox Larson.  If the estate cannot reimburse the Gerrard Cox Larson time, as the Gonzales Trust argues, then the Fennemore Craig time spent assisting on the appeal issues cannot be duplicative.  To the extent, the Gonzales Trust is arguing that neither firm can charge and be paid for their fees on the appeal such an argument is expressly precluded by the language in the loan documents expressly providing for reimbursement of attorneys' fees for appeals.  The time spent by Fennemore Craig on the appeal is compensable under the loan documents, was not duplicative of other work, and should be reimbursed.

### F.  Conclusion.

---

² The hours spent multiplied by $620 an hour for Ms. Reece's time has to be reduced by the 10% courtesy discount given in each bill as reflected at the bottom of each monthly invoice. Her hourly rate then is actually $558. So the amount mentioned total estimate would be about $18,000 in the examples cited, not $20,000.

- 10 -

19031729.3

In summary, pursuant to Section 506(b), Northern Trust is entitled to include in its secured claim its attorneys' fees that have accrued and been incurred during the pendency of Debtor's bankruptcy. *See Rake v. Wade*, 508 U.S. 464 (1993)(default interest); *In re Dalessio*, 74 B.R. 721, 723 (B.A.P. 9th Cir. 1987)("when fees are provided for in the underlying agreement, and when the creditor is oversecured, allowance of the attorney's fees is mandatory."). The Disbursing Agent continues to hold the net Sale Proceeds post confirmation, and Northern Trust's liens continue to attach to the Sale Proceeds.

Northern Trust has met it burden of proof that the attorneys' fees incurred during this Application Period are reasonable and within the scope of the language in the loan documents. As indicated in the detailed invoices, the services were rendered for the enforcement of the liens, payment of the amounts due, protection of the Sales Proceeds and Cash Collateral Proceeds, enforcement of the Final Judgment, collection of fees incurred on the appeal, negotiation of Plan provisions and protection of its interests in the Plan, Findings of Fact and Conclusions of Law and other Confirmation documents.

The attorneys' fees incurred by Fennemore Craig for this period are reasonable and were necessary to protect Northern Trust's interests.  As such, Northern Trust requests the Court overrule the Opposition and Joinder, enter an order allowing the fees set forth in the Application and direct payment to Northern Trust by the Disbursing Agent from the Sales Proceeds.

Dated:   November 12, 2021

**FENNEMORE CRAIG, P.C.**

By: */s/ Anthony W Austin*
    Cathy L. Reece (AZ Bar No. 005932)
    Anthony W. Austin  (010850)
    *Counsel for The Northern Trust Company*

COPY of the foregoing served by
E-mail/ECF Notice this 12th day of
November, 2021 upon:

Lenard E. Schwartzer

- 11 -

19031729.3

| | |
|---|---|
| 1 | Schwartzer & McPherson Law Firm |
| 2 | bkfilings@s-mlaw.com<br>*Attorneys for Debtor* |
| 3 | Edmund M. McDonald |
| 4 | U.S Trustee's Office-LV-11,11<br>Edward.m.mcdonald@usjod.gov |
| 5 | Jamie P. Dreher |
| 6 | Downey Brand LLP<br>jdreher@downeybrand.com |
| 7 | reno@downeybrand.com<br>*Attorneys for the Gonzales Trust* |
| 8 | |
| 9 | Mark Wray<br>John Fischer |
| 10 | Law Office of Mark Wray<br>mwray@markwraylaw.com |
| 11 | tmoore@markwraylaw.com<br>Fischerlawcal@aol.com |
| 12 | *Attorneys for the Gonzales Trust* |
| 13 | Kevin W. Coleman<br>Kimberly S. Fineman |
| 14 | Christopher Hart<br>Nuti Hart, LLP |
| 15 | kcoleman@nutihart.com<br>kfineman@nutihart.com |
| 16 | chart@nutihart.com<br>*Attorneys for Kavita Gupta, Trustee/Disbursing Agent* |
| 17 | |
| 18 | Talitha B. Gray Kozlowski<br>GTG, LLP |
| 19 | tgray@gtg.legal<br>*Attorneys for Kavita Gupta, Trustee/Disbursing Agent* |
| 20 | Jeffrey I. Golden |
| 21 | jgolden@wgllp.com<br>*Trustee of Desert Land* |
| 22 | Jerrold L. Bregman |
| 23 | Steven T. Gubner<br>Susan K. Seflin |
| 24 | Brutzkus Gubner<br>jbregman@bg.law |
| 25 | sgubner@bg.law<br>sseflin@bg.law |
| 26 | *Attorneys for Trustee of Desert Land* |
| 27 | */s/ Gidget Kelsey* |
| 28 | |

19031729.3