_____
Honorable Gary Spraker
United States Bankruptcy Judge

Entered on Docket
March 30, 2022

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

In re:

DESERT OASIS APARTMENTS, LLC,

Debtor.

Chapter 11

Case No.:  18-12456-gs

Hearing Date: October 1, 2021
Hearing Time: 9:30 a.m.

## MEMORANDUM DECISION ON FEE APPLICATION OF SPECIAL COUNSEL PACHULSKI STANG ZIEHL & JONES LLP

After chapter 11 trustee Kavita Gupta (Trustee Gupta) liquidated the Desert Oasis Apartments, LLC's (Apartments) real property, she retained Pachulski Stang Ziehl & Jones LLP (Pachulski Stang) as special counsel to resolve a claim filed by Apartments' affiliated debtor Desert Land, LLC (Desert Land), then also in chapter 11.  The claim was for an amount not less than $78 million, though the basis for it was vaguely stated.  The law firm dove into the matter aggressively. In response, Desert Land reduced its claim to $4,500,000. After conversion to chapter 7, the Desert Land estate settled for payment of $425,000, though the funds came out of another creditor's distribution rather than directly from the Apartments' estate.

Pachulski Stang now seeks approval of its first fee application in the amount of $211,680 in fees and $443.74 in expenses (Application).[1]  In support of its Application, it points to the

---

[1] Apartments ECF No. 373.

amount of the claim defeated.  No one disputes that the law firm aggressively challenged the claim; but there is substantially more to this story.  The remaining creditor of the estate objects to the Application as excessive and beyond the scope of employment.  The creditor is also the entity that funded the settlement of the Desert Land claim.

This case is intertwined with Desert Land, and they have a significant history.  As mentioned at the hearing to employ Pachulski Stang, that history colored special counsel's employment.  It also lays heavy over its Application.  This is largely why the court took the somewhat unusual step of conducting an evidentiary hearing on the Application and objection.  It was necessary to enable the court to understand the context of the law firm's services and billings.  During the hearing, the court heard testimony from Trustee Gupta, her general bankruptcy counsel, and the objecting creditor's counsel.

Together with its affiliated cases, the bankruptcy cases have generated substantial fees to liquidate assets that were significantly overvalued.  During the endgame of this bankruptcy, special counsel billed over $200,000 to address a vague claim for millions of dollars that had already been examined and evaluated by general counsel.  Bankruptcy courts afford trustees and their counsel extensive discretion to administer bankruptcy estates.  But this is not a blank check. Fundamentally, professionals of a bankruptcy estate must exercise billing judgment.  The objection raised is that Trustee Gupta set loose expensive specialists to knock over a house of cards. They did so but neither took into consideration the state of the bankruptcy case or the interests of the sole remaining creditor. This is not an enjoyable exercise, but it is an important one.  As such, the court will detail the context that impacts its decision to reduce the fees requested by Pachulski Stang.

## FACTS

### A.  The Prologue.

Apartments, Desert Land and Desert Oasis Investments, LLC (Investments) are related entities and no strangers to bankruptcy.  Combined, the three debtors owned roughly 36 acres on the southern end of the Las Vegas Strip.  Bradley B. Busbin, as Trustee of the Gonzales

Charitable Remainder Unitrust One (Busbin) is the successor in interest to Tom Gonzales's claims against Desert Land and Apartments.  Gonzales lent $40,000,000 to Desert Land and Apartments in 2000 secured by their real property, commonly referred to as "Parcel A."  After Desert Land and Apartments defaulted on the loan, they filed their original chapter 11 bankruptcy in 2002.  As part of that jointly administered bankruptcy, Gonzales agreed to a settlement with those debtors.  The settlement extinguished Gonzales's promissory note and released his deed of trust in exchange for certain ownership interests in a nondebtor entity and an agreement that Desert Land and Apartments would pay Gonzales $10,000,000 upon the transfer of Parcel A.

Foreshadowing most of the next 20 years, the parties could not agree on the language of the settlement reached in the 2002 bankruptcy and began litigation.  Appeals ensued.  Gonzales has maintained that the settlement gave him a senior encumbrance against Desert Land's real property.  Desert Land and Apartments subsequently encumbered their real property with deeds of trust ultimately exceeding hundreds of millions of dollars in the aggregate.  Gonzales responded by filing lawsuits in 2011, 2013, and 2015 in an attempt to establish his senior interest in Parcel A and to recover the $10,000,000.  Desert Land and Apartments again filed for chapter 11 in 2011 and confirmed plans of reorganization. The vacant portions of Parcel A were never developed.

In 2018, the United States District Court for the District of Nevada ultimately entered judgment in Gonzales' favor and against Desert Land, Apartments and Investments for more than $14,000,000.  Gonzales recorded the judgment and shortly thereafter placed Apartments and Desert Land, together with Investments, into separate involuntary chapter 7 bankruptcy cases on April 30, 2018.[2]  The debtors consented to the bankruptcy and converted their cases to chapter 11.[3]

---

[2] Originally the case was assigned to the Hon. Laurel Babero.  On November 28, 2018, the case was reassigned.  Desert Land ECF No. 338.
[3] Desert Land ECF No. 79.

1

2        **B.  Appointment of the Chapter 11 Trustee and Sale of the Real Property.**

3            The bankruptcy cases were jointly administered.[4]  Early in the cases, however, the

4    debtors sought to substantively consolidate their separate bankruptcy estates.[5]  Several creditors

5    opposed substantive consolidation.  The court denied the motion without prejudice.[6]

6            On July 23, 2018, Busbin filed his motion for appointment of a chapter 11 trustee.[7]  The

7    hearing on that motion was continued numerous times, primarily based on the debtors' stated

8    efforts to sell their combined real property.

9            On September 27, 2018, the debtors filed their plan of reorganization[8] and motion to sell

10   the real property.[9]  Both documents valued the combined real estate at significantly more than

11   the combined total secured debt.  The motion to sell sought approval for a sale of the assets of

12   the estate for a net purchase price of $415,800,000 to newly created entities that would own the

13   real property.  Ownership of these newly created entities was unclear and drew objections.

14

15           The proposed plan was based upon the debtors' sale of the combined real property, but it

16   also included a provision that the real property would be sold by auction within 15 months from

17   confirmation if the debtors were unsuccessful (and the required secured creditors did not agree to

18   an extension).  The disclosure statement supporting the plan relied upon an appraisal dated

19   October 26, 2017, valuing the aggregate real property at $460,000,000.[10]  The debtors amended

20   the disclosure statement and plan several times.  Ultimately, both the motion to sell and plan

21   confirmation fell through.

22

23

24   _____

25   [4] Desert Land ECF No. 90.
     [5] Desert Land ECF No. 9.
26   [6] Desert Land ECF No. 89.
     [7] Desert Land ECF No. 121.
27   [8] Desert Land ECF No. 253.
     [9] Desert Land ECF No. 249.
28   [10] Desert Land ECF No. 254.

At a hearing held on March 11, 2019, the court granted the motion for appointment of a chapter 11 trustee and entered its order on March 21, 2019.[11]  On April 2, 2019, the court entered its order approving appointment of Trustee Gupta as the chapter 11 trustee for the Desert Land and Apartments bankruptcy estates.[12]  She retained the Nuti Hart law firm of Oakland, California as her counsel.[13]  Kevin Coleman has served as lead counsel for the trustee.

Trustee Gupta retained professionals to list and market the properties.  She filed her Motion to (A) Approve Bid Procedures and Form of Purchase and Sale Agreement; (B) Set Auction Date and Sale Hearing; and (C) Grant Related Relief on December 19, 2019.[14]  With the onset of the Covid-19 pandemic in early 2020, a number of creditors sought to delay the sale of the real property.  But even prior to the pandemic, Trustee Gupta had concluded that the real property would not sell for more than the total secured debt.[15]  In light of this the court denied the requests to continue the sale of the real property.

On June 5, 2020, the court auctioned the properties.  Trustee Gupta sold Apartments' real property for $15,600,000, less $347,355.00 in adjustments, commissions, and closing charges.[16]

On June 12, 2020, Trustee Gupta resigned as the chapter 11 trustee for the Desert Land estate.  Several days later the court entered its order granting the United States Trustee's motion to appoint Trustee Golden as chapter 11 trustee for the Desert Land estate.[17]  The estate retained the Brutzkus Gubner law firm as counsel.[18]  Jerrold Bregman has served as the lead attorney for the estate.

//

---

[11] Desert Land ECF No. 519.
[12] Desert Land ECF No. 528.
[13] Desert Land ECF No. 679.
[14] Desert Land ECF No. 956.
[15] *See* Desert Land ECF No. 1055-1.
[16] Desert Land ECF No. 1264.  The deductions disbursed at closing are detailed in the Report of Sale at ECF No. 1355.
[17] Desert Land ECF No. 1281.
[18] Desert Land ECF No. 1421.

### C. Post-Sale Administration of the Estate and Retention of Pachulski Stang as Special Counsel.

On July 20, 2020, The Northern Trust Company (Northern Trust) filed its Motion to Disburse Proceeds (Motion to Disburse) from the sale of Apartments' real property.[19]  Northern Trust claimed a senior secured interest in the real property and the resulting sale proceeds pursuant to its recorded deeds of trust.  Busbin, however, has challenged the seniority of Northern Trust's deeds of trust in an adversary proceeding.  Prior to the auction of the estate's real property, the court granted summary judgment in *Busbin v. Shotgun Creek Investments, LLC, Shotgun Creek Las Vegas, LLC, Shotgun Investments Nevada, LLC, and The Northern Trust Company*, Adv. Case No. 19-01108-gs, holding that Northern Trust's deed of trust was senior to any encumbrance or interest Busbin might have against Apartments' real property.[20] Though Busbin opposed the motion, the court entered its Order Directing Trustee to Disburse Proceeds to the Northern Trust Company.[21]  The court directed that Trustee Gupta pay $5,494,863.03 (as calculated through August 7, 2020) to Northern Trust on account of its deed of trust against Apartments' real property sold at auction.[22]

On August 17, 2020, the court terminated the joint administration of the bankruptcy estates in light of the sales of the real property.[23]

On August 21, 2020, Desert Land Loan Acquisition, LLC (DLLA) filed its Motion to Dismiss the Desert Land bankruptcy (Motion to Dismiss).[24]  While the Motion to Dismiss was pending, Trustee Golden filed a proof of claim in the Apartments bankruptcy on behalf of the Desert Land estate.  The claim was stated to be for at least $78 million.  Trustee Golden attached an addendum to the claim explaining that he was seeking to recover a $4.5 million debt previously listed in Apartments' Schedule F and previously scheduled for $5,468,103.96 in

---

[19] Desert Land ECF No. 1368.

[20] After denying Busbin's request for a stay pending appeal, the District Court recently affirmed this court's decision.  *See* USDC Appeal No. 20-01299-JCM, ECF Nos. 46-47.

[21] Desert Land ECF No. 1456.

[22] *Id.*

[23] Desert Land ECF No. 1439.

[24] Desert Land ECF No. 1449.

Apartments' 2011 chapter 11 bankruptcy case (though it was subordinated to the general unsecured claims as part of a confirmed plan).[25]  The addendum stated that the balance of the claim was based upon theories of substantive consolidation of the two estates or alter ego liability.  The addendum further referenced a statement from one of Desert Land's principals that the entities had used available funds to pay the expenses of all entities.[26]

The next day, Mr. Coleman from Nuti Hart emailed Mr. Bregman with Brutzkus Gubner to discuss conflicts of interest.[27]  Mr. Coleman asked if Desert Land would waive any conflict associated with Apartments' objection to Desert Land's proof of claim resulting from his firm's prior representation of the Desert Land chapter 11 estate.  Mr. Coleman advised that if Trustee Golden would not waive the conflict, Apartments would "arrange for the Gonzales Trust or special counsel to handle the objection."[28]  Trustee Golden declined to waive the conflict and requested Mr. Coleman turn over all Desert Land files.[29]  Mr. Coleman agreed to do so.  Mr. Coleman also represented that he would not communicate with conflict counsel concerning the objection to the claim.

On October 12, 2020, the Apartments estate's professionals filed a supplemental disclosure under Fed. R. Bankr. P. 2014(a).[30]  Specifically, the professionals disclosed a statement by Mr. Bregman that Trustee Gupta's "resignation confirmed an actual conflict existed, which conflict appears to have arisen prior to actions which harmed the Desert Land estate (i.e. de-scheduling of $4.5MM A/R, $1MM credit for DLLA, etc.)."[31]  The supplemental disclosure discussed in some detail the events that led the representatives of Desert Land and Apartments to amend the schedules to remove the $4.5 million account stated.[32]  The supplemental disclosure was supported by a

---

[25] Apartments ECF No. 409, Exhibit 1, pp. 5-6.
[26] *Id.* at p. 7.
[27] Apartment ECF No. 411, Amended Exhibit 2.
[28] *Id.* at p. 3.
[29] Apartments ECF No. 412, Exhibit 3.
[30] Apartments ECF No. 175.
[31] *Id.* at Exhibit 1.
[32] *Id.* at pp. 2-3.

declaration from Gina Shelton, the staff accountant and bookkeeper that provided bookkeeping and tax preparation services for Desert Land and Apartments.  Ms. Shelton explained why she had come to understand that the amount shown in Apartments' and Desert Land's general ledgers and working trial balance for the amounts Apartments owed to Desert Land were overstated by roughly $5,000,000.[33]

Also on October 12, 2020, John Fiero with Pachulski Stang entered his appearance as special litigation counsel in the Apartments bankruptcy.[34]  The law firm began billing the estate on October 15, 2020.

On October 28, 2020, Trustee Gupta filed her application to employ Pachulski Stang as special litigation counsel (Employment Application).[35]  The Employment Application sought to employ the law firm "to represent the Trustee in connection with the investigation and objection to the [Desert Land] Claim."[36]  The Employment Application identified Mr. Fiero and Gail Greenwood as the attorneys who would work on the matter.  Each agreed to bill their time at no higher than $800 per hour, which was a reduced hourly rate for both.[37]  The Application listed the lowest hourly rate for attorneys at $650 per hour and paralegals at $425 per hour.[38]

Mr. Fiero's declaration in support of the Employment Application stated that his firm was to be employed to "undertake such tasks as required by the Trustee," including "[a]dvising the Trustee concerning…the administration of the estate" and "[r]endering such other services as the Trustee may require in connection with this case or the Claim."[39]  Mr. Fiero's declaration included the assurance that Pachulski Stang would "staff the case among other attorneys at the

---

[33] *Id*. at Exhibit 5, pp. 4-5.
[34] Apartments ECF No. 176.
[35] Apartments ECF No. 187.
[36] *Id*. at p. 4.
[37] *Id.* at p. 5:14-16.
[38] *Id.* at p. 6:3-9.
[39] Apartments ECF No. 188, pp. 2-3, ¶ 5.

Firm in the most cost-efficient manner possible."[40]   The Employment Application was scheduled for a hearing on December 10, 2020.

Well before the hearing on the Employment Application, Pachulski Stang drafted and sent a Rule 11 Notice to Brutzkus Gubner requesting that Trustee Golden withdraw the Desert Land proof of claim (Rule 11 Notice).[41]   The Rule 11 Notice attached a draft Motion for Monetary Sanctions Against Jeffrey Golden, Chapter 11 Trustee of Desert Land, LLC, Pursuant to Bankruptcy Rule 9011.  Both the Rule 11 Notice and the motion focused upon Desert Land's claim for damages under both components: the account stated and substantive consolidation or alter ego.

On December 1, 2020, Steven Gubner responded to the Rule 11 Notice (Rule 11 Response) for the Desert Land estate.[42]   The Rule 11 Response is 11 pages long and includes 452 pages as attachments.  The discussion of substantive consolidation is limited to footnote number 1, which advised that the Rule 11 Response did not discuss the substantive consolidation component but stated that it was premised on the conflicting testimony presented in 2018.  The footnote acknowledged that the bankruptcy court denied the prior motion for substantive consolidation but noted that the denial was without prejudice.[43]

On December 8, 2020, Trustee Golden filed a response to various joinders to DLLA's Motion to Dismiss in the Desert Land bankruptcy.[44]   In it, he listed his proof of claim in the Apartments bankruptcy as a significant, unadministered asset weighing against dismissal.  The discussion of that claim, however, was limited to the $4.5 million debt, though the response included a vague reference that "the claim may be allowed in an amount significantly more than that."[45]

---

[40] *Id.* at ¶ 7.
[41] Apartments ECF No. 416, Exhibit No. 7a.
[42] Apartments ECF No. 418, Exhibit No. 8.
[43] *Id.* at 2.
[44] Desert Land ECF No. 1557.
[45] *Id.* at 4:17.

Also on December 8, 2020, Pachulski Stang filed an amended Employment Application.[46]  The amended Employment Application is substantially similar to the Employment Application.  It was accompanied by the supplemental declaration of Mr. Fiero, who disclosed that the U.S. Trustee sought additional conflicts checks from the firm.[47]  None of the additional checks affected Pachulski Stang's disinterestedness for purposes of employment.

On the December 10, 2020 miscellaneous motion calendar, the court heard Pachulski Stang's application to be employed as special litigation counsel.  At that hearing, the court stated that in light of the maturity of the bankruptcy case, it was unclear why special counsel was necessary.[48]  The undersigned plainly said he was "very, very concerned about the cost of this case,"[49] and asked why he should approve Pachulski Stang's employment at $650-$800 per hour when local options were available at a reduced rate.[50]  The court further noted that the $78 million claim at issue was rejected by Judge Babero two years prior.[51]  Mr. Bregman added on the record that Trustee Golden intended to file an amendment reducing Desert Land's proof of claim to $4.5 million.[52]  Mr. Fiero advised the court that "the concern that there is going to be a tremendous amount of fees charged…while valid, is unlikely."[53]  Mr. Fiero reiterated that Pachulski Stang's "employment is limited to questions involving the proof of claim of Trustee Golden."[54]

The court initially expressed an intent to continue the hearing on Pachulski Stang's employment to find out from Trustee Gupta how many hours the firm had already billed.[55]  At no time during the December 10, 2020 hearing did Mr. Fiero reveal to the court that Pachulski Stang

---

[46] Apartments ECF No. 223.
[47] Apartments ECF No. 224.
[48]  Apartments ECF No. 227 at p. 5:21-24.
[49]  *Id.* at p. 7:20-21.
[50] *Id.* at p. 8:14-17.
[51]  *Id.* at p. 7:17-20.
[52]  *Id.* at p. 9:1-11.
[53]  *Id.* at p. 10:7-9.
[54] *Id.* at p. 16:22-23.
[55] *Id.* at p. 10:20-25.

had already incurred over $100,000 in fees as of the date of the hearing on its employment. Instead of continuing the hearing, in light of the lack of opposition and assurances from Mr. Fiero, the court ultimately approved the application to employ Pachulski Stang. While granting the Employment Application, the court cautioned Mr. Fiero it would be critically examining the firm's fee application(s) for efficiency and necessity of services rendered.[56] Specifically, the court approved employment "with it expressly stated that the [c]ourt reserves the right, regardless of the application, to review the reasonableness of the fees upon application for payment, that no travel time will be allowed, and subject to the [c]ourt's concerns regarding the differential in the…hourly fees between the application as stated and what the [c]ourt considers to be the average fees for similar work at the similar level within the Las Vegas metropolitan area."[57]

At the conclusion of the hearing on Pachulski Stang's Employment Application, Mr. Fiero attempted to credit his firm with reducing Trustee Golden's proof of claim by 94% and offered to "prove the value proposition at the time our fee application is submitted."[58] The court largely discounted this argument. Rather, the court again pointed out the maturity of the case, and that the substantive consolidation issues had already been adjudicated by the court. Moreover, the court advised that he himself had repeatedly discounted the substantive consolidation theory.[59]

The court entered the order approving Pachulski Stang's employment on December 22, 2020 (Employment Order).[60] The firm's employment was effective as of October 15, 2020. The Employment Order did not contain the limiting language regarding the firm's forthcoming fee applications discussed on the record at the December 10, 2020 hearing.

//

---

[56] *Id.* at pp. 22:6-23:1.
[57] *Id.* at p. 23:7-15.
[58] *Id.* at p. 24:11-18.
[59] *Id.* at pp. 24:20-25:6.
[60] Apartments ECF No. 229.

### D.  The Motion to Dismiss the Desert Land Bankruptcy.

The court also heard DLLA's Motion to Dismiss the Desert Land bankruptcy on December 10, 2020, the same day as the Employment Application.  Though a number of creditors had originally opposed, or expressed concerns over dismissal, by the time of the hearing, substantially all the active creditors of the Desert Land estate had either joined the motion or stated their ambivalence to dismissal.  The creditors explained that dismissal was in their respective best interests as the most efficient means to conclude the bankruptcy and disburse what limited funds the estate had recovered, primarily through surcharge or carveout from the sale of the real property.  Trustee Golden opposed dismissal. He pointed to his recently filed adversary action against Desert Land's insiders,[61] and the $4.5 million claim against Apartments as assets needing administration.

After considerable discussion, the court found that cause existed under § 1112(b) to either dismiss or convert the Desert Land bankruptcy case.  The court initially expressed its inclination to convert the case in light of the assets identified by Trustee Golden.  But based upon the arguments presented by the creditors, the court was convinced to accept their preference for dismissal as "a knowing decision by sophisticated creditors with capable counsel and I defer to that."[62]  The parties were sanguine that the estate was administratively insolvent, but agreed that the monies held by the estate were to be distributed pro-rata to allowed administrative expenses. The court stated that it would set a deadline for filing administrative expenses prior to entering any order of dismissal.

On December 15, 2020, Trustee Golden amended his proof of claim in the Apartments bankruptcy, reducing it to $4.5 million and eliminating any reference to substantive consolidation.

---

[61] Trustee Golden commenced *Golden v. Bulloch et al.*, 20-01156-gs, with the filing of a complaint on November 3, 2020.

[62] Desert Land ECF No. 1565 at p. 55.

As the motions for administrative expense worked their way through the Desert Land bankruptcy, Trustee Golden filed his Supplemental Opposition to the Motion to Dismiss (Supplement).[63]  DLLA opposed the Supplement.  Because the court had not entered its order, the Motion to Dismiss technically remained pending.  Nonetheless, the court effectively treated the Supplement as a motion to alter or amend its oral ruling.  On March 11, 2021, the court held a hearing on the matter.  On April 2, 2021, the court gave its oral ruling reversing its prior decision and converting the Desert Land bankruptcy to chapter 7.  The order of conversion was entered on April 9, 2021.[64]  Trustee Golden was appointed as the chapter 7 trustee and Brutzkus Gubner was retained as counsel for Desert Land's chapter 7 estate.

**E.  Plan Confirmation in the Apartments Bankruptcy.**

On January 26, 2021, Trustee Gupta filed the joint plan of reorganization in the Apartments case (Plan).[65]  The Plan drew opposition from Trustee Golden,[66] Northern Trust,[67] and the United States Trustee.[68]  Its filing also spawned additional motion practice, such as Northern Trust's motion to allow it to vote on the Plan[69] and Trustee Golden's motion to allow the Desert Land proof of claim for purposes of confirmation.[70]  Trustee Gupta's various responses to the briefings were filed by Nuti Hart, and Mr. Coleman presented the arguments for confirmation at hearings held on March 11, 2021[71] and April 30, 2021.

After taking the matter under advisement, on June 15, 2021, the court confirmed the Plan.[72]  Pursuant to the confirmed Plan, Trustee Gupta, acting as the Disbursing Agent, paid $5,000,000 to Busbin on the Gonzales Trust's claim.  The confirmed Plan provided Trustee

---

[63] Desert Land ECF No. 1627.
[64] Desert Land ECF No. 1675.
[65] Apartments ECF No. 239.
[66] Apartments ECF No. 260.
[67] Apartments ECF No. 266.
[68] Apartments ECF No. 263.
[69] Apartments ECF No. 271.
[70] Apartments ECF No. 250.
[71] *See* Apartments ECF No. 306.
[72] Apartments ECF No. 338.

Gupta with a deadline to object to Desert Land's disputed claim, and stated that barring full disallowance, the claim would receive a pro rata distribution.

### F. Claim Settlement.

Negotiations to settle the Desert Land claim began between Busbin and Trustee Golden in earnest in February 2021.[73]  As negotiations advanced, attorney John Fischer for Busbin emailed Ms. Greenwood and Mr. Fiero on June 7, 2021, asking them "not to run up any attorneys fees at this time," expressing confidence that a settlement would be reached without the need for mediation.[74]  Specifically, he stated, "no objection needs to be filed yet."[75]  Although it was never filed, Pachulski Stang sent its draft claim objection to Mr. Fischer on July 15, 2021, and included it in its submission of Trustee Gupta's confidential settlement brief to the Honorable Paul Sala on July 16, 2021.[76]  On July 19, 2021, as the parties prepared for the settlement conference, Mr. Fiero emailed counsel for the other participants a statement of Pachulski Stang's fees to date, which then totaled $222,283.74.[77]

On July 21, 2021, representatives of DLLA, Trustee Golden, Trustee Gupta, Nuti Hart, and Busbin participated in a continued comprehensive settlement conference before the Honorable Paul Sala to address Adversary Proceeding No. 20-01156-gs brought by Trustee Golden against numerous parties (collectively, the "DLLA Parties").  As a result of that conference, on October 18, 2021, Trustee Golden filed a motion seeking approval of the settlement reached between himself, Trustee Gupta, Nuti Hart and Busbin which resolved Trustee Golden's claim in Apartments (Claim Settlement).[78]  Pursuant to the Claim Settlement, Busbin consented to Trustee Gupta paying Trustee Golden $425,000 using funds which were earmarked for distribution to the Gonzales Trust under Apartments' confirmed chapter 11 Plan. Upon receipt of payment, the Desert Land proof of claim in the Apartments' case was deemed

---

[73] *See* Apartments ECF No. 406-7.
[74] Apartments ECF No. 422.
[75] *Id.*
[76] *See* Apartments ECF No. 426.
[77] Apartments ECF No. 406-9.
[78] Desert Land ECF No. 1753.

withdrawn with prejudice.  The court entered its order approving the Claim Settlement on

December 7, 2021.[79]

### G.  Pachulski Stang's Fee Application

Shortly after the settlement conference, Pachulski Stang filed its Application.  It seeks

approval of $211,680 in fees and $443.74 in expenses for services as special litigation counsel

from October 15, 2020 to July 1, 2021.[80]  The Application summarizes the fees within the

following general matters:

| Matter | Fees |
| --- | --- |
| Asset Analysis & Recovery | $    67,280.00 |
| Bankruptcy Litigation | $  101,360.00 |
| Case Administration | $      4,320.00 |
| Claims Objection | $    22,240.00 |
| Plan and Disclosure Statement | $      6,800.00 |
| Retention of Professionals | $      9,680.00 |
| **Total Fees** | **$    211,680.00** |

The Application was set for hearing on September 16, 2021.

Northern Trust and Busbin both objected to the Application.  Busbin's objection was

particularly damning: he revealed that he was discussing settlement with Trustee Golden to

resolve the Desert Land claim using the Gonzales Trust's funds - not funds of the Apartments

estate - "simply to avoid incurring huge administrative expenses that would ultimately be

paid…to Pachulski Stang if a claim objection were filed."[81]  Plainly stated, "the sole reason for

settling with Mr. Golden was to avoid the cost of paying Pachulski Stang to litigate a claim

objection."[82]

---

[79] Desert Land ECF No. 1771.
[80] Apartments ECF No. 373.
[81] Apartments ECF No. 387, p. 9:21-22.
[82] *Id.* at p. 9:25-26.

Pachulski Stang replied that the time spent by the firm was necessary because, due to conflicts, Nuti Hart was prohibited from sharing any of its work on the substantive consolidation motion with Pachulski Stang.[83]  Thus, it argued, Pachulski Stang was forced to draft the objection to the Desert Land claim entirely from scratch, with "no choice but to re-invent the wheel."[84]  Even if Nuti Hart had been available as a resource, the firm argued that "it would be remiss" if it did not independently investigate "each and every factual and legal detail" of the Rule 11 Notice and claim objection.[85]  The firm further pointed out that its assistance with Apartments' Plan confirmation also conveyed a benefit, and the firm's fees were not opposed by Busbin or his attorneys until well after the fact.  Pachulski Stang also emphasized the over 10% discount it gave Trustee Gupta from its usual rates, totaling over $26,000.

At the September 16, 2021 hearing on the Application, the court heard argument from Mr. Fiero as well as Mark Wray and Mr. Fischer, both appearing for Busbin.  Mr. Fiero again argued that the reduction in the amount of the claim from $78 million to $4.5 million was evidence of the value of the firm's services, an argument which the court again contested, pointing out Pachulski Stang's own time entries reflecting their investigation of potential Rule 11 sanctions for the filing of the essentially baseless claim.  The court also raised the fact that all time spent on the case was billed at $800 per hour; Mr. Fiero conceded that the firm did not engage any junior associates in its work for Trustee Gupta.  Finally, the court challenged Mr. Fiero's contention that his firm performed work faster than a firm that might charge less per hour would have.  Mr. Fiero contended that the time spent was required to put Pachulski Stang in the appropriate negotiation position required to reduce the proof of claim from $78 million to $4.5 million.

In his argument, Mr. Wray refuted Mr. Fiero's claim that Pachulski Stang had to start with a proverbial blank slate on its claim objection, in light of the substantive consolidation documents that had been publicly available on the case docket for over a year prior to the firm's retention.  Additionally, Trustee Gupta had previously detailed the reasons why Desert Land had

---

[83] Apartments ECF No. 389
[84] *Id.* at p. 4:13-14.
[85] *Id.* at p. 4:26-27.

amended its schedules to delete its claim against Apartments, and had attached a supporting declaration. Mr. Wray also reminded the court that during the course of its employment, the only pleadings Pachulski Stang filed with the court were its employment and fee applications. Mr. Wray described Busbin's shock at the amount of Pachulski Stang's fees as early as April 2021, spurring Busbin to begin settlement discussions with Trustee Golden to avoid further fees. Conceding that he did not specify and analyze individual time entries in Busbin's objection, Mr. Wray further posited that the billing categories utilized by Pachulski Stang in its Application were essentially meaningless because time entries pertaining to the same work appeared in multiple billing categories, requiring recategorization to actually determine the amount of time spent on issues such as Rule 11 sanctions. He concluded by requesting a reduction of $111,000 for services outside the scope of employment, and a fifty percent reduction in the fees incurred on the claim objection as excessive.

At the conclusion of Mr. Wray's argument, Mr. Fiero requested that the court hear from Trustee Gupta as to the necessity and reasonableness of its services. The court agreed, determining that an evidentiary hearing was required to ascertain the necessity and reasonableness of Pachulski Stang's fees. The evidentiary hearing on the Application was set for October 1, 2021.[86]

At the evidentiary hearing, Mr. Fiero called Trustee Gupta as the first witness. She disclosed that she interviewed four law firms in her pursuit of special litigation counsel, two in Nevada and two in California. She stated that one Nevada firm had a conflict of interest and lacked the appropriate experience to address Trustee Golden's claim; the second Nevada law firm lacked adequate staffing and was more expensive on an hourly basis than Pachulski Stang; and the other California law firm did not have availability to handle the matter. Trustee Gupta further revealed that upon her initial review of Trustee Golden's claim, she thought the claim lacked credibility such that a Rule 11 sanctions motion for its filing might be warranted, a first in her over 30 years of practice. She also testified that she asked Pachulski Stang to perform work regarding Trustee Golden's Rule 3018 motion filed in the Apartments case, due to a conflict on

---

[86] Apartments ECF No. 394.

the part of her general counsel.  Trustee Gupta asserted that she was unaware that no "catchall" provision was included in the Employment Application which would encompass the work performed by Pachulski Stang.

In response to the court's questioning, Trustee Gupta further testified that she did do a cost-benefit analysis when she retained Pachulski Stang, negotiating a reduced hourly rate for the firm's attorneys.  As to staffing the matter with only senior level attorneys instead of less expensive junior level attorneys for tasks such as research, Trustee Gupta said she had no issue with that and saw the benefit of continuity in the attorney representation.

During his testimony, Mr. Fischer stated that he learned Pachulski Stang was seeking over $200,000 in fees sometime between April and June of 2021.  He reiterated that the reason why Busbin commenced settlement negotiations with Trustee Golden was to keep litigation costs down, agreeing to pay $425,000 after they were informed that Pachulski Stang's fees already exceeded $200,000.  In furtherance of that objective, he also stated that he asked Pachulski Stang to stop work on the objection to claim in light of the settlement negotiations.  Additionally, contrary to Pachulski Stang's assertion that its draft claim objection was key to the settlement, Mr. Fischer testified that the structure and parameters of the settlement were largely negotiated in the months prior to the settlement conference on July 21, 2021, with the conference simply serving to get the settlement "over the goal line."

At the conclusion of the evidentiary hearing, the court took the Application under advisement.

### Legal Standards

The legal standards for compensation of an estate's professionals are well established. Compensation of professionals employed under § 327(a) is governed by § 330(a).  A court may award professionals "reasonable compensation for actual, necessary services rendered by the … attorney and by any paraprofessional person employed by any such person; and … reimbursement for actual, necessary expenses."[87]  The court is required to examine the fee application to ensure that it is reasonable, and may award less than the amount requested.[88]

---

[87] 11 U.S.C. § 330(a)(1).
[88] 11 U.S.C. § 330(a)(2).

Specifically, the court is not to allow fees for (1) "unnecessary duplication of services" or "services that were not – (i) reasonably likely to benefit the debtor's estate, or (ii) necessary to the administration of the estate."[89]

To determine the reasonable amount of compensation, the Code requires the court to "consider the nature, the extent, and the value" of the professional's services, enumerating the following non-exclusive factors courts should take into account:

> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; … and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.[90]

To receive compensation under § 330(a), "a professional need demonstrate only that the services were reasonably likely to benefit the estate at the time rendered."[91]  The Bankruptcy Appellate Panel in *Garcia* established five factors courts consider in determining whether services were reasonably likely to benefit the estate:

> (a) Were the services authorized?
>
> (b) Were the services necessary or beneficial to the administration of the estate at the time they were rendered?
>
> (c) Are the services adequately documented?
>
> (d) Are the fees required reasonable, taking into consideration the factors set forth in section 330(a)(3)?

---

[89] 11 U.S.C. § 330(a)(4)(A).

[90] 11 U.S.C. § 330(a)(3).

[91] *Ferrette & Slater v. United States Trustee (In re Garcia)*, 335 B.R. 717, 724 (B.A.P. 9th Cir. 2005).

(e)  In making the determination, the court must consider whether the professional exercised reasonable billing judgment.[92]

**Analysis**

**A.  The Scope of Employment.**

Initially, the court must address the scope of Pachulski Stang's employment.  Trustee Gupta sought to employ the law firm as special counsel.  She already hired well-qualified general counsel that had been involved since she had been appointed chapter 11 trustee.  Special counsel was required only because a conflict had arisen with Nuti Hart from its prior representation of Desert Land that precluded its involvement with the claim objection.  Pachulski Stang sought employment as special counsel for that limited purpose.

The Bankruptcy Code specifically authorizes employment of special counsel under § 327(e) using a less rigorous standard than § 327(a).  Employment under § 327(e) is limited to special purposes where counsel does not have an interest adverse to the one for which it specially represents the estate.[93] But, where proposed counsel did not previously represent the debtor or the estate, he or she may still be employed for a special purpose under § 327(a).  It is the scope of the application that controls, not the section under which employment is sought.

Trustee Gupta's application to employ Pachulski Stang as special counsel advised that the estate was retaining the law firm "as special litigation counsel for the above-captioned estate to investigate and object to the Claim (defined below)…."[94] The Claim is defined as Desert Land's Proof of Claim No. 3-1 filed on September 23, 2020.  The entirety of the Employment Application is directed toward objecting to the Desert Land claim. The relief sought was employment as special litigation counsel "to represent the Trustee in connection with the investigation and objection to the Claim."[95]

---

[92] *Id.*

[93] *In re Sonya D. Int'l, Inc.*, 484 B.R. 773, 780 (Bankr. C.D. Cal. 2012) (citing *In re Fondiller*, 15 B.R. 890, 892 (B.A.P. 9th Cir. 1981) (emphasis added), *appeal dism.,* 707 F.2d 441 (9th Cir.1983)).

[94] ECF No. 187 at 1:26-2:1.

[95] ECF No. 187 at 4:14-15.

The Employment Application concludes with a prayer that Pachulski Stang be retained "to perform the legal services described in the Fiero Declaration, effective October 15, 2020."[96] That declaration includes the following:

> 5. The Trustee desires to retain PSZJ at the expense of the estate, to undertake such tasks as required by the Trustee, including but not limited to the following:
>
> (a) Investigating and advising the Trustee concerning the legal and factual issues raised by the Claim filed by Desert Land in the amount of "at least $78,000,000" on the alleged ground that the Debtor and Desert Land should be substantively consolidated and/or that the Debtor is an alter ego of Desert Land;
>
> (b) Advising the Trustee concerning the rights and remedies of the estate in regard to the Claim, an objection to the Claim, and any related litigation;
>
> (c) Representing the Trustee in connection with an objection to the Claim and any related litigation to the extent the Trustee deems appropriate, including potential causes of action against Desert Land and related parties;
>
> (d) Conducting examinations of witnesses, claimants, or adverse parties and preparing and assisting in the preparation of motions, applications, answers, orders, memoranda, reports and accounts;
>
> (e) Advising the Trustee concerning the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the requirements of the United States Trustee relating to the administration of the estate; and
>
> (f) Rendering such other advice and services as the Trustee may require in connection with this case or the Claim.[97]

During the Application hearing, Mr. Fiero suggested that his declaration provided authorization for his firm to provide services beyond the claim objection. The court strongly

---

[96] ECF No. 187 at 6:13-14.
[97] ECF No. 188 at 2:17-3:8.

disagrees and finds this argument to be disingenuous.  As recently discussed by the United States

Bankruptcy Court for the Southern District of Texas:

> The order authorizing an estate professional's employment
> establishes the scope of work the professional may perform. Estate
> professionals are not entitled to compensation for work exceeding
> the scope of the order authorizing the professional's employment.
> The Court retains the power to determine the scope of its Retention
> Order.[98]

By its terms, the language of the Employment Order simply grants the Employment

Application.  It does not encompass or even reference Mr. Fiero's declaration in support of the

Employment Application.  The court is not, therefore, bound by any expanded employment

provisions set forth in Mr. Fiero's declaration.  The Employment Application clearly

contemplated Trustee Gupta's employment of Pachulski Stang as special counsel for the narrow

purpose of pursuing the objection to the Desert Land claim, and nothing more.  Nothing was

presented to the court concerning any expanded scope of representation at the hearing on the

Employment Application. Again, the representation was limited to the claim objection.

The scope of representation is particularly concerning given the court's concern with the

estate incurring additional fees as discussed at the hearing on the Employment Application.  Nuti

Hart had more than competently represented the estate throughout Trustee Gupta's tenure.

Conflict counsel was appropriate to object to Desert Land's proof of claim given Nuti Hart's

prior representation of the Desert Land estate.  The conflict necessarily informed the scope of

Pachulski Stang's representation.  There was no need for additional representation of the estate,

and none was ever presented to the court or Busbin.  To the extent that Pachulski Stang

performed legal services beyond the claim objection, such services were not authorized and

duplicated Nuti Hart's general representation of the estate.  Any such services cannot be

compensated.

Upon review of the Application, the most obvious of these unauthorized billings relates

to Apartments' Plan and disclosure statement.  The Application states that Pachulski Stang billed

8.5 hours, resulting in $6,800.00 in fees, for work on the Plan and disclosure statement.  As for

---

[98] *In re Mohiuddin*, 627 B.R. 875, 880 (Bankr. S.D. Tex. 2021) [internal citations omitted].

any discussion, the Application simply says in its entirety: "During the Fee Period, the Firm, among other things: (i) reviewed and analyzed the Debtor's Plan and disclosure statement; (ii) reviewed and considered the Desert Land Trustee's motion to allow claims for voting purposes; and (iii) prepared for and attended several Plan and disclosure statement hearings."[99] Such services were not authorized and impinge on Nuti Hart's representation.

Additionally, Pachulski Stang's Application references conferences with Trustee Gupta and estate professionals regarding case issues and status, work done on the Desert Land Motion to Dismiss and research concerning a potential appeal. These services are also beyond the scope of Pachulski Stang's limited employment and cannot be compensated.

The problem presented is that neither the Application nor the billing statements provide any separation of the specific tasks undertaken. "Proper categorization allows the bankruptcy court to evaluate the reasonability of not just the individual entries but also the total entries in the category."[100] A review of the billing statements shows that time entries for work related to the Plan, for example, can be found in categories other than the one actually designated for that work. Accordingly, the court was obliged to recategorize Pachulski Stang's time entries attached to its Application.[101] Doing so revealed that the law firm spent meaningful time on the Desert Land Motion to Dismiss and the Apartments Plan and disclosure statement. Minimal time was spent reviewing objections to fee applications in the Desert Land case. All of these matters, however, are outside the scope of the employment of special counsel.

The court is aware that arguments can be made that somehow these matters could shade into Pachulski Stang's scope of employment to investigate and object to the Desert Land claim. Dismissal of the Desert Land bankruptcy was premised upon the debtor's promise to withdraw the claim in the Apartments bankruptcy. And Desert Land moved to vote its amended claim as part of Apartments' confirmation. But Apartments was not a creditor in the Desert Land case. It

---

[99] ECF No. 373 at 12:25-13:2.
[100] *Phillips v. Gilman (In re Gilman)*, 2019 WL 3096872, at *11 (B.A.P. 9th Cir. July 12, 2019), *aff'd sub nom. Phillips v. Gilman*, 836 F. App'x 511 (9th Cir. 2020).
[101] The court will enter a supplement to this decision detailing its re-categorization of Pachulski Stang's billing statements.

had no standing to be heard on the Motion to Dismiss.  Even if it did, that was a matter for Nuti Hart as general counsel.  Similarly, Desert Land was allowed to vote its amended claim for Apartments' Plan.  Not only was the motion not contested by Trustee Gupta, it was handled by Nuti Hart.  Finally, there is no explanation offered why special counsel would incur any fees to review fee applications, especially those filed in Desert Land.

The billings related to the Motion to Dismiss, Plan confirmation, and review of objections to fee applications fall outside the scope of Pachulski Stang's employment as special counsel.  The fees related to these matters will be disallowed.

The amount of time spent on these matters is also complicated.  The Application stated that $6,800 was billed for time working on the Plan and disclosure statement.  This characterization of the matter appears to be strictly applied to the drafting of the Plan and disclosure statement.  But Pachulski Stang also spent considerable time addressing Desert Land's motion to allow its claim for purposes of the confirmation process.  Such billings are equally beyond the scope its employment.  The court has examined the billing statements and calculates that Pachulski Stang billed 41 hours for $32,800 working on matters related to Apartments' reorganization efforts comprised of the Plan and disclosure statement, the motion to allow claims, attending various hearings regarding confirmation (for both Mr. Fiero and Ms. Greenwood) and even reviewing the findings of fact and conclusions of law in support of confirmation.  This amount will not be allowed.

The billings related to the Motion to Dismiss and the fee objections are overwhelmingly included within the bankruptcy litigation matter addressed in the Application.  The court has identified 21.2 hours for $16,960 in fees related to the Desert Land Motion to Dismiss.  This includes conferences, drafting a joinder that was never filed, and attending hearings on the Motion to Dismiss.  Once again, the court sees no reason why special counsel should have undertaken any time on this matter.  While dismissal of the Desert Land bankruptcy may have effectively removed its claim in the Apartments' bankruptcy, Apartments had no recognized interest in the underlying Motion to Dismiss.  Moreover, Nuti Hart was capable of monitoring

the motion and hearings.  The $16,960 in fees related to the Desert Land Motion to Dismiss will not be allowed.

The court has also identified 2.3 hours for $1,840 in billings for reviewing objections to fee applications in the Desert Land bankruptcy.  While this amount is relatively small, these billings are also well outside the investigation and objection to Desert Land's proof of claim. They are also not reasonably necessary to the performance of its employment as special counsel and shall not be allowed.

In summary, Pachulski Stang was employed to address one proof of claim.  Billings for time related to the Motion to Dismiss, Plan matters, and review of Desert Land fee applications are outside the scope of its employment as special counsel.  Because such billings are beyond the scope of its employment they were not authorized by the court.  Those fees, totaling $51,600, are disallowed.[102]

**B.  The Reasonableness of the Fees Requested for the Claim Objection.**

Based on the Application, the time billed for Asset Analysis & Recovery, Bankruptcy Litigation, and Claims Objection appear to comprise the work related to resolving Desert Land's proof of claim.  Those matters total $190,880.00.  But as detailed above, the court has already excluded a total of $51,600 in fees as services beyond the scope of Pachulski Stang's employment. This leaves a total of $160,080 as the total fees related to the claim objection, including the time related to its Employment Application.

Regardless of the exact amount of the fees billed for the claim objection, Busbin argues that these hours, and the resulting fees, are not commensurate with the complexity and nature of Pachulski Stang's limited representation.  As part of this objection, he complains that the law firm did not exercise reasonable billing judgment.  "Professionals always must exercise proper

---

[102] *See In re Churco*, 2008 WL 1734228, at *5 (Bankr. N.D.N.Y. Apr. 10, 2008) (quoting *In re New England Fish Co.*, 33 B.R. 413, 418 (Bankr.W.D.Wash.1983)) ("'courts have consistently held that professionals who render services to bankruptcy estates without court approval forfeit their right to compensation from the estate.'"); *see also Mohiuddin*, 627 B.R. at 883-84 (Bankr. S.D. Tex. 2021) (denying special counsel's fees for assisting in liquidating estate assets where general counsel was employed to provide those services and such services fell outside the scope of special counsel's employment).

billing judgment."[103]   Reasonable billing judgment requires a professional to consider the following three inquiries:

    (a)  Is the burden of the probable cost of legal services disproportionately large in relation to the size of the estate and maximum probable recovery?

    (b)  To what extent will the estate suffer if the services are not rendered?

    (c)  To what extent may the estate benefit if the services are rendered and what is the likelihood of the disputed issues being resolved successfully?[104]

These factors are not the issue in this instance.  It was necessary for Trustee Gupta to object to Desert Land's claim.  But bankruptcy courts are also instructed to "examine the circumstances and the manner in which services are performed and the results achieved in order to arrive at a determination of a reasonable fee allowance."[105]  This factor encourages a much more qualitative review of the billings in light of the context of the case.  In *Mednet* the Bankruptcy Appellate Panel explained that "in making this determination, the court must take into consideration whether the professional exercised reasonable billing judgment."[106]  As stated in *In re Riverside-Linden Investment Co.*, "[w]hen a cost benefit analysis indicates that the only parties who will likely benefit from [a service] are the trustee and his professionals," the service is unwarranted and a court does not abuse its discretion in denying fees for those services.[107]

Put more bluntly, "[d]espite the outcome of any case, once it becomes reasonably obvious that further litigation would not benefit the estate, the attorney must scale back its services."[108]  "A professional cannot ignore a likely result, but must exercise billing

---

[103] *Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co. (In re Mednet)*, 251 B.R. 103, 109 (9th Cir. BAP 2000).

[104] *Garcia,* 335 B.R. at 74.

[105] *In re Mednet*, 251 B.R. at 108.

[106] *Id.*

[107] 925 F.2d 320, 321 (9th Cir. 1991) [citation and internal quotation marks omitted].

[108] *Auto Parts Club*, 211 B.R. at 35; *see also Mednet*, 251 B.R. at 108 n.7 (quoting *Unsecured Creditors' Comm. v. Puget Sound Plywood, Inc.*, 924 F.2d 955, 961 (9th Cir.1991)) ("'[The attorney] had an obligation to…balance the effort required against the results that might be achieved.  Absent unusual circumstances, an attorney must scale his or her fee at least to the reasonably expected recovery.'").

judgment."[109]  This lead the Ninth Circuit to affirm a bankruptcy court's fifty percent fee

reduction for chapter 7 trustee's counsel, in a situation similar to the one before the court where

"although the litigation may have had some merit, the degree to which it was pursued was

unnecessary."[110]

      Pachulski Stang defends its fees by citing to the amount of Desert Land's original proof

of claim.  It contends that its fees were warranted to defeat a claim in excess of $78 million.  As

in all things, context is crucial. Pachulski Stang did reduce Desert Land's claim from more than

$78 million to $4,500,000.  But this is comparable to the big bad wolf blowing down the house

of straw: there wasn't much to the claim.  The overwhelming bulk of this claim rested on

theories of substantive consolidation and alter ego.  This court is unaware of any bankruptcy that

has substantively consolidated two bankruptcy estates through a proof of claim (and after they

have been largely administered).  More importantly, the court had previously denied a motion for

substantive consolidation and had proceeded to administer the bankruptcy estates. Alter ego, on

the other hand, is the extension of liability generally to an entity's owners, though the doctrine of

reverse alter ego permits imposition of the individual owner's liability upon the entity.[111]

      There is nothing in the record to suggest that Desert Land's claim for $73.5 million in

damages beyond the account stated had any substantive merit.  Indeed, Trustee Gupta testified

that she considered the claim to be frivolous from the outset.  And this is where the problem

arises.  Pachulski Stang similarly argued that the claim was patently frivolous, but it billed more

than $200,000 in fees over a nine-month period to deal with Desert Land's allegedly meritless

claim without ever filing a claim objection or even taking any discovery.

      Instead, prior to approval of its employment Pachulski Stang dove into the matter as if a

claim objection hearing was imminent.  It dedicated two partners to the task.  The billing

statements through December 10, 2020, reflect that Ms. Greenwood was primarily responsible

for the Employment Application, research, and preparation of the Rule 11 Notice and motion.

---

[109] *Lobel & Opera v. U.S. Trustee (In re Auto Parts Club, Inc.)*, 211 B.R. 29, 35 (B.A.P. 9th Cir. 1997).

[110] *Leichty v. Neary (In re Strand)*, 375 F.3d 854, 861 (9th Cir. 2004).

[111] *See Certain v. Sunridge Builders, Inc.*, 431 P.3d 38, at **1-2 (Nev. Nov. 28, 2018).

27

Mr. Fiero primarily reviewed and edited the work, conferred with Ms. Greenwood and Trustee Gupta, and attended the December 10, 2020 hearings on the Employment Application and the Motion to Dismiss.[112]  Through December 10, 2020, Pachulski Stang billed the estate $128,720.

Busbin argues that this is just too much for filing an Employment Application and sending the Rule 11 Notce for a frivolous proof of claim. The strategy succeeded as Desert Land withdrew its claims for substantive consolidation and alter ego.  But the hours and fees are simply overkill. There was no reason why the estate had to immediately adopt such a "shock and awe" approach to Desert Land's claim.  And while it was effective, it came disproportionately at the expense of the creditors.

The above discussion applies overwhelmingly to Desert Land's claim for substantive consolidation and alter ego.  But it bears mention that despite the time spent on the Rule 11 Notice and proposed motion, Desert Land continued to pursue its claim for the $4,500,000 account stated.  Pachulksi Stang never moved for sanctions.  Indeed, it never filed the objection to the amended claim.  The court notes that the basis for the objection to the account stated portion of the Desert Land claim had been largely developed by Nuti Hart, leading to Desert Land's amendment of its schedules to remove the debt.[113]

---

[112] The court's primary concern is that the fees for the claim objection were excessive in light of the nature and basis of Desert Land's claim.  Employing two lawyers, each billing $800, for a single claim objection that was never filed certainly increased the billings.  Ms. Greenwood was the attorney responsible for the majority of the work on the matter and Mr. Fiero appears to have acted in more of an advisory, administrative, and consulting nature.  His time billed is not outrageous.  But given the limited matter at issue, two attorneys were not required.  Mr. Fiero's involvement largely duplicated and expanded the time incurred.  The court examined Pachulski Stang's billing records and calculated at least $17,000.00 in billing by Mr. Fiero that duplicated Ms. Greenwood's time.  Additional time was spent reviewing Ms. Greenwood's work.  The court notes that both attorneys appeared at hearings and participated in meetings or phone calls.  It appears that Pachulski Stang made some effort not to bill both attorneys for all calls, meetings or emails.  But the point is that having two attorneys bill on this claim objection unnecessarily increased the fees as the time for the second attorney often would not have even occurred had only one attorney been working on the case.  Given the expertise suggested by the hourly rates of counsel, one attorney should have been adequate to handle this matter.  Once again, the point is not that two attorneys were precluded from working on the claim objection, but the billings and the nature of the representation clearly demonstrate that it was inefficient, unnecessary, and not reasonably calculated to benefit the estate.

[113] *See* Apartments ECF No. 175.

The lack of a claim objection may be attributed in some part to the court's ruling in December 2020, that it would dismiss the Desert Land bankruptcy. As part of the dismissal Desert Land, once out of bankruptcy, was to withdraw the proof of claim. But the court converted Desert Land to chapter 7 in March 2021. By that time, settlement discussions had begun on Desert Land's claim. Pachulski Stang's time related to the claim objection after March was dedicated to settlement discussions and arranging a settlement conference, with a notable exception. Over three days Pachulski Stang billed $17,280 to draft the objection to Desert Land's claim. This was done in early June 2021 when all parties were proceeding towards mediation. Within days of the work on the claim objection, Busbin's counsel asked Pachulski Stang to stand down as it was thought that the parties were close to a settlement even without the settlement conference.

The court is well aware of the danger of arm-chair quarterbacking of the parties' litigation decisions, especially those of a trustee. But this Application does not come before the court on a blank slate. The court has been involved in the administration of these jointly administered cases for years and has overseen the sale of the real property and observed the fallout. The court's natural hesitancy to avoid second-guessing litigation decisions is tempered in this case by its efforts to express its concern of over-litigation and excessive fees at the outset of Pachulski Stang's employment. At the hearing on its Employment Application the court noted Pachulski Stang's bankruptcy expertise, but also its billing rates and the potential to incur significant fees quickly in what the court viewed as a not so significant matter. The court attempted to impress upon Pachulski Stang the need for the law firm to efficiently apply its expertise to the lone claim objection it was retained to resolve.

Busbin, the true beneficiary of Pachulski Stang's services, is adamant that this did not happen. His counsel filed the joint bankruptcies, moved to appoint the trustee, and remained active after the sales of real property. Busbin's counsel were active participants in dealing with Desert Land, and particularly in settling the claim. The $17,280 in fees incurred immediately prior to a settlement conference supports Busbin's objection, particularly in light of the advanced state of negotiations as evidenced by Mr. Fischer's testimony and his email asking Trustee Gupta

to stand down just days after Pachulski Stang drafted the claim objection.[114]  Indeed, this is supported by the settlement brief Pachulski Stang submitted noting that the settlement was being funded by Busbin and that he had previously offered $350,000 to resolve Desert Land's claim. The brief was clear that Trustee Gupta, then acting as the disbursing agent, was "prepared to increase the settlement offer only to the extent that Gonzales wishes to increase a payment from the Debtor's assets available to creditors."[115]

Trustee Gupta testified during the evidentiary hearing as to the retention of Pachulski Stang. She testified she interviewed other law firms, including a Nevada law firm that was even more expensive than Pachulski Stang.  She noted that Pachulski Stang had reduced its hourly fees, and testified that she was not concerned that two attorneys, each billing $800 per hour, would be working the claim objection.  Her testimony demonstrated that she conducted an investigation to hire counsel, considered the matter and exercised her discretion in retaining Pachulski Stang. The court has no problem with the estate's retention of Pachulski Stang.  The firm was qualified and capable; that is why the court approved the Employment Application. But having retained a law firm billing at the rates Pachulski Stang charged, to handle what Trustee Gupta recognized to be one frivolous claim, it was incumbent upon her to utilize the law firm properly.  Pachulski Stang was supposed to be used surgically to resolve the Desert Land claim.  This is not what happened.

---

[114] *See* Apartments ECF No. 422.  The court is also aware that on April 7, 2021, Mr. Fischer emailed Pachulski Stang seeking to review a copy of Trustee Gupta's objection to the Desert Land claim before it was filed.  *See* Apartments ECF No. 421.  While this may seem like a contradiction, the posture of the case was markedly different in April 2021 when Mr. Fischer acknowledged Pachulski Stang's preparation of a claim objection than it was in June 2021 when Mr. Fischer asked that Trustee Gupta not file an objection.  Had Pachulski Stang drafted the claim objection in the spring of 2021, the court might perceive the reasonableness of those services differently.  Instead, Pachulski Stang waited until settlement negotiations were advanced, and even appeared to suggest that Trustee Gupta might prefer pursuit of the claim objection over settlement.  *See* Apartments ECF No. 406-12.  Pachulski Stang's delay in drafting the claim objection until negotiations were at an advanced stage significantly impacts the court's view of the reasonableness of those services.

[115] Apartments ECF No. 428 at 9.

In sum, the court finds the fees charged for the work related to the claim objection to be excessive. As stated by the Third Circuit Court of Appeals, "[a] Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn."[116] "[W]hen considering an award of attorneys' fees, the court is not required to go line-by-line through the billing records… 'trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.'"[117] Indeed, "[t]he court may use a percentage deduction 'as a practical means of trimming fat from a fee application.'"[118] This is just such a situation where a percentage reduction is appropriate for the time spent on the claim objection. Both Trustee Gupta and special counsel had an obligation to maximize the recovery to the estate. The hours spent on the claim objection reflect a lack of billing judgment given the circumstances of this case: a vaguely stated conclusory claim filed by an affiliated debtor which had already been debunked in prior actions and by the estate's general counsel.

The court has attempted to better understand the work performed on the claim objection. Reviewing the billing statements, the fees break down into these general categories:

| Application to Employ | 14.1 | $ 11,280 |
| Claim Objection | 162.3 | $129,840 |
| Settlement Negotiations | 23.7 | $ 18,960 |

The court does not consider the objections raised to be directed towards the Employment Application (and supplement) or the settlement negotiations. Those amounts will be allowed. Rather, the opposition directed towards the claim objection is targeted primarily to the work related to the Rule 11 Notice and motion.

---

[116] *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983).

[117] *Rodriguez v. National Funding, Inc. (In re Rodriguez)*, 2020 WL 1672773, at *5 (B.A.P. 9th Cir. Mar. 26, 2020) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)); *see also In re Coxeter*, 2012 WL 7070198, at *9 (Bankr. E.D. Cal. Nov. 6, 2012) (quoting *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994)) ("[A] bankruptcy court is not required to 'set forth item-by-item findings concerning what may be countless objections to individual billing items.'"); *Saunders v. Salvation Army*, 2007 WL 927529, at *3 (S.D.N.Y. Mar. 27, 2007) ("Rather than comb through detailed time sheets, a court can "exclude excessive and unreasonable hours from its fee computation by making an across-the-board reduction in the amount of hours.").

[118] *Coxeter*, 2012 WL 7070198, at *9 (quoting *McDonald ex rel Prendergast v. Pension Plan of the NYSA–ILA Pension Trust Fund*, 450 F.3d 91, 97 (2d Cir. 2006)).

The court agrees that a 40% reduction of the above referenced fees related to the claim objection is appropriate. This roughly equates to the time spent on the Rule 11 Notice and motion and drafting the claim objection in June 2020, plus a further reduction for the impact of a second lawyer working on the same matters.[119]  There was nothing wrong with working on a Rule 11 motion. It is the amount of time spent, together with the underlying work on the claim analysis and drafting the memorandum that lead the court to conclude there was simply too much time and fees billed, especially given that nothing was ever filed with the court, even on the portion of the claim related to the account stated.

As discussed above, the timing of the claim objection is suspect given the impending settlement conference, prior negotiations, and Busbin's request to stand down.  This may oversimplify the analysis as all the time spent on the Rule 11 Notice and motion is not subject to disallowance, just as not all of the time on the other components was reasonable.  But it does satisfy the court that a 40% reduction of the time collected in the claim objection is warranted.

Finally, in reviewing all the time, the court again notes that two attorneys billing $800 per hour were not required to address one claim that was deemed frivolous.  Two lawyers working on the claim objection was a luxury that came directly at Busbin's expense.  The time needed to confer, email, and revise the other's work needlessly increased the fees in this instance, not to mention the instances when both attorneys attended conference calls or hearings.  The record does not establish why this was necessary or reasonable.

For these reasons, the court will exercise its discretion to disallow $50,000 in fees billed by Pachulski Stang for services related to Desert Land's proof of claim.

### Conclusion

The court concludes that Pachulski Stang seeks compensation for work beyond the scope of its limited representation and that it did not exercise proper billing judgment in its attempt to resolve the Desert Land proof of claim. Accordingly, the court will enter an order granting in

---

[119] That work is not the entire basis for the reduction, but it serves as a reference point for the court when evaluating the appropriate amount of the reduction.

part and denying in part the Application, disallowing the following fees billed by Pachulski Stang:

| | | |
|---|---|---|
| Plan Confirmation | $ | 32,800.00 |
| Desert Land - Motion to Dismiss | $ | 16,960.00 |
| Fee Objections | $ | 1,840.00 |
| Excessive Fees for Claim Objection | $ | 50,000.00 |
| **Total disallowance** | **$** | **101,600.00** |

The court will issue a supplement with its numerical analysis of Pachulski Stang's fees and will enter an order memorializing this ruling.

\* \* \* \* \*

Copy sent to all parties and/or their counsel via CM/ECF Electronic Notice.

###